UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

|  |  |  |
|---|---|---|
| | : | 07 MDL 1902 |
| In re REFCO, INC. SECURITIES | : | MASTER FILE NO. |
| LITIGATION | : | 05 Civ. 8626 (GEL) |
| | : | |
| | **:** | **ORAL ARGUMENT REQUESTED** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## MEMORANDUM OF LAW IN SUPPORT OF THE
## 144A DEFENDANTS' MOTION TO DISMISS THE
## SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT


**WILMER CUTLER PICKERING
HALE AND DORR LLP**

Robert B. McCaw
Lori A. Martin
John V.H. Pierce
Dawn M. Wilson
Michael L. Feinberg

399 Park Avenue
New York, New York 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Attorneys for Defendants Credit Suisse
Securities (USA) LLC, Banc of America
Securities LLC, Deutsche Bank Securities, Inc.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL ALLEGATIONS ...........................................................................................2

ARGUMENT...................................................................................................................4

I.    THE 144A DEFENDANTS ARE NOT LIABLE UNDER SECTION 11
      OF THE SECURITIES ACT FOR PARTICIPATION IN THE DRAFTING
      OF THE BOND REGISTRATION STATEMENT ...........................................................4

            A.    SECTION 11 REQUIRES DISTRIBUTION ACTIVITY .........................5

            B.    PARTICIPATION IN DRAFTING IS INSUFFICIENT TO
                  IMPOSE SECTION 11 LIABILITY ..........................................................7

CONCLUSION................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Ackerberg v. Johnson*,
892 F.2d 1328 (8th Cir. 1989) ...................................................................6

*D'Alessio v. New York Stock Exchange, Inc.*,
258 F.3d 93 (2d Cir. 2001)........................................................................4

*Escott v. Barchris Construction Corporation*,
283 F. Supp. 643 (S.D.N.Y. 1968).........................................................6, 9

*Harden v. Raffensperger, Hughes & Co.*,
65 F.3d 1392 (7th Cir. 1995) .................................................................8, 9

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983).................................................................................6, 9

*Ingenito v. Bermec Corporation*,
441 F. Supp. 525 (S.D.N.Y. 1977)..........................................................5, 6

*In re Activision Securities Litigation*,
621 F. Supp. 415 (D.C. Cal. 1985) .............................................................7

*In re Adelphia Communications Corporation Securities & Derivative Litigation*,
No. 03 MD 1529, 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007) ...................8, 9

*In re Flight Transport Corporation Securities Litigation*,
593 F. Supp. 612 (D. Minn. 1984)..............................................................9

*In re New York City Shoes Securities Litigation*,
No. 87 Civ. 4677, 1988 WL 80125 (E.D. Pa. July 8, 1988)...........................6, 9

*In re Refco, Inc. Securities Litigation*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007)...................................................1, 2, 8

*In re WorldCom Securities Litigation*,
308 F. Supp. 2d 338 (S.D.N.Y. 2004)........................................................6

*McFarland v. Memorex Corporation*,
493 F. Supp. 631 (N.D. Cal. 1980) ..........................................................5, 7

*SEC v. North American Research & Development Corporation*,
280 F. Supp. 106 (S.D.N.Y. 1968)............................................................9

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
    128 S. Ct. 761 (2008)........................................................................................10

## STATUTES

15 U.S.C. § 77b(a)(11)........................................................................................5

15 U.S.C. § 77k ................................................................................ *passim*

15 U.S.C. § 78j..................................................................................................10

17 C.F.R. § 230.144A ....................................................................................2, 3, 7

## OTHER AUTHORITIES

2 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* (5th ed. 2002)......................8

H.R. Rep. No. 85, 73rd Cong., 1st Sess. 13 (1933) ........................................................6

Defendants Credit Suisse Securities (USA) LLC ("Credit Suisse"), Banc of America Securities LLC ("BAS"), and Deutsche Bank Securities Inc. ("Deutsche Bank") (collectively called the "144A Defendants"), initial purchasers for a private placement of Refco Group Ltd., LLC ("Refco" or the "Company") bonds, submit this memorandum in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Count Three of the Second Amended Consolidated Class Action Complaint for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

