UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re REFCO, INC. SECURITIES LITIGATION

-------------------------------------------------------------x
-------------------------------------------------------------x

MARC S. KIRSCHNER,
As Trustee of the Refco Litigation Trust,

        Plaintiff,

  -vs.-

GRANT THORNTON LLP, MAYER BROWN,
ROWE & MAW, LLP, et al., ERNST & YOUNG
U.S. LLP., PRICEWATERHOUSECOOPERS LLP,
CREDIT SUISSE SECURITIES (USA) LLC, (f/k/a
CREDIT SUISSE FIRST BOSTON LLC), BANC
OF AMERICA SECURITIES LLC, DEUTSCHE
BANK SECURITIES INC., PHILLIP R. BENNETT,
SANTO C. MAGGIO, ROBERT C. TROSTEN,
TONE N. GRANT, REFCO GROUP HOLDINGS,
INC., LIBERTY CORNER CAPITAL
STRATEGIES, LLC, WILLIAM T. PIGOTT, EMF
FINANCIAL PRODUCTS, LLC, EMF CORE
FUND, LTD., DELTA FLYER FUND, LLC, ERIC
M. FLANAGAN, INGRAM MICRO, INC., CIM
VENTURES, INC., BECKENHAM TRADING CO.,
INC., ANDREW KRIEGER, COAST ASSET
MANAGEMENT, LLC (f/k/a COAST ASSET
MANAGEMENT LP), CS LAND MANAGEMENT,
LLC, and CHRISTOPHER PETITT,

        Defendants.

-------------------------------------------------------------x

CONFIDENTIAL – PORTIONS OF
THIS DOCUMENT HAVE BEEN
REDACTED.

07 MDL No. 1902 (GEL)

Kirschner v. Grant Thornton LLP et al.
No. 07 Civ. 11604 (GEL)

ECF Filed

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF THE INVESTMENT BANKS'
MOTION TO DISMISS CLAIMS 15, 34, 35, 36, 43 AND 44 OF THE COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL ALLEGATIONS ............................................................................................2

    A.   The Trustee Asserts Claims Standing in the Shoes of Refco Entities. ........................2

    B.   The Refco Insiders Engaged in a Years-Long Fraudulent Scheme. ...........................4

    C.   Several Years into the Refco Insiders' Fraudulent Scheme, Refco Underwent
        an LBO and IPO............................................................................................................4

ARGUMENT ..................................................................................................................6

I.     THE TRUSTEE LACKS STANDING TO BRING THESE CLAIMS ON BEHALF
      OF REFCO......................................................................................................................6

    A.   The Trustee Lacks Standing to Assert a Claim Against the Investment Banks
        on Behalf of RCM (15th Claim). .................................................................................6

        1.   The Trustee Has Not Alleged an Injury to RCM Beyond the Alleged Injury
            to Its Creditors.................................................................................................6

        2.   The Complaint Alleges That RCM's Management and Controlling
            Shareholders Were Active Participants in the Alleged Wrongdoing...................8

    B.   The Trustee Lacks Standing to Assert Claims Against the Investment Banks
        on Behalf of RGL (34th, 35th and 36th Claims). ......................................................10

        1.   The Trustee Has Not Alleged an Injury to RGL Beyond the Alleged Injury to
            Its Creditors...................................................................................................10

        2.   The Complaint Alleges That RGL's Management and Controlling
            Shareholders Were Active Participants in the Alleged Wrongdoing...................11

    C.   The Trustee Lacks Standing to Assert Claims Against the Investment Banks
         on Behalf of Refco Inc. (43rd and 44th Claims)........................................................12

        1.   The Trustee Has Not Alleged an Injury to Refco Inc. Beyond the Alleged
            Injury to Its Creditors....................................................................................12

        2.   The Complaint Alleges That Refco's Management Was Complicit in the
            Alleged Wrongdoing.......................................................................................13

II.    THE TRUSTEE'S CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6).......14

    A.   The Trustee Has Failed to State a Claim for Aiding and Abetting a Breach of
        Fiduciary Duty (15th, 36th and 44th Claims). ...........................................................14

        1.   The Trustee Has Failed Adequately to Allege That the Investment Banks
            Aided and Abetted a Breach of Fiduciary Duties to RCM (15th Claim).............14

i

2.  The Trustee Has Failed Adequately to Allege That the Investment Banks Aided and Abetted a Breach of Fiduciary Duties to RGL (36th Claim). ............18

3.  The Trustee Has Failed Adequately to Allege That the Investment Banks Aided and Abetted a Breach of Fiduciary Duties to Refco Inc. (44th Claim).....20

B.  The Trustee Has Failed to State a Claim for Malpractice or Negligent Misrepresentation Against Credit Suisse (34th, 35th and 43rd Claims)....................21

1.  RGL's Malpractice and Negligent Misrepresentation Claims Should Be Dismissed (34th and 35th Claims)....................................................................21

2.  Refco Inc.'s Malpractice Claim Should Be Dismissed (43rd Claim)..................24

CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*American Tissue, Inc. v. Arthur Andersen L.L.P.*,
    275 F. Supp. 2d 398 (S.D.N.Y. 2003)...............................................................24

*American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corp.*,
    351 F. Supp. 2d 79 (S.D.N.Y. 2004)........................................................ *passim*

*American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corp.*,
    233 F.R.D. 327 (S.D.N.Y. 2005) ...............................................................10, 12

*Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*,
    545 A.2d 1171 (Del. 1988) ..........................................................................16

*Apostolou v. Fisher*,
    188 B.R. 958 (N.D. Ill. 1995), ), *aff'd in relevant part*, 155 F.3d 876 (7th Cir. 1998) ...........13

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*,
    754 F.2d 57 (2d Cir. 1985)...........................................................................21

*Brown v. Deloitte & Touche, LLP*,
    No. 98 Civ. 6054, 1999 WL 269901 (S.D.N.Y. May 4, 1999)............................9, 10

*Buechner v. Avery*,
    836 N.Y.S.2d 1 (N.Y. App. Div. 2007) ..............................................................13

*Cobalt Multifamily Investors I, LLC v. Shapiro*,
    No. 06 Civ. 6468, 2008 WL 833237 (S.D.N.Y. Mar. 28, 2008) ........................9, 12

*Colnaghi, USA, Ltd. v. Jewelers Protection Services Ltd.*,
    81 N.Y.2d 821 (N.Y. 1993) ..........................................................................22

*Deutsche Lufthansa AG v. Boeing Co.*,
    No. 06 CV 7667, 2007 WL 403301 (S.D.N.Y. Feb. 2, 2007) ................................22

*Global Crossing Estate Representative v. Winnick*,
    No. 04 Civ. 2558, 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) ...........................11

*Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    No. 00 Civ. 8688, 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003)........................15

*Hirsch v. Arthur Andersen & Co.*,
    178 B.R. 40 (D. Conn. 1994), *aff'd*, 72 F.3d 1085 (2d Cir. 1995) ................7, 8, 11

*Hirsch v. Arthur Andersen & Co.,*
    72 F.3d 1085 (2d Cir. 1995)..................................................................2, 6, 12

*In re Alphastar Insurance Group Ltd.,*
    383 B.R. 231 (Bankr. S.D.N.Y. 2008)..................................................................14

*In re Bennett Funding Group, Inc.,*
    336 F.3d 94 (2d Cir. 2003)..................................................................8, 10, 12, 14

*In re Centennial Textiles, Inc.,*
    227 B.R. 606 (Bankr. S.D.N.Y. 1998)..................................................................16, 21

*In re Global Crossing, Ltd. Securities Litigation,*
    Nos. 02 Civ. 910, 10199, 2003 WL 21659360 (S.D.N.Y. July 15, 2003)...............................24

*In re Mediators, Inc.,*
    105 F.3d 822 (2d Cir. 1997)..................................................................10

*In re Parmalat Securities Litigation,*
    383 F. Supp. 2d 587 (S.D.N.Y. 2005)..................................................................6, 12, 14

*In re Parmalat Securities Litigation,*
    501 F. Supp. 2d 560 (S.D.N.Y. 2007)..................................................................21

*In re RSL Com Primecall, Inc.,*
    Civ. Nos. 01-11457, 01-11469, 2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003).........16

*In re Refco Inc. Securities Litigation,*
    503 F. Supp. 2d 611 (S.D.N.Y. 2007)..................................................................3

*In re Sharp International Corp.,*
    302 B.R. 760 (E.D.N.Y. 2003), *aff'd*, 403 F.3d 43 (2d Cir. 2005) ...................................16, 17

*In re Sharp International Corp.,*
    403 F.3d 43 (2d Cir. 2005)..................................................................14, 17

*Industrial Risk Insurers v. Port Authority of NY & NJ,*
    387 F. Supp. 2d 299 (S.D.N.Y. 2005),
    *aff'd on other grounds*, 493 F.3d 283 (2d Cir. 2007).......................................................22, 23

