# EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| MARC S. KIRSCHNER, as Trustee of the Refco Litigation Trust, <br><br> Plaintiff, <br><br> -vs- <br><br> GRANT THORNTON LLP, MAYER, BROWN, ROWE & MAW, LLP, ERNST & YOUNG U.S. LLP, PRICEWATERHOUSECOOPERS LLP, CREDIT SUISSE SECURITIES (USA) LLC (f/k/a CREDIT SUISSE FIRST BOSTON LLC), BANC OF AMERICA SECURITIES LLC, DEUTSCHE BANK SECURITIES INC., PHILLIP R. BENNETT, SANTO C. MAGGIO, ROBERT C. TROSTEN, TONE N. GRANT, REFCO GROUP HOLDINGS, INC., LIBERTY CORNER CAPITAL STRATEGIES, LLC, WILLIAM T. PIGOTT, EMF FINANCIAL PRODUCTS, LLC, EMF CORE FUND, LTD., DELTA FLYER FUND, LLC, ERIC M. FLANAGAN, INGRAM MICRO, INC., CIM VENTURES, INC., BECKENHAM TRADING CO. INC., ANDREW KRIEGER, COAST ASSET MANAGEMENT, LLC (f/k/a COAST ASSET MANAGEMENT LP), CS LAND MANAGEMENT, LLC, and CHRISTOPHER PETITT, <br><br> Defendants. | Case No. _____ <br><br> Jury Trial Demanded |

## COMPLAINT

This action is brought by Marc S. Kirschner (the "Trustee"), the Court-approved Trustee for the Refco Litigation Trust (the "Trust"), as the duly authorized representative to commence all claims and causes of action formerly owned by the bankruptcy estates of Refco Inc. and certain of its direct and indirect subsidiaries (collectively, "Refco" and, individually or collectively, the "Company"), including Refco Group Ltd., LLC ("RGL") and Refco Capital Markets, Ltd. ("RCM"), against defendants Grant Thornton LLP ("GT"), Mayer, Brown, Rowe & Maw LLP ("MB"), Ernst

& Young U.S. LLP ("E&Y"), PricewaterhouseCoopers LLP ("PwC"), Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston LLC) ("Credit Suisse"), Banc of America Securities LLC ("BAS"), Deutsche Bank Securities Inc. ("Deutsche"), Phillip R. Bennett ("Bennett"), Santo C. Maggio ("Maggio"), Robert C. Trosten ("Trosten"), Tone N. Grant ("Grant"), Refco Group Holdings, Inc. ("RGHI"), Liberty Corner Capital Strategies, LLC ("Liberty Corner"); William T. Pigott ("Pigott"), EMF Financial Products, LLC ("EMF Financial"), EMF Core Fund, Ltd. ("EMF Core Fund"), Delta Flyer Fund, LLC ("Delta Flyer"), Eric M. Flanagan ("Flanagan"), Ingram Micro, Inc. ("Ingram Micro"), CIM Ventures, Inc. ("CIM Ventures"), Beckenham Trading Co. Inc. ("Beckenham"), Andrew Krieger ("Krieger"), Coast Asset Management, LLC (f/k/a Coast Asset Management LP) ("Coast"), CS Land Management, LLC ("CS Land"), and Christopher Petitt ("Petitt") for their roles in a massive scheme to loot Refco -- a scheme that resulted in one of the swiftest corporate meltdowns in U.S. history and caused Refco over $2 billion in damages.

