**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
                                                               :
In re REFCO INC. SECURITIES LITIGATION    :    Case No. 07-md-1902 (JSR)
                                                               :
---------------------------------------------------------------X

This Document Relates to:

---------------------------------------------------------------X
KENNETH M. KRYS, et al.,                          :    Case No. 08-cv-8267 (JSR)
                                                               :
Plaintiffs,               :
                                                               :    REPORT AND
              -against-                              :    RECOMMENDATION
                                                               :    OF THE SPECIAL MASTER
RICHARD BUTT,                                     :    ON MOTION TO DISMISS
                                                               :
                             Defendant.         :
---------------------------------------------------------------X

Daniel J. Capra, Special Master

      The defendant Richard Butt moves to dismiss the Plaintiffs' First Amended Complaint, which alleges breach of fiduciary duty (Count I) and aiding and abetting breach of fiduciary duty (Count II). The Plaintiffs' claims arise from losses suffered when assets were allegedly transferred from segregated accounts at Refco LLC to unprotected accounts at Refco Capital Markets, Ltd. ("RCM"). According to the First Amended Complaint, this action is brought to recover (i) $263 million plus interest in damages suffered by the SPhinX family of hedge funds ("SPhinX"); (ii) the lost business enterprise value and deepening insolvency damages suffered by SPhinX's investment manager, PlusFunds Group, Inc., ("PlusFunds") and (iii) damages suffered by the Assignors, a group comprised of SPhinX investors. First Amended Complaint ("FAC") ¶1. The gravamen of the complaint is that SPhinX's excess cash was diverted "from protected, customer segregated accounts to unprotected offshore accounts, where those assets were ultimately lost in the Refco scandal." Id.[1]

---

[1] The facts surrounding what has been called "the Refco fraud" have been recounted in a number of opinions by Judge Lynch (*see, e.g.*, *Kirschner v. Grant Thornton,* 2009 WL 996417 (S.D.N.Y. 2009)) and in a number of R and R's by the Special Master. To the extent necessary for background on the instant motion, familiarity with the financial schemes of Refco is presumed.

1

For the reasons stated below, the Special Master recommends that the Amended Complaint be dismissed with prejudice.

**I. Introduction**

*A. The Claimants*

There are three sets of claimants:

1. The SPhinX family of funds, organized under Cayman Islands law, entered into voluntary liquidation after the fall of Refco. Plaintiffs Kenneth M. Krys and Margot MacInnis are their Joint Official Liquidators.[2]

2. Plaintiff The Harbor Trust Co. Ltd. is the Trustee of the SPhinX Trust.[3] The SPhinX Trust is the assignee of claims from the estate of PlusFunds. PlusFunds created SPhinX and served as its investment manager.

3. Mr. Krys and Ms MacInnis are also pursuing claims that have been assigned by sixteen entities that were SPhinX Funds investors. These claims have been referred to as "Investors' claims" or "Assignors' claims."

---

[2] On November 10, 2009, pursuant to an Order of the Grand Court of the Cayman Islands, Margot MacInnis was appointed as successor to Christopher Stride, as Joint Official Liquidator of the SPhinX funds.

[3] On November 24, 2009, Kenneth M. Krys was appointed as successor to James P. Sinclair, as Trustee of the SPhinX Trust, by the Advisory Board created by the PlusFunds Plan. Effective May 1, 2010, by a resolution of the Advisory Board dated March 31, 2010, Peter Andersen of The Harbour Trust Co. Ltd. was appointed as successor Trustee of the SPhinX Trust, in place of Kenneth M. Krys. Subsequently, effective May 1, 2010, by a resolution of the Advisory Board dated June 3, 2010, and superseding the resolution of March 31, 2010, The Harbour Trust Co. Ltd. was appointed successor Trustee for the SPhinX Trust, in place of Kenneth M. Krys. By order of Special Master Ronald Hedges, dated June 17, 2010, the substitution of Margot MacInnis, as Joint Official Liquidator and assignee of claims assigned by certain SPhinX funds investors, in place of Christopher Stride, and the substitution of The Harbour Trust Co. Ltd., as SPhinX Trustee, were effectuated. The order also directed the amendment of the caption for this action to reflect the appearance of Margot MacInnis, as a Joint Official Liquidator and as assignee of claims assigned by certain SPhinX fund investors, and the appearance of The Harbour Trust Co. Ltd., as SPhinX Trustee.

