**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
                    :
IN RE: REFCO SECURITIES LITIGATION    :   07 MDL 1902 (JSR)
                    :
-----------------------------------------------------------------X

-----------------------------------------------------------------X
                    :
KENNETH M. KRYS and CHRISTOPHER  :   08 Civ. 7416 (JSR)
STRIDE, as JOINT OFFICIAL LIQUIDATORS  :
of SPHINX LTD., et al.               :
                    :   ECF Filed
            Plaintiffs,  :
                    :   ORAL ARGUMENT REQUESTED
   -against-              :
                    :
ROBERT AARON, *et al.*,          :
                    :
           Defendants.  :
                    :
-----------------------------------------------------------------X

**THE DPM DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO
THE SPECIAL MASTER'S REPORT & RECOMMENDATION DATED JULY 19, 2010,
<u>REGARDING THE MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................ 2

I.   THE SPECIAL MASTER CORRECTLY DETERMINED THAT THE
CLAIMS AGAINST BNYMELLON SHOULD BE DISMISSED WITH
PREJUDICE. ............................................................................................ 2

   A.  BNYMellon Is Not Directly Liable to Plaintiffs. ........................................ 3

   B.  Plaintiffs' Agency Theory Is Flawed. ...................................................... 5

II.  THE SPECIAL MASTER CORRECTLY DETERMINED THAT THE NJRICO
CLAIM SHOULD BE DISMISSED IN ITS ENTIRETY WITH PREJUDICE ............. 8

   A.  The Complaint Fails to Adequately Allege a NJRICO Enterprise ............................ 8

   B.  The Complaint Fails to Adequately Allege an Association-In-Fact Enterprise. ........ 10

   C.  The Report Correctly Concludes that the Complaint Fails to State a NJRICO
Claim Against BNYMellon. ................................................................... 11

   D.  The Report Correctly Concludes that the Complaint Fails to State a Claim of
Conspiracy under NJRICO. .................................................................. 13

III. THE SPECIAL MASTER PROPERLY RECOMMENDED THE DISMISSAL
OF OTHER CLAIMS AGAINST VARIOUS DPM DEFENDANTS. ........................... 16

IV. PLAINTIFFS FAIL TO OBJECT TO THE RECOMMENDATION TO DISMISS
THEIR AIDING AND ABETTING TORTIOUS INTERFERENCE CLAIM. ............... 17

V.  PLAINTIFFS' ALTERNATIVE REQUEST FOR LEAVE TO AMEND SHOULD
BE DENIED AS FUTILE. ........................................................................ 17

CONCLUSION ................................................................................................... 18

ME1 10356440v.3

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amalgamated Transit Union Local 1181, AFL-CIO v. City of New York*,
   45 A.D. 3d 788, 846 N.Y.S.2d 336 (2d Dept. 2007) ............................................................ 4

*Amendolare v. Schenkers Intern. Forwarders, Inc.*,
   747 F. Supp. 162 (E.D.N.Y. 1990) ...................................................................................... 12

*Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*,
   660 F. Supp. 1362 (D. Conn. 1987)...................................................................................... 13

*Black Radio Network, Inc. v. NYNEX Corp.*,
   44 F. Supp. 2d 565 (S.D.N.Y. 1999) ................................................................................... 16

*Cedar Swamp v. Zaman*,
   No. 06-cv-13626 (LAK), 2007 U.S. Dist. LEXIS 36286 (S.D.N.Y. May 17, 2007)............. 11

*Cohen v. Singer*,
   4 Fed. Appx. 38 (2d Cir. 2001) ....................................................................................17, 18

*Colony at Holbrook, Inc. v. Strata G.C., Inc.*,
   928 F. Supp. 1224 (E.D.N.Y. 1996) .................................................................................... 15

*Conte v. Newsday, Inc.*,
   No. 06-CV-4859(JFB), 2010 U.S. Dist. LEXIS 28502 (E.D.N.Y. Mar. 25, 2010) .............. 14

*Discon, Inc. v. NYNex Corp.*,
   93 F.3d 1055 (2d Cir. 1999).................................................................................................. 16

*Edinburg Volunteer Fire Co., Inc. v. Danko Emergency Equip. Co.*,
   2008 WL 4659807 (3d Dep't Oct. 23, 2008) ....................................................................... 7

*Expediters Int'l of Washington, Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*,
   995 F. Supp. 468 (D.N.J. 1998)............................................................................................ 5

*FD Prop. Holding, Inc. v. US Traffic Corp.*,
   206 F. Supp. 2d 362 (E.D.N.Y. 2002) ................................................................................. 15

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
   412 F.3d 418 (2d Cir. 2005)................................................................................................... 5

*Kovian v. Fulton County Nat'l Bank and Trust Co.*,
   100 F. Supp. 2d 129 (N.D.N.Y. 2000)............................................................................11, 12

ME1 10356440v.3

*Leka v. U.S.*,
  No. 06-cv-1484 (GLS), 2008 WL 686797 (N.D.N.Y. Mar. 10, 2008).................................. 17

*Makowski v. United Brotherhood of Carpenters*,
  2010 U.S. Dist. LEXIS 77775 (S.D.N.Y. August 2, 2010) ................................................. 12

*Maung Ng We v. Merrill Lynch & Co., Inc.*,
  No. 99-cv-9687(CSH), 2000 WL 1159835 (S.D.N.Y. Aug. 15, 2000)................................... 5

*In re MBIA, Inc. Sec. Litig.*,
  No. 08-cv-264, 2010 U.S. Dist. LEXIS 31430 (S.D.N.Y. Mar. 31, 2010).......................... 16

