UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
:
In re REFCO, INC. SECURITIES LITIGATION : Case No. 07-md-1902 (JSR)
:
------------------------------------- :
:
GEORGE L. MILLER, Chapter 7 Trustee for the :
Estate of Suffolk, LLC, :
: Case No. 09-cv-2866 (JSR)
Plaintiff, :
:
v. :
:
PF SALECO, LLC, *et al.*, :
Defendants. :
------------------------------------- x

**RESPONSE OF *AMICI CURIAE* MARK KAVANAGH AND BRIAN OWENS TO THE MILLER PLAINTIFF'S OBJECTION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION AS TO BANK DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Mark Kavanagh and Brian Owens*

September 17, 2010

**TABLE OF CONTENTS**

Page

ARGUMENT .................................................................................................................... 3

I.  THE MILLER OBJECTION EMBELLISHES THE MILLER AMENDED COMPLAINT, WITH UNSUPPORTED AND UNSUPPORTABLE THEORIES ABOUT KAVANAGH AND OWENS' RELATION TO THE REFCO/BENNETT FRAUD ................................................................................ 3

II. MILLER FAILS TO CORRECT AND INDEED PERPETUATES IN THE MILLER OBJECTION NUMEROUS FACTUAL INNACURACIES CONCERNING KAVANAGH AND OWENS CONTAINED IN THE AMENDED COMPLAINT ............................................................................... 4

   A.  The Miller Objection Reiterates False Or Misleading Allegations Concerning Kavanagh And Owens Contained In The Miller Amended Complaint ............................................................................ 6

   B.  The Miller Objection Reiterates False And Unsubstantiated Allegations Concerning Kavanagh's And Owens' Alleged Knowledge Or State Of Mind In The Amended Complaint ............................. 7

CONCLUSION ................................................................................................................ 9

Mark Kavanagh and Brian Owens are defendants in the Refco MDL action captioned *Krys v. Sugrue*, Nos. 08cv3065 & 08cv3086 (JSR). On May 26, 2010, Kavanagh and Owens were also granted permission to appear as *amici curiae* in this action.[1] Kavanagh and Owens respectfully submit this response to the Miller Plaintiff's objection to the Report and Recommendation of the Special Master as to Bank Defendants' Motion to Dismiss the Miller Amended Complaint, dated August 26 (the "August 26, 2010 R&R").

The August 26, 2010 R&R recommends that the Bank Defendants' Motion to Dismiss the Miller Amended Complaint be granted as to all counts, with prejudice. Miller objected to the August 26, 2010 R&R in an objection dated September 7, 2010 (the "Miller Objection").

The Miller Objection misrepresents and embellishes facts and allegations concerning Kavanagh and Owens that are unsubstantiated even by Miller's own Amended Complaint (which itself contains a host of false allegations). For example, the Miller Objection asserts that Kavanagh and Owens knew of the "separate, round-trip loans" fraud at Refco. Miller Objection, at p. 1. However, even Miller's Amended Complaint does not go that far.

Moreover, the Miller Objection continues to reiterate a slew of false factual allegations concerning Kavanagh and Owens (as detailed below in Section II.A), and concerning Kavanagh's and Owens' state of mind (as detailed below in Section II.B) that

---

[1] *See* Special Master Capra's Order Granting Mark Kavanagh and Brian Owens' Motion for Leave to File as *Amici Curiae*, dated May 26, 2010 (the "*Amici* Order"). For the Court's convenience, the *Amici* Order is attached as Exhibit 1 to the Declaration of Mitchell A. Karlan in Support of Mark Kavanagh and Brian Owens' Response to the Miller Plaintiff's Objection ("Karlan Response Decl.").

are contained in the Miller Amended Complaint.  To take but one simple example, the Miller Objection asserts that "Mark Kavanagh . . . and Brian Owens [were] officers and shareholders of PlusFunds."  Miller Objection, p. 4; *see also* Am. Compl. ¶ 24 (Kavanagh and Owens were "officers and shareholders" of PlusFunds).  But these allegations are demonstrably false, and indeed, they are contradicted by the evidentiary record – neither Kavanagh nor Owens were officers of PlusFunds, and Owens was not a shareholder of PlusFunds.[2]

