UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re REFCO, INC. SECURITIES LITIGATION | 07 MDL No. 1902 (JSR) |
| KENNETH M. KRYS, *et al.*,<br>　　　　Plaintiffs,<br>　v.<br>CHRISTOPHER SUGRUE, *et al.*,<br>　　　　Defendants. | 08 Civ. 3086 (JSR)<br>08 Civ. 3065 (JSR) |

### DECLARATION OF MITCHELL A. KARLAN IN SUPPORT OF DEFENDANTS MARK KAVANAGH AND BRIAN OWENS' MOTION TO COMPEL THE PRODUCTION OF <u>DOCUMENTS BY PETER GINSBERG</u>

I, Mitchell A. Karlan, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

　　1.　　I am an attorney licensed to practice law in the State of New York and before the United States District Court for the Southern District of New York. I am a partner in the law firm of Gibson, Dunn & Crutcher LLP, counsel for defendants Mark Kavanagh and Brian Owens ("Defendants") in the above-captioned matter.

**Mr. Ginsberg's Representation of SPhinX and the Former SPhinX Directors**

　　2.　　The Plaintiffs in this action include the Joint Official Liquidators ("JOLs") of the SPhinX Funds ("SPhinX").

3. In 2006, Peter Ginsberg served as counsel to SPhinX while simultaneously serving as counsel to two then-current SPhinX directors: Andrew Feighrey and Patrina Khoo Farquharson (the "Former SPhinX Directors"). The Former SPhinX Directors are no longer directors of SPhinX. Mr. Ginsberg no longer represents SPhinX; he continues to represent the Former SPhinX Directors.

4. At various times during his representation of the Former SPhinX Directors, Mr. Ginsberg has been a solo practitioner, and has been affiliated with the law firms of Crowell & Moring LLP ("Crowell") and Ginsberg & Burgos PLLC.

5. According to statements made by Mr. Ginsberg to me during several meet and confers, and during a telephonic conference with Special Master Hedges on December 1, 2010, Ms. Farquharson retained Mr. Ginsberg in late December 2005 to represent her in her individual capacity as a SPhinX director. Mr. Feighery subsequently retained Mr. Ginsberg to represent him in a similar capacity in early February 2006. Attached hereto as Exhibit 1 is a true and correct copy of a transcript of the telephonic conference held before Special Master Hedges, dated December 1, 2010. Attached hereto as Exhibit 2 is a document produced by Mr. Ginsberg which appears to be an unexecuted engagement letter between Mr. Farquharson and Mr. Ginsberg, dated January 10, 2006 (C&M00009444 – C&M00009446). Attached hereto as Exhibit 3 is a document produced by Mr. Ginsberg which appears to be copy of an unexecuted engagement letter between Mr. Feighrey and Mr. Ginsberg, dated February 1, 2006 (C&M00009381 – C&M00009383).

6. According to statements made by Mr. Ginsberg to me during several meet and confers, and during a telephonic conference with Special Master Hedges on December 1, 2010,

Mr. Ginsberg was retained sometime in late February 2006 or early March 2006 to represent the SPhinX Funds themselves.

7. In a joint representation agreement with Ms. Farquharson and Mr. Feighrey dated April 27, 2006, Mr. Ginsberg wrote to the Former SPhinX Directors "to confirm that [he] was originally retained to represent each [director] in [his or her] individual capacity as a Director of the Board of SPhinX Funds," and thereafter was "retained and authorized . . . to act on behalf of the SPhinX Funds with regard to general representation as well as to investigate and, if appropriate, commence affirmative actions on behalf of the SPhinX Funds." Attached hereto as Exhibit 4 is a document produced by Mr. Ginsberg which appears to be a joint representation agreement between Mr. Feighrey, Ms. Farquharson and Mr. Ginsberg, dated April 27, 2006 (CM00001980 – CM00001983). Attached hereto as Exhibit 5 is a document produced by Mr. Ginsberg which appears to be a joint representation agreement between Mr. Feighrey, Ms. Farquharson and Mr. Ginsberg, dated May 2, 2006 (CM0000737 – CM0000740). Attached hereto as Exhibit 6 is a document produced by Mr. Ginsberg which appears to be a joint representation agreement between Mr. Feighrey, Ms. Farquharson and Mr. Ginsberg, dated May 11, 2007 (CM00000224 – CM00000260; CM00000260).

