UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                    :
In re REFCO SECURITIES LITIGATION          :          Case No. 07-md-1902 (JSR)
                                                    :
------------------------------------------------------------X

## SPECIAL MASTER ORDER ON DISCOVERY DISPUTES

SPECIAL MASTER RONALD HEDGES, for good cause shown, hereby orders as follows:

WHEREAS, a dispute has arisen in <u>Krys, et al. v. Sugrue, et al.</u>, 08-CV-3086 (JSR), between plaintiffs the Joint Official Liquidators of the SPhinX Funds and the SPhinX Trustee (the "Krys Plaintiffs") and non-parties Gibson, Dunn LLP, Mitchell Karlan and Scott Kislin (the "Gibson Dunn Objectors") over the production of a document bearing production number Gibson Dunn_00004158-60; and

WHEREAS, the parties to this dispute presented the issue to Special Master Ronald Hedges by way of joint letter dated December 8, 2010; and

WHEREAS, oral argument on this dispute was heard by the Special Master on December 21, 2010;

NOW, THEREFORE:

1. For the reason set forth on the record at the hearing on December 21, 2010 (the transcript of which is annexed hereto), and subject to the following paragraph of this Order, the Gibson Dunn Objectors shall produce to the Krys Plaintiffs an unredacted version of Gibson Dunn_00004158-60.

8282941v1

DC SDN
OCUMEN
ECTRONICALLY FILED
OC #:
ATE FIL  1/13/2011

2. Should the Gibson Dunn Objectors choose to appeal this Order, the Gibson Dunn Objectors may defer producing the document in question to the Krys Plaintiffs pending resolution of such appeal by the Court.

**SO ORDERED** this 5th day of Jan., 2011

R Hedges

~~HON~~. RONALD HEDGES
    SPECIAL MASTER

2

```
0CLSREFCO
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE REFCO SECURITIES                    07 MDL 1902
LITIGATION

------------------------------x

                                          December 21, 2010
                                          10 a.m.

Before:

                    RONALD J. HEDGES,

                                          Special Master

                         APPEARANCES

BROWN RUDNICK
     Attorneys for Krys Plaintiffs
BY:  ANDREW DASH

GREGORY P. JOSEPH LAW OFFICES LLC
     Attorneys for non parties Gibson, Dunn & Crutcher,
     Scott Kislin and Mitchell Karlan
BY:  PETER R. JERDEE
```

2

OCLSREFCO

1           SPECIAL MASTER HEDGES:  Good morning, counsel.
2           We have several matters to attend to this morning.
3  First a matter with regard to a Gibson Dunn document.
4           May I have your appearances please.
5           MR. DASH:  Andrew Dash, Brown Rudnick LLP, on behalf
6  of the Krys plaintiffs.
7           MR. JERDEE:  Peter Jerdee with the Gregory P. Joseph
8  Law Offices LLC for Gibson Dunn.
9           SPECIAL MASTER HEDGES:  I have before me a document
10 that has been marked as Joint Exhibit 1 for the purpose of this
11 morning.  I understand I am going to conduct an in camera
12 review but, counsel, I will hear your argument on why I should
13 protect this from discovery.
14          MR. JERDEE:  Your Honor, there are several points we
15 made in the correspondence.  The main point we want to begin
16 with is that it's perfectly obvious why this document is being
17 sought.  It's being sought for an arbitration which Judge
18 Rakoff dismissed from this court and referred to arbitration at
19 your recommendation.  They have admitted as much in
20 correspondence and they now, for the first time in their
21 letter, make sort of a general assertion that it is somehow
22 relevant to issues in the MDL.  We have yet to hear what that
23 would be, but it's very clear, and the Supreme Court precedent
24 that we cited specifically says, that the court in assessing
25 relevance, in assessing whether discovery should be provided,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

0CLSREFCO

1  doesn't have to blind itself to the true purpose for which a
2  party is actually seeking the document, which is here in a
3  different proceeding, which both the Supreme Court and this
4  court has said --
5          SPECIAL MASTER HEDGES:  Can you identify the people,
6  who are they all?
7          MR. JERDEE:  They are all counsel at Gibson Dunn.
8  They are all partners within Gibson Dunn speaking internally.
9          SPECIAL MASTER HEDGES:  Natasha Labovitz?
10         MR. JERDEE:  Yes.
11         SPECIAL MASTER HEDGES:  Mitchell Karlan?
12         MR. JERDEE:  Yes.
13         SPECIAL MASTER HEDGES:  Andrew Levy?
14         MR. JERDEE:  Yes.
15         SPECIAL MASTER HEDGES:  Scott Kislin?
16         MR. JERDEE:  Yes, a former partner at Gibson and then
17  a partner at Gibson Dunn.
18         SPECIAL MASTER HEDGES:  And why should I protect this
19  as privileged, counsel?
20         MR. JERDEE:  Because there is a line of authority
21  beginning with the Sage Realty case in the New York Court of
22  Appeals that specifically carves out from the general
23  requirement that the former counsel of a law firm is entitled
24  to the files relating to that matter.  The specific exception
25  concerning internal documents, documents prepared specifically

