UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                             :
In re REFCO, INC. Securities Litigation           :                07 MDL 1902 (JSR)
                                                             :
------------------------------------------------------------ x
This document applies to:                            :
                                                             :
THOMAS H. LEE EQUITY FUND V, L.P.,       :
THOMAS H. LEE PARALLEL FUND V, L.P.,    :
and THOMAS H. LEE EQUITY (CAYMAN)      :
FUND V, L.P.,                                              :                07 Civ. 8663 (JSR)
                                                             :
        Plaintiffs/Counterclaim-Defendants,     :
                                                             :
                        v.                                   :
                                                             :
GRANT THORNTON LLP,                              :
                                                             :
        Defendant/Counterclaim-Plaintiff.        :
------------------------------------------------------------ x


## GRANT THORNTON'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

*Attorneys for Defendant*
*Grant Thornton LLP*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

I. TH Lee cannot avoid *Continental Casualty*, which requires summary judgment. .............. 2

II. TH Lee misstates the law regarding knowledge and so betrays its lack of any evidence that Grant Thornton knew of or was reckless in *not* knowing of the fraud. ............................................................................................................................. 5

III. TH Lee cannot show reliance on any audit opinions either after, or before, the LBO. ............................................................................................................................. 8

i

## TABLE OF AUTHORITIES

CASES                                                                                                   PAGE

*Casseus v. Verizon N.Y., Inc.*,
    722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) ..............................................................3

*Continental Casualty Co. v. PricewaterhouseCoopers, LLP*,
    15 N.Y.3d 264 (2010) ...........................................................................................1

    15 N.Y.3d at 265-68.............................................................................................2

    15 N.Y.3d at 268..................................................................................................3

    15 N.Y.3d at 271..................................................................................................3

    15 N.Y.3d at 271..................................................................................................4

    15 N.Y.3d at 269, 270-71.....................................................................................4

*Cromer Finance Ltd. v. Berger*,
    No. 00 Civ. 2284, 2003 WL 21436164 (S.D.N.Y. June 23, 2003).........................6

    2003 WL 21436164, at *9 ....................................................................................7

*Del. & Hudson Ry. Co. v. Consol. Rail Corp.*,
    902 F.2d 174, 178 (2d Cir. 1990)..........................................................................5

*E*Trade Financial Corp. v. Deutsche Bank AG*,
    631 F. Supp. 2d 313 (S.D.N.Y. 2009)...................................................................9

    631 F. Supp. 2d at 384 .......................................................................................10

*Glidepath Holding B.V. v. Spherion Corp.*,
    No.  04 Civ 9758, 2010 WL 1372553, at *8 (S.D.N.Y. 2010) ...............................9

*Hotaling v. A.B. Leach & Co.*,
    159 N.E. 870 (N.Y. 1928)......................................................................................3

*In re aaiPharma Inc. Sec. Litig.*,
    521 F. Supp. 2d 507, 513 (E.D.N.C. 2007)............................................................8

*In re Eugenia VI Vent. Hlds., Ltd. Litig.*,
    649 F. Supp. 2d 105, 120-21 (S.D.N.Y. 2008) ...................................................10

*In re IMAX Sec. Litig.*,
   587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008)................................................................6

   587 F. Supp. 2d at 484 ..............................................................................................8

*In re Omnicom Group, Inc. Sec. Litig.*,
   597 F.3d 501, 512 (2d Cir. 2010)..............................................................................6

*In re Priceline.com Inc. Sec. Litig.*,
   342 F. Supp. 2d 33, 57 (D. Conn. 2004)....................................................................6

   342 F. Supp. 2d at 58 ................................................................................................9

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611, 658 (S.D.N.Y. 2007)...............................................................6

*In re Scottish Re Group Sec. Litig.*,
   524 F. Supp. 2d 370, 385 (S.D.N.Y. 2007)...............................................................6

   524 F. Supp. 2d at 398 ..............................................................................................8

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735, 744 (S.D.N.Y. 1985)...................................................................5

