UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

| | | |
|---|---|---|
| IN RE: REFCO INC. SECURITIES LITIGATION | : | 07 MDL 1092 (JSR) |
| _____ | : | |
| THOMAS H. LEE EQUITY FUND V, L.P., | : | |
| THOMAS H. LEE PARALLEL FUND V, L.P., | : | |
| and THOMAS H. LEE EQUITY (CAYMAN) | : | |
| FUND V, L.P. , | : | 07 Civ. 8663 (JSR) |
| | : | |
| Plaintiffs/Counterclaim Defendants | : | |
| | : | |
| v. | : | |
| | : | |
| GRANT THORNTON LLP, | : | |
| | : | |
| | : | |
| Defendant/Counterclaim Plaintiff. | | : |

_____x

REPORT AND RECOMMENDATION OF THE SPECIAL MASTER
ON THL'S MOTION FOR SUMMARY JUDGMENT ON GRANT THORNTON'S
COUNTERCLAIM

Plaintiffs/Counterclaim Defendants (collectively "THL") brought an action against Defendant/Counterclaim Plaintiff Grant Thornton, LLP, ("GT") for damages resulting from THL's purchase of a 57% interest in Refco in a leveraged buyout (LBO). THL alleged that GT was liable for issuing audit opinions of Refco's financial statements that did not disclose the fraud at Refco. Judge Lynch dismissed the negligence-based claims, but denied the motion to dismiss THL's claims for fraudulent misrepresentation and aiding and abetting fraud. GT moved for summary judgment on the fraudulent misrepresentation and aiding and abetting fraud claims. In a Report and Recommendation dated March 28, 2011, the Special Master recommended that GT's motion for summary judgment be denied.

GT has interposed a Counterclaim against THL, alleging that it was injured by having to defend claims brought against GT, which GT claims were caused by THL's aiding and abetting the

1

Refco fraud.[1]

*For reasons discussed below, THL's motion for summary judgment on the Counterclaim should be granted in part and denied in part.*

### I. Factual Background

This action is another product of the collapse of Refco. The fraud surrounding Refco has already been chronicled in a number of R and R's entered by the Special Master, including those in *Krys v. Sugrue* and *Kirschner v. Bennett*– and most recently in the R and R on Grant Thornton's motion for summary judgment in this matter. Familiarity with those R and R's is presumed, and the factual background set forth in the R and R on Grant Thornton's motion for summary judgment are specifically incorporated herein by reference.[2]

The particular facts and allegations relevant to GT's Counterclaim are set forth in the Counterclaim Complaint and in GT's Memorandum in Opposition to the Motion for Summary Judgment. Briefly stated, the Counterclaim Complaint alleges that: 1) THL learned about the Refco fraud during its due diligence for the LBO, ¶¶ 25-49; 2) After the LBO, THL controlled Refco and had full access to its books and records, ¶¶ 50-71; 3) After the LBO, Refco executed Engagement Letters essentially requiring that GT be informed of fraud or suspected fraud, ¶¶ 72-84; 4) THL failed to inform GT of the fraud of which it was aware, including fraudulent statements in the IPO documentation, ¶¶ 85-131; 5) GT, unknowing of the fraud, issued audit statements that were used to promote the fraud, particularly the IPO, which allowed the Refco fraudsters to cash out, ¶¶ 132-141; and 6) through these acts THL substantially assisted the Refco fraud, adversely affecting GT's ability to perform its audits, causing GT to have to defend itself in lawsuits related to the Refco fraud, ¶ 169.

---

[1] The Counterclaim actually contains five claims for relief: 1) aiding and abetting fraud; 2) fraud; 3) negligent misrepresentation; 4) breach of contract; and 5) contribution. But in its Memorandum in Opposition to THL's Motion for Summary Judgment, p.2, n.1, GT declares as follows:

> Grant Thornton has determined that it will not pursue the counterclaims for fraud, negligent misrepresentation, and breach of contract and will not seek to re-assert them at a later date. The single claim for aiding and abetting fraud is sufficient by itself to support Grant Thornton's entire damage claim.

So Claims Two, Three and Four should be dismissed with prejudice. As to Claim Five for contribution: the parties dispute whether the claim for contribution should be dismissed with or without prejudice. The question of the proper disposition of Count Five is discussed *infra*.

[2] Abbreviations used in the prior R and R's are incorporated herein.

GT's Memorandum in Opposition casts the argument in a different way. It focuses mainly on THL's conduct in engineering the IPO. Briefly stated, the Memorandum in Opposition (with citation to GT's Rule 56.1 statements) avers that: 1) THL ignored warning signs about Refco before the LBO, but nonetheless took control of Refco, pp. 2-5; 2) Aware of the likelihood of fraud, and becoming moreso after the LBO, THL nonetheless rushed ahead to the IPO, pp.6-9;[3] 3) The IPO would not have occurred without the efforts of THL, and THL reaped substantial financial benefits from the IPO, pp. 10-11; and 4) GT was drawn into the flood of litigation after the IPO and the disclosure of the Refco fraud, pp. 12-13.

## II. Legal Standards for Summary Judgment.

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of demonstrating the absence of a material factual question, and as such, "always bears the initial responsibility of . . . identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on a summary judgment motion the court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir.2002).

When the moving party has asserted facts showing that it is entitled to summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial, and cannot rest on conclusory allegations or denials of the movant's submissions. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir.2002). In considering a motion for summary judgment, a court "may rely only on admissible evidence." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir.2004). In sum, in considering whether to grant summary judgment, the court must (1) determine whether a genuine factual dispute exists based on the admissible evidence in the record; and (2) determine, based on the substantive law at issue, whether the fact in dispute is material.

