UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
In re REFCO, INC. Securities Litigation          :  07 MDL 1902 (JSR)
                                                             :
------------------------------------------------------------ x
This document applies to:                          :
                                                             :  **ECF CASE**
THOMAS H. LEE EQUITY FUND V, L.P.,    :
THOMAS H. LEE PARALLEL FUND V, L.P., :
and THOMAS H. LEE EQUITY (CAYMAN)  :  07 Civ. 8663 (JSR)
FUND V, L.P.,                                            :
                                                             :
     Plaintiffs/Counterclaim-Defendants,    :
                                                             :
               v.                             :
                                                             :
GRANT THORNTON LLP,                           :
                                                             :
     Defendant/Counterclaim-Plaintiff.          :
------------------------------------------------------------ x

## GRANT THORNTON LLP'S LIMITED OBJECTION
## TO THE REPORT AND RECOMMENDATION CONCERNING
## THE COUNTERCLAIMS AGAINST TH LEE

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

*Attorneys for Grant Thornton LLP*

## TABLE OF CONTENTS

|  | Page No. |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 2 |
| ARGUMENT | 7 |
| CONCLUSION | 13 |

## TABLE OF AUTHORITIES

**Cases**   Page(s)

*Central Trust Co., Rochester v. Goldman,*
   70 A.D.2d 767, 767, 417 N.Y.S.2d 359, 361 (4th Dep't 1979) .................................. 8

*Coopers & Lybrand v. Levittt*,
   52 A.D.2d 493, 496, 384 N.Y.S.2d 804, 806 (1st Dep't 1976) .................................. 7
   52 A.D.2d at 496-97, 384 N.Y.S.2d at 806-807 ........................................................ 8
   52 A.D.2d at 496, 384 N.Y.S.2d at 806 ..................................................................... 11

*Fugazy Travel Bur., Inc. v. Ernst & Ernst,*
   31 A.D.2d 924, 925, 298 N.Y.S.2d 519, 520 (1st Dep't 1969) .................................. 8

*Goldberg v. Mallinckrodt, Inc.,*
   792 F.2d 305, 309 (2d Cir. 1986) ............................................................................... *passim*

*JP Morgan Chase v. New York Life Ins. And Annuity Corp.,*
   No. 115680/2008, 2009 WL 6019484 (Sup. Ct. N.Y. Cnty. Aug. 19, 2009) ............. 12

*Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP*,
   586 F. Supp. 2d 119 (S.D.N.Y. 2008) ........................................................................ 6

*Shindler v. Lamb,* 25 Misc. 2d 810, 211 N.Y.S.2d 762 (Sup. Ct. N.Y. Cnty.
   1959), *aff'd*, 10 A.D.2d 826, 200 N.Y.S.2d 346 (1st Dep't 1960), *aff'd*, 9
   N.Y.2d 621, 210 N.Y.S.2d 226 (1961) ...................................................................... 8

*Vicinanzo v. Brunschwig & Fils, Inc.,*
   739 F. Supp. 891, 894-95 (S.D.N.Y. 1990) ............................................................... 8
   739 F. Supp. at 895-96 ............................................................................................... 11

*Westport Marina, Inc. v. Boulay,* ___ F. Supp. 2d ___, No. 06 Civ. 5569,
   2010 WL 1223238, at *13 (E.D.N.Y. March 24, 2010) ........................................... 7-8

**Other Authorities**

Restatement (Second) of Torts § 914(2) .......................................................................... 7, 8

Federal Rule of Civil Procedure 14 ................................................................................. 10

**PRELIMINARY STATEMENT**

When TH Lee bought Refco in 2004, it became a Refco insider and assumed control over all aspects of Refco's business. From that point forward, TH Lee was a participant in and beneficiary of Refco's fraud, with Grant Thornton as its primary target. If TH Lee is allowed to take its case against Grant Thornton to trial on the theory that the fraud induced TH Lee's 2004 investment, then Grant Thornton should also be allowed to proceed to trial with its counterclaim against TH Lee for aiding and abetting Refco's fraud *after* the investment.

