UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: REFCO INC. SECURITIES LITIGATION | Case No. 07 MDL 1902 (JSR) |
| This document applies to: | |
| MARC S. KIRSCHNER, As Trustee of the Refco Private Actions Trust, | |
| Plaintiff, | Case No. 07 Civ. 8165 (JSR) |
| v. | |
| PHILLIP R. BENNETT, SANTO C. MAGGIO, ROBERT C. TROSTEN, MAYER, BROWN LLP, MAYER BROWN INTERNATIONAL LLP, and GRANT THORNTON LLP, | |
| Defendants. | |
| GRANT THORNTON LLP, | |
| Defendant/Third-Party Plaintiff, | |
| v. | |
| THOMAS H. LEE PARTNERS, L.P.; THL EQUITY ADVISORS V, LLC; THL MANAGERS V, LLC; THOMAS H. LEE EQUITY FUND V, L.P.; THOMAS H. LEE PARALLEL FUND V, L.P., THOMAS H. LEE EQUITY (CAYMAN) FUND V, L.P., THOMAS H. LEE; DAVID V. HARKINS; SCOTT L. JAECKEL; and SCOTT A. SCHOEN, | |
| Third-Party Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE THL DEFENDANTS'
MOTION TO DISMISS GRANT THORNTON LLP'S THIRD-PARTY COMPLAINT
<u>FOR CONTRIBUTION</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.   GT Has Failed To Allege Knowledge or Conscious Avoidance ....................................... 2

     A.   Allegations of Mere Hypothetical Access Are Insufficient .................................. 2

     B.   GT's Allegations Unrelated to the Alleged Customer Scheme Are
          Insufficient As A Matter of Law ............................................................................ 5

II.  GT Has Failed To Allege that the THL Defendants Substantially Assisted the
     RCM Customer Scheme ................................................................................................... 7

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1331 (S.D.N.Y. 1997) ................................................................................................................. 5

*Berkey v. Third Ave. Ry. Co.*, 155 N.E. 58, 58 (N.Y. 1926) ............................................. 8

*Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) ......................... 7

   137 F. Supp. 2d at 471 ................................................................................................ 10

*Duncan v. Pencer*, No. 94 Civ. 0321(LAP), 1996 WL 19043, at *14 (S.D.N.Y. Jan. 18, 1996) ............................................................................................................... 2

*Kirschner v. Bennett*, 648 F. Supp. 2d 525, 538-39 (S.D.N.Y. 2009) ............................. 7

   648 F. Supp. 2d at 545 .................................................................................................. 6

*Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 339 (S.D.N.Y. 2005) ............... 6

*Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. 2001) ................. 9

   130 F. Supp. 2d at 511 ................................................................................................ 10

*Sotheby's Holdings, Inc.*, *In re*, No. 00 Civ. 1041(DLC), 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000) ............................................................................................ 2

*The Limited, Inc. v. McCrory Corp.*, 645 F. Supp. 1038, 1044 (S.D.N.Y. 1986) ........... 9

**Statutes**

N.Y. Gen. Oblig. Law § 15-108(b) ................................................................................ 10

**Other Authorities**

William M. Fletcher, *Cyclopedia Corporations* § 14 (2011) ......................................... 9

Grant Thornton's ("GT") opposition brief is based on the illogical argument that because the Private Actions Trustee's ("Trustee") claim for aiding and abetting against GT survived dismissal, GT's claim against the THL Defendants should survive dismissal. *See* Opp.[1] at 1. But GT's false comparison completely ignores the fundamental differences between the Trustee's allegations against GT and GT's allegations against the THL Defendants.

The Trustee has a narrow remaining claim against GT for aiding and abetting the Refco insiders (Bennett, Trosten and Maggio) in fraudulently inducing, by omission, RCM's foreign exchange ("FX") customers to deposit funds at a time when the insiders allegedly knew that RCM was "hopelessly insolvent." The Trustee's theory is that, in order to operate, Refco needed to siphon customer funds from RCM, which Refco could not pay back, rendering RCM "hopelessly insolvent." This alleged fraud has been dubbed the RCM "customer scheme."

