UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                               :

In re REFCO, INC. Securities Litigation    :   07 MDL 1902 (JSR)
                               :

-------------------------------------------------------- x
This document applies to:          :
                               :   **<u>Electronically filed</u>**

THOMAS H. LEE EQUITY FUND V, L.P.,  :
THOMAS H. LEE PARALLEL FUND V, L.P., :
and THOMAS H. LEE EQUITY (CAYMAN) :   07 Civ. 8663 (JSR)
FUND V, L.P.,                      :
                               :
     Plaintiffs/Counterclaim-Defendants, :
                               :
             v.                 :
                               :
GRANT THORNTON LLP,          :
                               :
     Defendant/Counterclaim-Plaintiff.  :
-------------------------------------------------------- x

# REPLY MEMORANDUM IN FURTHER SUPPORT
# OF GRANT THORNTON LLP'S
# <u>MOTION TO QUASH TH LEE's RULE 45 SUBPOENAS</u>


WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

*Attorneys for Defendant Grant Thornton LLP*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................................................... ii

I.    TH Lee cannot use Rule 45 to avoid the court-ordered discovery
      schedule.......................................................................................................... 2

II.   TH Lee has not asserted and cannot now assert a claim for punitive
      damages, and thus these subpoenas seek information wholly irrelevant to
      the issues for trial ........................................................................................... 4

CONCLUSION.................................................................................................... 7

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*China Trust Bank of New York v. Standard Chartered Bank, PLC*,
    981 F. Supp. 282 (S.D.N.Y. 1997) ................................................................   5

*Curiale v. Peat, Marwick, Mitchell & Co.*,
    630 N.Y.S.2d 996 (1st Dep't 1995) ..............................................................   6

    630 N.Y.S.2d at 1003 ....................................................................................   7

*Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*,
    No. 95 Civ. 8450, 1998 WL 422482 (S.D.N.Y. July 22, 1998) .......................   5

*McNerney v. Archer Daniels Midland Co.*,
    164 F.R.D. 584 (W.D.N.Y. 1995) ................................................................   3

*Rent-A-Center, Inc. v. 47 Mamoraneck Ave. Corp.*
    215 F.R.D. 100 (S.D.N.Y. 2003) ................................................................   4

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ..........................................................................   7

*Simon v. Ernst & Young*,
    637 N.Y.S.2d 375 (1st Dep't 1996) ..............................................................   6

*Zucker v. Saski*,
    963 F. Supp. 301 (S.D.N.Y. 1997) ..............................................................   6

The opposition brief makes little effort to defend TH Lee's untimely discovery requests and does even less to defend its belated claim for punitive damages. TH Lee does not deny that it could have requested these documents earlier. Instead—incredibly—it argues that because it believes all these documents "are admissible," it can request them whenever it likes, regardless of the schedule this Court imposed for fact discovery. Not surprisingly, the Federal Rules provide no support for this novel argument, and the case law in this Circuit flatly defeats it.

Similarly, TH Lee does not deny that its purported demand for punitive damages was not mentioned in the complaint or in any other document or court paper before now. Grant Thornton is clearly prejudiced by this late addition; among other things, if Grant Thornton had been on notice earlier that punitive damages would be part of this case, it would have included the issue in the briefing and argument before Special Master Capra on summary judgment. Thus, it would have put TH Lee to its burden to come forward with evidence sufficient to support such a demand, before having to waste time on the issue either before or during trial. Even now, though, TH Lee still cites no evidence that warrants allowing such a demand to proceed. The Special Master and the Court allowed TH Lee to proceed to trial with its theory that Grant Thornton knew about or consciously disregarded the Refco fraud—just as they allowed Grant Thornton to proceed with a counterclaim against TH Lee on the same theory. But the standard for punitive damages is far higher. TH Lee's argument ignores that fundamental principle and improperly equates the standard for liability with the standard for punitive damages. Opp. 7 (arguing that punitive damages are available simply because there is a question of fact whether "GT committed fraud knowingly and aided and abetted Refco's fraud knowingly or with conscious avoidance of the truth"). As a matter of New York law, that is not enough.

