**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
                        :

In re REFCO INC. SECURITIES LITIGATION    :      Case No. 07-md-1902 (JSR)
                        :

-------------------------------------------------------------X

This Document Relates to:

-------------------------------------------------------------X

KENNETH M. KRYS, et al.,             :      Case No. 08-cv-3065 (JSR)
                        :      Case No. 08-cv-3086 (JSR)

Plaintiffs,          :
                        :

       -against-          :
                        :

CHRISTOPHER SUGRUE, et al.,       :
                              :
          Defendants.    :

-------------------------------------------------------------X

KENNETH M. KRYS, et al.,             :      10 Civ. 3594 (JSR)
                        :

Plaintiffs,            :
                        :      REPORT AND

       -against-          :      RECOMMENDATION
                        :      OF THE SPECIAL MASTER

DEUTSCHE BANK SECURITIES INC et al.   :      ON THE OMNIBUS ISSUE OF
                        :      *in pari delicto* AND REFCO
                        :      FRAUD CLAIMS

-------------------------------------------------------------X

Daniel J. Capra, Special Master

      Plaintiffs bring these actions to recover (i) $263 million plus interest in damages suffered by the SPhinX family of hedge funds; (ii) the lost business enterprise value and deepening insolvency damages suffered by SPhinX's investment manager, PlusFunds Group, Inc., ("PlusFunds") and (iii) damages suffered by the Assignors, a group comprised of SPhinX investors. The gravamen of the complaint is that SPhinX's cash "was diverted from protected, customer segregated accounts to unprotected offshore accounts, where those assets were ultimately lost in the Refco scandal." (Sugrue Amended Complaint ("SAC") ¶1).

1

Judge Rakoff permitted the Defendants[1] to submit a supplemental brief to address the impact of the New York Court of Appeals' decision in *Kirschner v. KPMG LLP,* 15 N.Y.3d 446, 912 N.Y.S.2d 508 (2010), on the Plaintiffs' "Refco fraud" claims. After the motion was fully briefed, the Special Master heard oral argument on June 14, 2011 and in accordance with Judge Rakoff's direction the Special Master is submitting this Report and Recommendation on an expedited basis.

For the reasons discussed below, the Special Master recommends that the Defendants' motion to dismiss the Plaintiffs' claims based on the "Refco fraud" — defined herein — should be denied. As the Special Master and Judge Rakoff have held, the Plaintiffs' Refco fraud damages are indirect because they were suffered only because RCM was directly damaged by the Refco fraud. Yet as the Special Master and Judge Rakoff have also held, the limitations on standing to recover for indirect damages can be — and are in this case — lifted if the party who suffered the primary wrong is unable to sue. And while the Plaintiffs' Refco fraud claims are indirect, they are not barred by *in pari delicto/Wagoner* because the Plaintiffs are suing for their own damages — they are not suing for damages to Refco and are therefore not stepping into the shoes of Refco, so the wrondoing of Refco insiders cannot be attributed to them.

## I. Prior Reports and Recommendations

The Special Master has made a number of recommendations in prior reports that have bearing on the dispositions in this Report and Recommendation.

### A. The Report and Recommendation on Standing dated February 3, 2010 (The "Standing R and R"), affirmed by Judge Rakoff in orders dated 3/31/10 and 5/3/11.

The Standing R and R considered whether certain of the Plaintiffs' claims should be dismissed because they sought damages that were indirect — in the sense that the primary harm was suffered by another, specifically Refco Capital Markets, Ltd. ("RCM"). The most important of the rulings in the Standing R and R for present purposes (adopted by Judge Rakoff) was that all claims of SMFF and PlusFunds that arise from the "Refco fraud" — defined as a) upstreaming assets from RCM; b) hiding an uncollectible receivable through various machinations including Round Trip

---

[1] The Defendants include Grant Thornton LLP, Mark Ramler, Mayer Brown LLP, Edward S. Best, Joseph P. Collins, Paul Koury, JPMorgan Chase & Co., Banc of America Securities LLC, Credit Suisse Securities (USA) LLC, PricewaterhouseCoopers LLP, Mari Ferris, Ingram Micro Inc., CIM Ventures Inc., Liberty Corner Capital Strategies, LLC, William T. Piggott, Deutsche Bank Securities Inc., Deutsche Bank Trust Company Americas, and Deutsche Bank AG.

Loans;[2] and c) fraud occurring in the LBO and IPO — were to be dismissed without prejudice and subject to reconsideration should it finally be determined that the Refco Trustee was barred by the *Wagoner/in pari delicto* doctrine from bringing the claims of RCM.[3]

The rationale for the Special Master's recommendation as to the Plaintiff's Refco fraud claims was that the injuries they claimed were indirect. Those injuries were suffered because another entity, RCM, was looted and thereby unable to pay its customers. Because the damages were indirect, prudential limitations on standing — as well as the policy of preserving the integrity of the Refco bankruptcy proceeding — required that the claims be brought in the first instance by the Trustee of the Refco Estate. Pertinent passages from the Standing R and R indicate clearly the determination that the Refco fraud claims were seeking indirect damages. *See, e.g.,* Standing R and R at 18 ("It is only because RCM couldn't pay them off that Plaintiffs would have a cause of action under the Refco fraud theory. And RCM was unable to pay because it was stripped and made insolvent by the Refco fraud.").

