UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re REFCO, INC. SECURITIES LITIGATION | Case No. 07-md-1902 (JSR) |

| | |
|---|---|
| KENNETH M. KRYS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTOPHER SUGRUE, *et al.*, <br><br> Defendants. | Case No. 08-cv-3065 (JSR) <br> Case No. 08-cv-3086 (JSR) |

| | |
|---|---|
| KENNETH M. KRYS and CHRISTOPHER STRIDE, as JOINT OFFICIAL LIQUIDATORS of SPHINX LTD., *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT AARON, *et al.*, <br><br> Defendants. | 08 Civ. 7416 (JSR) |

**BRIEF OF DEFENDANTS MARK KAVANAGH AND
BRIAN OWENS ON APPEAL OF SPECIAL MASTER HEDGES'
DISPOSITION OF DEFENDANTS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Defendants Mark Kavanagh
and Brian Owens*

August 3, 2011

# TABLE OF CONTENTS

Page

QUESTIONS PRESENTED ................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT ........................................................................................................................ 5

    I.    Documents Seen By The Knight Third Parties Are Not Privileged ....................... 5

    II.   Ginsberg's Communications With The SPhinX Directors And Jon Knight Were Created In Connection With His Representation Of SPhinX, Which Has Waived Its Privilege ................................................................ 9

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Bowne, Inc. v. AmBase Corp.*,
  150 F.R.D. 465 (S.D.N.Y. 1993) .................................................................................... 7

*Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.*,
  No. 08 civ. 6143, 2010 WL 343490 (S.D.N.Y. Feb. 1, 2010) ...................................... 6

*In re Honeywell Int'l, Inc. Sec. Litig.*,
  230 F.R.D. 293 (S.D.N.Y. 2003) .................................................................................... 7

*In re Horowitz*,
  482 F.2d 72 (2d Cir. 1973) ............................................................................................. 6

*Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*,
  No. M8-85, 1999 WL 378337 (S.D.N.Y. June 10, 1999) ............................................. 7

*Ratliff v. Davis Polk & Wardwell*,
  354 F.3d 165 (2d Cir. 2003) ........................................................................................... 6

*United States v. Ackert*,
  169 F.3d 136 (2d Cir. 1999) ........................................................................................... 6

*United States v. Int'l Bhd. of Teamsters*,
  119 F.3d 210 (2d Cir. 1997) ........................................................................................... 5

*United States v. Jacobs*,
  117 F.3d 82 (2d. Cir. 1997) ............................................................................................ 6

*United States v. Schwimmer*,
  892 F.2d 237 (2d Cir. 1989) ........................................................................................... 6

## Rules

Fed. R. Evid. 502(d) ....................................................................................................... 3, 5

Local Civ. R. 26.2 ............................................................................................................... 7

Defendants Mark Kavanagh and Brian Owens respectfully submit this brief in support of their appeal from the disposition by Special Master Hedges of Kavanagh and Owens' motion to compel the production of documents by third party Peter Ginsberg. Defendants also submit in support of this brief the Declaration of Abraham W. Shaw ("Shaw Decl.") and the respective exhibits appended thereto.

## QUESTIONS PRESENTED

1. Did the Special Master err in permitting Ginsberg to withhold documents as privileged even though the documents were authored by or sent to persons outside the privilege group?

2. Did the Special Master err in permitting Ginsberg to withhold documents as privileged even though Ginsberg's former client, the plaintiff in this action, has expressly waived its privilege?

## STATEMENT OF FACTS

In 2006, Ginsberg, an attorney, represented one of the plaintiffs in this action ("SPhinX") and two then-current SPhinX directors: Andrew Feighery and Patrina Khoo Farquharson. Karlan Decl., ¶ 3.[1] *See also* Karlan Decl. Ex. 1 at 15; Exs. 2–6.

At the same time, Ginsberg also represented Jon Knight, a former hedge fund manager, Jon Knight's children, Jonathan Knight and Jayme Colter, and Tamischa Ambrister, a business colleague of the Knight family (collectively, the "Knight Third Parties"). Karlan Decl., Ex. 30.

