UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                                                   :
In re REFCO, INC. SECURITIES LITIGATION        :   07 MDL No. 1902 (JSR)
                                                                   :
                                                                   :
                                                                   :
------------------------------------------------------------------ x
                                                                   :
KENNETH M. KRYS, *et al.,*                     :
            Plaintiffs,                        :
                                               :   08 Civ. 3086 (JSR)
       v.                                      :
                                               :   08 Civ. 3065 (JSR)
CHRISTOPHER SUGRUE, *et al.,*                  :
            Defendants.                        :
                                               :
------------------------------------------------------------------ x


**BRIEF OF NON-PARTIES PETER R. GINSBERG, PATRINA FARQUHARSON AND ANDREW FEIGHERY IN OPPOSITION TO APPEAL OF SPECIAL MASTER HEDGES' ORDER ON DISCOVERY DISPUTES DATED JULY 21, 2011**

                                        Peter R. Ginsberg
                                        Christina N. Burgos
                                        GINSBERG & BURGOS PLLC
                                        12 E. 49th Street, 30th Floor
                                        New York, New York 10017
                                        Telephone: (646) 374-0029

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 1

    1.    The Underlying Ginsberg Representation ...................................................................... 2

        a.    Ginsberg Represents Ms. Farquharson and Mr. Feighery ........................................... 2

        b.    Ginsberg Represents SPhinX for a Limited Purpose .................................................... 4

        c.    The Subpoenas ................................................................................................................ 4

        d.    Motion to Compel .......................................................................................................... 5

SCOPE OF APPEAL ................................................................................................................ 6

ARGUMENT ............................................................................................................................. 6

CONCLUSION .......................................................................................................................... 9

## TABLE OF AUTHORITIES

### CASES

*Allen v. West Point-Pepperell Inc.*,
848 F.Supp. 423 (S.D.N.Y. 1994) .......................................................................................... 7

*Gucci America, Inc. v. Guess?, Inc.*,
271 F.R.D. 58 (S.D.N.Y. 2010) ............................................................................................. 6

*Hickman v. Taylor,*
329 U.S. 495 (1947) ............................................................................................................... 8

*In re Currency Conversion Antitrust Litig.*,
2010 WL 4365548 (S.D.N.Y. Nov. 3, 2010) ........................................................................ 6

*Malletier v. Dooney & Bourke, Inc.*,
525 F.Supp.2d 558 (S.D.N.Y. 2007) ..................................................................................... 7

*Sterling Drug Inc. v. Harris,*
488 F.Supp. 1019 (S.D.N.Y.1980) ........................................................................................ 8

*U.S. v. Adlman,*
134 F.3d 1194 (2d Cir. 1998) ................................................................................................. 8

*U.S. v. Nobles,*
422 U.S. 225 (1975) ............................................................................................................... 8

*Weinhold v. Witte Heavy Lift, Inc.*,
1994 WL 132392 (S.D.N.Y. Apr. 11, 1994) ......................................................................... 8

### RULES

Fed. R. Civ. P. 26(b)(3)(A) ......................................................................................................... 8

Fed. R. Civ. P. 53(e)(2) ............................................................................................................... 7

ii

## PRELIMINARY STATEMENT

This appeal involves materials that were submitted to Special Master Ronald J. Hedges for *in camera* review after the parties agreed to a stipulated procedure to end what can only be described as a prolonged and burdensome discovery dispute imposed on non-parties to this action. Special Master Hedges reviewed agreed-upon documents *in camera* and issued an Order on Discovery Disputes dated July 21, 2011 ("Order"). (Case 1:07-md-01902-JSR, Docket No. 1207.) Defendants Mark Kavanagh and Brian Owens, who are represented by Gibson, Dunn & Crutcher LLP and DPM-Mellon, Guy Castranova and the Bank of New York Mellon Corp., who are represented by DLA Piper, LLP (collectively, "Defendants"), appealed that Order.[1] This appeal is limited to that Order despite Defendants' attempts to expand the appeal to matters that are not properly before this Court. Special Master Hedges issued a reasoned and thorough Opinion that should not be disturbed.

## STATEMENT OF FACTS

Gibson Dunn issued a non-party subpoena dated September 9, 2009, in the name of Crowell & Moring LLP and Peter R. Ginsberg as a partner at Crowell & Moring LLP, Mr. Ginsberg's former firm. DLA Piper also issued a subpoena to Mr. Ginsberg dated April 8, 2010. The Subpoenas sought materials related to Mr. Ginsberg's representation of Patrina Farquharson and Andrew Feighery ("Clients").[2]

---

[1] Throughout this discovery dispute, DLA Piper has received documents released to Gibson Dunn. DLA Piper has joined in Gibson Dunn's briefing for this appeal.

