**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
                                                                :
In re REFCO INC. SECURITIES LITIGATION      :      Case No. 07-md-1902 (JSR)
                                                                :
---------------------------------------------------------------X

This Document Relates to:

---------------------------------------------------------------X
KENNETH M. KRYS, et al.,                           :      Case No. 08-cv-3065 (JSR)
                                                                :      Case No. 08-cv-3086 (JSR)
Plaintiffs,            :
                                                                :      REPORT AND
             -against-                                     :      RECOMMENDATION
                                                                :      OF THE SPECIAL MASTER
CHRISTOPHER SUGRUE, et al.,              :      ON THE OMNIBUS ISSUE
                                                                :      OF THE APPLICABILITY
                         Defendants.            :      OF SLUSA
                                                                :
---------------------------------------------------------------X

Daniel J. Capra, Special Master

      The Plaintiffs bring this action to recover (i) $263 million plus interest in damages suffered by the SPhinX family of hedge funds; and (ii) the lost business enterprise value and deepening insolvency damages suffered by SPhinX's investment manager, PlusFunds Group, Inc., ("PlusFunds").[1] The gravamen of the complaint is that SPhinX's cash "was diverted from protected, customer segregated accounts to unprotected offshore accounts, where those assets were ultimately lost in the Refco scandal." First Amended Complaint ("FAC") ¶1.[2]

      Most of the Defendants in this action have moved to dismiss the respective claims lodged

---

    [1] The Plaintiffs also bring claims of the Assignors, a group comprised of SPhinX investors. But the claims of the Assignors have been dismissed for lack of standing by Judge Rakoff, and accordingly will no longer be considered.

    [2] The facts pertinent to these motions have been recounted in a number of opinions by Judge Lynch (*see, e.g.*, *Kirschner v. Grant Thornton,* 2009 WL 996417 (S.D.N.Y. 2009)) and in a number of R and R's by the Special Master. To the extent necessary for background on the instant motion, familiarity with the financial schemes of Refco is assumed.

against them.[3] This Report and Recommendation covers one of the so-called "omnibus issues": grounds for dismissal that have been raised by, and are pertinent to, the merits of most of the Motions to Dismiss. The omnibus issue considered here is whether any or all of the Plaintiffs' claims are barred by the Securities Litigation Uniform Standards Act of 1998, known as SLUSA. See 15 U.S.C. § 78bb(f).

The Special Master has previously issued more than a dozen R and R's in the Refco matter. Some of these R and R's will be referred to herein. Abbreviations used in the prior R and R's will be used herein. Familiarity with all of the R and R's — and with Judge Rakoff's orders reviewing them — is presumed.

For the reasons stated below, the Special Master recommends that the motions to dismiss on grounds of SLUSA be denied.

*I. The Plaintiffs in this Action*

Because the identity and status of the Plaintiffs in this action has some relevance to some of the SLUSA questions, the Plaintiffs will be briefly described here.

There are two sets of claimants:

1. The SPhinX family of funds, organized under Cayman Islands law, entered into voluntary liquidation after the fall of Refco. Plaintiffs Kenneth M. Krys and Margot MacInnis are their Joint Official Liquidators.[4]

2. Plaintiff The Harbor Trust Co. Ltd. is the Trustee of the SPhinX Trust.[5] The SPhinX Trust

---

[3] The claims against some of the named Defendants have already been dismissed in whole or in part by Order of Judge Rakoff. Specifically, the claims against BAWAG, the EMF Defendants, and Klejna have been dismissed in their entirety with prejudice. Moreover, some Defendants have been dismissed with the consent of the Plaintiffs, e.g., E & Y. In addition, the Special Master has recommended the dismissal of some or all claims against Owens, Kavanagh, PwC and Ferris. Those R and Rs are currently before Judge Rakoff. Finally, Judge Rakoff has ordered the claims against the Gibson Dunn Defendants to arbitration. For a detailed account of the status of the Defendants in this action, see the *in pari delicto* R and R, dated December 6, 2010.

[4] On November 10, 2009, pursuant to an Order of the Grand Court of the Cayman Islands, Margot MacInnis was appointed as successor to Christopher Stride, as Joint Official Liquidator of the SPhinX funds.

[5] On November 24, 2009, Kenneth M. Krys was appointed as successor to James P. Sinclair, as Trustee of the SPhinX Trust, by the Advisory Board created by the PlusFunds Plan.

is the assignee of claims from the estate of PlusFunds. PlusFunds created SPhinX and served as its investment manager.

## II. SLUSA

### A. Policy

SLUSA, enacted in 1998, was passed to prevent plaintiffs from evading the limitations on securities class actions that Congress established in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. 104–67, 109 Stat. 737 (1995). *See Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 122 (2d Cir.2003). The PLSRA imposed stringent pleading requirements and mandatory discovery stays for securities fraud actions filed in federal court. Id. The PLSRA, however, "proved ineffective in actual practice to prevent litigation of meritless suits." Id. at 123, because claimants simply abandoned federal court and filed suit in state court, alleging state law claims. *See Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107–08 n. 4 (2d Cir.2001).[6] "SLUSA was enacted to close the loophole by mandating federal courts as the exclusive

---

Effective May 1, 2010, by a resolution of the Advisory Board dated March 31, 2010, Peter Andersen of The Harbour Trust Co. Ltd. was appointed as successor Trustee of the SPhinX Trust, in place of Kenneth M. Krys. Subsequently, effective May 1, 2010, by a resolution of the Advisory Board dated June 3, 2010, and superseding the resolution of March 31, 2010, The Harbour Trust Co. Ltd. was appointed successor Trustee for the SPhinX Trust, in place of Kenneth M. Krys. By order of Special Master Ronald Hedges, dated June 17, 2010, the substitution of Margot MacInnis, as Joint Official Liquidator and assignee of claims assigned by certain SPhinX funds investors, in place of Christopher Stride, and the substitution of The Harbour Trust Co. Ltd., as SPhinX Trustee, were effectuated.

