UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
In re REFCO INC. SECURITIES LITIGATION                        :   Case No. 07-md-1902 (JSR)
                                                              :
------------------------------------------------------------- X

                    This Document Relates To:

------------------------------------------------------------- X
                                                              :
KENNETH M. KRYS, *et al.*,                                    :
                                                              :   Case No. 08-cv-7416 (JSR)
                              Plaintiffs,                     :
                                                              :
                    -against-                                 :
                                                              :
ROBERT AARON, *et al.*,                                       :
                                                              :
                              Defendants.                     :
------------------------------------------------------------- X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
COUNTERCLAIMS ASSERTED BY DPM DEFENDANTS AND GUY CASTRANOVA**

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities .................................................................................................................. ii

Preliminary Statement................................................................................................................1

Argument ...................................................................................................................................2

    A.    DPM's Counterclaim for Contribution Should Be Dismissed................................2

    B.    DPM's Counterclaim for Indemnification Should Be Dismissed............................4

        1.    As the new York Court of Appeals has made clear, New York law only enforces indemnity provisions where it is "unmistakably clear" that the parties intended the indemnity to apply to claims between the parties to the contract ................................................................................4

        2.    The DPM Service Agreement does not specifically provide for indemnification of claims between the parties to the contract ....................................................................................7

Conclusion ...............................................................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adesso Café Bar & Grill, Inc. v. Burton*,
   74 A.D.3d 1253, 904 N.Y.S.2d 490 (2d Dep't 2010) .................................................................. 9

*Amusement Indus., Inc. v. Stern*,
   693 F. Supp. 2d 319 (S.D.N.Y. 2010) ....................................................................................... 3

*Bourne Co. v. MPL Commc'ns, Inc.*,
   751 F. Supp. 55 (S.D.N.Y. 1990) ............................................................................................. 6

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ...................................................................................................... 4

*Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*,
   458 F. Supp. 2d 178 (S.D.N.Y. 2006) ....................................................................................... 6

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*,
   74 N.Y.2d 487, 549 N.Y.S.2d 365 (1989) ........................................................................ passim

*Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*,
   769 F. Supp. 2d 322 (S.D.N.Y. 2011) ....................................................................................... 3

*PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, Nos. 05-6885-CV(L), 05-7040-CV(Con),
   2006 U.S. App. LEXIS 29048 (2d Cir. Nov. 20, 2006) .......................................................... 10

*Raquet v. Braun*,
   90 N.Y.2d 177, 659 N.Y.S.2d 237 (1997) ................................................................................ 3

*Sequa Corp. v. Gelmin*,
   851 F. Supp. 106 (S.D.N.Y. 1994) ........................................................................................... 6

*Tonking v. Port Authority of New York and New Jersey*,
   3 N.Y.3d 486, 787 N.Y.S.2d 708 (2004) .................................................................................. 9

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
   369 F.3d 34 (2d Cir. 2004) ........................................................................................................ 7

*Weissman v. Sinorm Deli, Inc.*,
   88 N.Y.2d 437, 646 N.Y.S.2d 308 (1996) ................................................................................ 9

**Statutes**

N.Y. CPLR § 1401 ............................................................................................................................ 3

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................... 1

Plaintiffs Kenneth M. Krys and Margot MacInnis, as Joint Official Liquidators ("JOLs") of, *inter alia*, SPhinX Managed Futures Fund SPC ("SMFF"), respectfully move the Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Counterclaims asserted by defendants/ counterclaimants Derivatives Portfolio Management, LLC, Derivatives Portfolio Management, Ltd., DPM-Mellon, LLC, DPM-Mellon, Ltd. (collectively, "DPM") and Guy Castranova for failure to state a claim upon which relief can be granted.

**Preliminary Statement**

DPM's counterclaims for contribution and indemnification fail to state claims upon which relief can be granted and should be dismissed with prejudice.  Counterclaim Count I is nonsensical in that seeks contribution from SMFF in connection with SMFF's claims against DPM and Castranova.  Because a contribution claim, by its nature, contemplates a claim against a third-party, DPM and Castranova cannot seek contribution from the plaintiff, SMFF, for damages claimed by SMFF.

