**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------
                                                    :
IN RE REFCO INC. SECURITIES LITIGATION    :        CASE NO. 07-MD-1902 (JSR)
-------------------------------------------------------------------    :

This document relates to:

-------------------------------------------------------------------
                                                    :
KENNETH M. KRYS, *ET AL.,*                 :
                                                    :
                         Plaintiffs,       :        CASE NO. 08-CV-3086 (JSR)
                                                    :
         -against-                         :
                                                    :
CHRISTOPHER SUGRUE, *ET AL.*               :
                                                    :
                         Defendants.       :
-------------------------------------------------------------------    :


**DEFENDANTS' OBJECTION TO THE REPORT**
**AND RECOMMENDATION OF THE SPECIAL MASTER ON**
**THE OMNIBUS ISSUE OF THE APPLICABILITY OF SLUSA**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ............................................................................................................. 3

I.     THIS SUIT IS PART OF A "COVERED CLASS ACTION" BECAUSE IT IS ONE OF A "GROUP OF LAWSUITS" THAT SATISFIES SLUSA'S CRITERIA. ................ 3

       A.     SLUSA's Requirement that a "Group of Lawsuits" "Involve[] Common Questions" Does Not Require that the Common Questions "Predominate" over Individual Questions. ...................................................................... 4

       B.     The SPhinX Case Raises "Common Questions of Law or Fact" with the PAT Case and Other Cases in the Refco MDL. ............................................................ 6

            1.     Differences between the SPhinX and PAT cases do not defeat commonality under SLUSA's "group of lawsuits" provision. ................... 6

            2.     The SPhinX case can be part of a "group of lawsuits" with the PAT case even if the PAT case itself is not barred by SLUSA. ......................... 10

            3.     Barring the Refco fraud claims is fully consistent with SLUSA's purpose as well as its plain language. ......................................................... 12

II.     EVEN STANDING ALONE, THE SPHINX CASE IS A "COVERED CLASS ACTION." .............................................................................................................. 13

III.     COUNT XXVI SHOULD BE DISMISSED UNDER SLUSA AS TO THE MAYER BROWN DEFENDANTS. ............................................................................ 15

CONCLUSION ......................................................................................................... 15

i

# TABLE OF AUTHORITIES

## CASES

*Backus v. Connecticut Community Bank, N.A.*, No. 10 Civ. 798, __ F. Supp. 2d __, 2011 WL 2183984 (D. Conn. Mar. 30, 2011) ............................................................12, 13

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *rev'd on other grounds*, 547 U.S. 71 (2006) ...................................................................10

*In re Enron Corp. Securities, Derivative & ERISA Litigation*, 535 F.3d 325 (5th Cir. 2008)..........................................................................................................11

*In re Federal National Mortgage Association Securities, Derivative, & "ERISA" Litigation*, 503 F. Supp. 2d 25 (D.D.C. 2007) ...........................................4, 7, 12, 13

*Gordon Partners v. Blumenthal*, No. 02 Civ. 7377, 2007 WL 1438753 (S.D.N.Y. May 16, 2007), *adopting*, 2007 WL 431864 (Mag. J. Report & Recommendation) (S.D.N.Y. Feb. 9, 2007), *aff'd* 293 F. App'x 815 (2d Cir. 2008) ........................4, 6

*Grund v. Delaware Charter Guarantee & Trust Co.*, No. 09 Civ. 8025, __ F. Supp. 2d __, 2011 WL 2118754 (S.D.N.Y. May 26, 2011) ...................................................12

*Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340 (S.D. Fla. 2007), *aff'd* 546 F.3d 1340 (11th Cir. 2008)....................................4, 5, 7

*Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340 (11th Cir. 2008)...................4, 5, 7

*LaSala v. TSB Bank, PLC*, 514 F. Supp. 2d 447 (S.D.N.Y. 2007) ................................................14

*Lee v. Marsh & McLennan Cos.*, Nos. 06 Civ. 6523 & 15448, 2007 WL 704033 (S.D.N.Y. Mar. 7, 2007) ...............................................................................................14

*In re Lord Abbett Mutual Funds Fee Litigation*, 553 F.3d 248 (3d Cir. 2009) ............................10

*In re Monster Worldwide, Inc. Securities Litigation*, 251 F.R.D. 132 (S.D.N.Y. 2008)................9

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ..........................................................9

*Phillips v. Harrah's Entertainment, Inc.*, No. 06 Civ. 01356, 2007 WL 556954 (D. Nev. Feb. 15, 2007) ..........................................................................................4, 7

*Picard v. HSBC Bank PLC*, 450 B.R. 406 (S.D.N.Y. 2011) .........................................................14

*Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208 (9th Cir. 2009).......................................10

*Pub. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, No. 08 Civ. 10841, __ F. Supp. 2d __, 2011 WL 3652477 (S.D.N.Y. Aug. 22, 2011)............................................................6

