USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __10/3/11__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- x
                                       :
                                       :
                                       :
IN RE REFCO SECURITIES LITIGATION      :      07 MDL 1902 (JSR)
                                       :
                                       :      Applies To:
                                       :      08 Civ. 3065
                                       :      08 Civ. 3086
-------------------------------------- x
-------------------------------------- x
KENNETH M. KRYS, et al.,               :
                                       :
             Plaintiffs,               :
                                       :
         -v-                           :
                                       :
CHRISTOPHER SUGRUE, et al.,            :
                                       :
             Defendants.               :
-------------------------------------- x

JED S. RAKOFF, U.S.D.J.


        Defendants Mark Kavanagh and Brian Owens move to compel the

production of documents subpoenaed from Peter Ginsberg, Esq., attorney

for non-parties Patrina Farquharson and Andrew Feighery.  On July 8,

2011 Special Master Hedges reviewed in camera thirty-five documents

withheld by Ginsberg.  The Special Master subsequently issued an

Order, filed July 21, 2011 in docket number 07 MD 1902, directing

Ginsberg to produce portions of only six of those thirty-five

documents (with two duplicates) to the defendants.  On July 27, 2011,

the defendants appealed to this Court, seeking production of all the

remaining documents.  After careful consideration of the parties'

written submissions, oral arguments, and the in camera review of the

disputed documents (consisting largely of emails), the Court partly affirms and partly reverses the Special Master's Order.

By way of background, in 2006 Ginsberg represented SPhinX, a plaintiff in this case, and two then-current SPhinX directors: Patrina Farquharson and Andrew Feighery. See Defendants' letter brief dated July 27, 2011 ("Def. Br."), at 1. Ginsberg also represented Jon Knight, a former hedge fund manager and non-party to the Refco MDL cases, who, according to defendants, is "an important witness" in this case. Id. at 1-2. In 2006, liquidators for SPhinX disengaged Ginsberg and waived all privileges belonging to SPhinX that may be relevant to the instant subpoenas. Id.

Defendants Kavanagh and Owens served the instant subpoenas on Ginsberg in September 2009; Ginsberg entirely withheld as privileged a total of 911 documents. Id. Several protracted disputes between the defendants and Ginsberg before the Special Master resulted in the Special Master ordering production of the documents for inspection by the defendants pursuant to Rule 502(d), Fed. R. Evid. Id. at 3. Ginsberg produced all but 35 of the 911 withheld documents for inspection. Id. After reviewing the documents, defendants requested that Ginsberg fully produce 254 documents that they argued were either not privileged or as to which privilege had been waived. Id. According to defendants, "Ginsberg produced, without restrictions, only 49 documents; he refused to fully produce 205 of the requested

documents." <u>Id.</u> at 3-4.  The remaining 35 documents were submitted to the Special Master for <u>in camera</u> review, <u>id.</u> at 4, and are the 35 documents subject to the Special Master's Order issued July 21, 2011 and on appeal here.[1]

Defendants present two issues on this appeal: first, whether the Special Master erred in permitting Ginsberg to withhold documents as privileged even though the documents were authored by or sent to persons outside the privilege group; <u>id.</u> at 2, and, second, whether the Special Master erred in permitting Ginsberg to withhold documents as privileged even though Ginsberg's former client, the plaintiff in this action (SPhinX), has expressly waived its privilege.[2]  <u>Id.</u>  Also on this appeal, defendants seek to compel production of the remaining

---

[1] According to the Special Master's Order, he was not provided with two pages for his review, and directed Ginsberg to produce those pages to the Special Master within ten days of the date of the Order.  July 21, 2011 Order, at 3.  That Order, however, has been stayed pending this appeal.  <u>See</u> July 29, 2011 Order.

[2] At oral argument, Ginsberg represented to this Court that he was not asserting privilege with respect to advice rendered to SPhinX.  8/29/11 Tr. at 7-8.  Likewise, nothing in the Special Master's <u>in camera</u> review or subsequent Order suggests he relied on privilege with respect to Ginsberg's representation of SPhinX as an entity.  <u>See</u> 7/8/11 Tr.; July 21, 2011 Order; Def. Br. at 10 n.12.  Accordingly, the Court confirms that any privilege asserted on the basis of Ginsberg's representation of SPhinX as an entity has been waived and is therefore not at issue on this appeal.  To the extent Ginsberg continues to rely on SPhinX's waived privilege in discovery, defendants should move before the Special Master to compel production and identify which documents are in dispute.

205 documents they identified at the Rule 502(d) inspection.[3]  Id. at
5.

