# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Mitchell Karlan
Partner
Direct: 212-351-3827
Fax: 212-351-5254
MKarlan@gibsondunn.com

October 11, 2011

VIA EMAIL & REGULAR MAIL

Prof. Daniel Capra
Special Master
Fordham University School of Law
140 West 62nd Street
New York, NY 10023

Re: *Krys, et al v. Aaron, et al*, Case No. 08-cv-7416 (JSR)

Dear Special Master Capra:

    This firm is counsel for Mark Kavanagh and Brian Owens, who are defendants in one of these MDL cases, *Krys et al. v. Sugrue, et al*.

    Plaintiffs in *Krys, et al v. Aaron, et al*, have moved to dismiss two counterclaims filed by five defendants (collectively, "DPM"). The two counterclaims at issue on this motion are for contribution and indemnification, respectively. Messrs. Kavanagh and Owens have no interest in and do not comment on the contribution counterclaim. We respectfully submit this letter brief, which we hope will be of use to the Court, in connection with the indemnification counterclaim.

## This Motion in Context

    Several parties in these MDL cases have indemnification claims against one or more of the SPhinX funds by reason of (a) contract, (b) the SPhinX Articles of Association, and/or (c) operation of Cayman Islands law. One source of such rights is the group of Service Agreements between DPM and SPhinX, which is at issue on this motion to dismiss.

    Other parties, however, have indemnification claims that arise from different sources. For example, in *Krys v. Aaron*, defendant Aaron has asserted a counterclaim for indemnification based on a written agreement, dated December 20, 2005, between the SPhinX funds and all of the members of the SPhinX Boards of Directors, including Mr. Aaron. Mr. Owens, who was also a director of SPhinX, is also a party to that contract.

# GIBSON DUNN

Special Master Capra
October 11, 2011
Page 2

In addition, SPhinX and its investment manager, PlusFunds, were parties to approximately 21 agreements (one for each SPhinX fund), pursuant to which each fund agreed to indemnify PlusFunds and certain non-parties to the contracts, including Messrs. Kavanagh and Owens.

Finally, all of the members of the SPhinX Boards of Directors, such as Mr. Owens, are entitled to indemnification rights against the SPhinX funds pursuant to the SPhinX Memoranda and Articles of Association and as a matter of Cayman Islands law.[1]

None of these other sources of indemnification rights against SPhinX is at issue on this motion to dismiss. But we wish the Court to be aware that other sources of indemnification rights exist for other parties, and that the adjudication of those claims will likely involve different questions than those posed on this motion. We, therefore, ask that, in deciding this motion, the Court be circumspect in its language so as not inadvertently to appear to pre-judge the rights of other indemnity claimants.

The *Krys* plaintiffs appear to acknowledge that each of the different indemnification claims presents different factual and legal issues. For example, although the *Krys* plaintiffs have moved to dismiss the DPM indemnification counterclaim (which arises under New York law), the *Krys* plaintiffs have answered, and have not moved to dismiss, Mr. Aaron's counterclaim for indemnification, which is not governed by New York law.

## The Limits of Hooper

Plaintiff's motion relies almost exclusively on *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903 (N.Y. 1989). Before a court reaches the question of whether a contract includes language sufficient to satisfy the holding of *Hooper*, it must address the question of whether *Hooper* applies at all. Two important limitations on *Hooper* will be relevant if the Court has the occasion to adjudicate the rights of other indemnitee claimants against SPhinX, and one of those is relevant to this motion as well.

---

[1] On July 4, 2006, SPhinX filed a voluntary petition in the Cayman courts to wind-up the funds and appoint joint official liquidators ("JOLs") to oversee the liquidation process. SPhinX's petition was granted by the Grand Court of the Cayman Islands on July 28, 2006.

In November 2006, Messrs. Kavanagh, Owens, DPM and others filed proofs of debt in the Cayman proceedings. Because of SPhinX's indemnification obligations, the Court overseeing the Cayman proceedings has rejected requests by the JOLs to make an interim distribution of the cash held by the JOLs, and has instead required the JOLs to set aside approximately $117 million as a reserve to cover SPhinX's indemnification obligations.

# GIBSON DUNN

Special Master Capra
October 11, 2011
Page 3

      First, *Hooper*, a decision of New York's Court of Appeals, is uncommon in the United States. At least two states have expressly considered and rejected *Hooper's* presumptions and rules of construction. *See, e.g., Caldwell Tanks, Inc. v. Haley & Ward, Inc.*, 471 F.3d 210, 215, 218 (1st Cir. 2006) (holding that Massachusetts state law, unlike New York state law and *Hooper*, does not require an indemnity provision to "expressly provide for indemnification of costs incurred in the course of *inter se* litigation" and awarding fees to engineering firm in *inter se* litigation); *ABF Capital Corp. v. Grove Prop. Co.*, 126 Cal. App. 4th 204, 212, 214-15 (Cal. Ct. App. 2005) (applying California state law, distinguishing *Hooper*, in awarding fees in inter se litigation). Thus, to the extent that claimants' indemnification claims are governed by, for example, the laws of Delaware, Ireland, or the Cayman Islands, *Hooper* is not merely irrelevant, but contrary to general rules of contract interpretation.

      Second, *Hooper* applies only where a party to a contract seeks attorneys' fees from the other party to the contract incurred during a litigation between the parties to the contract. In both *Krys v. Aaron* and *Krys v. Sugrue*, the plaintiffs include (a) a large number of investors in one or more of the SPhinX funds, (b) PlusFunds, and (c) numerous of the SPhinX funds other than SMFF. Many of these plaintiffs have no contractual indemnification obligations to any of the defendants in these actions. Therefore, even in those instances where New York law governs, *Hooper* simply does not apply to claims against SPhinX for indemnification of losses sustained in connection with actions brought by non-parties to the contract, or parties who have not granted indemnification to the claimants, such as the SPhinX investors and PlusFunds.

      Similarly, *Hooper* is not applicable to indemnification claims against SPhinX funds, other than SMFF, arising out of litigation commenced by SMFF, or to claims against SMFF for litigation commenced by non-SMFF SPhinX funds. Each of the SPhinX funds executed separate agreements to indemnify PlusFunds, and certain persons are third party beneficiaries of those contracts.

      Respectfully,

Mitchell Karlan

cc: All counsel-of-record (*whrefcomdlall@wilmerhale.com*)

101160741.6