# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Mitchell Karlan
Partner
Direct: 212-351-3827
Fax: 212-351-5254
MKarlan@gibsondunn.com

October 31, 2011

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re: *In re Refco, Inc. Securities Litigation*, 07-ML-1902 (JSR); *Krys, et al v. Sugrue, et al*, Case No. 08-cv-3086 (JSR)

Dear Judge Rakoff:

  This firm is counsel for Mark Kavanagh and Brian Owens, who are defendants in *Krys, et al. v. Sugrue, et al.*, a constituent case of *In re Refco, Inc. Securities Litigation* (the "Refco MDL"). On October 5, 2011, several defendants in *Krys, et al. v. Sugrue, et al.*, and *Krys, et al. v. Deutsche Bank Securities Inc., et al.*, filed a motion for certification of Your Honor's order denying their motion to dismiss certain claims (the "1292(b) Motion"). In response, the Joint Official Liquidators of the SPhinX Funds ("JOLs") filed an opposition to the 1292(b) Motion on October 19, 2011, wherein they purport to describe the current state of the SPhinX Funds' liquidation proceedings in the Grand Court of the Cayman Islands (the "Cayman Court").

  Messrs. Kavanagh and Owens have no interest in and do not comment on the merits of the 1292(b) Motion. We respectfully submit this letter, which we hope will be of use to the Court, to correct representations made by the JOLs concerning the liquidation proceedings in the Cayman Court.

### The Indemnitees' Indemnity Claims

  Messrs. Kavanagh and Owens are two out of several dozens of persons and entities who enjoy (for a variety of reasons) rights against the *Krys* plaintiffs for indemnification of all losses (including attorneys' fees) incurred in the Refco MDL and any subsequent cases, unless in a final judgment they are found to have engaged in intentional wrongdoing. These indemnification rights protect the indemnitees, not only in suits like the *Krys* actions

# GIBSON DUNN

The Honorable Jed S. Rakoff
October 31, 2011
Page 2

(brought by PlusFunds and the SPhinX investors), but also in claims that are yet to be brought, for indemnification or contribution.[1]

In 2006, Messrs. Kavanagh and Owens submitted proofs of debt to the JOLs, under Cayman Islands law, demanding indemnification for, among other things, their attorneys' fees in the Refco MDL. Other indemnitees, including DPM Mellon and PWC, did the same.

<u>The JOLs' Rejection of the Indemnitees' Proofs of Debt</u>

In September 2008, after nearly two years of delay, the JOLs rejected Messrs. Kavanagh and Owens' proofs of debt. Kavanagh and Owens promptly appealed to the Cayman Court. The JOLs then *agreed* that final resolution of the issue by the Cayman Court should be deferred until after a judgment on the merits of *Krys* plaintiffs' fraud claims. Contrary to the JOLs' recent statements to this Court, the Cayman Court has never stated that it will leave the indemnity claims to be resolved by this Court. Indeed, the issue of Messrs. Kavanagh and Owens' entitlement to indemnification is and has been for years in litigation in the Cayman Court.

<u>The Cayman Court Confirms That The Indemnitees'</u>
<u>Rights Must Be Protected With A Significant Indemnity Reserve</u>

The JOLs are holding half a billion dollars in cash. Under Cayman law, however, no distribution to investors may be made that would prejudice the ability of the JOLs to honor their obligation to creditors, including the indemnitees.

The Cayman Court has held that the JOLs must set aside an adequate reserve for claims because, under Cayman law, contingent creditors such as the indemnitees "are entitled to priority over the investors/shareholders" in the SPhinX Funds.

In 2009 and thereafter, the Cayman Court has held extensive proceedings, including days of live testimony, on the question of what the amount of the reserve for indemnitees should be. In short, and at the risk of some over-simplification, the amount of the needed

---

[1] It is unlikely that the *Krys* plaintiffs have finished filing their serial lawsuits, and more defendants are almost certain to be sued. The JOLs have entered into tolling agreements with more than a dozen prospective defendants suspending the running of the statute of limitations.

# GIBSON DUNN

The Honorable Jed S. Rakoff
October 31, 2011
Page 3

reserve is virtually certain to exceed the cash held by the JOLs, and no distribution has been or will be made for many years to come.[2]

### The Indemnitees Have Acted Appropriately, And Any Delays In Distributions to Creditors Are Result Of The JOLs' Own Actions, Including The Maintenance Of The *Krys* Actions Against The Indemnitees

In light of the above, the JOLs' suggestion that Messrs. Kavanagh and Owens, or any other indemnitees, are, in effect, holding investors' funds "hostage" by legitimately seeking to protect their indemnity rights with a reserve that the Cayman Court has required is scandalous and ridiculous. The indemnitees who have filed proofs of debt are the largest creditors of the estate, and a failure to reserve adequately for their contingent claims would be tantamount to prejudging the merits of the contested claims against them in this Court.

The JOLs have indicated to this Court that they are seeking damages of at least $263 million from defendants in the various *Krys* actions. In a recent affidavit provided to SPhinX Funds' investors by the JOLs, the JOLs state that the claims in the *Krys* cases are worth *$750 million*.[3]

The notion that, if the movant's 1292(b) Motion is granted, there will be a delay in distributions that would otherwise be imminent from the SPhinX Funds' estates to investors is specious. In light of the reserves that must be made to protect the indemnitees' contingent indemnity claims, and the fact that contribution claims may not even be filed for many years, even if the JOLs somehow obtained a favorable judgment against some of the indemnitees tomorrow, it therefore would be many years before any distributions might be made to the SPhinX Funds' investors.

---

[2] "The statute of limitations on a claim for indemnity or contribution accrues only when the person seeking indemnity or contribution has paid the underlying claim." *Tedesco v. A.P. Green Industries, Inc.*, 8 N.Y.3d 243, 247, 864 N.E.2d 65, 67, 832 N.Y.S.2d 141, 143, 864 N.E.2d 65 (N.Y. 2007). *See also* CPLR 213(2).

[3] Despite this, the JOLs initially argued to the Cayman Court that the reserve should be set at zero, a position flatly rejected by the Cayman Court. The JOLs' insistence on this absurd position wasted several months, and caused further delay in the Cayman action.

# GIBSON DUNN

The Honorable Jed S. Rakoff
October 31, 2011
Page 4

                                              Respectfully,

                                              Mitchell Karlan

cc: All counsel-of-record (*whrefcomdlall@wilmerhale.com*)

101173094.5