UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
In re REFCO INC. SECURITIES LITIGATION                           :    07-MDL No. 1902 (JSR)
                                                                 :
                                                                 :
-----------------------------------------------------------------x
                                                                 :
This document relates to:                                        :    08 Civ. 3065 (JSR)
                                                                 :    08 Civ. 3086 (JSR)
KENNETH M. KRYS, et al.,                                         :
                                                                 :
                Plaintiffs,                                      :
                                                                 :
        -v-                                                      :
                                                                 :
CHRISTOPHER SUGRUE, et al.,                                      :
                                                                 :
                Defendants.                                      :
                                                                 :
                                                                 :
                                                                 :
-----------------------------------------------------------------x


# RESPONSE OF PRICEWATERHOUSECOOPERS LLP AND MARI FERRIS
# TO THE KRYS PLAINTIFFS' MOTION FOR RECONSIDERATION


KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel:  (212) 556-2100

*Attorneys for Defendants
PricewaterhouseCoopers LLP
and Mari Ferris*

**TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| ARGUMENT | | 1 |
| I. | Plaintiffs' Oft-Raised CFTC Argument Provides No Basis For Reconsideration | 1 |
| II. | Plaintiffs' "Summary Judgment" Arguments Are Baseless | 5 |
| III. | The Court Did Not Overlook Controlling Authority on Damages | 8 |
| CONCLUSION | | 9 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................... 9

*Drayton v. Toys "R" Us Inc.*,
  No. 07-Civ.-6315 (RMB), 2009 WL 2905783 (S.D.N.Y. Sept. 9, 2009) ............................ 2

*Fait v. Regions Fin. Corp.*,
  655 F.3d 105 (2d Cir. 2011) ............................................................................................... 7

*In re Beacon Assocs. Litig.*,
  -- F.Supp.2d --, No. 09-Civ.-777 (LBS), 2011 WL 4443957 (S.D.N.Y. Sept. 26, 2011) .......... 2

*In re Parmalat Sec. Litig.*,
  501 F. Supp. 2d 560 (S.D.N.Y. 2007) ................................................................................ 8

*Levin v. Gallery 63 Antiques Corp.*,
  No. 04-Civ-1504 (KMK), 2007 WL 1288641 (S.D.N.Y. Apr. 30, 2007) ............................ 1

*Meridian Horizon Funds, LP v. Tremont Grp. Holdings, Inc.*,
  747 F. Supp. 2d 406 (S.D.N.Y. 2010) ................................................................................ 8

*Pretter v. Metro North Commuter R. Co.*,
  No. 00-Civ.-4366 (JSR), 2002 WL 31163876 (S.D.N.Y. Sept. 30, 2002) (Rakoff, J.) ............. 2

*SEC v. Siebel Sys., Inc.*,
  384 F. Supp. 2d 694 (S.D.N.Y. 2005) ................................................................................ 7

*Technology in Partnership, Inc. v. Rudin*,
  2011 WL 4575237 (S.D.N.Y. 2011) .................................................................................. 8

**OTHER AUTHORITIES**

17 C.F.R. § 1.16 (2004) ............................................................................................... 1, 3, 4

17 C.F.R. § 4.7 (2004) ........................................................................................................ 4

17 C.F.R. § 4.22 (2004) ...................................................................................................... 4

Fed. R. Civ. P. 12 ..................................................................................................... *passim*

PricewaterhouseCoopers LLP ("PwC") and PwC partner Mari Ferris submit this response to the Krys Plaintiffs' Motion for Reconsideration ("Pls. Mem.") of this Court's Order ("Order") dated October 24, 2011, affirming the Special Master's August 10, 2011 Report and Recommendation ("R&R") on the motion by PwC and Ms. Ferris to dismiss the First Amended Complaint ("Complaint").

