**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                   :

In re REFCO INC. SECURITIES LITIGATION   :      Case No. 07-md-1902 (JSR)
                                   :
-------------------------------------------------------------X

This Document Relates to:

-------------------------------------------------------------X
KENNETH M. KRYS, et al.,               :      Case No. 08-cv-3065 (JSR)
                                   :      Case No. 08-cv-3086 (JSR)
Plaintiffs,                       :
                                   :      REPORT AND
      -against-                :      RECOMMENDATION
                                   :      OF THE SPECIAL MASTER
CHRISTOPHER SUGRUE, et al.,        :      ON MOTION TO DISMISS
                                   :      BROUGHT BY
               Defendants.   :      THE THL DEFENDANTS
-------------------------------------------------------------X

Daniel J. Capra, Special Master

     The THL Defendants[1] move to dismiss the Complaint against them — specifically Count XXV of the Complaint, which is the only Count against them. Count XXV alleges that the THL Defendants breached a fiduciary duty to SPhinX and PlusFunds — or alternatively aided and abetted a breach of fiduciary duty owed by Refco to SPhinX and PlusFunds — by "authorizing the [Round Trip Loans] after assuming control of Refco, by concealing Refco's insolvency and the Refco fraud from creditors and customers (including SPhinX) and by allowing and authorizing the continuing diversion of RCM assets to fund Refco's operations and fraud." FAC ¶1342.[2]  The ground for

---

[1] The THL Defendants are Thomas H. Lee Partners, L.P., THL Managers V LLC, Thomas H. Lee Advisors LLC, Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., Thomas H. Lee Equity (Cayman) Fund V, L.P., THL Equity Advisors V, LLC, Thomas H. Lee Investors Limited Partnership, The 1997 Thomas H. Lee Nominee Trust, Thomas H. Lee, David V. Harkins, Scott L. Jaeckel, and Scott A. Schoen.

[2] The aiding and abetting claim is articulated in ¶1343 in somewhat different language, but the alleged wrongful acts are the same — hiding Refco's true financial position and assisting in the upstreaming of assets from RCM.

dismissal in this motion is that prior rulings of Judge Rakoff mandate that the Plaintiffs'[3] claims for damages arising from the Refco Fraud must be dismissed with prejudice on standing grounds if a defendant has paid to settle the claims of the RCM Estate with the Refco Trustee; and the THL Defendants have so settled.[4]

The Special Master has to date issued more than a dozen R and R's in the Refco MDL. Some of these R and R's will be referred to herein. Abbreviations used in the prior R and R's will be used herein. Familiarity with all of the R and R's — and with Judge Rakoff's orders reviewing them — is presumed. [5]

## I. Background

The Plaintiffs' claims against the THL Defendants arise from what has been termed throughout this Action as the "Refco Fraud"[6] — the Plaintiffs have brought no claims against the THL Defendants for any injuries caused by the SPhinX Fraud. Whether the Plaintiffs have standing to sue the THL Defendants for Refco Fraud claims is dependent on an analysis of prior opinions in this Action and on the nature of the settlement between the Refco Trustee, Kirschner,  and these Defendants.

### A. Prior Rulings on the Plaintiffs' Standing to Sue for Damages Caused by the Refco Fraud.

---

[3] As recounted in a number of prior opinions, the named Plaintiffs have been appointed by the Cayman Court to bring claims on behalf of SPhinX and PlusFunds. Prior rulings by Judge Rakoff have narrowed the claims for damages to those incurred by SMFF and PlusFunds. See generally the Standing R and R dated  dated February 3, 2010 and affirmed by Judge Rakoff in Orders dated March 31, 2010 and May 3, 2011.

[4] The Defendants have previously moved to dismiss on the merits. That motion is pending before the Special Master, but needs resolution only if the Plaintiffs have standing to bring their claims against THL.

[5] The facts pertinent to these motions have been recounted in a number of opinions by Judge Lynch (*see, e.g.*, *Kirschner v. Grant Thornton,* 2009 WL 996417 (S.D.N.Y. 2009)) and in a number of R and R's by the Special Master.  To the extent necessary for background on the instant motion, familiarity with the financial schemes of Refco is assumed.

