**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------
                                                :

IN RE REFCO INC. SECURITIES LITIGATION  :      CASE NO. 07-MD-1902 (JSR)

-----------------------------------------------------------------
                                                :

This document relates to:

-----------------------------------------------------------------
                                                :

KENNETH M. KRYS, *ET AL.*,               :
                                                :

                    Plaintiffs,    :      CASE NO. 08-CV-3086 (JSR)
                                                  :

          -against-                 :

CHRISTOPHER SUGRUE, *ET AL.*           :

                    Defendants.   :
-----------------------------------------------------------------

**BANK DEFENDANTS' RESPONSE**
**TO SPHINX PLAINTIFFS' LIMITED OBJECTION**
**TO THE REPORT AND RECOMMENDATION OF THE SPECIAL MASTER**
<u>**ON MOTIONS TO DISMISS BROUGHT BY THE BANK DEFENDANTS**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

I.    THE SPECIAL MASTER WAS RIGHT TO RECOMMEND DISMISSAL OF
      PLAINTIFFS' CLAIMS AGAINST CHASE .................................................................... 4

      A.    Plaintiffs fail to allege that Chase had actual knowledge of any wrongdoing. ........ 4

      B.    Plaintiffs fail to allege that Chase substantially assisted any wrongdoing. ............. 9

II.   THE SPECIAL MASTER WAS RIGHT TO CONCLUDE THAT PLAINTIFFS
      FAIL TO ALLEGE BAS'S AND CREDIT SUISSE'S ACTUAL KNOWLEDGE
      THAT REFCO WAS BREACHING ANY FIDUCIARY DUTIES TO SPHINX OR
      PLUSFUNDS. .................................................................................................................... 13

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corp.*,
  351 F. Supp. 2d 79 (S.D.N.Y. 2004)......................................................................................12

*In re Agape Litigation*,
  681 F. Supp. 2d 352 (E.D.N.Y. 2010) ...................................................................................8

*Kirschner v. Bennett*,
  648 F. Supp. 2d 525 (S.D.N.Y. 2009)....................................................................................7

*Kirschner v. Grant Thornton LLP*,
  No. 07 Civ. 11604, 2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009),
  *aff'd, Kirschner v. KPMG LLP*, 626 F.3d 673 (2d Cir. 2010) ..............................................12

*Kolbeck v. LIT America, Inc.*,
  939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998) ................................11

*Sadler v. 148 Academy Realty, LLC*,
  No. 08 Civ. 3338, 2010 WL 3952862 (S.D.N.Y. Oct. 8, 2010) ................................1

*Stephenson v. PricewaterhouseCoopers, LLP*,
  768 F. Supp. 2d 562 (S.D.N.Y. 2011).....................................................................................15

The Bank Defendants[1] respectfully submit this memorandum in response to Plaintiffs'

Limited Objection (the "Objection" or "Obj.") to the Report and Recommendation of the Special

Master on Motions to Dismiss Brought by the Bank Defendants (the "Report").

## PRELIMINARY STATEMENT

Plaintiffs object to the Report's conclusions that they fail to allege: (1) that Chase had actual

knowledge of, or substantially assisted, any wrongdoing; and (2) that BAS or Credit Suisse had

actual knowledge that Refco breached any fiduciary duty owed to SPhinX or PlusFunds.  Plaintiffs

contend that the Special Master erred in recommending that all of their claims against Chase be

dismissed and that one of their two aiding-and-abetting claims against BAS and Credit Suisse also be

dismissed.[2]

Plaintiffs are wrong—as this Court has already held.  Indeed, if the Court is left with the

impression that it has heard and rejected Plaintiffs' arguments before, that's because it has.

Plaintiffs' Objection simply repeats the same points that both  Special Master Capra and the Court

have found unpersuasive on numerous occasions.  In particular, the Special Master addressed the

same arguments in his Reports and Recommendations ("R&Rs") concerning Plaintiffs' claims

against Richard Butt and PricewaterhouseCoopers LLP ("PwC") and concerning Refco's alleged

---

[1] The Bank Defendants are Merrill Lynch, Pierce, Fenner & Smith Incorporated, as successor by merger to Banc of America Securities LLC ("BAS"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), and JPMorgan Chase & Co. ("Chase").

