```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE REFCO SECURITIES LITITATION,    07 MDL 1902 (JSR)

------------------------------x       Conference

                                      New York, N.Y.
                                      December 14, 2011
                                      4:30 p.m.
Before:

        HON. JED S. RAKOFF

                                      District Judge



           APPEARANCES


DANIEL J. CAPRA
RONALD J. HEDGES
     Special Masters


BEUS GILBERG PLLC
     Attorneys for Krys plaintiffs
BY:  LEO R. BEUS


BROWN RUDNICH
     Attorneys for Krys plaintiffs
BY:  DAVID MOLTON


WILMER CUTLER PICKERING HALE and DORR LLP
     Attorneys for defendants
BY:  PHILIP D. ANKER


DAVIS POLK & WARDWELL LLP
     Attorneys for Defencants Ingram Micro CIM Ventures
BY:  ROBERT F. WISE, JR.
```

                APPEARANCES


WINSTON & STRAWN LLP
     Attorneys for Grant Thornton defendants
BY:  CATHERINE W. JOYCE


PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
     Attorneys for THL defendants
BY:  PHILIP WYNN


MILBANK, TWEED, HADLEY & MCCLOY LLP
     Attorneys for Marc Kirschner as Refco Litigation Trustee
BY:  NICOLE VASQUEZ SCHMITT


QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
     Attorneys for Marc Kirschner as Refco Litigation Trustee
BY:  SASCHA N. RAND


GIBSON DUNN & CRUTCHER LLP
     Attorneys for Defendants Kavanagh and Owens
BY:  MITCHELL KARLAN


MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.
     Attorneys for Defendant Robert Trosten
BY:  GATES S. HURAND


PARK & JENSEN LLP
BY:  BARRY H. JUNKER


CHADBOURNE PARK LLP
     Attorneys for Defendant Schulte Roth & Zabel
BY:  SCOTT S. BALBER


