**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                               :
In re REFCO, INC. SECURITIES LITIGATION        :    07-MD-1902 (JSR)
                                               :
                                               :
                                               :
------------------------------------------------------------x
                                               :
                                               :
KENNETH M. KRYS, ET AL.,                       :
                                               :
                Plaintiffs,                    :
                                               :
         v.                                    :    08-CV-3086 (JSR)
                                               :
CHRISTOPHER SUGRUE, ET AL.,                    :
                                               :
                Defendants.                    :
                                               :    ECF Filed
------------------------------------------------------------x
```

**DECLARATION OF JOHN S. WILLIAMS IN SUPPORT OF THE
MAYER BROWN DEFENDANTS' LIMITED OBJECTION TO THE
REPORT AND RECOMMENDATION OF THE SPECIAL MASTER ON THE
MOTIONS TO DISMISS BROUGHT BY THE MAYER BROWN DEFENDANTS**

I, JOHN S. WILLIAMS, declare as follows:

     1.     I am an associate at the law firm of Williams & Connolly LLP, attorneys for Defendants Mayer Brown LLP and Edward S. Best in the above-captioned matter, and have been admitted *pro hac vice* in this matter. I submit this declaration in support of the Mayer Brown Defendants' Limited Objection to the Report and Recommendation of the Special Master on the Motions to Dismiss Brought by the Mayer Brown Defendants.

     2.     Attached hereto as Exhibit 1 is a true and correct copy of a draft memorandum from Joseph Collins and Ross Pazzol to Stephen Keating, dated October 11, 2005 (MB02441374–80).

3.  Attached hereto as Exhibit 2 a true and correct copy of an email from Joseph P. Collins to Santo C. Maggio, Dennis A. Klejna, and Stephen Keating dated June 24, 2002, attaching a draft memorandum also dated June 24, 2002 (REFCO-E-002464308–12).

4.  Attached hereto as Exhibit 3 is a true and correct copy of email correspondence from Joseph P. Collins to Thomas Yorke, carbon copied to Santo Maggio, dated January 25, 2005 (MB02173877–78).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: Washington, D.C.
       January 27, 2012

/s/ John Williams
John S. Williams (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000

*Attorney for Defendants Mayer Brown LLP and Edward S. Best*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 27th day of January 2012, a copy of the foregoing Declaration of John S. Williams in Support of the Mayer Brown Defendants' Limited Objection to the Report and Recommendation of the Special Master on the Motions To Dismiss by the Mayer Brown Defendants was filed with the Court through the CM/ECF system. The foregoing was served on counsel of record via the Court's CM/ECF system.

                                            /s/ John Williams
                                            John Williams

# EXHIBIT 1

Draft: 10/11/05

# MEMORANDUM

October ___, 2005

**TO:**      Stephen Keating

**FROM:**    Joseph Collins
             Ross Pazzol

**RE:**      Refco Capital Markets, Ltd.

---

### I. Background.

Refco Securities, LLC. ("RSL") is registered as a broker-dealer with the Securities and Exchange Commission (the "SEC") under the Securities Exchange Act of 1934, as amended (the "Act") and is a member of the National Association of Securities Dealers, Inc., the Chicago Board Options Exchange, Incorporated, the Pacific Exchange and the Philadelphia Stock Exchange. Refco Capital Markets, Ltd. ("RCM") is organized under the laws of Bermuda and acts principally as a broker and as a dealer in foreign currency and in structured derivative products.

RCM executes transactions with, and provides prime brokerage and financing services for, certain non-U.S. accounts introduced to it by RSL. More specifically, RCM engages in the following activities:

### A. Foreign Exchange ("FX").

RCM engages in FX trading as a dealer and maintains trading lines with leading dealers in the interbank FX market. RCM also provides FX clearing, margining and custodial facilities for Refco FX Associates, LLC and for other smaller FX dealers.

