**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE REFCO INC. SECURITIES LITIGATION : CASE NO. 07-MD-1902 (JSR)

This document relates to:

KENNETH M. KRYS, *ET AL.*,

Plaintiffs,

-against-

CHRISTOPHER SUGRUE, *ET AL.*

Defendants.

CASE NO. 08-CV-3086 (JSR)

**THE MAYER BROWN DEFENDANTS' RESPONSE TO THE SPHINX PLAINTIFFS' LIMITED OBJECTION TO THE REPORT AND RECOMMENDATION OF THE SPECIAL MASTER ON THE MOTIONS TO DISMISS BROUGHT BY THE MAYER BROWN DEFENDANTS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. PLAINTIFFS CANNOT RECOVER FOR DEPOSITS MADE PRIOR TO ANY ALLEGED MISCONDUCT BY THE MAYER BROWN DEFENDANTS. ........ 2

II. THE SPECIAL MASTER CORRECTLY RECOMMENDED DISMISSING THE CLAIMS FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING CONVERSION. ........ 4

A. "Upstreaming" RCM Customer Deposits Does Not Give Rise to a Breach of Fiduciary Duty or a Conversion. ........ 5

B. Plaintiffs Have Not Pleaded Facts Showing that the Mayer Brown Defendants Knew of Circumstances that Allegedly Distinguish SPhinX from Other RCM Customers. ........ 7

C. Plaintiffs Cannot Make the Threshold Showing that the Mayer Brown Defendants Knew of the Transfers of SPhinX Customer Deposits from Refco LLC to RCM. ........ 10

III. PLAINTIFFS' CLAIM FOR INTERFERENCE WITH CONTRACT AND PROSPECTIVE CONTRACT (COUNT XXVI) SHOULD BE DISMISSED. ........ 12

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

## CASES

*Capital Management Select Fund Ltd. v. Bennett*, No. 08-6166-cv (L), __ F.3d __, 2012 WL 48169 (2d Cir. Jan. 10, 2012) ....................6, 7

*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815–16 (1988)....................3

*In re Sharp International Corp.*, 403 F.3d 43, 49 (2d Cir. 2005)....................4

*Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (App. Div. – 1st Dep't 2003) ....................4

*Kirschner v. Bennett*, 648 F. Supp. 2d 525, 535 & 543–44 (S.D.N.Y. 2009) ....................6

*Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 247 (S.D.N.Y. 1996), *aff'd mem.*, 152 F.3d 918 (2d Cir. 1998)....................10

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006) ....................5

*Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 592 (2d Cir. 1991) ....................3

*Watson v. Consolidated Edison of New York*, 594 F. Supp. 2d 399, 409 (S.D.N.Y. 2009) (Rakoff, J.) ....................4

## DOCKETED CASES

Order, *Kirschner v. Bennett*, No. 07 Civ. 8165, Dkt. No. 186 (S.D.N.Y. Dec. 13, 2010)....................3, 6

Report & Recommendation of the Special Master, *Kirschner v. Bennett*, No. 07 Civ. 8165, Dkt. No. 161 (S.D.N.Y. Jun. 3, 2010), *adopted in* Order, Dkt. No. 186 (S.D.N.Y. Dec. 13, 2010) ....................3, 6

Order, *Krys v. Butt*, No. 08 Civ. 8267, Dkt. No. 130 (S.D.N.Y. Mar. 29, 2011) ....................10

Report & Recommendation of the Special Master on Motion To Dismiss, *Krys v. Butt*, No. 08 Civ. 8267, Dkt. No. 95 (S.D.N.Y. Aug. 4, 2010), *adopted in* Order, Dkt. No. 130 (S.D.N.Y. Mar. 29, 2011) ....................10

Report & Recommendation of the Special Master on Deutsche Bank Defendants' Motion To Dismiss, *Krys v. Deutsche Bank Securities Inc.*, No. 10 Civ. 3594, Dkt. No. 97 (S.D.N.Y. Nov. 1, 2011)....................3

Opinion & Order, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 521 (S.D.N.Y. April 25, 2011) ....................13

Order, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 427 (S.D.N.Y. Mar. 31, 2010)....................2

