```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
                                     :
                                     :
IN RE REFCO SECURITIES LITIGATION    :      07 MDL 1902 (JSR)
                                     :
                                     :
------------------------------------ x
------------------------------------ x
KENNETH M. KRYS, et al.,             :
                                     :
        Plaintiffs,                  :      08 Civ. 3065 (JSR)
                                     :      08 Civ. 3086 (JSR)
          -v-                        :
                                     :
CHRISTOPHER SUGRUE, et al.,          :      MEMORANDUM ORDER
                                     :
        Defendants.                  :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

By Order dated October 24, 2011, the Court adopted in all material respects the August 10, 2011 Report and Recommendation of Special Master Daniel J. Capra in the above-captioned case. That Report and Recommendation recommended that the motions to dismiss of defendants PricewaterhouseCoopers ("PwC") and Mari Ferris be granted in part and denied in part as to defendant PwC and granted in full as to defendant Ferris. On November 8, 2011, plaintiffs moved for reconsideration of this Court's October 24 Order, pursuant to Local Rule 6.3, Local Civil Rules, S.D.N.Y. Defendants submitted their opposition papers on November 16, 2011. Having carefully considered the parties' submissions, the Court hereby denies plaintiffs' motion for reconsideration.

The standard for granting such a motion "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995); Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V., 543 F. Supp. 2d 338, 339 (S.D.N.Y. 2008). Further, Local Rule 6.3 should be "strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Dellefave v. Access Temps., Inc., No. 99 Civ. 6098(RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001). Yet, in the face of these strict standards, plaintiffs here raise only issues that have twice been considered previously, first by Special Master Capra, and then by this Court.

Specifically, plaintiffs move for reconsideration of five separate issues relating to the Court's Order. First, plaintiffs argue that the Court overlooked controlling rules of the Commodity Futures Trading Commission ("CFTC") that would have required PwC, the auditor of SPhinX, to confirm that SPhinX's cash deposited at Refco was properly segregated. Second, plaintiffs argue that the Court overlooked the affidavit of plaintiffs' auditing expert, which was submitted with plaintiffs' objections to the Special Master's Report and Recommendation. Third, plaintiffs argue that the Court exceeded

2

its authority on a motion to dismiss by reaching issues of fact and expert opinion. Fourth, plaintiffs ask this Court to reconsider dismissing their claims with prejudice and allow them leave to replead their claims. Fifth, plaintiffs argue that the Court overlooked controlling authority when it limited plaintiffs' damages on their one remaining claim to the loss of assets deposited at Refco after PwC substantially assisted the Refco fraud through its advisory work on the Refco LBO. None of plaintiffs' arguments meet the strict standard for reconsideration under Local Rule 6.3, let alone have substantive merit.

Starting with plaintiffs' first argument, the Report and Recommendation adopted by this Court concluded that defendants did not have a duty to determine whether plaintiffs' cash deposited at Refco was properly maintained in segregated accounts by Refco. PwC R&R at 9. Plaintiffs argue that in reaching this conclusion the Special Master and the Court overlooked a controlling CFTC rule, 17 C.F.R. § 1.16(d), which, according to plaintiffs, "required PwC to evaluate procedures for safeguarding customer assets as part of its audit." Plaintiffs' Memorandum of Law in Support of Motion for Reconsideration of the Court's October 25, 2011 Order Adopting the August 10, 2011 Report and Recommendation of the Special Master on Motions to Dismiss Brought by Defendants PricewaterhouseCoopers and Mari Ferris ("Pl. Br.") at 1.

