UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                    :

In re REFCO, INC. SECURITIES LITIGATION :     07 MDL 1902 (JSR)
                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                    :

KENNETH M. KRYS, *et al.*,        :
                    :     08 Civ. 3065 (JSR)
           Plaintiffs,   :     08 Civ. 3086 (JSR)
        v.          :

CHRISTOPHER SUGRUE, *et al.*,   :
                    :
          Defendants.   :
                    :
                    :     **FILED ELECTRONICALLY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

**THE LIBERTY CORNER DEFENDANTS' RESPONSE TO THE SPHINX PLAINTIFFS'
OBJECTION TO THE REPORT AND RECOMMENDATION OF THE SPECIAL MASTER
THAT THE AMENDED COMPLAINT BE DISMISSED WITH PREJUDICE**

---

**MARINO, TORTORELLA & BOYLE, P.C.**
**437 Southern Boulevard**
**Chatham, New Jersey 07928-1488**
**(973) 824-9300**
*Attorneys for Defendants Liberty Corner*
*Capital Strategies, LLC and William T. Pigott*

On the Brief:

    Kevin H. Marino
    John D. Tortorella
    Roseann Bassler Dal Pra

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................1

LEGAL ARGUMENT........................................................................................................4

I.      THE COURT SHOULD ADOPT THE SPECIAL MASTER'S REPORT AND
        RECOMMENDATOIN THAT THE AIDING AND ABETTING FRAUD
        CLAIM    BE    DISMISSED    BECAUSE    PLAINTIFFS    FAILED    TO
        ADEQUATELY ALLEGE THAT LIBERTY CORNER HAD KNOWLEDGE
        OF, AND SUBSTANTIALLY ASSISTED, THE UNDERLYING FRAUD....................4

   A.   *Plaintiffs Have Not Sufficiently Alleged That Liberty Corner Had Actual
        Knowledge That The Loan Transactions Were Being Used For A Fraudulent
        Purpose.* ...................................................................................................................4

   B.   *Maggio's Testimony Undermines A Finding Of Actual Knowledge On The Part Of
        Liberty Corner.* ........................................................................................................9

   C.   *Plaintiffs Have Not Sufficiently Alleged That Liberty Corner Substantially Assisted
        The Underlying Fraud.* ............................................................................................12

II.     THE SPECIAL MASTER CORRECTLY RECOMMENDED DISMISSING
        THE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM
        BECAUSE   PLAINTIFFS   FAILED   TO   ADEQUATELY   ALLEGE   THAT
        LIBERTY CORNER HAD KNOWLEDGE OF, AND SUBSTANTIALLY
        ASSISTED, THE BREACH OF FIDUCIARY DUTY....................................................14

   A.   *Plaintiffs Failed To Allege Any Fact Suggesting That Liberty Corner Knew Refco
        Owed A Fiduciary Duty To Plaintiffs.* ...............................................................14

   B.   *Plaintiffs Have Not Sufficiently Alleged That Liberty Corner Substantially Assisted
        The Alleged Breach Of Fiduciary Duty.* ............................................................15

CONCLUSION.................................................................................................................16

# TABLE OF AUTHORITIES

Page

## Cases

ABF Capital Mgmt. v. Askin Capital Mgt., L.P.,
   957 F. Supp. 1308 (S.D.N.Y. 1997) ........................................................ 14

Aetna Cas. & Sur. Co.,
   219 F.3d 519 (6th Cir. 2000) ............................................................... 12

Chemtex, LLC v. St. Anthony Enters., Inc.,
   490 F. Supp. 2d 536 (S.D.N.Y. 2007) ..................................................... 6

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,
   479 F. Supp. 2d 349 (S.D.N.Y. 2007) ...................................... 12, 13, 14

In re Duke Energy Corp. Secs. Litig.,
   282 F. Supp. 2d 158 (S.D.N.Y. 2003) ................................................. 5, 6

In re Flag Telecom Holdings, Ltd. Secs. Litig.,
   308 F. Supp. 2d 249 (S.D.N.Y. 2004) ................................................. 5, 6

JP Morgan Chase Bank v. Winnick,
   350 F. Supp. 2d 393; (S.D.N.Y. 2004) ............................................... 5, 6

Krause v. Forex Exch. Market, Inc.,
   356 F. Supp. 2d 332 (S.D.N.Y. 2005) ................................................... 15

Lerner v. Fleet Bank, N.A.,
   459 F.3d 273 (2d Cir. 2006) ................................................................. 15

Mazzaro de Abreu v. Bank of Am. Corp.,
   525 F. Supp. 2d 381 (S.D.N.Y. 2007) ................................................... 5, 7

Mazzaro de Abreu v. Bank of Am.,
   No. 06 Civ. 673, 2011 U.S. Dist. LEXIS 78388 (S.D.N.Y. June 29, 2011) ............................ 6

