USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/10/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
In re REFCO INC. SECURITIES         :   07 MDL 1902 (JSR)
LITIGATION                          :
------------------------------------x
------------------------------------x
KENNETH M. KRYS, et al.,            :
                                    :
         Plaintiffs,                :   08 Civ. 3065 (JSR)
                                    :   08 Civ. 3086 (JSR)
         -v-                        :
                                    :   MEMORANDUM ORDER
CHRISTOPHER SUGRUE, et al.,         :
                                    :
         Defendants.                :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

On September 5, 2011, Special Master Daniel J. Capra issued a Report and Recommendation ("R&R") in the above-captioned cases on the omnibus issue of the applicability to plaintiffs' claims of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). Pub. L. No. 105-353, 112 Stat. 3227. After both the plaintiffs and defendants timely submitted their objections to the R&R and each party responded thereto, the Court heard oral argument on November 30, 2011 and considered the entire matter de novo. Having done so, the Court finds itself in agreement with the Special Master's conclusion that plaintiffs' claims are not barred by SLUSA. Because, however, the Court partly departs from the Special Master's analysis in reaching this conclusion, it issues this Memorandum Order to explain its own reasoning.

SLUSA was enacted by Congress to prevent plaintiffs from evading the limitations on federal securities class actions

that Congress imposed through the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Pub. L. No. 104-67, 109 Stat. 737; see Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 107-08 (2d Cir. 2001); SLUSA § 2(1)-(5) (finding that shift of securities class actions from federal to state court was frustrating objectives of PSLRA). SLUSA addresses this problem by precluding class action plaintiffs from filing any state or common law claims that allege "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" so long as their action is considered a "covered class action" under the statute. 15 U.S.C. § 78bb(f)(1)(A); Romano v. Kazacos, 609 F.3d 512, 520 n.10 (2d Cir. 2010) (explaining how SLUSA "precludes" rather than "preempts" state law claims by rendering them "nonactionable"). A "covered class action" is defined as:

> (i) any single lawsuit in which-
> (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
> (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or
>
> (ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which-
> (I) damages are sought on behalf of more than 50 persons; and

2

> (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(B).

Accordingly, this Court must first decide whether the above-captioned Krys v. Sugrue action[1] in the Refco multi-district litigation is a "covered class action" under SLUSA before it reaches the question of whether the Krys action presents claims precluded by SLUSA. By way of background, this Krys action includes two sets of plaintiffs. One set of plaintiffs, the SPhinX family of funds, entered into voluntary liquidation in the Cayman Islands after Refco collapsed. Kenneth M. Krys and Margot MacInnis are their Joint Official Liquidators ("JOLs"), and represent the SPhinX funds in this action. The other plaintiff is The Harbour Trust Ltd., which is Trustee for the SPhinX Trust. The SPhinX Trust is the assignee of claims from the estate of PlusFunds. PlusFunds created SPhinX and served as its investment manager.

Defendants argue that the Krys action is a lawsuit that is a covered class action within the meaning of section 78bb(f)(5)(B)(I), or, in the alternative, that the Krys action should be grouped with other actions in the Refco multi-district litigation such that it is a covered class action within the meaning of section 78bb(f)(5)(B)(II). As to the first argument,

---

[1] What is here called the "Krys action" refers only to the above-captioned Krys v. Sugrue cases, and not the related cases of Krys v. Aaron, 08 Civ. 7416; Krys v. Butt, 08 Civ. 8267; Krys v. Deutsche Bank, 10 Civ. 3594; and Krys v. Schulte Roth & Zabel

