UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MARC S. KIRSCHNER, As Trustee of the Refco Private Actions Trust, <br><br>      Plaintiff, <br><br>    -against- <br><br>PHILLIP R. BENNETT, SANTO C. MAGGIO, ROBERT C. TROSTEN, MAYER BROWN, LLP, MAYER BROWN INTERNATIONAL, LLP, and GRANT THORNTON LLP, <br><br>      Defendants. | 07 MDL 1902 (JSR) <br><br> 07 Civ. 8165 (JSR) |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW
<u>ON CHOICE OF LAW</u>**

            QUINN EMANUEL URQUHART &
              SULLIVAN, LLP
            51 Madison Avenue, 22nd Floor
            New York, New York 10010-1601
            (212) 849-7000

            *Attorneys for Plaintiff Marc S. Kirschner, as
              Trustee for the Refco Private Actions Trust*

## TABLE OF CONTENTS

                                                                                                 **Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

I.      THERE IS NO ACTUAL CONFLICT OF LAWS ..............................................................3

II.     NEW YORK LAW IS DICTATED BY A CHOICE-OF-LAW ANALYSIS ....................6

III.    GRANT THORNTON HAS WAIVED ANY CHOICE-OF-LAW ARGUMENT ............9

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Allstate Ins. Co.*,
   613 N.E.2d 936 (N.Y. 1993)..................................................................................................3

*Anwar v. Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010).....................................................................................8

*AroChem Int'l, Inc. v. Buirkle*,
   968 F.2d 266 (2d Cir. 1992)................................................................................................6, 7

*Capital Mgmt. Select Fund Ltd. v. Bennett*,
   680 F.3d 214 (2d Cir. 2012)....................................................................................................3

*Cargill, Inc. v. Charles Kowsky Res., Inc.*,
   949 F.2d 51 (2d Cir. 1991)....................................................................................................10

*Conway v. Icahn & Co.*,
   16 F.3d 504 (2d Cir. 1994).....................................................................................................4

*In re Coudert Bros. LLP*,
   673 F.3d 180 (2d Cir. 2012)....................................................................................................3

*Curley v. AMR Corp.*,
   153 F.3d 5 (2d Cir. 1998) ...................................................................................................3, 7

*Faiveley Transp. USA, Inc. v. Wabtec Corp.*,
   758 F. Supp. 2d 211 (S.D.N.Y. 2010)...................................................................................10

*In re Gaston & Snow*,
   243 F.3d 599 (2d Cir. 2001)....................................................................................................3

*HSA Residential Mortg. Serv. of Texas v. Casuccio*,
   350 F. Supp. 2d 352 (E.D.N.Y. 2003) ....................................................................................7

*Indus. Window Corp. v. Fed. Ins. Co.*,
   609 F. Supp. 2d 329 (S.D.N.Y. 2009)...................................................................................10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   672 F.3d 155 (2d Cir. 2012)....................................................................................................3

*Lindsay v. O'Loughnane*,
   [2010] EWHC 529 (QB).........................................................................................................5

*Local 875 I.B.T. Pension Fund v. Pollack*,
   992 F. Supp. 545 (E.D.N.Y. 1998) ......................................................................................10

*McCarthy v. Coldway Food Exp. Co.*,
   454 N.Y.S.2d 837 (1st Dep't 1982) ...................................................................................3, 4

*Miller v. Miller*,
    237 N.E.2d 877 (N.Y. 1968)..........................................................................................9

*Nakano v. Jamie Sadock, Inc.*,
    2000 WL 680365 (S.D.N.Y. May 25, 2000) ...............................................................10

*Odom v. Kerns*,
    2008 WL 2463890 (S.D.N.Y. June 18, 2008) ..............................................................9

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006)...........................................................................9

*Press v. Chem. Inv. Servs. Corp.*,
    166 F.3d 529 (2d Cir. 1999)..........................................................................................4

*San Diego Cnty. Emps. Ret. Ass'n v. Maounis*,
    749 F. Supp. 2d 104 (S.D.N.Y. 2010)...........................................................................9

*Schultz v. Boy Scouts of Am., Inc.*,
    480 N.E.2d 679 (N.Y. 1985).........................................................................................7

