ICLR: Chancery Division/1998/BRISTOL AND WEST BUILDING SOCIETY v. MOTHEW - [1998] Ch. 1

[1998] Ch. 1

**[COURT OF APPEAL]**

# BRISTOL AND WEST BUILDING SOCIETY v. MOTHEW

**1996 May 21, 22;**

**July 24**

**Staughton, Millett and Otton L.JJ.**

*Solicitor - Negligence - Incorrect advice or information - Mortgage transaction - Solicitor acting for borrowers and lender - Solicitor negligently giving lender incorrect information - Lender suffering loss - Whether lender merely having to prove reliance on information - Whether necessary to show loss attributable to negligence - Whether breach of trust or fiduciary duty*

In 1988 the defendant solicitor acted for a husband and wife in the purchase of a house for £73,000 and also for the plaintiff to whom the purchasers had applied for a loan of £59,000 to finance the purchase. The plaintiff offered to advance the money on the express condition that the balance of the purchase price was provided by the purchasers without resort to further borrowing, and it instructed the solicitor to report, prior to completion, any proposal that the purchasers might create a second mortgage or otherwise borrow in order to finance part of the purchase price. The solicitor knew that the purchasers were arranging for an existing bank debt of £3,350 to be secured by a second charge on the new property but, due to an oversight, he stated in his report to the plaintiff that the balance of the purchase price was being provided by the purchasers without resort to further borrowing. The plaintiff advanced the loan and the purchase was completed. When the purchasers defaulted on their mortgage repayments the plaintiff enforced its security and the house was sold at a loss. The plaintiff sought to recover the whole of its loss on the transaction from the solicitor, alleging breach of contract, negligence and breach of trust. The district judge gave the plaintiff summary judgment for damages to be

assessed for breach of contract and negligence and for damages of £59,000 less the amount received on the sale of the property for breach of trust. The judge affirmed those decisions.

On appeal by the solicitor: -

*Held*, allowing the appeal, (1) that, where a client sued his solicitor for negligently giving him incorrect advice or information, the client did not have to show that he would not have acted as he did if he had been given the proper advice or correct information but merely that he had relied on the incorrect advice or information; that the evidence showed that the plaintiff had relied on the solicitor's report in advancing the loan and, therefore, the necessary causal link between the solicitor's negligence and the loan was proved; but that the plaintiff had still to establish what, if any, loss was attributable to the solicitor's negligence and, as there was an issue as to what loss was occasioned by the existence of the second charge and the purchasers' indebtedness to the bank, damages remained to be assessed (post, pp. **11D-E**, **13B-C**, **24E-F**, **25E-F**, **28A**).

*Banque Bruxelles Lambert S.A. v. Eagle Star Insurance Co. Ltd.* [1997] A.C. 191, H.L.(E.) and *Downs v. Chappell* [1997] 1 W.L.R. 426, C.A. applied.

(2) That the solicitor's conduct in providing the plaintiff with the wrong information, although a breach of duty, was neither dishonest nor intentional but due to an oversight and was unconnected to the fact that he was also acting for the purchasers; that, accordingly, his conduct and subsequent application of the money advanced by the plaintiff to complete the purchase was not a breach of trust or fiduciary duty; and that the order for damages for breach of trust would therefore be set aside (post, pp. **15H-16A, 19E, 20G, 22A-C, 24E-F, 25E-F, 26C-E, 28A**).

Decision of Chadwick J. reversed.

The following cases are referred to in the judgments:

*Banque Bruxelles Lambert S.A. v. Eagle Star Insurance Co. Ltd.* [1997] A.C. 191; [1996] 3 W.L.R. 87; [1996] 3 All E.R. 365, H.L.(E.)

*Bristol and West Building Society v. May May & Merrimans* [1996] 2 All E.R. 801

*Clark Boyce v. Mouat* [1994] 1 A.C. 428; [1993] 3 W.L.R. 1021; [1993] 4 All E.R. 268, P.C.

*Commonwealth Bank of Australia v. Smith* (1991) 102 A.L.R. 453

*Coomber, In re; Coomber v. Coomber* [1911] 1 Ch. 723, C.A.

*Downs v. Chappell* [1997] 1 W.L.R. 426; [1996] 3 All E.R. 344, C.A.

*El Ajou v. Dollar Land Holdings Plc.* [1993] 3 All E.R. 717

*Girardet v. Crease & Co.* (1987) 11 B.C.L.R. (2d) 361

*Henderson v. Merrett Syndicates Ltd.* [1995] 2 A.C. 145; [1994] 3 W.L.R. 761; [1994] 3 All E.R. 506, H.L.(E.)

*Kelly v. Cooper* [1993] A.C. 205; [1992] 3 W.L.R. 936, P.C.

*LAC Minerals Ltd. v. International Corona Resources Ltd.* (1989) 61 D.L.R. (4th) 14

*Lewis v. Hillman* (1852) 3 H.L.Cas. 607, H.L.(E.)

*Lipkin Gorman v. Karpnale Ltd.* [1991] 2 A.C. 548; [1991] 3 W.L.R. 10; [1992] 4 All E.R. 512, H.L.(E.)

*Moody v. Cox and Hatt* [1917] 2 Ch. 71, C.A.

*Mortgage Express Ltd. v. Bowerman & Partners* [1996] 2 All E.R. 836, C.A.

*Nocton v. Lord Ashburton* [1914] A.C. 932, H.L.(E.)

*Permanent Building Society v. Wheeler* (1994) 14 A.C.S.R. 109

*Sykes v. Midland Bank Executor and Trustee Co. Ltd.* [1971] 1 Q.B. 113; [1970] 3 W.L.R. 273; [1970] 2 All E.R. 471, C.A.

*Target Holdings Ltd. v. Redferns* [1996] A.C. 421; [1995] 3 W.L.R. 352; [1995] 3 All E.R. 785, H.L.(E.)

*Westdeutsche Landesbank Girozentrale v. Islington London Borough Council* [1996] A.C. 669; [1996] 2 W.L.R. 802; [1996] 2 All E.R. 961, H.L.(E.)

The following additional cases were cited in argument:

*Alliance & Leicester Building Society v. Edgestop Ltd. (unreported), 18 January 1991, Hoffmann J.*

*Brickenden v. London Loan & Savings Co.* [1934] 3 D.L.R. 465, P.C.

*Canson Enterprises Ltd. v. Boughton & Co.* (1991) 85 D.L.R. (4th) 129

*Gemstone Corporation of Australia Ltd. v. Grasso* (1994) 12 A.C.L.C. 653

*Gray v. New Augarita Porcupine Mines Ltd.* [1952] 3 D.L.R. 1

*Sinclair v. Brougham* [1914] A.C. 398, H.L.(E.)

*Wan v. McDonald* (1992) 105 A.L.R. 473

*Witten-Hannah v. Davis* [1995] 2 N.Z.L.R. 141

The following cases, although not cited, were referred to in the skeleton arguments:

*Attorney-General for Hong Kong v. Reid* [1994] 1 A.C. 324; [1993] 3 W.L.R. 1143; [1994] 1 All E.R. 1, P.C.

*Bishopsgate Investment Management Ltd. v. Maxwell (No. 2)* [1994] 1 All E.R. 261, C.A.

*Chase Manhattan Bank N.A. v. Israel-British Bank (London) Ltd.* [1981] Ch. 105; [1980] 2 W.L.R. 202; [1979] 3 All E.R. 1025

*Dawson, decd., In re; Union Fidelity Trustee Co. Ltd. v. Perpetual Trustee Co. Ltd.* [1966] 2 N.S.W.R. 211

*Farrington v. Rowe McBride & Partners* [1985] 1 N.Z.L.R. 83

*McPherson v. Watt* (1877) 3 App.Cas. 254, H.L.(Sc.)

*Miller's Deed Trusts, In re* (1978) 75 L.S.G. 454

*Nelson v. Rye* [1996] 1 W.L.R. 1378; [1996] 2 All E.R. 186

*NestlÈ v. National Westminster Bank Plc.* [1993] 1 W.L.R. 1260; [1994] 1 All E.R. 118, C.A.

INTERLOCUTORY APPEAL from Chadwick J.

On 21 June 1995 Deputy District Judge Raskin granted the plaintiff, Bristol and West Building Society, summary judgment pursuant to R.S.C., Ord. 14 of its claims against the defendant solicitor, Anthony Paul Mothew (trading as Stapley & Co.), for damages to be assessed for breach of contract and negligence and damages for breach of trust. On 27 July 1995 Chadwick J. dismissed the defendant's appeal against that order.

