UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                         :

In re REFCO, INC. SECURITIES LITIGATION  :     07 MDL 1902 (JSR)
                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                         :

This document relates to:             :
                         :     07 Civ. 8165 (JSR)
MARC S. KIRSCHNER,         :
As Trustee of the Refco Private Actions Trust  :
                         :

             Plaintiff,     :
                         :

                -v-        :
                         :

PHILLIP R. BENNETT, SANTO C. MAGGIO,  :
ROBERT C. TROSTEN, MAYER BROWN,   :
LLP, MAYER BROWN INTERNATIONAL   :
LLP, and GRANT THORNTON LLP,     :
                         :

           Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GRANT THORNTON LLP'S REPLY
FURTHER ANSWERING THE COURT'S TWO QUESTIONS
AND RESPONDING TO PLAINTIFF'S MEMORANDUM ON "CHOICE OF LAW"**


WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

*Attorneys for Defendant Grant Thornton LLP*

Kirschner's supplemental memorandum carefully avoids taking the Court's two questions head-on—no doubt because their answers doom his case.

First, Bermuda does *not* "recognize[] a duty similar to the New York common law duty to disclose 'hopeless insolvency' or the like." July 16, 2012 Order.  Kirschner tries to change the subject, showing that the U.K. follows agency principles and has a cause of action for fraud. That is beside the point.  He still cannot identify any Bermuda or U.K. analog to the New York "hopeless insolvency" cases.  In fact, his experts do not cite any Bermuda duty cases at all.

Second, New York law does *not* govern the customers' "relationship" with "RCM, a Bermuda entity" (*id.*).  Kirschner again misses the point, focusing on the locus of the "Refco fraud."  But the alleged fraud here is not the Refco fraud; it is RCM's alleged breach of a duty to disclose.  Bermuda has the greater interest in determining whether such a duty existed.  And to the extent RCM "repatriated," it moved operations to New Jersey (and Austria), not New York.

In a last-ditch effort to avoid the Court's questions, Kirschner resorts to arguing waiver. That is absurd, given the Second Circuit's intervening decision in *Capital Management*.  Within weeks of that decision, Grant Thornton moved for summary judgment on the ground that these customers could not have expected that RCM would be bound by a New York duty to disclose. This Court has asked whether Bermuda law recognizes the same duty, and Grant Thornton has answered that question.  Whether the Court approaches this issue in terms of whether the customers were deceived or in terms of which law governed their relationship, the result is the same:  their claims fail as a matter of law.

## I.    Bermudian law does not recognize any duty to disclose hopeless insolvency.

Kirschner and his experts have not identified any Bermuda case holding that a broker owes depositors a duty "to disclose 'hopeless insolvency.'" July 16, 2012 Order.  And to the

extent that U.K. law is persuasive in Bermuda, they have not identified any U.K. case either.

The best Kirschner can do is to say that one U.K. case allowed "an affirmative misrepresentation

claim—analogous in effect, if not legal theory, to the claim recognized by this Court." Pl. Mem.

2. That misses the point. This Court did not ask whether Bermuda recognizes a cause of action

like "affirmative misrepresentation"; all jurisdictions presumably do. The question is whether

Bermuda recognizes a duty to disclose hopeless insolvency. The answer is an unqualified "no."

Moreover, the U.K. case Kirschner cites as "analogous in effect" is, in fact, completely

different. *See Lindsay v. O'Loughnane*, EWHC 529 (QB 2010). This is a decision by a U.K.

hearing judge, so it is neither binding nor particularly persuasive in Bermuda. *See* 2d Chudleigh

Decl. ¶¶ 4, 10-11. And in any case, Kirscher mischaracterizes it. The defendant there was not a

broker who merely "accept[ed] deposits" (Pl. Mem. 6); he was a corporate director who told a

series of lies and—when his brokerage company accepted new deposits—failed "to correct the

misleading impression" that his own statements and his company's statements[1] had created.

