# Exhibit 1

# In The Matter Of:

*MARC S. KIRSCHNER, et al.*

*v.*

*PHILLIP R. BENNETT, et al.*

_____

*STEPHEN C. DISPENZA - Vol. 1*

*July 19, 2011*

_____

**MERRILL CORPORATION**
LegaLink, Inc.
225 Varick Street
10th Floor
New York, NY 10014
Phone: 212.557.7400
Fax: 212.692.9171

Page 1

```
        UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
        ------------------------------------x
         In re REFCO, INC. SECURITIES
             LITIGATION
                                 07-MDL-1902
        ------------------------------------x
          This Document Relates To:

        MARC S. KIRSCHNER,as Trustee of
        the Refco Private Actions Trust,

                              Plaintiff,
                 -vs-          07 CIV 8165 (JSR)

        PHILLIP R. BENNETT, SANTO C. MAGGIO,
        ROBERT C. TROSTEN, MAYER BROWN LLP,
        MAYER BROWN INTERNATIONAL LLP, and
        GRANT THORNTON LLP,
                              Defendants.
        ------------------------------------x
        GRANT THORNTON LLP,
              Defendant/Third Plaintiff,

              -vs-

        THOMAS H. LEE PARTNERS, L.P.;
        THL EQUITY ADVISORS V, LLC;
        THL MANAGERS V, LLC;
        THOMAS H. LEE EQUITY FUND V, L.P.
        THOMAS H. LEE PARALLEL FUND V, L.P.,
        THOMAS H. LEE EQUITY (CAYMAN) FUND V,
        L.P., THOMAS H. LEE; DAVID V. HARKINS;
        SCOTT L. JAECKEL; and SCOTT A SCHOEN,

              Third-party Defendants.

        ------------------------------------x
                              July 19, 2011
                              9:09 a.m.



        WITNESS: STEPHEN C. DISPENZA
```

STEPHEN C. DISPENZA - 7/19/2011

Page 34

```
                    1           STEPHEN C. DISPENZA
09:39:26    2         Q.    Who was that?
09:39:27    3         A.    Gary Weiss.
09:39:28    4         Q.    Was that the CEO of Refco FX
09:39:37    5   Associates Limited?
09:39:37    6         A.    I don't recall what his title, I
09:39:39    7   don't recall for which entity he was the CEO.
09:39:41    8         Q.    You just knew him as the CEO?
09:39:43    9         A.    He was the boss of Bermuda.
09:39:46   10         Q.    So he was the head of the Bermuda
09:39:48   11   operations?
09:39:49   12         A.    That's correct.
09:39:49   13         Q.    Did at some point you consider
09:39:58   14   yourself to be the head of the FX trading
09:40:03   15   business in Bermuda?
09:40:06   16         A.    I considered myself to be the
09:40:08   17   most senior person responsible for the FX
09:40:12   18   business in Bermuda.
09:40:13   19         Q.    During what time frame?
09:40:27   20         A.    I don't recall the date, but it
09:40:29   21   was -- it would be following the departure of
09:40:34   22   who was at the time the head of Bermuda.  I
09:40:39   23   don't recall the year he left.
09:40:40   24         Q.    Who was that?
09:40:41   25         A.    Barry Fetner.
```

Page 35

```
                    1           STEPHEN C. DISPENZA
09:40:46    2         Q.    So after Mr. Fetner left you were
09:40:48    3   the senior most person responsible for the FX
09:40:52    4   trading business in Bermuda?
09:40:55    5         A.    In Bermuda, yes.
09:41:03    6         Q.    How large was the operation in
09:41:05    7   Bermuda, in terms of number of employees?
09:41:11    8         A.    When? Could you be more specific
09:41:13    9   about what years?
09:41:14   10         Q.    Well, why don't you explain to me
09:41:17   11   how the office grew.
09:41:19   12         A.    The office grew and the office
09:41:21   13   shrank during the course of the eight years I
09:41:22   14   was there.  I would say we were as small as 10
09:41:24   15   and as large as 30.
09:41:28   16         Q.    When you left in 2001 how large
09:41:30   17   was the office?
09:41:31   18         A.    Twelve.
09:41:37   19         Q.    What circumstances led to your
09:41:40   20   departing Bermuda in 2001?
09:41:43   21         A.    A repatriate -- the firm decided
09:41:47   22   to repatriate the operations to the United
09:41:59   23   States.
09:41:59   24         Q.    When exactly did you leave
09:42:01   25   Bermuda?
```

