UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
In re REFCO, INC. SECURITIES LITIGATION  :   07 MDL 1902 (JSR)
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
This document relates to:                         :
                                                  :   07 Civ. 8165 (JSR)
MARC S. KIRSCHNER,                                :
As Trustee of the Refco Private Actions Trust,    :
                                                  :
                           Plaintiff,             :
                                                  :
                    -v-                           :
                                                  :
PHILLIP R. BENNETT, SANTO C. MAGGIO,              :
ROBERT C. TROSTEN, MAYER BROWN,                   :
LLP, MAYER BROWN INTERNATIONAL                    :
LLP, and GRANT THORNTON LLP,                      :
                                                  :
                           Defendants.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SECOND DECLARATION OF MARK GUY CHUDLEIGH**


I, **MARK GUY CHUDLEIGH**, declare as follows:-

1   I have been asked by U.S. counsel representing Grant Thornton LLP in the above captioned proceedings to respond to the declarations of David R Kessaram, Esq. and Barry Isaacs QC both dated July 20, 2012 filed on behalf of the Plaintiff in relation to the following issue: *"Whether Bermuda law recognizes a duty similar to the New York common law duty to disclose "hopeless insolvency" or the like."*

2   The Plaintiff's experts have opined to the effect that a broker-dealer owes a duty to disclose to its customer its inability to comply with its obligations, *"by reason of its irreversible insolvency or otherwise"* (Kessaram, paragraph 12), and that by merely accepting deposits, the broker-dealer makes an *"implied representation"* that it *"was trading properly and legitimately in the*

1

*sense that it was not insolvent and would be able to honour its agreement to return such cash, securities or other property pursuant to the terms of the customer agreements"* (Kessaram, paragraph 13).

3   I do not agree that a Bermuda court would go this far in terms of imposing obligations on a broker-dealer in the position of RCM and stand by the views expressed in my first declaration.

4   At the outset, I note that the Plaintiff's experts have relied on a number of English cases, particularly the first instance decision of *Lindsay v O'Loughnane*[1], which would not be binding on the Bermuda court and would have limited persuasive effect.  As I stated in my first declaration, the Bermuda courts have adopted a restrictive approach to the expansion of duties beyond the terms of the contract as exemplified by *White v Conyers Dill & Pearman*[2] where the Court of Appeal for Bermuda declined to follow the more expansive approach of the English courts who impose a coextensive duty in tort in similar circumstances to those prevailing in *White*. For this reason (as well as the reasons set out below), it is my opinion that a Bermuda court would not recognize the duties asserted in the Plaintiff's experts' declarations.

5   I agree that an agent may, in certain circumstances, owe fiduciary duties to its principal. However, the genus of fiduciary duties is not uniform and their nature and extent is determined by the actual relationship between the parties and fiduciary duties may be abridged by the nature of the relationship.  For example, in Bermuda, estate agents need not disclose confidential information derived from their engagement by other principals, even where the information would be material to their client's sale or purchase[3].  This is a function of an implied term permitting estate agents to act for numerous principals whose interests cannot be guaranteed not

---

[1]   [2010] EWHC 529 (QB)

[2]   Civil Appeal No. 31 of 1993

[3]   *Kelly v Cooper* [1993] AC 205.

to conflict. I therefore agree with Mr Kessaram's statement in the last sentence of paragraph 9 of his declaration where he states that any fiduciary relationship must accommodate itself to the terms of the contract so that it is consistent and conforms with them.

6   It is clear that the FX&O Master Agreement represents a detailed contract between two sophisticated parties in which each acts as principal and where the parties are independent and commercially adverse to one another. It is therefore doubtful whether any fiduciary obligations would arise in this context. Further, I note that a covenant and a warranty in the FX&O Master Agreement prescribe duties relating to insolvency.[4] In my opinion, far from imposing a (non-contractual) duty to disclose Events of Default, the warranty is more likely to offer additional evidence (to the extent any was required) that no fiduciary duty of disclosure was to attach at all. If a contractual remedy has been provided for a particular type of loss or breach, then the likelihood is that this displaces duties that may arise under other doctrines and equitable remedies are unlikely to be available.[5]

