UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARC S. KIRSCHNER, As Trustee of the Refco Private Actions Trust,<br><br>      Plaintiff,<br><br>    -against-<br><br>PHILLIP R. BENNETT, SANTO C. MAGGIO, ROBERT C. TROSTEN, MAYER BROWN, LLP, MAYER BROWN INTERNATIONAL, LLP, and GRANT THORNTON LLP,<br><br>      Defendants. | 07 MDL 1902 (JSR)<br><br>07 Civ. 8165 (JSR) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
<u>ON CHOICE OF LAW</u>**

          QUINN EMANUEL URQUHART &
           SULLIVAN, LLP
          51 Madison Avenue, 22nd Floor
          New York, New York 10010-1601
          (212) 849-7000

          *Attorneys for Plaintiff Marc S. Kirschner, as
           Trustee for the Refco Private Actions Trust*

**TABLE OF CONTENTS**

## TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT.......................................................................................................................1

I.  RCM'S CONDUCT CONSTITUTES FRAUD UNDER BERMUDA LAW,
    JUST AS IT DOES UNDER NEW YORK LAW...................................................1

II. NEW YORK LAW GOVERNS UNDER INTEREST ANALYSIS..................3

CONCLUSION....................................................................................................................5

# TABLE OF AUTHORITIES

**Page**

### Cases

*Amusement Indus., Inc. v. Stern*,
   693 F. Supp. 2d 327 (S.D.N.Y. 2010)..................................................................................5

*Anwar v. Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010)..................................................................................3

*Capital Mgmt. Select Fund Ltd. v. Bennett*,
   680 F.3d 214 (2d Cir. 2012)................................................................................................5

*Cooney v. Osgood Mach., Inc.*,
   612 N.E.2d 277 (N.Y. 1993)............................................................................................4, 5

*Curiale v. Tiber Holding Corp.*,
   1997 WL 597944 (E.D. Pa. Sept. 18, 1997) .......................................................................4

*Curley v. AMR Corp.*,
   153 F.3d 5 (2d Cir. 1998) ...................................................................................................4

*In re Currency Conversion Fee Antitrust Litig.*,
   230 F.R.D. 303 (S.D.N.Y. 2004) ........................................................................................5

*Licci v. Lebanese Canadian Bank*,
   672 F.3d 155 (2d Cir. 2012)................................................................................................4

*Lindsay v. O'Loughnane*
   [2010] EWHC 529 (QB).....................................................................................................2

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   446 F. Supp. 2d 163 (S.D.N.Y. 2006)..................................................................................3

*San Diego Cnty. Emps. Ret. Ass'n v. Maounis*,
   749 F. Supp. 2d 104 (S.D.N.Y. 2010)..................................................................................3

*Serio v. Ardra Ins. Co., Ltd.*,
   761 N.Y.S.2d 1 (1st Dep't 2003) ........................................................................................4

*Simon v. Philip Morris Inc.*,
   124 F. Supp. 2d 46 (E.D.N.Y. 2000) ..................................................................................3

*Solow v. Stone*,
   994 F. Supp. 173 (S.D.N.Y. 1998).......................................................................................2

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*,
   612 F. Supp. 2d 267 (S.D.N.Y. 2009)..................................................................................3

*Tyco Int'l, Ltd. v. Kozlowski*,
   756 F. Supp. 2d 553 (S.D.N.Y. 2010)..................................................................................4

**Statutes and Rules**

FED. R. CIV. P. 44.1 ...................................................................................................................1

**PRELIMINARY STATEMENT**

Grant Thornton's own expert concedes that Bermuda law affords a claim for fraud on these facts. Thus, Bermuda law does not conflict with New York law. And even if it did, New York law would govern because the Refco Capital Markets Ltd. ("RCM") and Refco fraud was orchestrated from New York; Bermuda (which was nothing more than a place of incorporation) has no interest in regulating a New York-based fraud. Additionally, Grant Thornton's twelfth hour plea that the Court apply different law than has been applied throughout this and related Refco cases violates Federal Rule of Civil Procedure 44.1, was waived by Grant Thornton's conduct, and is barred by estoppel.[1]

**ARGUMENT**

**I.   RCM'S CONDUCT CONSTITUTES FRAUD UNDER BERMUDA LAW, JUST AS IT DOES UNDER NEW YORK LAW**

Grant Thornton's Bermuda law expert concedes that the FX Customers have a remedy under Bermuda law against RCM:

> A person who extends credit to an insolvent company after being deceived into believing that the company is solvent may have a claim for fraud (deceit) against the company, and perhaps against particular directors who participated in the fraud.

