UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re REFCO INC. SECURITIES LITIGATION                    Case No. 07-MD-1902 (JSR)
-----------------------------------------------------------------X

This Document Relates to:
-----------------------------------------------------------------X

KENNETH M. KRYS, et al.,                           :      Case No. 08-CV-3065 (JSR)
                                                   :      Case No. 08-CV-3086 (JSR)
                                        Plaintiffs, :
                                                   :
                    -against-                      :
                                                   :
CHRISTOPHER SUGRUE, et al.,                        :
                                                   :
                                       Defendants. :
                                                   :
-----------------------------------------------------------------X

KENNETH M. KRYS, et al.                            :      Case No. 10-CV-3594 (JSR)
                                        Plaintiffs, :
                                                   :
                       -v-                         :
                                                   :
DEUTSCHE BANK SECURITIES INC., et al.              :
                                                   :
                                       Defendants. :
                                                   :
-----------------------------------------------------------------X

## MOVING DEFENDANTS' MEMORANDUM
## IN SUPPORT OF SUMMARY JUDGMENT

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel:  (212) 556-2100

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP*

WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800

*Attorneys for Defendants Credit Suisse
Securities (USA) LLC and Merrill Lynch,
Pierce, Fenner & Smith, Incorporated, as
successor-by-merger to Banc of America
Securities LLC*

LINKLATERS LLP
1345 Avenue of the Americas
New York, New York 10105
Tel: (212) 903-9000

*Attorneys for Defendant Deutsche Bank
Securities Inc.*

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000

*Attorneys for Defendants Mayer Brown LLP
and Edward S. Best*

COOLEY LLP
1114 Avenue of the Americas
New York, NY 10036-7798
Tel: (212) 479-6000

*Attorneys for Defendant Joseph P. Collins*

CLAYMAN AND ROSENBERG
305 Madison Avenue, Suite 1301
New York, NY 10165
Tel: (212) 922-1080

*Attorneys for Defendant Paul Koury*

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6882

*Attorneys for Defendants Grant Thornton
LLP and Mark Ramler*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................... 2

BACKGROUND ...................................................................................................... 3

THE MOTION TO DISMISS RULINGS ................................................................ 5

UNDISPUTED FACTS RELEVANT TO THE MOTIONS ...................................... 7

ARGUMENT ........................................................................................................... 9

CONCLUSION ...................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Fraternity Fund Ltd. v. Beacon Hill Mgmt. LLC,*
    479 F. Supp. 2d 349 (S.D.N.Y. 2007)........................................................................9

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
    446 F. Supp. 2d 163 (S.D.N.Y. 2006)......................................................................9

*Turter v. Rothschild Registry Int'l, Inc.,*
    26 F.3d 304 (2d Cir. 1994)......................................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12....................................................................................................5, 7

Fed. R. Civ. P. 56....................................................................................................13

Defendants PricewaterhouseCoopers LLP ("PwC"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), Merrill Lynch, Pierce, Fenner & Smith, Incorporated, as successor-by-merger to Banc of America Securities LLC ("BAS"), Deutsche Bank Securities Inc. ("DBSI"), Mayer Brown LLP ("Mayer Brown"), Joseph P. Collins, Paul Koury, Edward Best, Grant Thornton LLP ("Grant Thornton") and Mark Ramler (collectively, "Moving Defendants") submit this memorandum in support of their motions for summary judgment.[1]

Moving Defendants seek summary judgment on the one remaining claim against each of them, Aiding and Abetting Fraud, which is Count XVII of the Amended Complaint ("Am. Compl.") as to PwC, Count XXII as to Credit Suisse and BAS (the "Bank Defendants"), Count IV as to DBSI,[2] Count XVII as to Mayer Brown and Messrs. Collins, Koury and Best (the "Mayer Brown Defendants"), and Count XVII as to Grant Thornton and Mr. Ramler (the "Grant Thornton Defendants").  Moving Defendants seek summary judgment in the wake of expert reports that were just served by Plaintiffs.  One such submission — "Report on cash balances and transfers in respect of the SPhinX Group of Companies," dated June 29, 2012, and prepared by Plaintiff Ken Krys himself ("Krys Expert Report") — confirms that there is no genuine dispute as to any material fact relevant to the inescapable conclusion that Plaintiffs have suffered no injury proximately caused by anything Moving Defendants did (or failed to do).