This Court previously dismissed Plaintiffs' Section 11 claim against the 144A Defendants. Seeking another bite at the apple, Plaintiffs contend that the 144A Defendants are liable for alleged misrepresentations in the Bond Registration Statement because they "participated in the preparation" of that document. Second Amended Consolidated Class Action Complaint, dated December 3, 2007 ("SAC") ¶ 170.[1] Like their earlier efforts to plead Section 11 liability, however, Plaintiffs have "failed to make any specific allegations of 'participation' of the kind that would qualify the [144A Defendants] as underwriters of the public offering" under Section 11 of the Securities Act. *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 629-30 (S.D.N.Y. 2007). Indeed, Plaintiffs offer little more than that the 144A Defendants, or their counsel, participated in some aspects of the drafting of the Bond Registration Statement – conduct which is insufficient participation in the distribution of a security to create Section 11 liability.

This motion, thus, presents a straightforward legal question: does participation in the drafting of a bond registration statement, in circumstances in which the 144A Defendants did not

---

[1] Citations to the SAC are in the form of "SAC ¶ __."

hold themselves out in respect to the public offering, never publicly acknowledged a role in the public offering, and did not bear any risk with respect to that transaction, sufficiently create Section 11 liability? Case law suggests that it does not. Section 11 requires that underwriters purchase securities with a view to distribution, or hold themselves out as evaluating the financial condition of the issuer with respect to a particular securities offering. Here, the 144A Defendants did not bear risk in the *Exxon Capital* exchange and mere participation in drafting documents does not transform the 144A Defendants into underwriters of the registered bond offering.

Plaintiffs purport to assert one additional basis for Section 11 liability: that the 144A Defendants were liable to investors who acquired registered bonds by exchanging unregistered Rule 144A bonds for them. (SAC ¶¶ 348-61.) Plaintiffs now concede, as they must, that this Court's prior opinion forecloses the claim that any misrepresentations or omissions in the Bond Registration Statement were material for Plaintiffs who obtained registered bonds in the *Exxon Capital* exchange.[2] The claims asserted on behalf of these investors, therefore, should be dismissed for the reasons set forth in the Court's earlier opinion. *Refco*, 503 F. Supp. 2d at 636.

## FACTUAL ALLEGATIONS

The various transactions at issue in this case have been detailed in the Court's prior opinion with respect to the motions to dismiss the First Amended Consolidated Class Action Complaint. *Id.* at 620-21. Plaintiffs' description of those transactions remains unchanged. (SAC ¶¶ 107-94.) In the interest of judicial economy, the transactions are summarized in only general terms below.

---

[2] *See* Letter from Megan McIntyre, counsel to Lead Plaintiffs, to Greg A. Danilow, dated January 25, 2008, attached to the Declaration of Dawn M. Wilson, dated February 1, 2008 ("Wilson Decl."), Exhibit ("Ex.") B.

### A.    The Transactions

In June 2004, Refco issued $600 million of 9% Senior Subordinated Notes due 2012. (SAC ¶ 102.)  These bonds were unregistered pursuant to Rule 144A of the Securities Act of 1933, 17 C.F.R. § 230.144A, which exempts private placements to Qualified Institutional Buyers.  The 144A Defendants sold these unregistered notes to Qualified Institutional Buyers including Plaintiffs.  (SAC ¶¶ 18-19.)

In April 2005, Refco offered registered bonds pursuant to a Bond Registration Statement. (SAC ¶ 165.)  In this offering, Refco allowed holders of unregistered bonds to exchange their bonds for registered bonds in an *Exxon Capital* exchange.  (SAC ¶¶ 108-09.)  The co-issuers for the Registered Bonds were Refco Group and its wholly owned subsidiary, Refco Finance.  (SAC ¶ 167.)  The Bond Registration Statement, pursuant to which the exchange offer was made, does not identify the 144A Defendants as underwriters.  *See* Refco Group Ltd., LLC Securities Registration (Form S-4) ("Bond Registration Statement") (Wilson Decl., Ex. C).