*Kirkland & Ellis v. CMI Corp.,*
    No. 95 Civ. 7457, 1996 WL 559951 (N.D. Ill. Sept. 30, 1996).................................................6

*Kolbeck v. LIT America, Inc.,*
    939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998) .....................14, 16, 18

iv

*Korea Life Insurance Co. v. Morgan Guaranty Trust Co. of NY,*
   269 F. Supp. 2d 424 (S.D.N.Y. 2003)....................................................................................23

*Koutsoubos v. Casanave,*
   816 F. Supp. 472 (N.D. Ill. 1993) ........................................................................................6

*Latimer v. Hall Finance Group Inc.,*
   No. 90 Civ. 0156, 1991 WL 23622 (N.D. Ill. Feb. 21, 1991)...............................................6

*Lippe v. Bairnco Corp.,*
   218 B.R. 294 (S.D.N.Y. 1998)..........................................................................................9, 10

*Official Committee of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Securities Corp.,*
   No. 00 Civ. 8688, 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002) ...................................15, 20, 22

*Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand LLP,*
   322 F.3d 147 (2d Cir. 2003).................................................................................................8

*Renner v. Chase Manhattan Bank,*
   No. 98 Civ. 926, 2000 WL 781081 (S.D.N.Y. June 16, 2000)...............................................18

*Ryan v. Hunton & Willliams,*
   No. 99 Civ. 5938, 2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000)...................................15, 19

*Sedona Corp. v. Ladenburg Thalmann & Co.,*
   No. 03 Civ. 3120, 2005 WL 1902780 (S.D.N.Y. 2005) ........................................................25

*Serova v. Teplen,*
   05 Civ. 6748, 2006 WL 349624 (S.D.N.Y. Feb. 16, 2006) ...................................................23

*Shearson Lehman Hutton, Inc. v. Wagoner,*
   944 F.2d 114 (2d Cir. 1991)..........................................................................................6, 8, 9

*Trenwick America Litigation Trust v. Ernst & Young, L.L.P.,*
   906 A.2d 168 (Del. Ch. 2006)............................................................................................16

*UCAR International Inc. v. Union Carbide Corp.,*
   119 Fed. App'x 3002 (2d Cir. 2004)..................................................................................13

*VTech Holdings Ltd. v. PricewaterhouseCoopers LLP,*
   348 F. Supp. 2d 255 (S.D.N.Y. 2004)...............................................................................18

## STATUTES

N.Y. Gen. Bus. Law, art. 23-A, §§ 352 et seq ............................................................................25

Securities Litigation Uniform Standards Act, 15 U.S.C. § 77p(b) ...............................................25

Defendants Banc of America Securities LLC ("BAS"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), and Deutsche Bank Securities Inc. ("Deutsche Bank") (collectively, the "Investment Banks") respectfully submit this memorandum of law in support of their motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss claims 15, 34, 35, 36, 43 and 44 of the complaint ("Complaint") filed by Marc S. Kirschner, trustee of the Refco Litigation Trust (the "Trustee").

## PRELIMINARY STATEMENT

By the Trustee's own admission, this lawsuit asserts claims on behalf of companies that were at the center of the Refco scandal – Refco Capital Markets, Ltd. ("RCM"), Refco Group Ltd., LLC ("RGL"), and Refco Inc. (collectively, with other Refco Inc. subsidiaries defined in the Complaint, "Refco"). The Trustee seeks to recover for damages allegedly incurred when a 2004 leveraged buyout ("LBO") and a 2005 initial public offering ("IPO") supposedly made it more difficult for Refco to pay back money it allegedly stole from its customers, even though the Trustee himself alleges that: (1) the money belonged to the customers, not to the Refco entities in whose shoes the Trustee stands; (2) the customer assets were stolen years before the Investment Banks acted as initial purchasers and/or underwriters in connection with the LBO and IPO; and (3) Refco never had the ability or intent to return the customers' money in the first place.

The Trustee asserts claims, for the same supposed harm, on behalf of three different Refco entities – the entity with whom the allegedly defrauded customers had entrusted their assets (RCM), an entity to whom those assets were allegedly shifted and used to prop up Refco (RGL), and the entity that was created by the IPO (Refco Inc.). All of these companies – in whose names the Trustee is acting – were, by the Trustee's own account, packed with wrongdoers at the highest levels. The Trustee's claims against the Investment Banks should be dismissed.

1

*First*, the Trustee lacks constitutional standing to bring these claims because the

Complaint alleges injuries only to Refco's creditors (if anyone), not to the Refco entities on whose

behalf he purports to sue.  Moreover, insofar as the Complaint can be construed to allege any

injury to any Refco entity, the Trustee is barred under the Second Circuit's *Wagoner* rule (and the

doctrine of *in pari delicto*) from bringing suit to recover for damages arising from a fraudulent

scheme devised and carried out by Refco's own senior management.  (*See infra* Section I.)

*Second*, even if the Trustee had standing to bring these claims, he would be unable to

establish one or more necessary elements of each cause of action, some of which are, in any

event, duplicative of one another.  (*See infra* Section II.)

## FACTUAL ALLEGATIONS

The following is a recitation of relevant facts as alleged in the Complaint.  Although the

Court generally must accept as true, for the purposes of this motion, all well-pleaded factual

allegations, it is not bound by conclusory allegations that are contradicted by more specific

allegations in the Complaint or the documents incorporated therein.  *See Hirsch v. Arthur*

*Andersen & Co.*, 72 F.3d 1085, 1096 (2d. Cir. 1995).  Nor must the Court accept the truth of

legal conclusions masquerading as factual allegations.  *See American Tissue, Inc. v. Donaldson,*

*Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 92 n.11 (S.D.N.Y. 2004) (Lynch, J.).

### A.     The Trustee Asserts Claims Standing in the Shoes of Refco Entities.

Plaintiff Marc S. Kirschner is trustee of the Refco Litigation Trust, established under

Refco's bankruptcy plan (the "Bankruptcy Plan") to pursue claims of the debtor Refco entities.

In this action, the Trustee purports to assert claims belonging to three such entities: RGL, RCM

and Refco Inc.

2

RGL, a Delaware limited liability company whose principal place of business was New York, was the main Refco holding company prior to the LBO.[1] (Compl. ¶¶ 32(a), 35.)  The Complaint alleges that prior to the LBO, RGL was owned 90% by Refco Group Holdings, Inc. ("RGHI") and 10% by an Austrian bank closely tied to Phillip R. Bennett, RGL's former President and CEO, who recently pleaded guilty to securities fraud and other felonies. (*Id.* ¶ 35.) RGHI was, in turn, owned by Bennett and Tone N. Grant, Bennett's predecessor as CEO of RGL, who was recently convicted of securities fraud and other felonies.  (*Id.*)

RCM, a subsidiary of RGL organized under Bermuda law but whose principal place of business was also New York, was a securities and foreign exchange broker.  (*Id.* ¶ 32(b).)  Its customers allegedly entrusted it with approximately $2 billion in funds that were "routinely swip[ed]" and used by Refco "to finance RGL and other Refco affiliates that had essentially no ability and no intention of repaying the RCM customer funds." (*Id.* ¶¶ 7, 187.)

Refco Inc., a Delaware corporation whose principal place of business was New York as well, was a holding company formed in connection with the August 2005 IPO and was the issuer of the stock sold in that IPO.  (*Id.* ¶ 32(c).)  Refco Inc., along with RGL and RCM, filed for bankruptcy protection on October 17, 2005.  (*See id.* ¶ 32.)

According to the Complaint, the Investment Banks acted as initial purchasers and/or arrangers in connection with the 2004 LBO and the 2005 IPO.  (*Id.* ¶¶ 45-47.)  Credit Suisse also allegedly served, prior to the LBO, as Refco's financial advisor, but its sole alleged involvement during that period entailed aborted efforts to sell the company.  The Trustee does not allege that

---

[1] In the Complaint, originally filed in Illinois state court, the Trustee conspicuously omitted reference to New York as the principal place of business of RGL, RCM and Refco Inc.  In the several lawsuits he filed in New York, however, the Trustee acknowledged that New York was the principal place of business for those entities.  *See* Compl. ¶¶ 17, 18, 20, *Kirschner v. Agoglia*, Adv. Pro. No. 07 03060 (Bankr. S.D.N.Y. Oct. 15, 2007) (the "Adversary Proceeding").  The Adversary Proceeding complaint is attached as Exhibit A to the Declaration of Jeremy S. Winer, dated May 21, 2008 ("Winer Decl.").  It and the other documents attached to the Winer Declaration are referenced in the Complaint in this case or are "other relevant documents" (Compl. at p. 2), and therefore may be considered on the Investment Banks' motion to dismiss.  *See In re Refco Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 623 (S.D.N.Y. 2007).

those efforts to sell Refco caused any harm. (*Id.* ¶¶ 45, 111.) The Complaint does not allege that

BAS or Deutsche Bank had any involvement at all with Refco prior to, or apart from, their

participation in financing the 2004 LBO and underwriting the 2005 IPO.