The Trustee as and for his complaint against the defendants states as follows based on information and belief, such information and belief based on the investigation of the Trustee and his counsel and a review of, among other things:

(a) the filings of Refco with the U.S. Securities and Exchange Commission ("SEC");

(b) a review of the filings, documents, and testimony produced pursuant to Refco's re-organization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Proceedings") (assigned to the Honorable Judge Robert Drain and jointly administered under the caption "*In re Refco Inc., et al.*, Case No. 05-60006 (RDD)");

(c) the Final Report of the Court-appointed Independent Examiner (the "Examiner") in the Bankruptcy Proceedings;

(d) the Third Superseding Indictment in *U.S. v. Phillip R. Bennett, et al.*, S3 05 Cr. 1192 (NRB) (S.D.N.Y. Jan. 16, 2007); and

(e) other relevant public documents:

2

336. Knowing full well the size of RCM's IOUs, the Investment Banker Defendants ensured that repayment of these receivables would be subordinated to the new LBO debt. Despite the statements in the Offering Circular to the effect that RCM would not be harmed by the LBO, Section 7.03 of the Credit Agreement dated as of August 5, 2004, states that if Refco incurs "Indebtedness" that constitutes an "Investment" (which is defined to include an intercompany payable), then "all such Indebtedness" by any Refco entity obligated to repay the bank debt owing to a Refco entity that is not obligated (*i.e.*, RCM) "must be expressly subordinated to the Obligations" to repay the bank debt. In other words, the Investment Banker Defendants knew and/or consciously avoided knowing that the borrower and guarantors on the LBO bank debt were also obligated to pay RCM back for the use of RCM's cash, but *they insisted that RCM's right to be repaid must be subordinated to their right to repayment.*

337. Similarly, Section 4.04(b)(15) of the bond debt Indenture allowed RGL and the guarantor subsidiaries to repay "intercompany Indebtedness . . . *provided that no Default has occurred and is continuing or would result therefrom.*" (emphasis added.) Thus, as long as the LBO bond debt was not in default, RGL and RCC could – although they were not required to do so and arguably were precluded from doing so by the bank debt subordination requirements – repay the billions of dollars owed to RCM. But if ever the bond debt were in trouble, RCM's right to be repaid would be trumped by the LBO debt, which is what ultimately happened following Refco's bankruptcy.

338. Pursuant to a July 22, 2004, purchase agreement, Credit Suisse (as representative of itself, BAS, and Deutsche) agreed that the three Investment Banker Defendants would severally purchase – at 97.5% of the principal amount of the notes – the $600 million of senior subordinated notes. Credit Suisse agreed to purchase $270 million (or 45%) of the notes, and BAS and Deutsche Bank each agreed to purchase $165 million (or 27.5% each) of the notes. As the Notes were issued pursuant to SEC Rule 144A, they did not have to be registered.

339. Nonetheless, Refco Finance Holdings LLC and Refco Finance Inc. agreed to file a registration statement with the SEC and then to conduct an "Exxon Capital exchange" of registered

94

notes for the Rule 144A Notes so that the Investment Banker Defendants would be permitted to resell the Refco notes to others, thereby consummating their low-risk-high-reward strategy for the LBO financing by dumping the notes and just holding a small portion of the even more senior bank debt. Credit Suisse took the lead in drafting the risk factors for the SEC filings that facilitated the resale of the LBO notes and the subsequent IPO.

**The Harm of the IPO to Refco Inc.**

340. The IPO Registration Statement became effective on August 10th. In connection with the IPO, Refco Inc. issued 26,500,000 shares of common stock to the public at $22/share. The offering consisted of 12,500,000 initial shares by Refco Inc. and 14,000,000 shares of a secondary offering by THL, RGHI, Bennett, and others. An additional 3.975 million shares in overallotment were also issued. The offering generated $258,500,000 in proceeds for Refco Inc., approximately $289,520,000 in proceeds for the selling shareholders and $82.2 million in greenshoe dividend.

341. As the Investment Banker Defendants always contemplated, and as was set forth in the IPO prospectus, on September 16th, 2005, Refco Inc. used the vast majority of its IPO proceeds to pay $231,262,500 towards the redemption of $210 million of the principal amount of RGL's senior subordinated notes plus $18.9 million in accrued interest and prepayment penalty. As RGL was insolvent at the time, Refco Inc. was induced to make a $231 million contribution to RGL for no consideration.

342. The Investment Banker Defendants received their share of approximately $45 million in fees in connection with the LBO. The Investment Banker Defendants further received their share of approximately $40 million more in fees in connection with the IPO.