### *B. The Standing Opinion*

In an Order dated March 31, 2010, Judge Rakoff adopted the conclusions in a Report and Recommendation of the Special Master regarding issues of standing. Insofar as relevant here, that Order provides the following:

> 1. All claims brought by the Assignors have been dismissed with prejudice for lack of standing, because they replicate claims brought by SPhinX.
>
> 2. All claims brought by any SPhinX entities other than SPhinX Managed Futures Fund ("SMFF") have been dismissed with prejudice, because the claims of the other entities are derivative of those pursued by SMFF.[4]
>
> 3. The motions to dismiss the claims of PlusFunds on grounds of standing have been denied because PlusFunds is alleging direct injury and damages independent from those of SMFF.

***Accordingly, this Report and Recommendation will consider the instant motions to dismiss only insofar as they involve SMFF and PlusFunds.***

### *C. The Defendant*

Richard Butt became a consultant for Refco Alternative Investments LLC ("RAI"), a Refco affiliate, in 2002. In 2003 he was appointed Senior Vice President and chief of operations at RAI. He was promoted to president of RAI in September 2005. (FAC ¶ 9). According to the Amended Complaint, RAI is a Delaware limited liability company and a commodity pool operator in the State of New York; RAI "was retained to execute trades and provide clearing services on behalf of the SPhinX funds." (FAC ¶ 38).[5]

### *D. Allegations Forming the Basis of the Complaint*

The gravamen of the complaint is that SMFF excess cash in segregated accounts at Refco LLC were— without authorization — swept into commingled accounts at RCM and ultimately lost in the Refco scandal because they were not protected from RCM's insolvency. The basic allegations

---

[4] The Defendants do not contest that SMFF has standing.

[5] The Plaintiffs sued RAI in *Krys v. Sugrue.* The Plaintiffs settled with RAI and "obtained agreement that we could name RAI as the nominal defendant and any officers or directors of RAI as we saw fit." Transcript of Oral Argument at 131 (statement of the Plaintiffs' counsel). RAI is no longer a functioning entity. Id. at 161.

3

in the First Amended Complaint specific to Butt can be summarized as follows:

1. SMFF entered into an Investment Management Agreement (IMA) with PlusFunds, under which PlusFunds was the exclusive investment manager for SMFF. FAC ¶¶ 80-81. PlusFunds retained Refco LLC to provide execution, clearing and margin services. FAC ¶ 86. SMFF funds at Refco LLC were protected in the event of Refco LLC's insolvency. FAC ¶89.

2. Refco LLC delegated responsibility for monitoring margin balances to RAI; RAI and its agents served as the primary contact and liaison between SPhinX and PlusFunds on one end and the Refco entities holding SMFF assets on the other. FAC ¶91.

3. Butt knew that the excess SMFF cash at Refco LLC was in a segregated account, and he also "understood that RCM was an offshore, purportedly unregulated entity that did not provide customer segregation." FAC ¶94.

4. RAI monitored SPhinX assets held at Refco LLC and RCM "and exercised discretion over the movement of assets between Refco LLC and RCM." FAC ¶95. Butt, as an officer of RAI, "shared in RAI's fiduciary duties" to SMFF and PlusFunds. RAI moved SMFF's excess cash on a regular basis from Refco LLC to RCM. FAC ¶ 134. RAI agents, including Butt, monitored the amount of cash necessary to satisfy margin requirements on SMFF's investments at Refco LLC, and in conjunction with DPM,[6] caused excess cash to be moved to RCM. Typically, the transfers were "requested via e-mails from RAI agents to DPM representatives, with Butt copied on the email." FAC ¶136. The transfers were not reviewed by any officials of SPhinX or PlusFunds. Id.

5. In addition to his responsibilities at RAI, Butt as of November 2003 was the President of Refco Fund Holdings, which created several funds designed to invest directly and exclusively in SPhinX products. RAI promoted, advised, and acted as investment manager of those funds. Because he was responsible for these investments, Butt was fully aware of SPhinX's business plan and underlying documentation, and so was aware of the customer segregation requirements. FAC ¶ 9.

### *E. The Right to Have the SMFF Funds Maintained in a Segregated Account*

The founding premise for most of the Plaintiffs' claims is that SMFF's excess cash was wrongfully transferred from segregated accounts at Refco LLC to commingled accounts at RCM. Butt, like the defendants in *Krys v. Sugrue* and *Krys v. Aaron*, argues that the Plaintiffs' basic premise is faulty on a number of grounds, including: 1) there was no right to have the excess cash in a segregated account; 2) the transfers to RCM were authorized by PlusFunds and SPhinX; and 3) the Plaintiffs are precluded from arguing for a right to segregation by Judge Drain's ruling against

---

[6] The role of the DPM entities is discussed in detail in the Special Master's Report and Recommendation dated July 19, 2010. Familiarity with that Report and Recommendation is assumed.

PlusFunds in the Refco bankruptcy proceeding.