*Mercer v. Weyerhaeuser Co.*,
  735 A.2d 576 (N.J. App. Div. 1999) ................................................................................... 7

*Moll v. U.S. Life Title Ins. Co. of N.Y.*,
  654 F. Supp. 1012 (S.D.N.Y. 1987) ................................................................................... 11

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
  165 F. Supp. 2d 514 (S.D.N.Y. 2001) ................................................................................ 16

*Pearson v. Component Tech. Corp.*,
  247 F.3d 471 (3d Cir. 2001).................................................................................................. 3

*Phoenix Canada Oil Co. v. Texaco, Inc.*,
  842 F.2d 1466 (3d Cir. 1988) ............................................................................................... 6

*Port Dock & Stone Corp v. Oldcastle Northeast, Inc.*,
  507 F.3d 117 (2d Cir. 2007)................................................................................................ 18

*Republic of Ecuador v. Chevron Texaco Corp.*,
  376 F. Supp. 2d 334 (S.D.N.Y. 2005) ................................................................................. 4

*Richmond v. Nationwide Cassel L.P.*,
  52 F.3d 640 (7th Cir. 1995).................................................................................................. 9

*Ross v. Celtron Int'l, Inc.*,
  494 F. Supp. 2d 288 (D.N.J. 2007)..................................................................................... 16

*RxUSA Wholesale, Inc. v. Alcon Lab., Inc.*
  661 F. Supp. 2d 218 (E.D.N.Y. 2009) ..........................................................................15, 18

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988).................................................................................................... 9

*In Re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
  2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009) ....................... 10

iii

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*,
   No. 04 CV 5040(ILG), 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008) ................................. 15

*State v. Ball*,
   661 A.2d 251 (1995) ........................................................................................................ 13

*Sundahl v. State Farm Mut. Auto Ins. Co.*,
   2009 U.S. Dist. LEXIS 68093 (E.D.N.Y. March 31, 2009) ................................................. 15

*Suthers v. Amgen, Inc.*,
   441 F. Supp. 2d 478 (S.D.N.Y. 2006) .................................................................................. 4

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
   531 F.3d 190 (2d Cir. 2008) .............................................................................................. 16

*United States v. Bestfoods, Inc.*,
   524 U.S. 51 (1998) ....................................................................................................... 3, 5

*USA Certified Merchs., LLC v. Koebel*,
   262 F. Supp. 2d 319 (S.D.N.Y. 2003) ................................................................................ 12

## STATUTES

18 U.S.C.A. § 1962(c) ......................................................................................................... 13

N.J.S.A. 2C:41-1 ................................................................................................................ 12

N.J.S.A. 2C:41-2(c) .................................................................................................. 8, 9, 10, 13

ME1 10356440v.3

Defendants Guy Castranova, Derivatives Portfolio Management LLC, DPM-Mellon, LLC, Derivatives Portfolio Management, Ltd., DPM-Mellon, Ltd., and The Bank of New York Mellon Corporation ("BNYMellon") (collectively, the "DPM Defendants") respectfully respond to Plaintiffs' Limited Objection to the July 19, 2010 Report and Recommendation of the Special Master on the DPM Defendants' Motion to Dismiss the Amended Complaint (the "Objection") in *Krys v. Aaron*, No. 08 Civ. 7416.

## PRELIMINARY STATEMENT

When the Amended Complaint is read with the benefit of the actual terms of the documents it references, as well as the allegations contained in the *Krys v. Sugrue* Amended Complaint (No. 08 Civ. 3065 and 3086), it is readily apparent that PlusFunds, Refco, Sugrue, Bennett, Maggio and others -- all either bankrupt, in prison, or on the lam, and essentially judgment proof -- placed the SPhinX funds at issue in harms way at RCM for their own personal benefit. Plaintiffs' allegations of motive and "intentional wrongdoing" by the DPM Parties are based on implausible and improper inferences drawn from a July 31, 2002 letter signed by Robert Aaron. In fact, the DPM Parties had no power or duty to remove the SPhinX funds from RCM, and there is no factual allegation that BNYMellon -- which acquired DPM well after the SPhinX funds were initially placed with RCM -- had *any* knowledge of the RCM risk or caused DPM or anyone else to maintain the funds at RCM.

Special Master Capra has correctly discerned the many deficiencies of Plaintiffs' Complaint -- especially as it relates to their claims against BNYMellon. He correctly rejects Plaintiffs' claims against the Company on the basis of direct and agency liability. Indeed, in their Objection, Plaintiffs even concede that a relationship to the cause of action is necessary to hold BNYMellon liable (something their Complaint actually fails to assert).

The Special Master also correctly concluded that the Complaint fails to plead an

enterprise under the New Jersey Racketeer and Corrupt Organizations Act ("NJRICO") because

those allegations are so vague and confusing as to fail the test of Fed. R. Civ. P. 8(a).  Indeed, the

dragnet multiple enterprises alleged in the NJRICO count are not even fully identified.

Furthermore, neither the conspirators supposedly operating the various alleged enterprises nor

the relations among those enterprises are described sufficiently enough to allow the DPM

Defendants to formulate a response.

Based on these (and other) deficiencies, the Special Master appropriately recommended

the dismissal of several claims against the DPM Defendants -- including, *inter alia*, the claims as

to BNYMellon and the NJRICO claim.  *See* Report and Recommendation dated July 19, 2010

(the "Report").[1]  Plaintiffs' objections are without merit.  Accordingly, the Report should be

affirmed in all respects except as set forth in the DPM Defendants' Objection dated July 29,

2010.