On March 22, 2010, Kavanagh and Owens first informed Miller's counsel of the numerous false allegations that pervade the Miller Amended Complaint.  Kavanagh and Owens also informed Miller's counsel the reasons why each of the false allegations were false and without evidentiary support, or, indeed, contradicted by the evidentiary record.  Kavanagh and Owens requested that Miller's counsel agree to strike these false allegations from the Miller Amended Complaint.  But Miller's counsel has not done so.  Subsequently, Kavanagh and Owens moved for and were granted permission to appear as *amici curiae* in this action.  In an *amici* submission, dated May 24, 2010, in response to the Bank Defendants' Motion to Dismiss the Miller Amended Complaint, Kavanagh and Owens again brought to the attention of Miller's counsel (and also the Special Master) the fact that the Miller Amended Complaint was rife with false factual allegations.

We submit this response so that the Court may take into consideration and be aware of the facts Miller mistreats, mischaracterizes or invents.  We respectfully submit

---

[2]  *See, e.g.*, Amended Complaint, *Krys v. Sugrue*, Nos. 08cv3065, 08cv3086 (JSR) (S.D.N.Y. filed Oct. 10, 2008) ("'Mr. Owens, who is a director of MKK Limited, owns no shares in the Company.'") (quoting Offer to Purchase Letter from PlusFunds Board of Directors to PlusFunds Stockholders (May 4, 2004), *in* Kerstein Declaration, Exhibit 5, *Krys v. Sugrue*, Nos. 08cv3065, 08cv3086 (JSR) (S.D.N.Y. filed Dec. 24, 2008) ("Offer to Purchase Letter").

2

that this Court, in resolving the issues related to the August 26, 2010 R&R, not adopt any of these incorrect or unsubstantiated factual allegations.

## ARGUMENT

### I.

### THE MILLER OBJECTION EMBELLISHES THE MILLER AMENDED COMPLAINT, WITH UNSUPPORTED AND UNSUPPORTABLE THEORIES ABOUT KAVANAGH AND OWENS' RELATION TO THE REFCO/BENNETT FRAUD

The Miller Objection contains two notable and novel factual assertions about Kavanagh and Owens' relation to the Refco/Bennett fraud. The Miller Objection cites to the Miller Amended Complaint to support these allegations, however, the Miller Amended Complaint provides no such support. And, indeed, it could not – because the allegations are false.

First, the Miller Objection asserts that "Christopher Sugrue, Brian Owens and Mark Kavanagh [(the "Suffolk Insiders") had] knowledge of the separate, round-trip loans" fraud at Refco. Miller Objection, at p. 1; *see also id.* at p. 4 ("Armed with knowledge of Bennett's separate fraud on Refco, including the round trip loans, the Suffolk Insiders devised a scheme to profit from Bennett's need to ensure their silence."). The Miller Objection cites to the Miller Amended Complaint, paragraphs 34, 40-43, 132-38 to support this allegation. But these paragraphs say nothing about the round-trip loans.[3]

Second, the Miller Objection asserts that "[t]he Suffolk Insiders coerced Bennett by threatening him, substantially as 'pay or else.'" Miller Objection, at p. 4. To support

---

[3]   As noted above, the allegation that Kavanagh and Owens somehow knew that Refco was engaging in fraudulent round-trip loans is false, and has no basis in fact. Indeed, not even the *Krys* plaintiffs have attempted to make such a strained argument.

3

this theory, Miller cites to the Miller Amended Complaint, paragraph 48. But again, that paragraph makes no such factual assertion. Rather, paragraph 48 merely sums up the foregoing paragraphs, making not a factual but a conclusory allegation that "[e]ssentially, the Suffolk Insiders forced Bennett to acquiesce in this transaction with a 'pay, or else' extortionary threat." Am. Compl. ¶ 48.