8. On behalf of SPhinX, Mr. Ginsberg filed a complaint against Defendants in June 2006. The complaint was ultimately withdrawn without prejudice on October 10, 2006. Attached hereto as Exhibit 7 is a true and correct copy of the complaint filed in *SPhinX Ltd. v. Sugrue, et al.*, 06 CV 4350, dated June 8, 2006. Attached hereto as Exhibit 8 is a true and correct copy of the notice of dismissal filed in *SPhinX Ltd. v. Sugrue, et al.*, 06 CV 4350, dated October 10, 2006.

9.     On June 30, 2006, SPhinX was placed into liquidation in the Cayman Islands and the JOLs were appointed. The JOLs retained Kaye Scholer as U.S. counsel, and disengaged Mr. Ginsberg. In or around July 2007, the JOLs replaced Kaye Scholer with Beus Gilbert PLLC ("Beus Gilbert"). Beus Gilbert continues to represent the JOLs in the *Krys* actions.

10.     Counsel for the JOLs have indicated on several occasions that the JOLs have waived all privileges belonging to SPhinX up until the time the JOLs were appointed in the summer of 2006. This waiver was confirmed to Special Master Hedges by Dennis Blackhurst of Beus Gilbert in a telephonic conference on May 7, 2010. Attached hereto as Exhibit 9 is a true and correct copy of the transcript of a telephonic conference held before Special Master Hedges, dated May 7, 2010.

**Service of Kavanagh and Owens' Subpoena on Mr. Ginsberg**

11.     Defendants Kavanagh and Owens first attempted to serve Mr. Ginsberg with a subpoena in the middle of July 2009. Attached hereto as Exhibit 10 is a true and correct copy of Kavanagh and Owens' subpoena issued to Peter Ginsberg, dated July 15, 2009.

12.     For approximately one month, Mr. Ginsberg evaded service by refusing to permit process servers into his office. Attached hereto as Exhibits 11 and 12 are true and correct copies of e-mail correspondence between me and Mr. Ginsberg, dated August 24, 2009.

13.     Kavanagh and Owens ultimately succeeded in serving two subpoenas – one on Crowell, and one on Mr. Ginsberg individually – on September 9, 2009. Attached hereto as Exhibit 13 is a true and correct copy of Kavanagh and Owens' subpoena issued to Peter Ginsberg, dated September 9, 2009. Attached hereto as Exhibit 14 is a true and correct copy of Kavanagh and Owens' subpoena issued to Crowell, dated September 9, 2009. Attached hereto

as Exhibit 15 is a true and correct copy of the affirmation of Kenneth Juan Figueroa, dated May 14, 2010.

14. By letter dated September 17, 2009, Mr. Ginsberg confirmed his acceptance of service of both subpoenas, and objected to the subpoenas as overly broad and burdensome, and targeted at documents subject to the attorney-client and/or work product privileges. Attached hereto as Exhibit 16 is a true and correct copy of a letter from Peter Ginsberg to me, dated September 17, 2009.

**Issues with Mr. Ginsberg's Document Production**

15. On September 24, 2009, Mr. Ginsberg made his first production of documents in response to the subpoenas. Attached hereto as Exhibit 17 is a true and correct copy of a letter from Peter Ginsberg to me, dated September 24, 2009.