4

0CLSREFCO
1  with internal purposes in mind, including documents concerning
2  preliminary tentative analyses, which is what this falls into.
3  There are some preliminary tentative views expressed about the
4  Refco bankruptcy and its possible effect and potential claims
5  for preference claims involving Plus Funds, and there is some
6  commentary regarding representation issues as you will see in
7  the middle of page 2.
8          And we believe that this falls within the categories
9  that are recognized not only by Sage Realty but also by other
10 cases we cite, and in addition to Sage Realty also the
11 restatement.  There is statement of law governing lawyers,
12 Section 46, Comment C, which is in part what Sage Realty itself
13 is based on that allows for withholding of these types of
14 documents.
15         We recognize that there is essentially an exception to
16 the exception in situations involving a substantial need, the
17 client has a substantial need for a document.  Of course, here
18 the only substantial need they have identified is, in our view,
19 an improper one, which is they want to use the subpoena power
20 of this court to obtain information for use in another
21 proceeding.  And we cited authority that specifically says that
22 is improper.  In fact, in one case they issued sanctions for a
23 party who attempted to enforce such a subpoena.
24         SPECIAL MASTER HEDGES:  I am not concerned about
25 sanctions.  Are you?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

5

0CLSREFCO

1           MR. JERDEE:  Neither am I.
2           SPECIAL MASTER HEDGES:  All right.
3           Mr. Dash, what do you want this for other than the
4  gratuity us comments of counsel which are probably inadmissible
5  any place?
6           MR. DASH:  As the court well knows, that is not the
7  standard for discovery.  It may well lead to discoverable
8  evidence.  Counsel wildly misstates the holding of Sage Realty
9  and I think it's important that we focus on what the binding
10  authority does tell us.  Sage Realty tells us that the
11  presumption is that a client has access to the entire
12  attorney's e-files and counsel seizes upon a limited exception
13  identified in Sage Realty and turns it on its head.  In fact, I
14  think there are over 7,000 instances in their privilege log
15  where they asserted this narrow exception.
16           We are dealing only with this one document here today
17  though.  And what is important to understand about the internal
18  assessment exception is, as Magistrate Dolinger made clear in
19  the Pollen case, and Sage itself makes clear, it is a narrow
20  exception.  It assumes that there is no insignificant
21  usefulness to the document or the successor attorney.  And that
22  is a reflection of assessment of client or of internal
23  directions to attorneys as to how to go about performing the
24  legal services.
25           Now, I haven't seen this document in months, your
                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

0CLSREFCO
1   Honor.  We did have a bit of disclosure as to its contents
2   during counsel's argument, but as I recall there is no
3   assessment of the client in the document and there is no
4   discussion of direction to attorneys as to how to go about
5   fulfilling Gibson Dunn's responsibilities.
6           Your Honor, that document was created on October 31 by
7   the retention letter for Plus Funds dated as of October 10.
8   Gibson Dunn was providing services to Plus Funds on "issues
9   relating to the bankruptcy of Refco and related matters."
10          So clearly from the face of the document it reflects
11  the subject matter of the retention that Plus Funds had of
12  Gibson Dunn.  And, indeed, as Magistrate Dolinger noted in the
13  Pollen case "from the discussion it's evidence that may be
14  withheld turns upon the needs of the clients and even opinion
15  work product is subject to production on that basis."
16          So, your Honor, this is not a function of the Krys
17  plaintiffs using the subpoena power here to grab this document.
18  They have a right to the document irrespective of the subpoena
19  as the former client of Gibson Dunn.  And the notion that this
20  can be protected because it fits within the Sage Realty
21  exception is belied by the actual contents of the document
22  itself.
23          The Sage Realty exception is a very narrow exception.
24  It's not a general exception.  The presumption of the New York
25  state courts as adopted by the federal courts is that the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