*In re WorldCom, Inc. Sec. Litig.*,
   352 F. Supp. 2d 472, 496 (S.D.N.Y. 2005)...............................................................6

   352 F. Supp. 2d at 475 ..............................................................................................9

*In re WorldCom, Inc. Sec. Litig.*,
   382 F. Supp. 2d 549, 559-60 (S.D.N.Y. 2005) ........................................................2

   382 F. Supp. 2d at 559-60 ........................................................................................9

*Kirschner v. KPMG LLP*,
   15 N.Y.3d 446, 462-63 (2010)..................................................................................4

*Lewin v. Lipper Convertibles, L.P.*,
   ___ F. Supp. 2d ___, 03 Civ. 1117, 2010 WL 4669040, at *9 (Nov. 17, 2010).......................4

   2010 WL 4669040, at *7 ..........................................................................................4

   2010 WL 4669040, at *9 ..........................................................................................5

*Mahmud v. Kaufmann*,
   607 F. Supp. 2d 541, 555 (S.D.N.Y. 2009)..............................................................3

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
   446 F. Supp. 2d 163, 202 n.279 (S.D.N.Y. 2007)....................................................6

*Primavera Familienstiftung v. Askin*,
  No. 95 Civ. 8905, 1996 WL 494904, at *12-13 (S.D.N.Y. Aug. 30, 1996)............................4

*SEC v. Price Waterhouse*,
  797 F. Supp. 1217, 1240 (S.D.N.Y. 1992)...................................................................6

*Schlaifer Nance & Co. v. Estate of Warhol*,
  119 F.3d 91, 101 (2d Cir. 1997).................................................................................9

  119 F.3d at 99-100 .................................................................................................10

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
  148 F. App'x 66, 89 (2d Cir. 2005) ...........................................................................6

*Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP*,
  586 F. Supp. 2d 119, 125 (S.D.N.Y. 2008)................................................................1

  586 F. Supp. 2d at 125 ...........................................................................................3

  586 F. Supp. 2d at 135 ...........................................................................................9

In its efforts to avoid summary judgment, TH Lee tries to change both its claims and the governing law.  It cannot succeed in doing either one.  For three independent reasons—its failures of proof on damages, knowledge, and reliance—TH Lee's claims fail as a matter of law.

With respect to damages, TH Lee's opposition brief all but admits defeat.  The case of *Continental Casualty Co. v. PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264 (2010), holds that a plaintiff's failure to present evidence of date-of-investment damages requires summary judgment for the defendant.  TH Lee has no such evidence, and so, under *Continental Casualty*, its claims cannot survive.  TH Lee's response is to change the subject:  it seeks to recast its claims as "holding" claims—rather than "purchasing" claims—in the hopes of capitalizing on language from an 82-year-old case where "holding" claims were truly at issue.  Opp. 6, 8-11.  But it is far too late for that.   TH Lee's claims have always revolved around the allegations that Grant Thornton "made numerous misrepresentations . . . in connection with the August 2004 LBO" and that "had GT been truthful about Refco's finances, [TH Lee] would not have engaged in the LBO, thus avoiding [a] substantial loss."  *Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP*, 586 F. Supp. 2d 119, 125 (S.D.N.Y. 2008) (Lynch, J.).  TH Lee did not allege—and, until now, has never asserted—that its claims are based on its alleged reliance on Grant Thornton's audit opinions *after* the LBO  "in continuing to hold and manage its investment."  Opp. 5.  And in any event, *Continental Casualty* governs even with respect to TH Lee's untimely new theory.  TH Lee's assertion that this decision is "merely one application" of New York's damages rule (Opp. 10) ignores the broad language of the *Continental Casualty* decision itself.

As to knowledge, TH Lee again tries to bury well-established law—arguing that the requirement to show that the audits amounted to "no audit at all" is only one "formulation" of the standard.  Opp. 21.  Yet the cases leave no doubt that this is the governing standard.  TH Lee's

argument for a lesser standard rests on its selective quotation of a single court opinion (*see* 6-7, *infra*) and must be rejected. The very purpose of the insiders' end-of-period machinations was to hide the truth from Grant Thornton, and TH Lee's "evidence" on this issue does not come close to proving that the insiders failed to achieve their goal.