## III. THL's Arguments for Summary Judgment on the Aiding and Abetting Claim.

GT asserts three separate arguments in support of its summary judgment motion on the

---

[3] These allegations track those made by the Refco Trustee in *Kirschner v. THL*, a case that has been settled.

aiding and abetting claim. Specifically, GT contends as follows:

     1. THL did not substantially assist a fraud on GT, because THL did not play any role in helping Refco to hide the RGHI receivable from GT. GT's argument that but for THL, there would have been no IPO is insufficient to establish proximate causation of a fraud on GT.

     2. THL did not know or consciously avoid knowing about any fraud on GT.

     3. Even if THL substantially assisted the fraud, GT cannot recover legal expenses it has incurred in defending claims against it.

     These arguments will be taken in turn.

**A. Substantial Assistance**

     THL contends that GT's IPO-related claim is essentially unrelated to any fraud on GT, because the IPO did not cause GT to issue incorrect audits due to fraudulent statements made by Refco regarding the RGHI receivable or the Round Trip Loans.

     Given that assumption, THL's substantial assistance argument is off the mark. Even if THL did nothing to assist the hiding of the RGHI receivable or the Round Trip Loans, there remains at a minimum a question of fact as to whether the IPO was fast-tracked and substantially assisted the Refco fraud. The IPO was the means used by the fraudsters to cash out significant portions of their investments before the house of cards that was Refco would fall down. Hiding the RGHI receivable was the fraud, but the IPO was the goal for the fraud, the endgame. There's not much point in a fraud unless you are trying to get something out of it; here the Refco fraudsters intended to use the IPO to get something substantial out of the fraud.

     New York law defines "substantial assistance" to exist where a defendant "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed." *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, 1999 WL 558141, at *8 (S.D.N.Y.). It is true that THL did nothing to further the Refco fraud at the time it began, but there is a fact question as to whether its participation in the IPO furthered the fraud as it existed at that time. By definition aiding and *abetting* does not require a third party to have been active when the fraud was hatched. The "critical test" for substantial assistance is whether the third party's conduct "made a substantial contribution to the perpetration of the fraud." *Pension Comm. of Montreal Pension Plan v. Banc of Am. Secs., LLC,* 652 F.Supp.2d 495, 511 (S.D.N.Y. 2009). Certainly engineering a major transaction to allow the fraudsters to cash out constitutes a "substantial contribution to the perpetration" of the Refco fraud. As the courts have noted, substantial assistance "can take many forms." *Primavera Familienstifung v. Askin*, 130 F.Supp.2d 450, 511 (S.D.N.Y.2001). THL cites no case in which a defendant who substantially contributed to an ongoing fraud was held not liable just because it did not participate in the fraudulent statements when they were made.

THL argues that its actions at most constituted "but-for" causation.[4] But GT has done more than show "but for" causation. GT has certainly raised a question of fact on substantial assistance by citing evidence under which a jury could find that THL pressed forward with the IPO by securing deal counsel, conducting financial modeling, and spearheading the "road show." GT Rule 56.1 Statement of Additional Facts at ¶¶ 122-28. THL had a controlling interest in Refco during the preparations for the IPO, and GT presents sufficient evidence to raise a jury question on THL's ability to control Refco's business decisions leading up to the IPO. Id. at ¶8.

THL argues that its representatives at Refco merely signed off on the IPO, and that at any rate their efforts as Refco insiders were not attributable to THL. But GT has at the very least presented a question of fact on 1) whether the representatives did more than merely sign off on the deal; 2) whether THL acting independently engineered the IPO; and 3) whether the acts of the insiders appointed by THL were attributable to THL. A fact question as to any one of these points is sufficient to withstand a motion for summary judgment on the question of substantial assistance.[5]

Accordingly, summary judgment should not be granted on Claim One for any failure to raise a question of fact as to substantial assistance.

**B. Aiding and Abetting — Scienter.**

THL argues that GT has failed to raise a question of fact as to whether THL knew about or consciously disregarded the Refco fraud. To prove a claim for aiding and abetting a fraud, the plaintiff must show "knowledge of the violation by the aider and abettor." *Chemtex, LLC v. St. Anthony Enterprises, Inc*. 490 F.Supp.2d 536, 546 (S.D.N.Y.,2007). Thus for the scienter aspect of the claim it is not enough to have conducted an imprudent IPO. GT must raise a question of fact as to whether THL, in propelling the IPO, knew about (or consciously disregarded) the Refco fraud.

---

[4] The substantial assistance standard requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated. *Kolbeck v. LIT America*, 939 F.Supp.240, 249 (S.D.N.Y..1996). "But-for" causation is insufficient; aider and abettor liability requires the injury to be a "direct or reasonably foreseeable result of the conduct of the complained-of conduct." Id. Quoting *Morin v. Trupin,* 711 F.Supp. 97, 112 (S.D.N.Y. 1989).

[5] The parties argue about the meaning of cases where defendants conducted clearing house functions and other basic financial transactions. *See, e.g., Cromer Fin. Ltd v. Berger,* 137 F.Supp.2d 452 (S.D.N.Y. 2001) (clearing broker's failure to enforce margin requirements is not substantial assistance). But engineering an IPO is nothing like a simple clearing of a transaction. Rather it is managing an elaborate series of transactions that operated in this case as a vehicle for the fraudsters to cash out.