In his new Report & Recommendation ("R&R"), the Special Master agreed with that conclusion—and properly so. Grant Thornton presented more than enough evidence to raise an issue of fact concerning what TH Lee knew about the fraud and whether it provided assistance. And the Special Master agreed that under New York law, Grant Thornton may pursue damages in the form of legal costs incurred as a result of TH Lee's wrongs.

Grant Thornton objects to the R&R's conclusions in only one narrow respect—though not to its reasoning, which supports Grant Thornton's position in its entirety. TH Lee had argued that Grant Thornton's damages cannot include legal costs for any third-party suit in which TH Lee was also named as a defendant. The Special Master reluctantly agreed, concluding that he was bound to follow the Second Circuit's decision in *Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305, 309 (2d Cir. 1986), and that distinguishing that case would be "above the Special Master's pay grade; it is, respectfully, a question for the Court." R&R at 14. Still, the Special Master acknowledged that *Goldberg*'s reasoning is "questionable in general and definitely inapplicable to the case at bar," as it relies on facts and on assumptions about efficiency that have no relevance here. *Id*. Indeed, as the Special Master observed, "[t]he effect of applying *Goldberg* is that [Grant Thornton's] claim for expenses will be split in two (or [six]). The Court may wish to consider whether the judicial economy values espoused by the *Goldberg* court are more

effectively furthered by allowing Grant Thornton to pursue all its litigation expense claims in this single action now before the Court." *Id*. at 17.

Again, according to the Special Master, whether Grant Thornton's claim for damages should be limited by *Goldberg* "is, respectfully, a question for the Court." *Id*. at 14.  For the reasons articulated here and in the R&R itself (at 9-17), Grant Thornton respectfully urges this Court to distinguish *Goldberg* and to follow the Restatement and the many New York cases that hold that tort damages may include the cost of defending *any* third-party lawsuit that was a natural consequence of the wrongdoer's misconduct.  Under that authority, Grant Thornton's damages may include the legal cost of its defense against all lawsuits by third parties, regardless of whether those lawsuits also included claims against TH Lee.

## BACKGROUND[1]

*Factual Background.*  In the late 1990s, Refco lost hundreds of millions of dollars as a result of large trading losses sustained by its customers.  ¶¶ 2-4.  Rather than recognizing these losses, Refco's management engaged in a massive fraud to cover them up.  The corrupt insiders first transferred the losses, in the form of a receivable, to Refco Group Holdings, Inc. ("RGHI"), an entity owned by Refco CEO Phillip Bennett.  ¶¶ 4, 186, 281.  They then conspired to conceal the receivable through a series of transactions with certain Refco customers.  ¶¶ 5-6, 42.  These transactions were timed such that the RGHI receivable would be removed from Refco's books at the end of each reporting period, and thus it would remain hidden from Refco's auditors.  ¶¶ 6, 38.  Former members of Refco management have conceded that the very purpose of this scheme was to prevent Refco's auditors from detecting the concealed amounts.  ¶¶ 24-25, 37.

---

[1]  For a full recitation of the facts, we refer the Court to Grant Thornton's Rule 56.1 Statement of Undisputed Facts submitted with its Motion for Summary Judgment (cited as ¶ ___) and to Grant Thornton's Rule 56.1 Statement of Additional Material Facts (cited as Add. ¶ ___).

Grant Thornton LLP ("Grant Thornton") was retained by Refco to audit its consolidated financial statements beginning with the fiscal year ending February 28, 2003. ¶ 14. The firm performed audit procedures on Refco's financial statements for 2003 and 2004, culminating in an audit opinion on the consolidated financial statements for each of those years. ¶¶ 15-16.

In August 2004, after spending ten months and nearly $10 million on extensive due diligence of "every aspect of [Refco]'s business," TH Lee[2] acquired the majority of Refco's stock through a leveraged buy-out ("LBO"). ¶¶ 185-86, 190, 216-22, 268. After the acquisition, TH Lee gained control over Refco's board and all aspects of its operations. Add. ¶¶ 2-6.