GT has failed to allege that the THL Defendants (1) knew or consciously avoided knowing about, or (2) substantially assisted, the RCM customer scheme. Virtually all of GT's allegations of knowledge are based on the THL Defendants' mere theoretical access to information as a result of their positions as directors and shareholders of Refco. Such constructive knowledge, as GT itself admits, is insufficient as a matter of law. By contrast, the Trustee's allegations against GT and Mayer Brown ("MB") included specific information that they *actually possessed* related to the RCM customer fraud. *See infra* Part I.A. As the Special Master and Judge Lynch have previously held, GT cannot save these "mere access" allegations by pointing to information the THL Defendants allegedly knew that had nothing to do with the customer scheme. GT is therefore left with the allegation that the THL Defendants knew about Refco's acquisition of Cargill. But the Special Master has already held that there was nothing

---

[1] GT's Resp. to THL Defs' Mot. to Dismiss the Third-Party Compl. For Contribution (Dkt. No. 214) ("Opp.").

1

illegal or improper about that acquisition, so it cannot create an inference of knowledge of fraud. *See infra* Part I.B.

GT alleges that the THL Defendants substantially assisted the customer scheme by "controlling" Refco when it issued false financial statements. But as a matter of law, absent piercing the corporate veil, a shareholder or director is not liable for the torts of the corporation. And GT cannot rely on the THL Defendants' alleged motive to avoid alleging that their conduct proximately caused the injury to the RCM customers. Because the THL Defendants did nothing to help Refco defraud those customers, GT cannot allege substantial assistance. *See infra* Part II.

## I.    GT Has Failed To Allege Knowledge or Conscious Avoidance

### A.    Allegations of Mere Hypothetical Access Are Insufficient

GT must allege that the THL Defendants had "actual" knowledge or consciously avoided knowledge of the RCM customer fraud; constructive knowledge is not enough. *See* Report & Recommendation of the Special Master at 31 (Dkt. No. 161) ("June 3 Rept."). As GT concedes, this standard is not satisfied by allegations of mere "access" to information based on defendants' position in a company.[2] Virtually all of GT's knowledge allegations, however, are based on the THL Defendants' mere hypothetical access to certain information by virtue of their positions as directors and shareholders of Refco. *See* Mem. at 10-14. These allegations therefore constitute constructive knowledge (at most) and are insufficient to state a claim as a matter of law.

GT tries to sidestep this fundamental problem by arguing (mistakenly) that the Trustee's allegations against GT were also based solely on GT's mere access to information and that, therefore, if the Trustee's allegations against GT were sufficient, then GT's allegations against

---

[2] *See* Mem. in Supp. of the THL Defs' Mot. to Dismiss GT's Third-Party Compl. For Contribution at 11-12 (Dkt. No. 209) ("Mem.") (citing *In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041(DLC), 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000), and *Duncan v. Pencer*, No. 94 Civ. 0321(LAP), 1996 WL 19043, at *14 (S.D.N.Y. Jan. 18, 1996)); *see also* Opp. at 8.

2

the THL Defendants must be sufficient. Opp. at 8. This comparison is false, however, because the Trustee's allegations against GT were *not* based solely on mere access. Rather, the Trustee alleged that GT *actually possessed* certain information relating to the customer scheme. *See* Mem. at 13-14. For example, the Trustee alleged that (1) GT, in its own work papers, *actually possessed* documents showing large transfers from RCM to RGF at the end of fiscal years of $975 million in 2004 and $1.5 billion in 2005 (Trustee Amended Complaint ("AC") ¶ 266); (2) GT *actually knew* from its audits that "RGF had no operations, no bank accounts and was simply a conduit for moving funds to RCC, which 'paid the bills' for Refco" (*id.*); and (3) Ramler and GT *actually knew* that these transfers "dwarfed RCM's limited earnings and net income and had to be customer funds" (*id.* ¶ 268). GT has made no similarly particularized allegations that the THL Defendants *actually possessed* such information.