The trial is less than 4 weeks away, and TH Lee's document requests (under the guise of Rule 45 subpoenas) represent yet another attempt by TH Lee to bolster its case at the last minute with a new and inadequate theory that was never the subject of any discovery in this case. This attempt should be rejected, so that the parties can get back to the business of preparing for trial.

**I.       TH Lee cannot use Rule 45 to avoid the court-ordered discovery schedule.**

TH Lee does not deny that it could have requested these documents during discovery, and it does not even attempt to justify its failure to do so. During fact discovery, TH Lee did not serve Grant Thornton with any document requests at all. If a demand for punitive damages was always implicitly part of TH Lee's case, as TH Lee now claims (Opp. 11), then it was incumbent on TH Lee to seek discovery with respect to that issue before the court-imposed deadline.

Rather than attempting to justify its conduct, TH Lee argues that its current request is somehow exempt from this Court's deadlines. According to TH Lee, court deadlines for fact discovery restrict only the "search [for] documents that *could* lead to potentially relevant, admissible evidence" (Opp. 12-13 (emphasis in original)), whereas they do not limit a litigant's requests for documents that it believes "*are* admissible and directly relevant" (Opp. 13 (emphasis added)). Not surprisingly, TH Lee cites no authority for this position, which would explode the process of discovery as we know it.

Even if these documents *were* all admissible—an assertion that Grant Thornton strenuously disputes[1]—TH Lee's argument has no support in the Federal Rules. Courts in this Circuit, as in most Circuits, place strict limits on the use of Rule 45 subpoenas, in an effort to

---

[1]  Grant Thornton does not concede the admissibility of *any* of the requested materials at issue, nor has TH Lee demonstrated that their admissibility is a foregone conclusion. Indeed, it is unclear how TH Lee could even make an argument about the relevance of information concerning Grant Thornton's "credit agreements and/or facilities" (Request No. 5) or any previous punitive damage awards, fines, or claims of "fraud or any other intentional tort" dating back to "January 1, 2000" (Request Nos. 5-8).

preserve the integrity of the discovery process and prevent the very kind of abuse that TH Lee is engaged in here.  GT Mem. 4-6 (citing cases).  If a party "is aware of the existence of documents before the discovery cutoff date and issues discovery requests including subpoenas after the discovery deadline has passed, then the subpoenas and discovery request should be denied." *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y. 1995).

Here, TH Lee has long been aware of ***all*** these categories of documents.  *See* Braun Decl., Ex. 4, pp. 2-3 (listing requests).  These are not "narrow" or "targeted" requests.  *Cf*. Opp. 15; *see*, *e.g*., *id.* at 2, Request No. 1 ("All financial statements and supporting ledgers, whether consolidated or non-consolidated, of Grant Thornton, including but not limited to, balance sheets, income statements, statements of cash flow, and accounting ledges for the period from January 1, 2005 to the date of trial.").  In fact, most of these requests seek broad categories of documents dating back to 2005 or earlier.  *Id*. at 2-3.  Although two of the requests refer only to dates after the close of discovery (*see id*. at 2, Request Nos. 2 and 3, seeking documents showing Grant Thornton's assets and net worth "as of December 31, 2010, March 31, 2011, and as of the date of trial"), there is no reason why TH Lee could not have requested similar information during discovery—information that Grant Thornton would later have been required to update.