The Standing R and R pointed out that the prudential bar on indirect claims was especially important in the context of bankruptcy proceedings, because claims of the creditors arising from insolvency of the debtor should proceed through the bankruptcy estate:

> The law is clear that in a bankruptcy, claims of creditors arising from the insolvency of the debtor must be resolved in the bankruptcy proceeding, because they are property of the estate. Property of a debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The commencement of the case" is the moment the debtor files for bankruptcy. *Koch Ref. v. Farmers Union Cent. Exch., Inc*., 831 F.2d 1339, 1343 (7th Cir.1987). And it is "well established that the 'interests of the debtor in property' include causes of action." *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir.1988). A debtor's appointed trustee has

---

[2] Capitalizations and abbreviations from prior R and Rs are incorporated by reference herein.

[3] The other Recommendations in the Standing R and R — also affirmed by Judge Rakoff — were as follows:

●  All claims brought by the Assignors have been dismissed with prejudice for lack of standing, because they replicate claims brought by SPhinX.

●  All claims brought by any SPhinX entities other than SPhinX Managed Futures Fund ("SMFF") have been dismissed with prejudice, because the claims of the other entities are derivative of those pursued by SMFF.

●The motions to dismiss the claims of PlusFunds on grounds of standing have been denied because PlusFunds is alleging direct injury and damages independent from those of SMFF.

●Claims based on the so-called Suffolk Transactions are part of the "SPhinX fraud" and SMFF and PlusFunds have standing to bring such claims.

the exclusive right to assert the debtor's claim. *Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright ( In re Educators Group Health Trust )*, 25 F.3d 1281, 1284 (5th Cir.1994). "If, on the other hand, a cause of action belongs *solely* to the estate's creditors, then the trustee has no standing to bring the cause of action." Id. (emphasis added).

Any claim under the Refco fraud is for the harm that occurred to Refco because, fundamentally, all of the debtors' claims are simply that "Refco could not pay us back because it was looted and went bankrupt." In contrast, the claim for any unauthorized transfer to an unsegregated account arose at the time of that transfer — before the date of RCM's bankruptcy — and so it is not property of the RCM Estate.

The court in *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 442 (4th Cir. 1999), explained the rationale for denying standing to those claiming loss due to harm to a corporation that led to the corporation's bankruptcy. In *Ruppert,* sureties of the bankrupt corporation challenged the propriety of transactions between that corporation and the defendant — transactions that assertedly led to insolvency. The court declared as follows:

> It is clear that the trustee should have first crack at challenging the Ruppert/Green Thumb transaction — the trustee's role is to bring suits such as these on behalf of all the creditors. As a general matter "[t]he trustee's single effort eliminates the many wasteful and competitive suits of individual creditors." *Koch Ref. v. Farmers Union Cent. Exch., Inc*., 831 F.2d 1339, 1342-43 (7th Cir.1987). All creditors, not simply the Sureties, have a stake in exposing any impropriety in the Ruppert/Green Thumb transaction. If Ruppert secured a transfer of assets by unlawful means, all creditors of Green Thumb would be potentially disadvantaged by it.
>
> To allow selected creditors to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate. The goal of bankruptcy is to consolidate the proceeding and avoid piecemeal litigation — a goal that would be sacrificed by permitting the district court to entertain the merits of the Sureties' suit.

Standing R and R at 20-21.

The Standing R and R also relied on case law indicating that where damages are indirect, there is a risk of double recovery that should be avoided. The Standing R and R relied especially on Judge Preska's decision in *Jackson Nat. Life Ins. Co. v. Ligator*, 949 F.Supp.200 (S.D.N.Y.,1996), which discussed in detail the relationship between the "standing" rule as to indirect damages and the concern over double recovery. In *Jackson*, Judge Preska dismissed the claims of plaintiffs who acquired debt and equity in two entities that in turn purchased entities controlled by the defendants that were allegedly fraudulently overvalued. Judge Preska found that plaintiffs' injuries were not "separate and distinct" from the direct injuries suffered by IPM and HIG in acquiring the defendants' entities. Id. at 205-06. Judge Preska noted that

4

if plaintiffs and IPM and HIG were both to prevail in their respective actions, the result would be duplicative awards. * * * Numerous courts, including the United States Supreme Court and the Court of Appeals for the Second Circuit, have recognized that the type of secondary standing claimed by Jackson National here is disfavored precisely because it can lead to double recovery, as well as because the necessary causal link between the actions of the primary violator and the party claiming injury is too remote. [Citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), and *Manson v. Stacescu*, 11 F.3d 1127 (2d Cir.1993)].

Id. at 204.

In sum, the Standing R and R's conclusion on lack of standing for Refco fraud claims was based on the fact that SphinX/Plus funds claims were dependent on the primary injury suffered by RCM — the prudential limitation on standing was based on the important policies of efficiency in the bankruptcy proceeding and preventing double recovery.