None of the Knight Third Parties were employed by SPhinX, and there is no joint representation agreement between SPhinX and any of them. None of the Knight Third Parties had a joint representation agreement with Feighery. According to Ginsberg, Farquharson and

---

[1] Declaration of Mitchell A. Karlan in Support of Defendants Mark Kavanagh and Brian Owens' Motion to Compel the Production of Documents by Peter Ginsberg, dated Dec. 8, 2010. *See* Shaw Decl., Ex. 5.

Jon Knight had an oral, joint representation agreement that covered certain matters, but not matters related to the SPhinX litigation. *See* Karlan Decl., Ex. 30.

The Knight Third Parties are not attorneys, and are not parties to any of the Refco MDL cases. Jon Knight is, however, an important witness in this case. He has been interviewed by current litigation counsel for SPhinX, and Ginsberg represented him in that interview. According to Ginsberg, Knight considers himself a "victim" of the actions alleged in the complaint in this action. Karlan Decl., Ex. 34 at 141–44.

In 2006, Liquidators were appointed for SPhinX in the Cayman Islands, and they disengaged Ginsberg. Karlan Decl., ¶ 9. The Liquidators waived all privileges belonging to SPhinX relevant to these subpoenas. Karlan Decl., ¶ 10; Karlan Decl., Ex. 9 at 24. In recognition of that waiver, Ginsberg assured the Special Master that "[n]o documents that were generated as board members will be the subject of a privilege." *Id.* at 27.

Kavanagh and Owens served subpoenas on Ginsberg in September 2009. Ginsberg confirmed his acceptance of service. Karlan Decl., Ex. 16. *See also* Karlan Decl., Exs. 11–15. The subpoenas requested, among other things, all documents "concerning SPhinX." Ginsberg produced documents but withheld as privileged 911 documents. On his privilege log, Ginsberg invoked only the attorney-client privilege, not the work product doctrine, with respect to the vast bulk of the documents still at issue now. Karlan Decl., Ex. 33.

After extended negotiations and conferences with the Special Master failed to resolve the dispute over privilege, *see* Karlan Decl., Exs. 1, 21, 23, 26–32, Kavanagh and Owens moved to compel in December 2010.[2]

At the suggestion of the Special Master, the parties then agreed to and this Court entered an Order pursuant to Rule 502(d) of the Federal Rules of Evidence on January 24, 2011. Shaw Decl., Ex 1.

On March 24, 2011, the Special Master ordered Ginsberg to produce documents pursuant to the Rule 502(d) Order.[3] Shaw Decl., Ex.2. Ginsberg commenced an appeal to this Court, but withdrew it based on an agreement as follows:

On April 8, 2011, Ginsberg produced for Rule 502(d) inspection (but not for copying) all but about 35 of the 911 withheld documents, without prejudice. The remaining 35 documents were submitted to the Special Master for *in camera* review on May 5, 2011.[4] After reviewing the documents Ginsberg made available for Rule 502(d) inspection, counsel for Kavanagh and Owens requested that Ginsberg copy and fully produce 254 of those documents that were not privileged or for which privilege had been waived (and agreed not to pursue further the remainder). Of those 254 documents requested by counsel for Kavanagh and Owens, Ginsberg

---

[2] Because Ginsberg is the former counsel to SPhinX, all SPhinX-related documents in his possession should have been produced long ago by *plaintiffs* in response to the many requests for production under Rule 34 that have been made in this action. They were not produced or otherwise identified. Moreover, it is plain from Ginsberg's production that plaintiffs' counsel did not effectively gather, preserve, or produce many SPhinX-related documents in the possession of SPhinX former board members Feighery and Farquharson.

[3] In his March 24, 2011 Order, the Special Master included the DPM defendants, noting that they also had served a subpoena on Ginsberg and had joined in the efforts of defendants Kavanagh and Owens to compel Ginsberg to produce documents.