[2] Crowell & Moring gathered, reviewed, and produced materials pursuant to the Subpoenas. Crowell & Moring attorneys marked privileged materials and segregated them on a privilege log. Crowell & Moring never completed the privilege log. After Mr. Ginsberg left Crowell & Moring and joined Ginsberg & Burgos, Crowell & Moring refused to remedy its defective privilege log on the grounds that the Clients were no longer with the firm despite having charged and received payment for the work. Nonetheless, Defendants did not object to releasing Crowell & Moring of its obligations.

1) <u>The Underlying Ginsberg Representation</u>

   a) *Ginsberg Represents Ms. Farquharson and Mr. Feighery*

Ms. Farquharson, a Director of SPhinX, retained Mr. Ginsberg in late 2005 or early 2006. By that time, SPhinX was in a state of extreme distress, and engaged in proceedings involving the Refco bankruptcy. Ms. Farquharson sought counsel to assist her in her individual capacity to fulfill her fiduciary obligations as an independent Director.

Mr. Ginsberg had known Ms. Farquharson in a professional capacity for several years prior to the SPhinX-related representation, having represented various investment management companies in which Ms. Farquharson had been involved. Others also associated with those entities include Jonathan Knight, Jayme Colter and Tamischa Ambrister, and Jon Knight.

When Ms. Farquharson first approached Mr. Ginsberg about representing her, enormously complicated issues regarding Refco, the management and handling of SPhinX funds, and the SPhinX investment platform and structure were at the forefront, and events were transpiring on an exigent basis. Mr. Ginsberg needed assistance. Jon Knight was a sophisticated and experienced financial advisor with in-depth knowledge about the Standard & Poor's platform and several of the entities and people involved in the SPhinX crisis. Mr. Ginsberg sought

---

Ginsberg & Burgos despite being under no obligation to respond to the Gibson Dunn subpoena, since it was not named a party to the subpoena, invested significant hours attempting to decipher materials sent by Crowell & Moring, finalize the privilege log, which numbered 9000 pages, and produce non-privileged materials. Crowell & Moring included and marked many documents relating to other, non-SPhinX, clients and matters not even remotely related to the pending litigation and omitted some materials on the privilege log that should have been included. In short, significant efforts have been taken to comply with the Subpoenas' demands.

permission from Ms. Farquharson to use Jon Knight as a consultant,[3] and received her permission.

From late December 2005 or early January 2006 until sometime well after the JOL's appointment, Mr. Ginsberg consulted with Jon Knight at least two or three times a week about the SPhinX situation, having asked him to undertake the role of an unpaid advisor to help him in his role as counsel to the SPhinX Directors. Jon Knight accepted that role. Jon Knight had retired by late 2005 and spent several hours per week helping Mr. Ginsberg. He had no financial or other interest in SPhinX or the other entities involved in the controversy, and acted as Mr. Ginsberg's consultant out of an interest to assist Mr. Ginsberg and because of his personal friendship and professional relationship with Ms. Farquharson.

Mr. Ginsberg met Andrew Feighery approximately one month after he began to represent Ms. Farquharson in the SPhinX matter. In February 2006, Mr. Feighery retained Mr. Ginsberg to represent him, in his capacity as an independent Director of SPhinX.

The purpose of the representation of Ms. Farquharson and then Mr. Feighery was to provide counsel about their duties and responsibilities as individual Directors regarding the Refco bankruptcy proceedings and the financial crisis facing SPhinX as well as the scope of their duties to assist investors in protecting their interests.

---

[3] The suggestion that Mr. Ginsberg disavowed Mr. Knight's role as "consultant" during an October 29, 2009 interview by Leo Beus is not accurate. First, Mr. Ginsberg was not asked to review the transcript quoted in Gibson Dunn's papers. Second, Mr. Ginsberg's entire supposed response to the statement from Mr. Beus does not make sense – SPhinX had not yet retained Mr. Ginsberg to analyze affirmative actions against, *inter alia*, PlusFunds "as of January 25, 2006," which was the time frame of the question posed. Moreover, Mr. Ginsberg's response supposedly refers to a statement by Mr. Beus that something was a "serious issue" although the transcript does not reflect that Mr. Beus referred to anything as a "serious issue" – and seems to be either misquoted or out of context. What is accurate is that Mr. Ginsberg is quoted as saying: Mr. Knight was someone "whose intellect and knowledge I respect, and from time to time I would run ideas passed [sic] him," which is consistent with Mr. Ginsberg's steadfast argument that Mr. Knight served as his consultant.

b) *Ginsberg Represents SPhinX for a Limited Purpose*

Throughout Mr. Ginsberg's involvement, SPhinX as an entity was represented by Walkers, as foreign corporate counsel, and either Seward & Kissell or Patton Boggs, as United States corporate counsel, and Pillsbury, as bankruptcy counsel. Pillsbury exclusively litigated the Refco Bankruptcy and exclusively negotiated the settlement of that Bankruptcy dispute.