[6] When enacting SLUSA, Congress found that:

(1) the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits; (2) since enactment of that legislation, considerable evidence has been presented to Congress that a number of securities class action lawsuits have shifted from Federal to State courts; (3) this shift has prevented the Act from fully achieving its objectives; (4) State securities regulation is of continuing importance, together with Federal regulations of securities, to protect investors and promote strong financial markets; and (5) in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objective of the Private Securities Litigation Reform Act of 1995, it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities, while preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits.

3

venue for class actions alleging fraud in the sale of certain covered securities and by mandating that such class actions be governed exclusively by federal law." *Spielman,* 332 F.3d at 123 (citation omitted).

Congress directed the courts to interpret SLUSA expansively.[7] The Supreme Court has also given "a broad interpretation" to the operative terms of SLUSA. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 541 U.S. 71, 84 (2006).

### *B. Preclusion of State Claims*

SLUSA is often referred to as "preempting" state claims but in fact it operates as a means of precluding state claims when brought as part of a covered action. The Second Circuit explained the operation of SLUSA in *Romano v. Kazacos*, 609 F.3d 512, 520, n. 10 (2nd Cir. 2010):

> In *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir.2003), we ruled that SLUSA completely preempts the field of certain types of securities class actions . . .   However, subsequent to our decision in *Spielman*, the Supreme Court ruled that SLUSA is a preclusion, and not a preemption, statute. *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 637 n. 1 (2006). SLUSA does not displace state law with federal law. Id. Rather, SLUSA renders nonactionable state claims brought by plaintiffs as part of a covered class action because such claims cannot be litigated in state court or in federal court. See id.
>
> Furthermore, under SLUSA, plaintiffs can still bring state law claims alleging fraud in connection with transactions in covered securities in state court so long as they pursue their claims individually or as part of a class numbering fifty or less. See id. Therefore, rather than preempting state law claims, SLUSA precludes plaintiffs from bringing certain state law claims as part of a covered action.

### *C. The Statutory Provision*

---

Pub.L. No. 105–353 §§ 2(1)-(5).

[7] See S.Rep. No. 105–182, at 8 (1998)::
While the committee believes that it has effectively reached those actions that could be used to circumvent the reforms enacted by Congress in 1995 as part of the Private Securities Litigation Reform Act, it remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.

SLUSA's preclusion provision states, in pertinent part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging ... a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security....

15 U.S.C. § 78bb(f)(1)(A).

### D. *Applicability to This Action*

The SLUSA questions disputed in this action are as follows:

- Is this a "covered class action"?

- Does the action involve a "covered security"?

- Do the claims involve damages suffered "in connection with the purchase or sale" of the covered security?

- Which particular claims allege "a misrepresentation or omission of material fact"?

In deciding these questions, the Special Master will sometimes distinguish between "SPhinX fraud" claims and "Refco fraud" claims. To refresh recollection, "SPhinX fraud" claims involve 1) the basic allegation that SMFF excess cash was wrongfully transferred to unprotected accounts at RCM where they were lost upon the fall of Refco; and 2) the Suffolk Transactions, which were designed at least in part to cover up the SPhinX fraud. See Standing R and R at 26-27. In contrast, "Refco fraud" claims involve 1) upstreaming of assets from RCM; and 2) all efforts to hide the true financial condition of Refco, including Round Trip Loans, the LBO, and the IPO.  As will be seen below, the distinction between the SPhinX fraud and Refco fraud claims is relevant in considering whether a particular claim involves damages suffered "in connection with the purchase or sale" of the covered security.

Under Second Circuit law, SLUSA is applied claim-by-claim. Thus, even if this action is a covered class action,  it may be that certain claims are not precluded because they do not raise a claim "in connection with the purchase or sale of a covered security" or do not allege "misrepresentation or omission of a material fact."  See *In re Kingate Mgmt. Ltd. Litig.,* 2011 WL 1362106, at *6 ("The law of the Second Circuit requires a claim-by-claim analysis as to SLUSA [preclusion].").

### III. Is This a Covered Class Action?

SLUSA defines a "covered class action" as:

(i) any single lawsuit in which—

(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members, or

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(b).

The Defendants argue that the Krys action is a "covered class action" for two reasons: 1) it attempts to recover damages on behalf of more than 50 people; and 2) it meets the "above 50 persons" requirement because it is part of a "group of lawsuits" within the meaning of SLUSA. The Special Master will take each argument in turn.

### A. Damages in This Action Sought on Behalf of More Than 50 People?

The Defendants claim that the SPhinX Trust cannot count as only one person because it was created for the express purpose of litigation and so does not get entity treatment under SLUSA. *See Lee v. Marsh & McLennan Cos.,* 2007 WL 704033, at *4 (S.D.N.Y.) (noting in dictum that a trust created to pursue litigation is not entitled to entity treatment under SLUSA). The Defendants note — without rebuttal from the Plaintiffs — that the claimants for recovery by the SPhinX Trust number more than 50. *See In re SPhinX Ltd.,* No. 06-11760 (RDD) (Bankr. S.D.N.Y., Aug. 16, 2006) Tr. at 5 (SPhinX counsel informs the court that a bankruptcy notice was sent to more than 1400 creditors).