As to Count II for indemnification, New York law's strict construction of indemnification provisions bars DPM's claim against SMFF.  For a claim for indemnification to apply to a claim between the parties to the contract, the indemnity provision must be "exclusively or unequivocally referable to claims between the parties themselves."  *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 367 (1989).  Here, the parties agreed to mutual and broadly worded indemnification provisions, with no "unmistakably clear" language of intention to provide indemnity for claims between the parties.  Accordingly, DPM has no indemnity claim in connection with claims brought by SMFF itself.

Dismissal of DPM's indemnity claim will promote important interests of the SPhinX Funds and their investors and creditors in the Cayman Islands.  Currently, the JOLs have been

unable to distribute the assets of the SPhinX estate because the Cayman Islands Court has required a reserve to cover potential indemnity claims asserted by parties such as DPM. This reserve has prevented the JOLs from distributing assets of the estate to innocent investors and creditors, who have been waiting over five years to receive their assets from the estate. The dismissal of DPM's clearly deficient indemnity claim will bring the JOLs one step closer to a preliminary distribution to SPhinX's investors and creditors. DPM's Counterclaims should be dismissed with prejudice.

## Argument

**A. DPM's Counterclaim for Contribution Should Be Dismissed.**

Counterclaim Count I should be dismissed because it seeks contribution from SMFF in connection with claims for damages asserted by SMFF.

In Counterclaim I for contribution, DPM and Castranova allege that

> plaintiffs seek to recover from DPM and Castranova damages in the amount of $263 million attributable to a settlement SMFF entered into with the bankruptcy trustee of Refco LLC to resolve a preference action the Refco trustee brought against SMFF.

Counterclaim ¶ 1.

DPM and Castranova allege that SMFF's own actions "contributed in whole or in part to the damages claimed in the First Amended Complaint against DPM and Castranova." *Id.* ¶ 15. DPM and Castranova further allege that "Counterclaim Defendants [the JOLs on behalf of SMFF] are liable for the damages claimed in the First Amended Complaint against DPM and Castranova." *Id.* ¶ 16. DPM therefore asserts a counterclaim for contribution against SMFF in connection with SMFF's claim against DPM.

Count I against SMFF is nonsensical and should be dismissed with prejudice. Under New York law,

2

> two or more persons *who are subject to liability* for damages for the same personal injury, injury to property or wrongful death, *may claim contribution among them* whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

N.Y. CPLR § 1401 (emphasis added).

By its very nature, a claim for contribution contemplates apportionment of liability among defendants or a defendant and a liable third-party not named by the plaintiff. *See Raquet v. Braun*, 90 N.Y.2d 177, 182, 659 N.Y.S.2d 237, 240 (1997) ("a defendant may seek contribution from a third party"); *see also Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 327-28 (S.D.N.Y. 2011) (recognizing "a proper third-party defendant to a contribution claim" under CPLR § 1401); *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 324 (S.D.N.Y. 2010) ("Contribution is a remedy available to any tortfeasor who pays more than its fair share of a judgment – as apportioned by the factfinder in terms of relative culpability against other tortfeasors") (citations and internal quotation marks omitted).

There is no such thing as a contribution claim against the plaintiff. By definition, a claim for contribution arises among joint tortfeasors when one tortfeasor "has paid more than his or her proportionate share to the injured party" – here, SMFF. Black's Law Dictionary 378 (9th ed. 2004). Here, DPM alleges that SMFF, the plaintiff, is "liable for the damages claimed in the First Amended Complaint," damages suffered by SMFF itself. *See* Counterclaim ¶ 16. SMFF cannot be liable to itself for the $263 million lost by SMFF, and cannot therefore be subject to a claim for contribution. Although DPM might attempt to blame SMFF for its losses, that is an affirmative defense, not a counterclaim for contribution. Because SMFF is the very plaintiff asserting claims for the lost $263 million against DPM, DPM's contribution claim against SMFF should be dismissed.