*Russello v. United States*, 464 U.S. 16 (1983) ............................................................5

*United States v. Maria*, 186 F.3d 65 (2d Cir. 1999) ......................................................5

*In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236 (S.D.N.Y. 2004) ................................12, 13

## STATUTES & RULES

15 U.S.C. § 78bb(f)(1)(A)..............................................................................1, 10

15 U.S.C. § 78bb(f)(5)(B)(i) ............................................................................ passim

15 U.S.C. § 78bb(f)(5)(B)(ii) ........................................................................... passim

15 U.S.C. § 78bb(f)(5)(D)..................................................................................14

28 U.S.C. § 1332(d)(1)(B) ..................................................................................5

28 U.S.C. § 1332(d)(11)(A) .................................................................................5

28 U.S.C. § 1332(d)(11)(B) .................................................................................5

Federal Rule of Civil Procedure 23 ..................................................................5, 6, 9

## LEGISLATIVE HISTORY

144 Cong. Rec. 8977 (1998)................................................................................7

144 Cong. Rec. 8955 (1998)................................................................................7

144 Cong. Rec. 8981 (1998)................................................................................7

S. Rep. No. 105–182 .....................................................................................5, 13

The undersigned Defendants[1] respectfully submit this objection to the Report and Recommendation of the Special Master on the Omnibus Issue of the Applicability of SLUSA (the "Report").

## PRELIMINARY STATEMENT

The Securities Litigation Uniform Standards Act ("SLUSA") requires dismissal of nearly all of the claims against the undersigned Defendants.  The Special Master's Report disagrees – recommending that the Court adopt an entirely novel interpretation of SLUSA that would limit its coverage in direct contravention of its plain language and in a manner that even Plaintiffs never suggested.   Defendants urge this Court to reject the Report's recommendation.

SLUSA requires dismissal of any "covered class action" that alleges state-law claims for any "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1)(A).  Many of the claims in this case invoke the "Refco fraud," which the Special Master's Report correctly identifies as alleging misstatements or omissions "in connection with the purchase or sale of [ ] covered securit[ies]" – namely, the bonds sold to the public after the 2004 leveraged buyout (the "LBO") and the stock sold in the 2005 initial public offering (the "IPO").  Accordingly, the Report is correct to recommend that any claims based on the Refco fraud should be dismissed under SLUSA – to the extent that this case can be considered part of a "covered class action."

---

[1] The Defendants are: Credit Suisse Securities (USA) LLC, Banc of America Securities LLC and JPMorgan Chase & Co.; Grant Thornton LLP and Mark Ramler; PricewaterhouseCoopers LLP ("PwC") and PwC partner Mari Ferris; Mayer Brown LLP, Edward Best, Joseph Collins, and Paul Koury; Thomas H. Lee Partners L.P., THL Managers V LLC, Thomas H. Lee Advisors LLC, Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., Thomas H. Lee Equity (Cayman) Fund V, L.P., THL Equity Advisors V, LLC, Thomas H. Lee Investors Limited Partnership, The 1997 Thomas H. Lee Nominee Trust, Thomas H. Lee, David V. Harkins, Scott L. Jaeckel, and Scott A. Schoen.

The Report errs, however, in finding that, with respect to the Refco fraud, this case *is not* part of a "covered class action."  It is, for two separate reasons.  First, the SPhinX case is one of a "group of lawsuits":  multiple, coordinated lawsuits "involving common issues of law or fact" in which damages are being sought by more than fifty persons in the aggregate.  *See* § 78bb(f)(5)(B)(ii).  While the Report correctly finds that the SPhinX case has been consolidated for certain purposes with the Private Actions Trust ("PAT") case along with other cases in the Refco MDL – and thus that these suits are all a "group of lawsuits" for purposes of SLUSA – it erroneously concludes that claims raised in the SPhinX case and in the PAT case do not "involv[e] common questions of law or fact."  On the contrary, that relatively low standard is easily met here, where the SPhinX and PAT cases both allege the same acts by Refco, by some of the same defendants, relating to the alleged concealment of Refco's financial condition in connection with the LBO and IPO and the alleged "upstreaming" of customer funds from Refco Capital Markets ("RCM").  Indeed, many of the Refco fraud allegations in this case are copied nearly verbatim from those in the PAT case.  The Report reaches a contrary result only by applying a different, higher standard requiring that common issues "*predominate*" – a standard that was taken from a different provision of SLUSA and should not apply here.

Second, even if it were not part of a covered "group of lawsuits," the SPhinX case *by itself* is a "covered class action," within the meaning of SLUSA, because it is a "single lawsuit" that seeks damages on behalf of more than fifty persons in which common issues predominate over individual issues.  *See* § 78bb(f)(5)(B)(i).  Those fifty-plus persons are the multitude of creditors for whose benefit Plaintiffs are prosecuting this case.

For each of these reasons, Plaintiffs' claims based on the "Refco fraud" should be dismissed under SLUSA.