Special Master Hedges's July 21, 2011 Order orders Ginsberg to
produce portions of 6 of the 35 documents the Special Master reviewed:
CM00000844; CM00000849 (duplicate of 844); CM00000853; CM00000863;
CM00000864; and CM00000868 (duplicate of 844).  July 21, 2011 Order,
at 2-3.  The remaining documents were held to be privileged, work
product, or irrelevant.  See 7/8/11 Tr.  Defendants do not challenge
the Special Master's finding that certain documents are irrelevant,
Def. Br. at 5 n.9, so this Court will address only the issues of
privilege and work product protection.  The Court reviews the Special
Master's factual findings and legal conclusions de novo and his ruling
under an abuse of discretion standard.  Case Management Order No. 3,
at 3 (Nov. 2, 2009) (abuse of discretion standard for non-substantive
rulings); Fed. R. Civ. P. 53(f)(3)-(4) (de novo standard for factual
findings and legal conclusions).[4]

---

[3] These 205 documents are not addressed in the Special
Master's July 21, 2011 Order.

[4] Ginsberg asserts that "Under Fed. R. Civ. P. 53(e)(2), a
court must accept the findings of fact of a Special Master unless
they are 'clearly erroneous.'" See Ginsberg letter brief dated
August 10, 2011 ("Ginsberg Br."), at 7.  Assuming Ginsberg refers
to Rule 53(f), this is flatly wrong.  The standard of review for
findings of fact by a Special Master is de novo, Fed. R. Civ. P.
53(f)(3).  Case Management Order No. 3 does not affect the
default de novo standard for findings of fact.  As the official
comments to the 2003 amendments to Rule 53 make clear: "The court
must decide de novo all objections to findings of fact made or
recommended by the master unless the parties stipulate
[otherwise]. . . .  Apart from factual and legal questions,

With respect to the remaining attorney-client privilege (belonging to Farquharson and Feighery), defendants argue that Ginsberg waived privilege by sharing his clients' confidential information with Jon Knight. Def. Br. at 5-9. Attorney-client privilege generally applies only to communications between the attorney and the client. United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999). Here, it is undisputed that Jon Knight was not a client of Peter Ginsberg with respect to Ginsberg's representation of Farquharson and Feighery. See Ginsberg Br. at 2-3.

Ginsberg argues, however, that Knight was his "consultant," and that the attorney-client privilege was not waived when he shared information with a consultant. 8/29/11 Tr. 8-14. This argument relies on the Second Circuit's opinion in United States v. Kovel, 296 F.2d 918 (2d Cir. 1961). In Kovel, the Second Circuit held that an attorney did not waive attorney-client privilege when he shared financial information passed to him by his client with an accountant. Id. at 921-22. The Court of Appeals analogized the accountant to an interpreter who helps the attorney understand the information his client has given him. Id. at 922-23.

---

masters often make determinations . . . of procedural discretion. The court may set a standard for review of such matters in the order of appointment . . . ." Fed. R. Civ. P. 53 cmt. (emphasis added). The case Ginsberg cites, Malletier v. Dooney & Bourke, Inc., 525 F. Supp. 2d 558, 565 (S.D.N.Y. 2007), refers to Judge Sheindlin's Order setting forth a clearly erroneous standard of review. Id. at 565 & n.30.

The Second Circuit, however, expressly limited the scope of this "interpreter" shield to attorney-client privilege in <u>United States v. Ackert</u>, 169 F.3d 136 (2d Cir. 1999).  Ackert, an investment banker at Goldman Sachs, pitched an investment proposal to Paramount Corporation.  <u>Id.</u> at 138.  Meyers, Paramount's senior vice president and tax counsel, had several subsequent conversations with Ackert to learn more details about the transaction and its tax consequences in order to provide financial and legal advice to Paramount, Meyers's client.  <u>Id.</u>  When the IRS subpoenaed Ackert in connection with its audit of Paramount, Paramount asserted attorney-client privilege with respect to the conversations between Ackert and Meyers.  <u>Id.</u>

The Second Circuit rejected this assertion of privilege.  <u>Id.</u> at 139.  The Court held that "a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent a client."  <u>Id.</u>  Meyers had sought out Ackert for advice and information on tax consequences, but, because Meyers did not rely on Ackert to "translate or interpret information given to Meyers by his client," the Court held <u>Kovel</u> did not apply. <u>Id.</u> at 138-39.

Likewise, here, there is no evidence suggesting Ginsberg relied on Knight to translate or interpret information given to him by his clients.  At oral argument, Ginsberg represented to the Court that Knight "understood an awful lot about Ms. Farquharson's professional

duties and operations," and that he "was extremely knowledgeable about Standard & Poor's" and "a platform and an investment mechanism that I . . . was not particularly familiar with.  He also had a wealth of information from his 40 years or so in the field that I could only scratch the surface."  8/29/11 Tr. 12:13-21.  From this and Ginsberg's Revised Declaration dated August 31, 2011 ("Ginsberg Decl."), it appears Ginsberg relied on Knight's experience and specialized knowledge.  What does not appear, however, is any evidence that there was information Ginsberg could not understand without Knight translating or interpreting the raw data for him.  Accordingly, by sharing his client's information with a third party, Ginsberg waived attorney-client privilege for that information.