"Motions for reconsideration are not opportunities for second bites at the apple." *Levin v. Gallery 63 Antiques Corp.*, No. 04-Civ-1504 (KMK), 2007 WL 1288641, at *4 (S.D.N.Y. Apr. 30, 2007). Yet plaintiffs here really seek a third bite at the apple, given the Special Master's consideration of the issues followed by this Court's *de novo* review. This motion has been exhaustively briefed and argued. The Special Master and the Court considered the allegations of the Complaint and correctly applied Rule 12(b) to dismiss all claims against Ms. Ferris and almost all claims against PwC. Plaintiffs argue that the Special Master and the Court failed to explicitly address some of their ever-changing arguments or improperly considered evidence they now say should have converted PwC's motion to one for summary judgment. But neither plaintiffs' procedural complaints nor the substance of plaintiffs' arguments have any merit, nor do they provide any basis for the Court to revisit its Order. The Court should deny the motion for reconsideration.

## ARGUMENT

### I.  Plaintiffs' Oft-Raised CFTC Argument Provides No Basis For Reconsideration

Notwithstanding their current argument that the Special Master failed to consider 17 C.F.R. § 1.16, plaintiffs ensured that neither the Special Master nor the Court could overlook that regulation. They cited it in the Complaint and multiple briefs, as well as in three separate

arguments before the Special Master and this Court.[1]  Plaintiffs are really arguing that they disagree with the Court's conclusion on a point that has been thoroughly vetted.  This does not come close to satisfying the heavy burden they have on a motion to reconsider.  "A motion for reconsideration is not designed to accord an opportunity for the moving party, unhappy with the results, to take issue with the Court's resolution of matters considered in connection with the original motion."  *Drayton v. Toys "R" Us Inc.*, No. 07-Civ.-6315 (RMB), 2009 WL 2905783, at *2 (S.D.N.Y. Sept. 9, 2009) (internal citations and quotation marks omitted); *see also Pretter v. Metro North Commuter R. Co.*, No. 00-Civ.-4366 (JSR), 2002 WL 31163876, at *3 (S.D.N.Y. Sept. 30, 2002) (Rakoff, J.) (rejecting on a motion to reconsider "arguments that are tantamount to simply rearguing points already raised and litigated, *ad nauseam,* in the prior proceedings herein").

      Implicit in plaintiffs' motion is the premise that they are entitled to a detailed explanation of why each of their legal theories is wrong.  They are not.  "An absence of justification" does not show "the presence of error or likelihood of injustice a party moving for reconsideration must demonstrate to prevail in the Second Circuit."  *In re Beacon Assocs. Litig.*, -- F.Supp.2d --, No. 09-Civ.-777 (LBS), 2011 WL 4443957, at *3 (S.D.N.Y. Sept. 26, 2011).  Plaintiffs' cavil on this front is especially ill-conceived given their kitchen-sink approach to pleading in this case.  The Special Master has observed that the 300-plus page Complaint contains many "red herrings" as to PwC that have nothing to do with plaintiffs' alleged injury.  R&R at 4.  He has also noted

---

[1] *See* Compl. ¶¶ 642-650; Plaintiffs' Memorandum of Law in Opposition to PwC's Motion to Dismiss (Mar. 16, 2009) ("Pls. Opp. Mem.") at 27-28; Plaintiffs' Limited Objection to Report and Recommendation of the Special Master on PwC's Motion to Dismiss (Sept. 6, 2011) ("Pls. Obj.") at 9-10; arguments before SM Capra on May 5, 2010 (Tr. 38) and June 14, 2011 (Tr. 285, 289, 293), where counsel for plaintiffs cited the regulation in PowerPoint slides; and argument before the Court on October 12, 2011 (Tr. 2-3), during which plaintiffs' counsel offered two oversized "visual aids" that quoted excerpts of the regulation.

generally that "the Plaintiffs' conception of their causes of action has been malleable," and that they tend to "jump back and forth from one to another theory in defending against the motions to dismiss."  R&R on Standing, dated February 3, 2010, at 3, 8.  Plaintiffs may have finally decided which arguments they want the Court to take seriously, but that hardly required the Court to give a detailed explanation of why each is without merit.