[6] See generally the Standing R and R, dated February 3, 2010 for an analysis of the differences between the Plaintiffs' claims under the Refco Fraud and those under the SPhinX Fraud.

Resolution of the Defendants' standing claim is dependent on whether two prior R and R's — both affirmed by Judge Rakoff — are controlling here. Those R and R's will be summarized briefly.[7]

### The Standing R and R

In the Standing R and R, dated February 3, 2010 and affirmed by Judge Rakoff in Orders dated March 31, 2010 and May 3, 2011, the Special Master found that the Plaintiffs' Refco Fraud claims were indirect or secondary — i.e., the harm alleged was suffered in the first instance by RCM, whose assets were upstreamed, rendering it unable to pay back its customers. The Special Master reasoned that the primary claim was therefore held by the Refco Trustee for the benefit of the RCM Estate, and that to allow the Plaintiffs to proceed with their claims would raise the risk of double recovery — the Refco Trustee and the Plaintiffs would be recovering for the same harm, i.e., the loss of the cash that was in the accounts at RCM. Accordingly, the Special Master recommended the dismissal of all the Plaintiffs' claims arising from the Refco Fraud as those were claims of RCM (specifically at that point the Refco Trustee) in the first instance.

The Standing R and R relied heavily on Judge Preska's analysis in *Jackson Nat'l Life Ins. Co. v. Ligator,* 949 F. Supp. 200, 204 (S.D.N.Y. 1996). The case involved alleged fraud in artificially inflating the value of entities (the IPM entities) that were purchased by IPM, which had received a loan from Jackson in order to buy the entities. Judge Preska dismissed Jackson's claim due to lack of standing, finding that the lender's injuries were not "separate and distinct" from the direct injuries suffered by the purchaser in acquiring the inflated entities. Id. at 205-06. Judge Preska commented as follows on the risk of double recovery:

> From the outset of this action, I have been concerned about the prospective dangers of a "double recovery." As I stated in my January 19, 1996 oral decision:
>
>> Jackson National loaned IPM approximately $33 million to purchase the IPM entities. Both parties now claim that they were injured because the $41 million purchase price was inflated by Ligator's alleged misrepresentation and fraud. Both parties' claims are supported by the same legal theories. Both refer to the same property, namely the stock and assets of the IPM entities, and both seek to rectify or recoup the alleged overpayment. It is a distinction without a difference to argue, as plaintiff does ... that "Jackson's property interest in this action concerns its own injuries, not IPM's . . . "
>
> As I pointed out then, and as plaintiffs conceded, if . . . both [were] to prevail in their

---

[7] THL's alleged role in the Refco Fraud has been recounted by the Special Master in a number of R and R's. Familiarity with those accounts is presumed. *See, e.g.,* Report and Recommendation on THL's Motion for Summary Judgment in *THL v. Grant Thornton* dated April 10, 2011, affirmed by Order of Judge Rakoff dated May 31, 2011.

respective actions, the result would be duplicative awards. * * * Numerous courts, including the United States Supreme Court and the Court of Appeals for the Second Circuit, have recognized that the type of secondary standing claimed by Jackson National here is disfavored precisely because it can lead to double recovery, as well as because the necessary causal link between the actions of the primary violator and the party claiming injury is too remote. [Citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), and *Manson v. Stacescu*, 11 F.3d 1127 (2d Cir.1993)].

The Special Master reasoned that the same concern of double recovery arose with regard to the Plaintiffs' Refco Fraud claims, because the only reason SPhinX and PlusFunds were injured by the Refco Fraud was that RCM was unable to pay its customers due to the Refco Fraud. As such, the Refco Trustee's claim for RCM's injury was the primary claim, and to allow the Plaintiffs' to proceed on their secondary Refco Fraud claims would 1) disrupt the natural order of the Refco Bankruptcy proceeding and 2) allow two entities to recover for the same wrong. *See* Standing R and R at 20-22.