[2] Plaintiffs do *not* object to the Special Master's recommendation that their claims against BAS and Credit Suisse should be dismissed to the extent that those claims seek to recover (or otherwise assert that Plaintiffs were damaged as a result of) monies that SMFF deposited with Refco *before* Plaintiffs allegedly reviewed and relied on the supposedly false public statements made by Refco that BAS and Credit Suisse allegedly aided and abetted.  *See* Report at 22-24. Accordingly, the Court need only review this recommendation for "clear error."  *See Sadler v. 148 Academy Realty, LLC*, No. 08 Civ. 3338, 2010 WL 3952862, at *1 (S.D.N.Y. Oct. 8, 2010). There was no such clear error here.  To the contrary, the Court has already accepted the Special Master's same analysis in an earlier R&R.  *See infra* at 4 (order adopting the PwC R&R).

primary violations (respectively, the "Butt R&R," "PwC R&R," and "Primary Violations R&R").[3] The Court adopted each of those R&Rs in full, over Plaintiffs' objections, "finding itself in complete agreement" with the Special Master's conclusions.[4]

Plaintiffs' current Objection treads no new ground.  Plaintiffs contend, for example, that Chase knew that SMFF cash was not supposed to be at RCM (or to be transferred from RCM to fund Refco operations) because "Chase was familiar with SPhinX's offering materials" and "was well aware of statutes and regulations requiring Refco to segregate customer assets form its own."  Obj. at 1, 6.  But Plaintiffs made those same contentions in response to the Butt and PwC R&Rs, in which the Special Master concluded that Plaintiffs failed to allege either Mr. Butt's or PwC's actual knowledge of wrongdoing.  Plaintiffs argued that Mr. Butt knew that SMFF cash was not supposed to be at RCM because Butt "was intimately familiar with SPhinX and its offering materials," Pls' Objection to Butt R&R at 9, and that PwC supposedly knew the same thing because PwC "read SPhinX's offering memoranda" and was "aware of regulatory restrictions on a broker's use of customer cash," Pls' Objection to PwC R&R at 28.[5]  The Court rejected those arguments when it

---

[3] *See* R&R of the Special Master on Motion to Dismiss, *Krys v. Butt*, No. 08 Civ. 8267 (S.D.N.Y. Aug. 4, 2010) [Dkt. No. 95]; R&R of the Special Master on Motions to Dismiss Brought by Defendants PricewaterhouseCoopers and Mari Ferris, *Krys v. Sugrue*, No. 08 Civ. 3086 (S.D.N.Y. Aug. 10, 2011) [Dkt. No. 570]; R&R of the Special Master on the Omnibus Issue of Primary Violations by Refco, *Krys v. Sugrue*, No. 08 Civ. 3086 (S.D.N.Y. Mar. 2, 2010) [Dkt. No. 410].

[4] *See* Order in *Krys v. Butt*, No. 08 Civ. 8267 (S.D.N.Y. Mar. 29, 2011) [Dkt. No. 130]; Order in *Krys v. Sugrue*, No. 08 Civ. 3086 (S.D.N.Y. Oct. 25, 2011) [Dkt. No. 615]; Order in *Krys v. Sugrue*, No. 08 Civ. 3086 (S.D.N.Y. May 4, 2011) [Dkt. No. 524].

[5] Krys Plaintiffs' Objection to the August 4, 2010 Report & Recommendation of the Special Master on Motion to Dismiss, *Krys v. Butt*, No. 08 Civ. 8267 (S.D.N.Y. Aug. 16, 2010) [Dkt. No. 97]; Krys Plaintiffs' Limited Objection to the Report and Recommendation of the Special Master on Motions to Dismiss Brought by Defendants PricewaterhouseCoopers and Mari Ferris, *Krys v. Sugrue*, No. 08 Civ. 3086 (S.D.N.Y. Sept. 6, 2011) [Dkt. No. 583]

adopted the Butt and PwC R&Rs in full, concluding that such allegations were not indicative of Mr. Butt's or PwC's actual knowledge of wrongdoing.

Likewise, here Plaintiffs contend that "BAS and Credit Suisse [] knew that Refco's fraudulent concealment and affirmative misrepresentations of its true financial condition . . . were breaches of fiduciary duties Refco owed to SPhinX and PlusFunds."  Obj. at 21.  But the Special Master concluded in the Primary Violations R&R that Refco owed no fiduciary duty that "extended to keeping the Plaintiffs informed about its true financial position."  Primary Violations R&R at 37. Plaintiffs objected to the Special Master's conclusion, arguing (as they do, again, here) that Refco's "misrepresentations of [its] financial position" were "breach[es] of fiduciary duty by Refco."  Pls' Objection to Primary Violations R&R at 9.[6]  Again, the Court agreed with the Special Master and adopted the R&R in full, necessarily rejecting the same argument that Plaintiffs raise here.