LOWENSTEIN SANDLER LLP
BY:  ELLIOT STEIN


MARINO, TORTORELLA & BOYLE, P.C.
     Attorney for Defendants Liberty Corner and William Pigott
BY:  KEVIN H. MARINO

```
 1                   APPEARANCES

 2

    WEIL GOTSHAL & MANGES LLP
 3       Attorneys for THL defendants
    BY:  VERNON BRODERICK
 4

 5  DLA PIPER LLP
         Attorneys for DTM defendants
 6  BY:  JOHN PENDLETON, JR.

 7

    LINKLATERS LLP
 8       Attorneys for Deutsche Bank defendants
    BY:  JAMES WARNOT
 9

10  MORGAN, LEWIS & BOCKIUS LLP
         Attorney for Defendant PriceWaterhouseCoopers LLC
11  BY:  KENNETH J. TURNBULL

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           (Case called)

2           THE COURT:  Good afternoon.  That's all?  Welcome
3   back.  I really missed you guys.  I planned for the special
4   masters, who have been doing such a good job.  The reason I
5   thought it would be useful to all get together is because I do
6   think we are on the verge of bringing this combination of cases
7   to something approaching an ending.

8           In particular, as Special Master Hedges has let you
9   know, the Court has determined that all discovery in these
10  cases will be completed by the end of September.  I actually
11  had thought that the end of August would be sufficient, but
12  Special Master Hedges really whipped me into shape, so I broke
13  down and said end of September. But that's it.  That is firm
14  and final.

15          What I wanted to hear from you is what I can do to be
16  of help to move these cases forward.  One thing, of course, is
17  to rule on the matters that you have already argued before me.
18  The special masters have each told me, and I'll ask them to
19  give me a brief report as well, but they have told me that they
20  on their end are going to continue to move things with great
21  expedition, as they have already, so that they will get to me
22  everything that I need.  And I will endeavor similarly to turn
23  around things more quickly than I have in the past in terms of
24  getting decisions to you.

25          I know there are some disputes about aspects of the

1 discovery schedule, not the bottom-line closing date but
2 aspects of it, and those will be resolved by Special Master
3 Hedges. There is also at least one or two things sitting in
4 the Second Circuit, which of course will exercise due diligence
5 and get us a decision by 2015 or so. But there is nothing much
6 we can do about that. Everything else I want to move forward.
7       I really wanted to hear from you folks as to anything
8 you wanted to bring to my attention that would help you to meet
9 that deadline and that otherwise would be relevant. Also,
10 since the one case we had set for trial got resolved, if there
11 are other cases that we can use as sort of a trial trial, so to
12 speak, that would be a good thing to start scheduling as well.
13       Let me hear first from the special masters. I was
14 going to say in order of age, but I don't know. Anyway, I'm in
15 no position to cast that stone.
16       SPECIAL MASTER HEDGES: Your Honor, as you say, there
17 is light at the end of the tunnel. I'm working right now on
18 the motion to dismiss brought by Grant Thornton. I should have
19 that done by the end of the week or, if not, by the end of the
20 year it will be done.
21       Then comes the motion business by Mayer Brown. This
22 is in the Krys action. Then comes the motion to dismiss by the
23 remaining ones who have actually filed a motion to dismiss by
24 the round-trip loan defendants. Those I think are following a
25 pattern, as you know, and I think fitting that pattern will

1  kind of speed this up.

2           Then there are two that are kind of outliers in terms
3  of that pattern that are not the Krys matters.  There is a
4  counterclaim brought by Aaron that has been, my understanding,
5  fully briefed, not yet argued.  It does need to be argued.  I
6  don't want to do the argument yet.  It doesn't make sense if
7  I'm still working on these three things.

8           Then the malpractice action brought against Schulte
9  Roth by the Krys plaintiffs, which has been fully argued,
10 because it's kind of outside the pattern of the defendants who
11 are defending aiding and abetting claims, I thought that would
12 be the best way to structure.

13          I think I'll be done with that.  Don't hold me in
14 contempt for failing to meet this date, your Honor, but March
15 1st should be the end of that.

16          THE COURT:  I can't, of course, give you any assurance
17 about contempt, but March 1st sounds good.

18          SPECIAL MASTER CAPRA:  There are a couple, if I may,
19 your Honor, of outliers that I'm not sure about.  There was a
20 motion to dismiss filed on December 8th.  Was that a personal
21 jurisdiction motion?  I think it is in the Krys v. Aaron.

22          MR. PENDLETON:  I think it is Andrew Feighery, the
23 third-party defendant, who has just filed a motion to dismiss.
24 We have actually been in touch with his counsel.  Our papers in
25 opposition to that, Judge, would be due on the 27th.  He was

1  amenable to giving us two weeks or until January 10th to file
2  our position to that motion, if that's OK with the Court.