### B. Derivative Trading.

RCM provides secured loans and conducts the derivative trading often associated with structured transactions. Most of the derivatives used are total return swaps on baskets and indices of securities. Some long-dated options are written on these same indices and baskets.

### C. Emerging Market Debt.

RCM's trades emerging market debt and engages in related lending and borrowing transactions. All of the customers in these transactions are non-U.S. persons, and a registered broker-dealer in Miami generally acts as an agent for both RCM and the customer in these

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP


Stephen Keating
October __, 2005
Page 2

transactions. There are no common customers of RCM and RSL for these transactions, and all of the RCM customers are non-U.S. persons.

### D. **Financing**.

RCM provides financing for some non-U.S. persons on equity portfolios by means of total return swaps written on these portfolios. The portfolios contain some U.S. equities.

### E. **Equity Trading**.

For a small portion of clients (principally an Italian institutional client), RCM buys and sells securities (including U.S. securities) and serves as the prime broker for those clients.

### F. **Convertible Trading**.

RCM trades convertible debt securities for some non-U.S. customers. The activities consist of selling stock or a convertible debt instrument under Regulation D, Regulation S, or an existing shelf registration or pursuant to a prospectus in a registered offering.

## II. **Operations**.

RSL provides RCM with the personnel, data-processing services and other facilities required to permit RCM to carry customer and proprietary accounts and clear the securities transactions effected in these accounts. In this regard, RSL issues and delivers trade confirmations and reviews documentation necessary to complete comparisons of transactions listed on RCM's end-of-day records. RSL also computes and produces calculations of RCM's customers' current and pending settlement obligations, and all other calculations as are necessary to permit RCM to balance, monitor and reconcile all positions for RCM's customer and proprietary accounts. Further, RSL monitors RCM's customer accounts for purposes of requiring customers to remit payment for purchases, deliver securities sold and transfer securities to and from their accounts against payment or receipt of funds. RSL also provides RCM with custody services for U.S. securities which RCM may require from time to time. All of these accounts are carried on the books of RCM, and RSL acts as a liaison between RCM and these accounts.

RCM no longer maintains any personnel or operations in Bermuda, and that all of its functions and operations are performed by RSL personnel that are located in the United States. In view of this development, you have inquired whether RCM may continue to operate in the manner described above without registering as a broker-dealer with the Securities and Exchange Commission (the "SEC").

## III. **Discussion**.

Section 15 of the Act generally provides that it is unlawful for any broker or dealer to make use of the mails or any other means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security unless such broker or dealer is registered as such with the SEC. By its terms, this registration requirement is

CHDB03 9044938.5 11-Oct-05 12:00

**MB02441375**

**CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP**

applicable even to brokers and dealers that do not conduct business from a physical location in the United States. However, the broad scope of this requirement is limited by Section 30(b) of the Act which provides, in relevant part, that "the provisions of this title or of any rule or regulation thereunder shall not apply to any person insofar as he transacts a business in securities without the jurisdiction of the United States, unless he transacts such business in contravention of such rules and regulations as the SEC may prescribe as necessary or appropriate to prevent the evasion of his title." Thus, to the extent that RCM is deemed to be conducting a business in securities "without the jurisdiction" of the United States, it will not be required to register under the Act.

To date, the SEC has not promulgated any rules or regulations pursuant to Section 30(b) of the Act. It also has not provided any guidance on the circumstances under which a person will be deemed to be conducting a securities business "without the jurisdiction" of the United States. As a general matter, the courts that have considered this issue use a "conduct" or "effects" test to analyze whether a person's activities are subject to the provisions of the Act. As discussed below, these courts generally have held that where a person: (1) has engaged in "significant" conduct in the United States; or (2) has engaged in conduct outside the United States that has a "significant" effect in the United States, then that person will be subject to the provisions of the Act.