Order, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 524 (S.D.N.Y. May 3, 2011) ....................6, 7, 8

Order, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 615 (S.D.N.Y. Oct. 25, 2011)........................3

Report & Recommendation of the Special Master on Motions to Dismiss Brought by the Bank Defendants, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 632 (S.D.N.Y. Dec. 8, 2011) ........................................................................................................................3

Report & Recommendation of the Special Master on Motions to Dismiss Brought by Grant Thornton LLP and Mark Ramler, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 644 (S.D.N.Y. Dec. 16, 2011) ..........................................................................................3

Report & Recommendation of the Special Master on the Motions To Dismiss Brought by Owens & Kavanagh, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 470 (S.D.N.Y. Oct. 22, 2010), *adopted in* Opinion & Order, Dkt. No. 521 (S.D.N.Y. April 25, 2011) ................13

Report & Recommendation of the Special Master on Motions to Dismiss Brought by Defendants PricewaterhouseCoopers and Mari Ferris, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 570 (S.D.N.Y. Aug. 10, 2011), *adopted in* Order, Dkt. No. 615 (S.D.N.Y. Oct. 25, 2011) ........................................................................................ passim

Report & Recommendation of the Special Master on the Omnibus Issue of Standing, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 389 (S.D.N.Y. Feb. 3, 2010), *adopted in* Order, Dkt. No. 427 (S.D.N.Y. Mar. 31, 2010) ..........................................................................2

Report & Recommendation of the Special Master on the Omnibus Issue of Primary Violations by Refco, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 410 (S.D.N.Y. Mar. 2, 2010), *adopted in* Order, Dkt. No. 524 (S.D.N.Y. May 3, 2011) ................................ passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure Rule 9(b) ........................................................................5

Mayer Brown LLP, Joseph Collins, Paul Koury, and Edward Best (the "Mayer Brown Defendants") respectfully submit this response to the SPhinX Plaintiffs' Limited Objection to the Report and Recommendation of the Special Master on the Motions to Dismiss Brought by the Mayer Brown Defendants.

**PRELIMINARY STATEMENT**

The Special Master recommends dismissal of claims against these defendants for aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and interference with contract. He also recommends dismissal (in part) of the claim for aiding and abetting fraud. His Report and Recommendation observes, correctly, that these conclusions are "essentially determined" by previous Reports that either have already been adopted by the Court or are awaiting decision. R&R at 2. Plaintiffs object to some of those conclusions, but they do not provide any cogent reason for the Court to depart from the path it has taken in adopting previous Reports.

*First*, Plaintiffs' argument that they can state a claim for aiding and abetting fraud based on deposits made before any misconduct by the Mayer Brown Defendants is foreclosed both by previous Reports adopted by the Court and by Plaintiffs' own allegations. This exact issue has been argued and decided, and there is no reason for the Court to take a different path here. Not only is this conclusion law of the case, but it is the inescapable consequence of Plaintiffs' own allegations that Refco's insolvency should have been disclosed to the public, which would have caused the loss of any SPhinX deposits already made before such disclosure.

*Second*, the Report correctly concludes that Plaintiffs have failed to plead that the Mayer Brown Defendants knew that RCM's alleged upstreaming of SPhinX deposits amounted to tortious conduct. This conclusion follows from the Special Master's prior recommendations that the Complaint does not allege scienter on the part of the PricewaterhouseCoopers ("PwC") defendants,

the Bank defendants, and the Grant Thornton defendants. As this Court, and now the Second Circuit, have held, RCM's general practice of upstreaming was not tortious. The SPhinX Plaintiffs have alleged that RCM's upstreaming of *their* deposits was tortious for reasons that the Mayer Brown Defendants are not alleged to have known. Indeed, Plaintiffs have not even alleged facts that would establish that the Mayer Brown Defendants knew there were SPhinX assets at RCM to be upstreamed.

*Third*, the Special Master correctly recommends dismissing Plaintiffs' claim for interference with contract or prospective contract. Plaintiffs themselves admit that this claim is foreclosed by the Court's previous decisions.