The problem with plaintiffs' argument (which the Court could hardly have overlooked, since plaintiff dwelled on it repeatedly in

earlier presentations) is, as Special Master Capra already explained, that even assuming that PwC had been aware that Refco had transferred SPhinX's cash from Refco LLC to Refco Capital Markets, PwC would have had no way of confirming whether the cash was segregated at either Refco LLC or RCM without auditing <u>Refco</u>. <u>See</u> PwC R&R at 5. Plaintiffs, in effect, are arguing that PwC, in its audit of <u>SPhinX</u>, was required to audit Refco/RCM's procedures, and the status of the SPhinX cash held by RCM, in order to satisfy § 1.16. But plaintiffs have not cited any authority that imposes on an auditor a duty to evaluate the procedures used by a third-party separate from the entity it is auditing. Nor does the text of § 1.16 support such an argument; it merely states that an auditor must examine the "procedures for safeguarding customer and firm assets" - which means the procedures of the firm being audited. <u>See, e.g.</u>, <u>In re Refco, Inc.</u>, CFTC No.95-2 (Dec. 20, 1994) ("[T]here existed with respect to Refco a material inadequacy, as defined by Commission Regulation 1.16(d), 17 C.F.R. § 1.16(d) (1994), in . . . the procedures for safeguarding customer and firm assets, or the practices and procedures <u>followed by Refco</u> . . . ." (emphasis supplied)). Likewise, while plaintiffs argue defendants were required to test "segregation," they point to no controlling authority showing an auditor is required to test the segregation procedures of a <u>third-party</u>, rather than the segregation procedures of the firm being audited. Special Master Capra concluded as much when he found that PwC's knowledge of the CFTC segregation requirements in §

4

1.20 said nothing about whether the auditors had a duty to confirm that the assets were in fact segregated at Refco/RCM, PwC R&R at 6 & n.4, and that plaintiffs had failed to show such a duty existed in either the engagement letters or under GAAS. See PwC R&R at 9; see also 17 C.F.R. § 1.16(d)(1) (stating audit "must be made in accordance with generally accepted auditing standards"); Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 453 n.23 (S.D.N.Y. 2010) (accountant has no duty to investigate red flags at a third party non-client, as opposed to the audit client itself); In re Tremont Sec. Law, State Law and Ins. Litig., 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010) (holding auditor of Madoff feeder funds had no duty under GAAS to audit procedures of Madoff himself, a third-party who was not an audit client).

Plaintiffs' second argument relates to this Court's refusal to consider the affidavit of their auditing expert, David Wallace, in considering objections to the Special Master's R&R. See 10/24/11 Order at 1 n.1. In support of their motion for reconsideration of this ruling, plaintiffs argue that when the Special Master considered portions of the deposition of defendant Mari Ferris, he converted defendants' Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, under Rule 12(d). Fed. R. Civ. P. 12(d). This Rule 12(d) argument has not been previously raised to either this Court or the Special Master, and it is inappropriate to raise it in the first instance on a motion for reconsideration. See Nat'l Union Fire Ins.

Co. of Pittsburgh, PA. v. Stroh Cos., 265 F.3d 97, 115 (2d Cir. 2001) (noting that arguments first raised in motion for reconsideration are untimely).

In any event, the argument is without merit. Plaintiffs' own Complaint relies on the deposition testimony of defendant Mari Ferris. See, e.g., FAC ¶¶ 611-12, 622, 641, 702, and the Special Master therefore had every right to take cognizance of that deposition on a 12(b)(6) motion. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see PwC R&R at 6-7.[1] When the Special Master considered this argument, he compared the portions of the deposition that plaintiffs cited with other portions of the deposition transcript. PwC R&R at 6-8. He concluded, and this Court adopted, that plaintiffs' reliance on the transcript to show that Ferris and

---

[1] Plaintiffs argue that the "the complaint never quotes or even references the transcript; it simply alleges that Ferris admitted she knew SMFF's cash was not segregated." Pl. Br. at 11. This is disingenuous, to say the least. Plaintiffs' own first citation in support of this argument is to paragraph 641 of the First Amended Complaint, which reads "PwC partner Mari Ferris has testified that she was actually aware at the time of PwC's audit work that hundreds of millions of dollars of SPhinX cash was concentrated and exposed to credit risk at RCM." FAC ¶ 641 (emphasis supplied); see also FAC ¶ 611-12 (directly quoting from Ferris's "testimony"). It is undisputed that the testimony here referred to is Ferris's deposition testimony. Indeed, as defendants note, it was plaintiffs that provided Special Master Capra with a copy of the Ferris deposition to argue that in the context of the deposition, the portions quoted and cited in the Complaint supported their argument. See Response of PricewaterhouseCoopers LLP and Mari Ferris to the Krys Plaintiffs' Motion for Reconsideration dated November 15, 2011 ("Def. Opp. Br.") at 6 & n.5 (citing Tr., June 14, 1011, at 303-04).

PricewaterhouseCoopers knew the SPhinX cash at RCM was left unprotected was implausible, and instead referred to generic counterparty risk. Id. (describing plaintiffs' reliance on generic answers at the end of a long deposition as "classic form of 'gotcha'"). In objecting to this conclusion, plaintiffs submitted the affidavit of their expert.