Morin v. Trupin,
   711 F. Supp. 97 (S.D.N.Y. 1989) ......................................................... 12

Nathel v. Siegel,
   592 F. Supp. 2d 452 (S.D.N.Y. 2008) ................................................... 12

Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.,
   No. 98 Civ. 4960, 1999 U.S. Dist. LEXIS 11599 (S.D.N.Y. 1999) .......................... 7

Pelman v. McDonalds Corp.,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003) ................................................... 14

Renner v. Chase Manhattan Bank,
   No. 98 Civ. 926, 2000 U.S. Dist. LEXIS 8552 (S.D.N.Y. June 16, 2000) ..................... 7

Ryan v. Hunton & Williams,
   99 Civ. 5938, 2000 U.S. Dist. LEXIS 13750 (E.D.N.Y. Sept. 20, 2000) ..................... 7

Terrydale Liquidating Trust v. Grandich,
 549 F. Supp. 529 (S.D.N.Y. 1982) ........................................................................... 12

Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP,
 586 F. Supp. 2d 119 (S.D.N.Y. 2008) ................................................................... 8, 13

UniCredito Italiano SPA v. JPMorgan Chase Bank,
 288 F. Supp. 2d 485 (S.D.N.Y. 2003) ..................................................................... 12

United States v. Abreu,
 342 F.3d 183 (2d Cir. 2003) ..................................................................................... 11

United States v. Reyes,
 302 F.3d 48 (2d Cir. 2002) ....................................................................................... 11

United States v. Rodriguez,
 983 F.2d 455 (2d Cir. 1993) ..................................................................................... 11

Williams v. Bank Leumi Trust Co. of N.Y.,
 No. 96 Civ. 6695, 1997 U.S. Dist. LEXIS 7538 (S.D.N.Y. May 30, 1997)........................ 7, 13

## Journals & Treatises

Professor David S. Ruder, *Multiple Defendants in Securities Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto and Contribution*, Univ. of Penn. Law Rev. (Apr. 1972) ........... 16

## PRELIMINARY STATEMENT

Defendants Liberty Corner Capital Strategies, LLC and William T. Pigott (collectively, "Liberty Corner") respectfully submit this response to the SPhinX Plaintiffs' objection to the Report and Recommendation of the Special Master, Professor Daniel Capra, that the Court grant Liberty Corner's motion and dismiss the Amended Complaint against them with prejudice (the "R&R").

In a thorough and thoughtful R&R, Special Master Capra recommended dismissing with prejudice both the aiding and abetting fraud claim (Count XXIII) and the aiding and abetting breach of fiduciary duty claim (Count XXIV) against Liberty Corner and the Ingram Defendants (collectively, the "Loan Participants"). R&R at 16, 19. The R&R reflects a straightforward application of well-established principles of New York law and should be adopted.

Plaintiffs base their challenge to the R&R on the argument that the back-to-back loans in which Liberty Corner participated were "at the heart of the Refco fraud." (Objection at 1.) But as Special Master Capra correctly found, allegations as to the Refco principals' use of the back-to-back loans ( the "Loan Transactions") for a nefarious purpose is no substitute for allegations as to Liberty Corner's knowledge in that regard. What Plaintiffs failed to plead plausibly in their Amended Complaint, as the Special Master correctly observed, is that Liberty Corner knew what would be done with the loan proceeds once those funds got to RGHI.

Plaintiffs do nothing in their Objections to point to any portion of the Amended Complaint that could be read to plausibly allege such knowledge. Instead, they simply repeat their mantra that the transactions were "fraudulent on their face," that they "reeked of fraud," and that the Liberty Corner Defendants "knew that they were aiding and abetting a fraud." Insisting that Liberty Corner knew or must have known of the fraud, however, is no substitute for properly pleading actual knowledge and substantial assistance, which Plaintiffs have not done and cannot

1

do here.  As the Special Master correctly noted, these allegations amount, at most, to a claim that Liberty Corner should have known something was amiss.  (R&R at 10.)  Such a claim is not sufficient to satisfy the actual knowledge requirement imposed by New York law.

In particular, as to the aiding and abetting a fraud claim, the Special Master found that the Amended Complaint failed to allege sufficient facts that Liberty Corner actually knew or consciously avoided knowing that the Loan Transactions were used to pay down and then unwind the pay-down of the hidden RGHI receivable.  In so finding, he correctly determined that the Loan Transactions were not *per se* fraudulent and that the most Plaintiffs have alleged is that Liberty Corner may have seen "red flags."  That is not enough to support an aiding and abetting claim under New York law.

With respect to the substantial assistance element of the aiding and abetting a fraud claim, Special Master Capra recognized that, as a general rule under New York law, substantial assistance of a financial statement fraud will only be found where the defendant actually participated in preparing or disseminating the financial statements.  Because the Amended Complaint does not allege that Liberty Corner participated in the preparation or dissemination of false financial statements and because it does not contain any facts showing why the general rule should not apply to Liberty Corner, Special Master Capra properly concluded that Plaintiffs failed to adequately allege substantial assistance on the part of Liberty Corner.