3

the first question is whether one of the named plaintiffs in this case, the SPhinX Trust, is in fact seeking damages on behalf of more than fifty persons. While it is undisputed that there are more than 50 creditors of SPhinX,[2] the only stated beneficiaries of the SPhinX Trust are Krys and MacInnis, the JOLs of the SPhinX funds. Special Master Capra determined that the JOLs, "the rough equivalent of bankruptcy trustees" in the Cayman Islands, are entitled to "entity" treatment under SLUSA (see footnote 2, supra), and accordingly concluded that the Krys action, standing alone, does not seek damages on behalf of more than fifty people. SLUSA R&R at 7-8; see Smith v. Arthur Andersen LLP, 421 F.3d 989, 1007-08 (9th Cir. 2005) (bankruptcy trustee is "entity" counted as one person). The Court agrees, and adopts his treatment of this issue in full as if incorporated herein, see R&R at 6-8 (Part III.A), but adds a few comments:

    Defendants argue that the Special Master should have counted the ultimate beneficiaries of any recovery by the Trust (i.e., the numerous creditors), not the stated (or "nominal") beneficiaries (the JOLS), in determining whether the SPhinX Trust sought damages on behalf of more than fifty persons. After all,

---

LLP, 11 Civ. 1486.
[2] Congress has specified that in counting "persons or prospective class members," the Court should treat "a corporation, investment company, pension plan, partnership, or other entity" as only one person as long as that entity is not established "for the purpose of participating in the action." § 78bb(f)(5)(D). Plaintiffs acknowledge, however, that the SPhinX Trust was created "for the express purpose of pursuing claims belonging to PlusFunds," and thus admit that the SPhinX Trust is not entitled to entity

4

the defendants argue, the SPhinX Trust was established not for the personal benefit of the JOLs, but rather for the benefit of the creditors and interest holders of the SPhinX funds. Defendants' Objection to the Report and Recommendation of the Special Master on the Omnibus Issue of the Applicability of SLUSA ("Def. Obj.") at 14.

This argument would, however, rewrite the text of the statute. A covered class action is an action that seeks damages "on behalf of more than 50 persons or prospective class members." § 78bb(f)(5)(B)(i)(I). An entity not established for the purpose of participating in the litigation "shall be treated as one person or prospective class member." § 78bb(f)(5)(D). Here, the SPhinX Trust expressly brings this action on behalf of two beneficiaries, each of which meets the requirements to be counted as one person. Nothing in the statute suggests that this should be ignored in favor of focusing on the ultimate beneficiaries of any recovery. See, e.g., LaSala v. Bank of Cyprus Pub. Co. Ltd., 510 F. Supp. 2d 246, 268-69 (S.D.N.Y. 2007) (looking to "trust beneficiaries" as named in Trust Agreement to determine if litigation trust sought damages on behalf of more than 50 persons). Indeed, under defendants' reading of the statute, a corporation that assigned its claim to a party created for the purpose of litigation to file a lawsuit on its behalf would not be treated as one person under (f)(5)(D); and the Court would be

---

treatment for SLUSA purposes. See R&R at 7.

required to count the "ultimate" beneficiaries of any recovery, i.e., the corporation's numerous shareholders. Accordingly, this lawsuit is not seeking damages on behalf of "more than 50 persons" and is therefore not a "covered class action" under SLUSA's single lawsuit provision.

The next question is whether the Krys action can be grouped with other actions in the Refco MDL to satisfy SLUSA's alternative "grouping" provision that would render the Krys action subject to SLUSA preclusion. See 15 U.S.C. § 78bb(f)(5)(B)(ii). The grouping provision requires a court to count not only the number of persons in the instant action, but also the number of persons in any other actions that: 1) are filed or pending in the same court; 2) involve "common questions of law or fact"; and 3) are "joined, consolidated, or otherwise proceed as a single action for any purpose." Id. If the combined group seeks damages on behalf of more than 50 persons, the claims brought by the group are subject to SLUSA preclusion. Here, defendants argue the Krys action can be grouped with either the Private Actions Trust action or the Refco securities class action.

The Private Actions Trust action is a class action filed by foreign exchange customers who maintained brokerage accounts at Refco Capital Markets ("RCM"). If the Private Action Trust action is grouped with the Krys action, this group would be seeking damages on behalf of more than 50 people, and thus would

6

be a "covered class action" for SLUSA purposes. The Private Action Trust action is clearly pending in the same court (this Court) as the Krys action. The other two grouping elements, however, are disputed by the parties.