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*,
    612 F. Supp. 2d 267 (S.D.N.Y. 2009)...........................................................................7

*Tooker v. Lopez*,
    249 N.E.2d 394 (N.Y. 1969).........................................................................................9

*United States v. Szur*,
    289 F.3d 200 (2d Cir. 2002)..................................................................................1, 4, 5

*United States v. Wolfson*,
    642 F.3d 293 (2d Cir. 2011)..........................................................................................4

*Walter E. Heller & Co., v. Video Innovations, Inc.*,
    730 F.2d 50 (2d Cir. 1984)..........................................................................................10

## Statutes

FED. R. CIV. P. 44.1 ............................................................................................................9

## Miscellaneous

37 AM. JUR. 2D § 207 (2001).............................................................................................4

RESTATEMENT (THIRD) OF AGENCY § 8.11 (2006) ..........................................................4

Plaintiff Marc S. Kirschner, the Trustee for the Refco Private Actions Trust (the "Trustee"), respectfully submits this Memorandum of Law in Response to the Court's July 16, 2012 Order for Supplemental Briefing on Choice of Law (Dkt. No. 339).

## PRELIMINARY STATEMENT

On August 27, 2007, the Trustee filed his original complaint against Grant Thornton and other defendants in New York state court. Grant Thornton removed that complaint to federal court on the ground that it was "related to" the Refco bankruptcy. In August 2009, based on New York law, each of the Trustee's claims was dismissed and the Trustee was granted leave to file an amended complaint. Following extensive briefing and argument on Grant Thornton's motion (which again relied only on New York law) to dismiss the amended complaint, all but one of the Trustee's claims were dismissed. The Trustee's remaining claim, expressly based on a principle of New York law recognized in *United States v. Szur*, 289 F.3d 200 (2d Cir. 2002), was later the subject of extensive briefing and argument on Grant Thornton's objections to the Special Master's Report and Recommendation on its motion to dismiss and its motion for summary judgment.

Prior to July 13, 2012, none of Grant Thornton's many memoranda of law or oral arguments ever suggested that foreign law applies to the Trustee's claim. Only now, on the eve of trial, and almost five years into the case, has Grant Thornton suddenly asserted for the first time, during oral argument on its written objection to the Report and Recommendation on summary judgment (an objection that itself was silent on this issue), that New York law does not apply to the Trustee's claim. Regardless whether Grant Thornton has waived the application of foreign law (*see* Point III, *infra*), its argument does not undermine the Trustee's claim.

Under New York choice-of-law analysis, the first question is whether there is an actual conflict between New York and Bermuda law. There is none. Just as New York law recognizes

a duty by a broker to disclose significant information to its customers, (MTD R&R 11-14, *adopted* Dec. 13, 2010; SJ R&R 4-6 (citing *Szur*)), U.K./Bermuda law (as explained in the declarations of Barry Isaacs, Q.C. and David Kessaram) provides that, "where an agent enters into a contract or transaction with his principal, he must . . . make full disclosure of all the material circumstances and of everything known to him respecting the subject-matter of the contract or transaction which would be likely to influence the conduct of the principal." (Declaration of Barry Isaacs ("Isaacs Decl."), ¶ 8; Declaration of David R. Kessaram ("Kessaram Decl."), ¶ 11 (agent must disclose "sufficient facts to enable the principle to consider whether to give his consent . . . .").)  U.K./Bermuda law additionally recognizes an affirmative misrepresentation claim—analogous in effect, if not legal theory, to the claim recognized by this Court—that treats RCM's acceptance of deposits as an implied (mis)representation of its solvency. (Isaacs Decl. ¶¶ 10-16; Kessaram Decl. ¶ 13.)  Given that Bermuda law is essentially identical to New York law, this Court need not undertake a further choice-of-law analysis but rather may apply New York law going forward, just as the Court has done, without objection from Grant Thornton, at every prior stage of this case.