Pursuant to leave granted by Nourse L.J. on 29 December 1995 and by a notice of appeal dated 5 January 1996 the defendant sought to set aside the orders and be granted unconditional leave to defend on the grounds that the judge had erred in holding (1) that money paid to the defendant by the plaintiff was impressed with a constructive trust in favour of the plaintiff; (2) that the money was paid to the defendant under a mistake of fact or had been induced by the defendant's misrepresentation, when no such allegations were made in the statement of claim; (3) that it was not necessary for the plaintiff to establish that it had sustained loss and damage as a result of the defendant's alleged breach of trust; (4) that

*[1998] Ch. 1 Page  4*

the defendant had no arguable defence to the claim for breach of trust based upon acquiescence or affirmation by the plaintiff; and (5) that the defendant had no arguable defence to the allegation that the plaintiff had sustained loss and damage as a result of the breach of contract and negligence.

By a respondent's notice dated 25 January 1996 the plaintiff contended that it was entitled to judgment for the sum claimed in respect of its claims for breach of contract and negligence.

The facts are stated in the judgment of Millett L.J.

**Jonathan Sumption *Q.C.*** and **Glenn Campbell** for the defendant. A breach of a solicitor's conveyancing duty which makes no difference to the lender's decision and has no impact on the value of the security cannot result in the solicitor becoming the underwriter of the transaction when the security is later sold at a loss: see *Target Holdings Ltd. v. Red-ferns* [1996] A.C. 421. Although a solicitor has a number of fiduciary obligations to his client, not every duty which is owed in the context of a fiduciary relationship is a fiduciary duty: see *Girardet v. Crease & Co.* (1987) 11 B.C.L.R. (2d) 361, 362; *LAC Minerals Ltd. v. International Corona Resources Ltd.* (1989) 61 D.L.R. (4th) 14, 28 and *In re Coomber; Coomber v. Coomber* [1911] 1 Ch. 723, 728. A solicitor's duty to report to his client the outcome of conveyancing and allied inquiries is the ordinary contractual duty of a professional to comply with his instructions and to do so with reasonable skill.

*Brickenden v. London Loan & Savings Co.* [1934] 3 D.L.R. 465 does not assist the plaintiff as it was concerned only with a breach by a fiduciary of his obligation to disclose to his principal his own personal interest in the transaction. [Reference was also made to *Nocton v. Lord Ashburton* [1914] A.C. 932.] The principle that relief is granted for such a breach, without regard to what the plaintiff would have done if disclosure had been made reflects the rule of equity that where a fiduciary has dealt personally with the plaintiff without full disclosure to him the latter's relief is not compensatory at all. He has, irrespective of his loss, an absolute right to set aside the transaction or to claim an account of profits. The compensation awarded to him is simply the financial equivalent of setting aside: see *Gray v. New Augarita Porcupine Mines Ltd.* [1952] 3 D.L.R. 1, 12-15. Compensation cannot be awarded for breach of a duty as to the manner in

which work should be carried out: see *Permanent Building Society v. Wheeler* (1994) 14 A.C.S.R. 109, 164-165. [Reference was also made to *Canson Enterprises Ltd. v. Boughton & Co.* (1991) 85 D.L.R. (4th) 129; *Wan v. McDonald* (1992) 105 A.L.R. 473; *Witten-Hannah v. Davis* [1995] 2 N.Z.L.R. 141 and *Target Holdings Ltd. v. Redferns* [1996] A.C. 421.]

There is no distinction between a solicitor who breaches his duty by failing to report in accordance with his instructions before the mortgage advance cheque is received and a solicitor who fails to deal with the advance in accordance with his instructions after it is received. In neither case does the breach of duty have the effect of terminating the solicitor's retainer and his authority to complete the transaction. Equally, the argument that the solicitor held the advance as soon as it was received on

*[1998] Ch. 1 Page 5*

a constructive trust to return it forthwith to the plaintiff cannot be supported. There cannot be a constructive trust inconsistent with the existing express trust to apply the loan moneys in completing the transaction, unless the solicitor's authority and obligation to complete the transaction are first brought to an end. [Reference was made to *Westdeutsche Landesbank Girozentrale v. Islington London Borough Council* [1996] A.C. 669; *Sinclair v. Brougham* [1914] A.C. 398 and *Lipkin Gorman v. Karpnale Ltd.* [1991] 2 A.C. 548.]

If the plaintiff is to be awarded the amount of the advance money (less actual recoveries) it must be on the basis that that money has been misapplied. If the defendant had no authority to pay out the money to the vendor the payment was a breach of trust: see *Target Holdings Ltd. v. Redferns* [1996] A.C. 421 and *Alliance & Leicester Building Society v. Edgestop Ltd.* (unreported), 18 January 1991.

The plaintiff's loss on the loan transaction is due to the default of the purchasers and the fact that the security was not sufficient to cover the loan when it came to be realised, neither of which is the responsibility of the solicitor. The loss is not due to the existence or non-disclosure of a second mortgage.

**Nicholas Patten Q.C.** and **Timothy Higginson** for the plaintiff. The relationship between a solicitor and his client gives rise to fiduciary obligations on the part of the solicitor in the handling of his client's affairs. A failure to perform those obligations gives rise to a remedy in equity regardless of whether the acts complained of also constitute a breach of contract with a right to damages: see *Nocton v. Lord Ashburton* [1914] A.C. 932, 956-957. The underlying contractual relationship between the parties cannot dictate or limit the scope of the concurrent fiduciary duties, as the defendant was expressly required to report any proposal for further borrowing before releasing the plaintiff's mortgage advance: see *Henderson v. Merrett Syndicates Ltd.* [1995] 2 A.C. 145, 205-206.

A solicitor who acts for both lender and borrower in the same transaction has an unrestricted obligation to each client to act in his own best interests, including an obligation to disclose to the lender information about the borrower which is material to the transaction: see *Clark Boyce v. Mouat* [1994] 1 A.C. 428, 437. [Reference was also made to *Lewis v. Hillman* (1852) 3 H.L.Cas. 607; *Kelly v. Cooper* [1993] A.C. 205; *Moody v. Cox and Hatt* [1917] 2 Ch. 71 and *Bristol and West Building Society v. May May & Merrimans* [1996] 2 All E.R. 801, 817-818.]

The non-disclosure of the proposed further borrowing was a breach of trust. In addition, the release of the advance by the defendant when he had failed to disclose the proposed further borrowing in breach of his express instructions was made without authority and was itself a breach of trust. The right of the plaintiff to recover its advance is unaffected by *Target Holdings Ltd. v. Redferns* [1996] A.C. 421 because the payment of the advance to the defendant (and therefore the creation of his agency to hold the money for the purpose of the intended transaction) was the direct result of the reliance by the plaintiff upon the contents of the defendant's report on title. Therefore the defendant's ability to utilise the payment for the benefit of the borrowers in breach of trust was caused by the report on title.

*[1998] Ch. 1 Page 6*

Breaches of trust or fiduciary duty must cause the loss complained of but the test of causation is not the common law test. The inquiry is not to determine what position the plaintiff would have been in had the contract been performed but rather whether the loss would have been sustained but for the breach of trust. The non-disclosure in the report on title caused the loss because it induced the plaintiff to advance the funds in reliance on the report. To inquire as to what the plaintiff would have done had disclosure been made is to apply the common law test and is wrong in principle: see *Brickenden v. London Loan & Savings Co.* [1934] 3 D.L.R. 465, 469; *Gray v. New Augarita Porcupine Mines Ltd.* [1952] 3 D.L.R. 1, 15; *Commonwealth Bank of Australia v. Smith* (1991) 102 A.L.R. 453 and *Gemstone Corporation of Australia Ltd. v. Grasso* (1994) 12 A.C.L.C. 653.

*Sumption Q.C.* replied.

Cur. adv. vult.

July 24. The following judgments were handed down.

MILLETT L.J. This is an appeal brought by the defendant with the leave of the single Lord Justice from an order for summary judgment given initially by the district judge and affirmed (for different reasons) by Chadwick J. It raises important questions of principle in relation to a claim by a mortgagee to recover from the solicitor who was acting for both mortgagor and mortgagee the loss arising from the mortgagor's subsequent default.

The collapse in the property market which accompanied the recession at the beginning of the present decade caused mortgage lenders to suffer serious losses. Unable to recover their advances from the borrowers or by the enforcement of their security they have sought to recover them from the valuers or solicitors on whose valuations or advice they have relied. In some cases they have been the victims of a fraud to which the valuers and solicitors have been parties. In other cases, such as the present, they have been unable to accuse their solicitor of anything more serious than negligence. Believing that the common law rules of causation and remoteness of damage might not enable them to recover the whole amount of their loss they have turned to equity and alleged breach of trust or fiduciary duty. We have thus been concerned to decide just what is involved in these concepts.