Isaacs Decl. Tab 7, ¶ 96; *id*. ¶ 20. For example, when a trade was completed "late" (*id*. ¶ 7), the

defendant sent a series of emails "designed to mislead" the customer about the reason for the

delay (*id*. ¶ 65). The "real reason" was that the broker "was hopelessly insolvent, unable to pay

its debts as they fell due," and had not even placed the requested trade. *Id*. ¶¶ 7-10. At the time

of the next deposit, the defendant failed to correct his prior statements. Thus, *Lindsay* holds only

that someone who makes misleading statements and fails to correct them may be liable for fraud.

The opinions of Kirschner's experts rest on a faulty premise—that RCM owed a fiduciary

duty with respect to the customers' deposits. Without examining the customer agreements, Mr.

---

[1] The broker's Terms and Conditions said that it would hold the customer's deposit "on trust for him pending the purchase of the relevant foreign exchange." Isaacs Decl. Tab 7, ¶ 8; *id*. ¶ 20. This too was a critical part of the court's analysis. *E.g.*, ¶ 103. Here, in contrast, the agreements clearly warned that the deposits would **not** be held in trust. *Capital Mgmt.*, 680 F.3d at 227-29.

Kessaram believes it "likely" that a Bermuda court would find a fiduciary relationship, because (he assumes) "RCM is given authority by its FX Customers to act on their behalf in relation to funds placed in RCM's hands." Kessaram Decl. ¶ 9; *see* Isaacs Decl. ¶¶ 6-9. Not so. RCM's agreements say that RCM will use the deposits on its *own* behalf, "free from any claim or right." Ex. G to Joyce Decl. at 23. Its "sole obligation" is to return "like amounts" of cash on demand. *Id.* Thus, with respect to the deposits, RCM was not an agent or fiduciary; the customers were unsecured creditors with a contractual right to payment. *See* Chudleigh Decl. ¶ 3 (agreements are principal-to-principal); 2d Chudleigh Decl. ¶ 6; *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 535-37 (S.D.N.Y. 2009) (rejecting fiduciary duty claims). As long as RCM made the trades the customers requested it to make on their behalf—and there is no allegation that it failed to do so—they cannot show a breach of any Bermudian common law duty. *See* 2d George Decl. ¶ 2.

Further, even if Bermudian agency principles are the same as the agency principles in *U.S. v. Szur*, 289 F.3d 200 (2d Cir. 2002)—and Kirschner has not shown even that much—that still leaves a missing link. *Szur* itself does not describe or embody a duty to disclose hopeless insolvency. That is why, at the pleading stage, Kirschner and the Special Master found it necessary to cite the New York cases that recognized such a duty in the banking context. *See* June 3, 2010 R&R at 13 (citing *Cragie v. Hadley*, 54 Sickels 131 (N.Y. 1885); *St. Louis & S.F. Railway v. Johnston*, 133 U.S. 566, 577 (1890)), *adopted* Dec. 12, 2010. Although Kirschner now disputes whether those cases should define the standard, he cannot deny that the *Cragie* cases are the only New York cases that even arguably recognize the duty he asserts in this case.

Kirschner and his experts do not cite *Cragie*, nor do they identify any Bermuda or U.K. case that takes a transaction-specific agency relationship and applies it to require disclosure of the broker's overall financial condition. In short, Bermuda has no analog to *Cragie*.

**II.   New York law does not govern the "relationship" between the customers and RCM.**

Kirschner ducks the Court's second question too.  He focuses on whether New York law governs the alleged "fraudulent conduct."  Pl. Mem. 6; *id*. at 2.  But the Court asked a different question:  whether New York law governs the "relationship" between the customers and RCM. July 16, 2012 Order.  The reason is clear; the Court must first decide whether RCM had a duty to disclose.  If it had no duty, then there was no "fraudulent conduct" at all.

The choice of law analysis in the TH Lee/Mayer Brown case is entirely irrelevant.  *See* Pl. Mem. 7 & n.3 (citing *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown Rowe & Maw LLP*, 612 F. Supp. 2d 267 (2009)).  There, Judge Lynch examined which state had the greatest interest in the "Refco fraud"— that is, the scheme to hide the RGHI receivable.  612 F. Supp. 2d at 284.  He concluded that the fraud "occurred in New York where Refco was headquartered" and where Mayer Brown met with and allegedly misled TH Lee in "face-to-face" meetings.  *Id*.