Page 36

```
                    1           STEPHEN C. DISPENZA
09:42:06    2         A.    Can you be more specific; me
09:42:08    3   personally?
09:42:08    4         Q.    Yes.
09:42:09    5         A.    Or the operation?
09:42:10    6         Q.    You.
09:42:11    7         A.    My last -- I closed the door to
09:42:16    8   that office in January, the first week of
09:42:18    9   January 2002.
09:42:24   10         Q.    Is that when you returned to New
09:42:26   11   York?
09:42:31   12         A.    I returned earlier to New York,
09:42:34   13   but because our offices were operated in New
09:42:37   14   York out of the World Financial Center and
09:42:40   15   following the bombing of the Trade Center, we
09:42:43   16   couldn't move everything back to New York when
09:42:44   17   I wanted to.  So, I left some of it in Bermuda
09:42:49   18   to maintain the operation along with our
09:42:51   19   operations in Chicago.
09:42:54   20              I don't know if that answers your
09:42:55   21   question.  It is a gray area of the exact date
09:42:57   22   back because of that event.
09:42:59   23         Q.    Understood.  Back in 2001, can
09:43:06   24   you describe for me all of the offices that
09:43:10   25   Refco had where it conducted FX trading?
```

Page 37

```
                    1           STEPHEN C. DISPENZA
09:43:20    2         A.    Conducted FX trading, could you
09:43:23    3   be more specific where, what do you mean
09:43:25    4   conducted FX trading?
09:43:27    5         Q.    Where it had employees that
09:43:28    6   facilitated it.
09:43:30    7         A.    Okay.  In the United States that
09:43:32    8   would be New York and Chicago.  In Canada it
09:43:37    9   would be Montreal, Toronto.  In Europe it would
09:43:43   10   be London, Geneva.
09:43:51   11              In Bermuda in 2001 until we
09:43:56   12   departed.  In Asia it would be Hong Kong,
09:44:02   13   Singapore, Tokyo.  I think I've got them.  I
09:44:11   14   think that's all of them.
09:44:12   15         Q.    Refco had employees in all those
09:44:14   16   locations?
09:44:14   17         A.    Yes.
09:44:15   18         Q.    Were those employees employees of
09:44:19   19   Refco Capital Markets, which we'll refer to as
09:44:22   20   RCM in this deposition?
09:44:26   21         A.    I can't speak to whether they
09:44:28   22   were employees of Refco Capital Markets because
09:44:32   23   even the people that worked for Capital Markets
09:44:35   24   weren't necessarily employed by Capital
09:44:38   25   Markets.  So I don't know the answer to that
```

10 (Pages 34 to 37)

Page 254

```
                    1          STEPHEN C. DISPENZA
15:21:49    2       Q.   Did it house some of them?
15:21:53    3       A.   I can't answer that with
15:21:55    4   confidence.
15:22:01    5       Q.   We're done with that.  Thank you.
15:22:03    6            MR. PUTZEL:  Before we --
15:22:14    7            MR. KARLAN:  Did I make a mistake?
15:22:20    8   I assume you are not writing him a note.
15:22:23    9            MR. PUTZEL:  I am not writing him a
15:22:25   10   note.  If he needs to correct testimony,
15:22:27   11   I'd rather he do it now.
15:22:29   12            MR. KARLAN:  I agree. Do you want
15:22:31   13   to take a break and talk to him?
15:22:33   14            MR. PUTZEL:  I think it might make
15:22:34   15   sense.  Let's go off the record if we may.
15:22:36   16            VIDEOGRAPHER:  Going off the record
15:22:37   17   3:22.
15:23:27   18            (Recess taken.)
15:31:31   19            VIDEOGRAPHER:  Returning to the
15:32:07   20   record at 3:31.
15:32:10   21            MR. PUTZEL:  Mr. Karlan, Mr.
15:32:11   22   Dispenza would like to clarify a previous
15:32:14   23   or maybe even correct previous testimony.
15:32:17   24       EXAMINATION CONDUCTED BY MR. KARLAN:
15:32:19   25       Q.   Have at it.  Tell us which
```