7   Authorities on the nature and incidence of fiduciary duties on the part of the providers of financial services in Bermuda are scant. However, those that exist indicate that a limited role confined to carrying out instructions of clients, typical of a broker-dealer, does not of itself import duties. In *Walsh and others v Horizon Bank International Limited (in liquidation)*,[6] the bank had provided certain services including trading on customer accounts and was also responsible for establishing and administering offshore vehicles through which customer trades

---

[4]   Section 7.2 of the FX&O Master Agreement is a covenant by each Party that it "*will promptly notify the other Party of the occurrence of any Event of Default with respect to itself or any Credit Support Provider in relation to it*", and that the definition of "Event of Default" in Section 1 includes the occurrence of numerous events that are constitutive of or at the least symptomatic of insolvency. By 7.1, RCM warranted that no Event of Default was continuing at formation of the contract. A breach of these provisions would presumably give rise to an action for breach of contract—not an action for tort or breach of fiduciary duty.

[5]   *Kelly v Cooper*, Supra.

[6]   [2008] Bda LR 16.

were to be made. In so doing the bank assumed a position akin to that of an agent or trustee which gave rise to fiduciary duties relating to client property. That is not the position here and it is clear from the *Walsh* decision that the banking services alone would not have imported anything beyond a very narrow fiduciary role and certainly nothing like the type of duty contended by the Plaintiff here.

8   In an attempt to find a basis for RCM's liability, the Plaintiff's experts have strayed beyond the terms of His Honor Judge Rakoff's question and have sought to make out a case based on an "implied representation" of solvency. In doing so, Mr Isaacs seeks to equate the conduct of a company director (citing an English first instance decision with extreme and distinguishable facts) with that of a criminal who has a meal at a restaurant intending to run away from the restaurant without paying.

9   There are no Bermuda cases that support the existence of such an implied representation. I find this unsurprising, particularly as Bermuda has not adopted the English statutory concept of "wrongful trading"[7]. In *Villiers v Van Staden,*[8] a decision by the Supreme Court of South Africa (a jurisdiction with a similar company law regime to Bermuda's), the court remarked that if it were correct that such a representation is to be implied whenever a company is insolvent (in the sense that its liabilities exceed its assets), *"it would follow that for decades in South Africa the officers of a vast number of private companies (unbeknown to them and notwithstanding the generally accepted practice in the commercial world), have acted unlawfully and dishonestly."* (at page 20).

10  The *Lindsay* case relied upon by the Plaintiff's experts is a rare example of an English court finding a company director personally liable to a third party. Extreme facts need to be shown to establish such a liability and from his detailed recitation of the facts it is apparent that the

---

[7]   See Paragraph 9 and footnote 2 of the Declaration of Ms George dated July 20, 2012.

[8]   November 27, 1992 (720/91)

    English judge took strong exception to the defendant (for example, referring to his demeanour while testifying as *"arrogant and shameless"*). In my view *Lindsay* turns on its own particular facts and it is does not establish the existence of any duty of disclosure of insolvency or potential for an implied representation of solvency that would be recognized by the Bermuda court.

11  Mr Isaacs refers to the English Court of Appeal decision in *Re Shackleton, ex parte Whittaker*[9]. However, that case, which does not appear to have been considered by the judge in *Lindsay* (despite it being binding on him as a decision of the English Court of Appeal), supports the view that there can be no implied representation of insolvency. The facts in that case are stark: the debtor entered into a contract with a vendor at a time when a petition for his bankruptcy had been served on him and when an adjudication of bankruptcy (which was subsequently made) was pending. Despite these facts, the appeal court held that the debtor did not impliedly misrepresent his ability to pay the vendor. While neither the *Shackleton* nor *Lindsay* cases is binding on the Bermuda court, in my opinion the Bermuda court would consider the *Shackleton* decision to be more persuasive (being a decision of a higher court and an authority that has stood the test of time) and would regard it as inconsistent with the Plaintiff's contention for a duty to disclose "hopeless insolvency".

12  In all the circumstances, it remains my opinion that Bermuda law does not recognize a duty similar to the New York common law duty to disclose "hopeless insolvency" or the like.



Mark Chudleigh

July 23, 2012

---

[9]    (1875) 10 Ch App 446. Referred to at paragraph 10, footnote 5 of Mr Isaac's report.