---

[1]   Grant Thornton's suggestion that its inexplicable delay in raising choice of law is the Trustee's fault (GT Br. 5 n.2) is specious. Grant Thornton has had information concerning the location of each FX Customer since no later than April 2011. That it chose to not evaluate this information and subpoena the customers for deposition is entirely its failure. (*See* Calamari Reply Decl. Ex. 1 at 11:19-12:12; 17:15-21 (Hedges Tr.) (providing location information for each FX Customer and indicating that Grant Thornton could have deposed those customers if it wished).) Moreover, Grant Thornton cannot mix and match choice of law: It used New York law on *in pari delicto* to escape estate claims, sought application of New York law up through the briefing of its objection to the Summary Judgment Report and Recommendation, and cannot now switch to Bermuda law in a last ditch effort to try to evade the private claims.

1

(George Decl. ¶ 13; *see also* Chudleigh Decl. ¶ 5 (a Bermuda court can "imply terms into a contract").)[2]  This is the same fraud claim described in the Isaacs and Kessaram Declarations submitted by the Trustee and applied to a foreign exchange dealer in *Lindsay v. O'Loughnane*, [2010] EWHC 529 (QB)—a decision based on a decision of England's highest Court—that was ignored by Grant Thornton and its experts. (Isaacs Decl. ¶¶ 10-15; Kessaram Decl. ¶ 13.)  This fraud claim results in an identical primary violation (albeit based on affirmative misrepresentation, not failure to disclose) that anchors the Trustee's aiding and abetting claim against Grant Thornton. *Cf. Solow v. Stone*, 994 F. Supp. 173, 177 (S.D.N.Y. 1998) (applying Delaware law for underlying breach of fiduciary duty claim and New York law to aiding and abetting component of claim).

Moreover, unsurprisingly, Bermuda and English law recognize the identical agency principles that underlie *Szur*—an agent has a duty to disclose information relevant to the affairs entrusted to it by the principal. (Kessaram Decl. ¶¶ 9-12; Isaacs Decl. ¶¶ 6-9.)[3]  This is a well settled principle that Grant Thornton's experts cannot evade. (*See* George Decl. ¶ 11 (agent's fiduciary duties would be defined by terms of the contract); Chudleigh Decl. ¶ 7 (erroneously asserting, without analysis or support, that the RCM FX Customer relationship was principal to principal rather than principal to agent).)  Indeed, Grant Thornton appears to have asked at least one of its experts to consider only temporary insolvency or insolvency at the margins (George

---

[2]  On reply, Grant Thornton may assert (incorrectly) that this affirmative misrepresentation claim is a "creditor" claim.  It is clear, however, that the fraud claims are direct, individualized, claims.  (*See* May 16, 2011 Order Adopting FX Standing R&R (adopting the Special Master's Report and Recommendation on standing—to which Grant Thornton did not object—finding that the Trustee has standing to assert the claims of the FX Customers and that such claims were not generalized creditor claims).)

[3]  Hopeless insolvency has already been held by this Court (on the motion to dismiss) to be sufficiently relevant to the affairs entrusted to RCM to give rise to a duty of disclosure. (*See* June 3, 2010 MTD R&R 17, 39.)

Decl. ¶ 9 (no duty to disclose financial condition when the directors "genuinely believe that the clouds will roll away and the sunshine of prosperity will shine upon them again and disperse the fog of their depression . . . .") (internal citation omitted)) and not the clear, hopeless, $2 billion in-the-hole insolvency alleged here. The plain implication of the quoted language from Mr. George's declaration is that under Bermuda law, as under New York law, there is a disclosure duty where the broker has no such genuine belief.

Grant Thornton has failed to satisfy its burden of demonstrating a conflict of law: the Trustee has a valid fraud claim under either New York or Bermuda law.

## II. NEW YORK LAW GOVERNS UNDER INTEREST ANALYSIS

Even if there were a conflict, New York law would govern under New York's interest analysis choice-of-law framework. New York's interest in regulating fraud trumps Bermuda's interest in (as Grant Thornton describes it (GT Br. 2)) maintaining a "low-tax and light regulatory environment." *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 72 (E.D.N.Y. 2000) ("New York has an obvious and substantial interest in ensuring that it does not become either a base or a haven for law breakers to wreak injury nationwide."). Likewise, as Grant Thornton concedes, no case holds that "reasonable expectations" should be dispositive in the interests analysis. (GT Br. 5 ("the parties' expectations are not dispositive").)