---

[1] In seeking leave to file these motions, Moving Defendants reserve their right to move for summary judgment on other grounds at the appropriate time, if necessary.  Plaintiffs consented to these motions being heard on an expedited basis in advance of summary judgment motions on other issues, and the Special Master, in consultation with the Court, agreed to hear them at this time.  *See* emails dated July 30 and 31, 2012 among Special Master Capra, counsel for Plaintiffs (Dennis Blackhurst) and counsel on behalf of Moving Defendants (Philip Anker).

[2] All references in this memorandum to the allegations against DBSI refer to the Complaint filed in Case No. 10-CV-3594 ("DB Compl.").

## INTRODUCTION

The resolution of these motions is a matter of simple arithmetic and law of the case. Refco customer SMFF, and its investment advisor PlusFunds, claim to have detrimentally relied upon public filings made by Refco in connection with its August 2004 LBO and its August 2005 IPO. Their claims against the Moving Defendants are for injuries allegedly resulting from Refco's October 2005 bankruptcy. In particular, Plaintiffs allege that, as a result of that bankruptcy, SMFF lost $263 million in cash that it had on deposit at a Refco subsidiary, RCM, and PlusFunds (whose only real client was SPhinX) went out of business. But, as the Special Master and the Court have repeatedly recognized, Plaintiffs also allege that RCM and the other Refco entities would have been forced into bankruptcy (and, accordingly, SMFF would have been subject to a similar loss of whatever funds it had on deposit with RCM, and PlusFunds would have likewise failed) whenever the Refco entities disclosed the truth underlying the Refco fraud. Accordingly, the rulings in this case permit Plaintiffs to pursue claims against the Moving Defendants only if and to the extent that the cash SMFF had on deposit at RCM **_increased after_** Refco's allegedly fraudulent public filings in connection with the LBO and IPO.

However, as shown in the Krys Expert Report, **_during all possibly relevant timeframes, SMFF withdrew substantially more cash from RCM than it transferred to RCM_**. For example, on October 12, 2004, the date of Refco's first public filing following its LBO, SMFF's cash accounts at RCM had a balance of $586 million. SMFF reduced the balance of those accounts by more than a quarter of a billion dollars over the next year, to $312 million shortly before Refco's Chapter 11 petition. Because SMFF's exposure to Refco decreased during the time the Moving Defendants allegedly assisted the Refco fraud, the Moving Defendants could not have caused Plaintiffs' alleged injury.

## BACKGROUND

Plaintiffs assert claims on behalf of SPhinX Managed Futures Fund SPC ("SMFF") and

SMFF's investment advisor, PlusFunds Group, Inc. ("PlusFunds").[3]  They allege that in 2002

SMFF became a customer of Refco Group Ltd., LLC (and its subsidiaries, Refco LLC and Refco

Capital Markets, Ltd. ("RCM")), the predecessor to Refco Inc. ("Refco").  "Beginning in

December 2002, SMFF's excess cash was moved on a regular basis from customer-segregated

accounts at Refco LLC to accounts at RCM, where SMFF's cash was commingled with assets

belonging to other RCM customers and RCM's own assets."  Am. Compl. ¶ 193; DB Compl.

¶ 146 (same).  Plaintiffs maintain that SMFF and PlusFunds continued to do business with Refco

in reliance upon Refco's public filings in connection with its August 2004 leveraged buyout

transaction ("LBO") and its August 2005 initial public offering ("IPO").  Am. Compl. ¶¶ 190-91;

*see also* DB Compl. ¶¶ 157-58.  They further allege that "[a]t least as of the date of the LBO,

Refco and RCM were insolvent," and from that point forward RCM was therefore "unable to

repay its customers, including SMFF."  Am. Compl. ¶¶ 207-08; *see also* DB Compl. ¶¶ 163-64.