### B.    Plaintiffs' Claims

Count Three of the Second Amended Complaint avers that the 144A Defendants violated Section 11 of the Securities Act.  The gravamen of the count is that the 144A Defendants, or their counsel, participated in the drafting of the Bond Registration Statement.  In particular, Plaintiffs assert that the 144A Defendants, either on their own or through counsel:

- Provided comments on the Company's timetable for responding to SEC comments on the offering statement.  *See* SAC ¶ 175 ("[T]he plan is to address the comments  .  .  .  with a target of filing the amended [Bond Registration Statement] early in the week of January 17") (internal quotation omitted); *see also* SAC ¶¶ 171, 176;

- Provided comments by phone and in writing on drafts of the Bond Registration Statement.  *See* SAC ¶ 356 (alleging that the Bond Registration Statement "was prepared with significant participation from the [144A Defendants] – including participation in drafting sessions by the [144A

Defendants] both individually and through their counsel"); SAC ¶ 177 ("Cravath sent Weil an email attaching . . . comments on [the Bond Registration Statement]") (internal quotation omitted); SAC ¶¶ 173-74; SAC ¶ 171 ("The SEC's comments on the initial Bond Registration Statement . . . were circulated . . . to each of the [144A Defendants]"); ¶ 177 ("Weil sent representatives of the [144A Defendants] . . . a copy of the SEC's comment letter on Amendment No. 2 to the Bond Registration Statement"); *see also* SAC ¶¶ 172, 178-80; and

- Provided comments on the Company's timetable for registering the unregistered notes.  *See* SAC ¶ 171.

Although the Complaint asserts that the 144A Defendants, or their counsel, participated in the drafting of the Bond Registration Statement, it includes no allegations that the 144A Defendants participated in the distribution of the registered securities.  In particular, there are no allegations that the 144A Defendants publicly promoted the exchange, offered a view about the value of the registered bonds, distributed registered securities to the public, or otherwise bore any risk in connection with the exchange.

**ARGUMENT**

**I.**

**THE 144A DEFENDANTS ARE NOT LIABLE UNDER SECTION 11 OF THE SECURITIES ACT FOR PARTICIPATION IN THE DRAFTING OF THE BOND REGISTRATION STATEMENT**

Plaintiffs assert that the 144A Defendants are liable under Section 11 of the Securities Act because they, or their counsel, participated in the drafting of the Bond Registration Statement.[3]  Even if Plaintiffs had adequately alleged such conduct, it would be insufficient to support liability under the Securities Act.  Except in limited circumstances, Section 11 requires

---

[3] The 144A Defendants dispute Plaintiffs' characterization of their participation in connection with the *Exxon Capital* exchange.  However, in accordance with Second Circuit precedent, the Court must "accept[] the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party."  *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 100 (2d Cir. 2001).

4

that an underwriter participate in the distribution of a security.  Absent allegations of distribution activity, Count Three should be dismissed.

As an initial matter, the 144A Defendants were not underwriters of this offer – and the offer appears to have no underwriter at all.  *See* Wilson Decl., Ex. C.  To be an "underwriter" for purposes of Section 11 liability one must: (1) participate in the distribution of the securities and (2) bear some risk that the securities will not be able to be sold to the public.[4]  *See, e.g.*, *Ingenito v. Bermec Corp.*, 441 F. Supp. 525, 536 (S.D.N.Y. 1977) (stating that to be an underwriter one must participate "in the distribution of securities to the public"); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 645 (N.D. Cal. 1980) (dismissing Section 11 claims when defendant did not "bear[ ] the risk of being unable to sell those shares to the investing public").  Once the 144A unregistered notes were purchased by Qualified Institutional Buyers, the 144A Defendants are not alleged to have distributed or sold the registered securities to anyone.  Nor does the Complaint allege that the 144A Defendants otherwise solicited any further buyers or assumed any risk that the notes would not be sold publicly.

A.    <u>Section 11 Requires Distribution Activity</u>

Plaintiffs now attempt to anchor their theory of liability on the allegation that the 144A Defendants directly or indirectly participated in the preparation of the Bond Registration Statement.  This claim also fails as a matter of law.  The Supreme Court has made clear that there are "certain individuals who play a part in preparing the registration statement" who

---

[4] An "underwriter" under Section 2(a)(11) is:

any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking.  .  .  .