**B.      The Refco Insiders Engaged in a Years-Long Fraudulent Scheme.**

The Complaint alleges that in 1997, the "Refco Insiders" (defined in the Complaint as

Bennett, Grant, Robert C. Trosten (RGL's CFO and Executive Vice President, who recently

pleaded guilty to several felonies) and Santo C. Maggio (an Executive Vice President of RGL

and President and CEO of RCM, who also pleaded guilty to several felonies)) devised an

elaborate, three-part fraudulent scheme by which they would prop up the value of Refco and

eventually cash out their interests in Refco for more than they were really worth. (*Id.* ¶¶ 1, 59.)

The first part of the alleged scheme – wholly unrelated to the Investment Banks – involved

hiding hundreds of millions of dollars in Refco trading losses and operating expenses by booking

them as receivables owed to Refco by RGHI, the related-party entity owned by Bennett and

Grant. (*Id.* ¶¶ 39, 60.) The second part of the scheme – again, wholly unrelated to the

Investment Banks – involved concealing the nature and magnitude of the receivables through the

use of the now well-publicized round-trip loans ("RTLs"). At the same time, the Complaint

alleges that, in order to fund Refco's operations and convey the impression of financial stability,

the Refco Insiders allegedly misappropriated some $2 billion in RCM customer assets, which

they used to fund other Refco entities. (*Id.* ¶¶ 94-95.) The Refco entities that received the funds

allegedly lacked the ability and intent from the outset to repay RCM or its customers. (*Id.* ¶ 99.)

**C.      Several Years into the Refco Insiders' Fraudulent Scheme, Refco Underwent
          an LBO and IPO.**

The Trustee has alleged no facts that suggest the Investment Banks played any role in

either the alleged misappropriation of customer assets or the hiding of losses, both of which

4

predated the LBO and IPO. Instead, the Trustee's only allegations against the Investment Banks concern the third part of the Refco Insiders' alleged scheme. In 2004, the Refco Insiders hired the Investment Banks to act as initial purchasers with respect to a note offering, and as arrangers with respect to a credit facility, that raised money for RGL to use in connection with a leveraged buyout with the private equity firm Thomas H. Lee Partners, L.P. ("THL"). (*Id.* ¶¶ 45-47, 112-13, 317.) The Trustee alleges that the LBO damaged both RCM and RGL by supposedly "subordinating" the receivables due to RCM from RGL – receivables that the Trustee elsewhere contends arose from the diversion of "customer assets" to RGL, and that RGL never had the ability or intent to repay in any event – to $1.4 billion in new LBO debt. (*Id.* ¶¶ 187, 313, 317, 584.)

Less than a year later, shares of the newly created Refco Inc. were sold to the public in an IPO, for which the Investment Banks and others were underwriters. (*Id.* ¶ 10.) The Trustee alleges that the IPO harmed Refco Inc. – even though it would not have existed but for the IPO, and even though the IPO brought money into Refco rather than taking it out – by rendering it unable to repay its obligations, including its supposed debts to RCM. (*Id.* ¶ 622.)

The Trustee asserts claims against all of the Investment Banks for aiding and abetting breach of fiduciary duty (on behalf of RCM, RGL and Refco Inc.), and additional claims against Credit Suisse for malpractice (on behalf of RGL and Refco Inc.) and negligent misrepresentation (on behalf of RGL).

## ARGUMENT

### I.    The Trustee Lacks Standing to Bring These Claims on Behalf of Refco.

Under controlling New York law,[2] a trustee who purports to sue on behalf of a debtor

corporation lacks standing to do so if either (i) he fails to plead an injury to the debtor apart from

damage to the corporation's creditors, or (ii) the debtor's own management was complicit in the

wrongdoing alleged to have damaged the corporation. *See Shearson Lehman Hutton, Inc. v.*

*Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991); *American Tissue*, 351 F. Supp. 2d at 89-90. Here,

the Trustee fails both tests. He seeks to recover for alleged harm to Refco that is coextensive

with the harm, if any, to its creditors, and that was caused by the alleged wrongdoing of the

owners and management of Refco itself. The Trustee lacks standing to bring these claims.

#### A.    The Trustee Lacks Standing to Assert a Claim Against the Investment Banks on Behalf of RCM (15th Claim).

##### 1.    The Trustee Has Not Alleged an Injury to RCM Beyond the Alleged Injury to Its Creditors.

Although it is settled law that a bankruptcy trustee cannot sue to recover for injury to a

debtor's creditors, *see Hirsch v. Arthur Andersen*, 72 F.3d at 1093; *American Tissue*, 351 F.

---

[2] Because the Trustee filed this lawsuit in Illinois state court and it was transferred to this Court by the MDL Panel, Illinois' choice-of-law rules apply in determining which state's law is controlling. *See In re Parmalat*, 383 F. Supp. 2d 587, 593 (S.D.N.Y. 2005). Illinois courts apply a "most significant contacts" test to causes of action like those asserted by the Trustee. *See, e.g., Koutsoubos v. Casanave*, 816 F. Supp. 472, 475 (N.D. Ill. 1993) (aiding and abetting breach of fiduciary duty); *Kirkland & Ellis v. CMI Corp.*, No. 95 Civ. 7457, 1996 WL 559951, at *5 (N.D. Ill. Sept. 30, 1996) (malpractice); *Latimer v. Hall Fin. Group Inc.*, No. 90 Civ. 0156, 1991 WL 23622, at *1 (N.D. Ill. Feb. 21, 1991) (negligent misrepresentation). Under that test, New York law applies to the Trustee's claims against the Investment Banks because, *inter alia*: (i) New York is the location in which the "key events" that purportedly give rise to the claims took place (*see, e.g.*, Compl. ¶ 15, *Kirschner v. Thomas H. Lee Partners, L.P.*, No. 07 Civ. 07074 (S.D.N.Y. Nov. 21, 2007) (Winer Decl. Ex. B) (alleging that jurisdiction in the Southern District of New York was proper because "[m]any of the events and transactions alleged herein occurred in this District")); (ii) New York was the principal place of business of all of the Refco entities on whose behalf the Trustee purports to sue, as well as the corporate headquarters for Refco (*id.* ¶¶ 18, 20, 23); and (iii) New York is the principal place of business of the Investment Banks, as well as the location in which those banks performed the work for which the Trustee claims they are liable (*id.* ¶¶ 15-16; Transfer Order, *In re Refco Sec. Litig.*, MDL No. 1902 (J.P.M.L. Dec. 28, 2007) (noting that "the Southern District of New York stands out as an appropriate transferee forum" because, *inter alia*, "Refco was headquartered there, as are the various investment banks" and "the Refco bankruptcy proceedings, as well as related criminal proceedings involving several of [Refco's] former officers, are also pending in the Southern District of New York") (Winer Decl. Ex. C)). Moreover, the IPO underwriting agreement between Refco Inc. and the Investment Banks (Winer Decl. Ex. D at p. 21) and the Purchase Agreement for the notes issued in connection with the LBO (Winer Decl. Ex. E at p. 20), ██████████████████████████ ████████████████████████ all contain choice-of-law provisions designating New York law as governing.

Supp. 2d at 90, the Trustee attempts to do just that. He asserts a claim (purportedly standing in RCM's shoes) to recover assets that RCM allegedly stole from its customers and transferred to other Refco entities. The $2 billion-plus that the Trustee seeks to recover on behalf of RCM (Compl. ¶ 444) corresponds precisely to the $2 billion-plus allegedly expropriated from RCM's customers (*id.* ¶ 352) and transferred to other Refco affiliates (*id.* ¶ 444). Not only is there thus complete symmetry between the damages claimed in the Complaint on behalf of RCM and the amount RCM allegedly misappropriated from its customers, but the Trustee also asserts repeatedly that the assets transferred from RCM to other Refco entities were not RCM's own property, but rather were "customer assets."[3] Indeed, the Trustee (wearing a different hat) has brought a separate lawsuit on behalf of RCM foreign exchange customers to recover those very same funds. *See* Compl., *Kirschner v. Bennett*, No. 07602896 (N.Y. Sup. Ct. Aug. 27, 2007) (suit on behalf of customers in Trustee's capacity as trustee of Refco Private Actions Trust) (Winer Decl. Ex. G).[4]

The Trustee has thus alleged no more than that RCM was damaged to the extent that it was unable to return what he asserts were its customers' stolen assets. *Cf. Hirsch v. Arthur Andersen & Co.*, 178 B.R. 40, 43 (D. Conn. 1994) ("Recognizing that he cannot assert claims against the defendants on behalf of the creditors, the Trustee alleges damage to the debtors, to the extent of the unpaid obligations of the debtors to the creditors."), *aff'd*, 72 F.3d at 1085. Because the purported injury to RCM is coextensive with the alleged injury to its customers, and because the Complaint pleads that the assets in question were the property of the customers (not of RCM),

---

[3] *See, e.g.*, Compl. ¶¶ 4, 7, 59, 74, 95-96, 100-01, 103-05, 126(d), 181, 188, 289, 305, 309, 316, 318, 325, 353.