343. Refco was forced to file for bankruptcy mere weeks after the IPO.

### The RTL Defendants' Role in the Fraudulent Scheme

344. The RTL Defendants were a crucial participant in the Refco Insiders' fraudulent scheme to hide the RGHI Receivable. From 1999 to 2005, each of the RTLs was designed to, and in fact did, conceal from the innocent RCM and RGL directors, officers and agents, including inside counsel and others, the nature and extent of the RGHI Receivable.

345. As each of the RTL Defendants knew, the RTL transactions did not serve any legitimate business purpose for RCM, RGL, or for any other Refco affiliate.

346. By agreeing to act as a conduit for these fraudulent transactions, the RTL Defendants substantially assisted in the execution of the fraudulent scheme. Indeed, without the RTL Defendants' active participation in the scheme alleged herein, it would have been impossible for the Refco Insiders to conceal the nature and extent of the RGHI Receivable, or to facilitate a lucrative cashing-out of their interests in Refco.

347. Each of the RTL Defendants knew and/or consciously avoided knowing, among other things, the following facts:

(a) First, that the timing of the RTLs was designed to manipulate Refco's financial condition during its fiscal year-end or quarter-end financial or audit reporting periods. The RTL Defendants did business with Refco and were each aware that Refco's annual reporting year closed at the end of February, and that the RTLs were designed to occur at the end of this fiscal year (and also, starting in 2004, at the end of fiscal quarters) and were unwound shortly after the new reporting period began.

(b) Second, that the RTLs were not isolated transactions; they were systematic elements in a large-scale fraud, necessitating their use at the end of financial reporting periods. Moreover, at least Liberty Corner (and Pigott) were well aware that the RTLs were occurring with more frequency as Refco's LBO and IPO approached.

(c) Third, the size of the RTLs alone was suspicious. Each RTL was for a specific and extremely large dollar amount. Moreover, the RTL Defendants who participated in multiple RTLs year after year, such as Liberty Corner (and Pigott), were aware that the annual aggregate amount of the RTLs was increasing.

(d) Fourth, the RTLs were suspicious and without any legitimate business purpose. The RTLs provided the RTL Defendants with lucrative interest payments (in Pigott's case, more than $1.1 million) in exchange for their participation in a risk-free transaction. Moreover, the RTL Defendants knew and/or consciously avoided knowing that

RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

505. Any audit examination conducted with the care and diligence required of professional auditors would have revealed these facts and required their disclosure in RGL's financials and/or to the innocent RGL directors, officers and agents, including inside counsel and others.

506. As a proximate result of GT's breach of its duty of care, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against GT for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

### TWENTY-FOURTH CLAIM FOR RELIEF
### (Negligent Misrepresentation Claim by RGL Against GT)

507. Paragraphs 1 to 506 are incorporated as if fully set forth herein.

508. At all relevant times, GT was employed by and acted as RGL's auditor.

509. As RGL's auditor, GT had a duty to RGL to verify the accuracy of the information concerning RGL's financial condition.

510. In its annual financial audits of RGL, GT negligently misrepresented RGL's financial condition and negligently issued unqualified audit opinions that were false despite knowing, or negligently disregarding, that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating

130

expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

511. As RGL's auditors, GT knew and intended that the innocent RGL directors, officers and agents, including inside counsel and others, regulators, investors, and future purchasers of Refco would and did reasonably rely on the unqualified audit opinions that GT issued.

512. RGL's reliance on GT's false statements was reasonable and justified under the circumstances.

513. As a proximate result of GT's material misrepresentations and omissions about RGL's financial condition, which gave the appearance of financial health and strength, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against GT for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

### TWENTY-FIFTH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty Claims by RGL Against GT)

514. Paragraphs 1 to 513 are incorporated as if fully set forth herein.

515. By virtue of its role as RGL's auditor, GT knew and/or consciously avoided knowing that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency; and (g) Bennett, Maggio, Trosten, Grant, and RGHI were, by virtue of the foregoing, breaching their fiduciary duties to RGL.