In a Report and Recommendation dated March 1, 2010 (entered in *Krys v. Sugrue, Krys v. Aaron,* and this action), the Special Master reviewed the "omnibus" question of whether the Plaintiffs have adequately pled "primary wrongs" by Refco. In that report, the Special Master recommended among other things that the Court rule that 1) the Plaintiffs have sufficiently alleged that SMFF had a right to have its excess cash segregated in accounts at Refco LLC; and 2) the Plaintiffs are not precluded by Judge Drain's ruling and have sufficiently alleged that the transfer of SMFF excess cash from Refco LLC to RCM was unauthorized and wrongful. Objections to that Report and Recommendation have been filed with the Court and the Court has heard argument on those objections.

For purposes of the instant Report and Recommendation, it will be assumed that the Plaintiffs have sufficiently alleged that SMFF had a right to have its excess cash segregated in accounts at Refco LLC and that the transfers to RCM were unauthorized and wrongful. As will be seen, the assumption does not help the Plaintiffs in this case, because the Complaint against Butt should be dismissed even if the right to segregation is established.

*F. Wagoner Issues*

Like the defendants in the parallel actions of *Krys v. Sugrue* and *Krys v. Aaron,* Butt argues that the Plaintiffs' claims should be dismissed under the *Wagoner/ in pari delicto* doctrine because the Plaintiffs stand in the shoes of wrongdoers. *See Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114 (2d Cir. 1991). The effect of *Wagoner* is one of the "omnibus" issues that affects both counts brought by the Plaintiffs in this action as well as in *Krys v. Sugrue* and (for most of the counts) *Krys v. Aaron.* The contours of the *Wagoner* defense are currently being considered by the New York Court of Appeals on certification of questions from the Second Circuit. *See Kirschner v. KPMG LLP,* 13 N.Y.3d 933, 922 N.E.2d 898, 895 N.Y.S.2d 309 (2010).

This Report and Recommendation will not consider *Wagoner* issues — they will be considered if necessary at a later point in accordance with the sequencing established for omnibus issues. But of course if the Court accepts the recommendation herein and dismisses this action with prejudice, the *Wagoner* issues will be mooted in this action.

**III. Review of Counts in the Complaint[7]**

**A. Count I — Breach of Fiduciary Duty**

---

[7] The Report and Recommendation in *Krys v. Aaron*, dated July 19, 2010, at pages 6-7, contains a section describing the relevant standards for dismissal of a complaint. That section is incorporated herein by reference.

5

The Plaintiffs essentially allege that RAI had a fiduciary duty to SPhinX and PlusFunds based on a relationship of trust and confidence, and that Butt, as a corporate official of RAI, therefore had one as well.[8] In the March 1 Report and Recommendation on "primary wrongs" the Special Master concluded that the Plaintiffs have sufficiently alleged that Refco owed a fiduciary duty to SPhinX and PlusFunds. That report covered all affiliates of Refco, including RAI. As stated above, that Report and Recommendation is now being reviewed by the Court. For the purposes of the instant Report and Recommendation, it will be assumed that RAI as an affiliate of Refco owed SPhinX and PlusFunds a fiduciary duty. The question then remains whether Butt owed a fiduciary duty — a question that was not considered or decided in the March 1 Report and Recommendation.

The Plaintiffs' claim for breach of fiduciary duty in this case must fail because it is based on the assumption that because RAI had a fiduciary duty as an affiliate of Refco, so did Butt. But there is nothing in the Complaint to indicate that there was anything about Butt's role as a corporate official that created a personal relationship of trust and confidence between Butt and either SPhinX or PlusFunds.

It is notable that throughout the Complaint, Butt's fiduciary duty is assumed simply because he was a corporate officer of RAI. See, e.g., FAC ¶9 ("As an officer and agent of RAI, Butt shared in RAI's fiduciary duties to the SPhinX funds . . ."); FAC ¶91 ("RAI and its agents, including defendant Butt, served as the primary contact" between SPhinX and Refco and therefore Butt owed a fiduciary duty to SPhinX and PlusFunds."); FAC ¶ 95 ("Defendant Butt, as an officer of RAI charged with carrying our RAI's duties at material times, shared in RAI's fiduciary duties" to SPhinX and PlusFunds); FAC ¶100 (the Refco entities, including RAI, "and their directors and officers, including Butt" owed fiduciary duties to SPhinX and PlusFunds).

There is nothing in the Complaint to indicate that Butt did or undertook anything personally to justify any reliance or confidence by PlusFunds or SPhinX.[9] While RAI monitored the amount of cash necessary to satisfy margin requirements on SMFF's investments are Refco LLC, nothing in the Complaint indicates that Butt had anything personally to do with the transfer of excess cash to RCM. The most the Complaint can muster is that Butt was copied on emails requesting transfers

---

[8] The Report and Recommendation on primary wrongs, dated March 1, 2010, at pages 26-28, contains a section describing the relevant background law concerning the requirements for establishing a fiduciary duty. That section is incorporated herein by reference.