## ARGUMENT[2]

### I.   THE SPECIAL MASTER CORRECTLY DETERMINED THAT THE CLAIMS AGAINST BNYMELLON SHOULD BE DISMISSED WITH PREJUDICE.

In their Objection, Plaintiffs continue to assert that BNYMellon is both directly and

vicariously liable to Plaintiffs.  However, as the Special Master aptly concluded, and as

explained below, "there is no plausible claim that [BNY]Mellon is liable for DPM's conduct

under *any* theory of attribution."  Report at 30 (emphasis added).  Further, Plaintiffs' charge of

---

[1] As set forth in their Objection dated July 29, 2010, to the extent that the Report does not dismiss with prejudice all claims addressed in the DPM Defendants' Motion to Dismiss, the DPM Defendants urge the Court not to adopt those recommendations.  The Motion to Dismiss should be granted in its entirety as against all DPM Defendants.

[2] The DPM Defendants fully address each of the arguments set forth in Plaintiffs' Objection in both their moving Brief (Docket # 51) and Reply Brief (Docket # 60); (i) claims against BNYMellon, *see* Brief at 19-25, Reply at 19-23; (ii) NJRICO claims, *see* Brief at 41-50, Reply at 22-25; (iii) breach of the implied covenant, *see* Brief at 17-18, Reply at 10; (iv) tortious interference, *see* Brief at 34-37, Reply at 18.

direct liability is lacking given that BNYMellon did not even acquire DPM until 2005 -- long after many of the alleged actions took place.

### A.     BNYMellon Is Not Directly Liable to Plaintiffs.

Mere ownership of a subsidiary *does not justify* the imposition of direct liability on the parent. *See United States v. Bestfoods, Inc.*, 524 U.S. 51, 61-62 (1998).  To the contrary, direct liability usually is imposed on the parent only when the parent somehow has interfered with the subsidiary's operations in a way that surpasses the control generally exercised by parent companies as an incident of ownership.  "In such situations, the parent has not acted . . . in its capacity as the owner of the subsidiary; rather *it has forced the subsidiary to take the complained-of action*, in disregard of the subsidiary's distinct legal personality."  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (emphasis added).

Plaintiffs insist that BNYMellon should be liable for the same alleged wrongs as DPM and Aaron because:  (i) it "acquired" the assets and liabilities of DPM in February 2005; and (ii) BNYMellon had its own direct interactions with SPhinX and PlusFunds that created a relationship of trust and confidence.  Objection at 3-4.  In so arguing, Plaintiffs disregard both the relevant facts and law.

The unrefuted evidence of record (which this Court may properly consider on a Motion to Dismiss) plainly demonstrates that BNYMellon's acquisition of DPM was structured as an acquisition of LLC membership interests in which the separate existence of DPM was maintained -- *not* as an acquisition of assets and liabilities.  *See* Declaration of B. John Pendleton Jr., dated 5/1/09 (Docket # 61), Ex. 1, Purchase Agreement dated Jan. 18, 2005.  In their Objection, Plaintiffs do not dispute the terms of the Purchase Agreement.  Instead, they merely (and conveniently) contend that the matter is better left for summary judgment.  Plaintiffs are wrong.  On a motion to dismiss, courts may consider "documents … of which plaintiffs had

knowledge and relied on in bringing suit." *Republic of Ecuador v. Chevron Texaco Corp.*, 376 F. Supp. 2d 334, 375 (S.D.N.Y. 2005). As Plaintiffs premise the bulk of their claims against BNYMellon on its acquisition of DPM, they were aware of -- if not in actual possession of -- the Purchase Agreement.

There is no dispute that BNYMellon is not a signatory to the Service Agreement. Yet, Plaintiffs seek to impose direct liability with nothing more than the conclusory and self-serving allegation that BNYMellon "assumed control" over DPM's performance of the Service Agreement. Under New York law, however, even a successor to a contract will not be bound directly to its terms absent an *affirmative* assumption of the duties of the contract. *Amalgamated Transit Union Local 1181, AFL-CIO v. City of New York*, 45 A.D. 3d 788, 790, 846 N.Y.S.2d 336 (2d Dept. 2007). Moreover, as the Special Master noted -- and Plaintiffs failed to refute -- "mere participation or *support* in the performance of a contract *does not constitute assumption*." Report at 9 (citing *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1160 (S.D.N.Y. 1988)). There is simply no legal support (and Plaintiffs do not cite to any) for the proposition that a "promise" to devote resources to improving DPM's performance constitutes an assumption of liability for *all* of DPM's obligations in connection with the Service Agreement.

With respect to the fiduciary duty and related tort claims, Plaintiffs contend that the merest allegation of "trust and confidence" suffices to defeat dismissal. Objection at 8. This assertion likewise is incorrect. In fact, "New York courts have not hesitated to find fiduciary duty claims deficient when a plaintiff has not pled . . . 'any relationship approaching privity.'" *Suthers v. Amgen, Inc.*, 441 F. Supp. 2d 478, 486-87 (S.D.N.Y. 2006). In this case, there can be no *actual* argument regarding privity between Plaintiffs and BNYMellon. As the Special Master noted, "at the time of the alleged promise [to improve DPM's services], [BNY]Mellon had *no*

4

business relationship with SPhinX or PlusFunds, and no corporate relationship to DPM.  No case law cited by the Plaintiffs provides authority for finding a fiduciary relationship under such attenuated circumstance."  Report at 30 (emphasis added).  In addition, given that *no relationship* (let alone a fiduciary one) existed, Plaintiffs' remaining arguments regarding mental state and fact-specific inquiries are moot.