Not only are the above two allegations unsupported by the Miller Amended Complaint, but the paragraphs the Miller Objection cites in the Miller Amended Complaint are themselves false. Kavanagh and Owens had no knowledge of the Refco/Bennett fraud, nor did Maggio ever testify that they did have such knowledge.[4]

## II.

### MILLER FAILS TO CORRECT AND INDEED PERPETUATES IN THE MILLER OBJECTION NUMEROUS FACTUAL INNACURACIES CONCERNING KAVANAGH AND OWENS CONTAINED IN THE AMENDED COMPLAINT

Miller filed an Amended Complaint on March 5, 2010 that contained numerous factual allegations that were, to be charitable, wholly inaccurate.[5] We wrote to Miller's

---

[4] *See generally* Transcript of Deposition of Santo Maggio, dated December 14 to 16, 2009 and January 6, 2010 ("Maggio Tr."). To the contrary, Maggio's testimony with respect to any Suffolk "insider" focused exclusively on Sugrue. *See id.* at 489-90. Maggio testified that he "clearly was aware that Mr. Bennett told me that was entering into an arrangement where he was going to be lending money to *Mr. Sugrue* or an entity that *Mr. Sugrue* controlled to buyout, to buyout the firm PlusFunds." *Id.* at 73:4-10 (emphasis added). However, Maggio did not say anything about either Kavanagh or Owens. Indeed, Maggio testified that he had never met, spoken to or communicated with Kavanagh and Owens. *Id.* at 482:16-4:83-10. Maggio further testified that he never even spoke about Kavanagh and Owens with either Bennett or Sugrue. *Id.* at 483:11-25.

[5] For a list of each of the inaccurate factual allegations in the Miller Amended Complaint, *see* Mitchell A. Karlan letter to Paula A. Galbraith, attorney for the Suffolk Trustee, dated March 22, 2010 ("Rule 11 Letter"), Addendum A at pp. 4-9, which is attached as Exhibit A to the Declaration of Mitchell A. Karlan in Support of Motion by Mark Kavanagh and Brian Owens for Leave to Appear as *Amici Curie*, dated May 24, 2010 ("Karlan *Amici* Decl."). For the Court's convenience, the Karlan *Amici* Decl. is

4

counsel on March 22, 2010, detailing each inaccuracy in the Amended Complaint and requesting that Miller's counsel comply with their obligations under Rule 11 of the Federal Rules of Civil Procedure and agree to strike the numerous false allegations from the Miller Amended Complaint.[6]  Miller's counsel has refused to do so.

Indeed, Miller has taken quite the opposite approach.  When Kavanagh and Owens again brought the inaccuracies that pervade Miller's Amended Complaint to the attention of Miller's counsel and Special Master Capra,[7] Miller responded not by providing either evidentiary support or a reasonable basis for making such allegations, but by asserting—even in the face of directly contradicting evidence—that the Court must accept his allegations as true.  *See* Miller's Memorandum of Law in Opposition to *Amici Curiae* Submission of Mark Kavanagh and Brian Owens, at pp.1, 8-9.

As described more fully below, in the Miller Objection, Miller reiterates many of the false factual allegations contained in the Miller Amended Complaint.  Miller's counsel should have agreed to strike these false allegations from the Amended Complaint pursuant to their obligations under Rule 11 of the Federal Rules of Civil Procedure. Although they did not do so, this Court should not afford such erroneous allegations any weight.

---

attached as Exhibit 2 to the Karlan Response Decl.

[6]   *See generally*, Rule 11 Letter.

[7]   *See* Karlan *Amici* Decl.