16. The documents that Mr. Ginsberg initially produced were improperly formatted, lacked any organization, and were not produced in the manner in which they were kept in the ordinary course. In particular, nearly all e-mails from the files of the Former SPhinX Directors were missing attachments. Attached hereto as Exhibit 18 is a true and correct copy of an e-mail chain between Kenneth Figueroa, Peter Ginsberg, and me, dated between December 2, 2009, and January 25, 2010. Attached hereto as Exhibit 19 is a true and correct copy of a letter from me to Peter Ginsberg, dated March 29, 2010.

17. Mr. Ginsberg asserted in a letter dated April 2, 2010, and again during a telephonic conference with Special Master Hedges on October 26, 2010, that the Former SPhinX Directors' provided their e-mails to him for production without attachments. According to Mr. Ginsberg, all attachments corresponding to the Former SPhinX Directors' e-mails remain in Ireland or the Bahamas, where each of the respective Former SPhinX Directors resides.

Attached hereto as Exhibit 20 is a true and correct copy of a letter from Peter Ginsberg to me, dated April 2, 2010. Attached hereto as Exhibit 21 is a true and correct copy of the transcript of a telephonic conference before Special Master Hedges, dated October 26, 2010.

18. For approximately four months, Gibson Dunn exchanged numerous telephone calls and e-mails with both Mr. Ginsberg and representatives at Crowell in an attempt to obtain a properly formatted and complete production, in addition to a privilege log.

19. Mr. Ginsberg and Crowell ultimately produced correctly formatted documents, with the exception of the Former SPhinX Directors' e-mails.

**Mr. Ginsberg's Production of a Privilege Log**

20. On May 7, 2010, Special Master Hedges held a telephonic conference concerning Mr. Ginsberg's failure to provide a privilege log. Mr. Ginsberg complained that Crowell had provided him with an initial privilege log, which he believed was incomplete. At the conclusion of the call, Special Master Hedges directed that Mr. Ginsberg produce a privilege log no later than June 2, 2010.

21. On June 14, 2010, it appeared that Mr. Ginsberg had substantially completed his production of documents responsive to Kavanagh and Owens' subpoena, although many of the documents were heavily redacted. Mr. Ginsberg also produced a privilege log listing approximately 911 e-mails and attachments. Attached hereto as Exhibit 22 is a true and correct copy of a letter from Joshua Rubin enclosing Mr. Ginsberg's privilege log and supplemental production, dated June 14, 2010.

**Issues with Mr. Ginsberg's Privilege Log**

22. Immediately upon receiving Mr. Ginsberg's privilege log, Gibson Dunn informed Mr. Ginsberg that it disagreed with his assertion of privilege with respect to at least 504

documents. To assist Mr. Ginsberg in responding to our challenges, on June 29, 2010, Gibson Dunn provided Mr. Ginsberg with an extensive annotated privilege log that specifically described the objections to each entry. Attached hereto as Exhibit 23 is a true and correct copy of e-mail correspondence between Peter Ginsberg, Diana Feinstein, David Kerstein, and me dated between June 15 and June 29, 2010.

23. The parties held an in-person meet and confer concerning Mr. Ginsberg's privilege designations on June 30, 2010. During that meeting, I, along with my associates David Kerstein and Diana Feinstein, reiterated and discussed various categories of objections, as well as specific documents and log entries.

24. In response to our position that Mr. Ginsberg waived the Former SPhinX Directors' privilege by sharing purportedly privileged communications with various third parties, Mr. Ginsberg explained that certain persons on the privilege log were his other clients. In particular, he confirmed that during all relevant periods in which he represented SPhinX and the Former SPhinX Directors, he also represented Jon Knight, Jonathan Knight (son of Jon Knight), Jayme Colter (daughter of Jon Knight), and Tamischa Ambrister, a close business colleague of the Knight family.

25. Jon Knight is a convicted felon. In December 2004, Jon Knight pled guilty to attempted grand larceny in the first degree before the Supreme Court of the State of New York. According to the plea agreement, Jon Knight attempted to steal more than $1 million from a trust to which he served as investment advisor. Attached hereto as Exhibit 24 is a true and correct copy of Jon Knight's plea agreement entered in *New York v. Knight*, Crim. Information No. 2004 NY 088896, dated December 3, 2004.