7

OCLSREFCO
1   client is entitled to the entire file, even including opinion
2   work product.
3          Now, it's --
4          SPECIAL MASTER HEDGES:  And if there are internal
5   musings between counsel that are not going to be or wouldn't be
6   discoverable in the normal course are you entitled to them?
7          MR. DASH:  Absolutely, your Honor.
8          SPECIAL MASTER HEDGES:  Why?
9          MR. DASH:  Because we paid for the representation.
10  Gibson Dunn was working for us.  We are entitled to the file as
11  long as we pay their bill, and there is no question we haven't
12  paid their bill.  It's the same way their client is entitled to
13  say, "I am done with you.  You are paid off.  Give me my
14  files."
15         The narrow exception recognized in Sage fits into two
16  categories, neither of which is here.  It's not an assessment
17  of Plus Funds, not an assessment of Sphinx, and the document
18  doesn't reflect instructions to lawyers as to how to go about
19  performing their representation.  It doesn't fit within the
20  categories of Sage Realty or the cases that follow it.  The
21  presumption goes the exact opposite way.  It's Gibson Dunn's
22  burden to show how it fits into the category and it doesn't.
23  Your Honor --
24         SPECIAL MASTER HEDGES:  Hold on one second.  These are
25  internal musings.  What is there that I should protect?  And

8

0CLSREFCO
1   the only thing I can conceivably see protecting are four parts
2   of the chain that have a little conversation between partners.
3   The remainder of this, quite frankly, is something that
4   appeared in the public record, which they are entitled to, and
5   conversations about when they are all going to get together and
6   have a meeting and there is certainly nothing protected about
7   that.  So if these are just partners sitting around chatting
8   about something why should I protect that?
9           MR. JERDEE:  Your Honor, first of all, I would concede
10  that there are portions of the e-mail which includes the very
11  bottom that has a bit of something from the public record and
12  various very short statements particularly in the last pages
13  which say when should we meet.  I would agree that real notice
14  substance of any kind to that --
15          SPECIAL MASTER HEDGES:  There are only four paragraphs
16  of this that could be conceivably subject to Sage Realty.  Tell
17  me why conversations between attorneys should be protected
18  here.
19          MR. JERDEE:  Because the policy of Sage Realty that is
20  specifically laid out is that attorneys should have the liberty
21  and the flexibility to provide tentative preliminary
22  assessments as well as discuss issues revolving on
23  representation, such as conducting conflict checks, but not
24  limited to conflict checks without the assumption that the eyes
25  of the client will lay eyes on the information.  It's sort of a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

0CLSREFCO

1   policy-based exception that we think applies here.
2           I would also note that the categories that are laid
3   out in Sage are only examples.  It doesn't say they are
4   exclusive.  The general description is that internal documents,
5   and here it's undisputed that this is strictly internal.
6   Again, we are not arguing if your Honor is inclined to rule
7   that this should be produced with those four portions redacted,
8   I think we would certainly be prepared to do that.
9           I would also point out that the Pollen case, as well
10  as the other cases that Mr. Dash cited, were legal malpractice
11  cases, which goes exactly to my point.  This is not a legal
12  malpractice case as to this court.  There are such claims but
13  they are not before this court.  So in that context the court
14  said, yes, these may or may not be types of communications that
15  as a matter of policy we can recognize that the law firm
16  shouldn't have to turn over, but here there is a direct adverse
17  proceeding between these litigants and therefore that need or
18  that arguable need will override the other considerations.
19          SPECIAL MASTER HEDGES:  What is the arbitration about?
20          MR. JERDEE:  The arbitration is exactly the claims
21  that were before your Honor.  There is a legal malpractice
22  claim.  There is a breach of fiduciary duty claim.  There are
23  two claims for aiding and abetting breaches of fiduciary duty.
24  And we still haven't heard why this is relevant to this
25  proceeding.

0CLSREFCO

1       SPECIAL MASTER HEDGES:  I don't see how it is relevant
2  to this proceeding frankly.  But as counsel says relevance
3  isn't the keystone.
4       MR. DASH:  Your Honor, two points.
5       First, counsel I think gets Sage Realty fundamentally
6  wrong.  Sage Realty rejected the line of cases in other
7  jurisdictions that look to the end product before determining
8  what a client is entitled to determining that under New York
9  law a client is entitled presumptively to the entire file
10  absent fitting in one of these categories.  And I think it's
11  very telling that counsel complains in his correspondence to
12  the court and here today that we are somehow misusing this
13  process when it's counsel who relied on the protective order
14  entered by Judge Rakoff to grant back the documents, and relied
15  on your Honor's good offices in overseeing the privilege log
16  process that included the clawback to this document.  They seem
17  to want it both way.  They want to use the power of this court
18  but disclaim our right to ask you in the context of this case
19  to determine that the Sage Realty factors don't apply here.
20       SPECIAL MASTER HEDGES:  I am not prepared to conclude
21  that this document would not be discoverable under Rule
22  26(b)(1) of the Federal Rules, which is what the test is today,
23  correct?
24       MR. DASH:  I believe so, your Honor.
25       SPECIAL MASTER HEDGES:  Whether it's used here or in
             SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300