Finally, the untimely new "holding" theory creates even more problems for TH Lee on reliance. Merely issuing an audit opinion, as here, is not "sufficiently direct communication" to support reasonable reliance by an existing investor. *In re WorldCom, Inc. Sec. Litig.*, 382 F. Supp. 2d 549, 559-60 (S.D.N.Y. 2005). And with regard to TH Lee's doomed "purchasing" claims, TH Lee still cannot show pre-LBO reliance on Grant Thornton's audit opinions for several reasons, including because the Deep Throat tip—which put TH Lee on notice that Refco had engaged in the very type of conduct at issue in the fraud—made any reliance unreasonable.

## I.   TH Lee cannot avoid *Continental Casualty*, which requires summary judgment.

In *Continental Casualty*, the New York Court of Appeals held that the proper measure of damages for fraud is the difference between the amount the plaintiff paid for the investment and its actual value at the time of purchase. *See* Mem. 7-9. That clear and binding authority requires summary judgment on all of TH Lee's claims. The allegations here are nearly identical to those in *Continental Casualty*: An investment was made in alleged reliance on an auditor's opinion that the financial statements conformed with GAAP when the auditor allegedly knew that they did not. Improper accounting was later revealed. Mass withdrawals by customers were followed by a collapse, which resulted in the loss of most of the investment's value. The investor sued the auditor for fraud, but its damages expert focused his attention exclusively on the decline of the investor's investment over time. Absent any evidence of date-of-investment damages, the Court held that summary judgment for the defendant was required. 15 N.Y.3d at 265-68.

TH Lee does not even attempt to argue that this reading of *Continental Casualty* is incorrect.  It also does not argue that its expert did, in fact, offer proof of date-of-investment damages, nor does it contend that it can proceed with claims based on its decision to invest in the LBO if it has no such proof.

Instead, TH Lee asserts a brand new theory—that it relied on Grant Thornton "in continuing to hold and manage its investment" ***after*** the LBO—and argues that "holding" claims are governed by a different damages rule.  Opp. 6-9 (citing *Hotaling v. A.B. Leach & Co.*, 159 N.E. 870 (N.Y. 1928)).  But TH Lee's claims have always been about whether it was fraudulently induced "to consummate the August 2004 Acquisition." Compl. ¶ 95; *see also id.* ¶ 1 (TH Lee was induced "to invest"); TH Lee's Opp. to MTD at 11; 586 F. Supp. 2d at 125.  TH Lee has never before claimed that it relied on Grant Thornton ***after*** the August 2004 LBO, when TH Lee itself was a Refco insider.  It would be outrageously prejudicial to permit such a dramatic change in theory at this very late date.  *See Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010); *Mahmud v. Kaufmann*, 607 F. Supp. 2d 541, 555 (S.D.N.Y. 2009).

Moreover, even if TH Lee were permitted to change its claims, *Continental Casualty* would still apply.  The plaintiffs in that case, too, retained their interests until the fraud's detection and a subsequent "run on the bank."  15 N.Y.3d at 268.  Further, the Court of Appeals in *Continental Casualty* explained that its 1928 decision in *Hotaling* was merely "an exception to the general rule."  *Id.* at 271.  The Court refused to apply this exception, noting an important difference between the cases:  In *Hotaling*, date-of-purchase damages could not be determined (and thus the usual rule would have unfairly deprived the plaintiff of any remedy), whereas the expert in *Continental Casualty* conceded that he ***could*** have calculated date-of-investment damages but simply declined to do so.  *Id.*  And any damages based on a decline in the