Pursuant to prior rulings of the Special Master, affirmed by Judge Rakoff, the knowledge standard for aiding and abetting can be satisfied by a (virtually equivalent) showing of conscious avoidance.[6]

Determining scienter is ordinarily a fact-intensive question and is thus an unlikely candidate for summary judgment. See *Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529, 538 (2d Cir. 1999) (noting that the Second Circuit "has been lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences.").

In the Report and Recommendation on GT's motion for summary judgment in this case, the Special Master considered the evidence of what THL knew and when it knew it, albeit in a slightly different context: whether THL had or court have had enough information so that it could not reasonably rely on GT's audits. GT argued that "there is no genuine issue of material fact with regard to the element of justifiable reliance." Memorandum in Support of Summary Judgment at 17. The Special Master noted that the question of reasonable reliance "typically turns on plaintiff's knowledge, or access to knowledge, at the time the alleged misrepresentations were made." (Quoting *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F.Supp.2d 105, 118 (S.D.N.Y.2008).

The Report and Recommendation on GT's motion for summary judgment found that there was a question of fact as to whether THL could not reasonably have known about the Refco fraud by the time of the LBO. But it posited that there might have come a time after THL took control that it learned everything it needed to know about the RGHI receivable:

> GT has a point, however, that there might be an intervening event to cut the chain of causation between the fraudulent inducement and fraudulent retention claims in this case. As GT notes, after the LBO THL was a 57% owner of Refco. And THL's argument that Schoen is qualified to testify as a lay witness about damages is essentially a concession that Schoen — not to speak of the other directors appointed by THL — exercised substantial control over, and had substantial knowledge about, Refco. Justifiable reliance is a more difficult proposition for the holding claim because after the LBO, THL would likely have had access to more information pertinent to the Refco fraud, and so arguably less justification for relying on GT's audit statements.[7]
>
> Following through on GT's argument, it could be concluded that there was a point in time after the LBO and before the fall of Refco that THL either had or could reasonably have discovered enough inside information so that it could no longer justifiably rely on GT

---

[6] See the R and R in Kirschner v. Bennett (Private Actions Trust) dated June 3, 2010 (affirmed by Judge Rakoff), at 31-32.

[7] That analysis is clouded, however, by testimony of Trosten and Maggio about extensive efforts to continue hiding the truth from THL after the LBO.

audit statements. But assuming there was such a point, when was it? GT makes no attempt to pinpoint such a time, and it is clear that determination of when, and whether, THL uncovered enough information on its own after the LBO is a quintessential jury question.[8]

In sum, the Special Master — drawing inferences in favor of THL — concluded that there was a question of fact on whether THL discovered the Refco fraud in the period between the LBO and the IPO. On *this* summary judgment motion, all inferences are drawn in favor of GT. Given that 1) the Special Master has already analyzed the factors supporting THL's knowledge and found it a close question, especially in the period after the LBO; 2) disputes over scienter are ordinarily questions of fact; and 3) inferences are to be drawn in favor of the party alleging scienter, it is eminently reasonable to conclude that there is a question of fact as to THL's knowledge or conscious disregard of the Refco fraud between the time of the LBO and the IPO.

It is true that the test for reasonable reliance is not precisely the same as that for aiding and abetting. Reliance might be unreasonable when the plaintiff *should have known* of the fraud, whereas aiding and abetting requires a showing at least of conscious disregard.[9] But the prior Report and Recommendation found that there was a question of fact as to whether THL became *aware* of the Refco fraud sometime after it took control of Refco. While that finding was in the context of a discussion of reasonable reliance, it is equally applicable to the scienter required for aiding and abetting.

Not to belabor the point, but GT has presented sufficient evidence to raise a question of fact on THL's scienter. To summarize:

● The "deep throat" tip — about Refco's prior history of transferring trading losses to park them off the books — while not sufficient to create a jury question on scienter, is at least probative of THL's awareness of Refco's shady recordkeeping activity. Further inferences in GT's favor can be drawn by the evidence that THL did little to investigate the tip.[10]

● Arthur Levitt, former chairman of the SEC, told THL before the LBO that Refco had a

---

[8] Report and Recommendation dated March 28, 2011, at 26.

[9] *See Arfa v. Zamir,* 76 A.D.3d 56, 905 N.Y.S.2d 77, 79 (1st Dept. 2010) (plaintiff cannot rely on fraudulent misrepresentations if it "has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means.").

[10] *See* GT's Rule 56.1 Statement of Additional Facts ¶¶ 14-32. In the R and R on GT's motion for summary judgment, the Special Master found that the deep throat tip was not enough to preclude a question of fact on whether THL could have reasonably relied on GT's audits. But that certainly does not mean that the tip is irrelevant to what THL knew about the Refco fraud, especially when all inferences must be drawn against THL on this motion.

reputation as a "pump and dump" operation.[11]

● A potential co-investor in Refco declined to participate because of Refco's shady reputation.[12]

● After the LBO, THL learned that members of Refco's senior management lied about their pre-LBO compensation by failing to disclose lucrative profit-sharing agreements.[13]

● After the LBO, THL learned that Bennett had negotiated an employment agreement with Maggio — one of the main shakers in the Refco fraud — that excluded illegal conduct from the definition of termination for cause.[14]

● Bennett informed THL that a $500 million distribution would be paid to Bennett and the other Refco insiders, and THL essentially had no idea where that excess cash could be legitimately found in the business.[15]

● THL learned that Refco was replacing its tax accountant, Ernst & Young, with a small and relatively unknown firm, and an inference can be derived that THL deliberately failed to investigate this red flag.[16]

The above factors have a substantial cumulative effect. But most important is the reasonable inference that if your representatives have control over a corporation, it is logical to assume that you will find the skeletons in the closet — especially a skeleton as large as the multimillion dollar related party receivable parked at RGHI and papered over by Round Trip Loans. That logical inference — together with all the factors listed above — is enough at the very least to create a jury question on whether THL knew about or consciously disregarded the Refco fraud during the time between the LBO and IPO.