With TH Lee at its helm, Refco proceeded with an initial public offering. ¶ 280. Refco's fraud was revealed only two months later, when the company disclosed on October 10, 2005 that "it had discovered through an internal review a receivable owed to the Company by an entity controlled by Phillip R. Bennett, Chief Executive Officer and Chairman of the Board of Directors, in the amount of approximately $430 million." ¶ 281. Refco went on to say that "Bennett today repaid the receivable in cash" and that Bennett and senior officer Santo Maggio had both been placed on leave. ¶ 281. Refco also announced that "its financial statements, as of, and for the periods ended, February 28, 2002, February 28, 2003, February 28, 2004, February 28, 2005, and May 31, 2005, taken as a whole, for each Refco Inc., Refco Group Ltd., LLC and Refco Finance, Inc. should no longer be relied upon." ¶ 281. Bennett was arrested the following week. An ensuing crisis of confidence led to a "run" on Refco customer accounts, and Refco filed for bankruptcy protection shortly thereafter. ¶¶ 283, 285.

---

[2] Plaintiffs/Counterclaim-Defendants are Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., and Thomas H. Lee Equity (Cayman) Fund V, L.P., referred to herein collectively as "TH Lee."

Subsequently, Refco insiders Bennett, Maggio, and former CFO Robert Trosten all pled guilty to criminal charges predicated on concealing the truth from Grant Thornton, in addition to numerous other crimes. ¶¶ 19-21. All three openly admitted to an agreement to conceal the truth from Refco's auditors. ¶¶ 20, 24. Additionally, a federal jury convicted insider Tone Grant of conspiracy, one predicate act of which was lying to Grant Thornton. ¶¶ 19-21. Both Trosten and Maggio—the two insiders who gave depositions in the Refco civil litigation—admitted that they lied to Refco's auditors purposefully and repeatedly. ¶¶ 24-25, 116, 155, 179-81.

*History of the Litigation.* After the news of the fraud broke, a variety of lawsuits were filed. Although Grant Thornton was one of the fraud's intended targets, its position as independent auditor drew it into the flood of litigation following the initial public offering and the revelation of the fraud. Add. ¶ 155. Indeed, in today's climate, if a corporate fraud in a public company is disclosed, it is not only foreseeable but virtually guaranteed that the company's outside auditor will be the target of litigation. While TH Lee too was sued in many of these actions, it also went on the offensive, filing a lawsuit against Grant Thornton based on the theory that its August 2004 investment was induced by fraud.

In all, as a result of the Refco fraud, Grant Thornton was named by third parties in no fewer than seven lawsuits. Add. ¶ 162. All but one involve both Grant Thornton and TH Lee as parties (among others), and they have all required (and/or will continue to require) significant costs to defend. The first case was a putative securities class action on behalf of Refco stockholders and bondholders. *See In re Refco Securities Litigation*, No. 05-cv-8626. That case named a variety of defendants, including both TH Lee and Grant Thornton, each of whom has

since reached a settlement.  Setting aside that case and the instant one,[3] the other lawsuits involving Grant Thornton are as follows:

- The case of *Kirschner, as Trustee of the Refco Litigation Trust, v. Grant Thornton LLP, et al.*, No. 07-cv-11604—the one case in which TH Lee was not also a party—was dismissed at the pleading stage and is now concluded, though only after significant and costly proceedings in three different courts.[4]

- Two federal securities fraud cases brought by securities customers of Refco Capital Markets, Ltd. ("RCM"), Nos. 06-cv-643 and 07-cv-8686, named both TH Lee and Grant Thornton, albeit under different theories.[5]  These claims were ultimately dismissed, though they too have required significant costs to defend, with multiple motions as well as an appeal.  TH Lee has recently reached a settlement, leaving the claims against Grant Thornton pending on appeal.

- A tort suit by RCM's securities customers, No. 08-cv-9810, was filed against TH Lee and Grant Thornton in state court and then was removed to this Court.  (TH Lee has settled these claims as well, leaving Grant Thornton to defend the suit.)

- A tort suit filed on behalf of the SPhinX and PlusFunds entities—*Krys v. Sugrue*, No. 08-cv-3086—named both TH Lee and Grant Thornton, among others, and has involved extensive motion practice before the Court and the Special Master.