GT ignores the fundamental difference between (1) theoretical *access* to information showing a fraud, which GT concedes is not enough; and (2) actually *possessing* information showing a fraud, which *can* establish knowledge or conscious avoidance. The Trustee alleged that GT actually possessed work papers showing key aspects of the customer scheme. By contrast, GT has alleged merely that the THL Defendants *could have* possessed unspecified information *if* they had taken advantage of theoretical access based on their positions. GT's allegations amount to nothing more than constructive knowledge and are legally insufficient.[3]

---

[3] GT relies on the Special Master's statement in a Report and Recommendation in *Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP*, 07 Civ. 8663 (JSR) (Dkt. No. 219) ("Countercl. R&R"), that there is a "reasonable inference that if your representatives have control over a corporation, it is logical to *assume* that you will find skeletons in the closet," Opp. at 9-10 (emphasis added). But as even GT acknowledges, this "assumption" of constructive knowledge is not sufficient alone to establish knowledge or conscious avoidance. *See* GT's Resp. to THL's Obj. to the Report & Recommendation Denying Summ. J. on GT's Countercls. at 21, No. 07 Civ. 8663 (JSR) (Dkt. 227) ("GT May 2 Resp."). The cases cited in note two hold that a claim that a defendant "must have known" about a fraud based on a role at a company is

3

GT's comparison (at 8-9) of its allegations against the THL Defendants to the allegations the Trustee made against MB fares no better. GT suggests that the Special Master found sufficient allegations of MB's knowledge based solely on the Trustee's allegations that MB "'over[saw] virtually all aspects of Refco's business plan'" and had "'extensive involvement in all things Refco.'" Opp. at 8 (quoting June 3 Rept. at 32). But GT fails to mention the Trustee's many *additional* specific allegations of MB's actual knowledge, based on much more than mere access and "extensive involvement," that the Special Master cited in concluding that the Trustee's allegations of MB's knowledge were sufficient. The Amended Complaint sets forth specific allegations that MB knew that Refco was improperly siphoning customer funds, including allegations that (1) MB attorney Collins was actually told by Insider Maggio "in detail exactly how the investment program worked, including that fraudulent bank statements were prepared to hide the fact that the appropriate amount of customer segregated funds were not in Refco's accounts" (AC ¶ 164); (2) Collins learned through discussions with Maggio that "Refco needed to book the business offshore 'because [Refco] will have capital issues and [Refco] need[s] to have access to the customer funds'" (*id.* ¶ 166); (3) Collins and MB advised RCM on how to remain unregulated even though RCM should have been registered as a broker-dealer with the SEC (*id.* ¶¶ 167-170); and (4) Maggio explained to Collins "the upstreaming of the cash and its purpose," so that Collins could draft guidelines permitting Refco to continue to operate RCM as an "unregulated ponzi scheme" and continue to have access to customer accounts "free from the scrutiny of any regulator" (*id.* ¶¶ 171-172). These allegations go well beyond mere access or involvement in Refco, and allege specific conversations in which Insiders imparted

---

legally insufficient for an inference of knowledge. Such an assumption is a textbook example of constructive knowledge, which (as explained by the Special Master, *see* June 3 Rept. at 31) is insufficient to meet the knowledge requirement for aiding and abetting.

actual information about the RCM fraud to MB.  GT has alleged no such specific allegations against the THL Defendants.

GT also notes (at 9) that the Special Master relied in part on MB's motive in finding an inference of knowledge.  The Special Master, however, did not base his conclusion solely on allegations of motive, but rather noted such allegations *in addition* to the specific allegations of actual knowledge discussed above.  See June 3 Rept. at 32-33 ("a motive can provide *part* of that inference [of fraudulent intent]") (emphasis added).[4]  Here, GT has not made *any* specific allegations as to the THL Defendants' actual knowledge of the RCM customer scheme.  Therefore, allegations of the THL Defendants' "motive" alone – in the absence of *any* allegations of actual knowledge or conscious avoidance of specific facts – cannot rescue GT's claim.