TH Lee also argues that the subpoenas are an appropriate means to secure "a corporate representative of GT to testify at trial regarding information that is relevant to the issues at trial." Opp. 13.  This is disingenuous.  Only one of the two subpoenas Grant Thornton seeks to quash requires a company representative to appear at trial, whereas the second subpoena simply requests documents.  Further, while TH Lee did ask for a Grant Thornton company representative to testify at trial, the subpoena did not set forth any topics on which it intended to examine such a witness or on which it expected such a witness to be prepared to testify.  To the

extent that the subpoena calls for a company representative to testify on issues relating to punitive damages, such damages are not available in this case for the reasons set forth below and in Grant Thornton's opening brief.

TH Lee's remaining arguments are completely beside the point.  Opp. 13-14.  Whether these subpoenas are proper has nothing to do with whether the trial should be bifurcated or with the mechanics of how and when the issue of punitive damages would be presented to the jury (if it is presented at all).  Similarly, TH Lee's argument about whether these requests are really "burdensome" is a red herring.  Of course, there *is* a significant burden here; complying with these broad requests would take valuable time away from Grant Thornton's preparation for the trial that is set to start less than one month from now.  But even aside from their burdensome nature, the subpoenas should be quashed because they were served in flagrant disregard for the limits of Rule 45 and this Court's scheduling order.

## II.    TH Lee has not asserted and cannot now assert a claim for punitive damages, and thus these subpoenas seek information wholly irrelevant to the issues for trial.[2]

THL acknowledges that punitive damages are not appropriate "in the 'ordinary' fraud and deceit case" and are allowed only "where the defendant's conduct evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations."  Opp. 5.  Yet the opposition goes on to spill much ink by (1) accusing Grant Thornton of rearguing its summary judgment motion and (2) trying to transform the Court's decision allowing the fraud and aiding and abetting claims to survive summary judgment into a ruling that TH Lee is entitled to punitive damages.  Opp. 5-11.

---

[2] TH Lee's ninth document request—relating to the documents Grant Thornton "will rely upon to establish [its] claimed damages against the THL Funds"—is not the subject of this motion. Grant Thornton has already provided to TH Lee the documents that Grant Thornton intends to introduce at trial to prove the damages it suffered as a result of TH Lee's own wrongdoing.

This is nonsense.  The issue of punitive damages was not before the Court at summary judgment.  Grant Thornton would have moved for summary judgment on the issue of punitive damages had it known TH Lee would seek them.  But Grant Thornton did ***not*** know, and it had no reason to know, given that the issue was never pleaded or made the subject of any discovery requests.  As a result, the summary judgment proceedings concerned only whether TH Lee's claims of fraud and aiding and abetting could go forward on their merits.  While this Court allowed those claims to proceed to trial (along with an analogous claim against TH Lee based on its own wrongdoing), the question whether Grant Thornton acted with "gross, wanton or willful fraud or other morally reprehensible conduct" that demonstrated the "evil and reprehensible motives" required for punitive damages was not before the Special Master or the Court.  *Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, No. 95 Civ. 8450, 1998 WL 422482, at * 8 (S.D.N.Y. July 22, 1998); *China Trust Bank of New York v. Standard Chartered Bank, PLC*, 981 F. Supp. 282, 289 (S.D.N.Y. 1997).  Indeed, the fact that Grant Thornton did not have the opportunity to brief these issues on summary judgment is, itself, sufficient "prejudice" to warrant barring the belated punitive damages demand outright.  *Cf*. Opp. 12 (arguing that no "prejudice" resulted from the fact that a punitive damages demand was not pleaded in the complaint).

TH Lee's lengthy citations to Judge Lynch's pleading-stage opinion and the Summary Judgment R&R (Opp. 8-10) demonstrate nothing more than the Court's analysis of the facts and allegations relating to Grant Thornton's supposed knowledge of the fraud engineered by the Refco Insiders.  These prior rulings do ***nothing*** to address or otherwise support the position that Grant Thornton acted with the reprehensible and evil motives which would entitle TH Lee to punitive damages.  TH Lee's own argument on this subject demonstrates that it is TH Lee—not

Grant Thornton—that is incorrectly equating the standard for liability with the far higher standard for punitive damages under New York law.