The Standing R and R concluded that because the Refco claims were indirect, they should be dismissed. But that dismissal was recommended to be without prejudice because, at the time of the decision, it had not yet been determined whether the Refco Trustee's claim for direct damage to the Refco Estate could be brought or would be barred by the *in pari delicto/Wagoner* doctrine. The Special Master reasoned that the prudential standing doctrine should not necessarily bar the Plaintiffs' Refco fraud claims if it was found that the Refco Trustee could not bring those claims in the first instance.[4] The following passage in the Standing R and R was specifically adopted by Judge Rakoff in his Order of May 3, 2011.

When the defendants' arguments are juxtaposed, the irony is evident. In this action, they argue that the Plaintiffs have no standing to sue on the basis of the Refco fraud because those actions are to be brought by the Refco Trustee. And in the action brought by the Refco Trustee, they argue that the Trustee has no standing to sue on the basis of the Refco fraud because he stands in the shoes of the wrongdoing corporation.

Standing R and R at 26, n. 33.

The Standing R and R did not consider the possibility that claims for injury that were dependent on the injuries suffered by RCM should themselves be barred by *Wagoner/in pari delicto,* on the ground that the claimants would be stepping into the shoes of the Refco wrongdoers.

---

[4] The Special Master once again relied on *Ligator, supra,* where Judge Preska dismissed the secondary claim without prejudice, until it was determined whether the party who suffered the primary wrong could bring a claim for relief. Judge Preska noted that "where the primary injured party lacks the ability to sue [,] [s]uit by the derivatively injured party may be the only means to an equitable resolution in such a case; significantly, there exists no risk of double recovery."949 F.Supp. at 205-6.

Certainly a ruling to that effect at the time of the Standing R and R would have been premature because it had not yet been definitively determined whether *Wagoner/in pari delicto* barred the Refco Trustee from suing for the direct harms suffered by Refco. At this point, of course, that determination has been made — by the New York Court of Appeals in *Kirschner, supra,* and subsequently by the Second Circuit. See *Kirschner v. KPMG LLP*, 626 F.3d 673 (2d Cir. 2010) (adopting New York Court of Appeals' determination of New York law on *in pari delicto*, and affirming district court's opinion dismissing Refco Trustee's claims on *in pari delicto/Wagoner* grounds).

**B. The "With Prejudice" R and R, affirmed by Order of Judge Rakoff entered May 3, 2011.**

The EMF defendants and BAWAG had settled with the Refco Estate before the Standing R and R was issued. Following through on the rationale of the Standing R and R — that claims for derivative injury arising from the Refco fraud should be pursued through the Refco Estate in the first instance, and allowed to proceed only if the Trustee could not recover on its claims — the Special Master recommended that the Plaintiffs' claims against the EMF defendants and BAWAG should be dismissed with prejudice. The Special Master reasoned as follows:

> Under the rationale of the Standing R and R, the claims in this action against a defendant who has already settled a claim brought by the Refco Trustee should be dismissed *with prejudice*. This is because the payment of the settlement means that there is no risk of a wrong without a remedy — the remedy is the settlement payment that became available to Refco creditors. Put the other way, if settling defendants are *not* dismissed with prejudice, then the Plantiffs' claims against them could be revived if the Refco Trustee is found barred by the *Wagoner* doctrine. In that case, there would be the very risk of double recovery that the standing doctrine is designed to avoid — the settling defendant would have compensated Refco creditors and yet would be subject to paying other Refco creditors (i.e., these Plaintiffs) for the same wrong.

"With Prejudice" R and R at 2-3.

Judge Rakoff adopted in full the reasoning and recommendations of the "With Prejudice" R and R by Order dated May 3, 2011. The only possible conclusion to be drawn from that affirmance is that Judge Rakoff agreed with the Special Master that the Plaintiffs' claims of injury from the Refco fraud were indirect and should be brought in the first instance — if possible — by the Refco Trustee.

**C. The "in pari delicto" R and R, affirmed in part and reversed in part by Order of Judge Rakoff entered April 25, 2011.**

6

In the "in pari delicto" R and R, the Special Master sought to apply the teachings of the New York Court of Appeals' decision in *Kirschner* to *all* claims brought on behalf of SMFF and PlusFunds. The Special Master recommended the dismissal with prejudice of most of the claims, on the ground that the wrongs of which the Plaintiffs complained were caused in part by wrongdoers at SphinX and PlusFunds. The Special Master determined that the "adverse interest exception" to the *in pari delicto* doctrine— as it had been limited by the New York Court of Appeals in *Kirschner* — was not applicable because SphinX and PlusFunds received short-term benefits from the wrongdoing of the SphinX/PlusFunds insiders. The Special Master also determined, however, that if the adverse interest exception *did* apply, then the so-called "sole actor" exception to that exception did not — in other words, if the Special Master's recommendation as to the adverse interest exception were rejected, then the Plaintiffs would not be barred from recovery due to the wrongdoing of the SphinX/PlusFunds insiders.