[4] The parties expressly agreed that no party waived its right to appeal by participating in this arrangement. *See* Shaw Decl., Ex. 4.

3

produced, without restrictions, only 49 documents;[5] he refused to fully produce 205 of the requested documents.[6]

On July 8, 2011, the Special Master reviewed the 35 documents submitted *in camera* and ordered partial production of 4. Shaw Decl., Ex. 3. At the Special Master's direction, no counsel were present during his review, or as he dictated his decision during his review. As is evident from the transcript of the Special Master's *in camera* review, the Special Master relied heavily on a declaration from Ginsberg, dated May 2, 2011 (the "Ginsberg Declaration" or "Ginsberg Decl.") that was not served on or seen by defense counsel until July 28, 2011, and has never been seen in full by defense counsel.[7]

In reviewing the documents *in camera*, the Special Master appears to have ruled, based on the Ginsberg declaration, that Jon Knight was a "consultant" to Ginsberg, and that therefore

---

[5] Ginsberg produced 82 PDFs comprising many partial documents that constitute 49 documents-in-whole that Kavanagh and Owens requested.

[6] Thus, in addition to the 35 documents that Ginsberg provided to the Special Master *in camera*, the 205 documents requested by counsel for Kavanagh and Owens, but not fully produced by Ginsberg outside of the inspection process, remain in dispute. Significantly, 178 of these 205 documents were sent to or written by one or more of the Knight Third Parties. The remaining 27 documents involve advice given in Ginsberg's capacity as SPhinX counsel.

[7] When Ginsberg sent the 35 documents to the Special Master for *in camera* review, he also sent to the Special Master, but did not file or serve on defense counsel, the 65-paragraph Ginsberg Declaration that included legal argument and a recital of historical facts with which we disagree. Ginsberg's transmittal letter, which he served on us, stated merely that the submission was a declaration "detailing the documents" being submitted *in camera*. That was false. It was not until we read the transcript of the Special Master's review that we first learned that the Ginsberg Declaration was in fact substantive. We asked that it be disclosed to us and the Special Master directed that a redacted version be provided. Significantly, the Special Master was unaware during his *in camera* review that defense counsel had not been provided with a copy of the Ginsberg Declaration. A redacted version of the Ginsberg Declaration was finally provided to us eight days ago—on July 28, 2011. We have still not seen the remainder of the Ginsberg Declaration. We do not understand the redacted portion of the Ginsberg Declaration to include allegedly privileged communications. The Ginsberg Declaration has never been filed in any form. We respectfully request that the declaration not be filed in redacted form and that it be produced to counsel in its entirety.

Ginsberg's communications with him, and the directors' communications with Ginsberg that were then forwarded to Knight, remained privileged.[8] *See* Shaw Decl., Ex. 3 at 12:15–25.

This appeal thus involves: (a) 205 requested documents that were reviewed under Rule 502(d) but not eventually produced or only partially produced, and (b) the 35 documents that were not inspected under Rule 502(d), but were instead reviewed *in camera* by the Special Master. Almost all of the documents at issue on this appeal were sent to or written by one or more of the Knight Third Parties.[9] In addition, all of the documents that we have seen (pursuant to Rule 502(d)) involve legal issues relevant to SPhinX and advice to SPhinX, and they are therefore within the waiver of the privilege announced by the Liquidators.

## ARGUMENT

### I.  Documents Seen By The Knight Third Parties Are Not Privileged

"The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997).

Most of the withheld documents still at issue were sent to and/or written by the Knight Third Parties, and are not therefore privileged. Ginsberg has stated that Farquharson and Jon Knight had an oral, joint representation agreement that covered certain non-SPhinX matters. Aside from that irrelevant connection, the Knight Third Parties were not employed by SPhinX, Feighery, or Farquharson, and no written joint representation agreement with any of those three clients. Ginsberg has never asserted that Farquharson and Jon Knight shared a joint privilege

---

[8] This ruling implicates not only the 35 documents the Special Master reviewed, but prevents Kavanagh and Owens from receiving 178 of the 205 requested but withheld documents as well.