The Clients, even before Mr. Ginsberg's involvement, began the process of analyzing how various service providers, including PlusFunds and its principles, Mark Kavanagh, Brian Owens, Christopher Sugrue, and DPM, had allowed SPhinX funds to become commingled at Refco and vulnerable in the Refco bankruptcy.[4] Mr. Ginsberg's advice to the individual Directors about their duties to SPhinX and the investors resulted in SPhinX, as an entity, retaining Mr. Ginsberg in March 2006, to investigate and, if appropriate, commence affirmative actions to recover funds wrongfully diverted from SPhinX and to hold responsible those service providers, law firms, including Gibson Dunn, and individuals who had violated their duties and responsibilities to SPhinX. Mr. Ginsberg never served as SPhinX corporate counsel nor did he represent SPhinX as an entity except to evaluate, investigate and, where appropriate, litigate affirmative claims against those who had violated their duties and responsibilities to SPhinX.

c) *The Subpoenas*

After the Subpoenas were received, while preserving objections as to relevancy, over breadth and burdensomeness, Crowell & Moring, on behalf of Mr. Ginsberg and the Clients, made a

---

[4] In addition, it became clear during that process that SPhinX funds had been diverted in order to pay legal fees incurred by those same service providers and individuals, including hundreds of thousands of dollars paid using SPhinX funds to Gibson Dunn to represent Kavanagh, Owens and Sugrue in a Securities & Exchange Commission investigation of those individuals' activities in addition to legal fees paid to Gibson Dunn for its role in representing those individuals in other matters, including the negotiation of what is known as the Suffolk Loans (and perhaps also in representing PlusFunds).

4

production to Defendants. The manner in which the documents were culled, utilizing broad search terms, such as "SPhinX," and the interrelatedness of the Clients with other of Mr. Ginsberg's clients, on matters having nothing to do with SPhinX, resulted in certain communications and documents being mistakenly identified as responsive. Many of the documents Crowell & Moring identified as responsive were (a) irrelevant, (b) subject to the attorney-client privilege, or (c) subject to the work product privilege.

*d) Motion to Compel*

On December 8, 2010, Gibson Dunn filed a Motion to Compel. (Case 1:07-md-01902-JSR, Document 1020; Ex. 1.)[5] That Motion was based on the same arguments submitted in this Appeal. Special Master Hedges held a hearing on December 21, 2010, to consider the Motion to Compel. At the hearing, Special Master Hedges suggested that the parties negotiate search terms and enter into a Protective Order pursuant to Fed. R. Civ. P. 26(c)(1) and Fed. R. Evidence 502(d) in an effort to resolve the discovery dispute. The parties agreed. The Protective Order was entered on January 24, 2011. (Case 1:07-md-01902-JSR, Document 1049.) The parties engaged in several rounds of negotiation with respect to appropriate search terms and the conditions under which Defendants could review the documents identified by those searches.

Finally, after additional Court intervention, the parties came to a stipulated agreement. The agreement provided, in relevant part, that Defendants would be permitted to review, pursuant to the 502(d) Protective Order, "all the documents that [Ginsberg & Burgos] have asserted privilege for that are responsive to all of the search terms that Special Master Hedges directed be run in his order dated March 24, 2011, with the following specific exception…" that Ginsberg & Burgos could withhold from review a small subset of documents that were identified

---

[5] "Ex." cites refer to exhibits attached to the Declaration of Christina N. Burgos in Support of Opposition to Appeal dated August 10, 2011.

as "highly confidential." (Case 1:07-md-01902-JSR, Document 1221-4.) There were 35 such documents. A privilege log entry was provided for each withheld document. Ginsberg & Burgos agreed to submit those withheld documents to Special Master Hedges for an *in camera* review.

After reviewing the 35 documents *in camera*, Special Master Hedges' issued his findings in an eight page transcript dated July 12, 2011. (Case 1:07-md-01902-JSR, Docket 1201.) Special Master Hedges ordered the production of certain of the documents but found that the vast majority of the documents were in fact either privileged or irrelevant.