The Plaintiffs acknowledge that the SPhinX Trust was created "for the express purpose of pursuing litigation claims belonging to PlusFunds." Briefing on Omnibus Issue of SLUSA at 5. But the Plaintiffs observe that the only stated beneficiaries of the SPhinX Trust are the two Joint Official Liquidators of the SPhinX family of funds — Krys and MacInnis. And the Plaintiffs contend that the Joint Official Liquidators have brought their actions in the same capacity as bankruptcy trustees under American law, and so they are entitled to entity treatment. So, even if one "looks through" the SPhinX Trust the Plaintiffs come to a total of two individuals counted toward the 50 person limit.[8] The Defendants don't disagree that the JOL's are the stated beneficiaries of the SPhinX Trust, but they respond that PlusFunds' liquidation plan provides that the Trust serves the interests of the JOL's and therefore "ultimately the creditors and holders of the SPhinX funds." Fifth Am. Plan of Liquidation of PlusFunds Group (Omnibus Declaration Ex. J.).

The answer for the proper count of individuals in this action is therefore dependent on the role of Krys and MacInnis as Joint Official Liquidators. If they are entitled to entity treatment, then the 50-person limit has not been met by this action alone.[9] The JOL's are the rough equivalent of bankruptcy trustees acting on behalf of the estate — as these Defendants have recently argued in seeking a dismissal of this action on *in pari delicto* grounds. And the case law supports the proposition that bankruptcy trustees and liquidating trusts are entitled to entity treatment, i.e., to be treated as one person for purposes of counting under SLUSA. For example, in *RGH Liquidating Trust v. Deloitte & Touche, LLP,* 2011 WL 2471542 (N.Y. Ct. App. 2011), the court held that a liquidating trust established under a bankruptcy reorganization plan as the debtor's successor was one person within the meaning of SLUSA's single-entity provision. The liquidating trust was assigned essentially the same roles as those undertaken by the JOL's here, namely the liquidation of assets transferred to it for the benefit of the creditors and other interest holders. As is true with the JOL's in this case, the *RGH* court found that pursuit of litigation was only one purpose of the liquidating trust, and therefore that the single entity exception applied. *See also LaSala v. Bordier, et Cie,* 519 F.3d 121 (3d Cir. 2008) (creditors eventually receiving proceeds from a bankruptcy trustee's lawsuit are not to be counted toward the 50 person limit in SLUSA); *Picard v. HSBC Bank PLC,* 2011 WL 1544494 (S.D.N.Y.), at *5 (Trustee is clearly a single person entity under SLUSA if suing on behalf of the Estate).

There is a good reason for treating representatives of a bankrupt or liquidating estate as a single entity, where only one of the purposes for their appointment is to bring litigation. A contrary view would "deprive many bankruptcy trustees of the ability to pursue state-law securities claims on behalf of the estate. Nothing in SLUSA suggests that Congress intended to work such a radical change in the bankruptcy laws." *Smith v. Arthur Andersen, LLP,* 421 F.3d 989, 1007 (9th Cir. 2005). The legislative history of SLUSA affirmatively indicates that Congress did not intend to impair the

---

[8] The Assignors might count as individuals, but they have already been dismissed from the action, and even if that were not so, there are only 16 of them.

[9] See the discussion infra for whether this action must be grouped with the Private Action Trust under the "grouping of lawsuits" provision of SLUSA.

pre-existing right of bankruptcy trustees and like representatives to bring damage actions that would redound to the benefit of the creditors of the estate. See S.Rep. No 105-182, at 6 (1998) ("Thus, a trustee in bankruptcy, a guardian, a receiver, and other persons or entities duly authorized by law . . . to seek damages on behalf of another person or entity would not be covered by this provision.").

In sum, even though the Trustee of the SPhinX Trust is not entitled to entity treatment because the Trust was established solely for purposes of litigation, the JOL's, both as the stated beneficiaries of the SPhinX Trust and as suing on behalf of the SPhinX funds, are entitled to entity treatment. Accordingly, the Special Master finds that the Krys action, standing on its own, is not a covered class action because it does not seek damages on behalf of more than 50 persons, under the SLUSA counting provisions.

### *B. Grouping of Lawsuits?*

The Defendants argue that the claimants in the Private Action Trust should be aggregated with those in the Krys action under SLUSA's "grouping of lawsuits" provision.15 U.S.C. § 78bb(f)(5)(b)(ii). There is no disagreement that if the Private Action Trust claimants are counted here, the number of countable persons is more than 50. But the grouping of lawsuits provision does not assist the Defendants for at least two reasons.

First and most important, Judge Rakoff has already held that the Private Action Trust action is *not* covered by SLUSA. See Private Actions Trust R and R (adopted by Judge Rakoff) at 40-41. It therefore makes no sense at all to count the Private Action Trust claimants toward the number 50 as a means of precluding the Krys plaintiffs from bringing this action. The Defendants have not cited a case in which lawsuits were grouped together when one of them was not covered by SLUSA at all.

Second, the Krys action and the PAT action are nowhere near as related as the actions that the courts have found to be within the grouping of lawsuits provision. The cases relied upon by the Defendants involve actions that were intentionally split up to avoid SLUSA. Thus, in *In re WorldCom, Inc.,* 308 F.Supp.2d 236 (S.D.N.Y. 2004), Judge Cote found that the grouping of lawsuits provision applied to "ten lawsuits, filed in nine separate Mississippi counties and bringing identical securities fraud and negligence claims." Id. In *Newby v. Enron Corp. (In re Enron Corp. Sec. Derivative & ERISA Litig.,* 535 F.3d 325, 339-40 (5th Cir. 2008), the grouping of lawsuits provision was applied to ten cases brought by a single law firm that represented "over 750 plaintiffs but has artfully avoided [SLUSA] by filing lawsuits in counties across the State of Texas that are not denominated class actions and each with fewer than 50 plaintiffs." Id. at 332. The ten cases grouped by the court "allege virtually identical state law claims for fraud, fraud on the market, civil conspiracy, aiding and abetting, negligent misrepresentation, negligence, violations of the Texas Business and Commerce Code, and violations of the Texas Securities Act. Throughout the federal litigation, the Fleming plaintiffs have acted in unison: they are represented by the same attorneys; have filed nearly identical complaints; have jointly scheduled discovery; have filed joint motions; have provided nearly identical discovery responses; and have identified the same experts and relied