### B. DPM's Counterclaim for Indemnification Should Be Dismissed.

Count II of DPM's Counterclaim for indemnification should be dismissed because the indemnity provision of the Service Agreement[1] relied upon by DPM is not "exclusively or unequivocally referable to claims between the parties" to the contract, as required under New York law.[2] *Hooper*, 74 N.Y.2d at 492, 549 N.Y.S.2d at 367. Accordingly, the indemnity provision only applies to damages incurred by DPM in connection with claims asserted by third parties, and not by SMFF, a party to the contract.

> **1. As the New York Court of Appeals has made clear, New York law only enforces indemnity provisions where it is "unmistakably clear" that the parties intended the indemnity to apply to claims between the parties to the contract.**

Under New York law,[3] contractual indemnity provisions are enforceable, but they are very strictly construed in light of New York's general rule that "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper*, 74 N.Y.2d at 491, 549 N.Y.S.2d at 366. New York courts "restrict" any contract providing a duty to indemnify "to avoid reading into it a duty which the parties did not intend to be assumed. The promise should

---

[1] DPM's indemnity claim arises out of the Service Agreement between DPM and the SPhinX Funds, including SMFF. *See* Counterclaim ¶¶ 17-21. Copies of the July 9, 2002, May 1, 2003 and June 30, 2004 versions of the Service Agreement are attached to the September 13, 2011 Declaration of Mason Simpson ("Simpson Decl.") as Exhibit A. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (allowing the parties' contract to be considered on motion to dismiss); *cf.* July 19, 2010 Report & Recommendation of the Special Master on Motions to Dismiss at 9 n.9, In re Refco Securities Litigation, No. 07-md-1902 (JSR) (S.D.N.Y. July 19, 2010), ECF No. 813 ("The Service Agreement is obviously integral to the Plaintiffs' complaint and so its terms may be considered on a motion to dismiss.").

[2] Castranova does not assert an indemnity claim. *See* July 19, 2010 R&R at 13-14 ("Castranova has unequivocally admitted in his briefs that he is not seeking indemnity under any agreement").

[3] The Service Agreement includes a New York choice of law provision. *See* Simpson Decl., Ex. A, Service Agreement ¶ 20.

not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Id.*, at 491-92, 549 N.Y.S.2d at 367.

In *Hooper*, the New York Court of Appeals analyzed a contract providing for the plaintiff to purchase computer equipment and services from the defendant. *See id.* at 490, 549 N.Y.S.2d at 366. The contract provided for indemnity against and from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees arising out of:

    (i)     Any breach by [defendant] AGS of any express or implied warranty hereunder and any express representation or provision hereof;
    (ii)    The performance of any service to be performed hereunder;
    (iii)   Infringement of the patent rights, copyright or trademark . . .
    (iv)   The installation, operation, and maintenance of the system; or
    (v)    Mechanic's liens for labor and materials.

*Id.* at 490, 549 N.Y.S.2d at 366.

The jury found for the plaintiff on its breach of contract claim, but awarded no damages. *See id.* at 490, 549 N.Y.S.2d at 366. The plaintiff then asserted an indemnity claim against the defendant for attorneys' fees incurred in the litigation. *See id.* 490, 549 N.Y.S.2d at 366. On appeal, the Court of Appeals concluded that the indemnity provision did not apply to claims asserted between the parties to the indemnity contract.

The Court of Appeals found that the broad language of the provision "failed to define the scope of defendant's promise" to provide indemnification, and specifically whether it was intended to apply to claims between the parties or only to claims asserted by third parties. *Id.* at 491, 549 N.Y.S.2d at 366-67. Despite the broad language of the indemnity provision, including indemnity for any losses incurred "arising out of . . . [t]he performance of any service to be performed hereunder," the Court of Appeals concluded, as a matter of law, that the indemnity provision did not apply to claims between the parties. *See id.* at 492, 549 N.Y.S.2d at 367.

5

Significantly, the Court of Appeals held that indemnity provisions are "strictly construed" and indemnity should not be inferred "unless the intention to do so is unmistakably clear from the language of the promise." *Id.* at 491-92, 549 N.Y.S.2d at 367.  The Court of Appeals noted that the language of the indemnity was "typical" of language in agreements relating to indemnity of third-party claims and could not be said to be "exclusively or unequivocally referable to claims between the parties themselves." *Id.* at 492, 549 N.Y.S.2d at 367.