**ARGUMENT**

I.    **THIS SUIT IS PART OF A "COVERED CLASS ACTION" BECAUSE IT IS ONE OF A "GROUP OF LAWSUITS" THAT SATISFIES SLUSA'S CRITERIA.**

SLUSA defines a "covered class action" to include "any *group of lawsuits* filed in or pending in the same court and *involving common questions of law or fact*, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose."  15 U.S.C. § 78bb(f)(5)(B)(ii) (emphasis added).  The Report correctly concludes that the SPhinX case and PAT case together satisfy the statute's consolidation and numerosity requirements because they are consolidated for pre-trial purposes in the Refco MDL and because damages are sought on behalf of more than 50 persons in the aggregate.  *See* Report at 8, 10–11 n.11.

The Report erroneously concludes, however, that the "group of lawsuits" standard is not met because the SPhinX and PAT cases do not "involv[e] common questions of law or fact." *See id.* at 10.  In fact, Plaintiffs themselves did not even dispute that their action and the PAT case involved common questions in their opposition to the Defendants' motions to dismiss.  *See* Omnibus Opp. (Dkt. 266) at 57–59.  That is because the SPhinX and PAT cases, along with the other cases in the Refco MDL,[2] involve many common questions:  Among other things, they allege the very same conduct in regard to the Refco fraud; in fact, many of the allegations in this case were copied nearly verbatim from the allegations in the earlier-filed PAT case.

As its plain language suggests, SLUSA's "common questions" standard is not a high bar. Although the Report errs in suggesting (Report at 9–10 n.10) that the applicable test is whether common questions "predominate" – a standard found not in SLUSA's "group of lawsuits"

---

[2] *See infra* p.11–12.

provision but rather in the separate single-lawsuit provision, *see* § 78bb(f)(5)(B)(i) – even that standard would be satisfied here given the commonality of allegations and issues.

**A.   SLUSA's Requirement that a "Group of Lawsuits" "Involve[] Common Questions" Does Not Require that the Common Questions "Predominate" over Individual Questions.**

Under SLUSA, for a *single lawsuit* to qualify as a "covered class action," issues common to the claimants must "predominate" over individual issues.  § 78bb(f)(5)(B)(i).  That is *not* true for a "group of lawsuits."  Rather than requiring predominance of common issues, the "group of lawsuits" provision requires only that the multiple suits "involv[e] common questions of law or fact."  § 78bb(f)(5)(B)(ii).

The Report errs when it writes that more stringent standard into the "group of lawsuits" provision.  *See* Report at 9–10 n.10.  Courts rightly recognize that SLUSA applies different standards to a "group of lawsuits" and a "single lawsuit," and the Report is contrary to that authority.  *See Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1346 (11th Cir. 2008); *see also Gordon Partners v. Blumenthal*, No. 02 Civ. 7377, 2007 WL 1438753, at *3 (S.D.N.Y. May 16, 2007) (applying "involving" standard without reference to predominance), *adopting*, 2007 WL 431864 (Mag. J. Report & Recommendation) (S.D.N.Y. Feb. 9, 2007), *aff'd* 293 F. App'x 815 (2d Cir. 2008); *In re Fed. Nat'l Mort'g Ass'n Sec., Derivative, & "ERISA" Litig.* ("*Fannie Mae*"), 503 F. Supp. 2d 25, 32 (D.D.C. 2007); *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1344–45 (S.D. Fla. 2007), *aff'd* 546 F.3d 1340; *Phillips v. Harrah's Entm't, Inc.*, No. 06 Civ. 01356, 2007 WL 556954, at *3 (D. Nev. Feb. 15,

2007) (all similar).[3]  Indeed, the Special Master's Report appears to be alone in suggesting that the predominance test applies in the context of a "group of lawsuits."  When Congress chooses markedly different words in abutting sections of a statute, it is appropriate to conclude that the sections do not mean the same thing.  *See United States v. Maria*, 186 F.3d 65, 71 (2d Cir. 1999) ("As a general matter, the use of different words within the same statutory context strongly suggests that different meanings were intended."); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (alterations omitted; internal quotation marks omitted)).

By its plain terms, the "involving common questions" standard is easily satisfied. § 78bb(f)(5)(B)(ii).  In fact, Defendants are not aware of any instance where a court has examined related cases and concluded that they did not "involv[e] common questions."  This case inarguably shares many "common questions of law [and] fact" with the PAT case and other cases in the MDL.  For example, Refco's financial condition and supposed representations regarding RCM are more than "critical" in the SPhinX case; they are the sole basis for the Refco fraud claims.  *Instituto*, 546 F.3d at 1346, *aff'g Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d at 1345 (common questions when same "fraudulent scheme perpetrated by"