This is not the end of the matter, however, because Ginsberg also asserts the information he gave to Knight is protected by work product doctrine, as embodied in Rule 26(b)(3), Fed. R. Civ. P.  See Ginsberg. Br. at 7-8.  Indeed, the Special Master expressly relied on work product doctrine in determining that Ginsberg did not have turn over his emails with Knight.  See 7/8/11 Tr. 12:19-13:2.

Although sharing information with a third-party waives attorney-client privilege, it does not necessarily waive work product protection.  See Calvin Klein Trademark Trust v. Wachner, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).  In Calvin Klein, the plaintiffs' attorneys shared their litigation strategy with a public relations firm retained to protect the client's image.  Id. at 54-55.  This Court held that

where an attorney provided work-product to a public relations consultant whom he has hired and who maintains that work-product in confidence, work product protection is not waived, particularly when the advice of the consultant impacts the attorney's own litigation strategy.  Id. at 55.

Here, assuming arguendo that Knight was actually Ginsberg's consultant, but see infra, work product protection applies as a matter of law.  Ginsberg represents that he shared his work product with Knight in order to get feedback on his litigation strategy and advising his clients in connection with anticipated litigation. Ginsberg Decl. ¶¶ 43-53.  This sort of collaboration with a consultant would be classic work product.

As a factual matter, however, there was insufficient evidence in the record for the Special Master to determine that Knight was acting as Ginsberg's "consultant," and the Special Master therefore abused his discretion in so concluding.  The only evidence before the Special Master was Ginsberg's declaration, at the time under seal and never subject to cross-examination, which asserted in conclusory fashion that Knight acted as his unpaid advisor.  See 7/8/11 Tr. 12:19-13:2; Ginsberg Decl. ¶ 46.  Further, when later questioned by this Court, Ginsberg admitted he had no formal consulting agreement or memorialized contract with Knight.  See 8/29/11 Tr. 9, 13-14.  Indeed, Ginsberg has been inconsistent on whether Knight was his consultant, at one point expressly disclaiming that Knight was his consultant.

<u>See</u> Declaration of Mitchell A. Karlan dated December 8, 2010 ("Karlan Decl."), Ex. 34 (Transcript of SPhinX interview of Peter Ginsberg, Oct. 29, 2009), at 172. Thus, the Special Master's reliance on Ginsberg's conclusory assertion in his Declaration was an insufficient basis for concluding that Knight really was Ginsberg's consultant in any way sufficient to invoke work product protection. <u>See Fifty-Six Hope Road Music Ltd. v. UMG Recordings, Inc.</u>, No. 08 Civ. 6143, 2010 WL 343490 (Feb. 1, 2010) (Cote, J.) (holding as insufficient to invoke work product a "perfunctory" assertion that a third party was plaintiffs' "representative").

Accordingly, this Court directs the Special Master to hold an evidentiary adversary hearing to determine whether Knight genuinely acted as Ginsberg's "consultant" in this case, and, if so, in what respects. In this hearing, at a minimum, Ginsberg (and Knight, if available) should give testimony and be subject to cross-examination on this issue. If after this evidentiary hearing the Special Master determines that Knight acted as Ginsberg's consultant sufficient to invoke the work product doctrine, the Special Master should further determine: (1) whether each of the documents given to Knight by Ginsberg were in fact work product; and (2) whether defendants have made a sufficient showing to overcome such work product protection as otherwise applies. <u>See</u> Fed. R. Civ. P. 26(b)(3)(A)(ii) (party can overcome work product protection if "it has substantial need for the

9

materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means").

Turning to the remaining 205 documents subject to defendants' motion to compel, the Special Master's July 21, 2011 Order, as noted, neither granted nor denied defendants' motion to compel production of these documents.  Ginsberg therefore argues that the scope of the instant appeal is limited to the scope of the Special Master's Order regarding the 35 documents submitted to the Special Master in camera, and that defendants waived their right to contest the failure to produce the other 205 documents when their counsel "opted not to challenge Ginsberg & Burgos' refusal to produce the universe of documents" at the 502(d) inspection.  Ginsberg Br. at 6.  While the Court agrees that the issue of production vel non of the 205 documents is not yet ripe for consideration by this Court, it does not agree that defendants waived their right to seek to compel their production. Accordingly, if defendants still seek production of those 205 documents, they are directed to apply to the Special Master no later than October 14, 2011 to compel production of these documents.

This matter is therefore remanded to the Special Master for further proceedings consistent with this Memorandum Order.  The Clerk of the Court is hereby directed to close docket number 1020 on the docket sheet for No. 07 MDL 1902, docket number 419 on the docket sheet for No. 08 Civ. 3065, and docket number 490 on the docket sheet for No. 08 Civ. 3086.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:    New York, New York
          September 30, 2011