In any event, the CFTC argument is without merit.  Consistent with numerous recent decisions in the Madoff-related litigation, the Special Master correctly identified the fatal gap in plaintiffs' allegations regarding PwC's audit work.  Plaintiffs allege that Refco transferred their cash to unsegregated accounts at Refco Capital Markets, Ltd. ("RCM") and that PwC's audit opinions on the financial statements of SPhinX Managed Futures Fund SPC ("SMFF") did not disclose this lack of segregation at SMFF's counterparty.  But PwC did not audit the financial statements of RCM (or its parent, Refco Inc.), and nothing in generally accepted auditing standards required PwC to perform procedures at this third party.  R&R at 9 ("nothing in the [Complaint] establishes that PwC was required to determine the status of the SMFF cash at RCM (as opposed to its existence and amount)").

Nothing in 17 C.F.R. § 1.16 changes this conclusion.  Plaintiffs have argued that the regulation imposed on PwC "a duty to test and report on segregation" because PwC audited the financial statements of PlusFunds, which was a commodity pool operator ("CPO") regulated under the Commodity Exchange Act ("CEA").  Pls. Obj. 10.  But the section of 17 C.F.R. § 1.16 they repeatedly cite says nothing about audits of CPOs.  And its reference to testing segregation is in connection with audits relating to futures commissions merchants ("FCMs"), like Refco LLC:

> [P]rocedures for safeguarding customer and firm assets must be
> sufficient to provide reasonable assurance that any material

3

> inadequacies existing at the date of the examination in . . . (iii) the procedures for safeguarding customer and firm assets (*including, in the case of a futures commission merchant, the segregation requirements of section 4d(a)(2) of the Act and these regulations and the secured amount requirements of the Act and these regulations*) will be discovered.

17 C.F.R. § 1.16 (d)(1) (2004) (emphasis added).[2]

Plaintiffs' only answer to this has been to de-emphasize the dispositive language (*see* Pls. Mem. 3-4) or to leap over it entirely with carefully placed ellipses, as they did with the "visual aids" presented to the Court on October 12, 2011. But the regulations flatly contradict their contention that auditors of CPOs must test for segregation at non-client entities under the CEA. Indeed, the audits of CPOs are directly addressed in an entirely different section, and that section explicitly excludes "audit objectives of § 1.16(d)(1) concerning . . . property in segregation" and "[a]ll other references in § 1.16 to the segregation requirements." *See* 17 C.F.R. § 4.22 (d)(1) (2004).[3]

The Special Master noted more than once in the R&R that "nothing in the Complaint establishes that PwC was required to determine the status of the SMFF cash at RCM (as opposed to its existence and amount)." R&R at 9. There is nothing to indicate that the Special Master or the Court failed to consider 17 C.F.R. § 1.16 in making that correct determination.

---

[2] Also, while PlusFunds was the commodity pool operator for SMFF, it did not hold SMFF's cash— Refco LLC, RCM and other brokers did.

[3] PlusFunds was exempt from even the reporting requirements of Part 4 because its customers met certain criteria for sophisticated investors. 17 C.F.R. § 4.7 (2004). Plaintiffs make the creative argument that the exemption actually imposed a *greater* duty on PlusFunds than it would have otherwise had, because it invokes the requirements of § 1.16 "as applicable." Pl. Mem. 6, n.10. But that just brings plaintiffs back to 1.16, which explicitly does not require segregation testing except for audits of FCMs.

4

## II. Plaintiffs' "Summary Judgment" Arguments Are Baseless

In their objection to the Special Master's R&R, plaintiffs sought to introduce documents not referenced in the Complaint, such as a 63-page affidavit of David Wallace, plaintiffs' consultant. They did so without leave of Court and in blatant disregard of the procedures in this case.[4] They now argue that the Court was *required* to consider the report under Rule 12(d) because the Special Master improperly considered matters they say are outside the pleadings, such as the transcript of PwC partner Mari Ferris's Rule 2004 testimony. But the Ferris testimony *is* specifically referenced in the Complaint (Compl. ¶¶ 611-12, 622, 641), and plaintiffs themselves invited the Special Master to examine the "context" of the testimony when it became clear their allegations were inadequate. There was no basis to convert PwC's motion into one for summary judgment, and therefore the Court properly refused to consider the Wallace affidavit.