The Special Master noted, however, that if it were found that  the Refco Trustee were barred from recovering for damages to RCM, the risk of double recovery would be eliminated, and at that point it would be inequitable to bar the Plaintiffs from bringing their claim. To so bar the Plaintiff under such circumstances would allow the Defendants to win one action on the ground that the Plaintiffs cannot sue because the Refco Trustee could do so, and win the other action on the ground that the Refco Trustee was barred from suit.  See Standing R and R at 26, n. 34.  The Special Master therefore recommended that dismissal of the Plaintiffs' Refco Fraud claims on standing grounds should be *without prejudice* — subject to revival if the Refco Trustee was found to be barred from bringing RCM's claims. Again the Special Master relied on *Ligator,* where Judge Preska dismissed the lender's claim without prejudice, where the corporations that suffered the primary harm were arbitrating the primary claim. Judge Preska held that "Jackson National should await the outcome of the arbitration brought by the directly injured parties." 949 F.Supp. at 206-7.

As it happened, the Refco Trustee *was* found barred from bringing the claims on behalf of the Refco Estate against most of the third party defendants — on the grounds of *in pari delicto* and under the *Wagoner* doctrine. *Kirschner v. KPMG LLP*, 626 F.3d 673 (2d Cir. 2010).  In response to the dismissal of the Refco Trustee's claims, Judge Rakoff, in his May 3, 2011 Order, held that the Plaintiffs could now proceed with their Refco Fraud claims. Judge Rakoff specifically agreed with the Special Master's reasoning that once the threat of double recovery was lifted, it would be inequitable to allow the Defendants to argue that the Plaintiffs lacked standing because the Refco Trustee could bring the claims and then argue that the Refco Trustee lacked standing. See May 3, 2011 Order at 4.[8]   Accordingly Judge Rakoff dismissed the motion to dismiss the Refco Fraud

---

[8] Subsequently both the Special Master and Judge Rakoff rejected the Defendants' motion to dismiss the Refco Fraud claims on the ground that the Plaintiffs were stepping into the shoes of the Refco Trustee. See Report and Recommendation dated July 5, 2011 and Judge Rakoff's Order adopting the Report and Recommendation, dated 12, 2011.

claims on grounds of standing.

It is important to note that the Refco Trustee's claims against the THL Defendants were *not* dismissed by the Order in *Kirschner v. KPMG*. The dismissal in *KPMG* did not automatically revive the Plaintiffs' claims against THL. The THL Defendants were not parties to *Kirschner v. KPMG*, and even if they had been parties, the *in pari delicto/Wagoner* would have been inapplicable to them because Kirschner's claims against the THL Defendants were grounded in those Defendants' role as Refco insiders. See the Report and Recommendation on *in pari delicto/Wagoner,* dated December 6, 2010 at 9 ("The *Wagoner* doctrine is inapplicable to claims by or on behalf of the corporation against insiders for damages caused by their misconduct as corporate insiders. *See Global Crossing Estate Representative v. Winnick,* 2006 WL 2212776, at *15 (S.D.N.Y.)."). Tellingly, the THL Defendants did not move to dismiss on *in pari delicto/Wagoner* grounds in *Kirschner v. THL.*

### The "With Prejudice" R and R

In the "With Prejudice" R and R, dated April 19, 2010, the Special Master applied the reasoning of the Standing R and R to two sets of defendants — BAWAG and the EMF defendants — who had settled with the Refco Trustee. The Special Master determined as follows:

> Under the rationale of the Standing R and R, the claims in this action against a defendant who has already settled a claim brought by the Refco Trustee should be dismissed with prejudice. This is because the payment of the settlement means that there is no risk of a wrong without a remedy — the remedy is the settlement payment that became available to Refco creditors. Put the other way, if settling defendants are not dismissed with prejudice, then the Plaintiffs' claims against them could be revived if the Refco Trustee is found barred by the *Wagoner* doctrine. In that case, there would be the very risk of double recovery that the standing doctrine is designed to avoid — the settling defendant would have compensated Refco creditors and yet would be subject to paying other Refco creditors (i.e., these Plaintiffs) for the same wrong.