The Special Master and this Court were right to reject the arguments that Plaintiffs raise yet again now.  There is no basis for a different result on Plaintiffs' claims against the Bank Defendants, who are, as the Special Master observed, even more remotely situated from the alleged wrongdoing than PwC or Mr. Butt.  The Objection does not raise "question[s] of fact for the jury to decide."  Obj. at 6; *see also id.* at 9, 12.  Rather, as the Special Master recognized in the Report, these are basic pleading deficiencies that can be—and already have been—decided as a matter of law.

At the last status conference, the Court asked counsel what it might do to move this case along.  One thing would be for the Court to tell the Plaintiffs, once and for all, that while they are free to preserve dismissed claims for appeal, they should not brief at length (requiring defendants and the Court to address) the same arguments that the Special Master and this Court have already rejected

---

[6] The Krys Plaintiffs' Limited Objection to the Report and Recommendation of Special Master Capra on the Omnibus Issue of Primary Violations by Refco, *Krys v. Sugrue*, No. 08 Civ. 3086 (S.D.N.Y. Mar. 12, 2010) [Dkt. No. 414].

time and time again.  Enough is enough.  Plaintiffs' Objection should be denied, and the Special

Master's Report should be adopted to the extent that it recommends the dismissal of all of Plaintiffs'

claims against Chase and Plaintiffs' aiding and abetting breach of fiduciary duty claim against BAS

and Credit Suisse.[7]

## ARGUMENT

### I.    THE SPECIAL MASTER WAS RIGHT TO RECOMMEND DISMISSAL OF PLAINTIFFS' CLAIMS AGAINST CHASE

The Court has already dismissed claims against SPhinX's auditor (PwC) and the

President of SPhinX's commodity pool operator (Mr. Butt) that were based on their alleged roles

in the transfer of SMFF cash from Refco LLC to unsegregated accounts at RCM (and from RCM

to fund Refco's operations).  The Special Master has also recommended that a similar claim be

dismissed against Deutsche Bank, which served as, *inter alia*, a distributor and prime broker for

SPhinX.  *See* Report & Recommendation of the Special Master on the Deutsche Bank

Defendants' Motion to Dismiss (the "DB R&R") at 34-36, *Krys v. Deutsche Bank Sec. Inc.*, No.

10 Civ. 3359 (S.D.N.Y. Nov. 1, 2011) [Dkt. No. 98].  It is therefore not surprising that the

Special Master found Plaintiffs' claims against Chase to be deficient as well.  After all, Chase

was merely a commercial bank for *RCM*—not for SPhinX—and the central allegations against

Chase relate merely to its "maintaining" (Obj. at 1) the RCM bank account into and out of which

*other parties* are alleged to have transferred SMFF cash.

### A.    Plaintiffs fail to allege that Chase had actual knowledge of any wrongdoing.

The Special Master was right to conclude that Plaintiffs have failed to allege that Chase

had any reason to suspect—let alone had actual knowledge—that there was anything improper

about the transfers of cash SMFF deposited with Refco LLC into and out of RCM's bank

---

[7] BAS and Credit Suisse have separately objected to the Report to the limited extent that it recommends that Plaintiffs' claim against them for aiding and abetting fraud not be dismissed.

account at Chase.  The transfers from Refco LLC to RCM were, as Plaintiffs allege, authorized

by SMFF's own agents—its investment advisor (PlusFunds), its administrator (DPM), and its

commodity pool operator (RAI).  Am. Compl. ¶¶ 193, 196.  Indeed, Plaintiffs acknowledge that

even the supposed "innocent insiders" at SPhinX and PlusFunds knew that the transfers from

Refco LLC's account at another bank into RCM's account at Chase were regularly occurring but

did not believe that there was anything improper about them.  *Id.* ¶¶ 183, 196.

Nevertheless, Plaintiffs contend that somehow Chase was supposed to know (and actually

did know) what SPhinX's and PlusFunds' own management supposedly did not know.  Plaintiffs

raise two main arguments in support of their contention, Obj. at 1, both of which the Court has

already rejected, and both of which are without merit.