3              THE COURT:  OK.  No more.
4              MR. ANKER:  Thank you, Judge.
5              SPECIAL MASTER CAPRA:  There may be things that come
6  up from time to time.  That just came up on December 8th.
7              THE COURT:  Very good.  Now let me hear from Special
8  Master Hedges.
9              SPECIAL MASTER HEDGES:  I believe you have Mr. Anker's
10 letter of yesterday.
11             THE COURT:  Yes.
12             SPECIAL MASTER HEDGES:  With that also there is a
13 proposed form of order that the parties worked out after some
14 26 meet-and-confers or the equivalent.  There are a couple of
15 matters left over that I need to sit down with counsel and
16 resolve, unless your Honor wants to do that now.
17             THE COURT:  No.  Much as I would be delighted to do
18 that, I need to defer to the experience of our special master.
19             SPECIAL MASTER HEDGES:  When you're done, Judge, if I
20 could spend some time with them.
21             THE COURT:  Yes.  Excellent.
22             Let me hear from counsel as to anything you want to
23 bring to my attention.
24             MR. BEUS:  I don't think we have anything to add.
25             THE COURT:  All right.

1      MR. ANKER:  Same for the defendants, your Honor.

2      THE COURT:  Then I thank you so much for making

3 yourself available.  Do you want to use this courtroom?  We

4 have other matters going on.

5      SPECIAL MASTER HEDGES:  Whatever is convenient for

6 you.

7      THE COURT:  Hang on a minute.  We'll look across the

8 hallway.  I think Judge Cedarbaum's courtroom is available.

9      Which case, if any, assuming it were appropriate for

10 this Court to try it in an MDL, which case would be the first

11 case ready for trial?

12      SPECIAL MASTER HEDGES:  Mr. Karlan?

13      MR. KARLAN:  I'm not on trial yet, Judge.  I haven't

14 been indicted yet.

15      SPECIAL MASTER HEDGES:  I understand.  Things may

16 happen.  After the last discovery ruling we had, and I kind of

17 limited discovery, you're it, aren't you, the next case?

18      MR. KARLAN:  Are you referring to Krys v. Sugrue, your

19 Honor?

20      SPECIAL MASTER HEDGES:  Yes.

21      MR. KARLAN:  I don't know anything about the other

22 matters that are in the MDL.  With respect to Krys v. Sugrue, I

23 think there are two questions, and perhaps they are not ripe

24 today, but I'll raise them for your consideration.  One is

25 whether your Honor intends to have what I am confident will be

1  the series of summary judgment motions that will be filed at
2  the close of discovery or perhaps much sooner referred first to
3  Special Master Capra, as we did with the motions to dismiss,
4  because I think that will have some impact.
5             THE COURT:  The answer to that is, all other things
6  being equal, that would be the path I would go.  But if it
7  seems like it's going to delay thing inordinately, then I
8  might, throwing wisdom to the winds, undertake to decide those
9  motions myself in the first instance without an R and R.
10            All of you have been working hard, and I have no
11 complaint whatsoever as to the assiduousness of counsel in this
12 case.  I'm blessed with having so many fantastic counsel.  But
13 I'm just a little concerned.  This is a 2007 MDL.  It's now
14 2011.  I don't have any other case on my docket that is
15 remotely as old.  Of course, this is old because it's so
16 complicated, there are so many cases, there are so many
17 interlocutory appeals.
18            One of my mentors was Milton Pollack, and if he were
19 still alive, which would have been a real possibility, since he
20 lived to 97, he would have been ashamed of me.  He would have
21 said, how come you didn't finish this by December 2007?
22            In all seriousness, I do want to move it along.
23 Having said that, the preference would be in the first instance
24 to send those motions to the special master.
25            MR. KARLAN:  I'm confident, having spoken to many of

1    my colleagues, that I'm not alone in intending to move at the
2    earliest possible opportunity, probably before discovery is
3    over, for summary judgment.
4              THE COURT:  You're free to move for summary judgment
5    at any time, but you won't necessarily get two bites at that
6    apple.
7              MR. KARLAN:  Understood, Judge.  That sort of segues
8    into what I think is the other issue for your Honor's
9    consideration, probably not today, and that is whether in the
10   Krys v. Sugrue case your Honor will conclude that it is fair to
11   the defendants here to have one trial in what is really four or
12   five different cases that have been pled in a sort of an *uber*
13   complaint.
14             THE COURT:  I certainly don't have a view of that at
15   the moment.
16             MR. KARLAN:  Understood.
17             THE COURT:  Just out of curiosity, for one big trial,
18   how long would that be?  And if it were five small trials, how
19   long would they be?
20             MR. KARLAN:  I'll stick my neck out here.  The trial
21   that I think my clients belong in, if there should be a trial,
22   would be one that did not involve those defendants who are now