For example, in SEC v. United Financial Group, Inc., [1972-1973 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶93,747 (9th Cir. 1973), the court analyzed whether the activities of certain offshore investment companies controlled by a United States-based holding company were subject to the provisions of the Act. In making this determination, the court noted that the activities of these companies were directed and controlled by their United States-based holding company. Further, the United States mails and other facilities of interstate commerce were used to prepare and distribute prospectuses for the investment companies, to set up sales meetings and to consummate investment transactions. Moreover, these investment companies advertised their securities for sale in overseas editions of United States newspapers, and sold their securities to United States citizens living abroad. Accordingly, the court held that the investment companies were engaged in "significant" conduct within the United States and were thus subject to the provisions of the Act.

A person also may be engaged in "significant" conduct in the United States when it repeatedly uses the United States mails and other facilities of interstate commerce to communicate with others with respect to a securities transaction and the transaction is closed in the United States, even if the securities in question are foreign securities. In Travis v. Anthes Imperial Limited, et al., 473 F.2d 515 (8th Cir. 1973), United States resident shareholders of a Canadian corporation successfully brought a Rule 10b-5 action against another Canadian corporation for making misleading statements in connection with the corporation's tender offer for their shares. The court noted that although some significant steps in the defendant's fraudulent scheme took place in Canada, the defendant also repeatedly made misleading statements to the plaintiff about the tender offer by using the United States mails and other instrumentalities of interstate commerce and that the sale of the plaintiff's shares to the defendant

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

closed in the United States. Accordingly, the court held that the defendant engaged in "significant" conduct in the United States and was thus subject to the provisions of the Act.

Conversely, a defendant may not be engaged in "significant" conduct in the United States where the transaction in question is "predominantly foreign." In Fidenas AG v. Compagnie Internationale, 606 F.2d 5 (2nd Cir. 1979), the court analyzed whether it had jurisdiction over a case in which a Swiss company sold phony securities to another Swiss company in a series of transactions consummated in Switzerland. The court noted that the defendant's only connection to the United States was based on the plaintiff's contention that the defendant's main office was located in the United States and that persons working in that office knew of the fraudulent transactions. The court stated that, even assuming the defendant's assertion were true, jurisdiction would be lacking because the transaction was "predominantly foreign." In particular, the court noted that the plaintiff and defendant were foreign and that any activities in the United States were essentially ancillary to the fraudulent conduct that occurred in Switzerland. Accordingly, the court held that any minor activity which may have occurred in the United States did not justify subjecting the defendant to the provisions of the Act, particularly where the defendant's alleged misconduct took the form of culpable nonfeasance.

Finally, it is important to note that in analyzing whether a person has engaged in fraudulent conduct under Rule 10b-5, one court has held that an analysis of whether a person engaged in "significant" conduct in the United States depends on whether the persons affected by such conduct are United States citizens or foreigners. In Bersch v. Drexel Firestone, Inc., 519 F.2d 974 (1975), the court analyzed whether certain activity conducted in the United States to prepare for a public offering of a Canadian corporation's stock to overseas investors was sufficient to subject the defendants to the provisions of the Act. The court stated that "[while merely preparatory activities in the United States are not enough to trigger application of the securities laws for injury to foreigners located abroad, they are sufficient when the injury is to Americans so resident." Id. at 992. Accordingly, the Court held that the Act did not apply to the sale of the company's stock to foreign purchasers.

Although we have not engaged in an exhaustive review of the relevant case law, it appears that RCM will be deemed to be engaged in "significant" conduct in the United States. Similar to the situation in United Financial Group, RCM's activities are directed and controlled by persons that are located in the U.S. In this regard, all transactions conducted by RCM are negotiated and executed by RSL personnel in the name of RCM without the need for further approval by RCM personnel that are located outside the U.S. Moreover, all RCM operations are conducted by RSL and RCM does not posses any operations or facilities which are available to assist RCM in conducting these transactions. Because RCM personnel located outside the U.S are not involved in these transactions in any respect, it seems difficult to avoid the conclusion that RCM is engaged in significant conduct within the United States. Therefore, it appears that the exemption from broker-dealer registration provided under Section 30(b) of the Act will not be available to RCM.