For all of these reasons, the Special Master's conclusions to which Plaintiffs object are correct and follow directly from prior decisions in this case. They should be adopted.

## ARGUMENT

### I. PLAINTIFFS CANNOT RECOVER FOR DEPOSITS MADE PRIOR TO ANY ALLEGED MISCONDUCT BY THE MAYER BROWN DEFENDANTS.

Plaintiffs first object to the Special Master's conclusion that the Mayer Brown Defendants cannot be held liable for aiding and abetting fraud for assets deposited at Refco before these defendants engaged in any alleged wrongful conduct.[1] *See* R&R at 11–12. Plaintiffs are taking issue with a conclusion that the Court has already adopted twice, and that the

[1] The Special Master correctly observed that the Mayer Brown Defendants are not sued for the "SphinX fraud" – i.e., the allegedly wrongful transfers from Refco LLC to Refco Capital Markets. *See* R&R at 5 ("There is no claim in this Count regarding the SPhinX Fraud."); *id.* at 13 & 16 (other claims for aiding and abetting breach of fiduciary duty and conversion). The prior Standing R&R already so found, and this Court adopted that conclusion over Plaintiffs' objection. *See* Order, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 427 (S.D.N.Y. Mar. 31, 2010) (adopting Report & Recommendation of the Special Master on the Omnibus Issue of Standing, Dkt. No. 389 (S.D.N.Y. Feb. 3, 2010) ("Standing R&R")). Plaintiffs do not challenge that conclusion here. Accordingly, there is no longer any dispute that Plaintiffs' claims against the Mayer Brown Defendants are based solely on the "Refco fraud."

Special Master has reached a total of five times.[2] Indeed, the Special Master's analysis on this point is presented in a block quotation taken from previous Reports, with allegations regarding the Mayer Brown Defendants added where appropriate. *See* R&R at 11. This recommendation has already been adopted by the Court in this case. *See* PwC Order (adopting PwC R&R). Accordingly, Special Master Capra's conclusion is law of the case and should not be revisited now. *See*, *e.g.*, PAT Order at 2 ("The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (quoting *Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 592 (2d Cir. 1991) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988))).

In addition to being law of the case, the Special Master's conclusion is correct. It is, in fact, the necessary consequence of Plaintiffs' own allegations. It is Plaintiffs who have alleged that "customers . . . would not have entrusted or continued to entrust their assets with Refco" if the fraud had been exposed. Am. Compl. ¶ 743. And it is Plaintiffs who have alleged that "Refco and RCM were insolvent at least as of August 2002." *Id.* ¶ 578. Accordingly, it was not "speculation," Pls.' Obj. at 11, for the Special Master to conclude that "SPhinX would have been

---

[2] *See* Order, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 615 (S.D.N.Y. Oct. 25, 2011) ("PwC Order") (adopting Report & Recommendation of the Special Master on Motions to Dismiss Brought by Defendants PricewaterhouseCoopers and Mari Ferris, Dkt. No. 570 (S.D.N.Y. Aug. 10, 2011) ("PwC R&R")); Order, *Kirschner v. Bennett*, No. 07 Civ. 8165, Dkt. No. 186 (S.D.N.Y. Dec. 13, 2010) ("PAT Order") (adopting Report & Recommendation of the Special Master, Dkt. No. 161 (S.D.N.Y. Jun. 3, 2010) ("PAT R&R")); Report & Recommendation of the Special Master on Motions to Dismiss Brought by Grant Thornton LLP and Mark Ramler, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 644 (S.D.N.Y. Dec. 16, 2011) at 16–17; Report & Recommendation of the Special Master on Motions to Dismiss Brought by the Bank Defendants, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 632 (S.D.N.Y. Dec. 8, 2011) at 22–23; Report & Recommendation of the Special Master on Deutsche Bank Defendants' Motion To Dismiss, *Krys v. Deutsche Bank Securities Inc.*, No. 10 Civ. 3594, Dkt. No. 97 (S.D.N.Y. Nov. 1, 2011) at 40–41; PwC R&R at 23; PAT R&R at 17.