It is well settled in this Court that when a plaintiff specifically relies on a document in drafting its complaint, thereby incorporating that document by reference, a court may properly consider the entire document to avoid "cherry-picking" by plaintiffs. See, e.g., Chambers, 282 F.3d at 152-53; S.E.C. v. Siebel Sys., Inc., 384 F. Supp. 2d 694, 700 (S.D.N.Y. 2005). Indeed, Special Master Capra himself noted that, because plaintiffs had repeatedly incorporated testimony from the deposition into their Complaint, see, e.g., FAC ¶¶ 622, 641, 694, he could evaluate the snippets used by plaintiffs in the context of the rest of the deposition. PwC R&R at 6 n.5 (citing Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)). But this in no way opened the door to plaintiffs presenting something entirely outside the complaint - in this case, an expert's affidavit - on a motion addressed to the pleadings. See Cyril v. Neighborhood P'ship II Hous. Dev. Fund, 124 F. App'x 26, 27 n.2 (2d Cir. 2005) (summary order). It is the plaintiffs, and not the Special Master, who here seek to violate the rules.

Plaintiffs' third argument is that the Special Master, in recommending dismissal of most of plaintiffs' claims, made improper conclusions of fact as to PwC's obligations as an auditor and as to whether plaintiffs' reliance on Ferris's deposition plausibly showed knowledge of the SPhinX fraud. The Special Master, however, did not make factual findings. Rather, in evaluating the legal sufficiency of plaintiffs' allegations, he concluded that plaintiffs factual allegations did not even plausibly support several of plaintiffs' claims. See, e.g., PwC R&R at 10-11 (concluding "plaintiffs failed to plausibly allege either 1) that the defendants had a duty to determine whether the assets are RCM were completely unprotected, or 2) that the Defendants in fact knew that the assets at RCM were completely unprotected"). This is, as the Supreme Court of the United States had directed, the role of the Court in evaluating a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (noting Court must draw on "judicial experience and common sense" to determine whether facts alleged plausibly show plaintiff is entitled to relief). Special Master Capra compared plaintiffs' allegations to the elements of plaintiffs' legal claims, and rightly concluded that plaintiffs could not plausibly allege the elements required by the law. This Court adopted the Special Master's reasoning and conclusions, and, here on reconsideration, finds them no less persuasive than previously.

Fourth, plaintiffs argue that they should be given leave to re-plead their dismissed claims. But not only have plaintiffs already

amended their complaint previously and still proved unable to sustain the dismissed claims, but also, as the Special Master determined, no further amendments cure the legal defects in the dismissed claims, which relate to the absence of legal duties and the like. See, e.g., PwC R&R at 9, 11-12.

Fifth and finally, plaintiffs move for reconsideration of the Special Master's conclusion that on plaintiffs' one surviving claim – that PricewaterhouseCoopers aided and abetted the Refco fraud – plaintiffs could not recover damages for assets deposited at Refco before PwC allegedly substantially assisted the Refco fraud through its advisory work for Refco on the LBO. The Special Master reached this conclusion because, by the time PwC engaged in its advisory work, Refco and RCM were already "hopelessly insolvent." PwC R&R at 22. Accordingly, even if PwC had never assisted the Refco fraud and the fraud became public before the LBO, SPhinX would have not recovered its assets then-deposited at Refco, as any recovery in bankruptcy after the inevitable run on Refco and RCM would go to their bankruptcy trustee. Id. Followers of the Refco litigation (to whom the Court extends its sympathy) will recognize this is not a new theory of causation in this case – indeed, Special Master Capra explicitly relied on the same theory in so limiting the potential recovery of the FX customers who had previously deposited assets at RCM. Id. (quoting Private Actions Trust Report and Recommendation, dated June 3, 2010, at 16).

9

Plaintiffs, however, argue that the Special Master and this Court overlooked controlling authority that contradicts this conclusion. Specifically, plaintiffs argue that the causation inquiry for aiding and abetting fraud does not seek to determine what would have happened if the fraud had been revealed, but rather whether the fraud achieved its intended result. See Continental Ins. Co. v. Mercadante, 222 A.D. 181 (1st Dep't 1927). In Continental, the defendants defrauded the plaintiff into holding a worthless asset, rather than selling it. Id. at 182. The defendants, however, argued that even if they had not defrauded the plaintiff, the plaintiff might still have chosen to hold the asset, rather than to sell it. Id. at 186-87. The Appellate Division rejected that argument, holding that what the plaintiff may or may not have done in the absence of fraud was irrelevant – rather, the test was whether there was a reasonable probability that the fraud accomplished the result it was it intended to bring about. Id.; see also AUSA Life Ins. Co. v. Ernst & Young, 206 F.3d 202, 212 (2d Cir. 2002) (holding causation established where auditor's fraud prevented plaintiff from exercising right to accelerate payment on its note, regardless of whether plaintiff would have actually demanded accelerated payment).