Realizing that the Amended Complaint as written is irretrievably flawed, Plaintiffs focus most of their energy on asserting that the testimony of Santo Maggio — former Executive Vice President of RGL, President of RCM, and one of the architects of the Refco fraud — is enough to warrant the Court granting leave to file yet another amended complaint.  As the Special Master correctly found, it does not.  Although Maggio confirmed that the Loan Transactions had

a nefarious purpose from Refco's perspective, he did nothing to address Liberty Corner's state of knowledge.  Indeed, Maggio confirmed that he lied to the Loan Participants about the purpose of the transactions because he was concerned that if they knew the truth about those transactions they would not only decline to engage in them but also would stop being Refco customers.  His testimony would thus render futile any effort to amend the complaint.

As for the claim for aiding and abetting a breach of fiduciary duty, the Special Master recognized that it was self-evident that if Liberty Corner did not even know of Plaintiffs' existence, then it could not possibly have known that Plaintiffs had a relationship of trust and confidence with Refco.  He further pointed out that if Liberty Corner did not know how the relationship was being breached, then it could not have sufficient knowledge of a breach of fiduciary duty.    With respect to substantial assistance of the aspect of the claim based on a false financial statement fraud, the Special Master found that, as with the aiding and abetting a fraud claim, it could not be sustained absent any allegations that Liberty Corner participated in the preparation or dissemination of the false financial statements.

For the reasons set forth in the R&R and in its prior submissions, Liberty Corner respectfully submits that the Court should reject Plaintiffs' objections, adopt the R&R in full, and dismiss the aiding and abetting claims against Liberty Corner with prejudice.

## LEGAL ARGUMENT

I.   **THE COURT SHOULD ADOPT THE SPECIAL MASTER'S REPORT AND RECOMMENDATOIN THAT THE AIDING AND ABETTING FRAUD CLAIM BE DISMISSED BECAUSE PLAINTIFFS FAILED TO ADEQUATELY ALLEGE THAT LIBERTY CORNER HAD KNOWLEDGE OF, AND SUBSTANTIALLY ASSISTED, THE UNDERLYING FRAUD.**

   A.   *Plaintiffs Have Not Sufficiently Alleged That Liberty Corner Had Actual Knowledge That The Loan Transactions Were Being Used For A Fraudulent Purpose.*

Plaintiffs first object to Special Master Capra's conclusion that Plaintiffs failed to sufficiently allege knowledge on the part of Liberty Corner on the ground that his analysis "overlooks the obvious fraudulent nature of the round-trip loans." (Objection at 5.) Plaintiffs argue that "the extension of hundreds of millions of dollars of no-risk, uncollateralized loans over the span of a couple of weeks straddling the end of a company's financial reporting period, intended to be unwound with the payment of the spread of interest, cannot be explained as a legitimate business transaction." (Id.)

As the Special Master correctly concluded, this argument lacks merit for several reasons. First, Plaintiffs' characterization of the Loan Transactions as "no-risk" loans is not accurate. Although Refco Group Ltd. ("RGL") guaranteed that Refco Group Holdings Inc. ("RGHI") would pay back the loan Liberty Corner made to RGHI, this did not render the loan transactions risk-free, it merely shifted the risk of default from RGHI to RGL. (Marino Decl., Ex. B, Guarantee from RGL to Liberty Corner dated February 25, 2002.) The risk of RGL defaulting, as it turned out, was not zero, given Plaintiffs' contention that Refco was insolvent at the time. If Liberty Corner knew, as Plaintiffs' allege, that the Loan Transaction was being used to disguise RGL's insolvency, the guaranty would not have been meaningful. R&R at 10 ("If Ingram or Liberty Corner knew or even suspected that Refco was doing these transactions to hide a giant

4

receivable, why would they think that a guarantee from a bankrupt entity would mean anything at all?")

Second, the allegation that the loans occurred on a regular basis and straddled the end of Refco's financial reporting periods does not support a finding of actual knowledge on the part of Liberty Corner.  The Amended Complaint makes clear that the frequency of the Loan Transactions increased six months prior to the LBO and that, at times, the transactions took place within one month of each other, timing not consistent with any regular fiscal reporting schedule. (Am. Compl. ¶ 1016.)  Finally, although Plaintiffs place significant emphasis on the fact that the size and frequency of the loan transactions increased as Refco's LBO and IPO approached (Objection at 2-3), there is no allegation that Liberty Corner knew Refco was planning an LBO or IPO.

Third, that Liberty Corner received payment of the "spread" between the interest rates of the two loans is insufficient to support a finding of knowledge on their part.  See Mazzaro de Abreu v. Bank of Am. Corp., 525 F. Supp. 2d 381, 389 (S.D.N.Y. 2007) (recognizing that a defendant's "alleged profit motive does not provide a strong inference of fraudulent intent, and thus does not imply actual knowledge of the underlying fraud.").