Plaintiffs argue that without a formal consolidation order or joinder, the actions do not "proceed as a single action." Plaintiffs' Limited Objection to the Report and Recommendation of the Special Master on the Omnibus Issue of the Applicability of SLUSA ("Pl. Obj.") at 2. Specifically, they argue that Special Master Capra erred in concluding the actions were "consolidate[ed] for pre-trial purposes." See R&R at 10 n.11. Plaintiffs point out that "only the case management orders and the Deposition Protocol Order" purport to be generally applicable throughout the Refco MDL, and that the Deposition Protocol Order explicitly notes that it cannot be used to argue in favor of SLUSA preclusion. See Order dated Dec. 10, 2007, at 15-16. Accordingly, plaintiffs argue, because the actions were not formally consolidated, they have not been "consolidated" within the meaning of SLUSA.

This argument, while technically correct, is merely a quibble over the Special Master's choice of the word "consolidated" in determining that the actions are proceeding a single action. SLUSA's grouping provision reaches actions that are "joined, consolidated, or <u>otherwise proceed as a single action for any purpose</u>." § 78bb(f)(5)(B)(ii) (emphasis supplied).

7

Plaintiffs carefully limit themselves to arguing that the actions are not "consolidated," see Pl. Obj. at 2-5, but ignore the final clause of (f)(5)(B)(ii). Although these actions have not been formally consolidated or joined, they are proceeding as a single action through coordinated pre-trial proceedings in this Multi-District Litigation. See Amorosa v. Ernst & Young LLP ("Amorosa I"), 672 F. Supp. 2d 493, 517-18 (S.D.N.Y. 2009) (participating in coordinated MDL proceedings sufficient to qualify as "proceeding as a single action," even without formal consolidation order), aff'd sub nom. Amorosa v. AOL Time Warner Inc., 409 F. App'x 412, 417 (2d Cir. 2011) (summary order), cert. denied sub nom. Amorosa v. Ernst & Young LLP, 131 S. Ct. 3003 (2011); see also Amorosa v. Ernst & Young LLP ("Amorosa II"), 682 F. Supp. 2d 351, 375-77 (S.D.N.Y. 2010) (same). Here, when the Krys action was first removed to this Court, the case was accepted as related to the Refco MDL (which included the Private Actions Trust action), and assigned to Judge Lynch (who originally presided over the Refco MDL before his elevation to the Second Circuit) for coordinated proceedings. See Amorosa II, 682 F. Supp. 2d at 375-76 (holding that the assignment of a case as "related" to an MDL proceeding is sufficient to show cases proceed as a single action). Since then, these actions have coordinated discovery well beyond just the depositions subject to the Deposition Protocol Order, have shared fees for the services of the Special Masters, have received jointly applicable orders

8

from the Special Masters, see, e.g., Order of Special Master Hedges dated June 18, 2010 (directing Clerk of Court to file and serve on all MDL parties notice of settlement of order in related Refco bankruptcy proceeding), and have participated in the periodic joint status conferences held by the Special Masters and the Court. Additionally, plaintiffs' counsel has served as the liaison to this Court and the Special Masters for the Plaintiffs' Coordinating Committee in the Refco MDL. See Case Management Order #5, dated Nov. 9, 2009.

Congress directed the courts to construe SLUSA's provisions "broadly." See WorldCom, Inc. Sec. Litig., 308 F. Supp. 2d 236, 242 (S.D.N.Y. 2004) (quoting S. Rep. No. 105-182, at 8 (1998)). "For any purpose" is about as broad a provision as Congress could draft. Cf. Gordon Partners v. Blumenthal, No. 02 Civ. 7377(LAK)(AJP), 2007 WL 431864, at *18 (S.D.N.Y. Feb. 9, 2007) (Peck, M.J.) (recommending that consolidation solely for the purpose of discovery satisfies "consolidation . . . for any purpose" under SLUSA), adopted, 2007 WL 1438753 (S.D.N.Y. May 16, 2007). This MDL proceeding coordinates discovery and other pre-trial proceedings, and the actions in it are accordingly proceeding as a single action for numerous purposes.