Even if there were an actual conflict, applicable choice-of-law rules clearly point to New York law.  Because the Trustee's claim is based on conduct-regulating legal principles (common law fraud and the disclosure obligations of broker-dealers to their customers), the appropriate law is that of the state that has the greatest interest in regulating that conduct.  Here, New York has the greatest interest because the conduct of the primary fraudsters occurred within its borders.  RCM operated in New York, its principal place of business was New York, it sent communications to customers from New York, gave a New York return address, and its corrupt insiders operated in New York and were criminally prosecuted here.  New York was the epicenter of the fraud.  In contrast, after its repatriation to the United States in late 2001 (or early

2002), RCM had no operations, no employees, and no physical presence in Bermuda. Whether or not RCM technically remained an offshore broker for purposes of compliance with SEC regulations (a question that the Second Circuit pointedly did not answer in *Capital Management Select Fund Ltd. v. Bennett*, *see* 680 F.3d 214, 232 n.22 (2d Cir. 2012)). New York has the greatest interest in regulating the conduct of RCM and its corrupt insiders.

## ARGUMENT

### I. THERE IS NO ACTUAL CONFLICT OF LAWS

As this Court recognized, the threshold question is "[w]hether Bermuda law recognizes a duty similar to the New York common law duty to disclose 'hopeless insolvency' or the like." (Dkt. No. 339.) Because Bermuda and New York law recognize similar obligations by RCM to its FX Customers, no further choice-of-law analysis is required.

In cases under federal "related to" jurisdiction, courts apply the forum state's choice-of-law rules. *In re Gaston & Snow*, 243 F.3d 599, 601-02 (2d Cir. 2001); *see also In re Coudert Bros. LLP*, 673 F.3d 180, 187-88 (2d Cir. 2012). Under New York's rules, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (quoting *In re Allstate Ins. Co.*, 613 N.E.2d 936, 937 (N.Y. 1993)); *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). "A choice-of-law analysis need not be performed unless there is an 'actual conflict' between the applicable rules of two relevant jurisdictions." *Licci*, 672 F.3d at 157. "If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." *Id.* Grant Thornton, therefore, must show that an "actual conflict" exists such that applying New York law would prejudice it. *McCarthy v. Coldway Food Exp. Co.*, 454 N.Y.S.2d 837, 839 (1st

Dep't 1982) (rejecting choice-of-law argument because defendant showed "no prejudice by application of New York law"). There is no actual conflict here.

<u>New York Law</u>. The Trustee's fraudulent inducement claim is "that RCM fraudulently omitted to disclose to the FX Customers that the LBO rendered it hopelessly insolvent and so unable to repay customers who demanded the return of their assets." (MTD R&R 11); *see also Szur*, 289 F.3d at 211 (New York law "places an affirmative duty on brokers 'to use reasonable efforts to give [the customer] information relevant to the affairs that [have] been entrusted to them'") (quoting *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 536 (2d Cir. 1999)); *United States v. Wolfson*, 642 F.3d 293, 294-96 (2d Cir. 2011) (confirming broker's disclosure duty to customers and noting that "the absence of a discretionary account does not mean that no fiduciary duty exists"). This New York duty is based on principles of agency law. *Szur*, 289 F.3d at 211.[1]

As this Court reasoned in adopting the Report and Recommendation on Grant Thornton's motion to dismiss, "hopeless insolvency" is "certainly the kind of information on which a reasonable person would rely in deciding whether to place funds with a broker." (MTD R&R 14.) Accordingly, "hopeless insolvency" is "relevant to the affairs that [have] been entrusted to [the broker] and thus must be disclosed," *Szur*, 289 F.3d at 211, because "[i]t is more than plausible to believe that a customer would not deposit money with a hopelessly insolvent broker" (MTD R&R 17).

---

[1] *See also Conway v. Icahn & Co.*, 16 F.3d 504, 510 (2d Cir. 1994) ("A broker, as agent, has a duty to use reasonable efforts to give its principal information relevant to the affairs that have been entrusted to it."); RESTATEMENT (THIRD) OF AGENCY § 8.11 (2006) ("An agent has a duty to use reasonable effort to provide the principal with facts that the agent knows, has reason to know, or should know when . . . the agent knows or has reason to know that the principal would wish to have the facts or the facts are material to the agent's duties to the principal."); 37 AM. JUR. 2D § 207 (2001) (discussing when a party has a duty to disclose because of a fiduciary duty "or other relation of trust or confidence").