**The facts**

The facts are not in dispute. The defendant is a solicitor. In August 1988 he acted for a Mr. and Mrs. Towers in the purchase of 17, Thameshill Avenue, Romford for £73,000. In accordance with the usual practice he also acted for the Bristol and West Building Society ("the society") to which the purchasers had applied for an advance of £59,000 in order to finance the purchase. (This was the Cheshunt Building Society, but its rights have since vested in the society.) In their application form the purchasers had stated that the balance of the purchase price of £14,000 was being provided by them personally and that they were not applying elsewhere for financial assistance towards the purchase price.

The society offered to advance to the purchasers £59,000 on the security of a first mortgage of the property on the express condition that unless otherwise agreed in writing the balance of the purchase price was to be provided by the purchasers personally without resort to further borrowing and that no second mortgage or other loan was being arranged or contemplated in connection with the purchase. The defendant was provided with the offer of advance (but not with the purchasers' application).

The society's standing instructions to solicitors acting for the society required them to report to the society prior to completion, inter alia:

"(viii) Any proposal that the applicant may create a second mortgage or enter into a promissory note or otherwise borrow in order to finance part of the purchase price. (ix) Any incorrect information given in the solicitor's instructions. (x) Any other matters which ought to be brought to the notice of the society ..."

The solicitor was required to submit a report on title and request for advance cheque to the society at least five clear working days before the cheque was required. This was done on a form by which the solicitor was asked to confirm, inter alia, that the title was good and marketable and might safely be accepted by the society, that to the best of his knowledge and belief the balance of the purchase money was being provided by the applicant personally without resort to further borrowing, and that the special conditions attached to the offer of advance had been, or would be, complied with.

Mr. and Mrs. Towers intended to provide the balance of the purchase price from the net proceeds of sale of their existing property after discharging a subsisting mortgage. As it happens, they owed money to Barclays Bank which was secured by a second charge on that property. They arranged with the bank to allow a small part of the debt (£3,350) to remain outstanding after the sale of the existing property and to be secured by a second charge on the new property. The defendant was informed of these arrangements and gave an undertaking to the bank to hold the title deeds to its order pending registration. Unfortunately, he either failed to appreciate that, although they related to old borrowing, they were a matter which he was required to report to the society, or he had forgotten or overlooked them when he made his report.

By his report dated 2 August 1988 the defendant confirmed that to the best of his knowledge and belief the balance of the purchase money was being provided by the applicants personally without resort to further borrowing and that the special conditions attached to the offer of advance had been or would be complied with. He failed to disclose the fact that Mr. and Mrs. Towers were making arrangements for a second mortgage in connection with the purchase.

It is conceded by the defendant that his statements were untrue and that his failure to report the purchasers' arrangements for a second mortgage was a breach of his instructions. The society alleges that the defendant acted negligently and in breach of contract, and this is admitted. There is no allegation of dishonesty or bad faith, and if any such allegation were made it would be strongly resisted. The society does not allege that

*[1998] Ch. 1 Page  8*

the defendant made the statements in question knowing them to be untrue. It alleges only that he "knew or ought to have known" that they were untrue, and this is consistent with oversight.

Following the receipt of the report the society forwarded a cheque for the amount of the advance to the defendant in readiness for completion on 30 August. Completion took place on that date when the mortgage advance was released to the vendor's solicitors as part of the purchase price for the property. Mr. and Mrs. Towers executed a first charge in favour of the society and a second charge in favour of the bank. On 25 November the defendant applied to the society for its consent to the registration of the second charge in favour of the bank. The society granted its consent on 10 March 1989. It does not appear that the society was aware of the date of the bank's charge (and so was aware that it constituted a breach of the conditions of the advance) when it gave its consent, but it is alleged that the society must have learnt of it shortly afterwards and nevertheless took no action.

The purchasers defaulted after making only small repayments and the society enforced its security. The property was sold on 6 February 1991 and realised net proceeds of a little under £53,000. The society claimed to recover the whole of its net loss on the transaction from the defendant, alleging breach of contract, negligence and breach of trust. As I have already indicated, breach of contract and negligence are admitted; breach of trust is denied.

It has always been the defendant's case that the society would not have been concerned by the purchasers' proposal to grant a second charge to the bank if this had been disclosed to it in August 1988, that it would still have proceeded with the transaction and that it would have suffered precisely the same loss in that event. It is alleged that, in the heady days of 1988, when the property market was at its height and mortgage lenders were falling over themselves to advance money to house purchasers, the society would not have been concerned by a proposal to grant a second charge to secure a relatively trivial indebtedness which did not even represent fresh borrowing; and it is contended that this is demon-

strated by the lack of concern shown by the society when it was asked to give its consent to the registration of a second charge in March 1989. Despite the submissions of the society to the contrary, I am satisfied that, if legally relevant, these allegations raise a triable issue.

**The course of the proceedings below**

It was common ground below that no damages would be recoverable at common law for breach of contract or tort unless the society could show that it would not have proceeded with the transaction if it had been informed of the facts. The society, however, submitted that the position was different in equity. It alleged that the defendant had committed a breach of trust or fiduciary duty, and submitted that common law principles of causation and remoteness of damage have no application in such a case so that it was not necessary for the society to show that it would not have proceeded with the transaction if it had been informed of the facts.

*[1998] Ch. 1 Page  9*

The district judge accepted these arguments. In respect of the common law claims for breach of contract and negligence she gave summary judgment for damages to be assessed. This was apparently on the basis that the judgment would leave it open to the defendant to contend that no loss was caused by the breach.

The district judge also gave summary judgment for the society for breach of trust for the sum of £59,000 less the sums received by the society on the sale of the property, and this was affirmed by the judge, who was satisfied that there was no question or issue to be tried in the action and dismissed the appeal.

**The course of the appeal**

In the course of the appeal the defendant submitted that, by consenting to the registration of the second charge, the society waived the breaches of which complaint is made; and that this raises a triable issue on liability which entitles him to unconditional leave to defend in relation to all the pleaded causes of action. In the absence of any evidence or reason to suppose that the society was aware of the date of the second charge when it gave its consent to its registration, I am not persuaded that there is a triable issue on waiver, and I would not disturb the order below on this ground.

When the appeal was first argued before us it was still conceded by the society that it could not recover damages at common law for breach of contract or negligence unless it could show that it would not have proceeded with the mortgage advance if it had been informed of the facts. The society, however, maintained that it could escape this principle because the defendant was also guilty of a breach of trust and that common law rules of causation and remoteness of damage have no application in such a case. The critical questions, therefore, appeared to be whether the defendant was guilty of a breach of trust or fiduciary duty and if so whether the society needed to prove that it would not still have proceeded with the transaction if it had been told of the facts.

After we had reserved judgment on the appeal, however, the society informed us that it wished to resile from its concession. Relying on the recent decision of this court in *Downs v. Chappell* [1997] 1 W.L.R. 426, the society submitted that it was entitled to recover the whole of its net loss on the transaction by way of damages for negligence at common law without having to establish that it would not have proceeded with the transaction if it had been informed of the facts. If correct, it submitted, this would be determinative of the case, and it would not be necessary for the society to rely on any breach of trust or fiduciary duty. Before the defendant's advisers could respond to this, speeches were delivered in the House of Lords in *Banque Bruxelles Lambert S.A. v. Eagle Star Insurance Co. Ltd.* [1997] A.C. 191. These were relevant to the common law position. For the reasons given by Staughton L.J., however, we decided that it was not necessary to restore the appeal for further argument. This was because the assessment of damages at common law is still pending. They will have to be assessed in conformity with the decision of the House of Lords in *Banque Bruxelles Lambert S.A. v. Eagle Star Insurance Co. Ltd.* and not

*[1998] Ch. 1 Page  10*

with any gloss which, in the absence of argument, we may inadvertently have put upon that decision.

**The claims at common law**

The society has served a respondent's notice, in which it contends that it is entitled to judgment for the sum claimed, and not merely for damages to be assessed, in respect of its common law claims. If this is correct, then the society does not need to establish that the defendant was guilty of a breach of trust or fiduciary duty.

This question depends upon an alleged difference between the tests of causation and remoteness of damage at common law and in equity. In a case of the present kind, however, two different questions of causation are involved and it is necessary to distinguish between them. Where a plaintiff claims that he has suffered loss by entering into a transaction as a result of negligent advice or information provided by the defendant, the first question is whether the plaintiff can establish that the defendant's negligence caused him to enter into the transaction. If he cannot his claim must fail. But even if he can, it is not sufficient for him to establish that the transaction caused him loss. He must still show what (if any) part of his loss is attributable to the defendant's negligence. This is usually treated as a question of the measure of damages rather than causation, and for convenience I shall so treat it in this judgment, but it must be acknowledged that it involves questions of causation.

In *Downs v. Chappell* [1997] 1 W.L.R. 426 the plaintiffs bought a small business in reliance on trading figures contained in a letter from the vendor's accountants which was forwarded to them by the vendor. The vendor knew that the figures contained in the letter were false. The plaintiffs sued the vendor for deceit and the accountants for negligence. The judge accepted the plaintiffs' evidence that they would not have contracted to purchase the business without verification of the figures by the accountants. But he was not satisfied that they would not still have bought the business even if the correct figures had been supplied, and dismissed the action against both defendants.