This case is not about the Refco fraud.  *See* June 3, 2010 R&R at 30.  Nor is it about lies told in meetings in Manhattan.  The customers claim that RCM—a Bermuda entity—committed fraud by breaching a duty to disclose.  But New York has no interest in determining what duties arise in a relationship between non-New-York customers and their non-New-York broker.

To the extent Kirschner talks about the "relationship" at all, he misstates the facts.  First, the alleged repatriation of RCM did ***not*** involve "relocat[ing] to New York," as Kirschner suggests.  Pl. Mem. 9.  As he well knows, it actually involved moving RCM's back office to New Jersey (Am. Compl. ¶ 264) and its trading operations to Vienna (Ex. P. to Joyce Decl. at 677:21-679:20).  Second, RCM's Bermuda ties were ***not*** "only on paper."  Pl. Mem. 9.  At all times, RCM maintained Bermuda incorporation, Bermuda directors and meetings, and Bermuda counsel.  In the bankruptcy, Kirschner described RCM as "a Bermuda-registered company" that was not "'regulated' in the United States."  Ex. E to Joyce Decl. at 9-10.  And third, RCM did

4

*not* send customer statements from "the New York address of RCM's operations." Pl. Mem. 7.
The statements listed RCM "c/o Refco Securities LLC," at that entity's own New York address.
Calamari Decl. Ex. 2-3. None of these facts supports the application of New York law.

Finally, the "reasonable expectations" of the parties *do* matter. The two cases Kirschner
cites on this point (at 9 n.6) both predate *Schultz v. Boy Scouts of America*, which distinguishes
them and holds that "reasonable expectations" should be considered where (as here) the parties
are from separate, non-New-York jurisdictions. 65 N.Y.2d 189, 201 n.3 (1985). Kirschner cites
no authority for the proposition that a plaintiff in such a case may recover by saddling a counter-
party with a more stringent set of duties than the ones it reasonably expected would apply.

## III.    The Trustee's arguments about "waiver" are entirely misplaced.

The argument Grant Thornton made at the hearing was not a new argument. Ever since
*Capital Management* came down this past January, Grant Thornton has argued vigorously that
under that decision, RCM's representations that it was a Bermuda entity preclude the customers
from establishing a primary violation by way of a New York common law duty. Framing this
issue in terms of "choice of law"—in terms of what law applies to the relationship—is simply
another way of expressing the same point. This Court raised a question about what duties would
arise under Bermuda law, and Grant Thornton has answered it. Neither "estop[pel]" nor waiver
nor Rule 44.1 prevents this Court from considering the parties' answers to its two questions.

Moreover, given how Kirschner has conducted this case, Grant Thornton *could not have*
made this choice-of-law argument earlier, as it did not yet know that the plaintiff customers are
all outside New York. GT Supp. Mem. 5-8 (arguing relevance of this fact to choice of law).
Kirschner did not disclose the names and domiciles of the remaining customers until April 8,
2011, after Special Master Hedges ordered him to do so on Grant Thornton's motion to compel.
*See* Exs. B, C to Joyce Decl. Under the circumstances, Kirschner is in no position to complain.

5

Dated:  July 23, 2012                                    Respectfully submitted,
       Chicago, Illinois

                                          WINSTON & STRAWN LLP

                                            /s/

*Of Counsel:*                                            By:  Linda T. Coberly

Kenneth Cunningham                                       Bruce R. Braun (bbraun@winston.com)
Tracy W. Berry                                           Catherine W. Joyce (cjoyce@winston.com)
GRANT THORNTON LLP                                       Linda T. Coberly (lcoberly@winston.com)
175 West Jackson, 20th Floor                             WINSTON & STRAWN LLP
Chicago, Illinois 60604                                  35 W. Wacker Drive
Ph: 312-856-0001                                         Chicago, Illinois 60601
Fax: 312-565-3473                                        Ph: 312-558-5600
                                            Fax: 312-558-5700

                                            Luke Connelly (lconnell@winston.com)
                                            WINSTON & STRAWN LLP
                                            200 Park Avenue
                                            New York, NY 10166
                                            Ph: 212-294-6700
                                            Fax: 212-294-4700

                                            *Attorneys for Grant Thornton LLP*