Page 255

```
                    1          STEPHEN C. DISPENZA
15:32:21    2   numbers we're looking at.
15:32:23    3       A.   Kraker 1419.
15:32:32    4       Q.   Okay.
15:32:35    5            MR. RAND:  As well as what was
15:32:37    6       marked today as 3171.
15:32:41    7       A.   So, just to clarify, it's easy
15:32:44    8   for me to identify a securities account versus
15:32:47    9   an FX account based on the format the document
15:32:50   10   is generated in, because I know what systems
15:32:53   11   were generating the FX statements versus
15:32:57   12   securities statements.
15:32:58   13            So Kraker Exhibit 1419 is in the
15:33:02   14   securities format, generated by a securities
15:33:05   15   system.
15:33:06   16       Q.   Okay.
15:33:06   17       A.   And the other document, 3171 is a
15:33:10   18   foreign exchange document generated by the
15:33:12   19   foreign exchange back office system.
15:33:16   20            Now the confusion about the
15:33:18   21   address is the physical mailing address of
15:33:21   22   Refco Capital Markets I recall continued to be
15:33:25   23   Bermuda, even though we no longer had a
15:33:28   24   physical presence there.
15:33:29   25            So any correspondence with
```

Page 256

```
                    1          STEPHEN C. DISPENZA
15:33:30    2   customers, even if they were Capital Markets
15:33:33    3   customers included the care of Refco Securities
15:33:37    4   address of 200 Liberty Street in New York, the
15:33:40    5   One World Financial Center so that somebody
15:33:43    6   could address the correspondence because had it
15:33:45    7   been sent to the Bermuda address, it would just
15:33:48    8   end up on a lawyer's desk for which they
15:33:51    9   wouldn't know what to do with it.
15:33:52   10            So, I recall us including the
15:33:55   11   care of Refco Securities, World Financial
15:33:59   12   Center address on Capital Markets
15:34:00   13   correspondence.
15:34:19   14            MR. FIRSENBAUM:  Off the record.
15:34:21   15            VIDEOGRAPHER:  Going off the record
15:34:23   16       at 2:33.
15:35:33   17            (Recess taken.)
15:35:34   18            VIDEOGRAPHER:  Returning to the
15:35:45   19       record at 3:35.
15:35:54   20       EXAMINATION CONDUCTED BY MR. KARLAN:
15:35:56   21       Q.   So 3171 you're able to say is a
15:35:59   22   statement for an FX account?
15:36:00   23       A.   Yes.
15:36:03   24       Q.   And 1419 you're able to say is a
15:36:05   25   statement for a securities account? For
```

Page 257

```
                    1          STEPHEN C. DISPENZA
15:36:13    2   something other than --
15:36:14    3       A.   I am saying to say it is not an
15:36:15    4   FX statement.
15:36:16    5       Q.   But your ability to distinguish
15:36:20    6   between the two does not derive, am I right,
15:36:23    7   from the fact that 1419 says care of Refco
15:36:28    8   Securities LLC, because they both say that; am
15:36:31    9   I right?
15:36:31   10       A.   I would agree with that.
15:36:33   11       Q.   Okay.  Thank you, sir.
15:36:38   12            So, is it just the look, the
15:36:42   13   visual look of each of the two that tells you
15:36:46   14   which is which?
15:36:46   15       A.   In this case, yes, but the answer
15:36:48   16   to that question is no.  Because if there was
15:36:50   17   trading in this account 1419 --
15:36:55   18       Q.   Yes, sir.
15:36:55   19       A.   -- that represented products
15:36:57   20   other than foreign exchange --
15:36:59   21       Q.   Yes, sir.
15:36:59   22       A.   -- I would know it wouldn't be a
15:37:01   23   foreign exchange account because you couldn't
15:37:03   24   trade anything but FX and of course gold and
15:37:06   25   silver, platinum and palladium in an FX
```