Because RCM was based in New York, the fraudsters were in New York, and the epicenter of the fraud was New York, New York has the greatest interest in regulating the fraudster's conduct. *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 284 (S.D.N.Y. 2009) (applying New York law because the Refco fraud was centered in New York); *see also San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 125 (S.D.N.Y. 2010); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 399-400 (S.D.N.Y. 2010); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,

3

446 F. Supp. 2d 163, 194 (S.D.N.Y. 2006). As RCM's President testified, RCM had no employees in Bermuda after 2001 or 2002 because there was nothing for them to do there "[e]xcept to go to the beach and go fishing and ride their mopeds." (Calamari Ex. 5 at 47:16-21, 48:16-49:20.) No one has identified any conduct relevant to the Trustee's claim that occurred in Bermuda.

Nor does Grant Thornton identify any interest Bermuda has in regulating RCM's New York-based conduct other than a mention that Bermuda has a lax regulatory regime and is a tax shelter, which is insufficient.[4] RCM was incorporated as an "exempt" Bermudian corporation, meaning it was forbidden from conducting business with Bermuda residents. (Joyce Ex. F at 5.) This further reduces Bermuda's already nonexistent interest. *Curiale v. Tiber Holding Corp.*, 1997 WL 597944, at *5 (E.D. Pa. Sept. 18, 1997) (Bermuda's interest in exempt companies is "greatly diminished" because of restrictions on domestic operations); *see also Serio v. Ardra Ins. Co., Ltd.*, 761 N.Y.S.2d 1, 1-2 (1st Dep't 2003). New York courts give little weight to Bermuda incorporation in choice-of-law analysis, particularly when the wrongful conduct occurs elsewhere. *See, e.g.*, *Tyco Int'l, Ltd. v. Kozlowski*, 756 F. Supp. 2d 553, 560 (S.D.N.Y. 2010) (choosing New York law over Bermuda); *Serio*, 761 N.Y.S.2d at 1-2 (same).

Grant Thornton's cases are to the same effect; they select the center of the fraudulent conduct as the governing law and indicate that this is the strongest consideration. *See, e.g.*, *Licci v. Lebanese Canadian Bank*, 672 F.3d 155, 158 (2d Cir. 2012); *Amusement Indus., Inc. v. Stern*,

---

[4] Grant Thornton curiously asserts that the greatest interest is that of a nation seeking *not* to regulate conduct. That is the opposite of the required analysis, which considers which forum has the greatest interest in regulating the specific conduct and defaults to the location of the fraudulent conduct. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) ("'If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.'") (quoting *Cooney v. Osgood Mach., Inc*., 612 N.E.2d 277, 280 (N.Y. 1993)).

4

693 F. Supp. 2d 327, 340-41 (S.D.N.Y. 2010).[5]  Grant Thornton also suggests that the parties' expectations should play a role in the analysis (while conceding they are not dispositive (GT Br. 5)).[6]  But even were expectations relevant, the FX Customers received repeated information indicating that their transactions were connected to New York.  For example, the representative customer agreement provided by Grant Thornton has a New York choice-of-law clause, a New York forum-selection clause, and Refco's New York address for any service of process.  (Joyce Ex. G at 21.)  Further, any communications other than confirmations were directed to be sent to Refco's New York address.  (Joyce Ex. G at 19.)  As *Capital Management Select Fund Ltd. v. Bennett* rightly decided, such a choice of law provision does not activate a regulatory regime that did not otherwise apply.  680 F.3d 214, 232-33 (2d Cir. 2012).  But it does provide additional evidence of the connection between the FX Customers and New York and supports the application of New York common law to the FX Customers' primary claims.

## CONCLUSION

Special Master Capra's Report and Recommendation on Defendant's motion for summary judgment should be adopted in its entirety based on New York law.

---

[5]  As Grant Thornton correctly concedes that it would be inappropriate to apply the law of each of the FX Customers' domicile (GT Br. 5 (Court should not "apply[] the laws of those many jurisdictions")), the discussion of choice of law for class certification purposes in *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311 (S.D.N.Y. 2004) is entirely inapposite.

[6]  "Reasonable expectations" are typically invoked by the defendant to argue that it could not have foreseen the application of a particular law against it.  *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277, 283-84 (N.Y. 1993).  Grant Thornton is not arguing that it is prejudiced by application of New York law (upon which it has relied for years in this and other Refco related cases), but that the plaintiff FX Customers could not have expected protection from *any* law. There is no support for such a position.

DATED:   July 23, 2012

                QUINN EMANUEL URQUHART &
                   SULLIVAN, LLP


By: /s/ Richard I. Werder, Jr.
    Richard I. Werder, Jr.
    Sascha N. Rand
    Sanford I. Weisburst
    Nicholas J. Calamari
     rickwerder@quinnemanuel.com
     sascharand@quinnemanuel.com
     sandyweisburst@quinnemanuel.com
     nicholascalamari@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000

*Attorneys for Plaintiff Marc S. Kirschner, as*
   *Trustee for the Refco Private Actions Trust*