On or about October 12, 2005, following the public announcement of the Refco fraud but

prior to Refco's bankruptcy filing, SMFF withdrew approximately $312 million from its cash

accounts at RCM (the "October 2005 Transfer").  Am. Compl. ¶¶ 12, 334; DB Compl. ¶ 338.

Shortly thereafter, Refco's unsecured creditors committee, acting on behalf of RCM and its

---

[3] Almost all of PlusFunds' revenue derived from SMFF and the other SPhinX funds
(collectively, "SPhinX"), and their business operations were "intertwined."  Am. Compl. ¶¶ 136,
138.  After the Refco fraud was disclosed, redemptions from SPhinX (and the resulting drop in
PlusFunds' assets under management) "caused a sharp decline in PlusFunds' revenues, leading
to PlusFunds' Chapter 11 bankruptcy petition."  Am. Compl. ¶ 13; DB Compl. ¶ 344 (same).  By
Plaintiffs' own admission, PlusFunds' prospects were completely dependent upon those of
SPhinX.  Similarly, the Special Master has recognized that "an injury to the SPhinX funds was
'inevitably' an injury to PlusFunds" and that "the commercial viability of PlusFunds was heavily
dependent on SPhinX -- as SPhinX went, so went PlusFunds." Report and Recommendation on
the Omnibus Issue of Standing, dated February 3, 2010, at 16.

bankruptcy estate, filed an action to recover the $312 million as a preferential transfer.  Am. Compl. ¶¶ 12, 341; DB Compl. ¶ 343.  SMFF paid $263 million in settlement of that action and released claims against Refco.  Am Compl. ¶¶ 14, 342; DB Compl. ¶ 345.  Plaintiffs now seek to recover as damages the $263 million settlement payment, plus interest.  Am. Compl. ¶ 1; DB Compl. ¶ 1.  Plaintiffs' alleged damages also include PlusFunds' lost business enterprise value; according to Plaintiffs, the "disclosure of the Refco fraud" led to a "flood of redemptions by SPhinX's investors," which in turn caused a "sharp decline in PlusFunds' revenues, leading" to its bankruptcy.  Am. Compl. ¶¶ 12-13; *see also* DB Compl. ¶ 344.

Plaintiffs allege that PwC, the Bank Defendants and DBSI knew of, and substantially assisted, the Refco fraud through their supposed participation in the LBO and IPO offerings: (1) "PwC gave substantial assistance by concealing the Refco fraud, advising Refco on financial matters and preparing and approving Refco's financial statements and public filings in connection with the LBO and IPO offerings" (Am. Compl. ¶ 1261); (2) the Bank Defendants "gave substantial assistance to the Refco fraud by helping conceal the Refco fraud, providing underwriting, financial consulting and advisory services and preparing and approving Refco's financial statements and public filings in connection with the LBO and IPO offerings" (*id.* ¶ 1316); and (3) DBSI "provided substantial assistance to the fraud . . . by Refco and its conspirators" through, among other things, "approving, participating in, promoting and/or profiting from the LBO, IPO and related transactions with Refco" (DB Compl. ¶ 380).  With respect to the Mayer Brown Defendants, Plaintiffs allege that those parties "gave substantial assistance to the Refco fraud . . . by advising Refco and preparing fraudulent public filings in connection with the LBO and IPO transactions," as well as by "advising Refco in connection with its financial affairs; documenting transactions and transfers to RGHI in connection with the