15 U.S.C. § 77b(a)(11).

"generally cannot be reached by a Section 11 action," including "lawyers not acting as 'experts,' and accountants with respect to parts of a registration statement which they are not named as having prepared or certified." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 386 n.22 (1983); *see also In re N.Y. City Shoes Sec. Litig.*, No. 87-4677, 1988 WL 80125, at *4 (E.D. Pa. July 8, 1988) (finding third party plaintiff underwriter's Section 11 allegations that counsel to the underwriters "merely drafted the preliminary prospectus, prospectus, and registration statement and [was] listed in the prospectus as having passed on certain legal matters relating to the . . . offering [were] insufficient to withstand a motion to dismiss for failure to state a claim"); *Escott v. Barchris Constr. Corp.*, 283 F. Supp. 643, 683 (S.D.N.Y. 1968) ("To say that the entire registration statement is expertised because some lawyer prepared it would be an unreasonable construction of [Section 11]").

The conduct which may subject an entity to Section 11 liability is participation in distribution. Generally, distribution encompasses "underwriting risk assumed by the first underwriter," or participation "in the underwriting or outright purchase" of the offering to sell to the public. *In re WorldCom Sec. Litig.*, 308 F. Supp. 2d 338, 343 (S.D.N.Y. 2004) (citing to H.R. Rep. No. 85, 73rd Cong., 1st Sess. 13 (1933) (emphasis omitted)). As the Eighth Circuit has observed:

> The congressional intent in defining "underwriter" was to cover all persons who might operate as conduits for the transfer of securities to the public. . . . Thus, "underwriter" is generally defined in close connection with the definition and meaning of "distribution."

*Ackerberg v. Johnson*, 892 F.2d 1328, 1335-36 (8th Cir. 1989) (*citing, e.g., Ingenito*, 441 F. Supp. at 535 ("It is apparent that to be an underwriter within the meaning of the [Securities Act], one must participate, in some manner, in the distribution of . . . securities to the public")).

Thus, "[i]t is crucial to the definition of 'underwriter' that any underwriter must participate in the distribution of a security." *McFarland*, 493 F. Supp. at 644.

For example, in *McFarland*, the district court highlighted the significance of risk-bearing in the determination of an entity's status as an underwriter. *Id*. at 645. In that case, plaintiffs alleged that a group of fourteen individuals and entities (the "warrantholders") who sold warrants to purchase over 500,000 shares of Memorex stock to the underwriters of Memorex's public offering were statutory "underwriters" of that transaction. *Id.* at 635, 644. The plaintiffs argued that the warrantholders "participated" in the distribution within the meaning of Section 11 "because they received substantial proceeds from their sale of the warrants to the underwriters." *Id.* at 644. In dismissing the Section 11 claim against the warrantholders, the court emphasized that the warrantholders never owned Memorex stock, and "took no [] risk and received no corresponding reward" with respect to the success or failure of the offering. *Id.* at 645 ("Because the warrantholders took no similar risk and received no corresponding reward [to that of the underwriters], it would be anomalous to include them within the definition of underwriter along with those who engaged in the selling effort"). The court declined to "strain the definition of a statutory term" to apply Section 11 to the non-risk-bearing warrantholders. *Id.*; *see also In re Activision Sec. Litig.*, 621 F. Supp. 415, 423 (D.C. Cal. 1985) (following the *McFarland* court's emphasis on risk as a consideration in determination of whether party performed function of an underwriter).

As with the First Amended Complaint, the failure to include allegations that the 144A Defendants bore any risk with respect to the *Exxon Capital* exchange is fatal to the claim.

## B.    Participation in Drafting Is Insufficient To Impose Section 11 Liability

Plaintiffs gloss over this defect, suggesting, instead, that participation in the drafting of the Bond Registration Statement is independently sufficient under Section 11. Absent status as a

qualified independent underwriter – a status inapplicable to a Rule 144A offering – courts have never construed the drafting of an offering document as participation within the meaning of Section 11. *See generally* 2 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* §7.4[2][B][2] at 94 (5th ed. 2002) ("Section 11 does not provide bases for suing someone who simply prepares or drafts a registration statement"). We are aware of no authority that reaches a contrary result. We understand footnote 15 of the Court's prior opinion as consistent with this prior law as it invites Plaintiffs to identify the 144A Defendants' participation in connection with the registered offering so that it can be assessed against the distribution standards for Section 11 liability that the Court detailed at pages 628-30 of the Court's opinion:

> Of course, if the Court has misconstrued the complaint and the plaintiffs intended to allege some other participation in the creation of the Bond Registration Statement, plaintiffs can seek leave to file an amended complaint explaining the participation on which they rely.