[4] That the alleged injury to RCM corresponds precisely to the amounts allegedly stolen from its customers is made even more clear in the Trustee's separate suit on behalf of the foreign exchange customers. In that lawsuit (in which the Investment Banks are not accused of wrongdoing), the Trustee asserts that "over $2 billion of entrusted customer assets had been wrongfully siphoned from the accounts of RCM customers." Compl. ¶ 5, *Kirschner v. Bennett* (Winer Decl. Ex. G); *see also* Second Am. Consol. Class Action Compl., *In re Refco Cap. Mkts., Ltd. Brokerage Customer Sec. Litig.*, No. 06 Civ. 643 (S.D.N.Y. Dec. 21, 2007) (Winer Decl. Ex. H) (putative class action by securities brokerage customers of RCM).

the Trustee lacks standing to sue. *See American Tissue*, 351 F. Supp. 2d at 90 ("Insofar as ATI

seeks to recover money owed to creditors, it lacks standing."); *Hirsch*, 178 B.R. at 43 (where a

"trustee alleges that the debtors suffered injuries identical to those of the creditors . . . it is the

individual creditors, rather than the trustee, who may seek recovery from the defendants"); *see also*

*In re Bennett Funding Group, Inc.*, 336 F.3d 94, 100 (2d Cir. 2003); *Wagoner*, 944 F.2d at 118.[5]

> ### 2.    The Complaint Alleges That RCM's Management and Controlling Shareholders Were Active Participants in the Alleged Wrongdoing.

Even if there were an injury to RCM distinct from the supposed injury to its creditors, the

Trustee would be barred from bringing suit on behalf of RCM because RCM, through its

management and controlling shareholders, was complicit in the alleged wrongdoing. *See, e.g.,*

*Wagoner*, 944 F.2d at 120. The Refco Insiders alleged to have orchestrated the fraud in fact

dominated and controlled RCM. Two of those insiders, Bennett (who pleaded guilty to criminal

charges in connection with his conduct at Refco) and Grant (who was convicted of several

felonies after a jury trial) were the controlling shareholders of RCM through its parent company,

RGL. The only other, minority owner was BAWAG, an Austrian bank "closely tied to Bennett"

(*see* Compl. ¶¶ 32(a), 35) that was sued by the Refco creditors' committee for participating in the

fraud and has, in fact, admitted to wrongdoing.[6] And both Bennett and Maggio were RCM

officers and board members. (*Id.* ¶ 37.) By the Trustee's own allegations, therefore, RCM was

both owned and operated by wrongdoers. Accordingly, because the misconduct of its insiders is

---

[5] That the Trustee's Complaint alleges that the funds in question were the property of RCM customers does not, of course, make that so; nor does it mean that the customers themselves could establish that they suffered any non-derivative injuries for which they would have standing to sue. It simply means that the Trustee's own Complaint does not plead any injury to RCM or any other Refco entity and, hence, must be dismissed for lack of standing. *See, e.g., Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (a "plaintiff can plead himself out of court by alleging facts which show that he has no claim" (internal citation and quotation marks omitted)).

[6] *See* Amended Answer, Affirmative Defenses, and Counterclaims, *BAWAG P.S.K. Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft v. Refco Inc.*, Adv. Pro. No. 05-03161 (Bankr. S.D.N.Y. Apr. 21, 2006) (asserting counterclaims against BAWAG, on behalf of RGL, for, *inter alia*, aiding and abetting breach of fiduciary duty) (Winer Decl. Ex. I); Final Report of the Court-Appointed Indep. Exam'r in the Bankr. Proceedings at 20 n.9 (Winer Decl. Ex. J) (noting that "BAWAG made significant admissions concerning its role in the fraudulent transactions" at Refco).

imputed to RCM as a matter of law, the Trustee is barred from bringing suit. *See Lippe v. Bairnco Corp.*, 218 B.R. 294, 302 (S.D.N.Y. 1998) (misconduct of debtor's affiliate companies and directors and officers imputed to debtor corporation on motion to dismiss, depriving trustees of standing); *see also Wagoner*, 944 F.2d at 120; *Cobalt Multifamily Investors I, LLC v. Shapiro*, No. 06 Civ. 6468, 2008 WL 833237, at *3-4 (S.D.N.Y. Mar. 28, 2008); *Brown v. Deloitte & Touche, LLP*, No. 98 Civ. 6054, 1999 WL 269901, at *2 (S.D.N.Y. May 4, 1999).

The "adverse interest" exception to the *Wagoner* rule – whereby management's misconduct is not imputed to a company if undertaken *exclusively* for personal benefit and in *complete* derogation of the company's interests – does not apply here. *See Cobalt*, 2008 WL 833237, at *4 ("For the exception to apply, 'the [wrongdoer] must have *totally abandoned* [the corporation's] interests and be acting *entirely* for his own or another's purposes.'") (citation omitted). Although the Complaint contains a boilerplate assertion that the Refco Insiders "totally abandon[ed] the Company's interests" and conferred "absolutely no benefit" on Refco (Compl. ¶ 12), the Trustee concedes elsewhere that the RCM customer assets were, in fact, used to benefit various Refco entities, including RGL. (*See id.* ¶ 189 ("At all relevant times, the affiliated companies lacked the financial intent and/or wherewithal to repay RCM, the loans had no legitimate business purpose for RCM *but benefited only the affiliates*" (emphasis added)); *id.* ¶¶ 4, 7, 97-98, 181.)[7] Indeed, as alleged, the Insiders' scheme was inextricably tied to Refco's success in the marketplace; it was designed to benefit Refco – at least temporarily – and thus the fortunes of its primary equity holders, the Refco Insiders. (*See, e.g., id.* ¶ 74.) Moreover, the only activities with which the Investment Banks are alleged to have been involved were the LBO and IPO (not

---

[7] *See also Cobalt*, 2008 WL 833237, at *4 (adverse interest exception does not apply where allegations demonstrate that insiders' misconduct "provided at least some financial benefit to the Cobalt entities").

the transfer of assets from RCM to its affiliates), both of which raised money for Refco and therefore were not solely for the personal benefit of the Refco Insiders. (*See id.* ¶¶ 113, 340.)[8]

In any event, the adverse interest exception is inapplicable when the alleged misconduct was engaged in by the corporation's sole shareholders. *See In re Bennett Funding*, 336 F.3d at 101 (citing *In re Mediators, Inc.*, 105 F.3d 822, 827 (2d Cir. 1997)). That is the case here, where RCM's only shareholders – Bennett, Grant and BAWAG – were, by the Trustee's own allegations, complicit in wrongdoing. *See Brown*, 1999 WL 269901, at *2 (trustee lacked standing to sue outside advisors on behalf of debtor corporation whose parent and sole shareholder "siphoned off" its assets); *Lippe*, 218 B.R. at 297-98, 302 (same).[9]

### B. The Trustee Lacks Standing to Assert Claims Against the Investment Banks on Behalf of RGL (34th, 35th and 36th Claims).

#### 1. The Trustee Has Not Alleged an Injury to RGL Beyond the Alleged Injury to Its Creditors.

The Trustee's lack of standing to bring suit on behalf of RGL is, if anything, even more clear. The Trustee alleges that RGL was injured when the LBO rendered it unable to repay RCM (which, in turn, rendered RCM unable to return its customers' allegedly looted assets). (*Compare* Compl. ¶ 443 (asserting a claim on RCM's behalf for "devising and facilitating an LBO through which the RCM receivables were subordinated to $1.4 billion in new LBO debt,

---

[8] With respect to the LBO, the offering circular for the notes made clear that $400 million would be used to pay down existing Refco debt, and that an additional $75 million would be available to Refco for "working capital and general corporate purposes." (*See* July 22, 2004, Confidential Offering Circular (Winer Decl. Ex. K at pgs. 8-9); *see also* Compl. ¶ 113 (acknowledging that only a fraction of the LBO proceeds went to the Refco Insiders).) As for the IPO, the Trustee himself acknowledges that it "generated $258,500,000 in proceeds for Refco Inc." (*Id.* ¶ 340).