516. GT was aware of its own role in the Refco Insiders and RGHI's overall scheme.

517. Notwithstanding this knowledge, GT knowingly and substantially assisted in Maggio, Bennett, Trosten, Grant, and RGHI's breaches of their fiduciary duty to RGL by, among other things, issuing unqualified audit opinions that were false, and failing to require disclosure in RGL's audited financial statements or to advise the innocent RGL directors, officers and agents, including inside counsel and others, that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo

with liabilities to the purchasers of its stock; and (f) as part of the IPO, Refco Inc. would pay down $231 million in debt obligations owed by RGL, an insolvent subsidiary, and distribute Refco Inc.'s assets to the Refco Insiders, other New Refco Group equity holders, and the Investment Banker Defendants without first paying down other significant Refco Inc. obligations, including the amounts owed to RCM.

599. Given MB's knowledge of the RGHI Receivable, MB's preparation of the documents for the RTL transactions, MB's role as legal advisor to Refco in all matters, including corporate governance and United States and foreign regulations and law governing Refco's operations, activities, and use and treatment of client funds, securities, and other property, and preparation and review of Refco's customer agreements, MB knew that Refco Inc. was not in a suitable financial condition to undergo the IPO.

600. Any law firm acting properly under the ethical standards of the profession would have revealed these facts and required their disclosure in Refco Inc.'s financial statements and/or to Refco Inc.'s innocent directors, officers and agents, including inside counsel and others.

601. As a proximate result of MB's breach of its duty of care, Refco Inc. undertook an IPO based on an inaccurate understanding of its financial condition and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against MB for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $1 billion and are to be determined at trial.

### FORTIETH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty Claim by Refco Inc. Against MB)

602. Paragraphs 1 to 601 are incorporated as if fully set forth herein.

603. By virtue of its role as outside counsel for Refco Inc. and its affiliates, MB knew and/or consciously avoided knowing that, among other things: (a) substantial Refco trading losses and operating expenses were being concealed by the RGHI Receivable; (b) hundreds of millions of

dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RGHI Receivable was being concealed at the end of each relevant reporting and audit period through the RTLs MB prepared, negotiated, and facilitated; (d) RCM funds were being used to pay the operating expenses of RGL and its affiliates so as to make Refco's overall perceived financial condition suitable for the IPO; (e) as a result of the IPO, Refco Inc. would be saddled with liabilities to the purchasers of its stock; and (f) as part of the IPO, Refco Inc. would pay down $231 million in debt obligations owed by RGL, an insolvent subsidiary, and distribute Refco Inc.'s assets to the Refco Insiders, other New Refco Group equity holders, and the Investment Banker Defendants without first paying down other significant Refco Inc. obligations, including the amounts owed to RCM; and (g) Bennett and Maggio were thereby breaching their fiduciary duties to Refco Inc.

604.  MB was aware of its own role in Bennett and Maggio's overall scheme.

605.  Notwithstanding this knowledge, MB substantially assisted in Bennett and Maggio's breaches of their fiduciary duties to Refco Inc. by, among other things: (a) preparing the documentation for each of the RTLs which were used to conceal the existence of the RGHI Receivable at the end of each relevant reporting and audit period; and (b) advising on and facilitating the IPO by reviewing IPO documents and disclosures and preparing a legal opinion in connection with the IPO without disclosing to Refco's innocent directors, officers and agents, including inside counsel and others, the foregoing facts of Bennett and Maggio's breaches of their fiduciary duties.

606.  As a proximate result of MB's knowing and substantial assistance, Refco Inc. undertook an IPO based on an inaccurate understanding of its financial condition and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against MB for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $1 billion and are to be determined at trial.