[9] The Plaintiffs do not allege that Butt undertook contractual obligations that RAI owed to SPhinX or PlusFunds. The responsibilities given to RAI were delegated by Refco LLC. FAC ¶ 91. Thus, the case for a fiduciary duty is even weaker here than with respect to defendant Guy Castranova in *Krys v. Aaron.* Castranova's duties stemmed from a detailed Service Agreement entered into between DPM and SPhinX, and even under those circumstances, the Plaintiffs did not sufficiently establish a relationship of trust and confidence with Castranova personally. See Report and Recommendation dated July 19, recommending dismissal of breach of fiduciary claim against Castranova.

6

of excess cash to RCM, which emails were sent from other RAI agents to DPM representatives. Nothing about being copied on emails rises to the level of a relationship of trust and confidence. *See United States v. Chestman*, 947 F.2d 551, 568 (observing that under New York law, a fiduciary duty arises if "confidence is reposed on one side and there is resulting superiority and influence on the other.").[10] *Compare Sergeants Benev. Ass'n Annuity Fund v. Renck*, 19 A.D.3d 107, 109-110, 796 N.Y.S.2d 77 (1st Dept. 2005) (fiduciary relationship found where individuals "provided investment advice to the Trustees regarding asset allocation, portfolio manager selection, investment objectives, investment guidelines and transaction costs" and "held themselves out as experienced in the field of investment consulting and management."). There are no facts alleged in the Complaint that would lead SPhinX (much less PlusFunds) to have a relationship of trust and confidence with Butt specifically.[11]

The Plaintiffs rely on *Rajeev Sindhwani MD, PLLC v. Coe Bus. Serv., Inc.,* 52 A.D.2d 674, 677, 861 N.Y.S.2d 705, 709 (2nd Dept. 2008), in which the court declared that "A corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced." But that was a case involving *conversion* (specifically, the wrongful withholding of medical records) and in which the individual defendant actually committed the tortious act on behalf of the entity. In the instant case, the Plaintiffs are arguing that Butt has a personal fiduciary duty with SPhinX and PlusFunds just because RAI does. It is one thing to say that a corporate officer who commits a tort cannot shield himself from liability just because he did it in his corporate capacity. It is another to say that a corporate official who has committed no misconduct has a relationship of trust and confidence whenever the corporation does, and therefore is liable for all of the corporation's breaches.

If a fiduciary relationship has been sufficiently pled against Butt, then it essentially means that any high-ranking corporate official is subject to personal liability for breach of fiduciary duty whenever the corporation breached its own fiduciary duty. But this is not the law. Like the fiduciary duty claims brought against the officers in *American Fin. Intern. Group-Asia, L.L.C. v. Bennett*,

---

[10] The parties cite exclusively to cases under New York law, and do not argue that any other state's law should apply.

[11] The only actions attributed to Butt that are independent of RAI are those related to his actions as the President of Refco Fund Holdings. But the Plaintiffs do not, and cannot, allege that any of Butt's actions at Refco Fund Holdings could give rise to a fiduciary duty with SPhinX and PlusFunds. Refco Fund Holdings was an *investor* in the SPhinX funds. The Plaintiffs do not contend that an investor has a fiduciary duty to the funds in which an investment is made. Nor could any of Butt's actions on behalf of Refco Fund Holdings have caused the breach that is alleged in this case — i.e., the transfer of excess cash from Refco LLC to RCM. According to the Complaint, the relevance of Butt's role at Refco Fund Holdings is that Butt thereby became aware of SPhinX's business plan, including the customer segregation requirements. FAC ¶ 9.

2007 WL 1732427, at *5 (S.D.N.Y.), the allegations of fiduciary duty owed by Butt personally are "beyond bare." As Judge Lynch noted in *Bennett*: "Even if * * * a [fiduciary] relationship had existed between plaintiffs and RefcoFX, nothing in the complaint suggests that any relationship existed between plaintiffs and RefcoFX's individual officers. Accordingly, plaintiffs' claims for breach of fiduciary duty must be dismissed."[12]

This case is even weaker that *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,* 1999 WL 47223, at *6 (S.D.N.Y.), in which the court rejected the claim that an officer/director breached a personal fiduciary duty, and declared it insufficient to have "merely stated in conclusory and general terms that because Nassereddine solicited investors to the SIGMA fund and communicated with them, a fiduciary duty was established." In this case, there is nothing in the Complaint to indicate that Butt made *any* representations or undertook *any* acts that would warrant a finding of a relationship of trust and confidence. See *Id.* ( noting that because status as a corporate official is not enough to establish breach of fiduciary duty, the pleader must "allege other factors demonstrating the existence of a relationship in which trust and confidence has been reposed, such as allegations of past dealings or prior relationships.") Accordingly, the claim against Butt for breach of fiduciary duty should be dismissed.[13]