### B.      Plaintiffs' Agency Theory Is Flawed.[3]

Plaintiffs decry the Special Master's singular focus on the *alter ego* theory of agency liability -- and any of their shortcomings thereunder.  Plaintiffs stress that they are instead relying on "general agency principles" -- not veil piercing -- to hold BNYMellon liable.  Objection at 8. Regardless, just as the mere ownership of a subsidiary does not justify the imposition of direct liability on the parent, so too the existence of a parent-subsidiary relationship does not in itself create an agency relationship.  *See Bestfoods*, 524 U.S. at 62; *Maung Ng We v. Merrill Lynch & Co., Inc.*, No. 99-cv-9687(CSH), 2000 WL 1159835, at *4 (S.D.N.Y. Aug. 15, 2000) ("[A]n obligation does not become the obligation of the parent under the doctrine of agency just because the parent owns the subsidiary's stock.").  Rather, to hold a parent corporation liable for acts of its subsidiary, there *must be* "a relationship between the corporation and the cause of action.  Not only must an arrangement exist between the two corporations so that one acts on behalf of the other and within the usual agency principles, but the arrangement must be relevant to the Plaintiffs' claim of wrongdoing."  *Expediters Int'l of Washington, Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 481-82 (D.N.J. 1998).

---

[3] Despite emphasizing BNYMellon's alleged "dominion and control over DPM" in previous briefs (*see* Pl. Br. at 31-32, Docket # 55), Plaintiffs insist that they are not trying to establish liability through veil piercing.  *See* Objection at 8.  Accordingly, they are necessarily barred from arguing differently in the future.  *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005).

None of the cases cited by Plaintiffs hold to the contrary.  Instead, the cases on which they purport to rely merely stand for the general and unremarkable proposition that, in certain circumstances, a parent corporation *may* be liable for the acts of its subsidiary under an agency theory.  In fact, by relying on *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466,1477 (3d Cir. 1988), Plaintiffs acknowledge the requirement that there be a link between the parent corporation and the specific actions complained of in the Complaint.

Despite this concession, Plaintiffs fail -- as they have all along -- to explain how the alleged "agency" relationship is remotely relevant to their claim of wrongdoing.  *See Phoenix Canada Oil Co*, 842 F.2d at 1477.  By Plaintiffs' very own account, DPM already was engaging in the conduct at issue at the time of the 2005 acquisition.  *See* Compl., ¶¶ 130-34; 273-77. Plaintiffs' allegation regarding BNYMellon's alleged "promise" to bring DPM up to Mellon's standards is a red herring.  As the Special Master aptly noted, "at the time of the alleged promise, [BNY]Mellon had no business relationship with SPhinX or PlusFunds, and no corporate relationship to DPM."  Report at 30.

Even if the lack of a corporate relationship was irrelevant for an agency determination (and it is not), the primary role of DPM was to provide administrative services such as maintaining the records of SPhinX and calculating net asset value.  *See*, *e.g.*, Declaration of B. John Pendleton, Jr. dated 11/12/08 (Docket # 50), Ex. 4, June 30, 2004 Service Agreement. These services are in no way related to the gravamen of the Complaint here--i.e., the supposed concealment of the unsegregated nature of the SMFF accounts at RCM.[4]  Because the

---

[4] It is undisputed that two other entities, PlusFunds and Refco, LLC had the legal duty to assure segregation of funds.  *See* JOLs' November 13, 2009 Letter at 9 (Docket # 93) ("the Agreement with Refco LLC affirms that SMFF's fund "shall be segregated …will remain segregated even if the funds are deposited with another entity"). PlusFunds, as a Registered Investment Advisor with custody of client funds, had a legal duty to assure that client funds or securities are maintained with a qualified custodian in a separate account for each client under that client's name and failure to do so is a fraudulent, deceptive or manipulative act.  Under 17 C.F.R. 275.206(4)-2(a)(1), "qualified custodian" is defined as a bank, broker dealer registered under 15 U.S.C. 78o(b)(1), or a futures

alleged pre-acquisition assurances by BNYMellon as well as its post acquisition actions all related to upgrading DPM's administrative functions, there is no corollary (direct or otherwise) between any alleged conduct of BNYMellon and the primary subject matter of the Complaint.

Moreover, even though the issue is not addressed in either the Report or Plaintiffs' papers, it is classic hornbook law that an agent must have "authority" to act for the principal. Such authority may be "actual" or "apparent." *See* Br. in Support of Mot. to Dismiss at 23 (Docket # 51) (citing *Sears Mortgage Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993)). Actual agency requires that a party either expressly or impliedly "consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Id*. There is no allegation in the Complaint that BNYMellon consented to have DPM work on its behalf or that BNYMellon endowed DPM with any actual authority.

In order to establish apparent authority, the party claiming harm must prove: (1) that the appearance of authority has been created by the conduct of the alleged principal, not merely by the supposed agent; (2) that a third party has relied; and (3) that the reliance was reasonable under the circumstances. *Mercer v. Weyerhaeuser Co.*, 735 A.2d 576, 592 (N.J. App. Div. 1999). Again, however, the Complaint utterly fails to allege any of the elements required to prove apparent authority regarding the specific harm alleged in the Complaint (i.e., lack of segregated funds t RCM). *Edinburg Volunteer Fire Co., Inc. v. Danko Emergency Equip. Co.*, 2008 WL 4659807, at *1 (3d Dep't Oct. 23, 2008) ("Apparent authority will only be found where words or conduct of the principal -- not the agent -- are communicated to a third party,

---

commission merchant registered under either Section 4f(a) of the Commodity Exchange Act 7 U.S.C. 6f(a) or 17 C.F.R. 275.206(4)-2(c)(3)(iv) ("a foreign financial institution that customarily holds financial assets for its customers, provided that the foreign financial institution keeps the advisory clients' assets in customer accounts segregated from its proprietary assets.").

which give rise to a reasonable belief and appearance that the agent possesses authority to enter

into the specific transaction.").