A. **The Miller Objection Reiterates False Or Misleading Allegations Concerning Kavanagh And Owens Contained In The Miller Amended Complaint**

In the Miller Objection, Miller perpetuates the following specific factual allegations concerning Kavanagh and Owens that are demonstrably false or misleading:

- Miller states that "Mark Kavanagh . . . and Brian Owens [were] officers and shareholders of PlusFunds." Miller Objection, p. 4; *see also* Am. Compl. ¶ 24 (Kavanagh and Owens were "officers and shareholders" of PlusFunds). These allegations are false, as neither Kavanagh nor Owens were officers of PlusFunds, and Owens was not a shareholder of PlusFunds. *See* Amended Complaint, *Krys v. Sugrue*, Nos. 08cv3065, 08cv3086 (JSR) (S.D.N.Y. filed Oct. 10, 2008) ("'Mr. Owens, who is a director of MKK Limited, owns no shares in the Company.'") (quoting Offer to Purchase Letter from PlusFunds Board of Directors to PlusFunds Stockholders (May 4, 2004), *in* Kerstein Declaration, Exhibit 5, *Krys v. Sugrue*, Nos. 08cv3065, 08cv3086 (JSR) (S.D.N.Y. filed Dec. 24, 2008) ("Offer to Purchase Letter").

- Miller states that "[a]rmed with [the] knowledge [that SMFF's cash was being held at RCM] the Suffolk Insiders devised a scheme to profit from Bennett's need to ensure their silence" and "coerce[ed]" Phillip Bennett and Refco to "acquiesce" to what is described as the "Suffolk Fraud." Miller Objection, p. 4; *see also id.* at pp. 1, 5; Am. Compl. ¶ 34; *see generally id.* ¶¶ 34-39. These allegations are false. In fact, the notion that Kavanagh and Owens knew that SMFF's cash was being held at RCM is directly contradicted by paragraph 33 of the Amended Complaint, which states that "Sugrue, Maggio and Bennett were the *only* people aware that the Funds were being held at RCM." Am. Compl. ¶ 33 (emphasis added).

- Miller states that Suffolk was an entity that was "wholly-owned by the Suffolk Insiders." Miller Objection, at p. 4; *see also* Am. Compl. ¶ 36 (same). This allegation is false. Suffolk LLC was owned in part by MKK Limited. *See* Limited Liability Company Agreement of Suffolk LLC (Mar. 25, 2005), *in* Kerstein Declaration, Exhibit 32, *Krys v. Sugrue*, Nos. 08cv3065, 08cv3086 (JSR) (S.D.N.Y. filed Dec. 24, 2008). MKK Limited is a separate legal entity and is not owned by Kavanagh or Owens, which is a matter of public record.

- Miller states that PlusFunds' former CEO, Gabriel Bousbib, was "terminated by Kavanagh." Miller Objection, at p. 4; *see also* Am. Compl. ¶ 36 (same). This allegation is false. Bousbib was not terminated, but rather he resigned, and his resignation was requested by the entire PlusFunds' Board of Directors. *See* Karlan *Amici* Decl., Exhibit B, Separation Agreement between Gabriel Bousbib and PlusFunds Group, Inc., entered December 7, 2004; *see also id.* Exhibit A, Gabriel Bousbib Letter of Resignation.

- Miller states that "the Suffolk Insiders knew that Suffolk would never be able to repay Refco for the $208 million loan." Miller Objection, at p. 1; *see also* Am. Compl. ¶ 139 (same). This allegation is false. Kavanagh and Owens did not have such knowledge. To the extent any portion of this allegation is based upon Maggio's testimony, he did not so testify. *See* Maggio Tr. at 1008 ("I wasn't really privy to how it was going to be repaid, if ever repaid.").

- Miller makes several allegations to the effect that the Suffolk loans made no economic sense," because the loans were collateralized by shares of PlusFunds that were "grossly inflated" and "exponentially greater than [their] actual value. Miller Objection, at pp. 1, 5, 8; *see also* Am. Compl. ¶¶ 44-45 (same); *see, e.g.*, *id.* ¶¶ 43-45, 52, 107-08, 115-16, 118, 124, 127, 139, 151-52, 155-56, 174, 182. Not only are these allegations false and unfounded, but they ignore evidence, such as the various investment bank valuations carried out on PlusFunds, which valuations have been produced in discovery in the MDL litigation. In fact, Miller's own pleadings allege that Refco's CEO, whom plaintiff describes as "innocent of the fraud related to the Suffolk and PlusFunds transactions," "prepared a memo indicating that he believed that the loans to Suffolk were adequately collateralized." Am. Compl. ¶ 128.