26. In 2006, the Securities and Exchange Commission ("SEC") barred Jon Knight indefinitely from associating with any investment advisor. Attached hereto as Exhibit 25 is a true and correct copy of the Order Instituting Administrative Proceedings Pursuant to Section 203(f) of the Investment Advisors Act of 1940, Making Findings, And Imposing Remedial Sanction, *In the Matter of Jon M. Knight*, File No. 3-12175, dated February 6, 2006.

27. Upon information and belief, Mr. Ginsberg represented Jon Knight in connection with the SEC proceeding.

28. During the June 30 meet and confer, Mr. Ginsberg also represented to me for the first time that his client Jon Knight served as his "advisor" or "consultant" on the SPhinX matter and therefore communications with him did not waive privilege. In addition, Mr. Ginsberg asserted that: Ms. Farquharson and Jon Knight had an oral joint representation agreement in connection with the investigation of Refco, BAWAG, and the Liquid Opportunity Funds, among other matters; Ms. Farquharson and Jon Knight did not share a joint privilege in connection with the SPhinX matter; Ms. Ambrister and Ms. Colter share a joint privilege with Jon Knight; and Mr. Feighrey did not have a joint representation arrangement with the Knights, Ms. Ambrister, or Ms. Colter.

29. By the close of the meet and confer, Mr. Ginsberg had agreed to, among other things: re-review any redacted attachments which appeared from the description of the e-mail to contain such things as executed retainer agreements, board minutes and other non-privileged documents; revise all descriptions on the privilege log that were ambiguous and overly broad; identify various third parties who appeared on the privilege log; and produce any non-privileged documents concerning Jon Knight's role as a "consultant" to Mr. Ginsberg in his representation of the Former SPhinX Directors.

30. On July 7, 2010, Mr. Kerstein sent a letter to Mr. Ginsberg memorializing various representations and commitments made by Mr. Ginsberg during the June 30 meet and confer. Attached hereto as Exhibit 26 is a true and correct copy of a letter from David Kerstein to Peter Ginsberg, dated July 7, 2010.

31. On July 29, 2010, Mr. Ginsberg responded to Mr. Kerstein's July 7 letter acknowledging that most of what Mr. Kerstein stated was consistent with his notes and recollection of the meeting, save a few clarifications (none of which touched upon Mr. Ginsberg's commitment to respond to Kavanagh and Owens' specific objections). Attached hereto as Exhibit 27 is a true and correct copy of a letter from Peter Ginsberg to David Kerstein, dated July 29, 2010.

32. On that same day, Mr. Ginsberg produced retention agreements between himself and the Former SPhinX Directors, and responded, in part, to a request for identifying information concerning persons named on his privilege log. In addition, Mr. Ginsberg confirmed that neither he nor any of his colleagues participated in the gathering or collecting of documents from Ms. Farquharson or Mr. Feighrey.

33. Mr. Ginsberg did not, however, respond to Kavanagh and Owens' specific objections or revise his privilege log entries that had been identified to him as being too vague, despite his stated commitment to do so at the June 30 meet and confer.

34. On September 13, 2010, Mr. Kerstein sent a letter to Mr. Ginsberg demanding that he provide specific responses to Kavanagh and Owens' objections by September 15, in order to meet Special Master Hedges' deadline for raising discovery disputes. Attached hereto as Exhibit 28 is a true and correct copy of a letter from David Kerstein to Peter Ginsberg, dated September 13, 2010.

35. The parties subsequently held a telephonic meet and confer on September 21, 2010. During that call Mr. Ginsberg agreed to respond to Kavanagh and Owens' objections by September 31.