0CLSREFCO

1    another proceeding once it's made available if it's subject to
2    protective order the protective order has limitations and that
3    is something you can come back and talk about another day.
4          Counsel, I understand Sage Realty.  I appreciate the
5    argument, but I don't understand why these conversations
6    between partners are things that should not be made available
7    to the former client.
8          All right, counsel, I don't need to hear any more
9    argument on that.  I understand the argument being advanced.  I
10   understand we are governed by Sage Realty's determination of
11   privilege here.  I appreciate that there are exceptions.  I
12   also appreciate that Gibson Dunn is the party resisting
13   production and has the burden.
14         As I said, I do not think that Sage Realty laid out
15   every test available but these, frankly, are musings between
16   counsel and partners at the firm as to how litigation might
17   shape or whatever.  I, frankly, don't see how it's discoverable
18   or usable in much of anything, but that is not the point.  The
19   point is that I don't see the basis to not allow production.
20         So, Mr. Dash, you can send me a form of order.  For
21   the record, I would order the entire document turned over and I
22   will order it turned over.  If you intend to appeal, you may
23   redact out the paragraphs I tell you to redact.  The remainder
24   of the document is to be made available to Mr. Dash
25   immediately.

0CLSREFCO

1        The documents that would fall within the scope of Sage
2    Realty, assuming that I wrongly decide this, are the second
3    paragraph of the e-mail from Mr. Karlan dated October 31 at
4    9:34 a.m. beginning with the words "who are".  Next, the only
5    paragraph in an e-mail dated October 31 at 4:35 p.m. from Mr.
6    Levy -- and it's only one paragraph, and it begins with the
7    words "is there".  The next is the only paragraph of an e-mail
8    from Ms. Labovitz, October 31 at 1;32 a.m. beginning with the
9    words "it's too".
10        And the final paragraph, one paragraph, the first
11    paragraph of an e-mail attaching to it something that is a
12    matter of public record from Mr. Levy dated October 30 at 12:55
13    p.m. beginning "does it," and that is one sentence.
14        I will give you the document back, counsel.  Redact
15    that out and make it available immediately.  The rest of it is
16    not subject to any type of privilege.  And if you want to argue
17    about those four paragraphs with Judge Rakoff take an appeal.
18        Get me a form of order, Mr. Dash.
19        Thank you.  I will give that back to you.
20        MR. JERDEE:  Your Honor, one other thing.  We jointly
21    submitted a proposed order to you about a week ago with respect
22    to common interest privilege documents and your Honor indicated
23    that you would sign it.
24        SPECIAL MASTER HEDGES:  I believe I did sign it.
25    Wasn't it filed?  I sent it into the clerk for electronic

13

```
0CLSREFCO
```

 1    filing.
 2              MR. DASH:  I saw an e-mail indicating the court signed
 3    it and I don't know if it has been filed yet.
 4              SPECIAL MASTER HEDGES:  Would you check with the
 5    docket clerk because I believe I sent it in.  If there is some
 6    kind of problem e-mail me and I will do it again.
 7              MR. JERDEE:  Thank you, your Honor.
 8              MR. DASH:  With the court's permission, I may sit a
 9    little bit and watch the festivities, if I may be excused.
10              SPECIAL MASTER HEDGES:  Sure.
11              Before you worry about that go down to Richard Wilson
12    in the clerk's office.  I dropped off to him the originals of
13    orders that were e-filed over the last few weeks.  It should be
14    there.  If it's not in there, that means I didn't send it to
15    you.  So if you have a copy of it if you want to bring it back
16    up or send it to me again I will get it done.  But I believe I
17    sent it in to be filed.  There were massive files over the last
18    two weeks or so so something might have happened to that.
19              MR. DASH:  Thank you, your Honor.
20              MR. JERDEE:  Thank you.
21              Okay, let's do the next thing.
22              Mr. Dash, before you send me the order have the
23    transcript attached to the order.  So it goes in with the
24    order, and put in the order for the reasons set forth in the
25    transcript.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```