enterprise's value following revelation of the fraud would necessarily have been derivative and barred for lack of standing.  *Id.*; *see also Lewin v. Lipper Convertibles, L.P.*, ___ F. Supp. 2d ___, 03 Civ. 1117, 2010 WL 4669040, at *9 (Nov. 17, 2010).  Similarly here, TH Lee's expert testified that the date-of-investment damages *could* have been calculated, but TH Lee did not ask him to do so; thus, as in *Continental Casualty*, TH Lee's failure of proof on this issue is the product of its own strategic choice.  *See* Mem. 9.  And, like in *Continental Casualty*, any injury based on the decline in Refco's value following disclosure of the fraud is an injury suffered in common with the company and all other equity holders, not uniquely and directly by TH Lee.  15 N.Y.3d at 271; 2010 WL 4669040 at *7.  Such claims are derivative in nature; they belong only to the company, and TH Lee lacks standing to bring them.  *Id.*  It is only TH Lee's claims *based on its decision to invest* that are direct and not derivative.  *Id.*; 15 N.Y. 3d at 269, 270-71.[1]

TH Lee next argues that even if *Continental Casualty* applies, it can prove without expert testimony that Refco had no value on the date of the LBO because disclosure of the fraud would have made the investment valueless then too.  Opp. 12.  This makes no sense.  TH Lee's own evidence suggests that there must have been *some* positive value on the date of the investment, as the investment ultimately earned TH Lee at least $232.3 million.  Add. ¶ 147.[2]  Moreover, the

---

[1]  The Court also noted that allowing the case to proceed would have allowed plaintiffs a double recovery in light of an ongoing receivership action.  But that factor, by itself, is not dispositive.  Courts bar investors from bringing direct claims for derivative injuries even if the company does not or cannot bring such claims.  *See, e.g., Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905, 1996 WL 494904, at *12-13 (S.D.N.Y. Aug. 30, 1996).  Moreover, when a shareholder is allowed to sue derivatively for a harm suffered by the corporation, the shareholder's claim is subject to the same defenses as the corporation's—including the defense of *in pari delicto*.  *Id.; Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 462-63 (2010) (discussing related *AIG* case).  This Court (and the Second Circuit) already concluded that Refco's claims are barred by *in pari delicto*.  If TH Lee were allowed to sue for a decline in the value of the Refco enterprise after the LBO, those claims would be derivative of Refco's and barred by *in pari delicto* as well.

[2]  Further, there is no evidence that the disclosure of the concealed RGHI receivable in August 2004 would inevitably have prompted a panic and a "run on the bank" by Refco customers.  In

4

offer to present a self-serving "lay opinion" by a TH Lee executive does not create a genuine

issue of fact. *See Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir.

1990). And regardless of what some TH Lee executive is prepared to say at trial, date-of-

investment damages simply cannot be established without the help of an expert. *See Lewin*,

2010 WL 4669040, at *9 ("Undoubtedly, expert testimony would be needed to fix not only the

amount, but the existence, of actual damages" under the date-of-investment measure) (quoting *In*

*re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985)).

       Finally, TH Lee cannot now supplement its expert's report merely because *Continental*

*Casualty* came down a few weeks after the report was issued. Opp. 11 n.6. That decision did

not purport to change the law (*see* Mem. 8), and even if it did, Hausman had ample time to

supplement in the many months between the release of *Continental Casualty* and his deposition.

Any argument by TH Lee that it thought *Continental Casualty* did not apply to *Hotaling*-type

"holding" claims is ridiculous, given that TH Lee was not even pressing a "holding" claim at that

time. Because of TH Lee's utter failure of proof of damages recoverable under New York law,

Grant Thornton is entitled to summary judgment on both claims.

## II.    TH Lee misstates the law regarding knowledge and so betrays its lack of any evidence that Grant Thornton knew of or was reckless in *not* knowing of the fraud.

       At times claiming Grant Thornton knew too much (Opp. 21 ("GT in fact knew about the

fraud")), and at times claiming it knew too little (Opp. 19-20 ("GT failed to obtain competent

eviden[ce]")), TH Lee's knowledge argument mischaracterizes both the law and the facts.

------

all likelihood, the receivable would have been immediately repaid, just like it actually was in
October 2005. Given that Refco was privately held in August 2004, it may well not have faced
the same public scrutiny and potential securities fraud liability that it faced in fall 2005, when it
disclosed the receivable after having undertaken an initial public offering only weeks before.