Accordingly, summary judgment should not be granted on Claim One for any failure to raise a question of fact as to scienter.

---

[11] GT's Rule 56.1 Statement of Additional Facts at ¶129.

[12] Id. at ¶130.

[13] Id. at ¶¶ 61-70.

[14] Id. at ¶¶ 73-75.

[15] Id. at ¶¶ 93-96.

[16] Id. at ¶¶ 80-86.

### C. Recovery of Legal Expenses Incurred as the Result of a Fraud

GT argues that under New York law, a party brought into litigation because of the wrongful act of a third party is entitled to recover from that party "the reasonable value of attorneys' fees and other expenses thereby suffered or incurred." Memorandum in Opposition at 20 (Quoting *Coopers & Lybrand v. Levitt,* 52 A.D.2d 493, 496, 384 N.Y.S.2d 804 (1st Dept. 1976)).[17] But the doctrine asserted by GT is a narrow one. The court described the limits of the doctrine in *Coopers & Lybrand:*

> Counsel fees and the legal expenses necessarily incurred in carrying on a law suit are not generally considered items of expense recoverable as general or special damages *(Miss Susan, Inc. v. Enterprise and Century Undergarment Co.*, 270 App.Div. 747, 748, 62 N.Y.S.2d 250, affd. 297 N.Y. 512, 74 N.E.2d 461). . . . A well recognized exception to the rule holds: "If, through the wrongful act of his present adversary, a person is involved in earlier litigation with a third person in bringing or defending an action to protect his interests, he is entitled to recover the reasonable value of attorneys' fees and other expenses thereby suffered or incurred." (citations omitted) (*Shindler v. Lamb*, 25 Misc.2d 810, 812, 211 N.Y.S.2d 762, 765, *affd.* 10 A.D.2d 826, 200 N.Y.S.2d 346, *affd.* 9 N.Y.2d 621, 210 N.Y.S.2d 226, 172 N.E.2d 79). Such expenses should be reasonable and the natural and necessary consequences of the defendant's acts.

52 A.D. 2d at 497.

Notably, in *Coopers & Lybrand* the plaintiff was not permitted to recover legal expenses because it was "not an instance of litigation with a third party" and so the plaintiff failed to demonstrate that it fell "within the exception to the general rule." Id. Coopers & Lybrand sought recovery from defendants who instituted three suits against it for overstating the net worth of a company. Coopers & Lybrand claimed that it relied on fraudulent information from the defendants in overstating the net worth. The court explained that "Lybrand asserts that these defendants instituted or prosecuted the three suits against it" so "this obviously is not an instance of litigation with a third party and Lybrand fails to demonstrate that it falls within the exception to the general rule."Id. [18]

---

[17] The parties' dispute over whether legal expenses can be recovered is purely a legal question. No inferences are to be derived in GT's favor.

[18] GT cites *Westport Marina, Inc. v. Boulay,* 2010 WL 1223238, at *13 (E.D.N.Y.), but the discussion of attorney fee recovery in that case is both tentative and the purest of dictum. *Fugazy Travel Bur., Inc. v. Ernst & Ernst,* 31 A.D.2d 924, 825, 298 N.Y.S.2d 519 (1st Dept. 1969), is also dictum — moreover the underlying facts are not stated so it is impossible to tell whether the claim for fees was brought against a third party.

There are a few cases, however, in which courts have granted recovery of litigation expenses when a defendant's wrongdoing led to the plaintiff's being sued in a separate litigation. Thus, in *Central Trust Co., Rochester v. Goldman*, 70 A.D.2d 767, 417 N.Y.S.2d 359, 361 (4th Dept. 1979), the plaintiff alleged that the defendant, as attorney for one Dyna Mech Sciences, Inc., advised the plaintiff, Dyna Mech's transfer agent, to transfer 220,000 shares of the corporation's stock and to do so without the restrictive investment legend required by federal securities laws appearing on the stock. The plaintiff made the transfer as advised and subsequently had to defend itself in an action brought by third parties who had sustained damages relying on the fact that the stock was freely transferable. The court held that the plaintiff could recover the attorney fees expended in the lawsuit brought by third parties, relying on the "well recognized exception" that grants recovery when "the damages are the proximate and natural consequence of defendants' tortious act which requires plaintiff to defend or to bring an action against a third party." The court found that the plaintiff's attorney's fees in defending itself in the third-party action were "a proximate and natural consequence of defendants' alleged tortious conduct and if plaintiff proves its case of fraud against defendants, it is entitled to recover the attorney's fees it incurred in defending itself in the action." Id.

The facts of *Goldman* in many respects track the facts in the instant case — GT defends itself in actions against third parties who claim that GT acted wrongfully, while GT contends that it was itself given fraudulent information. But GT's right to recover under the principle applied in *Goldman* is substantially muddled for at least five reasons.