- The case of *Kirchner, as Trustee of the Refco Private Actions Trust, v. Bennett, et al.*, No. 07-cv-8165, filed on behalf of RCM's foreign exchange customers, did *not* include TH Lee as a defendant, but Grant Thornton recently impleaded TH Lee with a third-party complaint for contribution.

Needless to say, the cost of defending all these actions has been substantial.  Add. ¶165.

Grant Thornton moved to dismiss TH Lee's complaint against it, and its motion was granted in part, given that Grant Thornton owed TH Lee no duty and thus could not be held

---

[3] The Special Master concluded that Grant Thornton could not recover fees and costs either for the securities class action (in light of the specific terms of the order approving Grant Thornton's settlement in that case) or for pursuing counterclaims in or defending the instant case.  R&R at 14-15.  Grant Thornton accepts that conclusion and does not intend to pursue damages for legal costs arising out of either the securities litigation or the instant case.

[4] The Litigation Trustee also sued TH Lee, but he did so in a separate lawsuit.

[5] A third RCM-related federal securities fraud case, *Capital Management Selected Fund Ltd., et al., v. Phillip R. Bennett, et al.*, No. 07-cv-8688, named the TH Lee defendants and various Refco insiders but not Grant Thornton.  It was consolidated with the other RCM-related securities cases on appeal and will also be resolved by TH Lee's recent settlement.

liable for any claim based on negligence.  *See Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP*, 586 F. Supp. 2d 119 (S.D.N.Y. 2008).  The only surviving claims against Grant Thornton in this action are for fraud and for aiding and abetting Refco's fraud.  *See id.*  The Special Master has recommended the denial of Grant Thornton's motion for summary judgment on these claims.  Report & Recommendation, dated March 28, 2011.  Grant Thornton's objection to that recommendation is now pending before this Court.

*Current Report & Recommendation.*  The current R&R relates to counterclaims that Grant Thornton asserted against TH Lee in this action.  For present purposes, the critical counterclaim is for aiding and abetting fraud, based on the theory that TH Lee assumed control of Refco after the LBO and thereafter aided and abetted Refco's fraud.  TH Lee moved for summary judgment, arguing that the facts were insufficient to support a finding in Grant Thornton's favor on the elements of knowledge, substantial assistance, and damages.[6]

After briefing and oral argument, the Special Master recommended denying TH Lee's motion in most respects.  He concluded that Grant Thornton "has at the very least presented a question of fact" with regard to TH Lee's role in pushing forward the initial public offering, which was the ultimate goal and "endgame" for the officers and directors who had masterminded the fraud.  R&R at 5.  Further, he concluded that Grant Thornton had presented evidence and was entitled to inferences that together were "enough at the very least to create a jury question" about TH Lee's knowledge of the fraud after the LBO.  *Id*. at 8.  This included the "reasonable inference that if your representatives have control over a corporation, it is logical to assume that

---

[6] Although Grant Thornton also asserted a counterclaim for contribution, it has agreed to dismiss that counterclaim from this case without prejudice and will assert it in the actions for which Grant Thornton seeks contribution. (For example, Grant Thornton recently impleaded TH Lee on a claim for contribution in the case brought by Kirschner for the Private Actions Trust.) The parties have agreed on that approach, and the Special Master has endorsed it.   R&R at 17-19.

you will find the skeletons in the closet—especially a skeleton as large as the multimillion dollar related party receivable parked at RGHI and papered over by the Round Trip Loans." *Id*. And finally, he concluded that New York law permits Grant Thornton to recover attorneys' fees and other expenses as damages against TH Lee, if it can prove at trial that it incurred those fees and expenses as the natural and necessary consequence of TH Lee's wrongdoing. *Id*. at 9-11 & n.19 (citing cases and Restatement (2d) of Torts §914(2)).