**B.    GT's Allegations Unrelated to the Alleged Customer Scheme Are Insufficient As A Matter of Law**

Recognizing that most of its allegations are legally insufficient "access" allegations, GT claims (at 10) to have "specific allegations about what TH Lee knew."  However, *all* of the "specific allegations" cited by GT – involving a KPMG due diligence report, the reconciliation of $500 million in excess cash, and the so-called "tip," Compl. ¶ 23 – have absolutely nothing to do with the specific RCM hopeless insolvency fraud at issue in this case.  GT does not argue that these allegations relate in any way to the RCM customer scheme.  Nor does it identify any link between these allegations and the siphoning of RCM's customer funds or RCM's alleged hopeless insolvency.  In fact, GT has already *conceded* that the tip, for example, does not relate

---

[4] Likewise, *ABF Capital Management v. Askin Capital Management, L.P.*, 957 F. Supp. 1308, 1331 (S.D.N.Y. 1997), cited by GT (at 7), does not hold that allegations of extraordinary economic motives are alone sufficient.  In that case, the court held that "Plaintiffs ha[d] alleged both 'motive and opportunity' *and circumstances indicative of conscious behavior*." *Id.* (emphasis added).

5

to the customer scheme. *See* GT May 2 Resp. at 20. It is law of the case that a plaintiff like GT must allege actual knowledge or conscious avoidance of the *specific* underlying primary wrong at issue (the RCM customer scheme) – allegations about some other alleged wrong are insufficient. *See* June 3 Rept. at 30; *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 545 (S.D.N.Y. 2009). GT's allegations have nothing to do with the RCM customer scheme. They therefore cannot support GT's claim of the THL Defendants' actual knowledge. GT cannot avoid the law of the case simply by ignoring it.

Finally, GT argues that the THL Defendants had actual knowledge of the customer scheme in light of its alleged knowledge: (1) that Refco's balance sheet "included cash upstreamed from RCM," and (2) that Refco's acquisition of Cargill used customer funds, as opposed to new borrowing. Opp. at 10-11 (citing Compl. ¶¶ 53, 56). GT, however, mischaracterizes its own Complaint, as paragraph 53 does not allege the THL Defendants' *actual knowledge* regarding Refco's balance sheet; rather, it states that by virtue of the THL Defendants' "executive positions and/or representation within Refco, the THL Defendants knew or consciously avoided knowing that RCM made substantial intercompany loans to other Refco entities using the cash and securities of RCM's customers, including the FX Customers." Compl. ¶ 53. As discussed above, this kind of "must have known" allegation based on a defendant's "position[]" within a company is a legally insufficient allegation of, at most, constructive knowledge. *See supra* Part I.A. In addition, a conclusory allegation that the THL Defendants "knew" something – without any factual support to make the allegation plausible – is also insufficient as a matter of law to allege actual knowledge. *See* Mem. at 12; *Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 339 (S.D.N.Y. 2005) (complaint must allege "factual basis" for assertions of aider-abettor's knowledge).

GT is therefore left with its bare allegation that the THL Defendants knew about the Cargill acquisition. But this allegation alone cannot support an inference of knowledge of the customer scheme. The Special Master has already held that "[t]here is no allegation that the acquisition was itself illegal or improper." June 3 Rept. at 35. Further, both Judge Lynch and the Special Master have already held that the use of the FX customers' funds was permitted by the RCM customer agreement. *See Kirschner*, 648 F. Supp. 2d at 538-39; June 3 Rept. at 3-5, 28. Therefore, there is simply nothing about the bare allegation that the THL Defendants knew that Refco used customer funds for this acquisition from which to infer knowledge of the fraud. *See* Mem. at 15. Finally, GT has not alleged how this Cargill allegation shows knowledge of the customer scheme, because that scheme requires knowledge that RCM was "hopelessly insolvent."