Aside from its misplaced reliance on prior rulings in this case, the only other argument TH Lee makes relating to Grant Thornton's supposed ill intent depends on two easily distinguished cases involving auditors.[3]  Opp. 6 (citing *Simon v. Ernst & Young*, 637 N.Y.S.2d 375, 376 (1st Dep't 1996); *Curiale v. Peat, Marwick, Mitchell & Co.*, 630 N.Y.S.2d 996, 1002-03 (1st Dep't 1995)).  Neither of these cases supports any claim for punitive damages here.  To the contrary, in *Simon*, the court held that the plaintiff adequately pled fraud and recklessness against an auditor who opined on a client's false financial statements, but it specifically concluded that the plaintiff could ***not*** seek punitive damages, as there were no allegations of public wrong or "knowledge and concealment of illegal acts."  637 N.Y.S.2d at 376.  Here, TH Lee's claims are based on damages allegedly suffered by a private investment company when it purchased a private company in a leveraged buyout;  thus, here too, there is no "public wrong" of a type that could support punitive damages.  Further, *Simon* cannot stand for the principle that punitive damages are allowed any time an auditor knew of or concealed a client's fraud.  *Simon* makes clear that allegations of fraud are not enough to support an award of punitive damages, and any fraud in an audit opinion would necessarily involve knowledge of—or the intent to conceal—a client's fraudulent acts.  *See Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (the auditor's conduct must "approximate an actual intent to aid in the fraud being perpetrated by the

---

[3] TH Lee also makes a half-hearted attempt to argue that Grant Thornton's receipt of "over $9 million in fees from 2003 through 2005" provides sufficient motivation to warrant punitive damages.  Of course, this is not the law.  Indeed, allegations of an auditor's receipt of fees in the ordinary course are not even enough to support a claim for liability.  *See, e.g., Zucker v. Saski*, 963 F. Supp. 301, 308 (S.D.N.Y. 1997) ("[M]ere receipt of compensation and the maintenance of a profitable professional business relationship for auditing services does not constitute a sufficient motive for purposes of pleading scienter.").  Such allegations most certainly would not support the higher standard that a plaintiff must meet to recover punitive damages.

audited company").  And in *Curiale*, the court affirmed a punitive damages award in favor of a **public agency** against the auditor of an insurance company after the agency settled a dispute in reliance on the audit.  The court awarded punitive damages to the agency because the auditor "acted in utter disregard of the public interest in defrauding a public agency and in aiding and abetting the misrepresentations made to such agency."  630 N.Y.S.2d at 1003.  Here of course, the fact that TH Lee is not a public agency makes *Curiale* completely off point.

In sum, TH Lee has never pleaded—and cannot prove—any claim for punitive damages in this case.   Accordingly, the document requests that relate to punitive damages seek information irrelevant to any issue properly before the Court at trial.  On this basis as well, TH Lee's document requests should be quashed.

## CONCLUSION

For all these reasons, and for the reasons set forth in Grant Thornton's opening memorandum, Grant Thornton respectfully requests that the Court quash TH Lee's untimely and improper document subpoenas.

Dated:  June 17, 2011
          New York, New York

*Of Counsel:*

Margaret Maxwell Zagel
Tracy W. Berry
Kenneth Cunningham
GRANT THORNTON LLP
175 West Jackson, 20th Floor
Chicago, Illinois 60604
Ph: 312-856-0001
Fax: 312-565-3473

Respectfully submitted,

WINSTON & STRAWN LLP

             /s              
By:  Beth A. Tagliamonti

Beth A. Tagliamonti
(btagliamonti@winston.com)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Ph: 212-294-6700
Fax: 212-294-4700

Bruce R. Braun (bbraun@winston.com)
Catherine W. Joyce (cjoyce@winston.com)
Linda T. Coberly (lcoberly@winston.com)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700

*Attorneys for Grant Thornton LLP*