In the "in pari delicto" R and R, the Special Master did not consider whether the wrongdoing of the *Refco* insiders should bar recovery for the derivative damages allegedly suffered by SphinX and PlusFunds. While the Defendants made a passing argument that the wrongdoing of Refco insiders barred SphinX and PlusFunds claims, the R and R did not take up that argument. There was no need to reach the imputation of wrongdoing by Refco insiders because the Special Master recommended dismissal with prejudice due to the imputation of wrongdoing by insiders at *Sphinx/PlusFunds.*[5]

Judge Rakoff rejected the Special Master's recommendation as to the adverse interest exception. He found that the allegations of the Amended Complaint "allege precisely what the adverse interest exception requires." April 5, 2011 Order at 2. Judge Rakoff agreed with the Special Master that the "sole actor" exception to the adverse interest exception did not apply. The result of Judge Rakoff's order was that the Defendants' motion to dismiss on the ground that the Plaintiffs are barred by *in pari delicto* due to the wrongdoing of Sphinx/PlusFunds insiders was denied.

As they had before the Special Master, the Defendants made a passing argument to Judge Rakoff that wrongdoing of *Refco* insiders barred the Plaintiffs from recovering damages derived from the Refco fraud — i.e., the argument that is front and center today. Nothing in Judge Rakoff's April 25, 2011 Order indicates that he decided the issue of imputation of Refco wrongdoers. Indeed, at the Status Conference held on May 10 — when the Defendants specifically raised the argument of Refco wrongdoing as barring the Plaintiffs' Refco fraud claims[6]— Judge Rakoff stated: "I agree

---

[5] The *in pari delicto* bar from SphinX/PlusFunds wrongdoers would have been far broader than the *in pari delicto* bar from Refco wrongdoers. The former would have barred many of the SphinX fraud claims, while the latter, if it applies, would only bar the Refco fraud claims — because those are the only claims that are dependent on the injuries suffered by RCM.

[6] Mr. Anker, Counsel for the Bank Defendants, raised it as "an additional ground for dismissal that your Honor has not reached and that we don't believe Professor Capra has reached." June 14 Hearing Transcript at 74 (reading from Hearing Transcript of May 10).

that we should get the issue resolved promptly. * * * I think the Special Master ought to take this up in the first instance, but on a highly expedited basis."[7] Obviously Judge Rakoff would not have assigned as a priority a matter that he had already decided.


## II. Questions to Determine

The Defendants' motion to dismiss the Refco fraud claims on *in pari delicto* grounds requires the Special Master to determine three questions:

1) Has this *in pari delicto* question — specifically whether the wrongdoing of Refco insiders must be imputed to the Plaintiffs, thus barring their claims under the Refco fraud — already been decided in this action?

2) If the issue has not yet been decided, are the Plaintiffs' Refco fraud claims "derivative" of the injuries suffered by RCM?

3) If the Refco fraud claims are "derivative," does that mean the Plaintiffs are stepping into the shoes of Refco and therefore barred from bringing those claims under the doctrine of *in pari delicto*?[8]

These questions will be taken in turn.

### A. Has This Specific in pari delicto Issue Already Been Decided?

The argument could be made that when Judge Rakoff held: 1) that the Plaintiffs' claims were not barred by *in pari delicto,* and 2) that the Plaintiffs had standing to bring Refco fraud claims, he implicitly rejected the Defendants' *in pari delicto* claim brought in this motion. But a fair reading of the prior Orders and R and Rs discussed above indicates that neither the Special Master nor Judge Rakoff have yet determined whether the wrongdoing at *Refco* should be imputed to the Plaintiffs. The *in pari delicto* opinions discussed only whether the wrongdoing at SphinX/PlusFunds could be imputed to the Plaintiffs. And the Standing R and R and Orders considered only whether the Plaintiffs should be allowed to pursue Refco fraud claims if the Refco Trustee were barred from doing so.

---

[7] Id.

[8] If the *in pari delicto* doctrine *does* apply to the Refco fraud claims, it is crystal clear that the Plaintiffs cannot invoke the adverse interest exception to lift the bar. Judge Lynch, the New York Court of Appeals, and the Second Circuit have all held that the adverse interest exception does not apply to claims of Refco, because the wrongdoing insiders provided short-term benefit to Refco.

The Plaintiffs, for their part, argue that the Defendants have previously presented the argument that imputation of Refco wrongdoing bars the Plaintiffs' Refco fraud claims. This is true. But there is nothing to indicate that  either the Special Master or, more importantly, Judge Rakoff has yet decided the issue presented by this motion. No finding on whether *in pari delicto* bars the Plaintiffs from suing on the Refco fraud was required for any of the rulings previously made, and no statements about the issue can be found in any of the rulings, so it cannot be said that the issue was even implicitly reached.

Most importantly, if Judge Rakoff has already decided whether Refco wrongdoing is imputed to the Plaintiffs, there would have been no reason to submit that question to the Special Master for an expedited decision.

Accordingly, the Special Master concludes that the issue — whether Refco insiders' wrongdoing bars the Plaintiffs from bringing Refco fraud claims — has not yet been determined in this action.