[9] The Special Master ruled that certain of the 35 documents he reviewed *in camera* were irrelevant. We do not challenge those rulings.

5

relationship concerning the SPhinX matter, and, indeed, he has specifically disclaimed that such a privileged relationship existed. *See* Karlan Decl., ¶ 28; *see also United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) ("Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected."). Furthermore, Ginsberg acknowledges that Feighery did not have a joint representation with any of the Knight Third Parties. *See* Karlan Decl., Ex. 30.

In light of these facts, Ginsberg has implicitly abandoned any contention that the Knight Third Parties had a common interest privilege with SPhinX or the former directors. Now, Ginsberg's main claim is that Jon Knight served as his "advisor" or "consultant" on the SPhinX matter. *See* Karlan Decl., ¶ 28. Neither the facts, including Ginsberg's own representations in connection with this litigation, nor the law, support the notion that Jon Knight was a consultant to Ginsberg such that any communications among Ginsberg, Jon Knight, and the former SPhinX directors can be considered privileged.

First, whatever may be the case concerning work product, an attorney may not share privileged client communications with a non-attorney consultant without waiving the privilege. Voluntary disclosure of privileged communications to a third party waives any attorney-client privilege that the parties to that communication may have enjoyed.[10]

"[A] communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999); *see also Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.*, No. 08 civ. 6143, 2010 WL 343490, at *2 (S.D.N.Y. Feb. 1, 2010) (inclusion of a third party because of his knowledge of the

---

[10] *See, Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003); *United States v. Jacobs*, 117 F.3d 82, 91 (2d. Cir. 1997); *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973).

6

facts is "insufficient to bring him within the purview of the attorney-client privilege"); *Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, No. M8-85, 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999) (finding that "the 'necessity' element means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable").

Ginsberg appears now to acknowledge these principles, because of late he has stopped asserting that the documents are protected by the attorney-client privilege, and has started defending his non-disclosure solely on grounds of the work product doctrine. Ginsberg Decl., at ¶ 47.

But with respect to almost all of the documents still at issue, Ginsberg did not invoke the work-product doctrine when he served his privilege log in 2010. And it is too late to do so now. *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 489-90 (S.D.N.Y. 1993) (holding work-product doctrine waived where party sought in its answering papers on a motion to compel "to invoke the work-product rule for a variety of documents that were listed in its privilege log as subject only to the attorney-client privilege"); *In re Honeywell Int'l., Inc. Sec. Litig.*, 230 F.R.D. 293, 299 (S.D.N.Y. 2003) (accord); *see also* Local Civ. R. 26.2.

Even if the law were otherwise, the facts do not support the notion that Jon Knight was ever a legal advisor or consultant to Ginsberg in connection with Ginsberg's representation of the former SPhinX Directors. No written agreement between Jon Knight and Ginsberg memorializing any such consultancy arrangement exists, and Jon Knight was not compensated for any services. Ginsberg Decl., at ¶ 46. No affidavit from Knight is in the record. This defeats Ginsberg's assertion. *See, Fifty-Six Hope Rd.*, 2010 WL 343490, at *1.

Indeed, in a transcribed statement in this case, Ginsberg *specifically denied* that Jon Knight served as his consultant.

> Mr. Beus: . . . [A]s of January 25, 2006, even though you have only been in just a few days, you're seeing your consultant Jon Knight, who has a lot of industry background, telling you that there's a problem here and PlusFunds should be responsible for some, if not all, of SPhinX's loss for not making certain that the cellular structure was . . . properly adhered to.
>
> Ginsberg: *I would take out the characterization of Jon Knight as my consultant*, but what you described as a serious issue was in fact a serious issue.
>
> Mr. Beus: How should I refer to Jon Knight as?
>
> Ginsberg: *Somebody whose intellect and knowledge I respect, and from time to time I would run ideas passed him.*

Karlan Decl., Ex. 34 at 172 (emphasis added).