## SCOPE OF APPEAL

The scope of this appeal is limited to Special Master Hedges' Order dated July 21, 2011 based on his *in camera* review of the 35 documents. The parties previously stipulated a resolution of all other disputes through the review in Ginsberg & Burgos' offices of all but the 35 documents. Upon review, Gibson Dunn opted not to challenge Ginsberg & Burgos' refusal to produce the universe of documents, other than the 35 documents, presumably recognizing the accuracy of the relevancy and privilege objections noted on the privilege log. Any effort now to address Ginsberg & Burgos' refusal to produce all but the 35 documents submitted for *in camera* review and subject to Special Master Hedges' Order is untimely.

## ARGUMENT

The materials at issue in this appeal are either privileged or irrelevant to this case. Special Master Hedges appropriately reviewed each communication at issue. The parties appropriately agreed to this procedure. *See In re Currency Conversion Antitrust Litig.*, 2010 WL 4365548 at *1 (S.D.N.Y. Nov. 3, 2010) (appropriate method to evaluate assertion of privilege is *in camera* review); *Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 62 (S.D.N.Y. 2010)

6

(same).

There are heightened protections afforded to privileged materials. "[T]he attorney-client privilege serves a critical function in the operation of the law and the administration of justice and may not be disregarded lightly." *Allen v. West Point-Pepperell Inc.*, 848 F.Supp. 423, 426 (S.D.N.Y. 1994). Moreover, irrelevant materials need not be produced in response to a subpoena, especially where, as here, the documents in question relate to communications with clients that are unrelated to the dispute. The fact that Crowell & Moring mistakenly identified communications which are unrelated to this dispute does not expose those communications to disclosure.

Special Master Hedges' Order was the culmination of the entire production dispute, including the documents submitted for *in camera* review, issues originally raised in Gibson Dunn's Motion to Compel and issues raised during the numerous hearings and conferences. Special Master Hedges intended, and the parties agreed, that the *in camera* review would end this protracted dispute. The parties voluntarily entered a stipulation which resulted in an Order ending this discovery dispute and all parties are bound by that Order absent error.

Under Fed. R. Civ. P. 53(e)(2), a court must accept the findings of fact of a Special Master unless they are "clearly erroneous." The party filing objects to the Special Master's findings carries the burden of proving them to be clearly erroneous. *Malletier v. Dooney & Bourke, Inc.,* 525 F.Supp.2d 558, 565 (S.D.N.Y. 2007). Special Master Hedges' findings with respect to privilege and relevancy were appropriate and should be upheld.

Special Master Hedges' Order concerning documents related to Jon Knight should also be upheld. Jon Knight served as Mr. Ginsberg's advisor, as he had on various matters over the years, and the materials and analysis developed during Mr. Ginsberg's communications with Mr.

Knight constitute classic work product material.  Fed. R. Civ. P. 26(b)(3)(A).  *See Weinhold v. Witte Heavy Lift, Inc.*, 1994 WL 132392, at *2 (S.D.N.Y. Apr. 11, 1994) (report prepared by outside investigator protected by work product doctrine); *see also Sterling Drug Inc. v. Harris,* 488 F.Supp. 1019 (S.D.N.Y.1980) (privilege extends to documents prepared by agent of attorney responsible for coordinating and gathering evidence in anticipation of hearing).

"The work-product doctrine… is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *U.S. v. Adlman,* 134 F.3d 1194, 1196 (2d Cir. 1998), *quoting Hickman v. Taylor,* 329 U.S. 495, 511 (1947).  The work product doctrine "is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."  *U.S. v. Nobles,* 422 U.S. 225, 238 (1975).

Mr. Ginsberg communicated with Jon Knight for the purpose of seeking advice and analysis of a rapidly changing and complex situation involving his Clients maneuvering in a world in which Mr. Knight was well versed.  Mr. Knight provided knowledge and insights.  Mr. Ginsberg sometimes followed that advice and sometimes did not, but Jon Knight's role as Mr. Ginsberg's consultant was always invaluable and the communications between Mr. Ginsberg and Mr. Knight are protected by the work product privilege, as Special Master Hedges concluded.

## CONCLUSION

Accordingly, we respectfully request that the Order be affirmed and that Mr. Ginsberg be deemed to have fully satisfied his obligations under the Subpoenas so that this discovery dispute can finally come to an end.

Dated: August 10, 2011                                    Respectfully submitted,

                                                                                       /s/ Peter R. Ginsberg
                                                                                      Peter R. Ginsberg
Christina N. Burgos
GINSBERG & BURGOS PLLC
12 East 49th Street, 30th Floor
New York, New York 10017
Telephone: (646) 374-0029
Facsimile: (646) 355-0202