upon the same expert reports." Id. In *Gordon Partners v. Blumenthal,* 2007 WL 1438753 (S.D.N.Y. 2007), the plaintiffs' complaint adopted by reference a class action complaint in its entirety, and the plaintiffs moved to consolidate their action with the class action. *In re AOL Time Warner, Inc. Sec. Litig.,* 503 F.Supp.2d 666 (S.D.N.Y. 2007), involved three dozen identically-worded complaints from approximately 200 individuals who had opted out of a class action; all the claimants were represented by the same law firm. The plaintiffs filed all motion papers as a group, including a motion to amend all of the complaints — accompanied by a single proposed second amended complaint, which mirrored the amendments sought for every complaint in the group.

The above cases relied upon by the defendants without question each involved a grouping of actions that raised "common questions of law or fact." 15 U.S.C. § 78bb(f)(5)(B)(ii). But that standard, if it has any meaning at all, cannot operate to preclude the Plaintiffs' state law claims in this action. The analysis here starts with the fact that the two actions were brought independently by two separate law firms. There is no indication that the Plaintiffs here and Mr. Kirschner, the plaintiff in the PAT litigation, divided up their matters "through artful pleading to avoid the clear precepts of SLUSA and its preemption of state law securities claims for damages." *In re WorldCom Sec. Litig.*, 308 F.Supp.2d 236, 244 (S.D.N.Y.2004).

More importantly, at the present stage of the proceedings, there are critical differences between the SPhinX/PlusFunds claims and those of the FX customers in the PAT action. The most significant difference is that the SPhinX claims are based on a right to have the funds segregated while in the hands of Refco. See Primary Wrongs R and R at 6-15. The FX customers had no such right, and that difference has led to markedly different rulings on the motions to dismiss that have already been heard. The FX customers have been found largely barred from complaining about the misuse of their assets because of the provisions of the Margin Annex — provisions that do not bar the SPhinX/PlusFunds claims. See Primary Wrongs R and R at 10-11. Thus, the gravamen of the SPhinX/PlusFunds complaint is fundamentally different from that of the PAT complaint. While it is true that the two complaints as originally drafted had similar language, it is also true that from the very beginning the SPhinX/PlusFunds complaint included different defendants and allegations. The two actions simply do not have the kind of overlap that Congress sought to regulate in the grouping of lawsuits provision, especially as they have been shaped by the various rulings in this MDL.

The Defendants point out that the Eleventh Circuit, in *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340 (11th Cir. 2008), held that the common questions of law and fact need not "predominate" in order for the lawsuits to be grouped under 15 U.S.C. § 78bb(f)(5)(B)(ii). But even if that ruling is correct,[10] the language "common questions of law and fact" must mean

---

[10] The intent of Congress in SLUSA was to avoid an end-run of the securities class action provisions of the PSLRA. The "grouping of lawsuits" provision was intended to prohibit "artful pleading" — *In re WorldCom Sec. Litig.*, 308 F.Supp.2d 236, 244 (S.D.N.Y.2004) — in which plaintiffs could balkanize lawsuits that should have been brought as a class action. Accordingly, the statutory language "common questions of law and fact" *should* be interpreted in the light of

9

something. It can't mean that lawsuits are grouped simply because they raise some subsidiary issues that overlap. Even the Eleventh Circuit held that to be grouped, the actions must raise "critical" facts in common. 546 F.3d at 1346. In this case at this point, the common questions are background facts and the critical question is whether SPhinX had a right to segregated accounts that was wrongly violated.

One might argue that while the SPhinX fraud claims do not overlap with those of the FX customers, the Refco fraud claims are in fact common between the claimants. The Special Master has been unable to find any case law, or anything in the legislative history, to indicate whether lawsuits should be grouped for SLUSA purposes where one theory of recovery is not common but another is. At any rate, the theories even for the Refco fraud do not sufficiently overlap at this point to require grouping of the lawsuits for SLUSA purposes. The PAT claimants are left with a fraudulent inducement claim based on the fact that Refco was hopelessly insolvent after the LBO. The SPhinX/PlusFunds claims are, at least to this point, not based on Refco operating while hopelessly insolvent. See the Primary Wrongs R and R at 24-37. Thus, even considering the Refco fraud claims in the analysis, the Special Master finds that this case should not be grouped with the PAT matter for SLUSA purposes, because the matters do not sufficiently share common questions of law and fact within the meaning of the statute.[11]

---

whether the actions to be grouped could have been brought in class form. In this case, it is clear that if the PAT and SPhinX actions had been brought together as class actions, the Defendants could have rightly objected that the common questions of law and fact did not predominate. And certainly whatever common questions of law and fact do exist at this point, they do not predominate in light of all the prior dispositions in this MDL.

The Eleventh Circuit relied on the fact that Congress used the word "predominate" in the single lawsuit provisions, but did not use it in the grouping of lawsuits provision. See 15 U.S.C. § 78bb(f)(5)(b), supra. But as the intent of the grouping provision in SLUSA is to prevent parties from splitting up actions that should have been brought in class form, it makes no sense to group claims that have simply something in common — it only makes sense to require the common questions to predominate as required by Rule 23.

[11] The Plaintiffs argue that the grouping requirements are not met because the SPhinX/PlusFunds actions were not "joined" or "consolidated" or proceeding "as a single action" within the meaning of the SLUSA grouping provision. But the Defendants correctly point out that consolidation for pre-trial purposes, as was done here, satisfies the grouping requirement. *See In re WorldCom,* 308 F.Supp.2d at 246; *In re AOL Time Warner, Inc. Sec. Litig.,* 503 F.Supp.2d at 671-672.