Subsequent decisions have echoed *Hooper*'s restrictive approach.  *See Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*, 458 F. Supp. 2d 178, 188 (S.D.N.Y. 2006) (following *Hooper* and refusing to apply "boilerplate" indemnity language to litigation between the parties to contract); *Sequa Corp. v. Gelmin*, 851 F. Supp. 106, 110-11 (S.D.N.Y. 1994) ("The *Indemnity Agreement here does not expressly provide for indemnification of claims asserted between the parties* to that agreement.  Rather, the agreement's broad language – 'any and all' claims 'of any kind and nature' – refers solely to the type of claims that are covered, not the identification of parties who can assert those claims. . . .  If the claims covered refer 'exclusively' or 'unequivocally' to claims between the parties, a Court may interpret an indemnification agreement to include such claims.  If not, then a court must find the agreement to be lacking evidence of the required intent") (emphasis added); *Bourne Co. v. MPL Commc'ns, Inc.*, 751 F. Supp. 55, 58 (S.D.N.Y. 1990) ("where, as here, the parties' intentions to provide indemnification for claims between the parties is not 'unmistakably clear' from the language of the promise, this Court cannot infer an intent to waive the benefit of the rule that parties are responsible for their own attorneys' fees").

6

## 2. The DPM Service Agreement does not specifically provide for indemnification of claims between the parties to the contract.

The Service Agreement here does not include "unmistakably clear" language that is "exclusively or unequivocally referable to claims between the parties themselves." *Hooper*, 74 N.Y.2d at 492, 549 N.Y.S.2d at 367. Each of the Service Agreements between DPM and SPhinX included the following provision for indemnification:

> DPM and DPM Ltd. agree to indemnify and hold harmless the Companies and the Portfolio Fund Series and their officers and employees and their respective successors and permitted assigns from and against any and all liabilities, claims, costs, fines, damages, expenses, losses and attorneys' fees arising out of or in connection with any failure of DPM or DPM Ltd. to perform their obligations hereunder. The Companies agree to indemnify and hold harmless DPM and DPM Ltd. and their respective officers and employees and their respective successors and permitted assigns from and against any and all liabilities, claims, costs, fines, damages, expenses or losses incurred by DPM or DPM Ltd. in consequence of the performance of their obligations under this Agreement. Nothing contained herein shall require either party to indemnify the other for acts of the others, which constitute gross negligence, malfeasance or willful misconduct.

Simpson Decl., Ex. A, May 1, 2003 DPM Service Agreement ¶ 18.

Accordingly, the DPM Service Agreement includes two competing indemnity provisions: (1) DPM agrees to indemnify the SPhinX Funds for losses arising from "any failure of DPM or DPM Ltd. to perform their obligations" under the Service Agreement; and (2) SPhinX agrees to indemnify DPM for losses incurred "in consequence of the performance of their obligations" under the Service Agreement. *Id.*

There is no language in the Service Agreement specifically providing for either party to indemnify the other in the event of litigation between the parties. That absence alone is fatal to DPM's indemnification claim. *See U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 77-78 (2d Cir. 2004) (construing ambiguous contract language against indemnity: "it is the

7

Obligees who bear the heavy burden of persuading us to depart from the American Rule, and we find that they have not met that burden") (internal citation omitted).

The indemnity provision at issue here cannot be construed to refer "exclusively" or "unequivocally" to claims between the parties.  The indemnity provision clearly contemplates that the Funds can recover against DPM for breach of its duties under the Service Agreement, expressly providing for *DPM to indemnify SPhinX* if DPM fails to perform its obligations under the Agreement.  *See* Simpson Decl., Ex. A, Service Agreement ¶ 18.  Thus, in the event of a breach of the Service Agreement, the parties contemplated and provided that SPhinX could recover its damages from DPM.  The Service Agreement, however, *does not* provide for indemnity of DPM in the event of a breach of its contractual duties, only for indemnity of SPhinX for DPM's breach.  *See id.*