---

[3] The dichotomy between the two standards is repeated in the Class Action Fairness Act of 2005. Under that statute, a "class action" is primarily defined to encompass suits filed under Rule 23 of the Federal Rules of Civil Procedure, which typically requires that common issues predominate. *See* 28 U.S.C. § 1332(d)(1)(B) (defining "class action"); Fed. R. Civ. P. 23(b)(3).  But the statute supplements that definition to include large "mass action[s]," which it defines to be instances in which, inter alia, separate suits "involve common questions of law or fact."  § 1332(d)(11)(A)– (B)(i) (providing that "a mass action shall be deemed a class action" for certain purposes and defining a "mass action"); *see also* S. Rep. No. 105–182, at 7–8 (Committee Report on SLUSA indicating "group of lawsuits" provision directed in part at "mass actions").

third party); *Gordon Partners*, 2007 WL 1438753, at *3 (standard satisfied when two cases "based *principally* upon the same underlying facts" (emphasis added)); *cf. Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, No. 08 Civ. 10841, __ F. Supp. 2d __, 2011 WL 3652477, at *6 (S.D.N.Y. Aug. 22, 2011) (Rakoff, J.) ("Even a single common question of law or fact may suffice to satisfy the commonality requirement" of Fed. R. Civ. P. 23).  Far from merely "rais[ing] some subsidiary issues that overlap," Report at 10, the SPhinX and PAT complaints contain many of the exact same allegations about the conduct of the Refco insiders and the two undersigned Defendants that were also sued by the PAT.  *Compare, e.g.*, Am. Compl. ¶¶ 259–65 *with* PAT Compl. ¶¶ 73–79 (both regarding LBO and defendants' alleged conduct and knowledge).

**B.    The SPhinX Case Raises "Common Questions of Law or Fact" with the PAT Case and Other Cases in the Refco MDL.**

The Report suggests two reasons why this case does not share "common questions" with the PAT case, *see* Report at 8–11, but neither is persuasive.  First, although the Report emphasizes that "there are critical differences" between the SPhinX and PAT cases, none of the identified "differences" defeats commonality as to the claims based on the "Refco fraud," which are the only claims that Defendants contend are barred by SLUSA.  Second, although the Report points out that the PAT case itself was found not to be barred by SLUSA, that is immaterial because the SLUSA analysis is applied "claim by claim" to each claim within a covered "group of lawsuits."  Thus, the Refco fraud claims in the SPhinX case are precluded even if the claims in the PAT case are not.

**1.    Differences between the SPhinX and PAT cases do not defeat commonality under SLUSA's "group of lawsuits" provision.**

While the SPhinX case and the PAT case admittedly are not identical in every respect (though many of their allegations are identical, indeed recited verbatim), SLUSA does not

require perfect commonality.  Nor does it require that the cases be brought by a single law firm engaged in a collusive attempt to circumvent SLUSA.  *See* Report at 8–9.  Courts readily have applied SLUSA's "group of lawsuits" provision to cases involving separate parties with different counsel.  *See Instituto*, 546 F.3d at 1346, *aff'g Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d at 1344–45; *Fannie Mae*, 503 F. Supp. 2d at 31–32; *Phillips*, 2007 WL 556954, at *3.[4]  The key question is simply whether the cases "involv[e] common questions," which they obviously do here.  Even under a higher "predominance" standard – which is inapplicable, as discussed above – the distinctions noted in the Report are overwhelmed by common issues.

The Report gives undue significance to an obvious factual difference between the allegations in the SPhinX and PAT cases:  the SPhinX case, but not the PAT case, includes allegations about the "SPhinX fraud," whereby SPhinX's deposits allegedly were transferred from segregated accounts at Refco LLC to non-segregated accounts at RCM.  Report at 9; *see also id.* at 5 (defining "SPhinX fraud").  While that may be a factual difference that matters in other contexts, it is immaterial here, where the claims covered by SLUSA all concern the *Refco fraud* and not the SPhinX fraud.  *See* Report at 17–18.  As the Report acknowledges, the undersigned Defendants have never argued that the claims based on the SPhinX fraud are barred by SLUSA.  Report at 12.  Indeed, most of these Defendants have not even been sued for the SPhinX fraud.  It simply cannot be that a plaintiff may evade SLUSA preclusion merely by alleging an additional fraud and joining additional defendants.

---

[4] This point was not lost on Congress when it passed SLUSA.  One of the bill's harshest critics, Senator Sarbanes, warned that the "group of lawsuits" provision would apply to "an individual investor who finds himself classified as part of a group, although he was not part of a group.  He filed it on its own.  He had his own lawyer, and he wasn't in collusion with anybody else in doing this."  144 Cong. Rec. 8977 (1998) (statement of Sen. Sarbanes); *see also id.* at 8955, 8981 (similar statements by Sen. Sarbanes).