For starters, plaintiffs' argument that the Court was required to consider the Wallace affidavit under Rule 12(d) is itself new. Pls. Mem. 7, 10-11. Plaintiffs never invoked Rule 12(d) in their objection to the R&R, nor did they ask the Court to convert PwC's motion to dismiss into one for summary judgment when they submitted their consultant affidavit. Rather, they cavalierly informed the Court that they "fe[lt] compelled to . . . to provide the Court with the basis to identify and correct the Special Master's misunderstanding of GAAS." Pls. Obj. 1. Their citation to Rule 12(d) now is a retrospective justification for unilaterally injecting materials outside the Complaint into the Rule 12(b)(6) briefing. The Court was correct in rejecting this

---

[4] *See* Order dated Oct. 24, 2011 at 1-2 n.1 ("[T]he entire purpose of the Court appointing not one, but two Special Masters in this case. . . would be for naught if the parties could simply introduce new evidence and raise new arguments to this Court that were not fairly presented first to the Special Masters whenever a party did not like a Special Master's recommendation.").

improper attempt to "correct the Special Master's misunderstandings" with material that was never presented to the Special Master in the first place.

Moreover, it was plaintiffs who invoked the Ferris transcript when it became clear that their allegations about Ms. Ferris's testimony were inadequate. While the Complaint alleges that Ms. Ferris "testified that she was actually aware . . . that hundreds of millions of dollars of SPhinX cash was concentrated and exposed to credit risk at RCM" (Compl. ¶ 641), plaintiffs essentially concede that everyone at PlusFunds and SPhinX knew that cash was at RCM and exposed to some form of credit risk. Compl. ¶ 183 (conceding that innocent insiders knew cash was at RCM); Pls. Opp. Mem. 24 n.13 (conceding knowledge of risk that recovery in broker insolvency could be "limited to a pro rata share of segregated funds available"); *see also id.* at 22 n.12 (allowing that if innocents were warned that there was credit risk associated with RCM accounts, "the vague reference to 'credit risk' would have done nothing to apprise anyone that *all* the SMFF excess cash at RCM had been stripped of all protection and was subject to the risk of total loss. . . ."). When pressed by the Special Master on the banality of the allegations regarding Ms. Ferris's "admission," counsel for plaintiffs offered to "clear that up" with an amendment to show that "she was aware that the money was *totally* exposed to the risk of *total* loss at RCM and was *totally* unprotected in those accounts." Tr. 268-69 (emphasis added). Plaintiffs' counsel also offered to read the Special Master quotes from and highlight the transcript,[5] and they argued that "*in the context* of the deposition it was clear" that she was talking about total loss. Tr. 304 (emphasis added).

---

[5] "Mr. Beus: We've got the depositions, if you would allow me to interrupt. I'll read you the quotes and provide you with the copies." Tr. (June 14, 2011) at 303.

6

Of course, when the Special Master examined the "context" of Ms. Ferris's testimony he saw that it does not support plaintiffs' counsel's characterization of that testimony at oral argument, nor does it provide any basis to amend plaintiffs' Complaint. Rather than admitting that "she was aware that the money was *totally* exposed to the risk of *total* loss at RCM and was *totally* unprotected in those accounts," the Special Master saw that her admission was really a generic statement that "[a]ll amounts with counterparties are subject to credit risk." R&R 7 (quoting transcript of Rule 2004 examination).

The Special Master's examination of the testimony that the plaintiffs quoted from and repeatedly cited in the complaint was not improper under Rule 12. *SEC v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 700 (S.D.N.Y. 2005) (noting that "permitting judicial review of documents used by a plaintiff in drafting the complaint prevents a plaintiff from maintaining a claim 'by extracting an isolated statement from a document and placing it in a complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not [actionable].'" (citation omitted)). Having invoked the transcript both in the Complaint and at various hearings, plaintiffs should not be heard to complain when the Special Master confirmed that it did not improve their Complaint allegations, which the Special Master found insufficient to support their claims.[6]

Plaintiffs also argue that the Special Master improperly took on the role of expert in interpreting "AICPA pronouncements on auditing standards and other material outside the

---

[6] Their allegation about Ms. Ferris's knowledge was also contradicted by other allegations in the Complaint. Plaintiffs alleged that she did "nothing" to examine the cash at Refco (Compl. ¶ 702) and the Complaint does not plead any facts showing her knowledge of Refco's inner workings. The Special Master's ultimate conclusion in the R&R was therefore not even dependent on his reading of the transcript. *See* R&R 7 ("The plaintiffs' own complaint renders it implausible to conclude that Ferris knew the transfer of SMFF excess cash from Refco LLC to RCM had caused those assets to lose protections they enjoyed at Refco LLC.").