"With Prejudice" R and R at 2. In an Order dated May 3, 2011, Judge Rakoff adopted the "With Prejudice" R and R in full as if incorporated in the Order, and dismissed the settling defendants with prejudice. Subsequently, in an Order dated May 16, 2011, Judge Rakoff relied on the "With Prejudice" R and R to dismiss the Plaintiffs' claims against defendant Dennis Klejna, because he had settled with the Refco Trustee.

### B. THL's Settlement with the Refco Trustee

The Refco Trustee sued the THL Defendants in *Kirschner v. Thomas H. Lee Partners, L.P.,* No. Civ. 7074 (JSR). The causes of action were as follows:

Count I: Recovery of Fraudulent Transfers (payments made by Refco to THL for various services and payments related to the LBO and IPO);

Count II: Avoiding Agreements made with THL in connection with the LBO;

Count III: Recovery of Preferential Transfers related to management fees, a greenshoe dividend, etc.;

Count IV: Breach of Fiduciary Duty, for compensatory damages — brought against the entity Defendants — allegedly caused by the THL Entities' engaging in acts of self-dealing during the period between the LBO and the IPO, and by engineering an imprudent IPO and deepening Refco's insolvency, rendering Refco unable to pay creditors;

Count V: Breach of Fiduciary Duty, for restitution — brought against the entity Defendants — based on essentially the same allegations as Count IV;

Count VI: Breach of Fiduciary Duty, for compensatory damages — brought only against the individual Defendants — but based on the same allegations of self-dealing, engineering an imprudent IPO, rendering Refco unable to pay creditors, etc.;

Count VII: Breach of Fiduciary Duty, for restitution — brought only against the individual Defendants — based on essentially the same allegations as the other counts for breach of fiduciary duty;

Count VIII: Unjust Enrichment — brought against all THL Defendants — for monies received from the LBO and IPO;

Count IX: Illegal Dividends, allegedly issued when Refco was hopelessly insolvent; and

Count X: Forfeiture of Compensation received after the date of breach of the fiduciary duties.

The *Kirschner* action against the THL Defendants was dismissed with prejudice, pursuant to a Joint Stipulation of Dismissal with Prejudice dated August 4, 2011. This Joint Stipulation was part of a settlement under which the THL Defendants agreed to pay gross settlement proceeds of $145 million that is to be allocated in equal parts to the Refco Litigation Trust and the Refco Private Actions Trust.[9]

---

[9] See Lead Plaintiffs' Memorandum of Law in Support of Preliminary Approval of a Settlement with the THL Defendants, dated March 2, 2011.

## II. Analysis

The Defendants argue that the reasoning and rulings in the Standing R and R and the "With Prejudice" R and R apply squarely to this case. The argument is straightforward: like the EMF Defendants and BAWAG, THL settled with the Refco Trustee and the same risk of double recovery that existed as to the Plaintiff's claims against those settling defendants exists with respect to the Plaintiffs' claims against the THL Defendants.

The Plaintiffs spend a good part of their brief recycling the arguments they propounded unsuccessfully in response to the Standing R and R and the "With Prejudice" R and R.[10] Three arguments have already been made and fare no better this time around:

1) The Plaintiffs again argue that they are bringing claims for their own damages (more specifically the claims of SPhinX and PlusFunds for their own injuries). But that argument once again misses the point. The Special Master has never contended that the Plaintiffs are not bringing the claims of SMFF and PlusFunds for the injuries suffered by those entities. While SPhinX and PlusFunds according to the Plaintiffs' allegations suffered their own injuries, the reasoning of the Standing R and R is that those injuries were *indirect* and *secondary* and therefore could only be pursued if the party holding the claim for the primary wrong — the Refco Trustee — could not pursue his claim. Thus, the fact that the Plaintiffs are bringing claims for "their own damages"[11] does not help the Plaintiffs if those damages are indirect and if the party claiming damages for the direct injury has settled with the alleged wrongdoer.[12]

2) The Plaintiffs' renewed argument that dismissing their claims raises due process issues again avails nothing because, as the Standing R and R indicates, the claims that are

---

[10] See the THL Defendants Supplemental Reply Memorandum of Law, dated October 6, 2011, at 3 (noting instances in which the Plaintiffs' brief in this matter is exactly the same as their brief in opposition to the "With Prejudice" R and R).