First, the Special Master and the Court have already rejected Plaintiffs' argument that

Chase "knew the transfers were unlawful" because "the cash came directly from customer

segregated accounts."  Obj. at 1.  In the Butt R&R, the Special Master remarked that Plaintiffs

fail to explain why "a transfer from a protected to an unprotected account is *ipso facto* a breach

of fiduciary duty—or that such a principle is so obvious that Butt would have to know it."  Butt

R&R at 12; *see also* PwC R&R at 15 ("To know that the transfers were a breach of fiduciary

duty, [PwC] would have had to know that the transfers were unauthorized"); DB R&R at 35

("the fact that segregation was important does not mean that management was barred from

transferring the assets to unsegregated accounts").  Even though "Plaintiffs sufficiently allege[d]

that Butt knew about [SPhinX's] segregation requirements," "knew that transfers of excess cash

were being made from Refco LLC to RCM," and "knew that the transfers to RCM left the excess

cash unprotected from RCM's insolvency," the Special Master concluded—and the Court

agreed—that the allegations were insufficient to demonstrate Butt's actual knowledge of

5

wrongdoing.  Butt R&R at 11 (concluding that it is "significantly less clear that Butt knew that the transfers were in violation of an underlying fiduciary duty owed to SPhinX and PlusFunds").

That conclusion applies with even greater force here.  SMFF deposited funds with Refco LLC, which maintained that money at a bank unaffiliated with Chase.  Am. Compl. ¶ 149 (alleging that Refco LLC maintained customer assets at Harris Bank).  The funds were subsequently transferred from Refco LLC's account at that other bank to RCM's account at Chase.  *Id.* ¶ 193.  Even if a Chase employee had been monitoring RCM's bank account, knew that the cash that Refco LLC transferred into that account had originated with SMFF, knew that the cash was segregated and protected while in Refco LLC's account at the other bank, and realized that the cash would no longer be segregated and protected in the RCM account, there would have been no reason for Chase to believe that the Refco and SPhinX agents who had effected the transfers had done so allegedly without authorization.  As the Special Master put it: "Chase had no reason to investigate whether the transfers of money from an outside account to RCM were authorized, and there is no allegation that Chase undertook an investigation; and even if it had, it would have discovered that the transfers provided value for SPhinX and that the SPhinX offering memorandum provided that SPhinX 'reserves the right to change the prime brokerage and custodian arrangements.'"  Report at 9-10 (footnotes omitted).

Similarly, the Special Master correctly concluded that any claim that Chase knew there was anything improper in RCM's transfer of funds from its Chase account to other Refco entities is contrary to the law of the case:

> In order to sustain an aiding and abetting claim for diverting RCM customer assets to fund Refco's operations, the Plaintiffs must allege with particularity that Chase knew that the transfers of money going out of the RCM account were a breach of Refco's fiduciary duty to SPhinX and PlusFunds.  The Plaintiffs' claims in this regard are foreclosed by the PwC R and R, affirmed by Judge Rakoff.

Report at 10.  In that R&R, the Special Master found that Plaintiffs failed to allege that PwC knew that "Refco had a relationship of trust and confidence with SPhinX/PlusFunds" that supposedly precluded Refco from using the funds at RCM to fund its operations. PwC R&R at 25-27.   Indeed, the Special Master noted that Judge Lynch has determined that many Refco customer accounts "permitted" such "upstreaming" from RCM to other Refco entities and that, therefore, any such "upstreaming" 'did not" even "violate any fiduciary duty supposedly owed by Refco.  Report at 11 (quoting PwC R&R at 25-26 (citing *Kirschner v. Bennett*, 648 F. Supp. 2d 525 (S.D.N.Y. 2009))).

So, too, here, Plaintiffs allege no facts (let alone facts pled with particularity) demonstrating that Chase knew RCM was violating a fiduciary duty or doing anything else improper by permitting the cash transferred to it from Refco LLC to be used by other Refco entities in their day-to-day operations.  Indeed, as the Special Master noted, "[t]he allegations regarding knowledge of the upstreaming as to Chase are even thinner than those regarding PwC or [Deutsche Bank,] both of whom [unlike Chase] provided advisory work for Refco."   Report at 11.