23   in prison who were affiliated with Refco, would not involve the
24   bank defendants, and would not involve the accounting firm
25   defendants.  What's left of the defendants I think your Honor

1   could try in ten court days.

2           MR. ANKER:  Your Honor, Philip Anker for the bank
3   defendants.  I have a slightly different perspective than Mr.
4   Karlan does, and I don't like to punt when asked a question by
5   a judge or by anyone else.  Discovery of the SPhinX plants --

6           THE COURT:  It's OK to punt.  Just don't say that you
7   refuse to admit or deny.

8           MR. ANKER:  I am admitting that I am punting.  I am
9   not refusing to admit or deny.  I understand the implications
10  of that in this courtroom.

11          Discovery of the plaintiffs' theory of the case of
12  what SPhinX did and did not do is about to commence.  From my
13  perspective, I don't think we are in a position to give the
14  Court a meaningful and a helpful answer to both the timing
15  question and can one try this case all together or is it
16  multiple trials at this juncture.

17          As we get into discovery, we should be in a much
18  better position to have an informed judgment.  And I know that
19  we as defense counsel will confer among ourselves and will be
20  happy to chat with Mr. Beus and come back before the Court and
21  give the Court our views on that question.

22          THE COURT:  I do think it is premature for me to
23  address this further at this time.  From a judicial resources
24  perspective, I've learned that it really doesn't make much
25  difference whether it's a bunch of short trials or one very

1    long trial. I don't have an institutional preference, so to
2    speak, either way. I just want to know what makes the most
3    sense.
4              Anyone else want to raise anything?
5              SPECIAL MASTER HEDGES: Judge, another matter brought
6    up in the letter of yesterday. Kirschner v. Bennett seems to
7    be getting close to a trial date or ready for trial date.
8    Everybody is standing up.
9              MR. KARLAN: Kirschner is the only one in Grant
10   Thornton. There is one claim left.
11             THE COURT: Which you are about to --
12             MR. KARLAN: No, it's done.
13             MS. JOYCE: Cathy Joyce. We have a schedule in that
14   case that has summary judgment briefing through the end of
15   April, and then we'll need a ruling on summary judgment. There
16   has not been a trial date yet set in the case.
17             THE COURT: We could set a trial date in that case
18   today, yes?
19             MR. RAND: Sascha Rand on behalf of the Refco private
20   actions trustee. Yes, we could. Summary judgment should be
21   fully briefed by the end of April, and we hope for an expedient
22   decision from your Honor and then a trial date.
23             SPECIAL MASTER CAPRA: Might I interject, your Honor?
24   I don't know if you want to hear that summary judgment motion,
25   but in April I could hear that. There shouldn't be much before

1     me.

2             MS. JOYCE:  The current schedule for summary judgment
3     is reply briefs going in on April 30th.

4             THE COURT:  I'm assuming the special master could have
5     a recommendation on that by, say, third week of May?

6             SPECIAL MASTER CAPRA:  Three weeks from that, yes.

7             THE COURT:  Yes.  Why don't we set a trial date.  How
8     long a trial are we talking about, assuming summary judgment
9     was denied in all respects?

10            MR. RAND:  We are thinking two to three weeks, your
11    Honor.  I'm well aware of your ability to move things along.  I
12    would try to anticipate two to three weeks.  There are a number
13    of witnesses from Grant Thornton and the company that would be
14    called as well as some FX customers witnesses and experts.

15            THE COURT:  Counsel agrees?

16            MS. JOYCE:  I agree.

17            THE COURT:  I can give you any of the following dates:
18    June 20th, July 5th, or August 1st.

19            MR. RAND:  Your Honor, with the Court's indulgence, I
20    would love to be able to confer with my senior partner on the
21    matter who will be trying the case as the first chair.  If your
22    Honor would permit me that indulgence, I'd appreciate it.  I
23    can get right back to the court and the special master.

24            THE COURT:  That's fine.  Your adversary may want to
25    do so as well.  But it's got to be one of those three dates.

1    If you can agree mutually, call me no later than next Tuesday
2    with your agreement.  If you disagree, call anyway, and I'll
3    then resolve it.  But it's going to have to be one of those
4    three dates.
5             MR. RAND:  Should we advise Special Master Hedges or
6    chambers directly?
7             THE COURT:  Call chambers directly.
8             MR. RAND:  Will do.
9             MS. JOYCE:  Thank you.
10            THE COURT:  Anything else?  Thank you all very much.
11   All of you need to follow the noble special master to Judge
12   Cedarbaum's chambers.
13            (Adjourned)
14
15
16
17
18
19
20
21
22
23
24
25