Given the limited amount of guidance available with respect to the scope of Section 30(b), it may be useful to analyze other guidance the SEC staff has provided in similar, but not identical, situations. For example, in a 1986 exemptive order issued to Citicorp and its registered

broker-dealer subsidiary Vickers da Costa Securities, Inc. ("Vickers"),[1] the SEC permitted various Citicorp subsidiaries that were unregistered foreign broker-dealers ("Citicorp's Foreign Dealers") and Vickers to enter into an arrangement in which Vickers would act as a broker or as riskless principal in transactions ultimately between Vickers' U.S. customers and Citicorp's Foreign Dealers.

Vickers was a NASDAQ market-maker in certain foreign securities and American Depositary Receipts on such securities. As such, Vickers was required to continuously display bid and ask quotations for these securities and buy and sell these securities for its own account at its displayed quotations. For each security in which Vickers acted as a market maker, Citicorp's Foreign Dealers would place standing purchase and sale orders with Vickers each week before the opening of trading in the United States. Thus, the quotations Vickers published in the NASDAQ system always reflected the orders placed with Vickers by Citicorp's Foreign Dealers. As a result, Vickers' activities were limited to executing any orders received from U.S. customers against the standing orders placed by Citicorp's Foreign Dealers.

In its exemptive order, the SEC allowed Citicorp's Foreign Dealers to buy and sell securities through Vickers without requiring them to register as broker-dealers in the United States. However, the SEC required Citicorp's Foreign Dealers to limit their control over the price and size of their standing orders in order to permit Vickers to have some discretion over the execution of these orders. The purpose of this restriction was to permit Vickers to take independent positions and thus preclude it from acting as a mere conduit for Citicorp's Foreign Dealers.

In the Citicorp/Vickers letter, the SEC staff did not require Citicorp's Foreign Dealers to register as broker-dealers with the SEC on the grounds that Vickers exercised some independent control over its operations. In contrast, RSL personnel make all of the trading decisions and perform all of the operations for RCM. Accordingly, we believe that the SEC staff would not be likely to take the view that RCM's operations are separate and distinct from those of RSL.

Further, in analyzing RCM's operations, Refco must consider previous statements made by the SEC staff regarding the use of foreign entities as "booking" locations to avoid U.S. regulatory requirements. For example, the application of certain SRO transaction reporting rules and SEC transaction fee requirements vary depending on whether a transaction is deemed to have been effected in the United States.

The SEC staff has stated that it would be a violation of these requirements for persons located in the United States to negotiate all of the terms of a transaction in the U.S. and then "book" the transaction to a foreign entity in order to avoid these requirements.[2] While we cannot be certain, it seems likely that the SEC staff would take a similar view with respect to the arrangement between RSL and RCM.

---

[1] See Vickers De Costa/Citicorp, SEC Lexis 2305 (August 13, 1986).
[2] See Securities Exchange Act Release No. 28899 (February 20, 1991).

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

Stephen Keating
October __, 2005
Page 6

## IV. Rule 15a-6.

Assuming that RCM is operating within the jurisdiction of the United States, the next question is whether it is exempt from broker-dealer registration under Rule 15a-6. As you know, SEC Rule 15a-6 may permit RCM to deal directly with persons that are physically located in the United States under certain circumstances. For example, under Rule 15a-6(a)(1), a foreign broker-dealer may effect unsolicited transactions without registering as a broker-dealer under the Act. In addition, under Rule 15a-6(a)(4)(i), a foreign broker-dealer may deal with a registered broker-dealer acting for its own account or as agent for customers without registering as a broker-dealer under the Act.

Under Rule 15a-6(b)(3), a "foreign broker-dealer" is a broker-dealer that is a non-U.S. resident person (including any U.S. person engaged in business as a broker-dealer entirely outside the United States) and is not an office or branch of a U.S. broker-dealer. The SEC has not defined what it means to be a resident of the U.S. under Rule 15a-6. Moreover, the SEC has stated that it would not be appropriate to establish a separate standard of residency for purposes of Rule 15a-6 which differs from those generally established under state or federal law.