unable to recover its funds deposited with RCM upon disclosure of the fraud" because the same "run on the bank" that occurred when Refco's fraud was disclosed in October 2005 would have occurred upon an earlier disclosure. R&R at 11 & 3. On the contrary, that conclusion is the inevitable consequence of "the terms of the Plaintiffs' Complaint." *Id.* at 11. Plaintiffs may now find those allegations inconvenient, but that does not change their effect on their pleadings. *See, e.g.*, *Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 409 (S.D.N.Y. 2009) (Rakoff, J.) (rejecting plaintiff argument at motion-to-dismiss stage that "flies directly in the face of the allegations set forth in the Complaint").[3]

## II. THE SPECIAL MASTER CORRECTLY RECOMMENDED DISMISSING THE CLAIMS FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING CONVERSION.

Plaintiffs object to the Special Master's conclusion that they had failed to plead that the Mayer Brown Defendants had knowledge that upstreaming at RCM violated a fiduciary duty owed to SPhinX or amounted to a conversion of SPhinX deposits. Plaintiffs do not dispute the standard that the Special Master applied. *See* Pls.' Obj. at 15–16. As the Special Master concluded, to plead aiding and abetting, a plaintiff must show not only knowledge of the conduct underlying the primary violation, but *also* knowledge that the conduct was *wrongful*, either because it violated a fiduciary duty or amounted to conversion. *See* R&R at 13 (breach of fiduciary duty) & 16 (conversion); *see also In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) (a plaintiff must show "actual knowledge" that there was "a breach by a fiduciary of obligations to another" (citing *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (App. Div. – 1st Dep't

---

[3] As argued in the Mayer Brown Defendants' separate objection, Plaintiffs also cannot recover for deposits they made with Refco before they *relied* on a misrepresentation allegedly aided and abetted by the Mayer Brown Defendants. *See* Mayer Brown Defs.' Limited Objection to the Report & Recommendation of the Special Master on Motions To Dismiss Brought by the Mayer Brown Defs., *Krys v. Sugrue*, No. Civ. 3086, Dkt. No. 676 (S.D.N.Y. Jan. 27, 2012) (MB Defs.' Obj.), at 2–3. Unlike Plaintiffs' objection, this is an issue that neither the Special Master nor the Court has considered, and it may be unnecessary to consider it at the motion to dismiss stage.

2003)). Moreover, under Rule 9(b) of the Federal Rules of Civil Procedure, to plead knowledge sufficiently for a claim of aiding and abetting breach of fiduciary duty, the plaintiff must raise a "strong inference" that the third party actually knew of the wrongdoing. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006); R&R at 4.

Applying these standards to the claims for aiding and abetting breach of fiduciary duty and aiding and abetting conversion, the Special Master correctly concluded that Plaintiffs had not pleaded facts showing that the Mayer Brown Defendants were aware that "upstreaming" by RCM of SPhinX deposits amounted to tortious conduct. *See* R&R at 13 & 16. It is now well-established in these cases that RCM's ordinary practice of upstreaming customer funds was not, in and of itself, wrongful. Accordingly, knowledge of upstreaming is not, standing alone, knowledge of tortious conduct. *See infra* Part II.A. Although the Special Master has concluded that Plaintiffs have pleaded that they are uniquely situated from other RCM customers, there is no basis for inferring that the Mayer Brown Defendants were aware that anything about SPhinX's relationship with Refco converted the usually proper RCM practice of upstreaming into wrongful conduct. *See infra* Part II.B. To the contrary, Plaintiffs have not even pleaded that the Mayer Brown Defendants knew there were SPhinX deposits at RCM that could be upstreamed in the first place. *See infra* Part II.C. Absent such allegations, the Special Master was correct that the claims against the Mayer Brown Defendants – like those against the other defendants accused of aiding and abetting – should be dismissed for lack of scienter.