Here, however, with respect to the assets deposited at Refco before PwC began its advisory work, the fraud was already accomplished. By the time PwC substantially assisted the Refco fraud, assets that had previously been deposited at Refco were already

unrecoverable, given the insolvency of both Refco and RCM. Nothing PwC did or did not do would have prevented SPhinX and similarly situated customers from losing their assets. Put another way, absent the actions of the defendant, the plaintiffs in <u>Continental</u> and <u>AUSA</u> had a choice: they might or might not have sold their assets, they might or might not have demanded accelerated payments on their note. That choice, which might have allowed those plaintiffs to avoid the harm caused by the fraud, was held irrelevant for causation purposes, because the very fraud alleged foreclosed the exercise of any such choice. But here, even absent PwC's actions, plaintiffs had no way to prevent the loss of their assets deposited at Refco before PwC assisted the Refco fraud. Refco and RCM were insolvent, and a run on the bank would have occurred regardless of whether PwC enabled the Refco fraud to continue. By contrast, the Special Master concluded that if PwC in fact aided and abetted the Refco fraud, it would have induced new assets to be deposited at Refco, only to be sucked up into the SPhinX and Refco frauds, thus allowing plaintiffs to attribute causation to PwC for the inducement of those later deposits. PwC R&R at 23.

In an effort to muddy the waters, plaintiffs argue that the Special Master's analysis in this R&R and in the Private Actions Trust R&R contradict his conclusions in the THL Summary Judgment R&R and in the Grant Thornton Summary Judgment R&R. Not so. The THL R&R dealt with THL's argument that because it assisted in only the IPO of Refco,

11

and not in the hiding of the RGHI receivable or the Round Trip Loans, its assistance in the IPO did not substantially assist any fraud on Grant Thornton in issuing incorrect audits of Refco. See Report and Recommendation of the Special Master on THL's Motion for Summary Judgment on Grant Thornton's Counterclaim dated April 10, 2011 ("THL SJ R&R") at 4. THL was not attempting to limit the damages Grant Thornton could recover to losses sustained after THL became involved in the fraud; rather, THL argued it was not liable at all. Rejecting that argument, Special Capra concluded that THL's assistance in the IPO allowed the Refco insiders to cash-out of their fraud. Thus, THL substantially assisted an ongoing fraud, and could not disclaim liability to Grant Thornton because it did not participate in the fraudulent statements when they were made. Id. There was no discussion about whether Grant Thornton's damages occurred before or after THL's involvement, or whether damages sustained before THL's involvement were unrecoverable. The factual and legal posture in the THL Summary Judgment R&R is therefore inapposite to the allegations in this case, viz., that by the time PwC began aiding and abetting the Refco fraud, the SPhinX assets deposited at Refco were already unrecoverable.

Turning to the Grant Thornton Summary Judgment R&R, plaintiffs argue that the Special Master allowed THL to seek damages from Grant Thornton for the entire result of the fraud, "even though THL relied on Grant Thornton's false statements after it made its investment in the 2004 LBO." Pl. Br. at 18 (quoting Report & Recommendation of the

Special Master on Grant Thornton's Motion for Summary Judgment, dated March 28, 2011 ("GT SJ R&R") at 7). But plaintiffs ignore that THL also relied on Grant Thornton's allegedly false statements in making its <u>initial</u> investment. Indeed, the Special Master explicitly relied on this allegation in holding THL could recover damages caused not only by investing in Refco, but also by retaining its investment (in the very next sentence after the language plaintiffs cite in their brief, no less). GT SJ R&R at 7 ("THL argues that it relied on GT's clean audits and related statements not only to purchase its investment in Refco but also to retain that investment."). Here, however, by the time PwC allegedly assisted the Refco fraud through its advisory work, SPhinX's initial Refco deposits were unrecoverable.[2]

In short, plaintiffs motion is not only procedurally defective but also substantively unpersuasive. Accordingly, plaintiffs' motion for reconsideration of this Court's Order adopting the Special Master's Report and Recommendation is hereby denied in all respects. The Clerk of the Court is directed to close document number 1293 on the docket sheet of 07 MDL 1902, document number 517 on the docket

---

[2] As the Special Master noted, the specific date that divides the assets retained when PwC allegedly began substantially assisting the Refco fraud from the assets deposited afterwards need not be determined now, as this is an issue of fact that depends on which of PwC's actions were material in concealing the Refco fraud. PwC R&R at 24.

sheet of 08 Civ. 3065, and document number 618 on the docket sheet of

08 Civ. 3086.

       SO ORDERED.

                                      _____
                                        JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       February 16, 2012

14