Fourth, the mere fact that the Loan Transactions were reciprocal in nature does not make them inherently fraudulent.  As the Special Master found: "[t]here is significant case law . . . establishing that the kind of back-to-back loans at issue in this case are not *per se* fraudulent." (R&R at 10.) (citing In re Duke Energy Corp. Secs. Litig., 282 F. Supp. 2d 158, 161 (S.D.N.Y. 2003); JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 409 (S.D.N.Y. 2004); In re Flag Telecom Holdings, Ltd. Secs. Litig., 308 F. Supp. 2d 249, 261 (S.D.N.Y. 2004)).  (Objection at 6.)  In Duke, this Court explicitly noted that "'wash sales' and 'round-trip trading' are not

5

necessarily illegal *per se.*"  282 F. Supp. 2d at 161.  In <u>Winnick</u>, the court stated that "[j]ust as disclosing the existence of reciprocal transactions does not amount to disclosure of the underlying fraud, neither would it necessarily have put the plaintiffs on notice that they should have investigated whether the reciprocal transactions were shams."  350 F. Supp. 2d at 409.  In <u>Flag</u>, the court recognized that "there is nothing inherently wrong with reciprocal transactions."  308 F. Supp. 2d at 261.  Thus, although Plaintiffs allege that Refco used the Loan Transactions for an improper or illegal purpose, there are no facts to support Plaintiffs' conclusion that Liberty Corner knew the transactions were being so used.

Nor was Liberty Corner under any duty to inquire into the reasons why Refco wanted to engage in the transactions.[1]  Despite clear law to the contrary, Plaintiffs continue to assert that allegations of "red flags" are sufficient to satisfy the knowledge requirement.  (Objection at 5.)  Under New York law, alleged ignorance of red flags or warning signs indicating the existence of wrongdoing does not amount to actual knowledge.  <u>Chemtex, LLC v. St. Anthony Enters., Inc.</u>, 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) ("New York courts have routinely held that when a defendant is under no independent duty, even alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege 'actual knowledge.'"); <u>Mazzaro de Abreu v. Bank of Am.</u>, No. 06 Civ. 673, 2011 U.S. Dist. LEXIS 78388, at *32 (S.D.N.Y. June 29, 2011) ("[N]otice

---

[1] Plaintiffs complain that "[t]his case is almost four years old and neither the Special Master nor the Defendants have ever articulated what the legitimate purpose of the round-trip loans might have been."  (Objection at 6.)  Plaintiffs ignore that, as Mayer Brown pointed out in its Memorandum of Law in support of its motion to dismiss, "[b]ack-to-back loans are used legitimately in numerous contexts, including for tax purposes, regulatory purposes, foreign exchange transactions, whole business securitization, municipal financing, and sovereign debt restructuring, not to mention for investment purposes."  (Mayer Brown Br. [*Dkt. # 204*] at 44 n.24 (citing *JP Morgan Shares Down After Financing Bear Stearns; Analysts Back Ratings*, available at http://www.forbes.com/afxnewslimited/feeds/afx/2008/03/14/afx4-775498.html (last viewed Nov. 25, 2008), (Ward Decl., Ex. 14) (discussing Federal Reserve's financing of Bear Stearns with "back-to-back financing" through JP Morgan)).

of 'red flags' does not indicate actual knowledge."); Mazzaro, 525 F. Supp. 2d at 389 (finding that plaintiffs' allegations that the nature of the transfers out of the account, which occurred within three days of receipt of funds by defendants, and the general amount of funds within the account, indicated at most constructive knowledge and were insufficient to support actual knowledge); Ryan v. Hunton & Williams, 99 Civ. 5938, 2000 U.S. Dist. LEXIS 13750, at *25-27 (E.D.N.Y. Sept. 20, 2000) (authorization of transfers between accounts, approval of multiple wire transfers, and referral of accounts to fraud investigative unit based on suspicions of fraud did not raise an inference of actual knowledge); Renner v. Chase Manhattan Bank, No. 98 Civ. 926, 2000 U.S. Dist. LEXIS 8552, at *21-23 (S.D.N.Y. June 16, 2000) (suspicion about uses to which bank account was being put, refusal to approve questionable transactions, and closure of accounts due to irregularities did not constitute actual knowledge); Nigerian Nat'l Petroleum Corp. v. Citibank, N.A., No. 98 Civ. 4960, 1999 U.S. Dist. LEXIS 11599, at *24, 26 (S.D.N.Y. 1999) (although there may have been several red flags that should have alerted bank to wrongdoer's fraud or at least prompted it to investigate, and although bank may have acted negligently in allowing wrongdoer to make additional wire transfers even after a fraudulent transfer was uncovered, "allegations that a bank disregarded suspicious circumstances which might have well induced a prudent banker to investigate do not suffice" to state a claim for aiding and abetting) (quotation marks and alterations omitted); Williams v. Bank Leumi Trust Co. of N.Y., No. 96 Civ. 6695, 1997 U.S. Dist. LEXIS 7538, at *14 (S.D.N.Y. May 30, 1997) (finding that sequence of account transfers and contention that defendant was informed that the purpose of the check was to purchase stock only raised the issue of constructive knowledge of check-kiting scheme, which was insufficient to state a claim for aiding and abetting). The R&R and the case law on which it relies amply support the proposition that where there is no

independent duty to inquire, failure to heed obvious warning signs does not suffice to adequately allege actual knowledge.  (R&R at 10-11.)