A more difficult question, however, is whether the Krys action and the Private Actions Trust Action involve "common questions of fact or law," the final requirement for satisfying SLUSA's grouping provision. See, e.g., WorldCom, 308 F. Supp. 2d

9

at 245-46 (holding ten MDL actions with "identical" complaints can be grouped for SLUSA purposes), accord In re Enron Corp. Sec., Deriv. & "Erisa" Litig., No. Civ. H-01-3624, 2006 WL 3716669, at *7 (S.D. Tex. Dec. 12, 2006).

Special Master Capra determined that the two actions could not be grouped for two reasons. First, he concluded that since this Court had previously held that the claims brought by the Private Actions Trust were not themselves barred by SLUSA, it would not be appropriate to group the Private Actions Trust plaintiffs with the Krys plaintiffs as involving common questions of fact or law. See R&R at 8; Report and Recommendation of the Special Master dated June 3, 2010 ("Private Actions Trust R&R") at 39-41 (concluding that claims for Refco Insiders stealing from foreign exchange customers' brokerage accounts at RCM did not assert claims "in connection with" the purchase or sale of a covered security) (quoting Kirschner v. Bennett, 648 F. Supp. 2d 525, 533 n.5 (S.D.N.Y. 2009) (rejecting SLUSA preclusion with respect to original Private Actions Trust complaint)); Order dated Dec. 13, 2010 (adopting Private Actions Trust R&R based on Judge Lynch's opinion in Kirschner as law of the case).

This conclusion is incorrect. The Second Circuit has held that SLUSA preclusion is evaluated claim-by-claim. See Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 47 (2d Cir. 2005), rev'd on other grounds, 547 U.S. 71 (2006). The fact that this Court held the Private Actions Trust was not

10

precluded by SLUSA does not mean that its claims do not include a question of fact or law in common with the Krys action.

Second, however, the Special Master concluded that the Krys action and the Private Actions Trust action did not satisfy the grouping provision's "common questions of fact or law" requirement because the issues that were common to these cases did not "predominate" over the non-common issues. See R&R at 9-10 & n.10. The Court agrees with the Special Master's conclusion that these actions do not share "common questions of fact or law" under SLUSA's grouping provision, but disagrees with his basis for that conclusion.

The text of SLUSA clearly distinguishes between a "predominance" standard for evaluating whether single lawsuits are "covered class actions" and a "common questions" standard for grouping lawsuits. This distinction mirrors the distinction Congress made between formal "class actions" and informally grouped "mass actions" in reforming class action procedure through the Class Action Fairness Act of 2005 ("CAFA"). Compare 15 U.S.C. § 78bb(f)(5)(B) of SLUSA, with 28 U.S.C. § 1332(d)(11) of CAFA. The Special Master argued that since it was "the intent of the grouping provision in SLUSA to prevent parties from splitting up actions that should have been brought in class form, it makes no sense to group claims that have simply something in common – it only makes sense to require the common questions to predominate as required by Rule 23." R&R at 10 n.10. But one does

11

not reach implied congressional intent if the statutory language is clear. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). SLUSA's grouping provision makes no reference to "predominance" and to read it into the statute would contradict the clear distinction Congress made between single lawsuit "covered class actions" (which require predominance) and grouped lawsuit "covered class actions" (which require only common questions). See Instituto De Prevision Militar v. Merrill Lynch, 546 F.3d 1340, 1346-47 (11th Cir. 2008) (distinguishing between predominance for § 78bb(f)(5)(B)(i) and commonality for § 78bb(f)(5)(B)(ii)).