Bermuda Law.  Bermuda is a British overseas territory in which the decisions of U.K. courts are applied and considered to be of persuasive authority.  (Kessaram Decl. ¶ 7.)  Both Bermuda and U.K. law recognize legal principles that are essentially identical to those that give rise to the Trustee's claim under New York law.

Specifically, U.K. and Bermuda law recognize that agents (such as a broker entrusted to execute its customer's trades) owe their principals a duty to disclose information relevant to the affairs entrusted to them.  As explained in the Declarations of Barry Isaacs, Q.C., an experienced commercial litigator in the U.K., and David Kessaram, an experienced commercial litigator in Bermuda, "where an agent enters into a contract or transaction with his principal, he must . . . make full disclosure of all the material circumstances and of everything known to him respecting the subject-matter of the contract or transaction which would be likely to influence the conduct of the principal."  (Isaacs Decl. ¶ 8; Kessaram Decl. ¶¶ 10-11 (same).)  This is the identical principle that underlies the *Szur* decision under New York common law.  So too, both New York law and U.K./Bermuda law would deem the broker's hopeless insolvency as a material or significant circumstance triggering this duty to disclose.  (Isaacs Decl. ¶ 9 ("[W]here the hopeless insolvency of the agent would be likely to influence the conduct of the principal in relation to a contract or transaction between the principal and the agent, the agent has a duty to disclose its hopeless insolvency to the principal."); Kessaram Decl. ¶ 12 ("RCM would be under a duty to disclose to the customer its known inability to comply with its obligations under the agreement to return the funds whether such inability arises by reason of its irreversible insolvency or otherwise.").)

Alternatively, as illustrated by the recent English decision in *Lindsay v. O'Loughnane*, [2010] EWHC 529 (QB) (Isaacs Decl.) concerning an insolvent foreign exchange broker, U.K. and Bermuda law also recognize a claim—albeit under a different legal theory (affirmative

5

misrepresentation rather than omission to disclose)—that leads to an identical result. (Isaacs Decl. ¶¶ 14-15.) That theory provides that a broker-dealer, by accepting deposits, makes an implied affirmative representation "that the business [is] not insolvent and that funds paid by the claimant [will] be held on trust in accordance with the terms and conditions until paid out to purchase foreign exchange on behalf of the claimant." (*Id.* ¶ 15; *see also* Kessaram Decl. ¶ 13 ("Bermuda Court would consider that such acceptance would amount to an implied representation by RCM that it was trading properly and legitimately in the sense that it was not insolvent . . . .").)[2] There is no dispute that RCM accepted deposits from the FX Customers; accordingly, were the theory applied here, the Trustee would be allowed to show at trial that RCM was insolvent at the time it accepted the deposits (such that its affirmative representation of solvency was a false representation).

Because New York law and Bermuda law are essentially identical on the contours of the Trustee's surviving claim (and certainly are sufficiently alike that Grant Thornton cannot show prejudice from the application of New York law), this Court need not undertake a further choice-of-law analysis. In any event, as shown below, such an analysis points clearly to New York law.

## II.   NEW YORK LAW IS DICTATED BY A CHOICE-OF-LAW ANALYSIS

Because the Trustee's claim invokes conduct-regulating law and New York has the greatest interest in regulating fraudulent conduct within its borders, New York's choice-of-law rules point clearly to New York rather than Bermuda law.

In tort actions, if there is an actual conflict, New York courts apply an "interests analysis," under which the law of the jurisdiction having the greatest interest is applied. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998); *see also AroChem Int'l, Inc. v. Buirkle*, 968 F.2d

---

[2]   Under New York law, the Trustee is proceeding on a claim based on RCM's omission, rather than a claim that RCM affirmatively misrepresented itself as a solvent entity by hanging out its shingle as a broker-dealer. (*See* MTD R&R 15 ("Finding no indication that 'New York courts have ever embraced the shingle theory as part of New York's common law of fraud'").)