This court allowed the plaintiffs' appeal against both defendants. Hobhouse L.J. gave the only reasoned judgment. In relation to the vendor, he pointed out that for a plaintiff to succeed in the tort of deceit it was necessary for him to prove (1) a fraudulent representation, (2) materiality and (3) inducement. All three elements had been proved. The judge had found that the representations did induce the plaintiffs to enter into the transaction: they would not have done so without them. This was sufficient proof of causation. Whether the plaintiffs would have entered into the transaction if they had been told the truth was irrelevant.

We are not concerned with this part of the decision, since the present case is not one of fraud. But Hobhouse L.J. held that the position was the same in relation to the accountants, who were charged with negligence only. Here the question was not inducement but reliance. The relevant question was simply whether the plaintiffs had entered into the contract in reliance upon the figures contained in the accountants' letter. The judge had answered that question in the affirmative: the plaintiffs would not have entered into the contract if they had not been provided with the

*[1998] Ch. 1 Page  11*

letter. The causal relationship between the accountants' negligence and the plaintiffs' purchase was established. It was not necessary to consider whether the plaintiffs would have purchased the business if they had been supplied with the correct figures.

In the present case the society's claim is not for misrepresentation. Accordingly, questions of inducement and materiality are not relevant. Its claim lies in negligence, and the relevant concept is reliance. In considering the issue of causation in an action for negligence brought by a client against his solicitor it appears from *Downs v. Chappell* that it is necessary to distinguish between two different kinds of case.

Where a client sues his solicitor for having negligently failed to give him proper advice, he must show what advice should have been given and (on a balance of probabilities) that if such advice had been given he would not have entered into the relevant transaction or would not have entered into it on the terms he did. The same applies where the client's complaint is that the solicitor failed in his duty to give him material information. In *Sykes v. Midland Bank Executor*

*and Trustee Co. Ltd.* [1971] 1 Q.B. 113, which was concerned with a failure to give proper advice, the plaintiff was unable to establish this and his claim to damages for negligence failed. In *Mortgage Express Ltd. v. Bowerman & Partners* [1996] 2 All E.R. 836, which was concerned with a failure to convey information, the plaintiff was able to establish that if it had been given the information it would have withdrawn from the transaction and its claim succeeded.

Where, however, a client sues his solicitor for having negligently given him incorrect advice or for having negligently given him incorrect information, the position appears to be different. In such a case it is sufficient for the plaintiff to prove that he relied on the advice or information, that is to say, that he would not have acted as he did if he had not been given such advice or information. It is not necessary for him to prove that he would not have acted as he did if he had been given the proper advice or the correct information. This was the position in *Downs v. Chappell* [1997] 1 W.L.R. 426.

In the present case the society makes complaints of both kinds. It alleges that the defendant negligently and in breach of his instructions failed to report the purchasers' proposed arrangements with the bank prior to completion. This is a claim of the first kind, and if it were all the society would have to establish that if it had been informed of those arrangements it would not have proceeded with the mortgage advance. But the defendant went further than this. He did not merely fail to report the arrangements to the society; he expressly represented to the society that no such arrangements existed. That brings the case within the second category. It follows from the decision of this court in *Downs v. Chappell* that it is sufficient for the society to prove that it relied on the representations in the report. Although the judge spoke in terms of inducement, he plainly found reliance. The society's procedures were designed to ensure that no cheque would be issued in the absence of a satisfactory report from its solicitor.

In my judgment we are bound by the decision in *Downs v. Chappell* to hold that the necessary causal link between the defendant's negligence and the mortgage advance was proved.

*[1998] Ch. 1 Page  12*

## Measure of damages

It does not, however, follow from the fact that the defendant's negligent statements caused the society to make the mortgage advance that the whole of the society's loss is attributable to his negligence. Having regard to the date of the advance, some part at least of the society's loss may well be attributable to the fall in property values which had occurred by the time that it was able to sell the property.

In *Banque Bruxelles Lambert S.A. v. Eagle Star Insurance Co. Ltd.* [1997] A.C. 191 the House of Lords ruled definitively on the correct measure of damages for the negligent provision of information on which the plaintiff relied in entering into a transaction from which loss resulted. The only speech was delivered by Lord Hoffmann. He distinguished between the measure of damages for (1) breach of a contractual warranty and (2) breach of a duty (whether contractual or tortious) to take care (i) to give proper advice and (ii) to provide accurate information.

In the case of breach of warranty, the comparison is between the plaintiff's position as a result of entering into the transaction and what it would have been if the facts had been as warranted. The measure of damages is the extent to which the plaintiff would have been better off if the information had been right. In the case of a breach of duty to take care the measure of damages is the extent to which the plaintiff is worse off because the information was wrong. Since he entered into the transaction in reliance on the advice or information given to him by the defendant, the starting point is to compare his position as a result of entering into the transaction with what it would have been if he had not entered into the transaction at all.

But that is only the starting point. Lord Hoffmann distinguished between a duty to advise someone as to what course of action he should take and a duty to provide information for the purpose of enabling someone else to decide upon his course of action. In the former case, the defendant is liable for all the foreseeable consequences of the action being taken. In the latter case, however, he is responsible only for the consequences of the information being wrong. The measure of damages is not necessarily the full amount of the loss which the plaintiff has suffered by having entered into the

transaction but only that part if any of such loss as is properly attributable to the inaccuracy of the information. If the plaintiff would have suffered the same loss even if the facts had actually been as represented the defendant is not liable.

Accordingly, in this class of case the plaintiff must prove two things: first, that he has suffered loss; and, secondly, that the loss fell within the scope of the duty he was owed. In the present case the society must prove what (if any) loss was occasioned by the arrangements which the purchasers had made with the bank.

The society was told that Mr. and Mrs. Towers had no other indebtedness and that no second charge was contemplated. The existence of the second charge did not affect the society's security. The absence of any indebtedness to the bank would not have put money in the purchasers' pocket; it would merely have reduced their liabilities. Whether their liability to the bank affected their ability to make mortgage repayments to the society has yet to be established, but given the smallness of the liability

its effect on the purchasers' ability to meet their obligations to the society may have been negligible. It may even be, for example, that the purchasers made no payments at all to the bank at the relevant time, and if so it is difficult to see how any part of the loss suffered by the society can be attributable to the inaccuracy of the information supplied to it by the defendant. It would have occurred even if the information had been correct.

**Conclusion**

The society has proved the causal link between the defendant's negligence and the making of the mortgage advance but it has not yet established the amount of its loss (if any) which is properly attributable to the defendant's negligence. Damages remain to be assessed. We are bound by the decision of this court in *Downs v. Chappell* [1997] 1 W.L.R. 426 to hold that the society will not have to prove that it would not have made the mortgage advance if it had known the true facts; but it will be required to establish what it has lost as a result of the existence of the second charge and the purchasers' indebtedness to the bank. It can maintain the money judgment which it has obtained below only if it can invoke equitable principles.

**The claims in equity**

**_The judge's reasoning_**

The judge found that, in the events which happened, the defendant committed a breach of trust by applying the mortgage advance in the purchase of the property, that he was accordingly liable to restore the trust property, viz. the £59,000 with interest less receipts, that no question of damages at common law or of compensation for loss arose, and that it was irrelevant whether, had it been told of the position, the society might still have chosen to make the advance notwithstanding the arrangements which had been made with the bank. Accordingly the judge concluded that there was no question or issue to be tried in the action and gave summary judgment for the whole of the society's claim.

The judge's conclusion that the defendant had committed a breach of trust in applying the mortgage advance in the purchase of the property was based on the fact that he had obtained payment of the mortgage advance by misrepresentation. The judge said:

> "it seems to me beyond argument that [the defendant] received the cheque ...for £59,000 as a direct result of the misleading report which he had supplied to the society on 2 August 1988. The money was paid to the defendant ...as a result of a misrepresentation made to the society by the defendant. ...*The effect, in my judgment, was that from the moment when [the] cheque for £59,000 was received by [the defendant] he held it upon a constructive trust to return it forthwith to the society, unless authorised by the society to retain, or dispose of, it after a full knowledge of the facts had been disclosed.*" (My emphasis.)

In the judge's opinion it necessarily followed that the defendant's subsequent application of the mortgage money in the purchase of the property constituted a breach of trust. He said:

> "In making that payment there is, in my view, no doubt that the defendant acted in breach of the trust which had been imposed upon him by the circumstances in which he had received the society's cheque. That trust required him to return the £59,000 to the society. Any payment of that £59,000 to a third party, albeit to the vendors of the property, was a breach of that trust."