RGHI Receivable; concealing the RGHI Receivable; [and] preparing, negotiating and documenting the RTLs." Am. Compl. ¶ 1263.  With respect to the Grant Thornton Defendants, Plaintiffs allege that these Defendants "gave substantial assistance to the Refco fraud by issuing clean audit opinions on Refco's books and records and helping conceal the Refco fraud." *Id.* ¶ 1259.  More specifically, Plaintiffs claim that "[a]s Grant Thornton knew, the financial statements it audited were also included in Refco's various registration statements filed and distributed in connection with the LBO and IPO."  *Id.* ¶ 725.  Plaintiffs further allege that, because SMFF and PlusFunds continued to do business with Refco in reasonable reliance upon the LBO- and IPO-related public filings, the Moving Defendants proximately caused their injury. *Id*. ¶¶ 1264-66, 1317-19; DB Compl. ¶ 349.

## THE MOTION TO DISMISS RULINGS

Moving Defendants' Rule 12 motions on the claims for aiding and abetting the Refco fraud were granted in part and denied in part.  The claim against PwC (Count XVII) survived solely with respect to PwC's "conduct in its Refco advisory work that caused SPhinX/PlusFunds to place assets at Refco" — that is, "with respect to those deposits made by SPhinX/PlusFunds in Refco after the date of PwC's alleged wrongful activity."  Report and Recommendation as to PwC, dated August 10, 2011 ("PwC R&R"), at 30, 23.  "It goes without saying that PwC cannot be held responsible for damages caused by the Refco fraud before PwC was retained by Refco." *Id*. at 24 n.21.  The Special Master recommended the dismissal with prejudice of the claim against PwC "for lack of proximate cause insofar as it seeks damages for the loss of assets retained at Refco after PwC's acts of aiding and abetting."  *Id*. at 30.  After *de novo* review, the Court adopted the PwC R&R in full.  Order, dated October 24, 2011.  The Court also denied, on both procedural and substantive grounds, Plaintiffs' motion for reconsideration, which included an attack on the causation ruling.  Memorandum Order, dated February 16, 2012, at 3, 9-13.

5

Similarly, with respect to the Bank Defendants, the Court declined to dismiss the aiding and abetting fraud claim (Count XXII) solely with respect to "assets placed with RCM *after* the wrongdoing attributed to Credit Suisse and BAS allegedly occurred," that is, for "damages due to loss of assets placed with Refco after the date of the release of the LBO-related public statements on which Credit Suisse and BAS allegedly assisted."  Report and Recommendation as to the Bank Defendants, dated December 8, 2011 ("Bank Defendants R&R"), at 23, 28.  The Special Master recommended the dismissal of the claim against the Bank Defendants "insofar as [Plaintiffs] seek damages for the loss of SMFF assets held at Refco before the release of the misleading public statements regarding the LBO, which is the first act properly alleged as these Defendants' substantial assistance."  *Id.* at 23.  The Court adopted the Bank Defendants R&R in full.  Order, dated February 16, 2012.

The remaining claim against DBSI for aiding and abetting fraud (Count IV) is similarly limited to "damages due to loss of assets placed with Refco after the date of the release of the LBO-related public statements on which DBSI assisted."  Report and Recommendation as to DBSI, Deutsche Bank Trust Company Americas and Deutsche Bank AG, dated November 1, 2011 ("DB R&R"), at 46, 59.  The Special Master recommended dismissal with prejudice of any "claims for *retaining* assets at Refco in reliance on DBSI's wrongful acts," because according to Plaintiffs, "those assets would have been lost in any case had DBSI publicly disclosed the Refco Fraud."  *Id.* at 46 (emphasis in original).  The Court adopted the DB R&R in full and further denied Plaintiffs' request for leave to amend Count IV.  Order, dated February 16, 2012.