503 F. Supp. 2d at 630, n.15.

Liability for those who have not distributed, offered or sold securities to the public has been limited to qualified independent underwriters. *Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392 (7th Cir. 1995). Under the unique facts of *Harden*, in which NASD rules require the participation of a qualified independent underwriter in any offering where the underwriter itself is affiliated with the issuer, the special status underwriter is presumed to distribute securities. *Id.* at 1400 (a qualified independent underwriter was "necessary to the distribution of . . . securities" to serve as a proxy for an otherwise affiliated underwriter). In the absence of a qualified independent underwriter, the offering could not be consummated. *Id.* at 1401.

The structure of an *Exxon Capital* exchange distinguishes *Harden* from the case at bar. No underwriter is required for an *Exxon Capital* exchange. *See In re Adelphia Commc'ns Corp. Sec. & Deriv.*, No. 03 MD 1529, 2007 WL 2615928, at *9 (S.D.N.Y. Sept. 10, 2007)

(recognizing that the *Harden* definition of "underwriter" is limited to qualified independent underwriters and, therefore, is "a decision of no moment here because it dealt with an entirely different animal, the 'qualified independent underwriter,' that accepts § 11 liability per NASD regulations").

Indeed, the courts traditionally have been reluctant to impose Section 11 liability on those who serve as drafters of registration documents. The limited exposure of drafting attorneys under Section 11 was underscored by the Supreme Court in *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983). In *Huddleston*, plaintiffs asserted Section 11 claims against, among others, underwriters' counsel. Although the attorneys had drafted the registration statement for a note offering, the Supreme Court reasoned that "certain individuals who play a part in preparing the registration statement generally cannot be reached by a Section 11 action." *Id.* at 387, n.22; *see also Escott*, 283 F. Supp. at 683 (law firms that were "responsible for the entire" registration statement are not liable under Section 11 because they did not expertise that statement); *SEC v. North American Res. & Dev. Corp.*, 280 F. Supp. 106, 128 (S.D.N.Y. 1968) (the preparation of sales literature has been found insufficient to create underwriter status); *In re Flight Transport Corp. Sec. Litig.*, 593 F. Supp. 612 (D. Minn. 1984) (underwriter's counsel not expert for purposes of Section 11 merely as result of preparing registration statement); *N.Y. City Shoes*, 1988 WL 80125, at *3 (same). Just as legal scriveners do not face Section 11 liability, neither should those alleged to have provided commentary on the issuer's registration statement.

The policy reason animating the limitation of liability for scriveners is clear. The only speakers in the offering document for an *Exxon Capital* exchange are the issuer and others who may sign the offering documents. The market has no anticipation of reliance upon any entity whose participation in the drafting of the document is not identified and which does not hold

itself out as an expert for the offering.  For not dissimilar reasons, the Supreme Court recently

rejected "scheme liability" under Section 10(b), 15 U.S.C. § 78j, insofar as defendants had not

made a public statement.  *Cf.  Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct.

761 (2008).

## CONCLUSION

For the foregoing reasons, the 144A Defendants respectfully request that Count Three of

the Second Amended Complaint be dismissed with prejudice.

Dated: New York, New York
       February 1, 2008

WILMER CUTLER PICKERING
HALE AND DORR LLP


By:   /s/ Robert B. McCaw
     Robert B. McCaw
     Lori A. Martin
     John V.H. Pierce
     Dawn M. Wilson
     Michael L. Feinberg

     399 Park Avenue
     New York, New York 10022
     Tel.: (212) 230-8800
     Fax: (212) 230-8888

     *Attorneys for Defendants Credit Suisse
     Securities (USA) LLC, Banc of America
     Securities LLC, Deutsche Bank Securities,
     Inc.*