[9] The Trustee's contrived reference to a single so-called innocent RCM director and to one supposedly innocent alternative director (*id.* ¶ 101) does not save the Trustee's claim when the Complaint demonstrates that individuals at the highest levels of RCM management were complicit in – indeed, directed and controlled – the alleged fraud, and when the Complaint does not allege any facts suggesting that the supposed innocent insiders could have done anything meaningful to stop the fraud. *See In re Bennett Funding*, 336 F.3d at 101 ("[E]ach so-called independent director was impotent to actually do anything. The trustee seems to believe that the *Wagoner* rule is defeated by a would-a, could-a, should-a test but that is simply not the law."); *see also American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 233 F.R.D. 327, 330 (S.D.N.Y. 2005) (Lynch, J.) (rejecting as a matter of law the "innocent insider" theory "at least . . . where plaintiff's own complaint demonstrates its participation in the very fraudulent acts on which it seeks to sue").

leaving Refco with no meaningful capital with which to repay RCM") *with id.* ¶ 583 (asserting a claim on RGL's behalf for "advising and facilitating an LBO through which . . . RCM's right to repayment was subordinated to $1.4 billion in new LBO debt, thereby leaving RGL unable to satisfy its obligations, including repaying the RCM intercompany loans"); *see also id.* ¶¶ 579, 584.) Again, there is no allegation of distinct harm to the relevant Refco entity beyond an injury to its supposed creditor – in this case RCM, which in turn suffered no injury beyond the alleged injury to its own creditors. (*Compare id.* ¶ 444 (alleging that RCM suffered damages "in excess of $2 billion" from the transfer of customer assets to other Refco entities) *with id.* ¶ 579 (alleging that RGL suffered damages "in excess of $2 billion" from the LBO).) The Trustee is therefore without standing to bring these claims. *See American Tissue*, 351 F. Supp. 2d at 90-91; *Hirsch*, 178 B.R. at 43.

### 2. The Complaint Alleges That RGL's Management and Controlling Shareholders Were Active Participants in the Alleged Wrongdoing.

Even if RGL were to have suffered an injury distinct from harm to its creditors, the Trustee's claims on behalf of RGL would be barred by the alleged misconduct of the Refco Insiders. As described in the Complaint, RGL's President, CEO and Chairman (Bennett), CFO (Trosten), Executive Vice President (Maggio), and former President and CEO (Grant) – each of whom has pleaded guilty or been convicted at trial of several felonies – were all architects of the years-long fraudulent scheme. (Compl. ¶¶ 2, 36-39.) RGL was entirely owned by wrongdoers – *i.e.*, Bennett and Grant (through RGHI, their "alter-ego" holding company) and BAWAG. (*Id.* ¶¶ 35, 40.)[10] Indeed, by the Trustee's own account, RGL was a den of thieves. In the Adversary Proceeding, for example, the Trustee alleges that, in addition to the misconduct of the Refco

---

[10] This case is therefore unlike *Global Crossing*, in which the wrongdoers were a few among many shareholders and a narrow majority of the board of directors of a public company. *See Global Crossing Estate Representative v. Winnick*, No. 04 Civ. 2558, 2006 WL 2212776, at *1 (S.D.N.Y. Aug. 3, 2006) (Lynch, J.). Here, RGL was privately owned and completely dominated by the alleged wrongdoers.

Insiders, fraudulent acts were committed by: each identified member of RGL's board of directors (Compl. ¶¶ 25, 29, 31, 37, *Kirschner v. Agoglia* (Winer Decl. Ex. A)); RGL's Chief Operating Officer (*id.* ¶ 43); several Executive Vice Presidents (*e.g., id.* ¶¶ 34, 41); and the company's Controller and First Vice President for Finance and Administration (*id.* ¶ 42).  The Trustee is therefore barred from bringing suit on behalf of RGL.  *See Hirsch*, 72 F.3d at 1095.

The "adverse interest" exception does not apply because the Complaint itself asserts that the Refco Insiders' alleged fraud actually benefited RGL.  The Trustee alleges, for example, that RCM customer assets were used "to finance RGL" (Compl. ¶ 7; *id.* ¶¶ 96, 189) and that RGL obtained funding from the LBO (*id.* ¶ 113; *see supra* note 8).  The Trustee cannot credibly maintain that the Refco Insiders "totally abandon[ed]" RGL's interests (*id.* ¶ 12) when he elsewhere alleges that RGL was "finance[d]" (*id.* ¶ 7) and "prop[ped] up" (*id.* ¶ 448) by the misappropriated RCM customer assets and LBO financing.  *See Cobalt*, 2008 WL 833237, at *4; *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 587, 597 (S.D.N.Y. 2005).  In any event, again, the alleged wrongdoers were the sole owners of the corporation and dominated its affairs and, hence, the "adverse interest" exception cannot apply.  *See In re Bennett Funding*, 336 F.3d at 101.[11]

**C.    The Trustee Lacks Standing to Assert Claims Against the Investment Banks on Behalf of Refco Inc. (43rd and 44th Claims).**

**1.    The Trustee Has Not Alleged an Injury to Refco Inc. Beyond the Alleged Injury to Its Creditors.**

The premise underlying the Trustee's claims on behalf of Refco Inc. – incredible as it may seem – is that the company was harmed by the very same IPO that created it and injected it

---

[11] As for the supposed "innocent insider" theory, *see supra* note 9, the Trustee has failed to name a single RGL director or officer who was unaware of the alleged fraud.  The Complaint's vague, unsupported reference to "RGL's innocent directors, officers and agents" (*see, e.g.*, Compl. ¶ 235) is especially inadequate when the Trustee has elsewhere alleged that the RGL board-members participated in the wrongdoing.  *See* Compl. ¶ 29, *Kirschner v. Agoglia* (Winer Decl. Ex. A); *American Tissue*, 233 F.R.D. at 329-30.  Moreover, the Trustee's failure to provide any factual basis to believe that any innocent RGL insiders (if they indeed existed) had the authority, ability or inclination to have stopped the fraud renders the "innocent insider" exception (if it exists at all) inapplicable.  *See In re Bennett Funding*, 336 F.3d at 101.

with hundreds of millions of dollars of capital. (*See id.* ¶ 10.) That is not a sufficient allegation of injury-in-fact to confer standing to sue on behalf of Refco Inc. *See American Tissue*, 351 F. Supp. 2d at 93-94 & n.14 ("A $25 million equity infusion . . . simply cannot, under any legal theory, be deemed an injury-in-fact to a corporation"). Moreover, the Complaint makes clear that the Trustee seeks to recover for the same alleged harm to creditors as the claims brought on behalf of RCM and RGL. (*See id.* ¶¶ 622, 625 (alleging that the IPO "le[ft] Refco Inc. with insufficient capital to pay its obligations, including over $2 billion it owed RCM").)[12] As with those claims, the Trustee lacks standing to sue on behalf of Refco Inc. for injuries allegedly suffered not by it, but rather by those creditors.

### 2.    The Complaint Alleges That Refco's Management Was Complicit in the Alleged Wrongdoing.

Even if Refco Inc. were to have suffered any harm distinct from the alleged harm to its (or its subsidiaries') creditors, the Trustee would be barred from bringing suit because Refco Inc.'s management is alleged to have been complicit in the claimed wrongdoing. (*See id.* ¶¶ 134, 136 (alleging that the Refco Insiders "led Refco through an initial public offering of its stock" that was designed so that they could "cash-out" their interests); *see also id.* ¶ 592.)[13]

As with the Trustee's claims on behalf of RCM and RGL, the "adverse interest" exception does not apply because the Trustee has alleged facts that demonstrate that Refco Inc. benefited from the IPO. The transaction – without which Refco Inc. would not even have come

---

[12] The Trustee's assertion that the IPO injured Refco Inc. by exposing it to liability for securities fraud (Compl. ¶ 137) is flatly wrong and insufficient to confer standing. Under the Bankruptcy Plan, in accordance with well-established bankruptcy law, any such claims were treated as equity, not debt, and are in any event being pursued independently by Refco Inc.'s stock purchasers. *See* Bankruptcy Plan § 1.128 (Winer Decl. Ex. L); 11 U.S.C. § 510(b); Second Am. Consol. Class Action Compl. in *In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (S.D.N.Y. Dec. 3, 2007) (Winer Decl. Ex. M).