## FORTY-FIRST CLAIM FOR RELIEF
### (Malpractice Claim by Refco Inc. Against GT)

607. Paragraphs 1 to 606 are incorporated as if fully set forth herein.

608. At all relevant times, GT was employed by and acted as Refco Inc.'s auditor.

609. GT owed a duty of care to Refco Inc. on account of its professional relationship with Refco Inc.

610. GT breached its duty of care to Refco Inc. by, among other things, issuing unqualified audit opinions that were false and failing to require disclosure in the financial statements which accompanied the IPO prospectus or to advise Refco Inc.'s innocent directors, officers and agents, including inside counsel and others, that, among other things: (a) substantial Refco trading losses and operating expenses were being concealed by the RGHI Receivable; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RGHI Receivable was being concealed at the end of each relevant reporting and audit period through the RTLs; (d) Refco's financial statements were inaccurate and that, as a result of the IPO, Refco Inc. would be saddled with liabilities to the purchasers of its stock; and (e) as part of the IPO, Refco Inc. would pay down $231 million in debt obligations owed by RGL, an insolvent subsidiary.

611. Any audit examination conducted with the care and diligence required of professional auditors would have revealed these facts and required their disclosure in the audited financial statements attached to the IPO prospectus.

612. As a proximate result of GT's breach of its duty of care, Refco Inc. undertook an IPO based on an inaccurate understanding of its financial condition and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against GT for the amount of damages sustained, including attorneys' fees, related expenses and, pre- and post-judgment interest, which are in excess of $1 billion and are to be determined at trial.

### FORTY-SECOND CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty Claim by Refco Inc. Against GT

613. Paragraphs 1 to 612 are incorporated as if fully set forth herein.

614. By virtue of its role as Refco Inc.'s auditor, GT knew and/or consciously avoided knowing that, among other things: (a) substantial undisclosed Refco trading losses and operating expenses were being concealed by the RGHI Receivable; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RGHI Receivable was being concealed at the end of each relevant reporting and audit period through the RTLs; (d) RCM funds were being used to pay the operating expenses of RGL and its affiliates so as to make Refco's overall perceived financial condition suitable for the IPO; (e) as a result of the IPO, Refco Inc. would be saddled with liabilities to the purchasers of its stock; and (f) as part of the IPO, Refco Inc. would pay down $231 million in debt obligations owed by RGL, an insolvent subsidiary, and distribute Refco Inc.'s assets to Bennett, Maggio, and Trosten, other New Refco Group equity holders, and the Investment Banker Defendants without first paying down other significant Refco Inc. obligations, including the amounts owed to RCM; and (g) Bennett and Maggio were thereby breaching their fiduciary duties to Refco Inc.

615. GT was aware of its own role in Bennett and Maggio's overall scheme.

616. Notwithstanding this knowledge, GT substantially assisted in Bennett and Maggio's breaches of their fiduciary duties to Refco Inc. by, among other things, issuing unqualified audit opinions that were false, failing to disclose Refco's true financial position in the audited financial statements attached to the IPO prospectus, and failing to advise Refco's innocent directors, officers and agents, including inside counsel and others, of these facts.

617. As a proximate result of GT's knowing and substantial assistance, Refco Inc. undertook an IPO based on an inaccurate understanding of its financial condition and was thereby damaged.

sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $1 billion and are to be determined at trial.

WHEREFORE, as to all the foregoing claims, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against GT, MB, E&Y, PwC, the Investment Banker Defendants, Bennett, Maggio, Trosten, Grant, RGHI, and the RTL Defendants for the amount of damages sustained, including attorneys' fees, related expenses and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial and demands trial by jury for all matters asserted by law.

Dated: August 21, 2007

Respectfully submitted,

MARC S. KIRSCHNER, as Trustee of the Refco Litigation Trust

By: _____
One of His Attorneys

Of Counsel
Richard I. Werder, Jr.
Michael B. Carlinsky
Susheel Kirpalani
Sascha N. Rand
Robert C. Juman
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Phone: (212) 849-7000
Facsimile: (212) 849-7100

John R. McCambridge
Todd C. Jacobs
Gary M. Miller
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
Phone: (312) 704-7700
Facsimile: (312) 558-1195
Firm No. 17044