The question remains whether the dismissal should be with prejudice. Given the fact that 1) the Complaint has been once amended, and 2) the Plaintiffs have already had access to Butt's testimony (see FAC ¶ 133-134) and yet have been utterly unable in an amended complaint to establish a fiduciary relationship — the Special Master recommends that the dismissal should be with prejudice. The process of this litigation indicates that Butt is little more than an afterthought, and the Complaint against him reads as if that is the case.[14] Under the circumstances, the costs and

---

[12] In this case, most of the alleged breaches are grounded in fraudulent concealment, e.g., "concealing the movement of SMFF cash to RCM" from innocents at SPhinX and PlusFunds. FAC ¶ 237. Those claims are governed by Rule 9(b). *See Soley v. Wasserman*, 2010 WL 931888, at *7-*8 (S.D.N.Y.) (the court must assess each ground underlying a breach of fiduciary duty claim, and apply Rule 9(b) to those grounds sounding in fraud and Rule 8 to those that do not). The claim for breach involving authorizing or allowing the movement of SMFF's cash is at least arguably grounded in fraud as the transfers are the major event in the SPhinX fraud. But in any case, even if that prong of the fiduciary duty claim is governed by Rule 8, it makes no difference, because the Plaintiffs' contention — that because RAI had a fiduciary duty, Butt automatically had a fiduciary duty as well — is without legal basis.

[13] If the Court disagrees and finds that Butt did owe a fiduciary duty to SPhinX and PlusFunds, then  for reasons discussed in the Report and Recommendation on primary wrongs dated March 1, 2010 regarding Refco, the Court should find that the Plaintiffs have sufficiently pled that the fiduciary duty was breached and that the breach proximately caused the alleged damages.

[14] The Plaintiffs initially brought two separate actions in state courts against more than 50 defendants  (including RAI) but not Butt. The Plaintiffs entered into a series of tolling

inconvenience of an amended complaint are not justified. *See In re Parmalat Sec. Litig*., 501 F.Supp.2d 560, 593 (S.D.N.Y.2007) (denying leave to amend in "a large and exceptionally complex multidistrict proceeding" in which plaintiffs, "with their unjustifiably verbose pleadings, have contributed more than their share to its extraordinary cost and burden" and in which the court saw "no sufficient reason for these belatedly filed and dubious cases to continue to complicate this proceeding").[15]

*Recommendation*

*Count One should be dismissed with prejudice.*

### B. Aiding and Abetting Breach of Fiduciary Duty

Count II alleges that Butt aided and abetted breaches of fiduciary duty by a number of individuals and entities, specifically 1) Refco LLC and RCM; 2) Sugrue, Kavanagh and Owens; and 3) DPM and Aaron.[16] The Plaintiffs allege that Butt substantially assisted the breaches "by authorizing or participating in the movement of SPhinX's assets to unprotected, non-segregated accounts at RCM and failing to disclose or object to the improper movement of SPhinX's assets to RCM." FAC ¶ 255.[17]

To state a claim for aiding and abetting a breach of fiduciary duty, one must plead "(i) a breach by a fiduciary of obligations to another, (ii) that the defendant knowingly induced or

---

agreements with Butt but when Butt declined to extend the tolling period, the Plaintiffs sued him. See Transcript of Oral Argument at 115-116.

[15] The court in *Parmalat* also found it significant that the plaintiffs had tendered no new proposed amended complaint and "have not even begun to suggest how they think they might cure the deficiencies" in the dismissed complaints. In this case, it is notable that the Plaintiffs have proposed second amended complaints in *Sugrue* and *Aaron* but have not proposed a second amended complaint against Butt.

[16] Even though the Plaintiffs allege in *Krys v. Aaron* that Castranova breached fiduciary duties, the Complaint against Butt does not allege that he aided and abetted those breaches.

[17] Count II also appears to contend that *PlusFunds* breached a fiduciary duty and that Butt is liable for aiding and abetting PlusFunds in doing so. There is no counterpart to this strange claim in the complaints brought in *Sugrue* or *Aaron.* It should take no citation to conclude that a defendant cannot be liable for aiding and abetting a breach of fiduciary duty by the plaintiff suing for the injury. So at the very least PlusFunds cannot maintain this particular claim.

9

participated in the breach, and (iii) that plaintiff suffered damage as a result of the breach." *Kaufman v. Cohen,* 307 A.D.2d 113, 125, 760 N.Y.S.2d 157 (1st Dept. 2003). The plaintiff must "allege some facts, in non-conclusory terms to show knowing participation by defendants in the alleged breach." *Musalli Factory For Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 24 (S.D.N.Y.2009) (internal quotations omitted).