## II. THE SPECIAL MASTER CORRECTLY DETERMINED THAT THE NJRICO CLAIM SHOULD BE DISMISSED IN ITS ENTIRETY WITH PREJUDICE.

Plaintiffs claim that by merely labeling each of the entity DPM Defendants as

"enterprises" they have satisfied the requirement of pleading the enterprise element of a claim

under N.J.S.A. 2C:41-2(c).  Plaintiffs posit (albeit incorrectly) that they need do no more because

the requirement of alleging specific facts regarding the organization applies only to association

in fact enterprises -- not legal entities.

### A.    The Complaint Fails to Adequately Allege a NJRICO Enterprise.

Assuming *arguendo* that the Complaint even does identify specific entities as among the

various alleged enterprises (and it does not), said identification is insufficient to overcome the

Report's conclusion that Plaintiffs have failed to adequately plead the enterprise element.

Specifically, the allegations are impermissibly vague, confusing, opaque and uninformative --

particularly where the existence of multiple enterprises is pled without explaining their

interactions in furtherance of the supposed scheme.  That the legal relations of certain of the

identified enterprises is cursorily outlined at various places *elsewhere* in the Complaint is not

sufficient to cure the NJRICO pleading deficiency.

In this case, however, the Complaint *does not designate* a single entity as an enterprise.

Rather, it only vaguely provides that:

> DPM, DPM-Mellon, BNYMellon, Aaron and Castranova along
> with other "persons" [who are not identified] operated and
> controlled "enterprises" consisting of DPM, DPM-Mellon,
> BNYMellon and their subsidiary  and affiliated companies [which
> are not identified] described above within the meaning of N.J.S.
> 2C:41-1c (hereinafter the "DPM Enterprises").

Compl., ¶ 405.  And,

DPM, DPM-Mellon, BNYMellon, Aaron and Castranova along with the other "persons" listed above [where in the preceding 400 plus paragraphs if at all the other persons are identified is unstated] managed, operated, "conducted and participated in the conduct of affairs of the DPM Enterprise [singular] through a pattern of racketeering activity.

Compl., ¶ 408.  As is clear from a review of these paragraphs, Plaintiffs make no attempt to delineate which of the supposed enterprises was conducted by any identified (or unidentified) person or in what manner or how the activities of the enterprises related to each other in furtherance of the supposed scheme.

The enterprise allegations in the Complaint also fail to comply with the Federal Rules of Civil Procedure because they do not specify *which* defendant conducted *which* alleged enterprise [identified or not] or how the enterprises [identified or not] interrelated with the supposed pattern of racketeering activity.  *See* Fed R. Civ. P. 8(a).  Where multiple enterprises are suggested, a RICO pleading that fails to *adequately identify* the enterprises and define their relationships fails to meet the necessary pleading requirements.  *See Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir. 1995) (affirming the dismissal of an amended complaint for failure to delineate the entities that were components of the vaguely described enterprises or their relationship to conduct of the affairs of the enterprise on grounds that "such a nebulous open ended description of the enterprise does not sufficiently identify this essential element of the RICO offense.").  *See also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[d]ismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.").

The DPM Defendants respectfully disagree with the Special Master's determination that there is no distinctiveness requirement under NJRICO, thus there need be no differentiation between persons and enterprises under N.J.S.A. 2C:41-2(c).  Contrary to the Report, the New

9

Jersey Supreme Court has not in fact decided the issue. *See In Re Schering-Plough Corp. Intron/Temodar Consumer Class Action,* 2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900, at *103, n. 20 (D.N.J. July 10, 2009) (noting disagreement among New Jersey lower court decisions regarding the need for distinct persons and entities under NJRICO and stating that the court need not predict whether the New Jersey Supreme Court -- which had not yet decided the issue -- would permit a corporate defendant to be both the person and the enterprise).

Indeed, the very language of the statute suggests the distinction: "it shall be unlawful for any person *employed by or associated with any enterprise* … to conduct or participate directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity…" Thus, this Court could very well determine that the Complaint's failure to distinguish enterprises from persons by simply naming the DPM Defendants as enterprises is inconsistent with the requirements set forth in N.J.S.A. 2C:41-2(c).

**B.     The Complaint Fails to Adequately Allege an Association-In-Fact Enterprise.**

Plaintiffs' alternative "association-in-fact" enterprise argument is fruitless. Again, their allegations fail to comply with Rule 8 of the Federal Rules of Civil Procedure as well as the requirements of pleading a NJRICO enterprise.

First, as explained above, due to the apparent intent to include unspecified persons and enterprises, the delineation of the membership of the association in fact enterprise is unduly vague and fails to comport with Federal Rule of Civil Procedure 8(a).

Second, Plaintiffs' assertion that the alleged pattern supports an inference of organization (Objection at 17) is unavailing here for the following reasons:  (i) Defendants have objected to the conclusion that a pattern of racketeering activity was stated; and (ii) *State v. Ball,* 661 A.2d 251, 261 (1995), upon which Plaintiffs rely, *does not actually support their claim* that pleading a

10

pattern necessarily pleads an association-in-fact -- only that the same evidence *may* demonstrate both elements.  None of the alleged racketeering acts noted in the Complaint are alleged to have been participated in or even known to all of the supposed participants in the association-in-fact. Moreover, there is no allegation of participation in or knowledge by BNYMellon or any of the other unidentified persons referred to in Paragraph 406 of the Complaint.