**B.      The Miller Objection Reiterates False And Unsubstantiated Allegations Concerning Kavanagh's And Owens' Alleged Knowledge Or State Of Mind In The Amended Complaint**

In the Miller Objection, Miller also perpetuates the following false and unsubstantiated allegations specifically relating to Kavanagh's and Owens' alleged knowledge or state of mind—without pleading that these allegations are made "on information and belief"—all of which lack evidentiary support or a reasonable basis:[8]

- "Christopher Sugrue, Brian Owens and Mark Kavanagh—with knowledge of the separate, round-trip loans fraud that Phillip Bennett, CEO of the Refco companies ("Bennett"), perpetrated on Refco—coerced Bennett into causing Refco to loan Suffolk approximately $208 million." Miller Objection, p. 1; *see also* Am. Compl. ¶ 43 ("The Suffolk Insiders knew that Bennett would need to direct Refco to purchase PlusFunds shares at an inflated price and through a transaction that was a windfall for the Suffolk insiders, and the Suffolk insiders used this knowledge to extort Bennett into agreeing to this transaction.").

---

[8]    Miller cites no evidence or support in the Miller Amended Complaint for these allegations. To the extent Miller purports to find support for these false factual allegations in the testimony of Santo Maggio, that testimony is of no moment. Instead, Maggio provided absolutely no testimony concerning Kavanagh and Owens. *See* Maggio Tr., generally.

- "[T]he Suffolk Insiders knew that Suffolk would never be able to repay Refco for the $208 million loan or repay any other creditor." Miller Objection, p. 1; *see also* Am. Compl. ¶ 43 ("Bennett and the Suffolk Insiders knew that the loans would never be repaid.").

- "The Suffolk Insiders specifically created Suffolk to divert funds from Suffolk to the Suffolk Insiders." Miller Objection, at p. 5; *see also* Am. Compl. ¶ 157 ("The Suffolk Insiders intended to use the proceeds of the Suffolk Loans for their personal benefit.").

- "The Suffolk Insiders undertook this fraudulent scheme knowing that Suffolk would be rendered insolvent" and they "knew there was no prospect of repayment at the time they executed the documentation for the Suffolk Loans." Miller Objection, at pp. 1, 9; *see also* Am. Compl. ¶ 160 ("The Suffolk Insiders had no intent to repay Refco Capital for the proceeds of the Suffolk Loans, nor did they have any ability to do so. The Suffolk Loans could never be repaid to Refco Capital and the Suffolk Insiders knew that there was no prospect of repayment at the time of executing the Suffolk Loans' documentation.").[9]

---

[9] In addition to the unsubstantiated assertions about Kavanagh's and Owens' alleged knowledge or state of mind, Miller makes certain allegations about Bennett's state of mind—without pleading that these allegations are made "on information and belief"—for which it is impossible for Miller to have any support. *See* Miller Objection, at pp. 8-9 ("With the exception of Bennett and co-conspirator Maggio, no one at Refco knew that Refco's loans to Suffolk were made as a result of the Suffolk Insiders' coercion of Bennett."); *see also* Am. Comp. ¶ 125 ("Bennett knew that Refco Capital would not receive a dollar in repayment of the Suffolk Loans, no one else at Refco, with the exception of Bennett's co-conspirator Maggio, seems to have been aware of this fact.").

**CONCLUSION**

For the reasons set forth above, Kavanagh and Owens respectfully request that, in resolving the Bank Defendants' Motion to Dismiss the Miller Amended Complaint, this Court consider and be aware of Miller's mistreatments and mischaracterizations of the facts described above, and not adopt any of the incorrect or unsubstantiated factual allegations.


Dated: New York, New York
       September 17, 2010

GIBSON, DUNN & CRUTCHER LLP

By:  /s Mitchell A. Karlan

Mitchell A. Karlan (MK-4413)

200 Park Avenue, 47th Floor
New York, NY 10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035
*Attorneys for Mark Kavanagh and Brian Owens*

9