36. In furtherance of the telephonic meet and confer, I sent Mr. Ginsberg a letter on September 22, 2010, detailing, once again, Kavanagh and Owens' objections to his privilege log designations. Attached hereto as Exhibit 29 is a true and correct copy of a letter from me to Peter Ginsberg, dated September 22, 2010.

37. On September 29, 2010, Mr. Ginsberg sent Mr. Kerstein a letter repeating many of the statements he previously asserted in his July 29 letter. In addition, Mr. Ginsberg informed Gibson Dunn that he would not be providing responses to Kavanagh and Owens' objections by September 31. Instead, Mr. Ginsberg stated that he would provide responses by October 15. Attached hereto as Exhibit 30 is a true and correct copy of a letter from Peter Ginsberg to David Kerstein, dated September 29, 2010.

38. By October 15, Gibson Dunn had received no revised production or responses from Mr. Ginsberg.

39. On October 25, 2010, I sent Special Master Hedges a letter detailing the history of Mr. Ginsberg's failure to fully comply with Kavanagh and Owens' subpoena and requesting his guidance in resolving this discovery dispute. Attached hereto as Exhibit 31 is a true and correct copy of a letter from me to Special Master Hedges, dated October 25, 2010.

40. On November 2, 2010, Mr. Ginsberg sent a letter to Special Master Hedges, wherein he re-confirmed various assertions previously detailed to Gibson Dunn, including that Jon Knight was acting in the capacity of an "advisor" and therefore all communications with him regarding SPhinX are privileged, and that documents received from outside the United States

from the Former SPhinX Directors consisted primarily of e-mails without attachments. Attached hereto as Exhibit 32 is a true and correct copy of a letter from Peter Ginsberg to Special Master Hedges, dated November 2, 2010.

41. Mr. Ginsberg finally completed his production, in substantial part, by making two supplemental productions on November 29 and 30, 2010. These productions consisted of 53 documents previously withheld or redacted. In addition, Mr. Ginsberg provided responses to approximately 101 out of 504 of Defendants' specific objections. Attached hereto as Exhibit 33 is a true and correct copy of Mr. Ginsberg's revised privilege log, dated November 30, 2010.[1]

**Other Documents Relevant to Kavanagh and Owens' Motion to Compel**

42. Attached hereto as Exhibit 34 is a document produced by the JOLs which appears to be a copy of the transcript of an interview of Peter Ginsberg, dated October 29, 2009 (JOL-SPX-0000094 – JOL-SPX-0000341).

43. Attached hereto as Exhibit 35 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00000717 – CM00000721.

44. Attached hereto as Exhibit 36 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00000782 – CM00000785.

45. Attached hereto as Exhibit 37 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00000971 – CM00000977.

46. Attached hereto as Exhibit 38 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00002890 – CM00002896.

---

[1] The privilege log provided by Mr. Ginsberg did not contain page numbers. For ease of reference, Defendants have added page numbers.

47. Attached hereto as Exhibit 39 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00002037 – CM00002046

48. Attached hereto as Exhibit 40 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00010795 – CM00010797.

49. Attached hereto as Exhibit 41 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00009642 – CM00009644.

50. Attached hereto as Exhibit 42 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00010374 – CM00010375.

51. Attached hereto as Exhibit 43 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM0000313 – CM0000332.

52. Attached hereto as Exhibit 44 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00002124 – CM00002132.

53. Attached hereto as Exhibit 45 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00001221 – CM00001239.

54. Attached hereto as Exhibit 46 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00001240 – CM00001244.

55. Attached hereto as Exhibit 47 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-numbers CM00001159 – CM00001160.

56. Attached hereto as Exhibit 48 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-number CANDM00030542.

57.     Attached hereto as Exhibit 49 is a true and correct copy of a partially redacted document produced by Mr. Ginsberg bearing bates-number CANDM0032739.


Dated: New York, New York
       December 8, 2010

                                              Mitchell A. Karlan (MK-4413)

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendants Mark Kavanagh and Brian Owens*

100985425_1.DOC