First, the law.  Procedurally, TH Lee is incorrect that "[w]hether a defendant acted with knowledge or recklessness is a fact-intensive question that is rarely appropriate for resolution on summary judgment."  Opp. 13.  Courts find no impediment to summary judgment where, as here, discovery yielded no evidence of the requisite level of knowledge.  *See, e.g., Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 148 F. App'x 66, 89 (2d Cir. 2005).

Substantively, TH Lee is also mistaken about the applicable standard.  For its fraud claim, TH Lee must prove an "***egregious*** refusal [by GT] to see the obvious" that "approximate[s] an ***actual intent*** to aid in the fraud," and that Grant Thornton's audits were "so deficient" that they "amounted to ***no audit at all***."  *In re Worldcom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 495-96 (S.D.N.Y. 2005) (emphasis supplied and internal quotations omitted); *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 385 (S.D.N.Y. 2007) (same).[3]  For aiding and abetting fraud, TH Lee must meet an even higher standard.  *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 446 F. Supp. 2d 163, 202 n.279 (S.D.N.Y. 2007) ("actual knowledge").  Cognizant that their expert's purported "no audit at all" opinion is unlikely to survive the pending Motion to Exclude,[4] TH Lee argues that simple "recklessness" is sufficient for both claims under *Cromer Finance Ltd. v. Berger*, No. 00 Civ. 2284, 2003 WL 21436164 (S.D.N.Y. June 23, 2003).  Opp. 20.  In *Cromer*, however, the court denied summary judgment where factual disputes made it unclear whether there had been ***more*** than mere

---

[3] Contrary to THL's suggestion (Opp. 21), this standard is regularly applied.  *See, e.g.*, *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 658 (S.D.N.Y. 2007); *In re Priceline.com Inc. Sec. Litig.*, 342 F. Supp. 2d 33, 57 (D. Conn. 2004); *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992).

[4] TH Lee does make a half-hearted attempt to conjure up a battle of the experts by arguing that Devor's opinion that the audits did not comply with GAAS creates a disputed issue of fact.  Opp. 18-20 & n.17.  But TH Lee acknowledges that a failure to comply with GAAS is insufficient to establish the knowledge requirement for either claim.  Opp. 21.  In any event, "summary judgment is not per se precluded because there are conflicting experts."  *In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010).

recklessness—not, as TH Lee asserts, where the evidence could support **no more** than recklessness.  2003 WL 21436164, at *9.  The court wrote: "*While it may very well be that* [plaintiffs'] evidence, even if believed, will only be sufficient to support a finding of recklessness, that is not a determination that can be made on summary judgment."  *Id.* (emphasis supplied).  TH Lee misrepresents the court's holding by eliding the highlighted language.

Now the facts.  TH Lee has attempted to contrive factual disputes by cobbling together the "cumulative information contained in documents in GT's possession."  Opp. 13.  In doing so, it misconstrues several key facts.  For instance, TH Lee argues that Grant Thornton knew the RGHI receivable was increasing at the same time Bennett was promising to pay it down.  *Id.* at 14-15.  But TH Lee fails to acknowledge that there were *two* RGHI receivables: (1) a *disclosed* receivable that was ultimately paid down in response to pressure from Grant Thornton, and (2) an *undisclosed* receivable that was the subject of the fraud.  While the latter may have increased while Bennett was repaying the former, this fact was aggressively hidden from Grant Thornton.  Indeed, that was the entire point of the insiders' end-of-period machinations. There is no evidence that Grant Thornton learned about it until later, as the fraud was unraveling. ¶¶ 30-37.