*First,* some of the case law on this subject seems to require more than just wrongdoing that leads to the plaintiff having to litigate against third parties. To wit:

● Some cases seem to hold that in order to recover attorney fees in such matters, the plaintiff must prove that the wrongdoer acted with an intent to impose the burden of attorney fees on the plaintiff. *See Harradine v. Board of Sup'rs of Orleans County*, 73 A.D.2d 118, 425 N.Y.S.2d 182, 186 (4th Dept. 1986) (a plaintiff can recover expenses from litigation with a third party if the defendant "intentionally sought to inflict economic injury on him by forcing him to engage legal counsel").

● Some cases seem to hold that expenses from litigation with third parties cannot be recovered if that is the only element of damages. *See Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland,* 763 F.Supp. 28, 33 (S.D.N.Y.1991):

[U]nder New York law, "[d]amages attributable solely to the existence of litigation are clearly insufficient to sustain the necessary element of damages" in a fraud claim. *Raymond Corp. v. Coopers & Lybrand*, 105 A.D.2d 926, 482 N.Y.S.2d 377, 379 (3d Dep't 1984). F & D's reliance on *Fugazy Travel Bureau, Inc. v. Ernst & Ernst,* 31 A.D.2d 924, 298 N.Y.S.2d 519 (1st Dep't 1969), a case involving allegations of money damages resulting from stock fraud, in addition to a claim for attorneys' fees, is therefore misplaced.

10

But in the end these cases do not preclude the award of expenses from litigation with third parties where the litigation was caused by the defendant's wrongdoing. Cases like *Goldman* do establish the basic legal proposition for such a recovery. So while the New York law is not a model of clarity, there is sufficient case law to establish a cause of action for the type of damages claimed by GT.[19]

***Second,*** and most important, Second Circuit case law is hostile toward claims for litigation expenses for litigation in which *both the plaintiff and the alleged wrongdoer are parties*. GT and THL were co-defendants or opposing parties in six of the eight cases for which GT seeks legal expenses, and THL relies on Second Circuit authority in arguing that GT cannot recover from THL for expenses incurred in those six cases.[20]

---

[19] *Goldman* and the cases cited therein rely on the Restatement of Torts. See Restatement of Torts Second § 914(2):

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Nothing in the Restatement limits the rule to cases in which other damages are alleged or where the plaintiff proves that the defendant intended to harm him through incurring of litigation expenses.

[20] See GT's Rule 56.1 Statement of Additional Facts ¶ 162, listing the eight cases for which GT is seeking recovery for litigation expenses. Below is a list of those cases setting forth the THL/GT party relationship in each:

1. *In re Refco Inc., Securities Litigation,* 05-cv-8626 (co-defendants)

2. *Kirschner, as Trustee of the Refco Litigation Trust v. Grant Thornton LLP, et al.*, 07-cv-11604 (THL not sued by the plaintiff)

3. *Global Management Worldwide Ltd. v. Bennett, et al.*, 06-cv-643 (co-defendants)

4. *VR Global Partners, L.P., et al. v. Bennett, et al.,* 07-cv-8686 (co-defendants)

5. *Thomas H. Lee Equity Fund V, L.P., et al. v. Grant Thornton LLP,* 07-cv-8663 (the present case in which THL and GT are opposing parties)

6. *Kirschner, as Trustee of the Refco Private Actions Trust v. Bennett, et al.,* 07-cv-8165 (THL not sued by the plaintiff, but GT has impleaded THL, the consequences of which are

The Second Circuit authority is *Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305 (2d Cir. 1986). Goldberg was a surgeon who was persuaded by Mallinckrodt to use a dye on two patients. Mallinckrodt falsely represented that the dye had no serious side effects. The patients suffered severe side effects from the dye. One sued Goldberg. The other sued Mallinckrodt. Each defendant impleaded the other. Goldberg then sued Mallinckrodt in a separate action for, among other things, the expenses incurred in defending the patients' malpractice actions.

The *Goldberg* court noted the exception under New York law to the general rule that litigation expenses are not recoverable: "where the litigation is caused by the wrongful act of a third party, the person is entitled to recover from the third party the reasonable value of attorneys' fees and other expenses thereby suffered or incurred." Id. at 309 (internal quotation omitted). But it agreed with Mallinckrodt "that the exception does not apply when both parties were parties in the prior litigation." Id..[21] The court observed that all the cases applying the exception "involve circumstances where the first party's wrongful conduct . . . exposed another [the plaintiff] to litigation with a third party . . . in which the first party was not involved."

Why should the exception not apply when the plaintiff and the alleged wrongdoer are parties in the litigation for which expenses are sought? The court explained as follows:

> Where the first party is actually in the litigation, the applicability of the exception to the general rule on attorney's fees is very doubtful. The first party in such circumstances will in all probability bear the laboring oar in defending the claim, and other parties such as Dr. Goldberg are free to assert whatever claims they have against the former, thereby disposing of all relevant claims in one action. We are most reluctant to extend this exception so as to authorize a second round of litigation over costs between parties who have already litigated the underlying claims.

Id.

---

discussed in text below.)

7. *Krys v. Sugrue, et al.,* 08-3086 (co-defendants)

8. *Capital Management Select Fund Ltd., et al. v. Bennett, et al.*, 08-cv-9810 (co-defendants)

[21] *See also Coopers & Lybrand*, 52 A.D.2d at 496-97, 384 N.Y.S.2d at 807 (refusing to apply exception where damage claim was for fees and expenses associated with defense of actions brought by present defendants, not third parties).