The Special Master recommends granting TH Lee's motion only to the extent that it would narrow the range of lawsuits for which Grant Thornton may pursue damages in the form of attorneys' fees and expenses. *Id*. at 11-12. As relevant here, he concluded that under the Second Circuit's decision in *Goldberg v. Mallinckrodt*, Grant Thornton cannot recover fees or expenses it incurred for any case in which TH Lee was also a party. *Id*. at 11-17. The Special Master reached this conclusion only reluctantly, however, noting that he questions "the rationale of *Goldberg* and its application to this case." *Id*. at 16. Ultimately, the Special Master's recommendation on this issue reflects his limited role. In his view, to find a Second Circuit opinion inapplicable because its rationale is "not relevant to a particular set of facts" would be "above the Special Master's pay grade; it is, respectfully, a question for the Court." *Id*. at 14.

## ARGUMENT

Under New York law, a party brought into litigation because of the wrongful act of a third party "is entitled to recover [from the third party] the reasonable value of attorneys' fees and other expenses thereby suffered or incurred." *Coopers & Lybrand v. Levitt*, 52 A.D.2d 493, 496, 384 N.Y.S.2d 804, 806 (1st Dep't 1976); *accord, e.g., Westport Marina, Inc. v. Boulay*, ___ F. Supp. 2d ___, 2010 WL 1223238, at *13 (E.D.N.Y. March 24, 2010) ("[i]f the alleged wrongful act of the defendant was the occasion of these [attorneys'] fees, and if they are

7

reasonable, a cause of action [for attorneys' fees] does lie.") (quoting *Fugazy Travel Bur., Inc. v. Ernst & Ernst*, 31 A.D.2d 924, 925, 298 N.Y.S.2d 519, 520 (1st Dep't 1969)); *Shindler v. Lamb*, 25 Misc. 2d 810, 211 N.Y.S.2d 762 (Sup. Ct. N.Y. Cnty. 1959), *aff'd*, 10 A.D.2d 826, 200 N.Y.S.2d 346 (1st Dep't 1960), *aff'd*, 9 N.Y.2d 621, 210 N.Y.S.2d 226 (1961).  This principle operates as an exception to the general American rule that precludes the shifting of the costs of litigation.  *See, e.g., Coopers & Lybrand*, 52 A.D.2d at 496-97, 384 N.Y.S.2d at 806-807.

"Under established legal principles, it does not matter whether [the wrongdoer] specifically anticipated that [the complaining party] would be sued . . . and would incur substantial legal costs."  *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 891, 894-95 (S.D.N.Y. 1990).  Instead, the law regards legal costs just like any other element of damage.  If the complaining party incurred attorneys' fees and costs as "a proximate and natural consequence of [the wrongdoer's] alleged tortious conduct and if [the complaining party] proves its case of fraud against [the wrongdoer], it is entitled to recover the attorney's fees it incurred in defending itself in the action."  *Central Trust Co., Rochester v. Goldman*, 70 A.D.2d 767, 767, 417 N.Y.S.2d 359, 361 (4th Dep't 1979).  As the Restatement explains:  "One who through the tort of another has been required to act in the protection of his interests by . . . defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."  Restatement (2d) of Torts § 914(2).

Here, as the Special Master properly concluded, Grant Thornton has raised a genuine issue of fact concerning whether TH Lee's aiding and abetting after the August 2004 LBO—including its role in managing Refco's business, promoting business as usual at Refco, and pushing Refco toward an initial public offering—played a role in exposing Grant Thornton to

costly litigation.  *See* Add. ¶¶ 162-65; R&R at 9-11, 17.  Whether TH Lee will ultimately be required to pay those costs will be resolved at trial.  For purposes of summary judgment, however, Grant Thornton has shown more than enough to take its counterclaim to the jury.  *Id*.

At the same time, however, the Special Master reluctantly found that Grant Thornton would not be able to recover any costs for lawsuits *in which TH Lee was also a party*.  In that respect, the Special Master concluded that he was bound to follow the Second Circuit's decision in *Goldberg v. Mallinckrodt*, Inc., 792 F.2d 305 (2d Cir. 1986).  Defendant Mallinckrodt persuaded a surgeon, Dr. Goldberg, to use a particular dye on two patients, representing that the dye had no serious side effects.  As it turned out, the dye caused serious injury in both patients.  After both Mallinckrodt and Dr. Goldberg faced claims by these patients, Dr. Goldberg filed a separate suit against Mallinckrodt, claiming (among other things) that he should be able to recover from Mallinckrodt the expenses he incurred in defending the plaintiffs' lawsuits.  *Id*.