## II. GT Has Failed To Allege that the THL Defendants Substantially Assisted the RCM Customer Scheme

To establish substantial assistance, GT must allege that the THL Defendants either (1) affirmatively assisted, (2) helped conceal, or (3) by virtue of failing to act when required to do so, enabled the fraud on the FX customers to proceed. *See* June 3 Rept. at 33-34. Whether assistance is "substantial" is measured by whether the THL Defendants' actions "proximately caused" the harm on which the primary liability is predicated. *See id.* at 34. "But for" causation is not enough. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001). In addition, GT must allege that the THL Defendants substantially assisted the customer scheme at issue in this case; allegations of assistance related to some other alleged wrongdoing are insufficient. *See*, *e.g.*, June 3 Rept. at 8.

GT alleges no facts showing that the THL Defendants actually assisted the alleged RCM customer scheme. GT has failed to allege that the THL Defendants took any actions to help

7

Refco improperly siphon funds from RCM or help RCM interact with FX customers. In the face of the THL Defendants' motion to dismiss, GT has abandoned most of the allegations of substantial assistance pled in the Complaint. Instead, GT repeats the refrain that, if the Trustee's allegations of substantial assistance against GT were sufficient, than GT's allegations against the THL Defendants must be sufficient as well. *See* Opp. at 12. But again GT's argument fails because it ignores crucial differences between the alleged conduct of GT and the THL Defendants.

  **A.** GT's primary argument is that the Special Master found that GT had substantially assisted the RCM customer scheme by issuing false audit opinions of RCM's standalone financial statements, including a footnote improperly describing the intercompany loans that were part of the siphoning of funds. *See* June 3 Rept. at 36-39. In comparison, GT claims that the THL Defendants substantially assisted the fraud because they "had control over and oversaw the management that prepared those financial statements." Opp. at 13.

  But GT's comparison fails because GT does not allege that the THL Defendants issued Refco's financial statements or had anything to do with those financial statements. To the contrary, *Refco* issued those financial statements, the THL Defendants did not. GT attempts to duck this fundamental point by arguing that the THL Defendants are responsible for Refco's financial statements because they purchased an interest in Refco and placed THL-affiliated individuals on Refco's Board. This argument, however, is nothing more than an improper attempt to pierce the corporate veil *sub silentio*. As a matter of law, a director or a shareholder (even a controlling one) is not vicariously liable for the acts of the corporation.[5] GT alleges

---

[5] *See Berkey v. Third Ave. Ry. Co.*, 155 N.E. 58, 58 (N.Y. 1926) ("[s]tock ownership alone" is "insufficient to charge the dominant company with liability for the torts of the subsidiary" even where parent company owns "[s]ubstantially all the stock" of the subsidiary);

neither that the THL Defendants themselves did anything relating to Refco's financial statements nor that there is a basis for disregarding the corporate form.[6]  Because the THL Defendants are not vicariously liable for Refco's actions, GT's comparison of *its own* issuance of false audit opinions with *Refco's* issuance of false financial statements cannot establish liability against the THL Defendants.

       **B.**      GT tries to resuscitate its allegations of substantial assistance by pointing to the THL Defendants' alleged "extraordinary motive."  *See* Opp. 13-14.  GT's argument is legally flawed:  it asks the Court to ignore the separate requirement that the assistance must be the proximate cause of the harm on which the primary liability is predicated, and replace it with a standard in which, because of allegations of motive, "*any day-to-day transactions in which the THL Lee Defendants participated* – including overseeing management, providing management services, approving the Cargill acquisition, continuing Refco in operation, and even signing the S-1 – should be considered substantial assistance."  *Id*. at 13 (emphasis added; footnote omitted).