### B. Are the Plaintiffs' Refco Fraud Claims "Derivative"?

The Defendants' argument for dismissal of the Refco fraud claims proceeds in two steps: 1) as previously determined by the Special Master and Judge Rakoff, the Plaintiffs' Refco fraud claims are "derivative" of harm suffered by RCM; 2) because the claims are derivative, the Plaintiffs are stepping into the shoes of Refco as to the Refco fraud claims, and *Kirschner* bars such claims under *in pari delicto.*

The prior rulings are clearly based on the fundamental proposition that the Plaintiffs' damages arising from the Refco fraud are not primary injuries. They are, as Judge Preska put it in *Ligator,* "secondary" and so should not be permitted to proceed in the first instance — and should not be permitted to proceed *ever* if the one who suffered the primary injury obtains recovery. There is simply no other way to read the prior opinions. As the Defendants accurately point out, the sole premise of the "with prejudice" R and R is that the Plaintiffs could not bring claims against third parties who had already contributed to the Refco Estate because the Trustee of the party that suffered the primary injury — RCM — had already recovered from those defendants. Recovery by secondary plaintiffs is not allowed if the primary plaintiff has already recovered,  because that would constitute a double recovery.

The Plaintiffs argue that the premise of the Standing R and R and the "with prejudice" R and R is flawed because Judge Lynch held in *Kirschner I,* 2009 WL 1286326 (S.D.N.Y.), that RCM was not harmed but rather *benefitted*  from the Refco fraud — a ruling upheld by the New York Court of Appeals in *Kirschner* and subsequently by the Second Circuit. The Special Master has reviewed every one of the quotes and citations in the opinions by Judge Lynch, the New York Court of Appeals, and the Second Circuit that are relied upon by the Plaintiffs for the proposition that RCM benefitted and was not harmed by the Refco fraud. Every one of those quotes and citations are in the context of a discussion about whether the adverse interest exception to the *in pari delicto* doctrine

applied.

As discussed previously, the question for the adverse inference exception is *not* whether the corporation was harmed but rather whether the corporation received short-term benefits from the insiders' wrongful conduct. It is quite true that each of the courts found that Refco received short-term benefits — thus rendering the adverse interest exception inapplicable — but nothing in any of those opinions addresses whether RCM *ultimately* suffered a primary harm from the Refco fraud. Indeed, no court could credibly say that RCM was not harmed by the Refco fraud. Its assets were looted and upstreamed, and it ended up without sufficient assets to pay its customers. Short-term, the wrongdoing allowed RCM to continue to function. But it simply blinks reality to say that RCM did not suffer a primary wrong due to the Refco fraud — and none of the *Kirschner* cases says anything of the kind. The New York Court of Appeals made a point of distinguishing between the damages suffered by a corporation as a result of the fraud, and the adverse interest exception's focus on whether the corporation derived short-term benefits from the insiders' misconduct. *See Kirschner,* 15 N.Y.3d at 471 (noting that "a company victimized by fraud is always likely to suffer long-term harm once the fraud becomes known"). *See also Baena v. KPMG LLP,* 453 F.3d 1, 8 (1st Cir. 2006) ("A fraud by top management to overstate earnings, and so facilitate stock sales or acquisitions, is not in the long-term interest of the company; but, like price-fixing, it profits the company in the first instance and the company is still civilly and criminally liable.").

In sum, RCM suffered a primary wrong, and SphinX/PlusFunds suffered an indirect harm from the Refco fraud. But that does not necessarily mean that the SphinX/PlusFunds claims are barred on grounds of *in pari delicto*. For the bar to apply, the Plaintiffs must be stepping into the shoes of Refco — bringing Refco's claims for damages and not their own.

### C. Are the Plaintiffs' Refco Fraud Claims for Secondary Injury Barred By in pari delicto?

The Defendants argue that because the Plaintiffs' Refco fraud claims are "derivative," *in pari delicto* must bar the claims because the Plaintiffs will be stepping into the shoes of Refco. They point out in the companion case to *Kirschner* in the New York Court of Appeals, *Teachers' Retirement System v. PricewaterhouseCoopers LLP*, a group of AIG shareholders brought a shareholders' derivative action against an accountant. The New York Court of Appeals considered a question certified by the Delaware Supreme Court — whether *in pari delicto* bars a "derivative claim under New York law" when that claim is based on an outside auditor's alleged failure to detect fraud committed by the corporation. *Kirschner,* 15 N.Y.3d at 463. Among other things, the plaintiffs in *AIG* argued that even if *in pari delicto* barred claims by the corporation itself, it should not bar derivative claims of the innocent shareholders. Id. at 469, 475. But the Court of Appeals in *Kirschner* found that the New York *in pari delicto* doctrine barred the "derivative" claims of the shareholders.

The Special Master concludes that the Plaintiffs' Refco fraud claims are distinguishable from the claims barred in *Kirschner* and that the policies stated by the Court in *Kirschner* do not extend to bar customers of a corporation from bringing their own claims for damages caused by third parties

who aided and abetted the acts of wrongdoing insiders. It is true, as stated above, that the Plaintiffs' Refco fraud claims are indirect. And it is true that the Special Master used the word "derivative" in the Standing R and R. But the Plaintiffs' Refco fraud claims are not "derivative" in the sense employed by the Court in *Kirschner* and by the *in pari delicto* doctrine. "Derivative" in the *in pari delicto* sense means that the claims that are brought are the ones actually held by the corporation, and so the plaintiff to recover must be stepping into the shoes of the corporation; as such, the wrongdoing of the insiders is imputed to such plaintiffs. But that scenario does not cover a plaintiff's claim for damages that, while indirect, are actually suffered by both the corporation and the plaintiff. In that latter case, principles of prudential standing bar the plaintiffs' claims in the first instance. But once that bar is lifted — as it is in this case — there is no justification for applying *in pari delicto* to claims where the plaintiff is suing for its own damages.