Moreover, the notion that Ginsberg would have employed Jon Knight as his legal consultant in the SPhinX matter given Jon Knight's criminal history is ridiculous. In December 2004, Jon Knight pled guilty to attempted grand larceny in the first degree before the Supreme Court of the State of New York, in *New York v. Knight*. *See* Karlan Decl., Ex. 24. According to the plea agreement and the criminal information against Jon Knight, Jon Knight attempted to steal more than $1 million from a trust to which he served as investment advisor. *Id.* At the same time Ginsberg was forwarding to Jon Knight communications concerning SPhinX and PlusFunds Group Inc., an investment advisor, Jon Knight was subject to a settlement with the Securities and Exchange Commission that indefinitely barred him *from associating with any investment advisor*. *See* Karlan Decl., Ex. 25.

8

Jon Knight was a long-time colleague of Farquharson who considered himself a victim of the Refco collapse. Karlan Decl., Ex. 34 at 141–44. He is a critical fact witness in this case.[11]

The fact that Ginsberg would "run ideas passed" Jon Knight from "time to time" is not enough to cloak the communications they shared in privilege.

## II. Ginsberg's Communications With The SPhinX Directors And Jon Knight Were Created In Connection With His Representation Of SPhinX, Which Has Waived Its Privilege

Even if Jon Knight was a consultant, and if that is legally relevant, the fact remains that SPhinX has waived its privilege related to these documents. The Liquidators have waived all privileges belonging to SPhinX up through June 30, 2006. Accordingly, Ginsberg assured the Special Master that "[n]o documents that were generated as board members will be the subject of privilege." Karlan Decl., Ex. 9 at 27. Nonetheless, Ginsberg has wrongfully withheld or redacted scores of documents dated between January and June 2006 that relate to Ginsberg's role as SPhinX's counsel.

Ginsberg was acting on behalf of and advising SPhinX generally with respect to a wide variety of issues including: approving indemnity requests, legal fees and other third party costs, meeting with investors to address concerns regarding the preference settlement with Refco, revising draft SPhinX Board minutes and resolutions, and interviewing potential investment advisors. *See* Karlan Decl., Exs. 35–39. On behalf of SPhinX, Ginsberg filed a complaint against Kavanagh and Owens in June 2006. Karlan Decl., Exs. 7–8.

---

[11] Even if Jon Knight were a consultant, and even if that fact were legally relevant, some of the documents still in dispute were also disclosed to the other three Knight Third Parties. *See, e.g.*, e-mail from Peter Ginsberg to Jayme Colter, Patrina Farquharson, Jon M. Knight with copy to Jonathan Knight, dated June 6, 2009. Ginsberg offers no valid excuse why privilege on these documents has not been waived.

9

Based on our review of the documents under Rule 502(d), it is plain all of the withheld documents fall within *SPhinX's* privilege.[12] Indeed, we have seen no document in which Feighery or Farquharson were seeking personal legal advice from Ginsberg. Rather, they all involve how SPhinX should be dealing with the unfolding Refco scandal. Because the Liquidators have waived all privileges on behalf of SPhinX, Ginsberg should be ordered to produce those documents.

## CONCLUSION

For the reasons set forth above, Defendants Kavanagh and Owens respectfully request that this Court enter an order in their favor awarding the following relief:

a. ordering Ginsberg to produce any previously withheld documents authored by or sent to Jon Knight, Jonathan Knight, Jayme Colter, or Tamischa Ambrister;

b. ordering Ginsberg to produce all remaining withheld documents; and

c. awarding Kavanagh and Owens the costs and attorneys' fees associated with the enforcement of this subpoena.

Dated: New York, New York
August 3, 2011

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: _____
Mitchell A. Karlan (MK-4413)
David J. Kerstein (DK-7017)
Abraham W. Shaw (AS-5830)

200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-5254

*Attorneys for Defendants Mark Kavanagh and Brian Owens*

---

[12] The Special Master has not reviewed those documents. Even as to the documents he did review, the Special Master made no finding on this point.