The Plaintiffs further argue that the claims should not be grouped because this action was involuntarily transferred by the JPML and coordinated with an MDL proceeding. They contend that the MDL mechanism was designed for efficiency, and not to eliminate substantive claims

10

Accordingly, the Special Master finds that the Plaintiffs' claims do not constitute a "covered class action" under SLUSA.[12]

### IV. Does This Action Involve a "Covered Security?"

Assuming arguendo that the Plaintiffs *have* brought a "covered action," dismissal under SLUSA requires a finding that the action involves a "covered security." For SLUSA, a "covered security is one traded nationally and listed on a regulated national exchange." *Dabit*, 547 U.S. at 83 (quotation marks omitted); see also 15 U.S.C. § 77r(b)(1). *See also Ring v. Axa Fin., Inc.,* 483 F.3d 95, 98 (2d Cir. 2007) (covered securities are those "listed on one of the national securities exchanges as well as securities issued by investment companies registered with the SEC"). In defining "covered securities," SLUSA incorporates the definition appearing in Section 18(b) of the Securities Act of 1933 (15 U.S.C. § 77r(B)). That section provides that covered securities are those:

(A) listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market (or any successor to such entities);

(B) listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A); or

(C) is a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B).

Additionally, paragraph 2 of 15 U.S.C. § 77r(B) states that a "covered security" is a "security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1949."

The Plaintiffs correctly point out that the investment interests issued by SPhinX meet none of the statutory requirements. First, SPhinX is not, and never has been, registered under the

---

that could be brought independently. But a similar argument was made, and rejected, *in In re Enron Corp. Securities*, *supra*, 535 F.3d at 342, where the court considered the plaintiffs' contention that the MDL should not be used to create a covered class action, and that doing so "allows federal courts to manufacture SLUSA preemption." The court found "no law that stands for these propositions; and neither the MDL nor SLUSA is so limited." Id.

[12] However, the Special Master will proceed to analyze and apply the other statutory requirements of SLUSA, just in case Judge Rakoff disagrees with the Special Master's recommendation regarding the SLUSA counting provisions.

Investment Company Act of 1940. Second, the SPhinX interests were not listed on the New York Stock Exchange, the American Stock Exchange or the National Market System of the Nasdaq stock market, nor were the interests ever authorized for listing by such exchanges. Third, the SPhinX interests were not listed or authorized for listing on any other national securities exchange that the SEC has determined by rule to be substantially similar to the above exchanges.

The Defendants, however, correctly point out that the investment interests issued in the Refco LBO and IPO *do* constitute "covered securities" under the SLUSA definition. The Refco stock in the IPO was listed on the New York Stock Exchange, and the publicly traded Refco debt in the LBO was sold by registered investment banks, listed with the Securities Exchange Commission, and traded on national markets.

It follows that to the extent the Plaintiffs' claims involve the LBO or IPO, they meet the "covered security" requirement of SLUSA. To the extent they do not, they are not precluded by SLUSA. The determination of which claims fall within and which without is determined by considering the "in connection with" requirement, immediately below.

## *V. Which Claims, If Any, Involve Damages Suffered "in connection with the purchase or sale" of a Covered Security?*

The "in connection with" requirement of SLUSA is to be construed broadly. *Dabit,* 547 U.S. at 89. It is not necessary that the Plaintiffs themselves have purchased a covered security, nor is it necessary that the purchaser or seller be a party to the action. Id. at 85.

### *A. SPhinX Fraud*

Most of the Defendants who have moved to dismiss on SLUSA grounds appear to concede that the SPhinX fraud claims do not involve damages suffered "in connection with the purchase or sale" of securities.[13] This is a wise concession. The SPhinX fraud claims are based on unauthorized transfers of cash to unprotected accounts — there is nothing in that claim about the purchase or sale of securities. The Defendants Owens and Kavanagh argue that the motive for the SPhinX fraud was to fund the Refco fraud — the purpose of which was to improperly inflate the prices of Refco securities. But the fact that Refco's motive was to cash out in securities transactions is too remote

---

[13] See Defendants' December 1, 2009 Supplemental Submission at 15 ("To the extent that Plaintiffs claim to have been harmed by the 'SPhinX fraud' ... their claims are deficient, among other reasons, for failure to allege that these Defendants knew about or substantially assisted the transfers. If, however, Plaintiffs maintain that they were harmed by the "Refco fraud" — that Defendants 'assumed due diligence and disclosure obligations' to Plaintiffs 'in connection with Refco's LBO and IPO transactions' or that Plaintiffs were 'investors' in reliance upon offering documents issued before and during Refco's LBO and IPO ---- then their claims are barred by SLUSA . . ." (Citations omitted).

12

to find that the transfers to RCM were "in connection with" a purchase or sale of those securities. Under *Dabit*, the fraud must "coincide" with a securities transaction. 547 U.S. at 85. But the unauthorized transfers to RCM did not coincide in terms of timing or planning with the LBO or IPO. Finding that the SPhinX fraud "coincided" with the LBO and IPO would expand SLUSA preclusion to any fraud case in which any securities transaction occurred during or even after that fraud.[14]

Judge Marrero's decision in *Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372 (S.D.N.Y.2010) strongly supports a finding that the SPhinX fraud claims are not in connection with a securities transaction. *Anwar* was a suit brought by investors in a feeder fund for Bernie Madoff's Ponzi scheme. The investments in the feeder fund were not securities transactions, but the defendants argued that the action was precluded by SLUSA because the damages suffered were in connection with Madoff's securities transactions (or more particularly the lack thereof). Judge Marrero rejected the SLUSA argument on the ground that the investments in the feeder fund were not sufficiently connected to Madoff's phantom securities transactions. He reasoned as follows:

> The Court finds that the "in connection with" requirement is not met here. The allegations in this case present multiple layers of separation between whatever phantom securities Madoff purported to be purchasing and the financial interests Plaintiffs actually purchased. First, Plaintiffs invested their money in the Funds, with one of the Citco Defendants receiving the actual deposits. The Citco Defendants then placed this money with Madoff, a transaction which Plaintiffs allege did not occur instantaneously; the Funds were not a cursory, pass-through entity. . . . Though the Court must broadly construe SLUSA's "in connection with" phrasing, stretching SLUSA to cover this chain of investment—from Plaintiffs' initial investment in the Funds, the Funds' reinvestment with Madoff, Madoff's supposed purchases of covered securities, to Madoff's sale of those securities and purchases of Treasury bills — snaps even the most flexible rubber band.

Id. at 388-89. The SPhinX Funds' placement of excess cash in protected accounts at Refco LLC is even more remote from the LBO and IBO — in both timing and chain of transaction — than the transactions reviewed in *Anwar*.

Similarly, Judge Scheindlin's opinion in *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 750 F.Supp.2d 450, 450 (S.D.N.Y.2010), supports a finding that SPhinX fraud claims are not in connection with a securities transaction. Judge Scheindlin addressed the question whether SLUSA applies "where plaintiffs purchased, sold, or

---

[14]Under the Owens and Kavanagh interpretation, SLUSA would cover an action against the owner of a storage facility who stole property stored in that facility in order to play the market — a state claim for theft would be barred even though the plaintiffs could not plausibly bring a securities action to recover their damages. On the other hand, if the owner stole the property to play the ponies or buy drugs, SLUSA would not apply. This hypothetical shows that SLUSA cannot be solely dependent on the motive of the wrongdoer in stealing money.

13

held shares in hedge funds that are not covered securities under SLUSA but that maintain a portfolio that includes covered securities." Id. She concluded that SLUSA did not apply because "[t]o hold otherwise would extend the reach of SLUSA to any investment vehicle with covered securities in its portfolio." Id.  In *Pension Committee* a group of investors sued to recover losses stemming from the liquidation of two hedge funds. The claims allegedly precluded by SLUSA were against the directors and administrator of the fund (referred to as the "Citco Defendants"). The Plaintiffs alleged that the Citco Defendants made untrue statements that overvalued the fund. Judge Scheindlin declared that "[b]ecause the Citco Defendants' alleged untrue statements concern only the valuation of the Funds and their restricted shares and warrants, those statements were not made 'in connection with' the purchase and sale of covered securities. Because plaintiffs purchased shares in hedge funds, rather than covered securities, SLUSA does not preempt plaintiffs' state-law claims." Id. at 453. The Citco Defendants argued that because a portion of the Plaintiffs' portfolios included securities the damages they suffered coincided with a securities transaction. But Judge Scheindlin rejected this argument, reasoning as follows:

> The interpretation of SLUSA urged by the Citco Defendants stretches the statute beyond its plain meaning. There are no grounds on which to justify applying Dabit to statements made by the Citco Defendants concerning uncovered hedge funds—even when a portion of the assets in those funds include covered securities. This outcome is required because the alleged fraud relates to those hedge funds rather than to the covered securities in the portfolios.

Id. at 455.

Judge Scheindlin concluded that "the covered securities are not at the heart of this case. The purchase and sale of the Funds' shares are at the heart of this case." Id. (Internal quotations omitted). Similarly, the LBO and IPO transactions are not "at the heart" of the SPhinX fraud; the unauthorized transfers to RCM are "at the heart" of the SPhinX fraud claims.

It is true that there are a number decisions in the Southern District that have applied "in connection with" more broadly than *Anwar* and *Pension Committee. See, e.g., In re Kingate Management Ltd. Litig.,* 2011 WL 1362106 (S.D.N.Y.), at *8-9, and the cases cited therein (finding that claims against a Madoff feeder fund were 'in connection with' Madoff's securities transactions; distinguishing both *Anwar* and *Pension Committee* by noting that the feeder fund in this case was simply a pass-through, and investments were therefore made directly with Madoff, whose transactions were "at the heart of the case"). But as stated in *Kingate,* those cases are factually distinguishable from *Anwar* because there was a more direct relationship between an investment in the particular feeder fund and an investment by Madoff. And certainly those cases involve a more direct connection with a securities transaction than the SPhinX fraud claims in this action. The SPhinX fraud claims involve the independent actions of making deposits in LLC and then unauthorized transfers to RCM, and then a Refco bankruptcy. The LBO and IPO securities transactions are more remote from the SPhinX fraud claims than those involved in *Anwar, Pension Committee,* or indeed any of the other Madoff feeder fund cases that have found SLUSA preclusion.

If that were not enough, Judge Rakoff's prior ruling on SLUSA in the PAT case fully

14

justifies a ruling that the SPhinX fraud claims are not barred by SLUSA. In the Private Actions Trust case, the Refco Trustee sought recovery on behalf of FX customers on the ground 1) that their assets at RCM were wrongly upstreamed and used improperly to fund Refco operations (referred to by Judge Lynch as the "customer fraud"); and 2) that Refco fraudulently concealed the RGHI receivable as part of a scheme of insiders to cash out in the LBO and IPO (referred to by Judge Lynch as the "receivables fraud"). The defendants, Mayer Brown and Grant Thornton, argued that the FX customers' claims were barred by SLUSA. The Special Master— affirmed by Judge Rakoff — rejected the SLUSA argument in the following passage:

> The Professional Defendants argue that the Trustee's claims are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p(b)(1). Judge Lynch rejected this argument when lodged against the original complaint. See Op. at 533, n.5.  He stated that:
>
> > The FX customers are pursuing state-law claims against third-parties for the injury they suffered when Refco insiders stole from their FX accounts. This is a simple claim, . . . which does not plausibly "coincide" with the purchase or sale of a covered security. See 15 U.S.C. § 77p(b); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 84, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006); *LaSala v. Bank of Cyprus Public Co. Ltd.*, 510 F.Supp.2d 246, 273 (S.D.N.Y.2007) ("Where the alleged conduct giving rise to the claim is too far removed from a securities transaction, the 'in connection with' requirement is not met."). . . .
>
> The Professional Defendants argue that the SLUSA question must be revisited because the FAC "now suggests that it was the LBO that ultimately made it impossible for these customers to recover their funds." Memorandum in Support of Motion to Dismiss at 43.
>
> It is true that the Trustee's attempt to cast allegations about the receivables scheme generally and the LBO specifically raises SLUSA concerns. But those same concerns were raised in the original complaint As Judge Lynch noted, the original complaint contained extensive allegations that the receivables scheme and the customer scheme had the "common objective" (Op. at 545) of propping up Refco in order to allow the Insiders to cash out [in securities transactions]. But because Judge Lynch categorically rejected the Trustee's broad conception of "two frauds make one" he found that the only relevant allegations were those that pertained to the customer scheme. It therefore followed that he would reject the Professional Defendants' SLUSA arguments — those defendants do not argue that SLUSA preempts  claims that are limited to the customer scheme.
>
> The same reasoning applies to the Amended Complaint. The Special Master recommends, in accordance with Judge Lynch's opinion, that the Trustee's attempt to plead the receivables fraud as part of a single scheme (or as a hook for aiding and abetting) be rejected. If that recommendation is adopted [as it was by Judge Rakoff] then, as before, the SLUSA defense drops out of the case.

>It is true that the primary wrong recognized as adequately pled by the Special Master is in some sense related to the LBO. But the claim for fraudulent inducement does not require any showing of a purchase of sale of a security. Rather, the LBO is simply a fact — by the Trustee's allegation, the LBO rendered RCM clearly insolvent. For the fraudulent inducement claim, it does not matter *how* RCM became insolvent, only *that* it was.
>
>The Professional Defendants argue that the Amended Complaint alleges fraud "in connection with" the purchase or sale of a covered security under SLUSA. But their arguments in that regard relate to the Trustee's attempt to tie the receivables scheme into the customer scheme — that the LBO and IPO were used to cash-out the Insiders, and that the siphoning [from RCM] was part of the grand scheme. . . . These broader allegations by the Trustee would trigger SLUSA preemption, because they allege damages "in connection with" the purchase or sale of a "covered security." [The footnote here observes that conversion claims would in any event not be barred.] The term "in connection with" is construed broadly. [citing *Dabit*]. Certainly, allegations that an LBO and an IPO were central parts of a fraud that injured plaintiffs would suffice. [The footnote here states that the SLUSA numerosity requirement was met and that the stock issued in the IPO and the bonds issued in the LBO qualified as "covered securities" under SLUSA.] But it cannot be construed so broadly as to preempt an action alleging only that a transaction caused a fact that is relevant to a separate wrong.
>
>To the extent the Trustee's claims are limited to wrongs tied only to the customer scheme — as Judge Lynch required and as this Report recommends — those claims are not [precluded] by SLUSA.

PAT R and R at 40-41.

While the above disposition of SLUSA arguments approved by Judge Rakoff is not technically the law of the case, there is nothing in the papers presented or in subsequent developments that would justify deviation from the following principles established in the Private Action Trust R and R: 1) claims involving unauthorized transfers out of (and, a fortiori, into) RCM are not sufficiently connected with a securities transaction to be barred by SLUSA; and 2) claims alleging that the LBO or the IPO were central parts of a fraud that injured SPhinX/PlusFunds are sufficiently connected with a securities transaction to be barred by SLUSA, if the other statutory requirements are met.

Accordingly, even if this is a "covered action" under SLUSA, the SPhinX fraud claims are not barred because they are not sufficiently "in connection with" a securities transaction.

### *B. Refco Fraud*

The discussion immediately above — particularly the discussion of Judge Rakoff's SLUSA ruling in the Private Actions Trust case — indicates the following:

1. The Plaintiffs' claims for upstreaming assets out of RCM are not sufficiently connected with a securities transaction to be precluded by SLUSA. Like the claims of the FX customers, in Judge Lynch's words, these are "simple claims" for stealing of assets that do not plausibly "coincide" with the purchase or sale of a covered security.

2. The claims for misrepresenting the financial condition at Refco through false statements and round-trip loans are not sufficiently connected to be barred by SLUSA, at least to the extent that the claims do not implicate the LBO or IPO as an integral part of that fraud. For example, the claims against the Round Trip Loan defendants are claims that they aided and abetted a fraud, independently of any LBO or IPO.

3. Any claims that invoke the LBO or IPO are in connection with a securities transaction. Specifically, the following claims against the Defendants remaining in this case are "in connection with" a securities transaction as that term is applied in the cases discussed above and in the PAT opinion:[15]

● Count VI, for accountant malpractice, against PwC — insofar as the claim is based on PwC's Refco engagement, as that engagement was for the purpose of preparing the LBO. See FAC ¶ 1150. [16]

● Count XIII, for fraud, against the Refco Insiders — insofar as the claim is based on false statements made during the LBO and IPO.

● Count XVII, for aiding and abetting fraud, against many defendants — the claims against Grant Thornton/Ramler, PwC, and Mayer Brown invoke the LBO and so involve damages suffered in connection with a securities transaction. See FAC ¶¶ 1259, 1261, 1263.

● Count XVIII, for aiding and abetting breach of fiduciary duty, against many defendants — the claims against Grant Thornton/Ramler, PwC, and Mayer Brown invoke the LBO and so involve damages suffered in connection with a securities transaction. See FAC ¶¶ 1274, 1276, 1278.

● Count XIX, for aiding and abetting conversion, against many defendants — the claims against Grant Thornton/Ramler, PwC, and Mayer Brown invoke the LBO and so involve damages suffered in connection with a securities transaction. See FAC ¶¶ 1285, 1287, 1289.[17]

---

[15] The claims reviewed here are for the defendants who still remain before the Court. Thus, there is no consideration of the claims against Gibson, Dunn, E &Y, BAWAG, etc.

[16] The Special Master has already recommended that Count VI be dismissed on the merits. See the PwC/Ferris R and R, currently before Judge Rakoff.

[17] Whether the aiding and abetting conversion claim sounds in fraud — another requirement for SLUSA preclusion — is discussed in the next section.

● Count XXI, for aiding and abetting breach of fiduciary duty, against Credit Suisse and BofA Securities — this Count propounds the Bank Defendants' contributions to the LBO and the IPO as the gravamen of the claim. Accordingly, if the other statutory elements are met, this Count would be barred under SLUSA as all of the damages claimed are in connection with securities transactions.

● Count XXII, for aiding and abetting fraud, against Credit Suisse and BofA Securities — this Count propounds the Bank Defendants' contributions to the LBO and the IPO as the gravamen of the claim. Accordingly, if the other statutory elements are met, this Count would be barred under SLUSA as all of the damages claimed are in connection with securities transactions.

● Count XXV, for breach of fiduciary duty and aiding and abetting, against the THL Defendants — insofar as the claim is based on THL's preparations for and engineering of the IPO.

## *VI. Which Particular Claims Allege "a misrepresentation or omission of material fact"?*

Assuming the other statutory requirements are met, a state law claim is precluded by SLUSA "where it relies on misstatements or omissions as a 'necessary component' of the claim." *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,* 341 F.Supp.2d 258, 266 (S.D.N.Y. 2004) *See also* Id. (necessary component test covers garden-variety state law claims that "sound in fraud."). Under the "necessary component" test, it is clear that most of the claims brought by the Plaintiffs here allege a misrepresentation or omission of material fact. The Special Master will review, on this point, only those claims that might arguably fall outside the bar:

● *Count IV — Conversion/Aiding and Abetting Conversion.* In the PAT R and R, the Special Master concluded (following Judge Lynch's ruling) that the FX customers' claims for conversion did not sound in fraud. It follows that the Plaintiffs' conversion claims against Sugrue, Kavanagh and Owens would not be precluded by SLUSA even if the other statutory requirements were met. The same is not true for the aiding and abetting claims, however. The Plaintiffs allege specifically that these Defendants substantially assisted the conversion by "concealing the movement of SMFF cash to RCM from innocent members of SPhinX's board." FAC ¶1131. The aiding and abetting claims therefore contain omissions as a necessary component and are barred by SLUSA if all the other statutory requirements apply.

● *Count V — Officer and Director Liability*

This claim does not sound in fraud.

● *Count VI – Accountant Malpractice*

At first glance it would appear that this negligence-based claim does not sound in fraud. But the Plaintiffs allege that the active aiding of the Refco fraud itself constituted fraudulent behavior.

18

See FAC ¶ 1151. So at a minimum the claims are barred insofar as they rely on PwC's work for Refco in preparation for the LBO.

● *Count XV — Conversion*

Based on the PAT ruling — and on the absence of any allegations of misstatement or omission — this claim does not sound in fraud.

● *Count XIX — Aiding and Abetting Conversion*

While the underlying wrong does not sound in fraud, the aiding and abetting claims against each of the remaining Defendants assert, as a necessary component, omissions, concealments and misstatements. Therefore all the claims in this Count would be barred if the other SLUSA statutory requirements are met. See FAC ¶¶ 1287-89.

● *Count XXVI — Tortious Interference With Contract*

This claim sounds in fraud because the Plaintiffs claim that the named Defendants failed to disclose the unauthorized transfers and engaged in fraud in doing so. FAC ¶¶ 1346-47. *See In re Livent, Inc. Noteholders Securities Litig.,* 151 F.Supp.2d 371, 443 (S.D.N.Y. 2001) (tortious interference claim barred by SLUSA where defendants were alleged to have acted deceptively).

*VII. Conclusion*

The Special Master makes the following recommendations:

1. The motions to dismiss under SLUSA should be denied because the Plaintiffs' action is not a "covered class action" within the meaning of the statute.

2. If the Court nonetheless finds that the Plantiffs' action is a covered class action, then the following claims should be dismissed with prejudice under SLUSA because they allege damages in connection with a purchase or sale of a security, and sound in fraud:

● Count VI, insofar as the claim is based on PwC's Refco engagement.

● Count XIII, insofar as the claim is based on false statements made during the LBO and IPO.

● Count XVII, the claims against Grant Thornton/Ramler, PwC, and the Mayer Brown defendants.

● Count XVIII, the claims against Grant Thornton/Ramler, PwC, and the Mayer Brown defendants.

● Count XIX, the claims against Grant Thornton/Ramler, PwC, and the Mayer Brown defendants.

● Count XXI in its entirety.

● Count XXII in its entirety.

● Count XXV, insofar as the claim is based on THL's preparations for and engineering of the IPO.

    3. None of the other claims brought by the Plaintiffs should be dismissed under SLUSA, even if this is a covered class action — either because they do not involve damages in connection with a sale or purchase of a security, or do not sound in fraud, or both.

                                              Daniel J. Capra
                                              Special Master

Dated: September 5, 2011
New York, New York