The Service Agreement does provide for SPhinX to indemnify DPM as a result of "expenses or losses incurred by DPM or DPM Ltd. in consequence of the performance of their obligations."  *See id.*  Under well-settled New York law, this contemplates indemnification of claims against DPM *by third-parties only*.  If DPM performed its obligations under the Service Agreement, SPhinX would have no claims against DPM because DPM would not have breached the Service Agreement.  The only claim that can logically be brought against the DPM entities "in consequence of the performance of their obligations" -- as opposed to non-performance -- is a claim by a third party.  The *Hooper* court reached the same conclusion based on similar contractual language for indemnity of losses "arising out of . . . [t]he performance of any service to be performed hereunder."  *See* 74 N.Y.2d at 490, 549 N.Y.S.2d at 366.

As mentioned above, the Service Agreement clearly contemplates that the Funds could bring suit for breach of DPM's duties under the Service Agreement.  The notion that the Funds

8

simultaneously agreed to pay for DPM's damages or legal fees arising out of such a claim is illogical. The competing nature of the indemnity provisions also demonstrates that the parties did not intend to apply such provisions to claims between themselves. Otherwise, SPhinX could sue DPM and recover damages for breach of contract, and DPM could then sue SPhinX for indemnification of those damages, and then SPhinX could then sue DPM for indemnification, and so on. Because application of the indemnity clause to claims between the parties would render contractual language illogical, it can only be concluded that the parties did not intend for the indemnity to cover claims between the parties. *See Hooper*, 74 N.Y.2d at 492-93, 549 N.Y.S.2d at 367; *see also, e.g., Adesso Café Bar & Grill, Inc. v. Burton*, 74 A.D.3d 1253, 1254, 904 N.Y.S.2d 490, 491 (2d Dep't 2010) (affirming dismissal of indemnity claim where "agreement was not unmistakably clear that the defendants agreed to indemnify the plaintiffs for counsel fees incurred in prosecuting this action to obtain indemnification on the damages which the plaintiff sustained as a result of the defendants' breach of contract") (internal quotation marks and alterations omitted).

It is important to note that this cannot be considered an issue of contractual interpretation that requires discovery to resolve. *See Weissman v. Sinorm Deli, Inc.*, 88 N.Y.2d 437, 447, 646 N.Y.S.2d 308, 313 (1996) ("evidence outside the four corners of the document as to what was actually intended is generally inadmissible"). Under *Hooper* and its progeny, the express language of the contractual provision for indemnity must be "unmistakably clear" and "exclusively or unequivocally referable" to claims between the parties before indemnification will be available. *See, e.g., Tonking v. Port Authority of New York and New Jersey*, 3 N.Y.3d 486, 490, 787 N.Y.S.2d 708, 710 (2004) ("the language of the parties is not clear enough to enforce an obligation to indemnify, and we are unwilling to rewrite the contract and supply a

9

specific obligation the parties themselves did not spell out"); *PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, Nos. 05-6885-CV(L), 05-7040-CV(Con), 2006 U.S. App. LEXIS 29048, at *3 (2d Cir. Nov. 20, 2006) ("the test is whether the intent to indemnify is unmistakably clear from the language of the promise, not whether the agreement could be read to provide for indemnification") (citation and internal quotation marks omitted).  Because there is no such "unmistakably clear" language here, DPM's indemnification claim should be dismissed with prejudice.

**Conclusion**

For all the foregoing reasons, the Counterclaims asserted by DPM and Guy Castranova should be dismissed with prejudice.

Dated: New York, New York
September 13, 2011

Respectfully submitted,

By:  s/ David J. Molton
David J. Molton (DM-1106)
Andrew Dash (AD-7913)
Mason Simpson (MS-4904)
**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
dmolton@brownrudnick.com
adash@brownrudnick.com

-and-

Leo R. Beus, *pro hac vice*
Dennis K. Blackhurst, *pro hac vice*
**BEUS GILBERT PLLC**
4800 North Scottsdale Road, Suite 6000
Scottsdale, Arizona 85251
Telephone: (480) 429-3000
Facsimile: (480) 429-3100
lbeus@beusgilbert.com
dblackhurst@beusgilbert.com