The allegations about the Refco fraud are substantially identical in the SPhinX and PAT cases. In SPhinX, the Refco fraud involves allegations of "1) *upstreaming of assets from RCM*; and 2) all *efforts to hide the true financial condition of Refco, including Round Trip Loans, the LBO, and the IPO*." Report at 5 (emphasis added). Those are precisely the facts alleged in the PAT case (and in other Refco MDL matters). As the Report summarizes, the PAT plaintiffs sought recovery "on the ground 1) that their *assets at RCM were wrongly upstreamed* . . . ; and 2) that Refco *fraudulently concealed the RGHI receivable* as part of a scheme of insiders to cash out in *the LBO and IPO*." *Id.* at 15 (emphasis added). Accordingly, the two cases share extensive "common questions of . . . fact," including (a) Refco's allegedly fraudulent misrepresentations of its financial condition; (b) RCM's alleged "upstreaming" of customer deposits to other Refco entities, and those Refco entities' ability to pay RCM back if requested; (c) the actions by the defendants who allegedly assisted Refco in either of these frauds; and (d) the defendants' alleged knowledge that their actions were being used by Refco to assist in fraudulent conduct.

Not surprisingly, this common factual landscape leads to extensive overlap in legal issues. The Report quotes the PAT R&R's entire legal analysis regarding SLUSA and uses that analysis to guide the resolution of the "in connection with" analysis in this case. *See* Report at 15–17. Both the PAT and SPhinX cases asserted claims for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and aiding and abetting conversion against many of the same defendants.

The Report identifies only one difference between the PAT and SPhinX cases pertaining to the Refco fraud: that the PAT complaint is based on RCM's "hopeless insolvency," while the SPhinX Plaintiffs' claims do not depend on that theory. *Id.* at 10. That overstates the difference

between the two cases.  RCM's alleged insolvency has been a critical factual and legal question in this case since the earliest substantive rulings on the motions to dismiss.  As the Special Master observed in the Standing R&R, "[i]t is only because RCM couldn't pay [its customers] off that Plaintiffs would have a cause of action under the Refco fraud theory.  And RCM was unable to pay them because it was stripped and made insolvent by the Refco fraud."  Standing R&R at 19; *see* PAT Am. Compl. ¶ 132 (alleging that, as a result of upstreaming, RCM "had no means" of returning customer funds).  In any event, the supposed distinction the Special Master identifies cannot overcome the host of common issues in the two cases.

For these reasons, the "involving common questions of law or fact" standard easily is satisfied here.  Indeed, even if the Report were correct (which it is not) that the "predominance" standard found in SLUSA's "single lawsuit" provision applied, that standard too would be satisfied.  *See* 15 U.S.C. § 78bb(f)(5)(B)(i).  That standard echoes the language of Rule 23(b) of the Federal Rules of Civil Procedure, which means generally that "resolution of *some of the legal or factual questions* . . . can be achieved through *generalized proof*, and . . . these particular issues *are more substantial* than the issues subject only to individualized proof."  *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 136 (S.D.N.Y. 2008) (Rakoff, J.) (emphasis added) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  Here, the generalized allegations regarding the Refco fraud – regarding Refco's financial fraud, RCM's upstreaming of customer deposits, the defendants' purported knowledge or assistance in either, and the legal ramifications of these issues, among other things – far outweigh the individualized issues concerning SPhinX if one omits issues of reliance, as required by SLUSA.  *See* § 78bb(f)(5)(B)(i) (excluding "issues of individualized reliance" from single-lawsuit predominance inquiry).

### 2.    The SPhinX case can be part of a "group of lawsuits" with the PAT case even if the PAT case itself is not barred by SLUSA.

The Report concludes that two cases cannot share "common questions of law or fact" when the court has held that the claims in one of those cases (here, the PAT case) are not precluded under SLUSA.  Report at 8.  That is incorrect.  As the Report itself notes, the law in this Circuit is that "SLUSA is applied *claim-by-claim*."  *Id.* at 5 (emphasis added).  Accordingly, it is not unusual for some claims within a "covered class action" to be subject to SLUSA preclusion and others not.  *See, e.g.*, *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1226–28 (9th Cir. 2009); *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 256–57 (3d Cir. 2009).  For example, because SLUSA requires that a claim allege fraud "in connection with" the purchase or sale of a covered security, § 78bb(f)(1)(A), some claims in a covered class action might satisfy the "in connection with" requirement and be barred by SLUSA while "certain [other] claims are not precluded because they do not raise a claim 'in connection with the purchase or sale of a covered security.'"  Report at 5; *see, e.g.*, *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 47 (2d Cir. 2005), *rev'd on other grounds*, 547 U.S. 71 (2006) (holding that claim for lost commissions not "in connection with" and therefore not precluded although other claims were).  Indeed, the Report itself finds that the claims in the SPhinX case based on the Refco fraud satisfy the "in connection with" requirement while Plaintiffs' other claims do not.  Report at 17–18.