7

complaint." Pls. Mem. 7; *see also id.* 12-14. It is not clear what they mean by this because the standards plaintiffs refer to are cited prominently in the Complaint. Compl. ¶¶ 623-638. Plaintiffs' position seems to be that by invoking professional auditing standards they immunize their claims from dismissal under Rule 12, but that is plainly not the law. *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011) (rejecting allegations of GAAS and GAAP violations under Rule 12(b)(6)); *Technology in Partnership, Inc. v. Rudin*, 2011 WL 4575237, at *5 (S.D.N.Y. 2011) (dismissing claim under Rule 12(b)(6) because "the Complaint fails to allege facts that plausibly show a departure from standard accounting practices" as set out in AICPA standards); *see also Meridian Horizon Funds, LP v. Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010) (opining on motion to dismiss that "[t]he notion that a firm engaged to audit the financial statements of one client (the XL Funds) must conduct audit procedures on a third party that is not an audit client (BMIS) on whose financial statements the audit firm expresses no opinion is unprecedented and has no basis").

### III.  The Court Did Not Overlook Controlling Authority on Damages

The R&R limited plaintiffs' recovery against PwC on the one count that remains (Count 17) to "damages sustained by placing SMFF funds with Refco after the date of PwC's concealment of the Refco fraud in its advisory work for Refco." R&R at 24. This was a straightforward result of the fact that only PwC's Refco advisory work remains at issue. "It goes without saying that PwC cannot be held responsible for damages caused by the Refco fraud before PwC was retained by Refco." R&R at 24 n.21. The ruling also follows the precedent set in this MDL. *See* PwC R&R at 23-24 (citing Private Actions Trust R&R dated June 3, 2010).

Plaintiffs' response is to speculate that they might have been able to fully recover amidst a "run on the bank" in 2004 (as opposed to when they tried unsuccessfully in 2005) because "[w]hat would have happened if PwC had disclosed Refco's fraud in 2004, either to the public or

8

directly to SPhinX and PlusFunds, cannot be stated with any certainty." Pls. Obj. at 33. But "anything is possible" does not satisfy plaintiffs' burden of pleading proximate causation under Rule 12. *See In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 577, 579-580 (S.D.N.Y. 2007) (failure to plead proximate causation where allegations required speculation as to whether company would have filed for bankruptcy sooner and plaintiffs "ha[d] not supplied factual allegations sufficient to raise a right to relief above the speculative level"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("factual allegations must be enough to raise a right to relief above the speculative level").[7]

## **CONCLUSION**

For the reasons set forth above, the Court should deny the motion for reconsideration in its entirety.

Dated: New York, New York
       November 15, 2011

                 KING & SPALDING LLP

                 By:   s/ James J. Capra, Jr.
                    James J. Capra, Jr.
                    James P. Cusick
                    1185 Avenue of the Americas
                    New York, New York 10036

                    Tel: (212) 556-2100

                    *Attorneys for Defendants*
                    *PricewaterhouseCoopers LLP*
                    *and Mari Ferris*

---

[7] Plaintiffs ask the Court to reconsider the dismissal of claims without prejudice. This determination should not be revisited at this late hour, especially because plaintiffs' proffered amendments would do nothing to salvage their claim. *See*, *e.g.*, PwC R&R at 9 (concluding that dismissal of Count 6 should be "with prejudice, because not only have the Plaintiffs already had an opportunity to amend, but more importantly any amendment would be futile because there is nothing in the engagement letters or in GAAS to indicate that the defendants had any duty to investigate whether the cash at RCM was completely unprotected, and nothing further to indicate actual knowledge.").