[11] Plaintiffs' Brief at 8.

[12] The Plaintiffs' reliance on Judge Lynch's decision in *Krys v. Sugrue,* 2008 WL 4700920, at *11 (S.D.N.Y. 2008) is also unavailing. In holding that the Plaintiffs were bringing claims against BAWAG for harm to SPhinX, Judge Lynch was not called upon to consider the question pertinent to standing — whether the harm to the Plaintiffs was indirect. Rather he was determining the different question of whether the Plaintiffs' claims against BAWAG implicated "core matters of bankruptcy jurisdiction" — which is determined by whether such claims that "would not exist independent of the bankruptcy environment." The fact that the Plaintiffs' claims could certainly exist outside the bankruptcy environment says nothing about whether, given RCM's bankruptcy, the injuries suffered by SPhinX and PlusFunds were indirect and secondary to the primary harm suffered by RCM.

indirect are always secondary to the claims of those who suffer direct harm. If that were not the case, it would be the defendant paying twice for the same harm that would have the due process argument. See *Ligator* 949 F. Supp. at 204.

3) Finally, the Plaintiffs resuscitate the argument that they will not get a penny of whatever THL paid to the Refco Trustee. But the answer is as before. The Plaintiffs *did* get money out of the Refco Estate, when SPhinX settled the preference action brought by Kirschner. See FAC ¶ 12. The fact that the Plaintiffs now seek to make up for what they rue as a poor settlement does not change the fact that there is no standing to pursue a recovery for a secondary injury after the defendant has settled the claim of the bankruptcy trustee for the primary injury. Simply put, the Plaintiffs are seeking a double recovery from the THL Defendants.

At any rate, these three arguments have been previously vetted, their rejection is law of the case, and there is nothing that has arisen in the time between the two affirmed R and R's and the present situation that changes the applicable reasoning and rulings in any respect. *See Kirschner v. Bennett,* 759 F.Supp.2d 301, 308 (S.D.N.Y. 2010) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (internal quotations and citations omitted).

The Plaintiffs do, however, raise a few new arguments that seek to distinguish the THL Defendants and their settlement from the situations raised by the settlements of BAWAG, the EMF Defendants, and Klejna. It is to these new arguments that the Special Master now turns.

### Argument: The BAWAG and EMF Settlements Are Different Because They Occurred Before Kirschner's Dismissal for Lack of Standing.

The Plaintiffs argue that the settlements of BAWAG and the EMF Defendants are "easily distinguished" because they "both settled with Kirschner long *before* Judge Lynch held that Kirschner lacked standing to bring creditor claims." Plaintiffs' Brief at 8-9 (emphasis in original). They contend that at this point "THL cannot argue that it entered into its settlement agreement with Kirschner under the impression that Kirschner somehow represents the interests of all of RCM's creditors."

The Plaintiffs' argument is flawed because there is no requirement, in properly settling direct claims pursued by the Trustee, that the settlor must know that the Trustee "represents the interests of all of RCM's creditors." The Plaintiffs cite no authority for that counterintuitive requirement. The only relevant fact is that the Refco Trustee *did* have standing to pursue claims against THL even after Judge Lynch's ruling on *Wagoner/in pari delicto*, because THL was an insider and therefore cannot take advantage of the *in pari delicto* doctrine or the *Wagoner* rule. *See* the Report and Recommendation on *in pari delicto/Wagoner,* dated December 6, 2010 at 9. Therefore, Judge Lynch's *in pari delicto* ruling as to other defendants is completely irrelevant to the propriety of the

8

THL Defendants' settling the Refco Trustee's claims against them. Put another way, the THL Defendants' settlement of potentially viable claims of the Refco Trustee put them in exactly the same situation as the BAWAG and EMF Defendants, regardless of the timing.[13]