This is especially so given the "extensive case law imposing strict standards for alleging scienter against banks that are alleged to aid and abet by processing transactions in and out of bank accounts." *Id.* at 12 (citing cases).  Large commercial banks like Chase process, every day, millions upon millions of transfers of funds into and out of their customers' accounts.  By necessity, such banks have to operate on the assumption that their customers, such as RCM, have

the authority to accept and to make such transfers. The banking system could not function if commercial banks were tasked with policing whether assets belonging to their customers' customers—such as SMFF—were being kept in the "right" bank account. *See, e.g., In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("banks do not owe non-customers a duty to shield them from intentional torts committed by customers") (citation omitted).[8]

Second, Plaintiffs' arguments concerning Chase's supposed familiarity with "SPhinX's offering materials," "marketing brochure[s]," "Irish Stock Exchange regulations" and other "statutes and regulations," Obj. at 2-7, add nothing. Plaintiffs also raised these same arguments with respect to PwC and Mr. Butt. *See* Obj. to PwC R&R at 28 (arguing that PwC "read SPhinX's offering memoranda and organizational documents" and was "aware of regulatory restrictions on a broker's use of customer cash"); Pls' Obj. to Butt R&R at 9 (arguing that Butt "was intimately familiar with SPhinX and its offering materials"). This Court necessarily rejected those arguments, adopting the Special Master's conclusion that Plaintiffs fail to allege that either PwC or Butt had actual knowledge that SMFF cash had been improperly transferred to non-segregated accounts at RCM.

---

[8] Plaintiffs ignore the reality of modern banking throughout their Objection. For example, Plaintiffs take issue with the Special Master's conclusion that Chase could not have known that cash transfers "effectuated on [their] face by PlusFunds and its administrator DPM" were supposedly improper. Obj. at 11 (citing Report at 10). Plaintiffs contend that "[t]here is *nothing* in the complaint" that "suggests Chase relied on any purported authorization from PlusFunds or DPM." *Id.* at 12. The short answer is that, as the law has long recognized, every bank must assume that a non-customer that allows its funds to be wire-transferred to a customer account at the bank does so knowingly and with full authority. If Chase really had been monitoring the transfers of cash from Refco LLC to RCM (as Plaintiffs would have the Court believe, but as would be entirely inconsistent with normal banking operations), it would have been perfectly reasonable for Chase to conclude—no bank could otherwise function—that the SMFF and Refco LLC agents charged with overseeing the money had authorized the transfers. Chase's customer was RCM, not Refco LLC or SMFF. Banks are not tasked with a "duty to protect non-customers from a fraud involving depository accounts." *In re Agape Litig.*, 681 F. Supp. 2d at 360 (cited in Report at 12-13 (remarking that "the facts supporting scienter against Chase are significantly thinner than those found insufficient in *Agape*")).

Those allegations should be rejected here as well.[9]  As the Special Master noted:

> [A]s with Butt, PwC, and the Deutsche Bank . . . Defendants, the fact that segregation was important does not mean that [SPhinX and PlusFunds] management was barred from transferring the assets to unsegregated accounts in order to obtain some other benefit. . . . [Plaintiffs] do not allege . . . why Chase would have to second-guess the business wisdom of a transaction that was effectuated on its face by PlusFunds and its administrator DPM.

Report at 10 (footnotes omitted).  Plaintiffs offer no reason why this analysis is wrong, let alone why the Court should now so conclude after concluding that it was correct in rejecting Plaintiffs' unsuccessful objections to the Butt and PwC R&Rs.[10]

**B.    Plaintiffs fail to allege that Chase substantially assisted any wrongdoing.**

The Special Master was also right to conclude that, even if Chase had known that the transfers of cash into and out of the RCM account were improper, Plaintiffs fail to allege that Chase substantially assisted any wrongdoing.  Again, Plaintiffs' Objection raises arguments that this Court has already considered and rejected.

---

[9] Plaintiffs also suggest that Chase knew Refco was breaching fiduciary duties to SPhinX, by improperly transferring SMFF cash, because Chase supposedly "knew Refco's financial condition was much poorer than was represented to Refco's customers."  Obj. at 1.  Plaintiffs do not elaborate on this argument in their Objection, and the paragraphs that they cite from their complaint are wholly conclusory.  See, e.g., Am. Compl. ¶ 926 ("Because of Chase's concerns over Refco's financial condition, . . . Chase willingly aided and abetted . . . the diversion and misuse of RCM customer assets, SMFF assets in particular, with knowledge that these assets were being improperly diverted by Refco").  Moreover, the Special Master and the Court have already held that Refco owed no fiduciary duty to keep Plaintiffs informed about Refco's financial condition.  *See infra* at 13-14.