We have not undertaken an analysis of the various residency requirements that apply under federal and state law to determine whether RCM would be deemed to be a resident of the U.S. under these standards. As a practical matter, it seems clear that RCM's current structure and operations weigh in favor of a determination that RCM is a resident of the U.S., not Bermuda. Further, the parenthetical clause set forth in the preceding paragraph indicates that the SEC would take the position that the geographical location in which broker-dealer actually conducts its business, rather than the jurisdiction of its organization, is the relevant factor in determining where the broker-dealer resides. Accordingly, it does not appear that RCM will be able to rely on the exemption provided by Rule 15a-6 because it is not a "foreign broker-dealer" under that Rule.

## V. Conclusion.

Generally, the FX and derivatives trading and financing activities of RCM are not subject to the federal securities laws and would not require RCM to register as a broker-dealer. However, certain aspects of RCM's operations likely do fall within the reach of the federal securities laws. Specifically, the purchase and sale of options on baskets or indices of securities will be considered subject to such laws. Similarly, RCM's convertible securities and emerging market debt activities likely would be deemed the conduct of a brokerage business subject to the federal securities laws. It may be prudent, therefore, for RCM to consider terminating its securities related activities and transfer its securities trading operations and customers to RSL.

\* \* \* \* \*

MB02441379

CHDB03 9044938.5   11-Oct-05 12:00

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP



Stephen Keating
October __, 2005
Page 7

After you have reviewed this Memorandum, we can discuss this matter further at your convenience.

                                  J.P.C
                                  R.P.

CHDB03 9044938.5   11-Oct-05 12:00

MB02441380

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

# EXHIBIT 2

| | |
|---|---|
| From: | Collins, Joseph P.                                                                                Sent: 6/24/2002 2:13 PM |
| To: | Santo C. ("Sandy") Maggio (E-mail); Dennis A. Klejna (E-mail); Keating Stephen (E-mail) |
| Cc: | Spehr, Richard A.; Hewitt, John R.; Farley, Ryan P. |
| Bcc: | |
| Subject: | Refco Capital Markets, Ltd. |

<<CoverMemo.DOC>> <<Memo.DOC>>

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Joseph P. Collins
Mayer, Brown, Rowe & Maw    Mayer, Brown, Rowe & Maw
190 South La Salle Street    1675 Broadway
Chicago, IL 60603    New York, NY 10019
Phone: 312-701-8353    Phone: 212-506-2657
Fax: 312-706-9101    Fax: 212-849-5657
Email: jcollins@mayerbrownrowe.com

# MAYER, BROWN, ROWE & MAW

190 SOUTH LA SALLE STREET

CHICAGO, ILLINOIS 60603-3441

**JOSEPH P. COLLINS**  
DIRECT DIAL (312) 701-8353  
DIRECT FAX (312) 706-9101  
jcollins@mayerbrownrowe.com

MAIN TELEPHONE  
(312) 782-0600  
MAIN FAX  
(312) 701-7711

## **MEMORANDUM**

June 24, 2002

**VIA E-MAIL**

| | |
|---|---|
| **TO:** | Santo C. Maggio |
| | Dennis A. Klejna |
| | Stephen Keating |
| **FROM:** | Joseph P. Collins |
| **RE:** | Refco Capital Markets, Ltd. |

---

     Attached for your review and comments is a memorandum based upon our discussion last week. It is in draft form so that the facts and related analysis can be confirmed. Let me know your thoughts and comments. We look forward to seeing everyone at 3:00 pm tomorrow afternoon in Refco's offices.

J. P. C.

Enclosure

cc:    Richard A. Spehr  
       John R. Hewitt  
       Ryan P. Farley

Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  Manchester  New York  Palo Alto  Paris  Washington, D.C.  