### A. "Upstreaming" RCM Customer Deposits Does Not Give Rise to a Breach of Fiduciary Duty or a Conversion.

As explained in other Reports that the Court has adopted, the claims against the Mayer Brown Defendants for aiding and abetting breach of fiduciary duty and conversion center on RCM's "upstreaming" of customer assets, and accordingly what matters for present purposes is

whether the Mayer Brown Defendants are alleged to have known that RCM improperly upstreamed SPhinX's assets from RCM. *See* R&R at 13 & 16; *see also*, *e.g.*, Report & Recommendation of the Special Master on the Omnibus Issue of Primary Violations by Refco, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 410 (S.D.N.Y. Mar. 2, 2010) ("Primary Violations R&R") at 39 & 41, *adopted in* Order, Dkt. No. 524 (S.D.N.Y. May 3, 2011) ("Primary Violations Order"); PwC R&R at 25 & 27. The Complaint does not state a claim for scienter on this basis.

It is by now well-established that RCM's routine upstreaming of customer deposits did not amount to a breach of fiduciary duty owed to those customers or a conversion of their deposits. Judge Lynch and this Court so held in the Private Actions Trust case, *see Kirschner v. Bennett*, 648 F. Supp. 2d 525, 535 & 543–44 (S.D.N.Y. 2009); PAT R&R at 22 & 29–30; PAT Order; and the Special Master and the Court have applied the same reasoning in decisions in this case, including the Report now under review. *See, e.g.*, PwC R&R at 26, *adopted in* PwC Order; R&R at 14 & 16–17. The thrust of those decisions is that the Margin Annex that RCM customers entered into with RCM "*permitted* the upstreaming" by RCM. R&R at 14 (emphasis added) (quoting PwC R&R at 26).

The Second Circuit has now embraced the same interpretation of the Margin Annex that this Court and Judge Lynch had previously adopted. *See Capital Mgmt. Select Fund Ltd. v. Bennett*, No. 08-6166-cv (L), __ F.3d __, 2012 WL 48169 (2d Cir. Jan. 10, 2012) (petition for rehearing pending on other grounds). In that case, another set of RCM customers complained of alleged upstreaming at RCM. *See, e.g.*, *id.* at *4. But the Court of Appeals held that the customer agreements gave RCM "the right to use or 'rehypothecate' the customer's account securities and other property for RCM's own financing purposes" so long as the customer had

been extended a margin loan. *Id.* at *2. Accordingly, because RCM typically had permission to "upstream" its customers' deposits, knowledge of upstreaming alone (even assuming the Complaint alleged that the Mayer Brown Defendants had such knowledge, which it does not, *see* MB Defs.' Obj. at 3–4) would not constitute knowledge that Refco was committing torts against the SPhinX Plaintiffs. R&R at 14 & 16–17.

**B. Plaintiffs Have Not Pleaded Facts Showing that the Mayer Brown Defendants Knew of Circumstances that Allegedly Distinguish SPhinX from Other RCM Customers.**

Unlike other RCM customers, the SPhinX Plaintiffs were able to, at least as a matter of pleading, allege primary violations against Refco for breach of fiduciary duty and conversion because of an allegedly special relationship with Refco that, they have claimed, included promises to keep their deposits segregated, among many other things. Whatever the merit of Plaintiffs' allegations, the Special Master rightly recognized that Plaintiffs have not pleaded facts showing that the Mayer Brown Defendants were aware of those special promises or the other duties created by those relationships.

Specifically, the Court has adopted the Special Master's recommendation that the SPhinX Plaintiffs were able to allege a "relationship of trust and confidence" between SPhinX and Refco sufficient to give rise to a fiduciary duty. *See* Primary Violations R&R at 37–39, *adopted in* Primary Violations Order. And the SPhinX Plaintiffs allege that the deposits eventually placed at RCM were first placed at Refco LLC, where they were subject to an account opening agreement that provided for segregation and thus (at least as a matter of pleading) limited the impact of the Margin Annex over SPhinX's deposits at RCM. *See id.* at 10–11. The Court has adopted the Special Master's subsequent conclusion that this allowed Plaintiffs to allege that Refco exercised "unauthorized dominion" over SPhinX deposits sufficient to plead a claim for conversion. *Id.* at 41, *adopted in* Primary Violations Order.