Plaintiffs rely on Judge Lynch's decision in <u>Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP</u>, 586 F. Supp. 2d 119, 132-33 (S.D.N.Y. 2008), to support their assertion that "red flags" can support of finding of actual knowledge.  Plaintiffs' reliance is misplaced.  As Judge Lynch made clear, the facts that gave rise to a strong inference of actual knowledge on the part of Grant Thornton in that case were not simply knowledge of the loan transactions themselves; rather, plaintiffs alleged that Grant Thornton also (a) knew of the existence of a significant unsecured receivable owed to Refco by RGHI; (b) knew of the repeated disappearance and reappearance of large receivables through transactions that straddled the end of Refco's financial reporting periods; (c) knew of at least one instance in which a "reverse repo" transaction between Refco and a third party coincided exactly with an identical RGHI "reverse repo" transaction on the same day in the same amount; and (d) had "longstanding concerns regarding the 'high risk of material misstatement' posed by the  related-party transactions between Refco and RGHI."  586 F. Supp. 2d at 132-33.

Here, Plaintiffs simply assume Liberty Corner's knowledge of many facts they would need to have known to be properly charged with aiding and abetting the fraud.  In stark contrast to <u>Thomas H. Lee</u>, however, there are no factual allegations nor evidence in the record from which it can reasonably be inferred that Liberty Corner (a) knew about the RGHI receivable; (b) knew that the RGHI receivable would not be reflected on Refco's financial statements; (c) knew that the RGHI receivable would appear and disappear from Refco's financial statements; (d) were concerned that Refco might use the loan transactions to somehow make material

misrepresentations on their financial statements; or (e) knew that there was going to be an LBO or IPO, which the Refco Insiders would use to cash out on their fraud.

Accordingly, the Special Master correctly concluded that Plaintiffs failed to adequately allege that Liberty Corner actually knew, or consciously avoiding knowing, that the Loan Transactions were used to commit the underlying fraud.

### B.   Maggio's Testimony Undermines A Finding Of Actual Knowledge On The Part Of Liberty Corner.

Plaintiffs next object to the Special Master's conclusion that Maggio's deposition testimony — during which he admitted that he lied to the Loan Participants about the purpose of the Loan Transactions because he knew that if he had told the truth, the Loan Participants would have ceased doing business with Refco — rendered Liberty Corner's awareness of the underlying fraud implausible and any amended pleading futile.[2]   This conclusion is amply supported by Maggio's testimony.[3]

Insofar as Plaintiffs argue that Refco's phony financial statements enabled Refco to entice customers such as Plaintiffs to keep their accounts at Refco, Maggio made clear that the same could be said of the Loan Participants themselves.  (Marino Decl., Ex. A, 6/2/2009 Maggio Tr. Testimony (Collins) at 2273:8-18; Ex. B, 12/16/2009 Maggio Dep. Tr. at 927:22 – 930:14.) Specifically, Maggio testified that he could not tell the Loan Participants about the fraudulent

[2] Plaintiffs did not object to the Special Master's finding that Maggio's deposition testimony has no relevance as to the sufficiency of the allegations in the Amended Complaint, but rather relates to the issue of whether Plaintiffs should be granted leave to amend the complaint again in the event the Court dismisses the Amended Complaint.

[3] Plaintiffs complain in their Objection that "the Special Master did not cite any specific testimony of Maggio" to support the proposition that he lied to the Loan Participants.  (Objection at 11 n.1.)  This is inaccurate.  At page 12 of the R&R, the Special Master cited to a portion of the extensive oral argument he conducted regarding the Maggio deposition testimony at which counsel read to the Court verbatim that portion of Maggio's testimony in which he admitted that he lied to the Loan Participants and explained that he did so they would remain customers of Refco.

purpose to which he would put the funds once they reached RGHI: he was concerned that if the Loan Participants, all of whom were preexisting customers of Refco, knew the true purpose behind the Loan Transactions, they would discover Refco's financial troubles and cease doing business with Refco, and with no Refco customers, no Refco, and with no Refco, no more millions of dollars for Maggio each year.  (Id., 12/16/2009 Maggio Dep. Tr. at 927:22 – 930:14.)