But determining that commonality alone is the appropriate standard does not answer the question of what constitutes a "common question of fact or law" under SLUSA.[3] Commonality is not defined in the statute. This Court must therefore look beyond the text of SLUSA to interpret this provision.

The Supreme Court recently shed light on how to interpret commonality in the context of class action

---

[3] Defendants suggest that even "a single common question of law or fact may suffice to satisfy the commonality requirement [of Rule 23]." Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., No. 08 Civ. 10841 (JSR), 2011 WL 3652477, at *6 (S.D.N.Y. Aug. 22, 2011). But the fact that a single common question may suffice to show grouping does not set forth a standard for how to determine what a "common question" is.

12

certification. See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011). In holding that the proposed class action of current and former female Wal-Mart employees failed to satisfy Rule 23(a)'s requirement of common questions of fact or law, Justice Scalia, writing for the Court, noted that the language of "questions of law or fact common to the class . . . is easy to misread, since any competently crafted class complaint literally raises common 'questions.'" Id. at 2551 (internal quotation marks omitted) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009)). Rather, according to the Supreme Court, commonality requires that the common issues of fact or law have "the capacity . . . to generate common answers apt to drive the resolution of the litigation." Id. (quoting Nagareda, 84 N.Y.U. L. Rev. at 132).

The Court sees no reason to interpret "common question of fact or law" any differently under SLUSA than under Rule 23. Indeed, it is common ground that SLUSA was intended to prevent the avoidance of federal class action requirements, including the requirements of Rule 23. See, e.g., Backus v. Conn. Community Bank, N.A., 789 F. Supp. 2d 292, 301-02 (D. Conn. 2011) ("Congress' intent was that SLUSA 'be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.'" (quoting S. Rep. No. 105-182, at 8 (1998)) (emphasis supplied)).

13

Under the Wal-Mart definition of commonality, it is clear that the Krys action and the Private Action Trust action do not present common questions of fact or law sufficient to be grouped, i.e., in the sense of generating common answers apt to drive the resolution of the litigation.[4] As the Special Master notes:

> [T]here are critical differences between the SPhinX/PlusFunds claims and those of the FX customers in the PAT action. The most significant difference is that the SPhinX claims are based on a right to have the funds segregated while in the hands of Refco. See Primary Wrongs R and R at 6-15. The FX customers had no such right, and that difference has led to markedly different rulings on the motions to dismiss that have already been heard. The FX customers have been found largely barred from complaining about the misuse of their assets because of the provisions of the Margin Annex — provisions that do not bar the SPhinX/PlusFunds claims. See Primary Wrongs R and R at 10-11. Thus, the gravamen of the SPhinX/PlusFunds complaint is fundamentally different from that of the PAT complaint. While it is true that the two complaints as originally drafted had similar language, it is also true that from the very beginning the SPhinX/PlusFunds complaint included different defendants and allegations. The two actions simply do not have the kind of overlap that Congress sought to regulate in the grouping of lawsuits provision, especially as they have been shaped by the various rulings in this MDL.
>
> [. . .]

---

[4] Although the SLUSA case law has not squarely addressed the issue of the appropriate interpretation of commonality in the SLUSA context, the cases that have relied on SLUSA's grouping provision have all featured a high level of commonality between the grouped cases that is absent here. See, e.g., Instituto, 546 F.3d at 1346 (finding "a common issue of fact critical to all three cases" (emphasis supplied)); Backus, 789 F. Supp. 2d at 302 (grouping "two nearly identical lawsuits that were filed separately in state court in order to circumvent the fifty-one person requirement for SLUSA preemption"); Amorosa I, 672 F. Supp. 2d at 518 (grouping opt-out class plaintiffs with complaints that were "identical in all material respects"); WorldCom, 308 F. Supp. 2d at 245 (grouping ten securities fraud actions with "identical" complaints).