6

266, 270 (2d Cir. 1992). "In deciding which state has the prevailing interest, we look only to those facts or contacts that relate to the purpose of the particular laws in conflict. 'Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort.'" *AroChem*, 968 F.2d at 270 (quoting *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 684 (N.Y. 1985)). Where, as here, "the conflict involves rules that regulate conduct—as [with fraud]—the site of the tort, not the place of the loss, governs." *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 284 (S.D.N.Y. 2009).[3]

The conduct here plainly took place in New York. RCM's Chief Operating Officer Stephen Dispenza testified that Refco decided to "repatriate the [RCM] operations to the United States" in 2001. (Declaration of N. Calamari Ex. 1 35:19-23 (Dispenza Dep.).) He therefore closed the RCM office in Bermuda in January 2002—two and a half years before the inducement of the FX Customers at issue. (*Id.* 36:7-9.) Any correspondence with RCM customers after 2001 included the New York address of RCM's operations—"200 Liberty Street in New York, the One World Financial Center"—because if anything had been sent to RCM in Bermuda, "it would just end up on a lawyer's desk for which they wouldn't know what to do with it." (*Id.* 256:4-9; *see also, e.g.*, Calamari Ex. 2-3.) RCM employee Vera Kraker testified that during the relevant time period for this case—2004-2005—the principal place of business for RCM's FX

---

[3] In *Mayer Brown*, 612 F. Supp. 2d at 284, Judge Lynch rejected the argument that the governing law in a related Refco matter should be where the loss occurred or the plaintiff was located (in that case Massachusetts). In a dispute involving fraud, the location of the loss "was not dispositive" because the "center of gravity of the events at issue and [New York's] interest in regulating the conduct" was the strongest factor. *Id.* Conducting a "full interest analysis," Judge Lynch held that "New York has the most significant interest in, or relationship to, the dispute" because New York is "where the Refco fraud originated" and "the overwhelming bulk of events . . . and the underlying fraud occurred in New York where Refco was headquartered." *Id.* (internal quotation marks omitted). As here, it would be "'unreasonable to allow [another state's] law . . . to dictate the appropriate conduct for accountants or [legal] professionals vis-a-vis non-client third-parties where [substantially] all of the events occurred in New York.'" *Id.* (quoting *HSA Residential Mortg. Serv. of Texas v. Casuccio*, 350 F. Supp. 2d 352, 366 (E.D.N.Y. 2003)).

operations was New York.  (Calamari Ex. 4 21:4-15 (Kraker Dep.).)  She knew of no offices or operations in Bermuda in 2004 or 2005 and recalled RCM officially closing its Bermuda office at the end of 2001.  (*Id.* 21:16-22:8.)[4]  The three fraudsters named as defendants here conducted the fraud from Refco's headquarters in New York.[5]

Where a fraud is masterminded and executed within a single forum, courts routinely look to "[t]he jurisdiction with the greatest concentration of occurrences and contacts with the issues presented," including where the business "operated," where the "individual defendants worked," and where "misrepresentations [or omissions] were made," as opposed to the plaintiff's domicile, which has "only limited connection to the conduct at issue."  *San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 125 (S.D.N.Y. 2010); *see also Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 399-400 (S.D.N.Y. 2010) (New York had the greatest interest in applying its law where Ponzi scheme operated out of New York City and plaintiffs were "widely dispersed throughout the world and their injury was sustained in various locations with only limited connection to the conduct at issue") (internal citation omitted); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006) (applying New York law where New York was the epicenter of the fraud, "plaintiffs [were] an international group, located in jurisdictions including both New York and the [British Virgin Islands]"). ).  New York has the greatest interest in applying its law to the Trustee's claim

---

[4] President Santo Maggio similarly testified that, after RCM's largest clients based in Bermuda left the business in the late 1990s, "there was nothing for the [RCM] employees to do in Bermuda . . . [e]xcept to go to the beach and go fishing and ride their mopeds."  (Calamari Ex. 5 48:16-49:20 (Maggio Dep.).)  RCM did not have any employees in Bermuda after 2001 or 2002.  (*Id.* at 47:16-21.)

[5] It is the fraudsters' activities, not the actions of order-takers ignorant of the fraud, that bears on the choice-of-law inquiry.  Thus, Grant Thornton's reference in oral argument to the location of RCM employees who may have taken orders from individual FX customers is wholly irrelevant.

because the tort perpetrated against the FX Customers by the corrupt Refco insiders was "executed . . . within the state" and application of New York law would "serve as a check against such misconduct." *San Diego Cnty.*, 749 F. Supp. 2d at 125.