The judge dismissed the submission that the society had to establish that it would not have made the advance if it had known the facts. He said:

> "But that point affords no defence to the [society]'s claim. It is nihil ad rem that if the true position had been disclosed to the society, the society might or might not have issued an amended offer of advance. Liability to repay arises in this case because [the defendant] received money from the society as a result of his own misrepresentation. He cannot be heard to say that he could retain that money against the society, or dispose of it to the vendors, because, in other circumstances, the society might have chosen to make the advance notwithstanding the borrowing from [the bank]."

The judge did not explain why the consequence of the defendant's misrepresentation was that he held the mortgage advance on a constructive trust for the society, or why the defendant's authority to apply the money in accordance with the society's instructions was determined, but he took the opportunity to do so when he revisited these questions a few months later in *Bristol and West Building Society v. May May & Merrimans* [1996] 2 All E.R. 801 after two county court judges had declined to follow his decision in the present case. The later case involved a number of transactions in which the same society had made mortgage advances and suffered loss when the borrowers defaulted which it sought to recover from the solicitors who had acted for both parties to the lending transactions. In some cases the solicitor knew nothing, prior to the receipt of the cheque for the mortgage advance, which ought to have led him to qualify his report, though he discovered the facts afterwards and before he disbursed the money on completion. In other cases the solicitor's breach of his instructions preceded his receipt of the mortgage advance, as it did in the present case.

The judge distinguished between the two groups of cases. In relation to the first group he reluctantly felt compelled by the decision in *Target Holdings Ltd. v. Redferns* [1996] A.C. 421 to conclude that, at least for the purpose of an application for summary judgment, it was necessary for the society to show that it would not have proceeded with the transaction if it had known the facts. In relation to the second group, however, where the society paid the cheque for the mortgage advance to the solicitor in response to a request based upon a warranty or representation which (as the judge put it) the solicitor "knew or must be taken to have known" to be misleading, he confirmed his previous decision in the present case. He held that the society was entitled to succeed in such cases whether or not it would have still made the advance if it had known the facts.

*[1998] Ch. 1 Page 15*

In the course of his judgment the judge explained how the constructive trust in question arose. It was, he said, because the solicitor had given misleading information to his client. This constituted a breach of fiduciary duty which enabled the court to impose a constructive trust on the property acquired as a result of the breach of duty. He said [1996] 2 All E.R. 801, 818:

> "where moneys have been received by the solicitor from the society following a request based upon a warranty or representation which he knew, or must be taken to have known, to be misleading in some material respect, equity will give a remedy in respect of any loss which the society suffers as a result of its payment in reliance upon that request. That will be a remedy based upon breach of fiduciary duty and may, where necessary, take the form of the imposition of a constructive trust on those moneys to enforce the solicitor's obligation to return them to the society forthwith. The constructive trust imposed by equity to enforce the obligation to make immediate restitution overrides any express or implied trust which might otherwise arise out of any instructions given by [the society] when the money is paid to the solicitor. No reliance can be placed on ...those instructions, because they are vitiated by the breach of duty by which they were obtained. ...In the absence of some fresh instructions, given by the society after full disclosure of the matters in respect of which it has been misled, the only course properly open to the solicitor is to repay the moneys to the society with interest."

The judge evidently considered himself to be imposing a remedial constructive trust as the appropriate remedy for a prior breach of fiduciary duty.

The judge's references to the solicitor having made a representation which "he knew, or must be taken as having known" to be misleading is not an accurate description of the facts of the present case. It is not alleged that the defendant "knew or must be taken to have known" the facts, but only that he "knew or ought to have known" them, which is a very different matter. In explaining his decision in the present case the judge said that the defendant's misrepresentation could not be described as innocent because he "clearly had the knowledge which made the representation false:" see [1996] 2 All E.R. 801, 832. That confuses knowledge with the means of knowledge. On the society's pleaded case the defendant must be taken to have known the facts at one time but to have forgotten or overlooked them so that they were not present to his mind when he came to complete his report to the society.

It is not alleged that the defendant deliberately concealed the arrangements which the purchasers had made with their bank from the society or that he consciously intended to mislead it. Nothing in this judgment is intended to apply to such a case. My observations are confined to the case like the present where the provision of incorrect information by a solicitor to his client must be taken to have been due to an oversight. In such a case his breach of duty is unconscious; he will ex hypothesi be unaware of the fact that he has committed a breach of his

instructions; and if this means that his subsequent application of the mortgage money constitutes a breach of trust then it will be a breach of a trust of which he is unaware. I would not willingly treat such conduct as involving a breach of trust or misapplication of trust money unless compelled by authority to do so, and in my judgment neither principle nor authority compels such a conclusion.

Before us the defendant submits that, while he was guilty of negligence and breach of contract, he was not guilty of a breach of trust or fiduciary duty. It is convenient to take first the question of fiduciary duty, and then to consider the question of breach of trust.

**Breach of fiduciary duty**

Despite the warning given by Fletcher Moulton L.J. in *In re Coomber; Coomber v. Coomber* [1911] 1 Ch. 723, 728, this branch of the law has been bedevilled by unthinking resort to verbal formulae. It is therefore necessary to begin by defining one's terms. The expression "fiduciary duty" is properly confined to those duties which are peculiar to fiduciaries and the breach of which attracts legal consequences differing from those consequent upon the breach of other duties. Unless the expression is so limited it is lacking in practical utility. In this sense it is obvious that not every breach of duty by a fiduciary is a breach of fiduciary duty. I would endorse the observations of Southin J. in *Girardet v. Crease & Co.* (1987) 11 B.C.L.R. (2d) 361, 362:

> "The word 'fiduciary' is flung around now as if it applied to all breaches of duty by solicitors, directors of companies and so forth. ...That a lawyer can commit a breach of the special duty [of a fiduciary] ...by entering into a contract with the client without full disclosure ...and so forth is clear. But to say that simple carelessness in giving advice is such a breach is a perversion of words."

These remarks were approved by La Forest J. in *LAC Minerals Ltd. v. International Corona Resources Ltd.* (1989) 61 D.L.R. (4th) 14, 28 where he said: "not every legal claim arising out of a relationship with fiduciary incidents will give rise to a claim for breach of fiduciary duty."

It is similarly inappropriate to apply the expression to the obligation of a trustee or other fiduciary to use proper skill and care in the discharge of his duties. If it is confined to cases where the fiduciary nature of the duty has special legal consequences, then the fact that the source of the duty is to be found in equity rather than the common law does not make it a fiduciary duty. The common law and equity each developed the duty of care, but they did so independently of each other and the standard of care required is not always the same. But they influenced each other, and today the substance of the resulting obligations is more significant than their particular historic origin. In *Henderson v. Merrett Syndicates Ltd.* [1995] 2 A.C. 145, 205 Lord Browne-Wilkinson said:

> "The liability of a fiduciary for the negligent transaction of his duties is not a separate head of liability but the paradigm of the general duty to act with care imposed by law on those who take it upon themselves to act for or advise others. Although the historical

> development of the rules of law and equity have, in the past, caused different labels to be stuck on different manifestations of the duty, in truth the duty of care imposed on bailees, carriers, trustees, directors, agents and others is the same duty: it arises from the circumstances in which the defendants were acting, not from their statusor description. It is the fact that they have all assumed responsibility for the property or affairs of others which renders them liable for the careless performance of what they have undertaken to do, not the description of the trade or position which they hold."

I respectfully agree, and endorse the comment of Ipp J. in *Permanent Building Society v. Wheeler* (1994) 14 A.C.S.R. 109, 157:

> "It is essential to bear in mind that the existence of a fiduciary relationship does not mean that every duty owed by a fiduciary to the beneficiary is a fiduciary duty. In particular, a trustee's duty to exercise reasonable care, though equitable, is not specifically a fiduciary duty ..."

Ipp J. explained, at p. 158:

> "The director's duty to exercise care and skill has nothing to do with any position of disadvantage or vulnerability on the part of the company. It is not a duty that stems from the requirements of trust and confidence imposed on a fiduciary. In my opinion, that duty is not a fiduciary duty, although itis a duty actionable in the equitable jurisdiction of this court. ...I consider that Hamilton owed P.B.S. a duty, both in law and in equity, to exercise reasonable care and skill, and P.B.S. was able to mount a claim against him for breach of the legal duty, and, in the alternative, breach of the equitable duty. For the reasons I have expressed, in my view the equitable duty is not to be equated with or termed a 'fiduciary' duty."

I agree. Historical support for this analysis may be found in Viscount Haldane L.C.'s speech in *Nocton v. Lord Ashburton* [1914] A.C. 932, 956. Discussing the old bill in Chancery for equitable compensation for breach of fiduciary duty, he said that he thought it probable that a demurrer for want of equity would always have lain to a bill which did no more than seek to enforce a claim for damages for negligence against a solicitor.