With respect to the Mayer Brown Defendants, the Court declined to dismiss the aiding and abetting fraud claim (Count XVII) solely with respect to "assets placed with Refco *after* the wrongdoing attributed to the Mayer Brown Defendants allegedly occurred."  Report and

Recommendation as to the Mayer Brown Defendants, dated January 17, 2012 ("Mayer Brown Defendants R&R"), at 11-12 (emphasis in original).  The Special Master recommended the dismissal of the claim against the Mayer Brown Defendants "to the extent they seek recovery of assets placed with Refco before the date of Mayer Brown's alleged wrongdoing."  *Id.* at 12.  The Court adopted the Mayer Brown Defendants R&R in full.  Order, dated March 26, 2012.

As for the Grant Thornton Defendants, the Court declined to dismiss the aiding and abetting fraud claim (Count XVII) solely with respect to "assets placed with RCM *after* the wrongdoing attributed to GT and Ramler allegedly occurred."  Report and Recommendation as to the Grant Thornton Defendants, dated December 16, 2011 ("Grant Thornton Defendants R&R") at 17 (emphasis in original).  The Special Master recommended the dismissal of the claim against the Grant Thornton Defendants "to the extent [Plaintiffs] seek recovery of assets placed at RCM before the date of GT's first clean audit opinion."  *Id.*  Significantly, for the purpose of this R&R, the Special Master described "clean audit opinions" as "public statements that are intended to provide assurance to the public of the financial health of a company."  *Id.* at 15.  The Court adopted the Grant Thornton Defendants R&R in full.  Order, dated March 26, 2012.

The underlying principle of these Rule 12 aiding and abetting rulings is that Plaintiffs cannot have been harmed by the Moving Defendants' alleged substantial assistance in connection with Refco's public filings unless the amount of SMFF assets on deposit at RCM increased subsequent to Plaintiffs' alleged reliance on those public filings.  As shown below, the uncontroverted evidence is that Plaintiffs suffered no such harm.

## UNDISPUTED FACTS RELEVANT TO THE MOTIONS

There are only a handful of facts necessary to decide these motions.  None is disputable.

- SMFF maintained cash accounts at RCM starting in or about December 2002.

7

Rule 56.1 Statement ¶ 1.

- SMFF's cash balances at RCM decreased during all relevant timeframes leading up to SMFF's withdrawal of $312 million from RCM on October 2005, including:

  - between the LBO (August 2004) and the October 2005 Transfer;

  - between the first public filing following the LBO (October 2004) and the October 2005 Transfer;

  - between the first public filing in connection with the IPO (April 2005) and the October 2005 Transfer; and

  - between the IPO (August 2005) and the October 2005 Transfer.

The change (decrease) in SMFF's balances at RCM during these four time periods is shown below:



**Change in SMFF's Cash Balance at RCM (from various Starting Dates to October 2005 Transfer)**

Rule 56.1 Statement ¶¶ 2 (the October 2005 Transfer), 5 (date of the LBO), 6 (date of
the initial S-4 filing), 7 (dates of the initial S-1 filing and IPO), 8 (changes in SMFF's
cash balances at RCM over time); 9 (same).

## ARGUMENT

On their claim of aiding and abetting fraud, Plaintiffs must prove not only that they were

injured, but that Defendants' wrongful acts proximately caused that injury.  PwC R&R at 21-22;

Bank Defendants R&R at 13; DB R&R at 40-41, 46; Mayer Brown Defendants R&R at 9; Grant

Thornton Defendants R&R at 15; *Fraternity Fund Ltd. v. Beacon Hill Mgmt. LLC*, 479

F. Supp. 2d 349, 370-71 (S.D.N.Y. 2007) ("In the aiding and abetting context, a plaintiff must

allege that the defendant's substantial assistance in the primary violation proximately caused the

harm on which the primary liability is predicated."); *Pension Comm. of the Univ. of Montreal*

*Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201 (S.D.N.Y. 2006) (citing

*Diduck v. Kaszcycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992), *abrogated on*

*other grounds by Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993)).