[13] Even if the *Wagoner* rule somehow were not applicable, the Trustee's claims against the Investment Banks would be barred by the common law doctrine of *in pari delicto*. *See, e.g., UCAR Int'l Inc. v. Union Carbide Corp.*, 119 Fed. App'x 300, 301-02 (2d Cir. 2004) (affirming dismissal on *in pari delicto* ground because pleadings and admissions made in related criminal case established wrongdoing of plaintiff corporation); *Apostolou v. Fisher*, 188 B.R. 958, 971-72 (N.D. Ill. 1995), *aff'd in relevant part*, 155 F.3d 876 (7th Cir. 1998); *Buechner v. Avery*, 836 N.Y.S.2d 1, 2-3 (N.Y. App. Div. 2007).

into existence – raised hundreds of millions of dollars in equity, some of which was used to pay down Refco debt. (*Id.* ¶ 136; *see also supra* note 8.) The Trustee therefore cannot show that the wrongdoers had "completely" and "totally" abandoned Refco Inc.'s interests by entering into the IPO. *See In re Parmalat Sec. Litig.*, 383 F. Supp. 2d at 598 n.54; *In re Alphastar Ins. Group Ltd.*, 383 B.R. 231, 273 (Bankr. S.D.N.Y. 2008).[14]

## II.    The Trustee's Claims Should Be Dismissed Under Rule 12(b)(6).

### A.    The Trustee Has Failed to State a Claim for Aiding and Abetting a Breach of Fiduciary Duty (15th, 36th and 44th Claims).

To prevail on a claim of aiding and abetting a breach of fiduciary duty under New York law, a plaintiff must show that: (i) the defendant had actual knowledge of a fiduciary's breach of his or her duties; (ii) the defendant knowingly participated in or induced the breach; and (iii) the plaintiff was harmed as a result. *See, e.g., In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) ("*Sharp II*"). Moreover, where, as here, the underlying breach consists of fraud, Rule 9(b) requires that a plaintiff's allegations be stated with particularity. *See In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 579-80 (S.D.N.Y. 2007); *Kolbeck v. LIT Amer., Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996), *aff'd,* 152 F.3d 918 (2d Cir. 1998).

#### 1.    The Trustee Has Failed Adequately to Allege That the Investment Banks Aided and Abetted a Breach of Fiduciary Duties to RCM (15th Claim).

The underlying breach that the Investment Banks are alleged to have aided and abetted is Bennett and Maggio's "caus[ing] RCM to transfer its valuable assets" to Refco entities that never had the financial wherewithal or intent to repay the money. (*See* Compl. ¶¶ 352-54.) As an

---

[14] As for the supposed "innocent insider" theory, *see supra* notes 9 and 11, it would not apply here in any event because the Trustee has not identified a single director or officer of Refco Inc. who could have prevented the alleged wrongdoing. Nor is there reason to believe that such a person exists. The Trustee himself has sued at least eight Refco Inc. directors and officers, accusing each of engaging in fraudulent misconduct. *See* Compl. ¶¶ 36-37 (Bennett and Maggio); Compl. ¶¶ 41, 43, *Kirschner v. Agoglia* (Winer Decl. Ex. A) (Murphy and Sexton); Compl. ¶¶ 32-35, *Kirschner v. Thomas H. Lee Partners, L.P.* (Winer Decl. Ex. B) (Harkins, Jaeckel, Lee and Schoen). The Complaint cannot survive merely by declaring, in conclusory terms, that there were innocent insiders. *See In re Bennett Funding*, 336 F.3d at 101.

14

initial matter, the Complaint is replete with allegations that the transferred assets belonged to RCM's customers, not to RCM. (*See, e.g., id.* ¶ 4.) But, in any event, nowhere does the Complaint allege facts demonstrating that the Investment Banks knew that Bennett and Maggio were transferring assets from RCM to other Refco entities, that doing so would constitute a breach of their fiduciary duties, that the Investment Banks had anything to do with those transfers, or that the Investment Banks caused the alleged harm to RCM.

To maintain an aiding and abetting claim, a plaintiff must plead specific facts that, taken as a whole, give rise to an inference that the defendant *knowingly assisted* a fiduciary in breaching his duties. *See Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2003 WL 22218643, at *10-11 (S.D.N.Y. Sept. 25, 2003); *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2002 WL 362794, at *10 (S.D.N.Y. Mar. 6, 2002) ("*Official Comm. v. DLJ*"). Under New York law, allegations of constructive knowledge – for example, that a defendant ignored warning signs or that its access to documents probably made it aware of an underlying breach – are insufficient. *See Official Comm. v. DLJ*, 2002 WL 362794, at *10; *Ryan v. Hunton & Willliams*, No. 99 Civ. 5938, 2000 WL 1375265, at *8-9 (E.D.N.Y. Sept. 20, 2000).

The Complaint falls woefully short of this standard. In the first place, the Trustee merely asserts that the Investment Banks "knew and/or consciously avoided knowing" (*id.* ¶ 441) that Bennett and Maggio used assets deposited with RCM to fund other Refco entities. This conclusory allegation is insufficient to allege actual knowledge that assets deposited with RCM were used by other Refco entities, let alone that such use would constitute a breach of fiduciary duty. *See Goldin Assocs.*, 2003 WL 22218643, at *10-11 (defendants' actual knowledge of a

breach of fiduciary duty cannot be inferred where actions alleged to have constituted a breach were not inherently wrongful).[15]

The Trustee not only fails to allege that the Investment Banks had actual knowledge of a breach of fiduciary duties, but also fails to allege that the Investment Banks participated in the purported breach or that they proximately caused the alleged harm to RCM. The absence of such allegations is fatal to the Trustee's claims against the Investment Banks. *See In re Sharp Int'l Corp.*, 302 B.R. 760, 774 (E.D.N.Y. 2003) ("*Sharp I*") ("[T]he 'knowing participation' element . . . requires more than a defendant's knowledge of the primary violation. To state a claim, a plaintiff must allege some form of participation by the alleged aider and abettor in the primary wrongdoing"), *aff'd*, 403 F.3d at 50-51; *Kolbeck*, 939 F. Supp. at 249 (aiding and abetting claim requires showing of proximate – not merely "but for" – causation).

In *Sharp I*, for example, the defendant, a lender to debtor corporation Sharp, suspected that Sharp's controlling shareholders were providing fraudulent financial information to noteholders and were looting the company. *See* 302 B.R. at 767-68. Rather than confront the wrongdoers or alert the noteholders, the defendant allowed Sharp continued access to funds and

---

[15] Knowledge that Bennett and Maggio had transferred assets from RCM to other Refco entities would not, by itself, constitute knowledge that they had breached fiduciary duties to RCM. As noted above, the Complaint repeatedly alleges that those assets belonged to the customers, not to RCM. And, even if those assets belonged to RCM, the directors of a wholly-owned subsidiary such as RCM are obliged to manage the affairs of the subsidiary in the best interests of its parent, and therefore are typically entitled to transfer assets to the parent or otherwise use them in the parent's interests. *See generally Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*, 545 A.2d 1171, 1174 (Del. 1988); *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 192 (Del. Ch. 2006) (noting that, from a fiduciary perspective, there is "nothing troubling about . . . a parent corporation us[ing] the asset value of one of its wholly-owned subsidiaries to help it finance and absorb the down-side of the parent's larger business strategy," even if, as a result, the subsidiary "is less profitable and less valuable"). The Trustee attempts to sidestep this well-established rule by pleading generally that "[a]t all relevant times, RCM was insolvent or operating in the zone of insolvency," suggesting that RCM's directors were required to act in the interests of RCM's creditors, rather than in the interests of its parent. *See In re RSL Com Primecall, Inc.*, Civ. Nos. 01-11457, 01-11469, 2003 WL 22989669, at *7-8 (Bankr. S.D.N.Y. Dec. 11, 2003). But the Trustee is suing in the shoes of RCM, not of its creditors. And, despite the boilerplate "at all relevant times" language, the Complaint elsewhere alleges that RCM did not become insolvent until the LBO, long after the alleged transfers of funds from RCM to other Refco entities. (Compl. ¶¶ 443-44 (alleging that RCM "was insolvent or operating in the zone of insolvency" "[a]s a proximate result" of the Investment Banks' conduct).) In any event, the Complaint does not allege that the Investment Banks knew that RCM supposedly was insolvent, and therefore the Trustee's bald "zone of insolvency" allegation is insufficient as a matter of law. *See In re Centennial Textiles, Inc.*, 227 B.R. 606, 612-13 (Bankr. S.D.N.Y. 1998).

16

consented to Sharp's sale of an additional $25 million in notes. *See id.* at 775. The district court

upheld the bankruptcy court's dismissal of the aiding and abetting claim against the defendant (a

decision affirmed by the Second Circuit) because the plaintiff had failed to allege that the

defendant had induced or actively participated in the underlying fraud or looting of assets. *See*

*id.* at 776-77. Indeed, the court noted that most of the alleged fraud and looting had occurred

long before the defendant learned of it, and therefore the defendant could not have aided and

abetted that wrongdoing. *See id.* at 777 ("[I]t is difficult to see how [defendant] could be held

accountable for inducing a fraudulent scheme that was well underway before [defendant] is

alleged to have even had any knowledge of it"); *see also American Tissue*, 351 F. Supp. 2d at 90-

91 ("Against the backdrop of extensive allegations of internal corruption and criminal conduct . .