The Report and Recommendation on primary wrongs determined that the Plaintiffs have sufficiently pled a breach of fiduciary duty by Refco; and the Report and Recommendation on the motions to dismiss in *Krys v. Aaron* determined that the Plaintiffs have sufficiently pled a breach of fiduciary duty by DPM and Aaron. Both of these recommendations are currently under review by the Court. For purposes of this motion it will be assumed that the Plaintiffs have sufficiently pled the primary wrong of breach of fiduciary duty. Butt does not contest the existence of the underlying breaches in his brief.[18]

### *1. Knowledge*

An aiding and abetting claim requires that the defendant had knowledge of the underlying wrongful conduct, a standard that is not satisfied by a mere allegation of constructive knowledge. *See Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996) ("New York common law . . . has not adopted a constructive knowledge standard for imposing aiding and abetting liability"). To plead a cause of action for aiding and abetting breach of fiduciary duty, the plaintiff must allege both that "the defendant had actual knowledge of the primary violator's status as a fiduciary and actual knowledge that the primary violator's conduct contravened a fiduciary duty." Id. at 246-247. New York law requires that a plaintiff must allege facts that give rise to a "'strong inference'" of such knowledge. *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006)).[19]

As stated in previous Reports and Recommendations, there is dispute in the case law on whether "conscious avoidance" is sufficient for the knowledge prong of an aiding and abetting claim. *Compare Fraternity Fund Ltd.*, 479 F. Supp. 2d at 368 (finding it sufficient to plead with particularity conscious avoidance, meaning that it can almost be said that, given the underlying circumstances, the defendant actually knew of the breach), *with Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC,* 446 F.Supp.2d 163, 202, n. 273 (S.D.N.Y.) (noting that the weight of authority under New York law requires actual knowledge, as distinct from "willful blindness"). The difference, however, between actual knowledge and "it can almost be said that the defendant actually knew" is, to say the least, a narrow one. And any difference is not material in this case.

---

[18] The question of whether Owens and Kavanagh breached fiduciary duties will be reserved for a later determination in the action against those defendants.

[19] The parties rely on New York law and do not dispute that New York law is applicable to the aiding and abetting claim.

In this case, the Plaintiffs sufficiently allege that Butt knew about the segregation requirements; they plausibly assert that in his position at Refco Fund Holdings, Butt had a duty to safeguard the assets of the funds at SPhinX and would certainly have become aware of the segregation requirements. See FAC ¶¶9, 98. The Plaintiffs also sufficiently allege that Butt knew that transfers of excess cash were being made from Refco LLC to RCM — he was copied on emails to that effect (FAC ¶136) and testified to his knowledge that the transfers were made (FAC ¶133). Finally, the Plaintiffs have sufficiently alleged that Butt knew that the transfers to RCM left the excess cash unprotected from RCM's insolvency; the Complaint cites his own testimony recognizing that fact. FAC ¶137.

It is significantly less clear that Butt knew that the transfers were in violation of an underlying fiduciary duty owed to SPhinX and PlusFunds by the alleged primary wrongdoers.[20] The breach of fiduciary duty is that the primary wrongdoers transferred protected assets to RCM *without proper authorization.* See the Report and Recommendation on primary wrongs at 9-10. Nothing in the Complaint indicates that Butt had knowledge that the transfers were unauthorized. The Plaintiffs appear to contend that if the transfers were to unprotected accounts, then they could not by definition have been authorized because the transfers violated the underlying documentation requiring segregation. The following exchange from the oral argument capsulizes the Plaintiffs' position as to Butt's knowledge of primary wrongdoing:

> Prof Capra: * * * So if Butt goes to Sugrue and asks is this authorized, and Sugrue says yes, what's Butt supposed to say?
>
> Mr. Beus: Butt knows it's not authorized. He's looking at the offering memorandum. He knows RCM's not segregated. I don't care if Sugrue tells him that. * * *
>
> * * *
>
> Prof. Capra: You mean it's imprisoned in a segregated account forever? You put something in a segregated account and that's where it has to stay? * * *
>
> * * *
>
> Mr. Beus: * * * That goes all the way back to the governing documents. That's what the offering memorandum says. And if you do, your Honor, you do decide to do that [i.e., move the cash to an unsegregated account] you got to tell the folks who've got their money there. You've got to say the rules have changed.

---

[20] Like the defendants in *Krys v. Aaron*, Butt argues that SPhinX's own offering memoranda disclosed the risk of cash being held at an unregulated prime broker. In the July 19, 2010 Report and Recommendation on the motions to dismiss in *Krys v. Aaron,* at 26-27, the Special Master determined that this same argument at best raised a question of fact and did not justify dismissal of the Plaintiffs' claims. That conclusion applies to Butt's argument here.