Third, the conclusory allegations of the Complaint are insufficient, as a matter of law, to plead a common purpose the enterprise element of a RICO claim.  *See, e.g.*, *Cedar Swamp v. Zaman*, No. 06-cv-13626 (LAK), 2007 U.S. Dist. LEXIS 36286 at *17 (S.D.N.Y. May 17, 2007) (dismissing RICO claim because it did not allege that "defendants operated symbiotically and played necessary roles in the achievement of a common purpose"); *Moll v. U.S. Life Title Ins. Co. of N.Y.*, 654 F. Supp. 1012, 1032 (S.D.N.Y. 1987) (dismissing RICO claim for failure to allege enterprise where complaint alleged that enterprise members shared common purpose but failed to "specify how these members joined together as a group to achieve [their] purposes").

### C.    The Report Correctly Concludes that the Complaint Fails to State a NJRICO Claim Against BNYMellon.

Even if the NJRICO claim is pled sufficiently against the other defendants (and it is not), the claim most certainly is not pled as to BNYMellon.  The alleged liability of BNYMellon is predicated solely on legally insufficient allegations of agency and respondeat superior.[5]  Yet, it is the law that liability under RICO may not rest solely on a theory of respondeat superior.  *See Brannon v. Boatmen's First Nat'l Bank*, 153 F.3d 1144, 1150 (10th Cir. 1998).  Instead, for purposes of vicarious RICO liability, courts distinguish between "aggressor" corporations (which knowingly facilitate the alleged, illegal behavior) and "conduit" corporations (which unknowingly facilitate the alleged, illegal behavior).  *Kovian v. Fulton County Nat'l Bank and*

---

[5] By citing to the allegations of the Second Amended Complaint, Plaintiffs effectively concede the inadequacy of the allegations of the Complaint regarding BNYMellon.  *See* Objection at 18, n. 4.

*Trust Co.*, 100 F. Supp. 2d 129, 133 (N.D.N.Y. 2000).  "Most courts 'have declined to subject

[conduit corporations] to RICO liability.'"  *Id.* (quoting *Amendolare v. Schenkers Intern.*

*Forwarders, Inc.*, 747 F. Supp. 162, 168 (E.D.N.Y. 1990)).  Accordingly, vicarious liability

under RICO is permitted *only* "when the defendant corporation can be characterized as a

'central' or 'controlling' figure in the RICO enterprise."  *Amendolare*, 747 F. Supp. at 168.  *See*

*also Makowski v. United Brotherhood of Carpenters*, 2010 U.S. Dist. LEXIS 77775, at *21

(S.D.N.Y. August 2, 2010) (only if a corporation is a central figure in the RICO scheme can

vicarious liability even for its employee's actions be considered).

    In order to demonstrate that a corporation is, in fact, an "active perpetrator," a plaintiff

must show that "a corporate officer or director had knowledge of or was recklessly indifferent

toward the unlawful activity."  *USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319, 328

(S.D.N.Y. 2003) (citing *Amendolare*, 747 F. Supp. at 169).  Even upon such a finding, however,

courts also look to:  (1) the number of high-level employees involved; (2) the extent of their

participation in the alleged scheme; and (3) the extent of the corporation's benefit from the

alleged scheme.  *Id.*

    Plaintiffs have failed to address the arguments that the Complaint fails to state a NJRICO

claim as to BNYMellon.  The allegations as to BNYMellon are manifestly inadequate.  None of

the specific acts alleged as to BNYMellon amounts to a "predicate act" within the meaning of

N.J.S.A. 2C:41-1.  The only direct conduct of BNYMellon asserted in the Complaint is an

alleged promise to improve DPM's performance -- which is not even alleged to have been false

when made -- and is not an act that could constitute wire or mail fraud in any event.  *See* Compl.,

¶ 293.  BNYMellon is not alleged to have participated "directly or indirectly, in the conduct of

the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

12

*See* N.J.S.A. 2C:41-2(c).  The Complaint also alleges no specific act of BNYMellon under the

Caption "DPM, DPM-Mellon, BNYMellon's Violations of N.J.C 2C:41."  *See* Compl., ¶ 434.

How BNYMellon could be responsible for any allegedly false statement or omission that

occurred prior to the acquisition of DPM is not explained.

A NJRICO defendant must knowingly and purposefully engage in activities in which the

defendant seeks to assist in effectuating the goals of the enterprise.  *State v. Ball*, 661 A.2d 251,

268 (N.J. 1995), *cert. denied*, 516 U.S. 1075 (1996).[6]  However, there are no factual allegations

in the Complaint supporting this necessary element as to BNYMellon.  Although the alleged goal

of the enterprise was to transfer funds of SPhinX to RCM, there is no allegation of BNYMellon's

knowledge of the transfers.

> **D.     The Report Correctly Concludes that the Complaint Fails to State a Claim of Conspiracy under NJRICO.**

Conspiracy requires two elements:  an agreement to violate RICO and the existence of an

enterprise.  *State v. Ball*, 661 A.2d at 268.  In addition, the agreement-to-violate-RICO element

itself has two aspects.  First, there must be an agreement to conduct or participate in the affairs of

the enterprise.  Second, there must be an agreement to the commission of at least two predicate

acts.  *Id.*  If either agreement is lacking, the claim fails.  *Id.*; *see also Andreo v. Friedlander,

Gaines, Cohen, Rosenthal & Rosenberg*, 660 F. Supp. 1362, 1372 (D. Conn. 1987).