Similarly, while TH Lee argues that Grant Thornton "had documents showing all 12 sham loans RCM made at period end" (Opp. 15), these were, in fact, *real* loans to *real* third parties.  Their only "sham" aspect was the hidden guarantees by Refco, which TH Lee does not claim Grant Thornton ever discovered.  Moreover, the loans constituted only one leg of the "round trip" transactions.  TH Lee has no evidence that Grant Thornton was aware of the third-party loans to RGHI or the subsequent use of these funds to conceal the undisclosed RGHI receivable.  Indeed, Grant Thornton was never retained to audit RGHI and had no reason to inspect its books.  In its audits of Refco, Grant Thornton saw nothing more than unremarkable

loans to third parties, alongside the other large, short-term transactions with customers that were commonplace in Refco's business. Those loans rightly triggered no suspicion because they were confirmed by third parties (consistent with GAAS) and timely repaid. TH Lee's suggestion (at 14) that Refco's CFO Trosten can competently testify about what he thought was "right in front of" Grant Thornton is both wrong and irrelevant; an auditor's mere access to documents that might have revealed the fraud is insufficient as a matter of law. *See In re IMAX Sec. Litig.*, 587 F. Supp. 2d at 484; *In re aaiPharma Inc. Sec. Litig.*, 521 F. Supp. 2d 507, 513 (E.D.N.C. 2007).[5]

Finally, TH Lee argues that Grant Thornton should have investigated the $545 million transaction that appeared twice in Refco's books, which Grant Thonrton encountered during an interim review. Opp. 16. In fact, Grant Thornton **did** investigate, by approaching RCM's CFO and correcting what appeared to be a recording error, which was more than sufficient given that Grant Thornton was not charged with auditing these transactions. TH Lee's claim (Opp. 17 n.15) that Grant Thornton should have conducted "additional inquiries" about this "red flag," even if true, would amount to no more than negligence. *See In re Scottish Re*, 524 F. Supp. 2d at 398. Plaintiffs have thus failed to raise a genuine factual issue with respect to knowledge.

## III.   TH Lee cannot show reliance on any audit opinions either after, or before, the LBO.

If the Court were to allow TH Lee to convert its claims to "holding" claims at this late date, TH Lee would find itself even further from being able to prove reasonable reliance. No doubt, it is for this reason that TH Lee drifts back into a discussion of the pre-LBO period in the reliance section of its brief. As to the post-LBO period, TH Lee offers no evidence of ongoing reliance on Grant Thornton. And Grant Thornton's mere issuance of audit opinions is not

---

[5] For this reason, TH Lee's attempts to establish knowledge by pointing to "[Arthur Andersen's] work papers from Ramler's tenure there" also fail. Opp. 14, 17-18 (discussing $625 and $250 million transactions that predate Grant Thornton's engagement). Ramler testified that he did not review these documents, and TH Lee has offered no evidence to the contrary. Opp. 14 n.11.

enough;  if an investor-plaintiff fails to allege "a sufficiently direct communication from the defendant to the plaintiff," any "holding" claim will fail for lack of reliance.  *In re WorldCom*, 382 F. Supp. 2d at 559-60.  Merely issuing an audit report, as here, is not "sufficiently direct communication" to create justifiable reliance by existing investors.  *Id.*; 352 F. Supp. 2d at 475.

More importantly, however, TH Lee was no ordinary investor.  As the 57% owner, TH Lee had the "ability to control all aspects of [Refco's] business."  ¶ 271.  TH Lee ***was*** Refco, and it enjoyed unfettered "access to the 'critical information' necessary to discover the Refco fraud on [its] own."  *Thomas H. Lee*, 586 F. Supp. 2d at 135.  TH Lee cannot claim that it relied on audit opinions by outside auditors based on a sampling of information when it had access to ***all*** the information itself.  *Cf. In re Priceline.com Sec. Litig.*, 342 F. Supp. 2d at 58 ("To expect the same degree of knowledge from an independent auditor [as the insiders] would defy logic").