The rationales expressed by the court — even assuming they are good ones — would not seem to be applicable to the case at bar. There is no indication that THL was taking "the laboring oar" in defending the claims in any of the cases in which the parties were joined. Nor is it apparent that it would have been any more efficient for GT to bring a claim for expenses against THL in each of the actions in which they were both involved. The *Goldberg* premise is akin to the rationale for claim preclusion — related claims should be brought in a single case. But in this MDL it would seem more efficient to litigate the claim for litigation expenses all at one time, in this separate action solely between the two parties — rather than seriatim in cases involving third parties who would not at all be interested in those claims.

The weakness of the rationales in *Goldberg* caused Judge Brieant to question that case in *Vicinanzo v. Brunschwig & Fils, Inc.,* 739 F. Supp. 891, 895 (S.D.N.Y. 1990). Judge Brieant responded to the *Goldberg* ruling in the following passage:

> We can conceive of no reason why New York law should be interpreted in this fashion. Why should B & F's right to recover legal fees from New England depend on whether plaintiffs have elected to bring two separate actions or a single consolidated suit? Any suggestion that B & F has let New England "bear the laboring oar" in this litigation simply cannot be supported by the record in this case. Both B & F and New England have adopted litigation postures consistent with their adverse interests, and at no time has B & F been content to let New England carry the burden of defending against Mrs. Vicinanzo's claims.
>
> Nor are we persuaded by the argument that parties to a single litigation who are free to litigate "underlying claims" against each other should be barred from engaging in a "second round of litigation over costs." *Goldberg,* 792 F.2d at 309. This argument misapprehends New York law, for the recovery of legal expenses incurred in defending against third party claims never involves what is traditionally regarded as "litigation over costs." Rather, it involves the assertion of an "underlying claim" — a direct cause of action for the recovery of what might be called damages for exposure to litigation. Thus, if New England's unlawful conduct did in fact expose B & F to undeserved litigation, B & F should be entitled to recover its legal expenses regardless of whether New England is a party to the same lawsuit.

Id. at 895-896.

GT understandably relies heavily on Judge Brieant's opinion in *Vicinanzo*. But in the end the opinion, while persuasive, doesn't come to much in terms of stare decisis. Judge Brieant did not actually hold that the action for litigation expenses could be brought.[22] So the opinion is dictum —

---

[22] See Id.: "At present, however, we need not rule on the question of whether B & F is precluded under Goldberg from suing for legal expenses incurred in defending against Mrs.

13

and dictum from a district court questioning a circuit court's opinion is a very thin reed on which to rest a claim for damages.

The Special Master is most reluctant to recommend a result that conflicts with a Second Circuit holding, even if the rationale expressed in the opinion is questionable in general, and definitely inapplicable to the case at bar. The Special Master finds Judge Brieant's critique persuasive, but it is not the role of the Special Master to find a Second Circuit opinion inapplicable because its rationales may be spotty or not relevant to a particular set of facts. That kind of decision is above the Special Master's pay grade; it is, respectfully, a question for the Court.

***Third,*** the Settlement Order in the Securities Class Action prohibits GT from bringing "any Barred Claims against any person or entity" in any court. (Settlement Order ¶ 11(c), Ex. B to Ex. 21 of the Fawcett Declaration). This bar order was entered pursuant to the terms of the Settlement Agreement between GT and the Securities Class Action Plaintiffs. Paragraph 35 of the Settlement Agreement specifically provides that the final judgment and order of dismissal contain an order that

> permanently bars, enjoins, and restrains GT from commencing, prosecuting, or asserting any Barred Claims against any person or entity, other than a person or entity whose liability to the Settlement Class has been extinguished pursuant to this Settlement, whether as claims, cross-claims, counterclaims, third-party claims or otherwise, and whether asserted in the Action or any other proceeding, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere . . .

(Fawcett Declaration Ex. 21 ¶ 35)

"Barred Claims" are defined in the Securities Class Action Settlement Agreement as "any claim for contribution or indemnity . . . or any other claim where the alleged injury is the claiming person's actual or threatened liability to Lead Plaintiffs or the Settlement Class . . . that arise out of or relate to the allegations of the [Securities Class Action] Complaint." Id. at ¶ 1(c).

A fair reading of the Order and Settlement Agreement leads to the conclusion that GT's claim for its litigation expenses in the Securities Class Action is barred. The gravamen of the Securities Class Action Complaint is that the investors were victims of a fraudulent IPO — the very IPO that is the lynchpin of GT's counterclaims against THL in this case. Accordingly, even if the New York exception for recovery of litigation expenses would otherwise apply, the bar order and Settlement Agreement prevent the recovery of such expenses related to the Securities Class Action.

---

Vicinanzo's claims. For purposes of a motion under Fed.R.Civ.P. 12(c), the record before this Court includes only the parties' rather conclusory pleadings."

*Fourth,* even if litigation expenses caused by another's wrongdoing can be recovered when the expenses are incurred in an action in which the wrongdoer is also a party, that rule would not permit recovery of monies expended *to recover those very expenses.* Allowing GT to recover litigation expenses incurred in bringing its own claim for expenses would contravene the basic principle that each party to an action for damages pays its own attorney fees. GT is essentially saying: "THL committed a wrong and hurt us, and we want attorney fees for having to go to court and get the remedy for the wrong." But that is no different from any other plaintiff arguing that recovery on a wrong should include the attorney fees expended to get the recovery. There shouldn't be there isn't an exception to the basic American Rule simply because the underlying claim itself is for litigation expenses — if that made a difference, then a plaintiff damaged by having to pay litigation expenses would be better off than plaintiffs suffering any other kind of damage. That makes no sense. The American Rule on fees plainly prohibits recovery of monies expended in a litigation to recover for an underlying wrong. See Restatement of Torts, Second, §914(1) ("The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation."); *Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305, 309 (2d Cir. 1986) ("The general rule of course is that attorney's fees are not recoverable as damages."). Accordingly, GT cannot recover for litigation expenses attributable to pursuing its counterclaim in this case.