The *Goldberg* court recognized the New York cases holding that "where the litigation is caused by the wrongful act of a third party, the person is entitled to recover from the third party the reasonable value of attorneys' fees and other expenses thereby suffered or incurred." *Id*. at 309 (quotations omitted).  But the court observed that the cases applying this principle had involved circumstances where the wrongdoer himself had not also been a party to the earlier litigation.  *Id*.  The case before it, in contrast, involved a claim for legal costs for earlier litigation involving *both* Goldberg and Mallinckrodt.  The *Goldberg* court reasoned that "[w]here the [ultimate wrongdoer] is actually in the litigation," he will "in all probability bear the laboring oar in defending the claim," which would make it "very doubtful" that the wrongdoer could *also* be forced to pay the costs of defense as damages in a subsequent lawsuit.  *Id*.  The court also noted

9

the inefficiency of "authoriz[ing] a second round of litigation over costs between parties who have already litigated the underlying claims." *Id*.

In both respects, the facts of this case make *Goldberg* clearly distinguishable. As the Special Master acknowledged, "[t]here is no indication that THL was taking 'the laboring oar' in defending the claims in any of the cases in which the parties were joined." R&R at 13. Indeed, the record is to the contrary. In the two RCM-related federal securities fraud cases currently on appeal, for example, the claims against TH Lee were control person claims under Section 20(a) based on Refco's own conduct as a broker-dealer, and thus they were fundamentally different than the Section 10(b) claims based on alleged misrepresentations by Grant Thornton itself. *See supra* at 5. Further, TH Lee has now settled those cases—along with the state tort case brought by the same plaintiffs—thus leaving Grant Thornton to defend the suits alone. *Id*. The *Krys*/SPhinX cases have involved significant motion practice by counsel for a variety of parties before both the Special Master and this Court, and it is simply inaccurate to say that "the laboring oar" for Grant Thornton has been taken by counsel for TH Lee. And in the case brought by Marc Kirschner as Trustee of the Private Actions Trust, TH Lee was only recently impleaded (shortly after Grant Thornton filed its Answer, consistent with Federal Rule 14) and, accordingly, has played no role at all in defending Grant Thornton.

Further, in this instance it would be far *less* efficient to require Grant Thornton to assert its claims for legal costs against TH Lee in each of the other lawsuits individually. Here, Grant Thornton is asserting a single tort claim that seeks damages in the form of legal costs relating to six different lawsuits. As the Special Master observed, "[t]he effect of applying *Goldberg* is that GT's claim for expenses will be split in two (or [six])," as Grant Thornton may be forced to pursue its litigation expenses against TH Lee in separate tort claims in those individual cases.

10

R&R at 17.  With that in mind, the Special Master suggested that this Court "may wish to consider wither the judicial economy values espoused by the *Goldberg* court are more effectively furthered by allowing GT to pursue all its litigation expense claims in this single action now before the Court.  Bringing all such claims in this action makes eminent sense . . . ."  *Id*.

For the same reasons, Judge Brieant has previously expressed concern about applying *Goldberg* to bar a claim for damages based on legal costs from a previous third-party lawsuit that involved claims against both the current plaintiff and the current defendant.  As he remarked: "Why should [one party's] right to recover legal fees from [the other party] depend on whether plaintiffs have elected to bring two separate actions or a single consolidated suit" against both parties?  *Vicinanzo*, 739 F. Supp. at  895-96.  Take, for example, the Kirschner/Litigation Trust action—the only matter for which the R&R would allow Grant Thornton to recover.  *See* R&R at 17.  That action is distinct from the others only because it did not also name TH Lee as a defendant.  *Id*.  Yet the Litigation Trustee *did* sue TH Lee;  he simply elected to do so under a separate complaint and case number.  As Judge Brieant observed, it would make no sense for that fact to be dispositive.  739 F. Supp. at 895-96.