      GT's approach, however, is legally wrong.  As Judge Cote explained in *Cromer* – in expressly considering the case GT cites, *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. 2001) – "the court's observation [in *Primavera*] that '[e]xecuting transactions, even ordinary course transactions, can constitute substantial assistance under some

---

*The Limited, Inc. v. McCrory Corp.*, 645 F. Supp. 1038, 1044 (S.D.N.Y. 1986) (dismissing fraud claim where false financial statements were issued by the corporation, not the defendant shareholder or affiliates, and holding that "[b]asic principles of corporate law presume that absent a rather egregious disregard of corporate formalities, one corporate entity . . . with a substantial interest in the corporation is not automatically or readily responsible for the acts of another entity"); William M. Fletcher, *Cyclopedia Corporations* § 14 (2011) (shareholders "are ordinarily not liable for the corporation's obligations, liabilities, or debts.").

     [6] The Special Master's statement in the Counterclaim R&R (at 5), relied on by GT, that there is a question of fact as to "whether the acts of the insiders appointed by THL were attributable to THL" is irrelevant.  The Special Master stated that THL might be responsible for the acts of its own employees it placed on the Board, not for the acts of Bennett, Trosten, and Maggio, whom it did not appoint.

9

circumstances, such as where there is an extraordinary motivation to aid in the fraud,' must be understood in context," and "*nothing in the opinion suggests that the court intended any relaxation to the requirement of a showing of proximate cause*." 137 F. Supp. 2d. at 471 (emphasis added) (quoting *Primavera*, 130 F. Supp. 2d at 511). For the reasons explained in the THL Defendants' opening brief (Mem. 17-18), allegations such as that the THL Defendants "continu[ed] Refco in operation," are mere "but-for" allegations that are insufficient as a matter of law to establish substantial assistance. GT does not argue otherwise.[7]

Similarly, GT completely ignores the holding by the Special Master, adopted by Judge Rakoff, that GT must allege substantial assistance of the particular RCM customer scheme at issue in this case. *See* June 3 Rept. at 8. GT's allegations of substantial assistance against the THL Defendants based on, *e.g.*, helping the IPO or signing the S-1, have *already* been held by the Special Master to be insufficiently related to the RCM customer scheme to state a claim against MB. *See* Mem. at 21; June 3 Rept. at 35. For the same reasons, these same allegations cannot state a claim against the THL Defendants.

## CONCLUSION

For the foregoing reasons, the Court should grant the THL Defendants' motion and dismiss GT's third-party Complaint with prejudice.[8]

---

[7] GT's allegation of substantial assistance based on "approving the Cargill acquisition," (at 13), similarly fails for lack of proximate cause. GT recognizes (at 13 n.5) that the Special Master has *already so held*, yet offers no relevant distinction between MB's critical legal assistance to the Cargill transaction and the THL Defendants' alleged approval of the transaction.

[8] GT claims (at 6 n.2) that the THL Defendants' recent settlement with the Trustee does not bar GT's claim for contribution. To the contrary, the THL Defendants have a release from the Trustee for any claims by the Trustee against them in this case; when that release becomes effective, GT's contribution cross-claim against the THL Defendants will be barred by New York law. *See* N.Y. Gen. Oblig. Law § 15-108(b).

10

Dated: May 4, 2011   KELLOGG, HUBER, HANSEN, TODD
      Washington, D.C.   EVANS & FIGEL, P.L.L.C.

By: */s/* Kevin B. Huff
    Mark C. Hansen
    Silvija A. Strikis
    Kevin B. Huff (KH-9284)
    *khuff@khhte.com*
    1615 M Street, N.W., Suite 400
    Washington, D.C. 20036
    (202) 326-7900
    (202) 326-7999 (fax)

WEIL GOTSHAL & MANGES LLP

    Greg A. Danilow (GD-1621)
    767 Fifth Avenue
    New York, New York 10153
    (212) 310-8000

*Attorneys for Thomas H. Lee Partners, L.P., THL Equity Advisors V, LLC, THL Managers V, LLC, Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., Thomas H. Lee Equity (Cayman) Fund V, L.P., Thomas H. Lee, David V. Harkins, Scott L. Jaeckel, and Scott A. Schoen*