The important distinction in this case is therefore between claimants that are bringing claims of the corporation and so are stepping into the shoes of the corporation, and claimants whose injuries are their own but are indirect. That distinction 1) withstands the Court of Appeals' decision in *Kirschner;* 2) is supported by substantial case law interpreting the *Wagoner* doctrine; and 3) is justified by the case law discussing which plaintiffs step into the shoes of the corporation so as to trigger the *in pari delicto* doctrine. These points will be discussed in turn.

### New York Court of Appeals Kirschner Opinion

The holding and rationale of the New York Court of Appeals' decision in *Kirschner* is dependent on a plaintiff being one whose claim is derivative in the sense that it is stepping into the shoes of the corporation and is actually bringing the corporation's claim. It does not apply to claims brought by customers for their own damages. Consider the following arguments that the *Kirschner* Court makes for its view of *in pari delicto:*

1. *Imputation:* On the fundamental underlying principle of imputation, the Court had this to say:

Traditional agency principles play an important role in an *in pari delicto* analysis. Of particular importance is a fundamental principle that has informed the law of agency and corporations for centuries; namely, the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals. * * * After all, the principal is generally better suited than a third party to control the agent's conduct, which at least in part explains why the common law has traditionally placed the risk on the principal.

* * *

In sum, we have held for over a century that all corporate acts—including fraudulent ones—are subject to the presumption of imputation. And, as with *in pari delicto*, there are strong considerations of public policy underlying this precedent: imputation fosters an incentive for a principal to select honest agents and delegate duties with care.

11

Id at 465 (internal quotes and citations omitted)..

The Court's rationale does not justify extending the concept of imputation to *customers* of a corporation who are suing for their own injuries. The fact that a customer's claim might be indirect does not mean that when it sues, it is stepping into the shoes of a corporation in the sense that it could be deemed to have controlled the wrongdoing insider.

      2. *Distinguishing Claims Brought on Behalf of the Corporation From Claims Brought By Victims of the Fraud:* The *Kirschner* Court, in the context of its *in pari delicto* discussion, noted that all parties agreed that the corporation would be responsible for the  wrongful acts of its insiders in lawsuits brought by victims against the corporation:

> No one disputes that traditional imputation principles, including a narrowly confined adverse interest exception, should remain unchanged—indeed, are essential—in other contexts. For example, in a suit against Refco or AIG by an innocent victim of the frauds, no one would suggest that the wrongful acts of the corporate insiders could not be attributed to their principals.

Id. at 469.

      The *Kirschner* Court thus recognizes that innocent customers could *sue* Refco for the harms caused by its insiders. That recognition is quite inconsistent with the Defendants' position that the Plaintiffs are saddled with the acts of the Refco wrongdoers. Again, nothing in *Kirschner* establishes that customers of a corporation step into the shoes of that corporation when suing for their own injuries *caused* by the corporation and third parties.

      3. *Public Policy Discussion:* As the Defendants correctly point out, the New York Court of Appeals in *Kirschner* engages in a policy discussion in which it finds no reason to prefer the interests of "innocent stakeholders of the corporation" over those of the innocent stakeholders of the third-party defendants. Id at 475. It must be remembered, however, that this policy discussion was in the context of cases brought by plaintiffs who succeeded to the juridical interests of the corporation and who were bringing the corporation's claims — not to a case in which the plaintiffs are suing for their own (albeit indirectly suffered) injuries.

      The bottom line is that while the New York Court of Appeals had a lot to say about the *in pari delicto* doctrine, the adverse interest exception, and imputation, its reasoning and rulings do not support the proposition that when a customer sues for its own injuries it is stepping into the shoes of the corporation and so is saddled with the misdeeds of corporate insiders. In fact there is nothing at all in *Kirschner* about the determinative question in this case — whether customers are stepping into the shoes of the corporation when they are suing for indirect injuries and the primary victim is the corporation itself.  That question was not before the court, as both sets of plaintiffs conceded that they were pursing the corporation's claims — as they had to, because a Bankruptcy Trustee is by law  pursuing claims of the estate and a shareholder derivative action is by law just that, a derivative

action to pursue the claims of the corporation.