For this reason, there is no anomaly to finding that the SPhinX and PAT cases "involv[e] common questions" and form part of a "group of lawsuits" for SLUSA purposes even if the claims in the PAT case themselves are not barred by SLUSA.  The reason the PAT claims survived a motion to dismiss on SLUSA grounds is that those claims – unlike the SPhinX claims relevant here – were found to not allege fraud "in connection with" a covered security.  *See* PAT

Op. at 3 (adopting PAT R&R); PAT R&R at 40–41.  That does not mean *other* claims in the same "covered class action" that *do* allege fraud in connection with a covered security cannot be dismissed under SLUSA.  The Refco fraud claims asserted by the SPhinX Plaintiffs are such claims, and they should be dismissed.

Finally, even if the PAT case somehow were disqualified as one of a "group of lawsuits" with SPhinX, other cases in the Refco MDL would qualify.[5]  At least one of those cases, the Refco federal securities class action, indisputably implicates SLUSA because it alleges fraud in connection with covered securities.[6]  The Securities Class Action of course satisfies SLUSA's numerosity requirement, as it was brought on behalf of a far-reaching class of Refco equity holders.  The SPhinX case shares common issues with the Securities Class Action because both cases allege the same underlying fraud at Refco, and the SPhinX Plaintiffs claim to have relied on the contents of Refco's public disclosures – the same ones at issue in the Securities Class Action.  The SPhinX case likewise shares common issues with the Refco Litigation Trust action, a case focused on the securities offerings that occurred in connection with the LBO and IPO and

---

[5] The Report considers only whether the SPhinX case's relationship with the PAT case satisfies the "group of lawsuits" standard, but the SPhinX case's close relationship with the Securities Class Action, the Refco Litigation Trust action, and other cases that are part of the Refco MDL qualifies as well.  *See* Mem. of Law in Supp. of Grant Thornton LLP's and Mark Ramler's Mot. To Dismiss (Dkt. 201) at 24 (asserting case part of group of lawsuits with "the wide range of *Refco-related lawsuits (including a traditional putative class action)* that have been consolidated for pretrial purposes before this Court" (emphasis added)); Omnibus Opp. at 58 (arguing that "securities actions consolidated in the Refco MDL" do not give rise to SLUSA preclusion).

[6] The Court maintains jurisdiction over the Securities Class Action to administer the distribution of settlement funds.  Therefore, the suit remains "pending in" the same court as the SPhinX case.  *See* 15 U.S.C. § 78bb(f)(5)(B)(ii).  Even if it were not, both cases were pending when the motions to dismiss in this case were filed and for years thereafter.  Because "Congress has evinced its intent that [SLUSA] be considered *at any time*," the Court can consider these cases for determining the "group of lawsuits."  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 535 F.3d 325, 341 (5th Cir. 2008) (emphasis added).  Any other result would inject gamesmanship into SLUSA preclusion, in which plaintiffs could drop cases or claims to avoid the statute's reach.

in which the Refco creditors who would be the beneficiaries of any recovery well exceed 50; indeed, counsel for the SPhinX Plaintiffs has admitted that, in drafting the SPhinX complaint, he virtually copied verbatim the allegations from the Refco Litigation Trust complaint regarding the Refco Fraud. *See* Tr. of Hr'g before Special Master Capra, Nov. 9, 2009, at 119:5–20 (counsel for Plaintiffs explaining that "we borrowed as much as we felt we had a reasonable basis to do that"). The pervasive overlap between the issues in the SPhinX case and those in the Securities Class Action, the PAT case, and the Litigation Trust case weighed heavily in Judge Lynch's decision not to remand the SPhinX case to state court on abstention grounds. *See* Opinion & Order (Dkt. No. 136) at 19–20. As he decided, the SPhinX case "involve[s] precisely the web of deceit at issue in the Refco Securities MDL." *Id.* at 20.

### 3. Barring the Refco fraud claims is fully consistent with SLUSA's purpose as well as its plain language.

"The Supreme Court has held that courts should give SLUSA a broad reading." *Grund v. Del. Charter Guarantee & Trust Co.*, No. 09 Civ. 8025, __ F. Supp. 2d __, 2011 WL 2118754, at *8 (S.D.N.Y. May 26, 2011); *In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 242 (S.D.N.Y. 2004) (in addressing scope of "covered class action" definition, noting that "Congress specifically directed the courts to interpret SLUSA in an expansive fashion"). Yet, citing the purpose of the "group of lawsuits" provision "to prohibit artful pleading," Report at 9 n.10 (quotation omitted), the Report incorrectly recommends that the Court read into the phrase "common questions of law or fact" limitations not found anywhere in the statute. *See Backus v. Conn. Cmty. Bank, N.A.*, No. 10 Civ. 798, __ F. Supp. 2d __, 2011 WL 2183984, at *6 (D. Conn. Mar. 30, 2011) (SLUSA's "express language does not limit" the scope of the group-of-lawsuits provision); *see also Fannie Mae*, 503 F. Supp. 2d at 32 (language in SLUSA's group of lawsuits provision "is plain" (internal quotation marks omitted)).