The Plaintiffs contend that if THL is let off the hook because of settling with the Refco Trustee, then "Grant Thornton and Mayer Brown and all the other Refco Fraud defendants could drop a check in the mail to Kirschner and argue that the SPhinX Plaintiffs' claims are now barred because Kirschner recovered damages in connection with his Refco Fraud claims." Plaintiffs' Brief at 10. This argument is unavailing for at least two reasons. First, THL hardly "drop[ped] a check in the mail." THL settled for $145 million, and that settlement has been approved as a reasonable and fair settlement.[14] See Report and Recommendation of the Special Master dated April 15, 2011. That amount is, to quote the "With Prejudice R and R," a "substantial sum." "With Prejudice R and R" at 2 and note 2.  Second and more importantly, the other defendants have no justification or need for dropping a check in the mail to Kirschner, as his claims on behalf of the Refco Estate against the other defendants in this case have been terminated, either by settlement or by dismissal on *in pari delicto* grounds.[15] The Plaintiffs seek to equate the legitimate settlement of a viable claim with some kind of sharp practice in which a lawyer tries to pay off a court-appointed Trustee with no viable claim by sending him a few bucks. If such a nightmare scenario were to come to pass, it is fair to state that a court would not find that pursuing the creditor's claim would create a risk of double recovery. But those are not the facts of this case.

### *Argument: THL Did Not Settle the Direct Claims for the Same Wrong as Alleged by the Plaintiffs*

---

[13] The Plaintiffs argue that the terms of the Kirschner/THL Defendants' settlement indicates that THL recognizes that creditor claims are not barred, because THL got a release of claims by RCM's customers represented in the Settlement Class. See Plaintiff's Brief at 9-10. But careful lawyers will always seek to protect their client from any liability, no matter how unlikely that liability may be. If every release negotiated by a lawyer was a recognition of the merit of the claim terminated,  then releases would be significantly shorter than they in fact are, if any were entered at all. *See* Federal Rule of Evidence 408 (statements and offers made in settlement are inadmissible as a concession of the validity of a claim).

[14] It is true that the review of the settlement was in the context of settling the class action, but there is no allegation that the settlement is unfair or insufficient as a global settlement of the claims against THL.

[15] The only remaining action that has been or can be brought by Kirschner is the Private Action Trust action against Grant Thornton. See Transcript of Status Conference on March 9, 2011, at 7.

The Plaintiffs note that the claims settled by the Refco Trustee in *Kirschner v. THL* are not identical to the claims that the Plaintiffs bring against the THL Defendants.[16] The Plaintiffs are correct that the *bankruptcy-related* claims and the claims for illegal dividends and unjust enrichment do not seek recovery for the same wrong alleged here by the Plaintiffs. But there is obviously no rule of law that customers have standing to pursue claims held by the bankruptcy estate in the first instance whenever the Trustee has *extra* claims that could not be brought by the customers. The question of standing therefore must focus on the breach of fiduciary duty claims that Kirschner brought against the THL Defendants.

The breach of fiduciary duty claims brought by Kirschner closely track the allegations that the Plaintiffs bring against THL in this case. Kirschner claimed that the THL Defendants engaged in self-dealing at the expense of the Refco entities; that they knew of Refco's impossible financial condition and worsened that situation; and that they engineered harmful transactions and an imprudent IPO that led to Refco's hopeless insolvency so that Refco's "creditors could not be paid." Kirschner First Amended Complaint ¶289.  All of the breach of fiduciary duty claims are based on THL's conduct after the LBO — because THL did not, of course, owe a fiduciary duty to Refco until it took control after the LBO.

The Plaintiffs, for their part, claim 1) that THL breached fiduciary duties to SPhinX and PlusFunds after the LBO — a claim which, under the Primary Wrongs R and R, is limited to breach of a relationship of trust and confidence that occured by diverting assets from RCM;[17] and in the alternative 2) that THL aided and abetted Refco's breach of fiduciary duty by concealing Refco's financial condition and allowing the diversion of assets to continue. Like Kirschner, the Plaintiffs's claims are focused only on THL's post-LBO conduct. And like Kirschner, the Plaintiffs specifically allege that THL plowed ahead toward an imprudent IPO in order to cash out its own interest. See Sugrue First Amended Complaint ¶1067 ("Despite knowledge of significant problems at Refco, THL pressed forward and consummated the IPO in order to cash out its own interests.").