[10] In a footnote at the end of their Objection, Plaintiffs also half-heartedly take issue with the Special Master's recommendation that their claim against Chase for supposedly interfering with actual or prospective contracts should be dismissed.  Obj. at 22 n.10.  But Plaintiffs do not address any of the Special Master's numerous reasons for rejecting this claim against Chase, *see* Report at 24-27, instead simply incorporating by reference their objection to the Special Master's recommendation that the same claim be dismissed against other defendants, Messrs. Kavanagh and Owens—a recommendation that this Court has already accepted, even though those other defendants were SPhinX and PlusFunds insiders.  *See* Mem. Order in *Krys v. Sugrue*, No. 08 Civ. 3086 (S.D.N.Y. Dec. 7, 2011) [Dkt. No. 631].

The Special Master's conclusion, for example, that Chase's "receiving and maintaining SMFF's cash" in the RCM bank account (Obj. at 1) does not constitute substantial assistance follows, *a fortiori*, from the Court's dismissal of the claims against Mr. Butt.  In the Butt R&R, the Special Master concluded that Plaintiffs "utterly failed to plead any act" performed by Butt "that could constitute substantial assistance."  Butt R&R at 14.  Allegations that Butt "'authoriz[ed] or permitt[ed]'" the allegedly improper transfers of cash from Refco LLC to RCM were not enough.  *Id.* at 14 (quoting Butt complaint).  Nor did Butt's "'failing to disclose or object'" to the transfers constitute substantial assistance.  *Id.*

The same analysis applies, even more forcefully, with respect to the claims against Chase.  Plaintiffs allege that *other parties*—not Chase—"caused excess cash to be moved to RCM."  Am. Compl. ¶ 194.[11]  Chase did not have discretion over the RCM account, let alone over the Refco LLC account maintained at a different bank into which SMFF deposited its funds and from which Refco LLC allegedly transferred those funds into the RCM account at Chase.  Plaintiffs allege merely that Chase "maintain[ed]" the RCM account into and out of which the transfers were made.  Just as Mr. Butt's "failing to disclose or object" to these transfers was not substantial assistance, neither was Chase's "remain[ing] silent" when these transfers were effected.  If anything, Plaintiffs' allegations against Chase are even weaker than those against Mr. Butt given the "substantial case law establishing that [a bank's] mere processing of funds

---

[11] Indeed, in the past, Plaintiffs even blamed SMFF itself for "placing [SMFF] deposit[s] in a commingled account at RCM"—which Plaintiffs contend was a "breach of [SMFF's] duties to the Sphinx Cells."  Reply Br. at 14 in *In re Refco Inc.*, No. 06-5786 (2d Cir. Apr. 16, 2007) (Ex. A to the Declaration of Jeremy S. Winer ("Winer Decl."), submitted herewith).  That was back when Plaintiffs were seeking to undo SPhinX's settlement of the preference action whereby SPhinX returned to the Refco estate $263 million of the $312 million it withdrew days before Refco's bankruptcy.  But in *this* lawsuit, they now do a 180 degree about-face and allege that the same SMFF directors "were unaware that hundreds of millions of dollars of SMFF's cash were not maintained in customer-segregated accounts" and "would have taken steps to prevent" the transfers to RCM had they been so aware.  Am. Compl. ¶¶ 101, 183.

through a customer's bank accounts does not constitute substantial assistance of the customer's wrongdoing."  Report at 13-15 (citing cases).

Nor does Chase's alleged "financing [of] Refco's business" constitute substantial assistance.  Obj. at 1.  The Special Master was right to conclude that "extending credit" to Refco was not affirmative assistance in the "Refco Fraud," especially where "[t]here is no allegation that any of the funds extended by Chase were used in any way to implement or assist the transfers into and out of RCM account" or "that the funding by Chase was somehow fraudulent or a false means to prop up Refco."  Report at 15.  Plaintiffs' hypothetical, positing that "Refco would have folded and could not have taken a penny of SMFF's cash" if only Chase "had refused to extend credit to Refco in 2002," does not advance Plaintiffs' argument.  Obj. at 12. For one thing, it assumes that borrowing money *from Chase in particular* was necessary for Refco's existence, as if there were no other banks in the business of extending credit.  For another, it confuses mere but-for cause with proximate cause, which is required for aiding and abetting liability.  *See Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 249 (S.D.N.Y. 1996) ("'But- for' causation does not suffice" for establishing aiding-and-abetting liability), *aff'd*, 152 F.3d 918 (2d Cir. 1998).  And Plaintiffs' assertion that Chase's loans of *its own* funds was part of a "scheme to transfer risk *from Chase* to the customers of an insolvent Refco" (Obj. at 12 (emphasis added)) is beyond comprehension.