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw is a U.S. General Partnership. We operate in combination with our associated English partnership in the offices listed above.

CONFIDENTIAL TREATMENT REQUESTED BY REFCO

REFCO-E-002464309

DRAFT: 6/24/02

**CONFIDENTIAL AND PRIVILEGED**

M E M O R A N D U M

June 24, 2002

**TO:** File

**FROM:** Joseph P. Collins

**RE:** Refco Capital Markets, Ltd.

---

The following memorandum sets forth information regarding the present activities of Refco Capital Markets, Ltd., a Bermuda corporation ("RCM"). Most of the information was obtained during a discussion on June 19, 2002 with Sandy Maggio and Dennis Klejna.

**I.    RCM Activities.**

    **A.    Foreign Exchange ("FX")**

The principal activity of RCM in terms of transactional volume and notional amount is FX trading. RCM engages in FX trading as a dealer and maintains trading lines with leading dealers in the interbank FX market. RCM also provides FX clearing, margining and custodial facilities for Refco FX Associates, LLC and for other smaller FX dealers. FX contracts are not securities for purposes of the federal securities laws.

    **B.    Derivative Trading and Financing of Tax-Driven Strategies**

A large revenue produce for FCM is the trading and financing activity related to various tax-motivated strategies designed by accounting firms and other tax planners. Refco will provide secured loans and conduct the derivative trading often used in these strategies. Most of the derivatives used are total return swaps on baskets and indices of securities. Some long-dated options are written on these same indices and baskets. The swaps would not be deemed securities for purposes of the federal securities laws, but the options are considered securities subject to those laws.

    **C.    Emerging Market Debt**

About 20% of RCM's revenues are derived from the trading of emerging market debt instruments. RCM buys and sells these securities and engages in related lending and borrowing transactions. All of the customers in these transactions are non-U.S. persons, and a registered broker-dealer in Miami generally acts as an agent for both RCM and the customer in these transactions.

There are no common customers of RCM and Refco Securities, LLC ("RSL") for these transactions, and all of the RCM customers are non-U.S. persons.

All the sovereign and corporate debt issues traded by RCM are considered securities for purposes of the federal securities laws.

While RCM trades these instruments with its customers, RCM does not hold itself out as a dealer making a two-way market in these instruments.

### D.   Financing

RCM provides financing for some non-U.S. persons on equity portfolios by means of total return swaps written on these portfolios. The portfolios contain some U.S. equities. For purposes of the federal securities laws, these swaps are not considered securities.

### E.   Equity Trading

For a small portion of clients (principally an Italian institutional client), RCM buys and sells securities (including U.S. securities) and serves as the prime broker for those clients. The SEC generally has found prime brokerage activities to be those of a broker-dealer.

### F.   Convertible Trading

In 2001, RCM began trading convertible debt securities for some non-U.S. customers. The persons conducting such trading at RCM are also employees of RSL.

The activities consist of selling stock or a convertible debt instrument under Regulation D, Regulation S, or an existing shelf registration or pursuant to a prospectus in a registered offering.

The non-U.S. customers are carried on the books of RCM which, in turn, has an omnibus account at RSL. All applicable margin requirements are met by RCM on behalf of these customers. In fact, extraordinary margin is collected by RCM to avoid the risk of failed deliveries in some thinly-traded issues. All U.S. customers are carried directly on the books of RSL.

All the securities being traded are U.S. securities subject to the federal securities laws. As noted, RCM does not carry the customer accounts but may call some U.S. brokers (such as Pond Securities) which make markets in these securities in order to effect trades that are given up to RSL. RCM provides some financing for customers to engage in this trading.

## II.   Analysis and Recommendations

Generally, the FX and derivatives trading and financing activities of RCM are not subject to the federal securities laws and would not require RCM to register as a broker-dealer. Certain aspects of RCM's operations likely do fall within the reach of the federal securities laws. Specifically, the purchase and sale of options on baskets or indices of securities will be

CONFIDENTIAL TREATMENT REQUESTED BY REFCO                                    REFCO-E-002464311

considered subject to such laws. Similarly, the convertible trading business likely would be deemed the conduct of a brokerage business subject to the federal securities laws.