The Special Master correctly concluded, however, that Plaintiffs did not plead the element of knowledge as to the Mayer Brown Defendants, for purposes of their claims for aiding and abetting breach of fiduciary duty or conversion, in part because Plaintiffs could not establish that these defendants were aware of the reasons why the SPhinX Plaintiffs allegedly were situated differently than other RCM customers. Specifically, the Special Master concluded, "[i]t is implausible to believe that Mayer Brown, even with its [alleged] immersion in Refco, would learn about the relationship of trust and confidence with SPhinX and PlusFunds that triggered a fiduciary duty on Refco's part." R&R at 14–15. And, as to the conversion claim, the Special Master concluded that the relationship between a Refco LLC account opening agreement and the Margin Annex raises a "'murky'" "'question of authorization'" that was "beyond the knowledge of Mayer Brown." *Id.* at 16–17 (quoting, e.g., PwC R&R at 28).

Plaintiffs do not contest these conclusions. Instead, Plaintiffs suggest that knowledge of a fiduciary relationship between Refco and SPhinX can arise solely from their allegation that the Mayer Brown Defendants reviewed SPhinX's offering materials, which referred to segregation requirements. *See* Pls.' Obj. at 18 (quoting Am. Compl. ¶ 119). This reasoning begins with the implausible inference that Mayer Brown had perfect understanding and recollection of the contents of offering materials of SPhinX, a non-client. But even if Mayer Brown had been aware from SPhinX's offering materials that SPhinX had a duty to segregate customer funds, "knowing about segregation requirements says nothing about knowing that Refco had a relationship of trust and confidence" with SPhinX. *See* R&R at 13. As established in the Primary Violations R&R, which the Court has subsequently adopted, the alleged basis for the "relationship of trust and confidence" between SPhinX and Refco is a wide-ranging set of dealings that goes well beyond a duty to segregate funds. *See* Primary Violations R&R at 30–31, *adopted in* Primary Violations

Order. Segregation requirements are a small part, if any, of that larger relationship.[4] A fiduciary relationship arising out of a duty to segregate is part of the claims involving the SPhinX fraud, but no such claim can be made under the Refco fraud, which is the only fraud under which the Mayer Brown Defendants have been sued. *See* Primary Violations R&R at 37 (concluding that "there is no causal relationship between the violation of the segregation right and the Plaintiffs' claims for damages under the Refco fraud").

Even if the existence of a duty to segregate were alone sufficient to allege a fiduciary relationship, plaintiffs have not sufficiently alleged that Mayer Brown knew about such a duty, let alone that it was breached. Reviewing SPhinX's offering materials would not have informed the Mayer Brown Defendants of *Refco's obligations to SPhinX*, which are the relevant set of duties for purposes of the aiding-and-abetting claims. They speak instead to SPhinX's obligations to its investors. *See* Primary Violations R&R at 8 (SPhinX's offering and marketing materials "are of limited utility in establishing a right to segregation [at Refco] because Refco was not a party to any of these materials"). By way of contrast, the Special Master based Refco's duty to segregate SPhinX customer deposits on the Refco LLC account opening agreement, which *is* an agreement between Refco and SPhinX, and with which Plaintiffs do not allege that the Mayer Brown Defendants were familiar.

---

[4] While Plaintiffs devote time in their fact section to arguing that the Mayer Brown Defendants were aware of the Suffolk Loan transactions, *see* Pls. Obj. at 5–6, the Special Master concluded that they had not "attempted to explain how knowing about the Suffolk Transactions would cause Mayer Brown to know that Refco had a relationship of trust and confidence with SPhinX/PlusFunds." R&R at 15 n.13. Plaintiffs have not attempted such an explanation in their objection, and there is none. The Suffolk Loans were transactions between some of the owners of PlusFunds and Refco. They did not create or suggest a fiduciary relationship between Refco and SPhinX.

Nor would a general awareness that SPhinX had segregation obligations alert a Mayer Brown lawyer that the presence of SPhinX money at RCM was inappropriate. Assuming *arguendo* that the Mayer Brown Defendants were alleged to be aware of SPhinX money at RCM (which they are not, *see infra* Part II.C), the Mayer Brown Defendants would have every reason to assume that someone at SPhinX had authorized the presence of SPhinX money at RCM. R&R at 13–14 n.12. As the Special Master noted, it "could well have been a proper business decision" for someone at SPhinX or PlusFunds to choose to lose segregation protection over some SPhinX deposits. *Id.* at 16. The Court has already adopted the Special Master's recommendation that a Refco executive was not under an obligation to determine whether the presence of SPhinX funds at RCM was unauthorized. *See* Report & Recommendation of the Special Master on Motion To Dismiss, *Krys v. Butt*, No. 08 Civ. 8267, Dkt. No. 95 (S.D.N.Y. Aug. 4, 2010) ("Butt R&R) at 14, *adopted in* Order, Dkt. No. 130 (S.D.N.Y. Mar. 29, 2011). Certainly the same should be true for Refco's outside law firm. *See* R&R at 14 n.12 (quoting Butt R&R at 14). Outside lawyers do not have a duty to ferret out whether a nonclient has the proper authorizations to deposit funds in a particular account. And, in any event, a failure to stop the allegedly unauthorized deposits would not have amounted to "substantial assistance" in the deposits as a matter of law. *See* *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 247 (S.D.N.Y. 1996), *aff'd mem.*, 152 F.3d 918 (2d Cir. 1998) (holding that "inaction, or a failure to investigate, constitutes actionable participation only when a defendant owes a fiduciary duty directly to the plaintiff").

### C. Plaintiffs Cannot Make the Threshold Showing that the Mayer Brown Defendants Knew of the Transfers of SPhinX Customer Deposits from Refco LLC to RCM.

As established above, Plaintiffs cannot plead that the Mayer Brown Defendants knew that RCM's upstreaming of customer deposits was wrongful, nor can they plead that these defendants understood SPhinX to be differently situated from other RCM customers. But Plaintiffs'

allegations suffer from an even more fundamental flaw: Because SPhinX's funds were upstreamed from RCM, in order to know that a fiduciary duty has been breached, or that deposits have been converted, the Mayer Brown Defendants would have to know that SPhinX's funds were at RCM where they were available to be upstreamed.

Plaintiffs cannot make this threshold showing. The Complaint pleads no facts suggesting that the Mayer Brown Defendants were aware of or in any way participated in the transfers from Refco LLC to RCM. Plaintiffs have not alleged that the Mayer Brown Defendants were even aware that SPhinX opened accounts at RCM. Plaintiffs' Objection is no different. Nowhere in their one-paragraph argument regarding alleged knowledge of upstreaming do Plaintiffs argue that the Mayer Brown Defendants knew that SMFF cash had been transferred from Refco LLC to RCM. *See* Pls.' Obj. at 18–19.[5] The lack of such allegations is not surprising. There is no reason why lawyers at an outside law firm would be made aware of such business details.

In the "Facts" section of their Objection, Plaintiffs allude to Mayer Brown lawyers' alleged roles in preparing documents for the March 2005 "Suffolk Loans" and "Standby Credit Facility." *See* Pls.' Obj. at 5–6 (summarizing terms of Standby Credit Facility, including that "none of the contractual relationships between Refco and SMFF would be altered—PlusFunds promised that SMFF's assets would remain at RCM . . . ."). In the "Argument" section, Plaintiffs do not argue that these transactions gave rise to actionable knowledge on Mayer Brown's part, and for good reason. Plaintiffs have never alleged that the terms of the March 2005 loans or Standby Credit Facility actually required SMFF cash to be either transferred to or

[5] The closest Plaintiffs come is to argue that "Mayer Brown knew that Refco was upstreaming customer assets, which included SPhinX cash, and knew that upstreaming was improper." *Id.* at 18. But that is far different from arguing (let alone alleging) that the Mayer Brown Defendants *knew* that RCM's customer assets "included SPhinX cash." In any event, this statement is pure conclusion; there are no pertinent allegations of fact.

maintained at RCM. Rather, Plaintiffs' more specific allegations state that in exchange for the loans, the SPhinX Insiders agreed to "a covenant to continue the business relationships with Refco"—a *quid pro quo* for the *status quo*—and "pledged that PlusFunds would continue to use Refco subsidiaries for clearing, brokerage and future commission services." Am. Compl. ¶ 304. In other words, the documents provided that nothing about the brokerage relationships between Refco and SPhinX would change as a result of the March 2005 loans. Plaintiffs allege that corrupt insiders at SPhinX were aware that this provision meant that excess cash would be kept at RCM. But that is only because *they already knew that excess cash was being kept at RCM.* If one did not know that—and there is no reason why the Mayer Brown Defendants would—there is no reason why the Suffolk Loans or Standby Credit Facility would alert someone that deposits were at RCM.

Weak as the allegations are regarding Mayer Brown LLP's knowledge of wrongful upstreaming of SPhinX deposits from RCM, they are weaker still regarding Mr. Best, Mr. Koury, and Mr. Collins individually. Neither Mr. Best nor Mr. Koury appears in any of the allegations regarding Mayer Brown's supposed knowledge of SPhinX and PlusFunds, and Mr. Collins appears just once in an allegation regarding the Suffolk transactions. *See* Am. Compl. ¶¶ 559–66. The claims for aiding and abetting breach of fiduciary duty and conversion unquestionably should be dismissed against the individual Mayer Brown Defendants.

## III. PLAINTIFFS' CLAIM FOR INTERFERENCE WITH CONTRACT AND PROSPECTIVE CONTRACT (COUNT XXVI) SHOULD BE DISMISSED.

The Special Master recommends dismissing Plaintiffs' claims against the Mayer Brown Defendants for interference with contract and prospective contract on grounds previously decided in the Report & Recommendation regarding Owens's and Kavanagh's motion to dismiss. *See* R&R at 17. The Special Master issued that report on October 21, 2010, and the

Court adopted it on December 6, 2011. *See* Report & Recommendation of the Special Master on the Motions To Dismiss Brought by Owens & Kavanagh, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 470 (S.D.N.Y. Oct. 22, 2010), *adopted in* Opinion & Order, *Krys v. Sugrue*, No. 08 Civ. 3086, Dkt. No. 521 (S.D.N.Y. April 25, 2011). The Special Master correctly concluded that the analysis in that report "is fully applicable to the claims against the Mayer Brown Defendants in the same Count." R&R at 17. Plaintiffs do not disagree, only incorporating their previous arguments that the Court has already rejected. *See* Pls.' Obj. at 19. Accordingly, the Court should adopt the Special Master's recommendation.

**CONCLUSION**

For the foregoing reasons, as well as those contained in the Mayer Brown Defendants' Limited Objection, the Court should reject the arguments made in Plaintiffs' Limited Objection and dismiss each of the claims against the Mayer Brown Defendants with prejudice.

Respectfully submitted,

Dated: Washington, D.C.
February 6, 2012

WILLIAMS & CONNOLLY LLP

By: /s/ Craig D. Singer

John K. Villa
George A. Borden
Craig D. Singer
(csinger@wc.com)

725 Twelfth Street, NW
Washington, DC 20005
Tel.: (202) 434-5000

*Attorneys for Defendants Mayer Brown LLP and Edward S. Best*

Dated: New York, New York
February 6, 2012

COOLEY LLP

By: /s/ William J. Schwartz
William J. Schwartz
(wschwartz@cooley.com)
Jonathan P. Bach
Reed A. Smith

1114 Avenue of the Americas
New York, NY 10036-7798
Tel.: (212) 479-6000

*Attorneys for Defendant Joseph P. Collins*

Dated: New York, New York
February 6, 2012

CLAYMAN & ROSENBERG

By: /s/ Charles E. Clayman
Charles E. Clayman
(clayman@clayro.com)

305 Madison Avenue, Suite 1301
New York, NY 10165
Tel.: (212) 922-1080

*Attorneys for Defendant Paul Koury*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of February 2012, a copy of the foregoing Mayer Brown Defendants' Response to SPhinX Plaintiffs' Limited Objection to the Report and Recommendation of the Special Master on the Motions To Dismiss by the Mayer Brown Defendants was filed with the Court through the CM/ECF system. The foregoing was served on counsel of record via the Court's CM/ECF system.

/s/ John Williams
John Williams