In addition to admitting to lying to customers, Maggio admitted that Peter McCarthy ("McCarthy") (who was the key Refco person in terms of engaging customers, including Liberty Corner, to participate in Loan Transactions) was himself unaware of the improper purpose of the transactions and was unaware of the RGHI receivable.  (Id., at 956:5-12, 957:24 – 958:6).  In fact, as he did with the Loan Participants, Maggio led McCarthy to believe that the Loan Transactions were legitimate.  (Id., 12/16/2009 Maggio Dep. Tr. at 958:14-16).

Liberty Corner had neither a duty nor any reason to question Maggio under the circumstances, in which (a) the transaction was presented as legitimate; and (b) Mayer Brown, a prestigious law firm, prepared the loan documentation.  And Maggio made clear during his deposition that had Liberty Corner questioned him about the transactions, he would have lied. (Id., 12/15/2009 Maggio Dep. Tr. at 612:11-18) (testifying that if a customer inquired as to the purpose of the loan transactions, they were lied to).

The excerpts of Maggio's testimony relied on by Plaintiffs that (a) anybody with experience who would have examined the loan documents would have realized that the loan documents were fraudulent on their face; (b) the Loan Transactions were obviously not balance sheet transactions and the Loan Participants could not have believed that they were; and (c) the Loan Transactions were not time deposits and Maggio did not believe that there was any basis upon which somebody in the broker/dealer business could believe that they were, are all entirely

10

irrelevant to the conscious avoidance inquiry, which is a subjective inquiry that focuses on whether the defendant himself disregarded a fact "despite his actual, subjective 'awareness of the *high probability* of [its] existence.'"  United States v. Abreu, 342 F.3d 183, 188 (2d Cir. 2003) (quoting United States v. Reyes, 302 F.3d 48, 54 (2d Cir. 2002) (emphasis in Abreu).  It is not, as Plaintiffs would have it, that Liberty Corner "should have known the particular fact."  Id.   See also United States v. Rodriguez, 983 F.2d 455, 458 (2d Cir. 1993) (rejecting as too "perilously close to a negligence standard" prior Second Circuit decisions approving ostrich instructions that circumstances "*should have apprised [defendants]* of the unlawful nature of their conduct") (emphasis in original).

With respect to Maggio's testimony concerning his belief that the Loan Participants engaged in the loan transactions as "favors" to Maggio, they do not support a high inference of actual knowledge or conscious avoidance on the part of Liberty Corner.  Maggio does not allege that the transactions executed by Refco for Liberty Corner were fraudulent.  (Marino Decl., Ex. B, 12/16/2009 Maggio Dep. Tr. at 915:2-8) (testifying that the transactions involving Liberty Corner were unusual, but not fraudulent).   In fact, with respect to the Liberty Corner transactions, Maggio admitted that he lacked personal knowledge concerning those transactions; that he does not know whether they were principal transactions or agency transactions; and that he does not even know whether the NASD markup rule applied to those transactions.  (Id. at 897:5-8, 17-20; 902:10-16; 922:11-19).   Even if the Court were to credit the assertion that Liberty Corner owed Maggio a favor, it would not support an inference of actual knowledge or conscious avoidance in light of Maggio's testimony regarding the need to conceal the scheme from the Loan Participants.  (R&R at 12.)

In short, Maggio's testimony demonstrates, as the Special Master found, that permitting Plaintiffs the opportunity to file another amended pleading would be futile.

### C.    Plaintiffs Have Not Sufficiently Alleged That Liberty Corner Substantially Assisted The Underlying Fraud.

Plaintiffs term "unsupportable" the Special Master's conclusion that the Amended Complaint fails to adequately allege that Liberty Corner substantially assisted the underlying fraud because there are no allegations that they ever reviewed, helped prepare, or even saw the financial statements that the Plaintiffs rely upon for their claimed damages.  (Objection at 14; R&R at 13.)  To the contrary, the Special Master's recognition of the general rule in New York that substantial assistance of a financial statement fraud will only be found if the defendant actually participated in preparing or disseminating the financial statements is well-supported by the law.  See R&R at 13-14 (discussing Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007); id. at 14 (also relying upon Morin v. Trupin, 711 F. Supp. 97, 113 (S.D.N.Y. 1989); Terrydale Liquidating Trust v. Grandich, 549 F. Supp. 529, 531 (S.D.N.Y. 1982); Nathel v. Siegel, 592 F. Supp. 2d 452, 470 (S.D.N.Y. 2008).[4]

Plaintiffs contend that the Special Master's reliance on Fraternity Fund is misplaced because the court there held that some "plaintiffs had adequately alleged substantial assistance where the defendants Back of America Securities, LLC ["BAS"] allegedly confirmed phony net asset values of a fund which were subsequently incorporated into the fund's audited financial

---

[4] The Sixth Circuit decision relied on by Plaintiffs, Aetna Cas. & Sur. Co., 219 F.3d 519, 537 (6th Cir. 2000), is inapposite because, as Special Master Capra noted, "the opinion applies Ohio law, and does not discuss the basic New York rule requiring participation in the preparation or dissemination of the financial statement itself."  (R&R at 15 n.10.)  And as Special Master Capra noted, UniCredito Italiano SPA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003), on which Plaintiffs also rely, "devoted only a few sentences to the substantial assistance question" and "did not refer to or discuss the basic rule on substantial assistance in financial statement fraud cases, and it did not explain why or whether the defendant's conduct fell outside that rule."  (Id.)

statements." (Objection at 15 (citing <u>Fraternity Fund</u>, 479 F. Supp. 2d at 372-73)). The BAS conduct that Judge Kaplan found gave rise to a strong inference of actual knowledge in <u>Fraternity Fund</u> is hardly analogous to the conduct of Liberty Corner in this case. In <u>Fraternity Fund</u>, BAS was alleged to have aided and abetted a fraud that involved overstating the NAV of a hedge fund that invested in illiquid mortgage-backed securities. In connection with the audit of the fund in 2002, the auditor required submission of independent marks to corroborate the manager's valuation of each security in the portfolio. In connection with one audit in 2002, Plaintiffs alleged that the fund manager was unable to obtain independent marks for certain securities and asked a broker at BAS to put the manager's marks on BAS letterhead and send them to the auditor as BAS's independent valuations. 479 F. Supp. 2d at 370-72. Because the BAS agent falsely submitted the manager's marks to the auditor as BAS's own, the Court held that there was a strong inference that BAS knew it was aiding and abetting a fraud; the Court therefore concluded that the alleged provision of the false marks adequately pleaded substantial assistance. <u>Id.</u> at 372.

Here, by contrast, Liberty Corner had no reason to know that the transactions at issue were being used to falsify Refco's financial statements. Plaintiffs have alleged only that Liberty Corner participated in the Loan Transactions, which transactions — as Grant Thornton pointed out in <u>Thomas H. Lee</u> and the Special Master concluded here — are not in and of themselves fraudulent. 586 F. Supp. 2d at 132. Simply put, Liberty Corner's mere participation in the Loan Transactions, without more, does not amount to substantial assistance. <u>See</u> <u>Rosner</u>, 2008 U.S. Dist. LEXIS 105984, at *43 (rejecting argument that provision of banking services, without more, constitutes substantial assistance); <u>see also</u> <u>Williams v. Bank Leumi Trust Co.</u>, No. 96 Civ. 6695, 1997 U.S. Dist. LEXIS 7538, at *14 (S.D.N.Y. May 30, 1997). Accordingly, Special

Master Capra correctly concluded that Plaintiffs have failed to allege sufficient facts to escape the general and well-reasoned rule that substantial assistance of a financial statement fraud requires participation in the preparation or dissemination of the statement.[5]

## II.   THE SPECIAL MASTER CORRECTLY RECOMMENDED DISMISSING THE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM BECAUSE PLAINTIFFS FAILED TO ADEQUATELY ALLEGE THAT LIBERTY CORNER HAD KNOWLEDGE OF, AND SUBSTANTIALLY ASSISTED, THE BREACH OF FIDUCIARY DUTY.

### A.   *Plaintiffs Failed To Allege Any Fact Suggesting That Liberty Corner Knew Refco Owed A Fiduciary Duty To Plaintiffs.*

With respect to the knowledge element of their aiding and abetting a breach of fiduciary duty claim, Plaintiffs do not make any specific objection to the Special Master's conclusions that (a) if a defendant does not know of a company's existence, it cannot know that the company had a relationship of trust and confidence with Refco; (b) if a defendant does not know how the relationship was being breached, it does not have sufficient knowledge of the breach of fiduciary duty; (c) nowhere in the Amended Complaint are there any factual allegations indicating that Liberty Corner was aware that customer assets were being upstreamed; and (d) even if Liberty Corner knew that customer assets were being upstreamed, such knowledge is not equivalent to knowing that the upstreaming was a violation of a breach of fiduciary duty stemming from a relationship of trust and confidence.   (R&R at 17.)   Instead, Plaintiffs simply reiterate the

---

[5] Plaintiffs do not object to the Special Master's conclusion that the exception to the general rule, as found in ABF Capital Mgmt. v. Askin Capital Mgt., L.P., 957 F. Supp. 1308, 1328 (S.D.N.Y. 1997) and recognized in Fraternity Fund, is not applicable here.   (R&R at 14-15).   Plaintiffs argue that they have adequately alleged proximate cause.   (Objection at 16-17).   Because they have not alleged that Liberty Corner assisted in the making or dissemination of Refco's financial statements, however, they cannot establish that their losses were proximately caused by Liberty Corner's actions.   See Fraternity Fund, 479 F. Supp. 2d at 371.   Where, as here, "no reasonable person could find causation based on the facts alleged in the complaint[,]" the court should credit the Special Master's determination that proximate cause is lacking as a matter of law.   See Pelman v. McDonald's Corp., 237 F. Supp. 2d 512, 538 (S.D.N.Y. 2003).

conclusory assertion in the Amended Complaint that "the RTL Participants each knew about and understood these breaches . . . ." (Objection at 18.) As the Special Master appropriately found, this conclusory assertion "cannot be credited under the standards of Rule 9(b), or, for that matter, under Rule 8." (R&R at 17 n.11) (citing Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292-93 (2d Cir. 2006); Krause v. Forex Exch. Market, Inc., 356 F. Supp. 2d 332, 339 (S.D.N.Y. 2005)).

Accordingly, the Special Master correctly concluded that Plaintiffs have not shown, and cannot show, that Liberty Corner had knowledge of Refco's breach of fiduciary duty based on a relationship of trust and confidence. [6]

### B. Plaintiffs Have Not Sufficiently Alleged That Liberty Corner Substantially Assisted The Alleged Breach Of Fiduciary Duty.

Similar to the knowledge element, Plaintiffs do not make any specific objection to the Special Master's conclusions as to the substantial assistance element. These conclusions include the following: (a) because the alleged breach of fiduciary duty is based on reliance on false financial statements, it follows that, for the reasons articulated by the Special Master with respect to Count XXIII, Plaintiffs have failed to allege any substantial assistance to the alleged breach of fiduciary duty claimed in Count XXIV; and (b) with respect to the alleged breach of fiduciary duty based on the diversion of SMFF's cash, it may be plausible to believe that the Loan Transactions substantially assisted in the sense that they were necessary to provide an opportunity for the upstreaming that was also necessary to keep Refco afloat, but even if that were so, Plaintiffs' damages are limited to the loss of assets placed with RCM *after the* date of the misconduct that caused SPhinX/PlusFunds to place funds at Refco. As the Special Master

---

[6] Plaintiffs also argue that Liberty Corner knew Refco was breaching its fiduciary duty arising from the fact of Refco's insolvency. (R&R at 19-20). The Special Master, however, has already correctly concluded that Plaintiffs have not sufficiently alleged a breach of fiduciary duty on the basis of operation within the zone of insolvency. (R&R at 16 (citing Primary Wrongs R&R at 42)).

properly concluded, it is not necessary to determine the extent to which the Loan Transactions may have substantially assisted Refco's breach of fiduciary duty because the Amended Complaint is "completely deficient in alleging that Liberty Corner knew about any fiduciary relationship between Refco and SphinX/PlusFunds that was being breached by upstreaming of assets."[7] (R&R at 18-19.) Plaintiffs offer no response to this argument and instead simply repeat the allegations contained in the Amended Complaint, which the Special Master has already correctly concluded were not sufficient to sustain an aiding and abetting claim against Liberty Corner. (Objection at 20-21.)

## CONCLUSION

For the reasons set forth above and in (i) the February 10, 2012 Report and Recommendation of the Special Master; (ii) the principal and reply briefs of defendants Liberty Corner Capital Strategies, LLC and William T. Pigott; and (iii) the Loan Participants' Supplemental Memorandum Concerning the Deposition Testimony of Santo Maggio, the Liberty Corner Defendants respectfully request that the Court (a) reject the objections made by the

---

[7] Even if it could be assumed that the Loan Transactions provided assistance to Refco's fraud and/or its breach of fiduciary duty, knowledge on the part of Liberty Corner at the time it made the Loan Transactions is a crucial factor that must be found in order to prevent automatic liability from being imposed upon Liberty Corner due to its mere participation in the Loan Transactions. As one commentator stressed:

> If it is assumed that an illegal scheme existed and the bank's loan or other activity provided assistance to that scheme, some remaining distinguishing factor must be found in order to prevent such automatic liability. The bank's knowledge of the illegal scheme at the time it loaned the money or agreed to loan the money provides that additional factor. Knowledge of wrongful purpose thus becomes a crucial element in aiding and abetting or conspiracy cases.

Professor David S. Ruder, *Multiple Defendants in Securities Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto and Contribution*, Univ. of Penn. Law Review at 630-31 (Apr. 1972). Having failed to sufficiently allege knowledge on the part of the Liberty Corner Defendants, the aiding and abetting claims must be dismissed even if it is plausible that the Loan Transactions assisted the underlying fraud and/or the breach of fiduciary duty.

Plaintiffs to Special Master Capra's Report and Recommendation dated February 10, 2012; (b)

adopt the Report and Recommendation in full; and (c) dismiss Counts XXIII and XXIV of the

Amended Complaint with prejudice as to Liberty Corner.

Respectfully submitted,

MARINO, TORTORELLA & BOYLE, P.C.

Dated: Chatham, New Jersey
      March 2, 2012

BY: _____
                    Kevin H. Marino