14

> One might argue that while the SPhinX fraud claims do not overlap with those of the FX customers, the Refco fraud claims are in fact common between the claimants. . . . [However,] the theories even for the Refco fraud do not sufficiently overlap at this point to require grouping of the lawsuits for SLUSA purposes. The PAT claimants are left with a fraudulent inducement claim based on the fact that Refco was hopelessly insolvent after the LBO. The SPhinX/PlusFunds claims are, at least to this point, not based on Refco operating while hopelessly insolvent. See Primary Wrongs R and R at 24-37. Thus, even considering the Refco fraud claims in the analysis, the Special Master finds that this case should not be grouped with the PAT matter for SLUSA purposes, because the matters do not sufficiently share common questions of law and fact within the meaning of the statute.

SLUSA R&R at 9-10.

Defendants argue that this ignores the commonality of facts. But even as to the facts, these actions are common only at the most general level - the Refco fraud itself - and this argument ignores the multitude of significant factual differences.[5] The very general questions of fact in common

---

[5] As plaintiffs note, these differences include, among much else, the following:

- The PAT claims relate to those customers' foreign currency exchange accounts at RCM. See Kirschner v. Bennett, 648 F. Supp. 2d 525, 528 (S.D.N.Y. 2009). By contrast, the SPhinX claims relate to SPhinX's securities accounts at RCM. See FAC ¶¶ 781-82, 784.

- The PAT claims arise out of Refco's hypothecating securities deposited as collateral in the FX accounts. See Kirschner, 648 F. Supp. 2d at 530, 535-36. The SPhinX claims arise out of Refco's removing cash from SPhinX's securities accounts; SPhinX never deposited any securities at RCM. See FAC ¶¶ 781-82.

- The Court found that the PAT customers authorized Refco's commingling and use of their assets. PAT R&R at 3-5. The Court found that Refco's use of SMFF's assets was

15

between the two actions are not of the kind that will generate answers that will advance the resolution of the litigation.

Accordingly, the Court concludes that the Krys action cannot be grouped with the Private Actions Trust action for SLUSA purposes.

Defendants also argue that the Krys action can be grouped with various actions in this MDL that have either settled or been dismissed with prejudice, such as the now-settled securities class action filed against Refco.[6] See Def. Obj. at 11-12. SLUSA's grouping provision, however, allows the Court to group this action with cases that are "filed in or pending in the same court." § 78bb(f)(5)(B)(ii). These settled and dismissed cases are no longer "pending" in this Court, nor were they

---

> unauthorized and illegal. Primary Violations R&R at 8-11, 37-41.
>
> - The customers in the PAT action do not allege that they directly relied on Refco's financial statements. See PAT R&R at 7, 10-16, 18. The SPhinX Plaintiffs do allege that they relied on Refco's financial statements. See FAC ¶¶ 189, 723, 765, 838.
>
> - The SPhinX Plaintiffs sued a group of defendants different from the PAT's group of defendants. See FAC ¶¶ 38-66. The PAT action presently has only Grant Thornton and Mayer Brown as defendants. See PAT R&R at 1.
>
> - The customers in the PAT action did not have a right to have their assets at RCM segregated. See PAT R&R at 3-5. The SPhinX Plaintiffs did. See Primary Violations R&R at 8-11.
>
> SPhinX Plaintiffs' Response to Defendants' Joint Objection and to the THL Defendants' Separate Objection to the September 5, 2011 Report and Recommendation of the Special Master on the Omnibus Issue of the Applicability of SLUSA ("Pl. Resp.") at 5.

[6] Special Master Capra did not address this argument in his Report and Recommendation.

16

originally "filed" in the same court as the Krys plaintiffs. Congress' clear use of the present tense for "pending" cases and past tense for "filed" cases forecloses defendants' argument. Accordingly, the Court declines to group the Krys action with any of the other now-settled or dismissed actions in the Refco MDL.

The Court therefore reaches the same ultimate conclusion as Special Master Capra: the Krys plaintiffs' claims are not barred by SLUSA.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:   New York, New York
         May 9, 2012