Any interest that Bermuda might have in regulating the conduct of RCM or the three named fraudsters after RCM was relocated to New York in late 2001 or early 2002 cannot trump New York's interest. After that move, RCM remained a Bermuda entity only on paper. At all relevant times, RCM's mailing address for customer communications was outside of Bermuda. There were no RCM officers or employees in Bermuda. And, of course, the three insiders named as defendants here never worked in Bermuda, but always conducted their fraud from New York. Every aspect of the fraudulent inducement at issue here—limited in time to the period after the August 5, 2004 LBO—occurred in New York.[6]

## III.  GRANT THORNTON HAS WAIVED ANY CHOICE-OF-LAW ARGUMENT

Grant Thornton's argument should be rejected on the separate ground that it has been waived and is entirely inconsistent with Grant Thornton's prior conduct. *Odom v. Kerns*, 2008 WL 2463890, at *5 (S.D.N.Y. June 18, 2008) ("A party may not, however, introduce an entirely new basis for summary judgment by means of objections to a report and recommendation.").

At a minimum, Grant Thornton's belated mention of Bermuda law at oral argument violates Rule 44.1. *See* FED. R. CIV. P 44.1 ("A party who intends to raise an issue about a

---

[6]  Nor does Grant Thornton's assertion at oral argument—that a particular FX Customer's expectation as to whether New York law would govern—have any weight. *See Tooker v. Lopez*, 249 N.E.2d 394, 399 (N.Y. 1969) ("The argument that the choice of law in tort cases should be governed by the fictional expectation of the parties has been rejected unequivocally by this court."); *Miller v. Miller*, 237 N.E.2d 877, 882 (N.Y. 1968) ("[f]ew speculations are more slippery than assessing the expectations of parties as to the laws applicable to their activities, and especially is this true when the expectations relate to the law of torts").

9

foreign country's law must give notice by a pleading or other writing.").[7] Whether RCM had a duty to disclose hopeless insolvency has been the central issue since no later than June 3, 2010, when Special Master Capra issued his Report and Recommendation finding RCM had a duty to disclose hopeless insolvency under New York law. Instead of rejecting New York law in any motion to dismiss briefing, including its objections to the Special Master's Report, Grant Thornton waited over two years, conducted extensive discovery, briefed an entire summary judgment motion and reply under New York law, and submitted an objection to the Report and Recommendation—all without ever mentioning foreign law.

Grant Thornton has offered no excuse for not raising this issue sooner, and the Court should not now displace the choice the parties made years ago to proceed under New York law. *See, e.g.*, *Walter E. Heller & Co., v. Video Innovations, Inc.*, 730 F.2d 50, 52-53 (2d Cir. 1984) ("the parties to litigation may consent by their conduct to the law to be applied"); *Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) (similar).[8]

## CONCLUSION

Special Master Capra's Report and Recommendation on Defendant's motion for summary judgment should be adopted in its entirety based on New York law.

---

[7] *See Local 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545, 559 (E.D.N.Y. 1998) (raising foreign law in reply brief is untimely); *Nakano v. Jamie Sadock, Inc.*, 2000 WL 680365, at *4 (S.D.N.Y. May 25, 2000) (raising foreign law after summary judgment briefing is untimely).

[8] Grant Thornton's reliance on New York law also estops it from invoking foreign law now. *See Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F.Supp.2d 211, 218 (S.D.N.Y. 2010); *Indus. Window Corp. v. Fed. Ins. Co.*, 609 F.Supp.2d 329, 338 (S.D.N.Y. 2009).

DATED: July 20, 2012

        QUINN EMANUEL URQUHART &
          SULLIVAN, LLP

By: /s/ Richard I. Werder, Jr.
    Richard I. Werder, Jr.
    Sascha N. Rand
    Sanford I. Weisburst
    Nicholas J. Calamari
     rickwerder@quinnemanuel.com
     sascharand@quinnemanuel.com
     sandyweisburst@quinnemanuel.com
     nicholascalamari@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000

*Attorneys for Plaintiff Marc S. Kirschner, as Trustee for the Refco Private Actions Trust*

11