In my judgment this is not just a question of semantics. It goes to the very heart of the concept of breach of fiduciary duty and the availability of equitable remedies.

Although the remedy which equity makes available for breach of the equitable duty of skill and care is equitable compensation rather than damages, this is merely the product of history and in this context is in my opinion a distinction without a difference. Equitable compensation for breach of the duty of skill and care resembles common law damages in that it is awarded by way of compensation to the plaintiff for his loss. There is no reason in principle why the common law rules of causation, remoteness of damage and measure of damages should not be applied by analogy in such a case. It should not be confused with equitable compensation for breach of fiduciary duty, which may be awarded in lieu of rescission or specific restitution.

This leaves those duties which are special to fiduciaries and which attract those remedies which are peculiar to the equitable jurisdiction and are primarily restitutionary or restorative rather than compensatory. A fiduciary is someone who has undertaken to act for or on behalf of another in a particular matter in circumstances which give rise to a relationship of trust and confidence. The distinguishing obligation of a fiduciary is the obligation of loyalty. The principal is entitled to the single-minded loyalty of his fiduciary. This core liability has several facets. A fiduciary must act in good faith; he must not make a profit out of his trust; he must not place himself in a position where his duty and his interest may conflict; he may not act for his own benefit or the benefit of a third person without the informed consent of his principal. This is not intended to be an exhaustive list, but it is sufficient to indicate the nature of fiduciary obligations. They are the defining characteristics of the fiduciary. As Dr. Finn pointed out in his classic work *Fiduciary Obligations* (1977), p.

2, he is not subject to fiduciary obligations because he is a fiduciary; it is because he is subject to them that he is a fiduciary.

(In this survey I have left out of account the situation where the fiduciary deals with his principal. In such a case he must prove affirmatively that the transaction is fair and that in the course of the negotiations he made full disclosure of all facts material to the transaction. Even inadvertent failure to disclose will entitlethe principal to rescind the transaction. The rule is the same whether the fiduciary is acting on his own behalf or on behalf of another. The principle need not be further considered because it does not arise in the present case. The mortgage advance was negotiated directly between the society and the purchasers. The defendant had nothing to do with the negotiations. He was instructed by the society to carry out on its behalf a transaction which had already been agreed.)

The nature of the obligation determines the nature of the breach. The various obligations of a fiduciary merely reflect different aspects of his core duties of loyalty and fidelity. Breach of fiduciary obligation, therefore, connotes disloyalty or infidelity. Mere incompetence is not enough. A servant who loyally does his incompetent best for his master is not unfaithful and is not guilty of a breach of fiduciary duty.

In the present case it is clear that, if the defendant had been acting for the society alone, his admitted negligence would not have exposed him to a charge of breach of fiduciary duty. Before us counsel for the society accepted as much, but insisted that the fact that he also acted for the purchasers made all the difference. So it is necessary to ask: "Why did the fact that the defendant was acting for the purchasers as well as for the society convert the defendant's admitted breach of his duty of skill and care into a breach of fiduciary duty?" To answer this question it is necessary to identify the fiduciary obligation of which he is alleged to have been in breach.

It is at this point, in my judgment, that the society's argument runs into difficulty. A fiduciary who acts for two principals with potentially conflicting interests without the informed consent of both is in breach of the obligation of undivided loyalty; he puts himself in a position where his duty to one principal *may* conflict with his duty to the other: see *Clark*

*Boyce v. Mouat* [1994] 1 A.C. 428 and the cases there cited. This is sometimes described as "the double employment rule." Breach of the rule automatically constitutes a breach of fiduciary duty. But this is not something of which the society can complain. It knew that the defendant was acting for the purchasers when it instructed him. Indeed, that was the very reason why it chose the defendant to act for it. The potential conflict was of the society's own making: see *Finn, Fiduciary Obligations*, p. 254 and *Kelly v. Cooper* [1993] A.C. 205.

It was submitted on behalf of the society that this is irrelevant because the defendant misled the society. It did not know of the arrangements which the purchasers had made with their bank, and so could not be said to be "fully informed" for the purpose of absolving the defendant from the operation of the double employment rule. The submission is misconceived. The society knew all the facts relevant to its choice of solicitor. Its decision to forward the cheque for the mortgage advance to the defendant and to instruct him to proceed was based on false information, but its earlier decision to employ the defendant despite the potentially conflicting interest of his other clients was a fully informed decision.

That, of course, is not the end of the matter. Even if a fiduciary is properly acting for two principals with potentially conflicting interests he must act in good faith in the interests of each and must not act with the intention of furthering the interests of one principal to the prejudice of those of the other: see *Finn*, p. 48. I shall call this "the duty of good faith." But it goes further than this. He must not allow the performance of his obligations to one principal to be influenced by his relationship with the other. He must serve each as faithfully and loyally as if he were his only principal.

Conduct which is in breach of this duty need not be dishonest but it must be intentional. An unconscious omission which happens to benefit one principal at the expense of the other does not constitute a breach of fiduciary duty, though it may constitute a breach of the duty of skill and care. This is because the principle which is in play is that the fiduciary

must not be inhibited by the existence of his other employment from serving the interests of his principal as faithfully and effectively as if he were the only employer. I shall call this "the no inhibition principle." Unless the fiduciary is inhibited or believes (whether rightly or wrongly) that he is inhibited in the performance of his duties to one principal by reason of his employment by the other his failure to act is not attributable to the double employment.

Finally, the fiduciary must take care not to find himself in a position where there is an *actual* conflict of duty so that he cannot fulfil his obligations to one principal without failing in his obligations to the other: see *Moody v. Cox and Hatt* [1917] 2 Ch. 71; *Commonwealth Bank of Australia v. Smith* (1991) 102 A.L.R. 453. If he does, he may have no alternative but to cease to act for at least one and preferably both. The fact that he cannot fulfil his obligations to one principal without being in breach of his obligations to the other will not absolve him from liability. I shall call this "the actual conflict rule."

*[1998] Ch. 1 Page  20*

In the present case the judge evidently thought that the defendant was in breach of both the duty of good faith and the actual conflict rule. In *Bristol and West Building Society v. May May & Merrimans* [1996] 2 All E.R. 801, 817-818 he said:

> "there can be no doubt that the requirement of unconscionable conduct is present where a solicitor who is acting for both borrower and lender misrepresents to the lender some fact *which he knows, or must be taken to know*, will or may affect the lender's decision to proceed with the loan. In those circumstances the solicitor *is abusing his fiduciary relationship with one client, the lender, to obtain an advantage for his other client, the borrower*. It is as much 'against the dictates of conscience' for a solicitor *knowingly to prefer the interests of one client over those of another client* as it is for him to prefer his own interests over those of his client." (My emphasis.)

I respectfully agree; but no such allegation is made in the present case.

As to the actual conflict rule, the judge said, at p. 832:

> "First, in *Mothew*, the 'agent' was a fiduciary who had put himself in a position in which his duty to the lender *was* in conflict with the interests of his other client, the borrower." (My emphasis.)

I do not accept this. By instructing him to act for them, the purchasers must be taken to have authorised the defendant to complete the report without which the mortgage advance would not have been forthcoming; and to complete it truthfully. The defendant was required by the society to report on the purchasers' title as well as to confirm the absence of any further borrowing. The two stood in exactly the same case. The defendant would not have been in breach of his duty to the purchasers if he had disclosed the facts to the society any more than if he had reported a defect in their title.

This proposition can be tested by considering what the defendant's position would have been if he had acted for the purchasers and another solicitor had been instructed to act for the society. He would have been required to deduce the purchasers' title to the satisfaction of the society's solicitor, and to confirm to him that no further borrowing or second charge was in contemplation. His duty to the purchasers would have required him to ascertain the facts from them and to report them to the society. Unless they told him the facts and instructed him to lie to the society, instructions which he would be bound to refuse, his duty to the purchasers would not inhibit him in providing full and truthful information to the solicitor acting for the society.

In my judgment, the defendant was never in breach of the actual conflict rule. It is not alleged that he acted in bad faith or that he deliberately withheld information because he wrongly believed that his duty to the purchasers required him to do so. He was not guilty of a breach of fiduciary duty.

The judge relied on *Nocton v. Lord Ashburton* [1914] A.C. 932 and *Commonwealth Bank of Australia v. Smith*, 102 A.L.R. 453 to hold that a party who pays money to his solicitor in reliance on a representation *known* by the solicitor to be false has a remedy for breach of fiduciary

duty. Neither case is authority for the proposition (though its correctness is not in issue); certainly neither is authority for the proposition that a party who pays money to a solicitor in reliance on a representation which the solicitor *ought to have known* to be false has such a remedy.

In *Nocton v. Lord Ashburton* [1914] A.C. 932 a solicitor had an undisclosed personal interest in a transaction on which he gave his client advice which was to his own advantage and the disadvantage of his client. The plaintiff pleaded breach of the duty of good faith. In fact this was unnecessary; the existence of the defendant's undisclosed interest was enough: see *Lewis v. Hillman* (1852) 3 H.L.Cas. 607. The plaintiff was entitled to receive, and thought that he was receiving, the disinterested advice of a solicitor with no other interest in the transaction. *Commonwealth Bank of Australia v. Smith*, 102 A.L.R. 453 involved a breach of the actual conflict rule. The defendant, who was acting for both parties to a proposed transaction, placed himself in an impossible position by undertaking to advise one of them on the merits of the transaction.

In *Moody v. Cox and Hatt* [1917] 2 Ch. 71 a solicitor, who was acting for both vendor and purchaser, was in possession of valuations which showed that the property was not worth the price which the purchaser had agreed to pay. He did not disclose them to the purchaser, and claimed that his duty to the vendor precluded him from doing so. The purchaser was allowed to rescind. The case bears a superficial resemblance to the present but there are two crucial differences: (i) the vendor was under no obligation to disclose the valuations to the purchaser and did not wish his solicitor do so; and (ii) the vendor and the solicitor tacitly agreed to conceal the valuations from the purchaser. The solicitor was in breach of both the duty of good faith and the actual conflict rule; his defence fell foul of the no inhibition principle.

That was a case of deliberate concealment. Non-disclosure and concealment are two very different things. This has been a truism of the law from the time of Cicero (De Officiis, lib. 3, c. 12, 13 citing Diogenes of Babylon). It is even enshrined, like other such truisms, in a Latin tag: aliud est celare, aliud tacere.

The society placed much reliance on a dictum by Lord Jauncey of Tullichettle in *Clark Boyce v. Mouat* [1994] 1 A.C. 428, 437 where he said:

> "Another case of breach [of fiduciary duty] is where a solicitor acts for both parties to a transaction without disclosing this to one of them *or where having disclosed it he fails, unbeknown to one party, to disclose to that party material facts relative to the other party of which he is aware*." (My emphasis.)

But I do not think that Lord Jauncey meant to include an inadvertent failure which owes nothing to the double employment. Where such failure is to the advantage of the other party, the court will jealously scrutinise the facts to ensure that there has been nothing more than inadvertence, but there can be no justification for treating an unconscious failure as demonstrating a want of fidelity.

In my judgment the distinction drawn by Ipp J. in *Permanent Building Society v. Wheeler*, 14 A.C.S.R. 109 is sound in principle and is decisive of the present case. On the society's pleaded case the fact that the defendant was acting for the purchasers played no part in his failure to report the true state of affairs to the society. It did not inhibit him from fulfilling his obligations to the society. It is consistent with its pleaded case that the defendant would have done so but for a negligent oversight. It would have been exactly the same if he had failed to notice and report the existence of a defect in the purchasers' title. To characterise either such failure as a breach of fiduciary duty because he was acting for both parties in a situation where that fact did not contribute to his failure is, in my opinion, to substitute a verbal formula for principle.

In my judgment the judge's conclusion that the defendant was in breach of fiduciary duty cannot be supported. It follows that it cannot be sustained as a ground for holding the defendant in breach of a constructive trust of the mortgage money.

**Breach of trust**

It is not disputed that from the time of its receipt by the defendant the mortgage money was trust money. It was client's money which belonged to the society and was properly paid into a client account. The defendant never claimed any beneficial interest in the money which remained throughout the property of the society in equity. The defendant held it in trust for the society but with the society's authority (and instructions) to apply it in the completion of the transaction of purchase and mortgage of the property. Those instructions were revocable but, unless previously revoked, the defendant was entitled and bound to act in accordance with them.

The society's instructions were not revoked before the defendant acted on them, and in my judgment there was no ground upon which the judge could properly conclude that his authority to apply the money in completing the transaction had determined.

If his judgment in the present case is considered without the benefit of his later explanation in *Bristol and West Building Society v. May May & Merrimans* [1996] 2 All E.R. 801, it would appear that the judge was of opinion that the defendant's authority to deal with the money was automatically vitiated by the fact that it (and the cheque itself) was obtained by misrepresentation. But that is contrary to principle. Misrepresentation makes a transaction voidable not void. It gives the representee the right to elect whether to rescind or affirm the transaction. The representor cannot anticipate his decision. Unless and until the representee elects to rescind the representor remains fully bound. The defendant's misrepresentations merely gave the society the right to elect to withdraw from the transaction on discovering the truth. Since its instructions to the defendant were revocable in any case, this did not materially alter the position so far as he was concerned, though it may have strengthened the society's position in relation to the purchasers.

The right to rescind for misrepresentation is an equity. Until it is exercised the beneficial interest in any property transferred in reliance on the representation remains vested in the transferee. In *El Ajou v. Dollar*

*[1998] Ch. 1 Page  23*

*Land Holdings Plc.* [1993] 3 All E.R. 717, 734 I suggested that on rescission the equitable title might revest in the representee retrospectively at least to the extent necessary to support an equitable tracing claim. I was concerned to circumvent the supposed rule that there must be a fiduciary relationship or retained beneficial interest before resort may be had to the equitable tracing rules. The rule would have been productive of the most extraordinary anomalies in that case, and its existence continually threatens to frustrate attempts to develop a coherent law of restitution. Until the equitable tracing rules are made available in support of the ordinary common law claim for money had and received some problems will remain incapable of sensible resolution.

But all that is by the way. Whether or not there is a retrospective vesting for tracing purposes it is clear that on rescission the equitable title does not revest retrospectively *so as to cause an application of trust money which was properly authorised when made to be afterwards treated as a breach of trust*. In *Lipkin Gorman v. Karpnale Ltd*. [1991] 2 A.C. 548 Lord Goff of Chieveley said, at p. 573:

> "Of course, 'tracing' or 'following' property into its product involves a decision by the owner of the original property to assert his title to the product in place of his original property. This is sometimes referred to as ratification. I myself would not so describe it, but it has, in my opinion, at least one feature in common with ratification, that it cannot be relied upon so as to render an innocent recipient a wrongdoer (cf. *Bolton Partners v. Lambert* (1889) 41 Ch.D. 295, 307, *per* Cotton L.J.: 'an act lawful at the time of its performance [cannot] be rendered unlawful, by the application of the doctrine of ratification.')"

In *Westdeutsche Landesbank Girozentrale v. Islington London Borough Council [1996] A.C. 669* Lord Browne-Wilkinson expressly rejected the possibility that a recipient of trust money could be personally liable, regardless of

fault, for any subsequent payment away of the moneys to third parties even though, at the date of such payment, he was ignorant of the existence of any trust. He said, at p. 705:

> "Since the equitable jurisdiction to enforce trusts depends upon the conscience of the holder of the legal interest being affected, he cannot be a trustee of the property if and so long as he is ignorant of the facts alleged to affect his conscience, i.e. until he is aware that he is intended to hold the property for the benefit of others in the case of an express or implied trust, or, in the case of a constructive trust, of the factors which are alleged to affect his conscience."

Mutatis mutandis that passage is directly applicable in the present case. The defendant knew that he was a trustee of the money for the society; but he did not realise that he had misled the society and could not know that his authority to complete had determined (if indeed it had). He could not be bound to repay the money to the society so long as he was ignorant of the facts which had brought his authority to an end, for those are the facts which are alleged to affect his conscience and subject him to an obligation to return the money to the society.

*[1998] Ch. 1 Page  24*

Before us the society put forward a more sophisticated argument. The defendant's instructions, it pointed out, expressly required him to report the arrangements in question "to the society prior to completion." This, it was submitted, made it a condition of the defendant's authority to complete that he had complied with his obligation. Whether he knew it or not, he had no authority to complete. It was not necessary for the society to revoke his authority or withdraw from the transaction. I do not accept this. The society's standing instructions did not clearly make the defendant's authority to complete conditional on having complied with his instructions. Whether they did so or not is, of course, a question of construction, and it is possible that the society could adopt instructions which would have this effect. But it would in my judgment require very clear wording to produce so inconvenient and impractical a result. No solicitor could safely accept such instructions, for he could never be certain that he was entitled to complete.

In my judgment the defendant's authority to apply the mortgage money in the completion of the purchase was not conditional on his having first complied with his contractual obligations to the society, was not vitiated by the misrepresentations for which he was responsible but of which he was unaware, had not been revoked, and was effective to prevent his payment being a breach of trust. Given his state of knowledge (and, more importantly, that his authority had not been revoked), he had no choice but to complete.

**Conclusion**

In my judgment the defendant was not guilty of breach of trust or fiduciary duty. This makes it unnecessary to consider what the consequences of such a breach would have been. I would allow the appeal and set aside the money judgment. I would leave undisturbed the judgments for damages to be assessed for breach of contract and negligence, but make it clear that it does not follow that the society will establish any recoverable loss.

OTTON L.J. I have read with advantage the judgments of Staughton and Millett L.JJ. I agree with the analysis and reasoning regarding breach of trust and of fiduciary duty. I wish only to add a few words on the extant common law claims.

I am satisfied that there was sufficient evidence before the judge to establish negligence on the part of the defendant. There was the requisite proximity between the parties, and there was foreseeability of damage. Thus a duty of care arose. This duty included answering correctly such questions as were posed by the proposed lender and which it was reasonable for him to be required to answer. The answer sought was one of fact and not opinion. The fact sought could have been supplied accurately by information which was within his knowledge. If it was not at his fingertips the information was either on file or could easily have been obtained by direct inquiry of the intending purchaser. His breach of duty occurred when he conveyed the inaccurate information to the plaintiff. The duty was not simply a duty not to act carelessly; it was a duty not to inflict damage carelessly. Damage is the gist of the action.

*[1998] Ch. 1 Page  25*

The more complex issues are whether the inaccurate information given was causative of damage, and if so what measure. To my mind it is not necessary to adopt a particular procedural path to find the answer. I appreciate that Lord Hoffmann suggests that it is first necessary to decide the kind of loss to which the plaintiff is entitled. This may be appropriate in most cases where negligence/causation is involved. From a practical point of view in some cases it may be more expedient to establish the causal link between the negligent act or omission and the reliance by the plaintiff or the course of action which he was induced to take. The judge may find as a fact that there was no reliance or that the plaintiff would have behaved in the same or substantially the same manner if he had been given accurate information; in either event the negligence had no causative potency. That is the end of the matter. The chain is broken, there is no loss at all and there is no need to consider or determine the kind of loss.

In other cases it may be appropriate to identify the type or particular head of damage claimed. This may identify damage which is too remote and for which no remedy lies (e.g. economic loss), and the claim in respect of it fails in limine. As I concur that the damages award must now be set aside the issue of the measure of damage, if any, is now at large. I regard the evidence (in particular the hearsay evidence of Ms Samantha Bennett at paragraph 29 of Mr. Prees's affidavit) as falling short of resolving the issues of causation or damage. It does not (for example) address the possibility of a revised offer if the accurate and full position had been explained to the plaintiff.

I do not think it necessary to conclude whether there was a breach of contract. This cause of action probably adds nothing to the case in negligence. It is unlikely that there is any practical difference between a breach of the duty of care and a breach of contract, or in the issues arising on causation, or the measure of damages. If there is any issue it can be determined by the trial judge. I also consider that there was no waiver.

For these reasons I consider that there are triable issues and they should be determined by a judge at first instance.

I would therefore allow the appeal and remit the assessment of damages as proposed by Staughton L.J. and dismiss the respondent's notice.

STAUGHTON L.J. Mr. Mothew made his report to the Cheshunt Building Society on 2 August 1988. In it he answered one of the questions asked as follows:

> "Q. Please confirm that (to the best of your knowledge and belief) the balance of the purchase money is being provided by the applicant(s) personally without resort to further borrowing. If not please give details. A. Confirmed."

That was untrue. There were other aspects of the same error, but I need not go into them in detail. Although Mr. Mothew had the means of knowledge in his possession, which could have brought the error to his attention, it is not said that he acted fraudulently or in bad faith.

*[1998] Ch. 1 Page  26*

The ordinary remedy of a client who has received wrong information or advice from his solicitor is to claim damages for negligence, whether as a breach of contract or as a tort. For such a claim to give rise to substantial damages the building society would have to show that the breach of contract or negligence caused them loss. By their respondent's notice they seek to say that, if they had known the true facts, they would not have lent any money to Mr. and Mrs. Towers.

The judge regarded that point as immaterial, since the building society succeeded on other grounds. If it is material, in my opinion it raises a triable issue. According to Samantha Bennett of the society's advances department, the offer of advance would have immediately been withdrawn if the society had known that even £3,350 was being borrowed elsewhere. In the nature of things Mr. Mothew is unlikely to have evidence which directly controverts that statement. But there are grounds for supposing that it may be open to question. I would not give judgment under R.S.C., Ord. 14 on the

basis that it is true. If it is critical, the case must go to trial, perhaps with the aid of interrogatories and discovery of documents.

However in this particular case the building society were not the sole clients of Mr. Mothew; he was also the solicitor acting for Mr. and Mrs. Towers. That is said to make all the difference, because Mr. Mothew then became under a fiduciary duty to the building society. And the argument is that for breach of fiduciary duty the remedy does not depend on causation or remoteness; all that is necessary is that the loss would not have occurred *but for* the breach of duty.

It seems to me wrong that a breach of contract or tort should become a breach of fiduciary duty in that way. I am glad to find that the authorities relied on by Millett L.J. show that it is wrong. In my judgment Mr. Mothew was in breach of a duty of care and nothing more. True he was in a situation where he owed duties to two clients, and those duties might conflict with each other. But he did not prefer the interest of one client to that of another; at most he was guilty of negligence which had that unintended effect.

Alternatively it is said that Mr. Mothew was in breach of trust because he paid away the trust fund contrary to his instructions. He did indeed hold the £59,000 in trust; it was not his own money. There was in my opinion an express or implied trust, and not (as the judge held) a constructive trust. But he did not pay it away contrary to the society's instructions. The cheque reached Mr. Mothew with a letter dated 23 August 1988, which in effect instructed him to use it for completion of the proposed purchase. That was what he did.

There being in my opinion no breach of fiduciary duty or breach of trust, it is unnecessary to consider what remedy such a breach might have afforded.

Thus far the appeal succeeds, but there remains judgment on the cause of action at common law for damages to be assessed. Mr. Sumption says that even that must go, since there is a triable issue as to waiver by the building society. The problem that he faces is that, although the building society readily agreed when they were asked to consent to the registration of the second charge, they are not shown to have known that the second

*[1998] Ch. 1 Page  27*

charge was contemplated and intended at the time of Mr. Mothew's report. There has been ample opportunity to produce evidence that they knew, if indeed they did. In my judgment there was no waiver.

When the argument before us was concluded on 21 May that was all that we had to decide. But we have since been asked to consider the judgment of Hobhouse L.J. in *Downs v. Chappell* [1997] 1 W.L.R. 426 and the speech of Lord Hoffmann in *Banque Bruxelles Lambert S.A. v. Eagle Star Insurance Co. Ltd*. [1997] A.C. 191. Such has been the volume of litigation on the topic of loss to lenders following negligent professional advice and the collapse of the property market that judges risk being overtaken by new authority.

The Court of Appeal in the *Banque Bruxelles case* began with a reference to the well known principle that damages should be as nearly as possible the sum which would put the plaintiff in the position in which he would have been if he had not been injured. That would lead to two possible answers in the present case. (1) If there had been no report from Mr. Mothew to the building society, the money would not have been lent; the society would still have their £59,000. There would have been no transaction, a phrase which I use not as a label for anything but as a description of the fact. (2) If Mr. Mothew had provided an accurate report to the building society, then they might have been content to proceed on the terms previously proposed, or they might have made a revised offer, or they might have proceeded as in (1) above. There is a triable issue as to that. Left to myself, I would have ruled that (2) was the appropriate situation for the judge to consider in assessing the damages. But I have to acknowledge that Hobhouse L.J. in *Downs v. Chappell* [1997] 1 W.L.R. 426, with the agreement of Butler-Sloss and Roch L.JJ., preferred method (1), both for fraudulent misrepresentation and for negligence.

Lord Hoffmann, in the *Banque Bruxelles case* [1997] A.C. 191, 211, as it seems to me, considered that either method was the wrong place to begin:

> "Before one can consider the principle on which one should calculate the damages to which a plaintiff is entitled as compensation for loss, it is necessary to decide for what kind of loss he is entitled to compensation."

There follows an exposition of the problem and the answer to it, as set out in the judgment of Millett L.J.

For my part I feel that we should not at this stage purport to instruct the judge who has to assess the damages by a para-phrase or interpretation of that decision, for a number of reasons. First, we have not heard argument on it, and our judgment is already long delayed by intervening material. I am told it would be impractical for us to have a further hear-ing before October. Secondly, the judge has yet to find the facts relating to the assessment of damages. Thirdly, the judge must be guided by what Lord Hoffmann has said and not by any gloss of ours.

*[1998] Ch. 1 Page  28*

I would allow the appeal and remit the assessment of damages, either to Chadwick J. or to another judge of the Chan-cery Division as the exigencies of business may require. The cross-appeal should be dismissed.

*Appeal allowed.*

*Cross-appeal dismissed.*

*Solicitors: Wansbroughs Willey Hargrave; Osborne Clarke, Bristol.*

[Reported by JILL SUTHERLAND, Barrister]