The application of this principle to the undisputed facts on these motions is

straightforward.  The only basis upon which Plaintiffs can prove their aiding and abetting claims

is to show that SMFF's cash balances at RCM increased after the time the Moving Defendants

allegedly assisted Refco with its fraudulent LBO- and IPO-related public filings.  In fact, as

recently confirmed by the Krys Expert Report, SMFF made substantial net withdrawals from

RCM after the Moving Defendants allegedly assisted the fraud, which means that Plaintiffs'

claim fails for lack of injury proximately caused by the Moving Defendants.

If Plaintiffs' theory is that they were aware of, reviewed, and reasonably relied on

Refco's first public filing after the LBO, an S-4 filed on October 12, 2004, their claims fail.  Rule

56.1 Statement ¶ 8 (approximately $274 million decrease in SMFF's RCM account balances

from that point to the October 2005 Transfer). If instead Plaintiffs relied on Refco's initial S-1

filing on April 8, 2005 in connection with the IPO, the claims likewise fail. *Id.* (approximately

$210 million decrease). SMFF's deposits at RCM also decreased from the date of the LBO,

August 5, 2004, to the date of the October 2005 Transfer, *id.* (approximately $230 million

decrease), and from the date of the IPO, August 10, 2005, to the date of the October 2005

Transfer, *id.* (approximately $83 million decrease). Simply stated, if the Refco fraud had been

disclosed to the public (including SMFF and PlusFunds) at any point from the date of Refco's

LBO through the completion of the IPO, Plaintiffs would have suffered greater injury because

they would have had more cash on deposit at RCM.[4]

It is irrelevant that SMFF made some transfers to RCM in 2004 and 2005. The critical

point is that, on a ***net*** basis, SMFF withdrew more money from RCM than it transferred to RCM

during this period and its balances steadily decreased. Under Plaintiffs' own allegations, had the

Moving Defendants known of and publicly disclosed Refco's true financial condition earlier,

customers "would never have done business with Refco," and the same run on the bank resulting

in Refco's bankruptcy would have simply occurred earlier. Am. Compl. ¶ 220; *see also*, *e.g*, *id.*

¶ 743 ("customers . . . would not have entrusted or continued to entrust their assets with Refco").

And if that had happened, Plaintiffs would have experienced larger losses, since SMFF would

have had more on deposit at RCM. According to Plaintiffs' own allegations, the SPhinX

investors would have redeemed their investments, and PlusFunds would have lost its value, just

as happened in November 2005 when the Refco Fraud came to light. The only difference would

---

[4] The claim also fails even if Plaintiffs are permitted to go back to the time PwC first began
providing LBO- or IPO-related services to Refco. Rule 56.1 Statement ¶¶ 10-11 (approximately
$117 million decrease from the first PwC advisory engagement letter with PwC); *see* PwC R&R
at 24 n.21 ("It goes without saying that PwC cannot be held responsible for damages caused by
the Refco fraud before PwC was retained by Refco.").

have been that SMFF would have had **more** money on deposit at RCM and thus Plaintiffs would

have faced greater exposure.

    This Court and the Special Master have already recognized as much:

> The Plaintiffs claim that Credit Suisse and BAS helped to
> consummate the Refco Fraud by servicing the LBO and the IPO,
> and if the relevant documents had related the true facts about
> Refco's upstreaming assets and general financial condition, then
> SPhinX and PlusFunds would have taken the cash out of RCM and
> ceased doing business with Refco.  But *the problem with the
> argument that Credit Suisse and BAS caused SPhinX and
> PlusFunds to* **keep** *the cash at Refco is that the information that the
> Plaintiffs insist should have been disclosed (and that Credit Suisse
> and BAS helped to conceal) was in the context of public statements
> that would have come to SPhinX and PlusFunds together with the
> public at large. . . .*  But *assuming that, at the time of the LBO,
> Refco did disclose in its public materials that it was hopelessly
> insolvent, there is nothing that those customers could have done at
> that point to get their money back.*  The announcement of hopeless
> insolvency would have triggered a run on RCM, in which all the
> company's customers would have sought to recover their funds
> prior to the inevitable bankruptcy filing.  Because RCM, by the
> terms of the Plaintiffs' Complaint, had no ability to pay back the
> money that was upstreamed at the time of the LBO, SPhinX would
> have been unable to recover its funds.  They might well have
> tried—as they did when the truth was in fact disclosed—but so
> would (and did) everyone else.  And if they got the money out in
> front of everyone else once Credit Suisse and BAS revealed the
> fraud, they would have been (and of course were in fact) subject to
> clawback by preference action.

Bank Defendants R&R at 22-23 (emphasis added).  The Special Master and the Court recognized

the very same point in their decisions with respect to PwC and DBSI.  *See* Memorandum Order

(re PwC), dated February 16, 2012, at 10-11 ("[W]ith respect to the assets deposited at Refco

before PwC began its advisory work, the fraud was already accomplished. By the time PwC

substantially assisted the Refco fraud, assets that had previously been deposited at Refco were

already unrecoverable, given the insolvency of both Refco and RCM."); PwC R&R at 23; DB

R&R at 40-41 & 46 ("those damages cannot include claims for *retaining* assets at Refco in

reliance on DBSI's wrongful acts, because those assets would have been lost in any case had DBSI publicly disclosed the Refco Fraud").

In short, there is no genuine issue of material fact that Plaintiffs cannot show that they suffered any injury proximately caused by PwC, the Bank Defendants or DBSI.  Accordingly, Plaintiffs' claims against those Moving Defendants fail as a matter of law.

Summary judgment also should be entered with respect to the claims against the Mayer Brown Defendants and the Grant Thornton Defendants.  Like PwC, the Bank Defendants and DBSI, the Mayer Brown Defendants and Grant Thornton Defendants face only one remaining claim:  for aiding and abetting the Refco fraud.  As the Special Master and the Court have already held, the alleged "primary violation" that Plaintiffs claim these defendants aided and abetted is the fraud by Refco based on its alleged "materially false statements to the public in Refco's LBO and IPO public filings."  Primary Violations R&R at 25; *see also* Mayer Brown Defendants R&R at 10 (alleged misrepresentations in "public statements regarding [the company's] financial condition"); Grant Thornton Defendants R&R at 15 (alleged misrepresentations in "public statements regarding [the company's] financial condition").  That is the only claim, and the only legal theory, that survived Defendants' motions to dismiss.  Plaintiffs do not contend that they relied on any Refco statements prior to the LBO.[5]  Indeed, there were no public filings by Refco prior to that time.  As discussed above, Refco's first public

---

[5] *See, e.g.,* Plaintiffs' Supplemental Response to Defendant Bawag's First Set of Interrogatories, No. 18 (Plaintiffs "believe that members of the risk committee were aware of and/or reviewed Refco's ***public filings*** in connection with their work on the risk committee.") (emphasis added).  Nor has any evidence in discovery to date shown that Plaintiffs relied on any false statement by Refco prior to the LBO or IPO.  Indeed, the evidence to date suggests that Plaintiffs did not rely on *any* Refco statements, even during the LBO and IPO – but that conclusion is not necessary to a ruling for defendants on this motion.

statement was the LBO S-4 filing on October 12, 2004 (which also contained Grant Thornton's earliest publicly filed audit opinion).

Plaintiffs thus have no claim against the Mayer Brown Defendants or the Grant Thornton Defendants for deposits made *prior* to the LBO and IPO because, as a matter of law (and law of the case), Plaintiffs did not deposit such funds in *reliance* on any Refco misrepresentation allegedly aided and abetted by the Mayer Brown Defendants or the Grant Thornton Defendants. *See Turter v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 310 (2d Cir. 1994) (reasonable reliance on the alleged misrepresentation is an "essential element[ ]" of a fraud claim under New York law); Primary Violations R&R at 21.  Plaintiffs are required to establish that alleged conduct by these Defendants "proximately caused SPhinX/PlusFunds to place money with Refco."  Mayer Brown R&R at 12; *see also* Grant Thornton Defendants R&R at 15-16.  That is to say, Plaintiffs must prove that they placed money with Refco in reliance on fraudulent statements that these Defendants aided and abetted.  Plaintiffs have no claim to recover any funds deposited prior to such reliance because, under Plaintiffs' own theory, those funds would have been lost in any event in a "run on the bank" whenever the Refco fraud was revealed to the public.  Because Plaintiffs could not have relied before the LBO, and SMFF's deposits at RCM only decreased after the LBO, Plaintiffs cannot recover.  *See* Mayer Brown Defendants R&R at 11; Grant Thornton Defendants R&R at 16-17.

## CONCLUSION

For the reasons set forth herein and the accompanying Rule 56.1 Statement and Declaration in support, Moving Defendants respectfully request that the Court grant summary judgment in their favor under Rule 56 of the Federal Rules of Civil Procedure on Plaintiffs' aiding and abetting fraud claims — Count XVII as to PwC; Count XXII as to Credit Suisse and

BAS; Count IV as to DBSI, Count XVII as to Mayer Brown and Messrs. Collins, Koury and

Best; and Count XVII as to Grant Thornton and Mr. Ramler.

Dated: New York, New York
      August 2, 2012

**KING & SPALDING LLP**


By:   /s/ James J. Capra, Jr.
       James J. Capra, Jr.
       James P. Cusick
       1185 Avenue of the Americas
       New York, New York 10036
       Tel: (212) 556-2100

       *Attorneys for Defendant*
       *PricewaterhouseCoopers LLP*


**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**


By:   /s/ Philip D. Anker
       Philip D. Anker
       Peter J. Macdonald
       Jeremy S. Winer
       Ross E. Firsenbaum
       7 World Trade Center
       250 Greenwich Street
       New York, New York 10007
       Tel: (212) 230-8800

       *Attorneys for Defendants Credit Suisse*
       *Securities (USA) LLC and Merrill Lynch,*
       *Pierce, Fenner & Smith, Incorporated, as*
       *successor-by-merger to Banc of America*
       *Securities LLC*

**LINKLATERS LLP**

By:   /s/ James R. Warnot, Jr.
      James R. Warnot, Jr.
      Ruth E. Harlow
      Robert H. Bell
      1345 Avenue of the Americas
      New York, New York 10105
      Tel: (212) 903-9000

      *Attorneys for Defendant Deutsche Bank Securities Inc.*

**WILLIAMS & CONNOLLY LLP**

By:   /s/ Craig D. Singer
      John K. Villa
      George A. Borden
      Craig D. Singer
      725 Twelfth Street, NW
      Washington, DC 20005
      Tel: (202) 434-5000

      *Attorneys for Defendants Mayer Brown LLP and Edward S. Best*

**COOLEY LLP**

By:   /s/ William J. Schwartz
      William J. Schwartz
      Jonathan P. Bach
      Reed A. Smith
      1114 Avenue of the Americas
      New York, NY 10036-7798
      Tel: (212) 479-6000

      *Attorneys for Defendant Joseph P. Collins*

15

**CLAYMAN & ROSENBERG**

By:   /s/ Charles E. Clayman
      Charles E. Clayman
      305 Madison Avenue, Suite 1301
      New York, NY 10165
      Tel: (212) 922-1080

      *Attorneys for Defendant Paul Koury*


**WINSTON & STRAWN LLP**

By:   /s/ Linda T. Coberly
      Linda T. Coberly
      Bruce R. Braun
      Catherine W. Joyce
      David J. Doyle
      35 W. Wacker Drive
      Chicago, Illinois 60601
      Tel: (312) 558-5600
      Fax: (312) 558-5700

      Luke A. Connelly
      200 Park Avenue
      New York, New York 10166
      Ph: (212) 294-6700
      Fax: (212) 294-4700

      *Attorneys for Defendants*
      *Grant Thornton LLP and Mark Ramler*

16