. the Court must view with considerable skepticism [debtor's] allegations that [defendant's]

deficient financial advice and other breaches of contract or fiduciary duty caused [debtor] to go

bankrupt").

The Trustee's aiding and abetting claim is, if anything, weaker than the claims in *Sharp I*.

In *Sharp I*, the plaintiff alleged at least *some* conduct by the defendants that had assisted the

wrongdoers in the underlying breach – for example, the defendants' consenting to the

noteholders' purchase of additional notes, which "removed an impediment" to that transaction.

*Sharp II*, 403 F.3d at 52. Here, in contrast, the Trustee has *not* alleged that the Investment Banks

assisted Bennett and Maggio in transferring any RCM "customer assets" to other Refco entities.

Indeed, the Trustee asserts that Refco's insiders had already transferred approximately $2 billion

in RCM customer assets *before* the Investment Banks appeared on the scene. (*See id.* ¶ 119.) In

17

view of those pleaded facts, the Investment Banks could not possibly have substantially assisted the alleged misconduct or caused the purported harm to RCM.[16]  Claim 15 must be dismissed.

> **2.  The Trustee Has Failed Adequately to Allege That the Investment Banks Aided and Abetted a Breach of Fiduciary Duties to RGL (36th Claim).**

In Claim 36, the Trustee alleges that the Investment Banks helped the Refco Insiders and RGHI breach their fiduciary duties to RGL by facilitating an LBO that caused RGL's assets to be distributed to Refco Insiders and other equity holders, thereby leaving RGL unable to pay off its intercompany debts to RCM.  (Compl. ¶ 583.)  The Trustee fails, however, adequately to allege that the Investment Banks knew of the purported breach, that they substantially assisted the breach, or that anything they did caused the alleged harm to RGL.

The Trustee has not, for example, pleaded facts that support an inference that the Investment Banks actually knew that the Refco Insiders (or RGHI) would breach fiduciary duties to RGL by undertaking the LBO.  The Complaint is comprised only of conclusory statements and allegations of constructive knowledge, declaring that the Refco Insiders' fraudulent scheme "had to have been apparent" to the Investment Banks or that the Investment Banks' supposed knowledge of the fraud can be inferred "given their detailed knowledge of the Company" (*id.* ¶¶ 104, 327) or "particularized knowledge of Refco's corporate structure" (*id.* ¶ 323).  Courts applying New York law have consistently rejected such allegations of constructive knowledge. *See, e.g.*, *VTech Holdings Ltd. v. PricewaterhouseCoopers LLP*, 348 F. Supp. 2d 255, 269 (S.D.N.Y. 2004) (allegation of "unlimited access to [] books and records" insufficient to demonstrate actual knowledge); *see also Kolbeck*, 939 F. Supp. at 248 ("Defendants cannot be

---

[16] The Trustee also alleges that the Investment Banks assisted in Bennett and Maggio's breach of their fiduciary duties by facilitating the LBO, in which "the RCM receivables were subordinated to $1.4 billion in new LBO debt." (Compl. ¶ 443.)  But the Trustee has not alleged that RCM was a party to the LBO, and therefore Bennett and Maggio, *qua* fiduciaries of RCM, had nothing to do with it.  It is axiomatic that the Investment Banks cannot have aided and abetted a breach of fiduciary duty if there was no underlying breach. *See Renner v. Chase Manhattan Bank*, No. 98 Civ. 926, 2000 WL 781081, at *21 (S.D.N.Y. June 16, 2000).

charged with knowledge of [insider's] misconduct simply because they had knowledge of accusations against him."); *Ryan*, 2000 WL 1375265 at \*9 (allegation that defendant "was on notice of various 'red flags'" and "suspected fraudulent activity" did not raise inference of actual knowledge of underlying misconduct).[17]

Nor has the Trustee adequately alleged that the Investment Banks substantially assisted in a breach or that anything they did caused the supposed harm to RGL. The conclusory premise underlying RGL's aiding and abetting claim – that because of the LBO, RGL "was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged" (*id.* ¶ 584) – is belied by the Trustee's repeated assertions that RGL had *never* been able to repay the funds, irrespective of the LBO. (*See, e.g., id.* ¶ 102 ("At the time of the LBO, RCM was owed approximately $2 billion by Refco affiliates that were never required to post security or collateral for the RCM funds they received and *had no intention or ability to repay RCM*" (emphasis added)); *id.* ¶¶ 7, 95, 184, 189.) Indeed, the Trustee alleges that RCM's financial statements were false and misleading long before the LBO because they failed to disclose that RCM's supposed loans to its affiliates were "uncollectible" (*id.* ¶ 184). Thus, even if its inability to repay its creditors could be deemed an injury to RGL itself, there is no set of facts that the Trustee could prove that would entitle RGL to relief for harm that, by the Trustee's own account, would have befallen RGL even in the absence of any conduct by the Investment Banks (and that, indeed, it is alleged had already befallen RGL by the time of the LBO).

---

[17] The Trustee's allegations of constructive knowledge are particularly inadequate given his allegation elsewhere in the Complaint that "[c]ertain [unnamed] directors, officers and agents" of RGL were "unaware of the fraudulent scheme and of the extensive adverse impact that the LBO would have on RGL" and "could not have made themselves aware through reasonable investigatory efforts." (Compl. ¶ 235.) Although the Trustee's vague, unsupported reference to certain unnamed "innocent" insiders at RGL is insufficient to bar imputation of the Refco Insiders' misconduct (*see supra* notes 9, 11, 14), it is, nonetheless, appropriate, in assessing whether the alleged facts raise an inference of the Investment Banks' actual knowledge, to consider that RGL insiders were supposedly unaware of the alleged fraud at Refco.

3.    **The Trustee Has Failed Adequately to Allege That the Investment Banks Aided and Abetted a Breach of Fiduciary Duties to Refco Inc. (44th Claim).**

The Trustee alleges that the Investment Banks helped Bennett and Maggio breach their fiduciary duties to Refco Inc. by, among other things, facilitating the IPO and providing financial projections that did not take into account the intercompany "loans" from RCM. (*Id.* ¶ 627.) The Investment Banks' purported misconduct allegedly caused Refco Inc. to undertake an IPO "based on an inaccurate understanding of its financial condition," thereby harming the company. (*Id.* ¶ 628.) As with the aiding and abetting claim brought on behalf of RGL, the Trustee has failed adequately to allege that the Investment Banks knowingly assisted a breach of fiduciary duty or that they caused the alleged harm to Refco Inc.

As a threshold matter, the Trustee has alleged no facts – and it is difficult to imagine any – to suggest that a company could be injured by the very transaction that gave rise to its existence and that infused it with hundreds of millions of dollars in equity. *See American Tissue*, 351 F. Supp. 2d at 93-94 & n.14. Moreover, even if the IPO somehow harmed Refco Inc., the Investment Banks could not have caused that harm by providing the company with "an inaccurate understanding of its financial condition" (*id.* ¶ 628). As the Trustee himself alleges, the IPO "was always the plan" for the Refco Insiders (*id.* ¶ 10), who entered into that transaction with full knowledge of Refco's true financial condition.

The Trustee has also failed to allege facts to show that the Investment Banks believed that Bennett and Maggio were supposedly breaching fiduciary duties to Refco Inc. by entering into the IPO. As with the claim brought on behalf of RGL, the Trustee's conclusory allegations of constructive knowledge (*see, e.g., id.* ¶ 138 (the Investment Banks "knew and/or consciously avoided knowing that Refco was in no state to undertake an IPO")) are insufficient as a matter of law. *See, e.g., Official Comm. v. DLJ*, 2002 WL 362794, at *10. Moreover, although the

20

Trustee alleges that Bennett and Maggio breached fiduciary duties to Refco Inc. by using some of the IPO proceeds to pay down RGL debt when RGL was insolvent, the Trustee does not allege that the Investment Banks knew that RGL was insolvent.  Absent insolvency, there would be no conceivable reason for the Investment Banks to believe that the payment of allegedly legitimate debt would somehow constitute a breach of fiduciary duty.  *See In re Centennial Textiles, Inc.*, 227 B.R. 606, 612-613 (Bankr. S.D.N.Y. 1998).[18]  And, in any event, the Trustee has not alleged that the Investment Banks had any role in deciding how Refco would use the IPO proceeds.  *See, e.g.*, *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61-62 (2d Cir. 1985) (affirming dismissal where insiders' looting of proceeds from securities transaction, and not outside counsel's assistance with that transaction, was cause of harm to debtor corporation); *In re Parmalat Sec. Litig.*, 501 F. Supp. 2d at 579-80.

**B.    The Trustee Has Failed to State a Claim for Malpractice or Negligent Misrepresentation Against Credit Suisse (34th, 35th and 43rd Claims).**

**1.    RGL's Malpractice and Negligent Misrepresentation Claims Should Be Dismissed (34th and 35th Claims).**

RGL's malpractice and negligent misrepresentation claims are barred by the plain language of its engagement letter with Credit Suisse, ███████████████

███████████████████████

███████████████████████

███████████████████████

███████  An unambiguous contractual clause absolving a party of liability for ordinary

---

[18] The Trustee himself does not appear able to assert a consistent theory.  Within the very same sentence, he alleges that Bennett and Maggio breached fiduciary duties to Refco Inc. both *by paying down RGL debt*, and also *by failing to pay down RGL debt*.  (*See* Compl. ¶ 592.)

███████████████████████

negligence is enforceable as a matter of law. *See Official Comm. v. DLJ*, 2002 WL 362794, at

*15-16; *Colnaghi, USA, Ltd. v. Jewelers Protection Servs. Ltd.*, 81 N.Y.2d 821, 823 (N.Y. 1993).

To escape the preclusive effect of an exculpatory clause, it is not enough for a plaintiff to

add to its complaint – as the Trustee has done (Compl. ¶ 169) – a mere conclusory allegation that

the defendant acted with gross negligence. *See Industrial Risk Insurers v. Port Auth. of NY &*

*NJ*, 387 F. Supp. 2d 299, 307 (S.D.N.Y. 2005) ("courts are unwilling to let cases with releases of

liability go to a jury on the issue of gross negligence simply because the plaintiff has added a

conclusory allegation of gross negligence"), *aff'd on other grounds*, 493 F.3d 283, 285 (2d Cir.

2007). Rather, the complaint's specific factual allegations must describe "conduct that evinces a

reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi*, 81

N.Y.2d at 824-25. New York courts "set the bar quite high" when considering whether a party

has pleaded misconduct sufficient to overcome an exculpatory clause. *Deutsche Lufthansa AG v.*

*Boeing Co.*, No. 06 CV 7667, 2007 WL 403301, at *3 (S.D.N.Y. Feb. 2, 2007); *see also*

*Colnaghi*, 81 N.Y.2d at 823.

Here, the factual allegations do not come close to the standard for gross negligence. For

example, the Trustee merely alleges that Credit Suisse "knew and/or consciously avoided

knowing that a broker-dealer such as Refco was an inappropriate candidate for a leveraged buy-

out" (Compl. ¶ 313) and that it "develop[ed] an LBO in which RGL would be left with

unreasonably small capital to pay its debts" (*id.* ¶ 569). Moreover, the Trustee maintains that

certain (unnamed) RGL directors and officers were unaware of the alleged fraud at Refco and

"could not have made themselves aware through reasonable investigatory efforts." (See *id.* ¶

235.) If, as the Trustee asserts, it was reasonable for RGL's own directors and officers to have

been unaware of fraud at Refco, then Credit Suisse, in failing to discover or disclose that fraud,

22

could not possibly have been guilty of the "particularly malicious behavior" that New York law on gross negligence is intended to address. *See Industrial Risk Insurers*, 387 F. Supp. 2d at 307; *see also supra* note 17.

RGL's negligent misrepresentation claim also fails because it is duplicative of the malpractice claim. *See, e.g., Serova v. Teplen*, 05 Civ. 6748, 2006 WL 349624, at *4 (S.D.N.Y. Feb. 16, 2006) ("Claims for . . . negligent misrepresentation that are based on the same factual allegations as a [] malpractice claim and do not allege distinct damages are [] duplicative of [the malpractice] cause of action."). Under New York law, a negligent misrepresentation claim is subject to dismissal where, as here, it is based on the same operative facts and alleges the same injury as a malpractice claim asserted by the same party.[20]

Even if it were not duplicative of the malpractice claim, RGL's negligent misrepresentation claim would still fail because the Trustee cannot establish reasonable reliance by RGL, a necessary element of that cause of action. *See Korea Life Ins. Co. v. Morgan Guar. Trust Co. of NY*, 269 F. Supp. 2d 424, 436 (S.D.N.Y. 2003). The gravamen of the Trustee's claim is that Credit Suisse negligently misrepresented RGL's financial condition, leading RGL erroneously to believe that it would be able to fulfill its debt obligations upon completion of the LBO. (*See* Compl. ¶¶ 574-75, 579.) ███████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████ The relevant decision-makers at RGL could not reasonably have relied upon Credit Suisse's projections when they knew those projections were premised upon

---

[20] *Compare* Compl. ¶¶ 566-70 *with id.* ¶¶ 572-79. For similar reasons, the Trustee's aiding and abetting breach of fiduciary duty claims against Credit Suisse on behalf of RGL and Refco Inc. should also be dismissed as duplicative of the malpractice claims brought on behalf of those entities. *See Serova*, 2006 WL 349624 at 4 ("In New York, a claim for breach of fiduciary duty that is 'premised on the same facts and seek[s] the identical relief' sought in a malpractice cause of action is 'redundant.'"); *compare* Compl. ¶¶ 569-70 *with id.* ¶¶ 581-84 (RGL); *compare id.* ¶¶ 622-23 *with id.* ¶¶ 625-28 (Refco Inc.).

fraudulent financial information they had themselves provided to Credit Suisse.  *Cf. American Tissue, Inc. v. Arthur Andersen L.L.P.*, 275 F. Supp. 2d 398, 405 (S.D.N.Y. 2003) (debtor corporation could not reasonably have relied upon financial statements that its own officers and directors manipulated).

Nor, in any event, did Credit Suisse's purported wrongdoing cause the alleged harm to RGL.  The Trustee has repeatedly asserted that RGL *never* had the ability or even the intent to repay RCM.  (*See, e.g.*, Compl. ¶¶ 7, 95, 102, 184, 189.)  Therefore, the LBO that Credit Suisse supposedly facilitated could not have caused RGL to fail to repay RCM.

### 2. Refco Inc.'s Malpractice Claim Should Be Dismissed (43rd Claim).

The Trustee's malpractice claim on behalf of Refco Inc. against Credit Suisse alleges that the firm "acted as Refco Inc's 'exclusive financial advisor' in connection with the LBO and IPO." (*Id.* ¶ 619.)



---

*Cf. In re Global Crossing, Ltd. Sec. Litig.*, Nos. 02 Civ. 910, 10199, 2003 WL 21659360, at *2 (S.D.N.Y. July 15, 2003) (holding that bankruptcy removal statute's two express exceptions "foreclos[e] other exceptions under the canon of statutory construction *inclusio unius est exclusio alterius*").



Credit Suisse could not possibly have served as "exclusive financial advisor" to an entity that did not even exist during the firm's engagement.

In addition, Credit Suisse's purported wrongdoing could not, as a matter of law, have been the cause of the supposed harm to Refco Inc, an entity that only came into existence as a result of the IPO. The Refco Insiders, as perpetrators of the alleged fraud, obviously were fully aware of Refco Inc.'s financial situation and the feasibility of the IPO. Thus, even if Credit Suisse had known about the Refco Insiders' fraud, it could not have harmed Refco Inc. by providing allegedly deficient financial advice regarding an IPO that the Trustee maintains was part of the Refco Insiders' scheme from its inception. (*See* Compl. ¶ 9.)[23]

## CONCLUSION

For the foregoing reasons, Claims 15, 34, 35, 36, 43 and 44 of the Complaint should be dismissed in their entirety.

---

[23] For the reasons set forth in the Memorandum of Law in Support of Grant Thornton LLP's Motion to Dismiss (the "Grant Thornton Brief"), all of the Trustee's claims against the Investment Banks are also subject to dismissal under the Martin Act, which precludes the Trustee from bringing claims – like the ones here – arising out of the "issuance . . . purchase, sale . . . [or] investment advice" relating to any "stocks, bonds, notes . . . or other securities" to the extent that such claims do not require a showing of intentional deceit. N.Y. Gen. Bus. Law, art. 23-A, §§ 352 et seq.; *see, e.g., Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120, 2005 WL 1902780, at *22-23 (S.D.N.Y. 2005). Moreover, for the reasons set forth in the Grant Thornton Brief, the Trustee's claims against the Investment Banks on behalf of Refco Inc. are also preempted by the Securities Litigation Uniform Standards Act, 15 U.S.C. § 77p(b).

Dated: New York, New York
      May 21, 2008

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: _____
   Robert B. McCaw
   Philip D. Anker
   Lori A. Martin
   John V.H. Pierce
   (john.pierce@wilmerhale.com)
   Dawn M. Wilson
   Jeremy S. Winer

   399 Park Avenue
   New York, New York 10022
   Tel.: (212) 230-8800
   Fax: (212) 230-8888

   *Attorneys for Defendants Credit Suisse
   Securities (USA) LLC, Banc of America
   Securities LLC, and Deutsche Bank
   Securities Inc.*