>Professor Capra: * * * What about the alleged aider and abetter, why would they have any duty to tell the shareholders or investors?
>
>Mr. Beus: They've got a duty to get out and not assist them. * * * Once it becomes nonsegregated, excess cash nonsegregated, there is a breach of that duty. Anybody that aids and abets it is responsible as well as the promulgator.

Transcript of Oral Argument at 151-156.

The Plaintiffs make no legal argument that a transfer from a protected to an unprotected account is *ipso facto* a breach of fiduciary duty — or that such a principle is so obvious that Butt would have to know it. Indeed, in addressing the omnibus question of "primary wrongs" the Plaintiffs strenuously argued that the transfers of excess cash were wrongful because they were not properly authorized. See Report and Recommendation on primary wrongs at 9-10. So there must be something besides knowing that the transfers were made to an unsegregated account; there must be a showing of knowledge that the transfers were not properly authorized. And even assuming the accuracy of Counsel's statement at oral argument — that investors need to be notified before such transfers could be authorized — the Complaint fails to allege that Butt knew that such notice had never been given.

Ultimately, the Plaintiffs have not made the case that Butt knew, or consciously avoided, the fact that the transfers were unauthorized. This case is similar to *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 303 (2d Cir. 2006), in which the plaintiff complained that defendants obtained business opportunities from a person who was, at the time, violating his duty of loyalty to the plaintiff- competitor. The court found that there could be no aiding and abetting where the defendants did not know that the person with whom they were dealing was acting without authorization and violating his duty of loyalty to his employer. The court noted that the defendants were "not under any independent affirmative duty to call Design to verify what Davis had represented." Similarly in this case there is nothing that required Butt to put everything together and determine that the transfers were unauthorized.

At most the Plaintiffs have shown that there were enough indications of lack of authorization — e.g., insufficient returns on the unsegregated accounts,[21] no account opening documents — that, when coupled with the knowledge that the cash was unprotected, should have indicated to Butt that the transfers were unauthorized. But what Butt *should have known* is not enough to establish knowledge. *See, e.g., Rosner v. Bank of China,* 349 Fed. Appx. 637, 638 (2d Cir. 2009) (reason to question some transactions is not sufficient to indicate actual knowledge); *Chemtex, LLC v. St. Anthony Enterprises, Inc.*, 490 F.Supp.2d 536, 546 (S.D.N.Y.2007) (allegations that amounted to an assertion that the defendant should have known of improper transfers were insufficient to

---

[21] See FAC ¶¶ 145-147 (cash held at RCM yielded no interest for certain periods and interest below market rates at all relevant times and therefore there was no business purpose for the transfers).

establish knowledge requirement for aiding and abetting); *Renner v. Chase Manhattan Bank*, 2000 WL 781081 (S.D.N.Y.) (not enough to know that a transaction occurred or that it might have been questionable); *Glonti v. Stevenson*, 2009 WL 311293, at *8-*9 (S.D.N.Y) ("Plaintiffs have alleged only facts tending to show that defendants should have been alerted to Foerster's fraud because of their positions of seniority at Lehman Brothers and the legal and professional responsibilities imposed by the SEC and NASD. However, New York courts have consistently held that constructive knowledge is insufficient" for aiding and abetting liability.).[22]

It is true that the Report and Recommendation on primary wrongs, at page 10, concludes that the Plaintiffs' allegations provided "a plausible case of *Refco's* knowledge of — as well as participation in or engineering of — a scheme to transfer SMFF excess cash from protected accounts at Refco LLC to unprotected accounts at RCM."(emphasis added). But the Special Master made no finding that every single official at Refco had the requisite knowledge. Because the Plaintiffs are suing Butt personally, they must allege with particularity that Butt knew the transfers to RCM were unauthorized. This they have not done.

***Accordingly, the Plaintiffs have failed to sufficiently plead the knowledge required for aiding and abetting liability.***


### *2. Substantial Assistance*

"In the aiding and abetting context, a plaintiff must allege that the defendant's substantial assistance in the primary violation proximately caused the harm on which the primary liability is predicated. Plaintiffs must allege more than but-for causation. They must allege also that their injury was a direct or reasonably foreseeable result of the conduct." *Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*, 479 F.Supp.2d 349, 370-71 (S.D.N.Y. 2007).[23]

---

[22] Butt's situation can usefully be distinguished from that of Robert Aaron. In *Krys v. Aaron,* the Special Master determined that the Plaintiffs had sufficiently pled Aaron's knowledge of the underlying breaches of fiduciary duty. The Plaintiffs alleged with particularity that Aaron had a motive that would raise an inference of intent and knowledge. *See Rosner v. Bank of China*, 528 F.Supp.2d 419, 426 (S.D.N.Y.,2007). No such motive is ascribed to Butt. The Plaintiffs also alleged that Aaron attempted to alter the DPM Service Agreement to remove the provisions that most directly pertained to the obligations to keeping the cash in segregated accounts — an attempt that raised a plausible inference that Aaron and DPM knew that the transfers were wrongful. Finally and most importantly, the Plaintiffs alleged that Aaron intentionally misrepresented the amount of assets that were at risk — such an act is consistent with knowledge that the transfers were unauthorized. No such allegations are made against Butt.

[23] As Judge Kaplan recognized in *Fraternity Fund,* "there is some debate about whether proximate cause and substantial assistance ought to be equated in the aiding and abetting context." But most case law in the Second Circuit requires a showing of proximate cause for an

In this case the Plaintiffs have utterly failed to plead any act that could constitute substantial assistance of the breaches of fiduciary duty by the listed wrongdoers. The relevant allegation is FAC ¶255, which accuses Butt of 1) "authorizing or permitting" the transfers to RCM, and 2) "failing to disclose or object to" the improper transfers.

The only affirmative act even alleged is the purported "authorizing" of the transfers. But the Complaint itself belies any affirmative act of authorization. FAC ¶136 alleges only that Butt was copied on emails requesting the transfers, which were sent by some unspecified RAI agents to a representative of DPM. This is decidedly not an assertion of "authorizing." The paragraph states conclusorily that Butt "caused" the transfers to be made but there is nothing at all in the Complaint to support that assertion.[24]

Notably, there is nothing in the Complaint specifically alleging that Butt ever personally effectuated a transfer of excess cash from Refco LLC to RCM. Nor is there anything in the Complaint alleging that Butt made any kind of affirmative misrepresentation about the fact that the transfers were made or that the cash was unprotected at RCM.[25] Other than the unfounded claim about "authorizing" the transfers, the Plaintiffs' aiding and abetting assertions are not about what Butt did but about what he didn't do — he didn't stop the transfers and he didn't warn the innocents.

But it is well-established that "inaction, or failure to investigate, constitutes actionable participation only when a defendant owes a fiduciary duty directly to the plaintiff; that the primary violator owes a fiduciary duty directly to the plaintiff is not enough." *Kolbeck v. LIT Am., Inc.,* 940 F.Supp. 240, 246-47 (S.D.N.Y. 1996). *See also In re Sharp Intern. Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) ("The mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.") (citation omitted); *Ryan v. Hunton & Williams,* 2000 WL 1375265, at *10 (E.D.N.Y.) ("Absent a confidential or fiduciary relationship between the plaintiff and the aider and abettor, the inaction of the latter does not constitute substantial assistance ...."); *Stanfield Offshore Leverage Assets, LTD., v. Metropolitan Life Ins. Co.,* 64 A.D.3d 472, 883 N.Y.S.2d 486, 489-90 (1st Dept. 2009) ("[T]he crux of plaintiffs' claim is that Credit Suisse assisted in the alleged fraud by failing to disclose Meridian's insolvency. This allegation is insufficient to support a claim of aiding and abetting fraud absent a fiduciary duty or some other independent duty or owed by Credit Suisse to the plaintiffs."). And as discussed above,

---

aiding and abetting claim. *See, e.g., Pension Committee of University of Montreal Pension Plan v. Banc of America Securities*, *LLC*, 446 F.Supp.2d 163, 201 (S.D.N.Y. 2006). In this case, any distinction between substantial assistance and proximate cause is irrelevant because the Complaint fails to allege that Butt made *any* affirmative act to further the underlying breaches.

[24] In contrast, the Complaint in *Krys v. Aaron* specifically alleges acts by Aaron, Castranova, and DPM that effectuated the transfers

[25] Again, this is in stark contrast to the claims against DPM, Aaron and Castranova, who are alleged to have prepared false statements concerning, e.g., the amount of cash at risk.

the Plaintiffs have not come close to sufficiently alleging that Butt owed a fiduciary duty to the Plaintiffs.

*Accordingly, the Plaintiffs have failed to sufficiently plead substantial assistance of the underlying breaches of fiduciary duty.*

*3. Conclusion on Aiding and Abetting*

The Plaintiffs have failed to sufficiently plead either knowledge or substantial assistance. Thus Count II should be dismissed.   And for the reasons stated above in the discussion of Count I, Count II should be dismissed with prejudice.

*Recommendation:*

*Count II should be dismissed with prejudice.*


**IV. Conclusion**

*In accordance with the Report above, the Special Master recommends that the First Amended Complaint against Butt should be dismissed in its entirety, with prejudice.*

Daniel J. Capra
Special Master

Dated: August 4 , 2010
New York, New York