As the Special Master recognized, the Complaint simply fails to allege the requisites of

an agreement or even facts from which an agreement could be inferred.  Report at 61 ("[i]f all

that is required is a broad assertion that 'the defendants agreed,' then any particularity

requirement . . . is essentially thrown out the window").  Plaintiffs' reliance on *Ball* as to the

---

[6] Because NJRICO was deliberately patterned after its federal counterpart, 18 U.S.C.A. § 1962(c), many of its elements are identical to those of a federal RICO claim.  *See State v. Ball*, 661 A.2d at 251.  Thus, in interpreting NJRICO, courts seek guidance from and "heed" decisions construing federal RICO provisions.  *Id.* at 258.

adequacy of their pleading is misplaced.  The discrete acts alleged do not amount to a plausible

basis to infer a "continuous scheme involving numerous corporate actors to cover up the fact that

SMFF's cash was being held in non-segregated accounts for the benefit of Refco."  Indeed,

Plaintiffs now concede that the July 31, 2002 letter (cited repeatedly in the Complaint as

evidence of concealment) turns out not to mean what they initially said it meant and not to have

anything to do with a scheme to permit the transfer of excess cash to RCM.

     As explained in previous briefing, the evidence of record clearly establishes that SMFF's

financial statements expressly disclosed the risk that the Complaint says Defendants sought to

conceal (i.e., the risk to cash in the event of broker insolvency) and were in any event audited by

PwC and certified to by PlusFunds, not any of the DPM Defendants.  Other than a vague

allegation of involvement, the Complaint completely fails to specify Aaron's or DPM's role in

allegedly preparing the statements.  Moreover, the risk reports at issue were only transmitted to

PlusFunds -- the very entity that was controlled by Refco crony Sugrue and the entity that

indisputably chose RCM and delegated to Refco affiliate RAI (*not DPM*) the allocation of cash

between SMFF accounts at Refco, LLC and RCM.  *See* DPM Obj. (Docket # 149), at 4-8.

     The cases relied on by Plaintiffs (for their proposition that pleading of a conspiracy is not

demanding) all predate *Twombly* and *Iqbal* and fail to demonstrate that the Complaint meets the

current applicable standards for pleading conspiracy.  To properly plead a RICO conspiracy, the

plaintiff must allege that the defendants "agreed to form and associate themselves with a RICO

enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of

racketeering activity in connection with the enterprise."  *Conte v. Newsday, Inc.*,  No. 06-CV-

4859(JFB), 2010 U.S. Dist. LEXIS 28502, at *10 (E.D.N.Y. Mar. 25, 2010) (quoting *Cofacredit*

*S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 244 (2d Cir. 1999)).  More specifically, the

ME1 10356440v.3

plaintiff must allege "that each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise." *Colony at Holbrook, Inc. v. Strata G.C., Inc.*, 928 F. Supp. 1224, 1238 (E.D.N.Y. 1996).  And that "each co-conspirator knew the conspiracy's goals and agreed to facilitate them." *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, No. 04 CV 5040 (ILG), 2008 WL 4146190, at *14 (E.D.N.Y. Sept. 5, 2008) (citing *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003)).

"[A] RICO conspiracy allegation should be more than a conclusory add-on at the end of a complaint.  It should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it." *FD Prop. Holding, Inc. v. US Traffic Corp.*, 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002); *Sundahl v. State Farm Mut. Auto Ins. Co.*, 2009 U.S. Dist. LEXIS 68093 (E.D.N.Y. March 31, 2009).  A complaint that contains no allegations as to when the alleged conspiracy began, where it occurred, or what statements the alleged conspirators made to each other, fails to state a claim. *RxUSA Wholesale, Inc. v. Alcon Lab., Inc.* 661 F. Supp. 2d 218, 231 (E.D.N.Y. 2009).  Here, the Complaint alleges no communications between the conspirators, does not say when the conspiracy was entered into, and relies solely on actions allegedly performed by certain of the DPM Parties in the ordinary course of discharging their duties under the Service Agreements (with the exception of the July 31, 2002 letter) -- which can no longer be considered evidence of any wrongful conduct and certainly is no evidence of a conspiracy.

Plaintiffs' claims of economic motive as "proof" of conspiracy should be rejected by this Court.  Indeed, in the related fraud context, courts have emphasized that motives "possessed by virtually all corporate insiders, such as the desire to maintain a high credit rating… or otherwise sustain the appearance of corporate profitability" are *insufficient* for pleading motive and

15

opportunity.  *In re MBIA, Inc. Sec. Litig.*, No. 08-cv-264, 2010 U.S. Dist. LEXIS 31430, at *63

n.17 (S.D.N.Y. Mar. 31, 2010) (citing *S. Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98,

109 (2d Cir. 2009)); *see also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital

Inc. (Dynex I)*, 531 F.3d 190, 196 (2d Cir. 2008)

 Plaintiffs' failure to adequately allege a substantive violation of RICO is a further basis

for dismissal of the conspiracy claim as to *all* DPM Defendants.  *See Discon, Inc. v. NYNex

Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1999); *Ross v. Celtron Int'l, Inc.*, 494 F. Supp. 2d 288, 303

(D.N.J. 2007); *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 581 (S.D.N.Y.

1999) ("A RICO conspiracy must fail [] if the substantive [RICO] claims themselves are

deficient."); *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514

(S.D.N.Y. 2001) (dismissing federal and New Jersey state RICO claims on grounds that the

plaintiffs had failed to plead adequate substantive and conspiracy violations).

## III. THE SPECIAL MASTER PROPERLY RECOMMENDED THE DISMISSAL OF OTHER CLAIMS AGAINST VARIOUS DPM DEFENDANTS.

 The vast majority of the Objection focuses on Plaintiffs' dispute with the recommended

dismissal of claims against BNYMellon as well as the NJRICO claim.  *See* Objection at 2-21.

Plaintiffs' objections to the remaining recommendations by the Special Master (i.e., covenant of

good faith and fair dealing, tortious interference, etc.) are thrown together at the end in a catch-

all objection regarding alleged "additional errors."  *See id.* at 21-23.  This catch-all objection is

nothing more than a *very brief* rehash of previous arguments.  Plaintiffs neither provide analysis

of any perceived errors nor do they attempt to distinguish their case from the Report's findings.

Ultimately, any such explanation would be of no import as the Special Master's

recommendations to dismiss are well founded.  *See* Report.

16

IV.    **PLAINTIFFS FAIL TO OBJECT TO THE RECOMMENDATION TO DISMISS THEIR AIDING AND ABETTING TORTIOUS INTERFERENCE CLAIM.**

Plaintiffs do not object to the Special Master's recommendation to dismiss the aiding and abetting tortious interference claim.  As a result, Plaintiffs have effectively conceded that they cannot maintain that claim.  *See Leka v. U.S.*, No. 06-cv-1484 (GLS), 2008 WL 686797, at *1 (N.D.N.Y. Mar. 10, 2008) (unopposed motion to dismiss will be granted if the arguments presented therein are facially meritorious).

V.    **PLAINTIFFS' ALTERNATIVE REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED AS FUTILE.**

The decision to grant leave to amend a complaint is left to the sound discretion of the court.  *Cohen v. Singer*, 4 Fed. Appx. 38, 40 (2d Cir. 2001).  That said, a court *may deny leave* to amend where (as here) the proposed amendment either lacks merit or would be futile.  *Id.*

The Complaint at issue is already an *amended* complaint prepared not on behalf of an outsider with limited resources, but on behalf of liquidators with nearly unlimited funds at their disposal.  Indeed, prior to filing the Complaint (which is 92 pages and 434 paragraphs in length), Plaintiffs had access to literally hundreds of millions of pages of documents from SPhinX, PlusFunds, and DPM, as well as discovery from various proceedings in the Refco and RCM Bankruptcies, the Preference Action, and the 2004 examinations of Aaron and other employees of DPM in the PlusFunds bankruptcy.  Yet, despite *extensive* discovery, the Special Master recognized that the vast majority (if not all) of their claims lacked legal merit.

In a futile attempt to avoid outright dismissal of the claims, Plaintiffs request that they be allowed to submit a proffered *Second* Amended Complaint (on which they rely in opposition to the motion to dismiss as well as the Objection even though they did not formally move for leave to amend).  Yet, the manifest deficiencies contained in the current Complaint are not cured by Plaintiffs' proposed amendments.  Specifically, even in the Second Amended Complaint, not one

17

of the DPM Defendants is alleged to have known anything about the Round Trip Loans or other

illegal actions by Refco (because they did not).  Moreover, once again, BNYMellon is not

alleged to have had *any role* in connection with the selection or use of RCM or *any knowledge* of

the unsegregated nature of the RCM accounts.  As addressed in the Report, mere knowledge that

monies were being transferred (something everyone knew -- including the PlusFunds

"innocents") is insufficient to give rise to either direct or vicarious liability.  Thus, this Court

should deny Plaintiffs' request.  *See RxUSA Wholesale, Inc.*, 661 F. Supp. 2d at 248 (exercising

discretion to deny leave to replead NJRICO claim); *see also Cohen*, 4 Fed. Appx. at 40

(exercising discretion to deny leave to replead tort and contract claims); *Port Dock & Stone Corp*

*v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 127 (2d Cir. 2007) (denying leave to replead as

futile).

## CONCLUSION

For the reasons set forth in the Report, this Response, and their original briefing, the

DPM Defendants respectfully request that this Court affirm the Special Master's

recommendations with respect to the issues raised in Plaintiffs' Objection.  Moreover, the DPM

Defendants respectfully request that, pursuant to their own objection (Docket # 149), the Court:

(i) dismiss the breach of fiduciary duty claim (Count V) in its entirety with prejudice; (ii) dismiss

the aiding and abetting breach of fiduciary duty claim (Count VI) in its entirety with prejudice;

(iii) dismiss  the fraud claim (Count VIII) in its entirety with prejudice; and (iv) with respect to

the RICO claim (Count X), hold that, in addition to enterprise, Plaintiffs have failed to

specifically plead the requisite elements of pattern and proximate cause.

ME1 10356440v.3

Respectfully submitted,

MCCARTER & ENGLISH, LLP

Dated: August 9, 2010
     Newark, New Jersey

By: *s/ B. John Pendleton, Jr.*
B. John Pendleton, Jr.
Steven A. Beckelman
Stephanie J. Cohen
245 Park Avenue, Floor 27
New York, New York 10167
Tel: (212) 608-6800
*Attorneys for Defendants Guy Castranova,*
*Derivatives Portfolio Management LLC,*
*Derivatives Portfolio Management, Ltd.,*
*DPM-Mellon, LLC, DPM-Mellon, Ltd., and*
*Bank of New York Mellon Corporation*