If TH Lee returns to its claim based on the initial inducement to invest, it will similarly fail to show reliance on Grant Thornton's audit opinions in the pre-LBO period.  TH Lee has not contested Grant Thornton's showing that, under the Access Letters, its audit opinions were never intended to replace TH Lee's own due diligence.  Mem. 5, 21; Opp. 24.  To the extent TH Lee claims that it failed to take full advantage of its own access to Refco's financial information in reliance on the audit opinions, New York law holds that such reliance is unreasonable as a matter of law.  *See Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 101 (2d Cir. 1997) ("[S]ophisticated businessmen's reliance on the misrepresentations of a party is ***un***reasonable when the businessmen are engaged in major transactions [with] access to critical information [and] fail to take advantage of that access.") (internal quotations omitted); *see also Glidepath Holding B.V. v. Spherion Corp.,* No.  04 Civ. 9758, 2010 WL 1372553, at *8 (S.D.N.Y. 2010).[6]

---

[6]  TH Lee cites *E\*Trade Financial Corp. v. Deutsche Bank AG*, 631 F. Supp. 2d 313 (S.D.N.Y. 2009), for the proposition that no amount of due diligence could "vitiate" its reliance on GT's

TH Lee seeks to distinguish these cases by noting that the insiders testified that "they would continue to lie no matter what."  Opp. 24 n.25.  But that is the irony of this entire case: TH Lee is suing Grant Thornton for failing to discover a sophisticated fraud carefully concealed by businessmen who, to a man, have testified that they were prepared to do whatever it took to hide their scheme from **both** parties.   ¶¶ 24-25, 117, 156, 180-82.  Unlike Grant Thornton, however, TH Lee was actually tipped off about Refco's practice of transferring and concealing losses in unconsolidated subsidiaries.  TH Lee asserts that it investigated this tip "and concluded that it was not a cause for concern going forward."  Opp. 25.  But, as discussed in opposition to TH Lee's motion (at 17-19), TH Lee ignored the clear advice of its consultants in accepting the main fraudster's assurances that the practice had stopped.  Add. ¶¶ 23-28, 32-34, 37-38.

TH Lee's knowledge that Refco had engaged in the same type of fraudulent accounting in the past is the precise type of knowledge that defeated reliance in *Schlaifer Nance*.  119 F. 3d at 99-100.  While TH Lee conspicuously neglected to address it, the case makes clear that if TH Lee did rely on Grant Thornton's audit opinions at all, it did so unreasonably.  TH Lee must not be permitted to shift the consequences of its heedlessness to Grant Thornton.  *See id.; see also In re Eugenia VI Vent. Hlds., Ltd. Litig.,* 649 F. Supp. 2d 105, 120-21 (S.D.N.Y. 2008).

\*   \*   \*

In short, TH Lee has failed to present evidence sufficient to create a genuine issue of material fact on the damages, knowledge, and reliance elements of its remaining claims for fraud and aiding and abetting fraud.  Grant Thornton is entitled to summary judgment as to both claims on each of these grounds, any one of which is sufficient to dispose of the case in its entirety.

---

audit opinions.  Opp. 23.  But that case specifically relied on the absence of "red flags" known to the investor, like the Deep Throat tip.  631 F. Supp. 2d at 384.  What is more, in *E\*Trade* the investor hired the due diligence firm to investigate whether an audit opinion was accurate.  *Id*. at 383.  Here, KPMG was hired to look **beyond** the opinions to the underlying records.  ¶¶ 209-14.

Dated:  January 14, 2011
       New York, New York

*Of Counsel:*

Margaret Maxwell Zagel
Tracy W. Berry
Kenneth Cunningham
GRANT THORNTON LLP
175 West Jackson, 20th Floor
Chicago, Illinois 60604
Ph: 312-856-0001
Fax: 312-565-3473

Respectfully submitted,

WINSTON & STRAWN LLP

_____/s/ Linda T. Coberly_____
By:  Linda T. Coberly

Beth A. Tagliamonti
(btagliamonti@winston.com)
Ruth A. Braun (rbraun@winston.com)
WINSTON & STRAWN LLP
200 Park Avenue
Ph: 212-294-6700
Fax: 212-294-4700

Bruce R. Braun (bbraun@winston.com)
Catherine W. Joyce (cjoyce@winston.com)
Linda T. Coberly (lcoberly@winston.com)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700

*Attorneys for Grant Thornton LLP*

11