*Fifth,* even if *Goldberg* is wrong, GT is not entitled to recover attorney fees for defending against THL's claim in this action. As to these expenses, GT must be arguing that because THL aided and abetted a fraud by pushing the IPO, GT was drawn into a suit *by THL.* That mind-twisting proposition falters not only for an obvious lack of proximate cause, but also because, as *Coopers & Lybrand, supra,* notes, the exception to the rule of non-recovery of litigation expenses only applies to monies expended in actions in which a third party is involved.[23]

*Conclusion on Legal Doctrine:*

Despite the fact that the rationale of *Goldberg* is both questionable on the merits and not applicable to this case, the *holding* is directly applicable: litigation expenses in cases brought by third parties are not recoverable if the wrongdoer is included in that case.[24] There is no case law

---

[23] *Coopers & Lybrand*, 52 A.D.2d at 496-97, 384 N.Y.S.2d at 807.

[24] The ruling in *Goldberg* is to be precise an alternate holding. The court held that Goldberg could not recover litigation expenses because Mallinckrodt was a party in the cases for which Goldberg sought recovery. The court also held that even if the exception to the bar on attorney fees were applicable, Goldberg could not benefit from it because he was not seeking attorney fees — he was seeking compensation for his personal time spent defending the litigations. The court found those damages were not within the exception. *See* 792 F.2d at 309 ("Even if the exception did apply, however, the damage claimed by plaintiff does not fall within the scope of recovery allowed under the third party exception. Including personal time spent defending litigation in the phrase "other expenses" would be an excessively broad reading of that

15

holding to the contrary. The Special Master has raised questions about the rationale of *Goldberg* and its application to this case. But it is not the Special Master's role to find that the Second Circuit's holding should be rejected or distinguished because while its holding applies its rationale is questionable and inapplicable to this case.

That means that the motion for summary judgment should be *granted* with respect to the claim for relief for expenses incurred in the following actions:

1. *In re Refco Inc., Securities Litigation*, 05-cv-8626 (THL and GT co-defendants)

2. *Global Management Worldwide Ltd. v. Bennett, et al.*, 06-cv-643 (co-defendants)

3. *VR Global Partners, L.P., et al. v. Bennett, et al.*, 07-cv-8686 (co-defendants)

4. *Krys v. Sugrue, et al.,* 08-3086 (co-defendants)

5. *Capital Management Select Fund Ltd., et al. v. Bennett, et al.,* 08-cv-9810 (co-defendants)

6. *Thomas H. Lee Equity Fund V, L.P., et al. v. Grant Thornton LLP,* 07-cv-8663 (the present case in which THL and GT are opposing parties)

7. *Kirschner, as Trustee of the Refco Private Actions Trust v. Bennett, et al.*, 07-cv-8165 (THL impleaded by GT)

It should be noted that dismissing the claim for expenditures incurred in the Private Actions Trust case (number 7 above) brings the problems of the *Goldberg* rule into stark relief, especially as applied to the instant action. *Goldberg* is essentially a claim preclusion case — it does *not* hold that claims for litigation expenses from third-party actions cannot be brought; rather it holds that they cannot be brought in a freestanding action, if the plaintiff had the opportunity to bring the claim in the third party's action because the wrongdoer was joined in that action. Thus, Goldberg was precluded from suing for litigation expenses in a separate action because he could have (and the court says should have) brought that claim in the action in which he impleaded Mallinckrodt. But in this case it makes little sense to tell GT to bring its claim for attorney fees in the Private Actions Trust case, merely because GT has impleaded THL in that case. While that is the precise situation covered by the court in *Goldberg*, that resolution is problematic here, where the Special Master is recommending (as discussed below) that GT should be allowed to pursue a claim for expenses

---

language. * * * None of the New York cases cited supra with respect to this exception holds that lost personal time is recoverable. In the absence of such a holding by the New York courts, we cannot equate litigation expenses, which are clearly recoverable, with time spent away from one's profession."). The fact that the principle from *Goldberg* discussed in text is an alternate holding does not, under the principles of stare decisis, negate its precedential value.

incurred in another action in which THL was not included as a party. The effect of applying *Goldberg* is that GT's claim for expenses will be split in two (or eight). The Court may wish to consider whether the judicial economy values espoused by the *Goldberg* court are more effectively furthered by allowing GT to pursue all its litigation expense claims in this single action now before the Court. Bringing all such claims in this action makes eminent sense when it is recognized that GT's action for attorney fees against THL will be an unwelcome addition to the Private Actions Trust case. That claim is no concern of the Plaintiff in the Private Actions Trust case and will only serve to distract from the claims of the Plaintiff in that case.

Even under *Goldberg,* the motion for summary judgment should be *denied* with respect to the expenses claimed from any case in which THL was not a party. GT has at the least raised a question of fact as to whether those expenses were proximately caused by THL's aiding and abetting the Refco fraud. *See, e.g., Am. Tissue v. Donaldson, Lufkin & Genrette Secs. Corp.,* 351 F.Supp.2d 79, 91 (S.D.N.Y. 2004) ("proximate causation generally remains an issue of fact for the jury").[25]

Thus the motion should be denied as to the claim for relief for expenses incurred in *Kirschner, as Trustee of the Refco Litigation Trust v. Grant Thornton LLP, et al.*, 07-cv-11604.

Finally, if the Court determines that GT can as a legal matter recover expenses for actions in which THL was also a party, it should still grant summary judgment on claims for expenses as to the following matters:

● The Securities Class Action (because the Settlement Agreement and Order bar GT from bringing the action).

● The instant action (because the general rule of no recovery of fees applies to the counterclaim, and there is no third party action that permits recovery for expenses in defending against THL's claim).

**IV. Proper Disposition of the Contribution Claim**

The parties agree that the Fifth Claim for Relief in the Counterclaim — the claim for

---

[25] THL argues in its Reply Brief that summary judgment should be granted because GT has "failed to adduce any actual evidence of its expenses." Reply Brief at 10. This argument is ironic because THL did no more than assert that a lay witness could prove the amount of damages caused by GT's fraud in defending against GT's motion for summary judgment in this very case. The Special Master could take judicial notice of the fact that GT has expended significant resources on litigation expenses in this MDL. And the exact amount of litigation expenses incurred by GT — to the extent they are compensable — should not present any complicated questions of proof at trial.

contribution — should be dismissed. The only question is whether the claim should be dismissed with prejudice. THL argues that dismissal with prejudice is required because otherwise such claims will be litigated in individual cases and THL will be prejudiced.

Dismissal with prejudice would obviously constitute a ruling on the merits that GT could never raise a claim for contribution for any case related to Refco. But such a ruling would be imprudent. It is possible that the contribution claim in one action might be different from the contribution claim in another. For example, GT has recently impleaded THL in what remains of *Kirschner v. Grant Thornton* (the Private Actions Trust case). On review, the allegations in that Third-Party Complaint for Contribution differ at least slightly from the allegations supporting the contribution claim in this case. Also, it stands to reason that the allegations of a contribution claim are dependent on the *plaintiff's* underlying allegations. And it is indisputable that the respective plaintiffs' claims in this MDL vary from case to case (and sometimes within a single case).

Because the contribution claims can vary case to case, it would not be appropriate to make a global ruling on the merits of all of THL's possible contribution claims. This is especially so because it is axiomatic that leave to withdraw should be freely granted unless the defendant can demonstrate substantial prejudice. *Wakefield v. Northern Telecom, Inc.,* 769 F.2d 109, 114 (2d Cir. 1985). Here THL does not suffer prejudice because the contribution claims can be litigated in the other cases to which the claims are pertinent, as might be necessary because the contribution claims may well differ from case to case. Moreover, dismissal without prejudice is especially warranted because — as THL emphasizes on page 20 of its opening brief — it is not clear that all of the possible contribution claims are even ripe at this point. *See Armored Group, LLC v. Homeland Security Strategies, Inc.,* 2009 WL 1110783 (S.D.N.Y.) (contribution claim dismissed without prejudice as premature).[26]

**V. Conclusion**

For the reasons discussed above:

● THL's motion for summary judgment on the First Claim for Relief should be *granted* with

---

[26] THL argues that the contribution claim should be dismissed with prejudice because "GT cannot establish that THL committed a tort against GT." Reply Brief at 10. But as noted above, the Special Master has determined that GT has raised a question of fact as to whether THL aided and abetted the Refco fraud by engineering the IPO while knowing or deliberately disregarding that fraud. At any rate, contribution is dependent not on a tort between two defendants but rather on joint tortfeasor status with respect to the plaintiff – as THL itself recognizes at page 20 of its opening Brief. *See Raquet v. Braun,* 90 N.Y.2d 177, 183, 659 N.Y.S.2d 257 (1997) (contributing party must have had a part in "causing or augmenting" the plaintiff's injury)..

regard to litigation expenses incurred in the seven actions in which THL and GT are both parties — though the Court may wish to consider whether the Second Circuit precedent requiring dismissal of those claims should be applied to this case.

● THL's motion for summary judgment on the First Claim for Relief should in any case be *granted* with regard to litigation expenses incurred in the Securities Class Action.

● THL's motion for summary judgment on the First Claim for Relief should in any case be *granted* with regard to all litigation expenses incurred in the instant action — both THL's claims and GT's counterclaims.

●THL's motion for summary judgment on the First Claim for Relief should be *denied* with regard to litigation expenses incurred in *Kirschner, as Trustee of the Refco Litigation Trust v. Grant Thornton LLP, et al.*, 07-cv-11604. [27]

● The Second, Third and Fourth Claims for Relief should be dismissed with prejudice.

● The Fifth Claim for Relief, for contribution, should be dismissed without prejudice.

Daniel J. Capra
Special Master

Dated: April 10, 2011
New York, New York

---

[27] It should be noted that the Counterclaim Complaint ¶ 64 also refers in passing to GT's expenses incurred in defending regulatory inquiries and proceedings related to Refco's bankruptcy. But neither the Rule 56.1 statements nor the Memorandum of Law refer to those expenses as part of the damages sought. See GT's Additional Statement of Facts at ¶ 162 (referring only to the eight cases in which GT was sued); Memorandum in Opposition at 18 (same). Under these circumstances, GT has not given the Special Master sufficient information with which to determine whether the bankruptcy and regulatory proceeding expenses were proximately caused by THL's wrongdoing, or whether THL could be found to be a party to those proceedings. Consequently, GT has waived its claims for recovery of those expenses, made only in a passing reference in the Counterclaim Complaint.