This Court can and should decline to apply *Goldberg* based simply on the fact that it is distinguishable.  *Goldberg* was a decision interpreting New York law.[7]  It did not cite (nor are we aware of) any cases from the courts of New York that limit an award of damages on the ground that the legal costs to be recovered were expended in a previous lawsuit in which both the wrongdoer and the complaining party were parties.  Rather, it declined to apply a well-

---

[7] Although Judge Brieant's discussion of *Goldberg* is helpful, it is certainly not the sole basis for Grant Thornton's claim of damages, as the R&R incorrectly suggests.  R&R at 14.  Rather, Grant Thornton bases its claim for damages on New York's "well-recognized exception" to the general rule against cost-shifting—an exception that applies any time the legal expenses were incurred as "the natural and necessary consequences" of the wrongdoer's wrongful acts.  *Coopers & Lybrand*, 52 A.D.2d at 496, 384 N.Y.S.2d at 806; *see also supra* at 7-8.

11

recognized New York legal principle in light of factual and efficiency considerations that are not present here. As discussed above, there is no evidence here that TH Lee took "the laboring oar" in defending the previous lawsuits; indeed, the evidence is to the contrary. And efficiency is served—not hampered—by allowing Grant Thornton to pursue a single, consolidated counterclaim based on TH Lee's role in subjecting Grant Thornton to the legal cost of defending the other suits.

Moreover, to the extent that *Goldberg* did involve a prediction about New York law, at least one New York state court since *Goldberg* has allowed a plaintiff to pursue legal costs for a previous case notwithstanding that the previous case involved claims against both the current plaintiff and the current defendant. In *JP Morgan Chase v. New York Life Ins. and Annuity Corp.*, No. 115680/2008, 2009 WL 6019484 (Sup. Ct. N.Y. Cnty. Aug. 19, 2009), the court explained that the presence of the current defendant in the earlier suit is "not dispositive." Under New York law, "the issue turns on whether the party from whom fees are sought caused the party seeking fees to sue or defend a suit involving a third party." *Id*. That is precisely what Grant Thornton has alleged here; for all six of the cases listed above (*supra* at 5), Grant Thornton seeks the legal costs it incurred when a fraud by Refco—as aided and abetted by TH Lee—made it necessary for Grant Thornton to defend itself against claims brought by third parties.

The Special Master expressed concern about his limited role and essentially invited this Court to answer the question itself. R&R at 14 (whether *Goldberg* should be distinguished because its rationale is irrelevant to the facts in this case "is, respectfully, a question for the Court"). We respectfully submit that this Court should accept that invitation and decline to apply *Goldberg* here, in a case with markedly different factual and efficiency considerations. Under New York law—as expressed in the *JP Morgan* case, the cases cited above (at 7-8), and the

Restatement—if Grant Thornton proves at trial that it was subjected to third-party litigation as a result of the wrongdoing of TH Lee, Grant Thornton should be allowed to recover as damages the cost of defending that litigation, whether or not TH Lee was also a party.

## CONCLUSION

Grant Thornton respectfully requests that this Court reject the Special Master's Report and Recommendation in the limited respect described above and allow Grant Thornton to pursue damages including the cost of defending the six matters listed on page 5 above—namely, all the cases in which Grant Thornton has been sued by third parties (other than the securities litigation). In short, TH Lee's motion for summary judgment should be denied in its entirety, and Grant Thornton's counterclaim for aiding and abetting fraud should be allowed to proceed to trial.

Dated:  April 21, 2011
        New York, New York

Respectfully submitted,

WINSTON & STRAWN LLP

_____/s_____
By:  Beth A. Tagliamonti

*Of Counsel:*

Margaret Maxwell Zagel
Tracy W. Berry
Kenneth Cunningham
GRANT THORNTON LLP
175 West Jackson, 20th Floor
Chicago, Illinois 60604
Ph: 312-856-0001
Fax: 312-565-3473

Beth A. Tagliamonti
(btagliamonti@winston.com)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Ph: 212-294-6700
Fax: 212-294-4700

Bruce R. Braun (bbraun@winston.com)
Catherine W. Joyce (cjoyce@winston.com)
Linda T. Coberly (lcoberly@winston.com)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700

*Attorneys for Grant Thornton LLP*

13