### Case Law on Wagoner Doctrine

A large number of cases hold that if a corporation is barred from suing for harms to the corporation due to *in pari delicto,* those claims can then be brought by creditors of the wrongdoing corporation. That right of creditors to bring their own claims when the trustee is barred is a function of the *Wagoner* doctrine. *See Shearson Lehman Hutton v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991) (bankruptcy trustee does not have standing to seek recovery from third parties where corporate insiders engaged in the wrongdoing that caused the damages; right of action accrues to the creditors, not the wrongdoing corporation).[9]

For example, Judge Scheindlin, in *Am. Tissue, Inc. v. Arthur Andersen, LLP,* 2003 WL 22909155, at *4 (S.D.N.Y.), noted that *Wagoner* barred the claims of the bankruptcy debtor-in-possession, but not the individual claims of the corporation's creditors:

> The *Wagoner* rule certainly does not serve as a 100% defense to a negligence claim. It only serves as a defense to the bankrupt corporation or its trustee asserting that claim. ATI's creditors are free to pursue these claims against Andersen, who may then be responsible for its comparative share of the damages. (Internal citations and quotations omitted).[10]

---

[9]*Wagoner* is a prudential limitation on standing in bankruptcy cases. *Kirschner v. KPMG LLP,* 15 N.Y.3d 446, 938 N.E.2d 941, 912 N.Y.S.2d 508, 513 n.3 (2010). Thus, "the *Wagoner* rule is not part of New York law except as it reflects the *in pari delicto* principle, and in New York, *in pari delicto* is an affirmative defense, not a matter of standing." Id. As recognized in the *in pari delicto* R and R, the courts have consistently held that the *Wagoner* and *in pari delicto* doctrines are substantively identical. *See, e.g., Global Crossing Estate Representative v. Winnick,* 2006 WL 2212776, at *12, n. 16 (S.D.N.Y.).

[10] The Plaintiffs make the argument that *Wagoner* establishes that claims for third party fraud may *always* be brought by the creditors. But *Wagoner* cannot be taken that far as applied to claims as in this case where the primary wrong is suffered by the corporation and the secondary wrong by the customer. *Wagoner* is a rule governing cases involving internal corporate wrongdoing — i.e., it tracks the *in pari delicto* doctrine. As discussed in the Standing R and R at 20-21 (set forth in text above), claims of creditors of a bankrupt corporation are in the first instance property of the estate and are to be pursued by the Trustee. *Wagoner,* properly read in its context, must mean that if the corporation was injured by wrongdoing insiders, the Trustee is therefore barred from suing and the claims can *then* be brought by the creditors. *See, e.g.*, *In re 1031 Tax Group, LLC,* 420 B.R. 177, 194 (S.D.N.Y. 2009) ("[C]laims for aiding and abetting breaches of fiduciary duty belong to the estate, just as claims for the underlying breaches do. But, if *in pari delicto* applies, where the company (or a chapter 11 trustee, standing in the shoes of the company) is in equal fault, under state law the cause of action may belong to the creditors

Myriad cases are in accord with Judge Scheindlin's analysis that if the trustee is barred by *in pari delicto,* then creditors may bring claims against third parties for damages suffered by them. *See, e.g., Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1094 (2d Cir. 1995) (trustee barred by *in pari delicto*; tort claims against third parties accrued to creditors who suffered harm); *Solow v. Stone,* 994 F.Supp. 173, 181 (S.D.N.Y.), *aff'd,* 163 F.3d 151 (2d Cir. 1998) ("where third parties aid and abet a corporation's breach of duty to its creditors, the cause of action against those third parties belongs to the creditors"); *Complete Mgmt., Inc. v Arthur Andersen, LLP, (In re Complete Mgmt., Inc.),* 2003 WL 21750178, at *2 (S.D.N.Y.) (" Because managerial misconduct will be imputed to the company, a bankruptcy trustee or creditors' committee suing on the company's behalf stands in the place of the very parties who are alleged to have participated in defrauding the investors. Hence, when professional defendants are accused of assisting a company's managers in wrongdoing, the claim belongs to the creditors qua creditors, and cannot be asserted by the company, its trustee in bankruptcy, a committee of unsecured creditors, or anyone else standing in the shoes of the debtor corporation.") (internal citations and quotations omitted).

The Defendants argue that the Plaintiffs' reliance on *Wagoner* for the proposition that they may bring their claims when the Trustee is barred by *in pari delicto* is misplaced, because *Wagoner's* imprimatur cannot cover secondary claims. The Defendants rely on *Primavera Familienstiftung v. Askin,* 1996 WL 494904, at *12 (S.D.N.Y.) (stating that even if *Wagoner* bars the Trustee's claims, the creditors cannot sue for secondary injury). But Judge Rakoff, in his order affirming the Standing R and R, specifically agreed with the Special Master's determination that the standing limitation on the Plaintiffs' Refco fraud claims  would be lifted if it was determined that the Trustee's claims were barred by *Wagoner/in pari delicto.* The result in *Primavera* is admittedly in  tension with that ruling, but Judge Rakoff's  ruling is the law of the case.[11] Notably, *Primavera* does *not* hold that the creditor's derivative claims would be barred by the same *in pari delicto* ruling that barred the Trustee — and that is the ruling the Defendants are seeking here.

Indeed, as will be seen in the next section, there is no reported case providing that an individual customer's claim is barred by *in pari delicto* on the ground that the customer steps into the shoes of the wrongdoing corporation.

### 3. When Does a Plaintiff Step Into the Shoes of the Wrongdoing Corporation?

---

rather than the company to pursue a claim for damages particular to the creditors.") (citations and internal quotations omitted).  Any broader implication from *Wagoner* would be inconsistent with 11 U.S.C. § 541(a)(1) and the case law thereunder, discussed supra.

[11] It should also be noted that the reasoning in *Primavera* —  if a claim is secondary it can never be brought even if the primary claim is barred — is also in tension with Judge Preska's ruling to the contrary in *Ligator, supra. See* note 4 *supra* and accompanying text.

Second Circuit case law does not support the proposition that a customer of a wrongdoing corporation, suing a third party for harm caused by both that party and the corporation, steps into the shoes of the corporation when bringing an action for damages suffered by the customer. What is required for triggering *in pari delicto* is some kind of juridical representation of the corporation's interest. In this case, the Plaintiffs' claims for injuries from the Refco fraud, while *secondary* to that of RCM, are undeniably claims for their own damages — specifically, the millions of dollars lost by SphinX and the damage to PlusFunds' business enterprise. The suit does not ask for damages suffered by RCM — and that is the difference between "indirect" and "derivative" in the *in pari delicto* context.

The case law establishes that the plaintiffs who have been barred by *in pari delicto* are only those who are actually invoking a right to sue for  the damages suffered by the corporation. Examples include

1) The Litigation Trustee in *Kirschner* and the Trustee in *Wagoner.*

2) The plaintiff in the companion case of *AIG,* who filed a shareholder derivative action specifically purporting to recover damages suffered by the corporation. 912 N.Y.S.2d at 515.[12]

3) The debtor-in-possession in *American Tissue, supra*, which is obviously juridically connected to the corporation itself.

4) A liquidator who, by force of law, has the obligation to pursue the claims of the corporation and so  "stands in the shoes of the defunct corporation." *Wight v. BankAmerica Corp.,* 219 F.3d 79, 86 (2d Cir. 2000).

The closest case for the Defendants is *Mediators, Inc. v. Manney (In re The Mediators, Inc.),* 105 F.3d 822 (2d Cir. 1997). In *Mediators,* a committee of unsecured creditors was held barred by the *Wagoner* doctrine from bringing claims against third parties for aiding and abetting the breach of fiduciary duty of a corporate insider. But while the claim was pursued by creditors, the committee specifically averred that it was suing on a claim that belonged to the debtor — as the Court noted, New York law authorizes a  committee of creditors to stand in the shoes of the debtor to bring an action to recover property that was unlawfully conveyed under Section 720 of New York's Business Corporation Law.[13] Apparently the creditors brought the corporation's claim rather than their own because the creditors' own claims for damage were time-barred.[14]

_____

[12] See 912 N.Y.S.2d at 525 ("the Litigation Trustee and the derivative plaintiffs urge us to consider that, although they both stand in the shoes of the corporate malefactors . . .").

[13] Id at 825, n. 1.

[14] Id. at 825 ("The appellees' papers state that a claim by creditors in their own right would be time-barred under New York law. Whether that is so is not before us, and we must address the present action in the form in which it was brought.").

15

According to the *Mediators* Court, the fact that the unsecured creditors' committee was suing for the corporation's injuries rather than their own made all the difference in the application of the *Wagoner/in pari delicto* doctrine:

> We emphasize at the outset that the issue before us is whether a creditors' committee standing in the shoes of the debtor may bring a claim against parties alleged to have aided and abetted the debtor's breach of fiduciary duties. This particular action is by no means the only remedy for such acts available under New York law. Indeed, that is the problem. Where third parties aid and abet a fiduciary's breach of duty to creditors — as is claimed here — the creditors may bring an action in their own right against such parties.

Id.

In sum, a plaintiff steps into the shoes of the corporation, for *in pari delicto* purposes, when it has a legal connection to the corporation that allows it to bring a claim for damages suffered by the corporation. The Defendants have not cited a case — and the Special Master has found none — that applies the *in pari delicto* doctrine where the plaintiff purports to sue for its own injuries, and not those of the corporation.

In this case, the Plaintiffs are suing for the $263 million that was lost by SMFF in the Refco fraud, and for the business damages suffered by PlusFunds. These are obviously not damages suffered by Refco. It is true that the damages claimed are indirect, as they occurred only because RCM had itself been damaged and was unable to pay. But if the Plaintiffs' actions are to be barred, it is not because of the *in pari delicto* doctrine, which requires the Plaintiffs to be suing for the corporation's injury. Rather the only basis for barring the Plaintiff's Refco fraud claims is that raised in the Standing R and R — these damages are indirect. But it has already been held by Judge Rakoff that the indirect-damage standing bar has been lifted now that the Refco Trustee has been barred from bringing Refco's claims.

Accordingly, the Plaintiffs have standing to bring their Refco fraud claims, and there is no justification for barring the Plaintiffs' Refco fraud claims on grounds of *in pari delicto*.

### III.  *Conclusion and Recommendation*

The Defendants' motion to dismiss the Plaintiffs' Refco fraud claims on grounds of *in pari delicto* should be denied.

16

Daniel J. Capra
Special Master

Dated: July 5, 2011
New York, New York