While no policy argument could trump the statutory language, the Report in any event construes SLUSA's policy goals too narrowly. *See, e.g.*, *Fannie Mae*, 503 F. Supp. 2d at 32 (rejecting plaintiff's arguments that applying group-of-lawsuits standard were "manifestly unfair and contrary to public policy and to the purpose of SLUSA" (internal quotation marks omitted)). Congress intended for the "covered class action" definitions to "'be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.'" *Backus*, 2011 WL 218984, at *6 (quoting S. Rep. No. 105–182, at 8).[7] The Report therefore errs in suggesting that applying the plain language of the statute to the "group of lawsuits" definition somehow does violence to Congress's intent. The "group of lawsuits" provision, like SLUSA generally, always was meant to cast a wide net.

## II. EVEN STANDING ALONE, THE SPHINX CASE IS A "COVERED CLASS ACTION."

The Report further errs in concluding that the SPhinX case on its own does not qualify as a "covered class action." SLUSA's single-lawsuit provision defines a "covered class action" to include "any single lawsuit in which *damages are sought on behalf of* more than 50 persons . . . ." 15 U.S.C. § 78bb(f)(5)(B)(i)(I) (emphasis added).[8] SLUSA further provides that "a corporation, investment company, pension plan, partnership or other entity, shall be treated as one person . . ., *but only if the entity is not established for the purpose of participating in the*

---

[7] Although the Committee Report states briefly that the committee did not intend to inhibit "bona fide individual actions," it explained that such actions would no longer be considered "individual" if they were consolidated. *See* S. Rep. No. 105–182, at 7–8; *WorldCom*, 308 F. Supp. 2d at 247 (noting that "this passage underscores congressional intent to preempt state court litigation whenever separately filed suits are consolidated, even when the suits are 'bona fide individual actions'").

[8] As discussed above, unlike the "group of lawsuits" provision, the single-lawsuit provision contains a requirement that common issues (other than issues of reliance) "predominate" over individual issues. *Id.* That requirement is not disputed here because it considers only the predominance of common questions *within the SPhinX case itself*, not the commonality between the SPhinX case and any other Refco case.

13

action." § 78bb(f)(5)(D) (emphasis added).  Because one of the named Plaintiffs, the SPhinX Trust, was created for the "primary purpose" of pursuing litigation, the Report correctly disregards that entity for purposes of determining the number of persons under SLUSA.  *See* Report at 7; *Lee v. Marsh & McLennan Cos.*, Nos. 06 Civ. 6523 & 15448, 2007 WL 704033, at *4 (S.D.N.Y. Mar. 7, 2007) (Rakoff, J.)  But the Report errs in terms of what it does next – that is, in applying the counting provision to the Joint Official Liquidators ("JOLs") in their capacity as nominal beneficiaries of the SPhinX Trust.

It is irrelevant whether the JOLs themselves would count as one person for purposes of SLUSA.  *See Picard v. HSBC Bank PLC*, 450 B.R. 406, 413 (S.D.N.Y. 2011) (Rakoff, J.).  Once the actual named party – the SPhinX Trust – is disregarded as not being a "person" for purposes of SLUSA, the proper course is to ask on whose "behalf" were "damages sought" by that trust. *See* § 78bb(f)(5)(B)(i) (defining covered class action as one in which "damages are sought *on behalf of* more than 50 persons" (emphasis added)).  "SLUSA's definition of a covered class action does not concern itself with the nature of the claim being advanced but rather with *the nature of the persons or entities on whose behalf damages are being sought*."  *LaSala v. TSB Bank, PLC*, 514 F. Supp. 2d 447, 470 (S.D.N.Y. 2007) (emphasis added).  Here, the JOLs may be the named beneficiaries of the SPhinX Trust, but damages are being sought not for their personal benefit but "ultimately [for] the creditors and interest holders of the SPhinX funds," as acknowledged by the PlusFunds Liquidation Plan (which established the SPhinX Trust).  *See* Fifth Am. Plan of Liquidation of PlusFunds Group, Inc. Under Chapter 11 of the U.S. Bankruptcy Code, Art. VI.F.1 (Ex. J to Omn. Reply Decl., Dkt. No. 305).  Accordingly, even if the SPhinX action were not part of a "group of lawsuits," it would satisfy SLUSA's "covered class action" requirement because it seeks damages "on behalf of" more than 50 persons.

III.   **COUNT XXVI SHOULD BE DISMISSED UNDER SLUSA AS TO THE MAYER BROWN DEFENDANTS.**

An additional error in the Report also deserves correction.  The Report correctly identifies Plaintiffs' claim for tortious interference with contract (count XXVI) as alleging fraud, Report at 19, but incorrectly does not find that the alleged fraud is "in connection with a covered security."  Report at 17–18.  The Mayer Brown Defendants are sued in this count only in regard to the Refco fraud.  Standing R&R at 33 (finding that count XXVI sues Mayer Brown defendants only for the Refco fraud).  Because count XXVI is impossibly vague, it is impossible to tell whether that count "invoke[s] the LBO [and] IPO," but presumably it does since those are alleged to be aspects of the Refco fraud.  Report at 17–18; *see* Am. Compl. ¶¶ 1350, 1352, 1354 (alleging facts regarding Refco were concealed from SPhinX); *see, e.g.*, *id.* ¶¶ 189–91, 1264 (alleging SPhinX's reliance on Refco's offering documents).  Accordingly, that count too should be dismissed under SLUSA.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss each of the claims identified at pages 19–20 of the Report, and count XXVI as against Mayer Brown LLP, Best, Collins and Koury, all with prejudice.

Dated: New York, New York                    WILMER CUTLER PICKERING
      September 16, 2011                            HALE AND DORR LLP

                                               By:  /s/ Philip D. Anker
                                                  Philip D. Anker
                                                  (philip.anker@wilmerhale.com)
                                                  Jeremy S. Winer
                                                  Ross E. Firsenbaum

                                                  399 Park Avenue
                                                  New York, New York 10022
                                                  Tel: (212) 230-8800
                                                  Fax: (212) 230-8888

                                                  *Attorneys for Defendants Banc of America*
                                                  *Securities LLC, Credit Suisse Securities*
                                                  *(USA) LLC, and JPMorgan Chase & Co.*

Dated:  Chicago, Illinois                    WINSTON & STRAWN LLP
       September 16, 2011

                                           By:  /s/ Linda T. Coberly
                                               Linda T. Coberly
                                               (lcoberly@winston.com)
                                             35 West Wacker Drive
                                             Chicago, Illinois 60601
                                             Tel.: (312) 558-5600

                                             *Attorneys for Defendants Grant Thornton*
                                             *LLP and Mark Ramler*

Dated:  Washington, D.C.
       September 16, 2011

WILLIAMS & CONNOLLY LLP

By:  /s/ Craig D. Singer
    John K. Villa
    George A. Borden
    Craig D. Singer
    (csinger@wc.com)

    725 Twelfth Street, NW
    Washington, DC 20005
    Tel.: (202) 434-5000

*Attorneys for Defendants Mayer Brown
LLP and Edward S. Best*

Dated:  New York, New York
       September 16, 2011

COOLEY GODWARD KRONISH LLP

By:  /s/ William J. Schwartz
    William J. Schwartz
    (wschwartz@cooley.com)
    Jonathan P. Bach
    Reed A. Smith

    1114 Avenue of the Americas
    New York, NY 10036-7798
    Tel.: (212) 479-6000

*Attorneys for Defendant Joseph P. Collins*

Dated:  New York, New York                    CLAYMAN & ROSENBERG
        September 16, 2011


                                              By:  /s/ Charles E. Clayman
                                                  Charles E. Clayman
                                                  (clayman@clayro.com)

                                                  305 Madison Avenue, Suite 1301
                                                  New York, NY 10165
                                                  Tel.: (212) 922-1080

                                                  *Attorneys for Defendant Paul Koury*


Dated:  New York, New York                    KING & SPALDING LLP
        September 16, 2011


                                              By:  /s/ James J. Capra, Jr.
                                                  James J. Capra, Jr.
                                                  (jcapra@kslaw.com)
                                                  James P. Cusick

                                                  1185 Avenue of the Americas
                                                  New York, New York 10036-4003
                                                  Tel.: (212) 556-2100

                                                  *Attorneys for Defendants*
                                                  *PricewaterhouseCoopers LLP and Mari*
                                                  *Ferris*

Dated:  New York, New York
        September 16, 2011

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP


By:  /s/ Walter Rieman
    Richard A. Rosen
    (rrosen@paulweiss.com)
    Walter Rieman
    (wrieman@paulweiss.com)

    1285 Avenue of the Americas
    New York, New York 10019-6064
    Tel.: (212) 373-3000

    -and-

    WEIL, GOTSHAL & MANGES LLP
    Greg A. Danilow
    (greg.danilow@weil.com)
    767 Fifth Avenue
    New York, New York 10153-0003
    Tel.:  (212) 310-8000

    *Attorneys for Defendants Thomas H. Lee Partners L.P., THL Managers V LLC, Thomas H. Lee Advisors LLC, Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., Thomas H. Lee Equity (Cayman) Fund V, L.P., THL Equity Advisors V, LLC, Thomas H. Lee Investors Limited Partnership, The 1997 Thomas H. Lee Nominee Trust, Thomas H. Lee, David V. Harkins, Scott L. Jaeckel, and Scott A. Schoen*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of September 2011, a copy of the foregoing

Defendants' Objection to the Report and Recommendation of the Special Master on the Omnibus

Issue of the Applicability of SLUSA was filed with the Court through the CM/ECF system.  The

foregoing was served on counsel of record via the Court's CM/ECF system.


<u>/s/ John Williams</u>
John Williams