While the breach of fiduciary duty claims brought by the Plaintiffs and Kirschner are not *identical*, the plaintiffs in both cases are complaining about the same actions and seeking recovery for the same wrong.[18] Both are alleging that THL ran Refco into the ground despite all indications that Refco was insolvent and a fraud; and both are alleging that the result of THL's wrongdoing was that Refco was unable to pay its obligations. Clearly there is no obligation grounded in the doctrine

---

[16] The claims brought by Kirschner against THL are set forth *supra.*

[17] See Primary Wrongs R and R at 42, affirmed by Judge Rakoff (finding that the Plaintiffs' breach of fiduciary duty claim against Refco could not be grounded in a joint venture or in operating in the zone of insolvency).

[18] The Plaintiffs themselves acknowledge that their claims are "similar" to those brought against THL by Grant Thornton. See Plaintiff's Brief at 18. And Grant Thorton's assertions against THL closely track those in Kirschner's Complaint.

of prudential standing that the Trustee's claim, to take precedence,  must be *identical* to the secondary claim. That could not be so because the third-party wrongdoer's legal relationship to the bankrupt entity would almost always be different from its relationship to a customer or creditor of that entity.

The bottom line is that both Kirschner and the Plaintiffs are alleging that THL, after the LBO, committed wrongdoing that caused Refco to be unable to pay its obligations. Thus, Kirschner and the Plaintiffs sued for the "same wrong" within the meaning of the Standing R and R and the "With Prejudice" R and R. *See* "With Prejudice" R and R at 2.

The Plaintiffs, in a footnote in their brief, observe that the global settlement reached between Kirschner and the THL Defendants does not allocate any of the settlement proceeds to the breach of fiduciary counts. See RCM Class Action Stipulation ¶J. But this observation leads nowhere, given the way that the settlement is arranged. As indicated in the Stipulation, ascribing no monetary value to a particular claim has no material affect on any particular settled claim because "(i) the Refco Private Actions Trust Agreement provides that for any settlement that involves the resolution of claims involving both the Refco Private Actions Trustee and the Litgation Trustee, the proceeds are divided equally among the Trusts and this has been the practice of the Trusts; and (ii) there is a substantial overlap in the beneficiaries of the Refco Litigation Trust and the Refco Private Actions Trust." Id. at ¶M.  In other words, the settlement value ascribed to the Trustee's breach of fiduciary duty claims — or the lack thereof —  will not affect recovery for the beneficiaries of those claims, i.e., Refco's customers and creditors.

## III. Conclusion

The arguments recycled by the Plaintiffs and rejected by the Standing R and R and the "With Prejudice" R and R continue to be unavailing. And the new arguments raised in the Plaintiffs' brief do not support any divergence from the basic principle established in those R and R's and Orders of Judge Rakoff. Kirschner has settled claims for the same wrong alleged by the Plaintiffs. Allowing the Plaintiffs to proceed with their claims against THL raises the specter of double recovery that the prudential standing doctrine is designed to avoid. Because the Plaintiffs' claims are for a secondary injury, and the Trustee has fairly settled the primary claims of the Refco Estate for the same harm, the Plaintiffs' claims against THL should be dismissed with prejudice.[19]

---

[19] The last three pages of the Plaintiff's Brief are devoted to the merits of THL's original motion to dismiss, and rely on the Special Master's R and R in *THL v. Grant Thornton* (affirmed and adopted by Judge Rakoff) in which the Special Master found that Grant Thornton had raised jury questions as to whether THL aided and abetted the Refco Fraud by pressing forward with the IPO. As stated in note 4, *supra*, the Plaintiffs' argument on the merits of THL's original motion to dismiss will be taken up only if the Court finds that the Plaintiffs have standing to pursue their claims against THL.

## IV. Recommendation

*The Plaintiffs' claims against the THL Defendants — the entirety of Count XXV of the Amended Complaint — should be dismissed with prejudice.*


Daniel J. Capra
Special Master

Dated: November 27, 2011
New York, New York