The Special Master was also right to deem "frivolous" Plaintiffs' contention that "Chase's $201 million loan to Refco" after disclosure of Refco's hidden financial problems "substantially assisted Refco's breaches of fiduciary duty."  Report at 15.  Plaintiffs contend that the loan "appears economically irrational" and "demonstrates that Chase was willing to do Refco's bidding."  Obj. at 13.  But Plaintiffs do not explain why the loan supposedly was "irrational" or

indicative of fraud.  Indeed, Refco's bankruptcy trustee submitted a sworn declaration to the

Refco bankruptcy court indicating that his "comprehensive" review of the loan transaction

"revealed no evidence to support a claim of fraud or collusion involving [Chase]," and the

bankruptcy court subsequently approved Refco's repayment of the loan in full.[12]  Plaintiffs, who

were notified of the proceedings, did not object in the bankruptcy court.  In any event, as the

Special Master noted, "it is obvious that neither PlusFunds nor SPhinX was harmed by Chase's

loan—for the elementary reason that the proceeds of the loan were used to *pay* SPhinX and

PlusFunds."  Report at 15.

Finally, Plaintiffs assert that Chase substantially assisted the "conversion" of SMFF funds

by "supporting Refco's fraudulent IPO."  Obj. at 14.  The IPO raised $258.5 million for Refco

that benefitted Refco and its creditors, including SMFF.   Am. Compl. ¶ 907.  Plaintiffs' claim

that the IPO harmed Plaintiffs, much less "converted" SMFF's funds, is incomprehensible.  *See*

*Kirschner v. Grant Thornton LLP*, No. 07 Civ. 11604, 2009 WL 1286326, at *9 (S.D.N.Y. Apr.

14, 2009) ("The IPO injected hundreds of millions of dollars of capital into Refco Inc."), *aff'd,*

*Kirschner v. KPMG LLP*, 626 F.3d 673 (2d Cir. 2010); *see also American Tissue, Inc. v.*

*Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 93 (S.D.N.Y. 2004) ("[T]he equity

infusion itself certainly did not [harm ATI (the issuer)].  To the contrary, ATI benefitted; it

gained $25 million in equity.  Under no theory can that be characterized as an injury to ATI.").

---

[12] *See* Decl. in Support of Mot. for Order Approving Settlement Between RCM and Chase, ¶ 6, *In. re Refco Inc.*, No. 05-60006 (Bankr. S.D.N.Y. Nov. 21, 2006) (Winer Decl. Ex. B); Order Approving Settlement Agreement Between RCM and Chase at 1, *In re Refco Inc.*, No. 05-60006 (Bankr. S.D.N.Y. Dec. 12, 2006) (Winer Decl. Ex. C).

## II. THE SPECIAL MASTER WAS RIGHT TO CONCLUDE THAT PLAINTIFFS FAIL TO ALLEGE BAS'S AND CREDIT SUISSE'S ACTUAL KNOWLEDGE THAT REFCO WAS BREACHING ANY FIDUCIARY DUTIES TO SPHINX OR PLUSFUNDS.

Plaintiffs' claim that BAS and Credit Suisse aided and abetted a breach of fiduciary duty owed by Refco to SPhinX and PlusFunds is specious.  As the Special Master noted, "there is no allegation" in the Amended Complaint that BAS or Credit Suisse "had anything to do with the [allegedly] unauthorized transfers of SMFF cash from protected accounts at Refco LLC to unsegregated accounts at RCM."  Report at 2.  None of the relevant accounts—those at Refco LLC into which SMFF deposited cash, those at RCM into which those funds were transferred, or those at other Refco entities that subsequently received funds from RCM—were maintained at BAS or Credit Suisse.  Plaintiffs do not even allege that anyone at BAS or Credit Suisse knew that SPhinX had deposited money at Refco LLC, let alone that Refco LLC had transferred any such cash to RCM, or that any such transfers supposedly were improper.  Put simply, "[t]here is no allegation that Credit Suisse or BAS knew that SPhinX or PlusFunds had any relation at all with Refco, much less that there was a relationship of trust and confidence."  Report at 19.

The Special Master was, therefore, correct to conclude that Plaintiffs' claim was "even weaker" that either BAS or Credit Suisse had actual knowledge that Refco was improperly "upstreaming" SMFF assets from RCM or otherwise breaching a fiduciary duty to SPhinX or PlusFunds.  Report at 19.  None of Plaintiffs' arguments to the contrary is availing.

 First, Plaintiffs' argument that BAS and Credit Suisse knew that Refco owed fiduciary duties to SPhinX and PlusFunds because "Refco was insolvent" (Obj. at 18) has—like Plaintiffs' arguments concerning Chase—already been considered and repeatedly rejected by both the Special Master and this Court.  Indeed, Plaintiffs acknowledge as much, albeit only in a footnote.  Obj. at 20 n.9 ("Plaintiffs acknowledge that the Special Master and this Court did not accept the

'zone of insolvency' theory of fiduciary duty.").  As the Special Master wrote in the PwC R&R

(which the Court subsequently adopted in full):

> The Plaintiffs' allegation that Refco had a fiduciary duty to SPhinX and PlusFunds based on operating while insolvent has been rejected by the Special Master – *see* Primary Wrongs R and R at 34-36.  So the Plaintiffs' claims [against PwC for aiding and abetting breaches of fiduciary duty] fail for failure to allege a primary wrong, insofar as they are based on [Refco's] operating while insolvent.

PwC R&R at 25.  This Court long ago accepted the Primary Violation R&R (as well as the PwC

R&R).  There is no reason for this Court to revisit that ruling now.

Second, the Court likewise has rejected the argument—raised, yet again, by Plaintiffs in

their Objection—that "Refco's fraudulent concealment and affirmative misrepresentations of its

true financial condition . . . were breaches of fiduciary duties" by Refco.  Obj. at 21.  While such

conduct by Refco may have constituted fraud (at least as to those who reasonably relied on such

concealment or affirmative misrepresentations), it did not constitute a breach of fiduciary duty.

As the Special Master put it in the Primary Violations R&R, Plaintiffs "make no serious attempt

to show that Refco had a fiduciary duty *that extended to keeping the Plaintiffs informed about its

true financial condition.*"  Primary Violations R&R at 37 (emphasis in original).  The Court

adopted the Special Master's Primary Violations R&R in full, necessarily rejecting the argument

that Plaintiffs raise here.  Plaintiffs, therefore, cannot even establish that Refco's alleged

omissions and misrepresentations constituted a breach of fiduciary duty, let alone that BAS and

Credit Suisse aided and abetted any such breach.

Finally, Plaintiffs suggest that BAS and Credit Suisse "would have learned" from its co-

underwriter Deutsche Bank that SMFF assets were not supposed to be at RCM.  Obj. at 19.  But

an aiding and abetting claim must be predicated on specific facts demonstrating that the

defendant actually knew of the primary violation, not mere speculation as to what the defendant

14

"would have learned."  *Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 576

(S.D.N.Y. 2011) (allegation that defendant "would have learned" of a fact is insufficient to

demonstrate defendant's actual knowledge of the fact).  In any event, the Special Master has

already concluded that Deutsche Bank had no reason to know that SPhinX "management was

barred from transferring [SMFF] assets to unsegregated accounts."  DB R&R at 35.  Obviously,

BAS and Credit Suisse would not have learned from Deutsche Bank that the transfers were

improper if Deutsche Bank itself did not believe them to be.

## CONCLUSION

Defendants respectfully request that, as it has already done before on several occasions,

the Court reject the arguments raised in Plaintiffs' Objection.


Dated: New York, New York       WILMER CUTLER PICKERING
       January 5, 2012                  HALE AND DORR LLP

                                By:  /s/ Philip D. Anker
                                     Philip D. Anker
                                     (philip.anker@wilmerhale.com)
                                     Peter J. Macdonald
                                     Jeremy S. Winer
                                     Ross E. Firsenbaum
                                     399 Park Avenue
                                     New York, New York 10022
                                     Tel: (212) 230-8800
                                     Fax: (212) 230-8888

                                     *Attorneys for Defendants Merrill Lynch,
                                     Pierce, Fenner & Smith Incorporated, as
                                     successor by merger to Banc of America
                                     Securities LLC, Credit Suisse Securities
                                     (USA) LLC, and JPMorgan Chase & Co.*