It is a closer question whether the Emerging Market Debt Trading would be subject to SEC jurisdiction. The subject securities and the customers are all non-U.S. securities and persons, respectively. In addition, RCM does not act as a dealer since it does not regularly make two-way markets in the securities. Further, a U.S. broker-dealer acts as a dual agent in these transactions, thereby providing the customers with the benefits of the federal securities laws. While similar activities are conducted by the U.S. private backing offices of overseas banks, the SEC might assert jurisdiction over these RCM activities if they are principally conducted from a U.S. location.

It may be prudent, therefore, for RCM to take the following actions:

(1) Cease the buying and selling of options on baskets and indices of securities.

(2) Consider the transfer of existing options to RSL.

(3) Transfer any equity trading client to RSL.

(4) Transfer the non-U.S. convertible trading customers to RSL.

(5) The Emerging Market Debt business should be re-evaluated based upon the level of SEC staff interest and other business considerations.

CONFIDENTIAL TREATMENT REQUESTED BY REFCO                                           REFCO-E-002464312

# EXHIBIT 3

## Collins, Joseph P.

**To:** Yorke, Thomas
**Cc:** Santo Maggio
**Subject:** RE: PCMG XII, KP I, KP II - Qualified Custodians

Tom,
Here are some preliminary thoughts on this matter:
1. The new IA registration rules do not go into effect until 2/1/06.
2. The IA Custody Rule applies now to any registered IA. The new February 2006 registration date does not change the obligation for already registered advisers.
3. Client assets (cash and securities but not futures, swaps, or FX contracts) have to be held at a qualified custodian.
4. RCM could be a qualified custodian if it customarily holds financial assets for its customers, provided that the adviser's client assets must be segregated from RCM's proprietary assets in accounts that contain only those clients' assets and under the name of the adviser as agent or trustee for its clients.
5. In order to use RCM, the adviser must have a reasonable belief that RCM will provide a level of asset safety similar to that which would be provided by a qualified US custodian. The adviser also has to inform its clients about any material risks relating to the use of RCM as a custodian. Such disclosure can be a one time disclosure if multiple custodians are used.
6. The preliminary solutions seem to be:
 A. Stall on the IA registration and avoid immediate application of the rule;
 B. Segregate the funds and make the necessary disclosures;
 C. Keep the funds at RSL or Refco,LLC;
 D. Convince the adviser that its clients assets are the derivatives, not securities, and that the cash deposits support such trading and therefore are beyond the scope of the Custody Rule;or
 E.
 Use some RGL credit support agreement or guaranty to allieviate any concerns over the foreign nature of the custodian and do the segregation required by the Rule.
We can discuss this matter further to arrive at a satisfactory solution.

-----Original Message-----
**From:** Yorke, Thomas [mailto:TYorke@refco.com]
**Sent:** Monday, January 24, 2005 10:28 AM
**To:** Collins, Joseph P.
**Subject:** PCMG XII, KP I, KP II - Qualified Custodians

Joe

Walt has been discussing some new guidelines for Funds and/or CTA's concerning entities that are considered official "Custodians". I understand the determination has been made Refco Capital Markets can't be a qualified "custodian" due in part to the Non Segregation of customer funds. We have some larger accounts who are operated as Investment Advisors and will now be looking to transfer funds from RCM to Refco Securities LLC as a result of this change.

When will this change take affect ?
When is the effective date, i.e.: the date funds would need to move assets or positions to be in compliance with the rule change.
Could RCM qualify if we maintained two separate accounts at Chase for RCM ?

This change could mean an extremely large asset transfer away from RCM.

Thanks

MB02173877

1/25/2005

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

1/25/2005

MB02173878

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP