UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
In re REFCO INC. SECURITIES LITIGATION                       : Case No. 07-MD-1902 (JSR)
                                                             :
------------------------------------------------------------ X

This document relates to:
------------------------------------------------------------ X
KENNETH M. KRYS, *et al.*,                                   : Case No. 08-CV-3065 (JSR)
                                                             : Case No. 08-CV-3086 (JSR)
                                        Plaintiffs,          :
                                                             :
                -against-                                    :
                                                             :
CHRISTOPHER SUGRUE, *et al.*,                                :
                                                             :
                                        Defendants.          :
------------------------------------------------------------ X

**PLAINTIFFS' RESPONSE TO PRICEWATERHOUSECOOPERS LLP'S MOTION TO STRIKE EXPERT OPINIONS RELATING TO DISMISSED CLAIMS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.   INTRODUCTION. ..........................................................................................................1

II.  THE EVIDENCE ESTABLISHES THAT PWC SUBSTANTIALLY
     ASSISTED REFCO IN MISREPRESENTING THAT RCM WAS
     REGULATED AND SEGREGATED CUSTOMER CASH. ............................................1

III. PWC MISCHARACTERIZES WALLACE'S OPINION REGARDING
     PWC'S OMISSION OF THE PROTECTION AFFORDED
     SEGREGATED ASSETS. ................................................................................................7

IV.  WALLACE'S AND GREENBERGER'S OPINIONS ADDRESS
     DEFENSES BEING RAISED AND PURSUED BY PWC. ..............................................8

V.   THE WALLACE AFFIDAVIT REFUTES A DEFENSE RAISED BY
     PWC THAT THE RISK OF LOSS OF SMFF'S EXCESS CASH WAS
     ADEQUATELY DISCLOSED IN SMFF'S FINANCIAL
     STATEMENTS. ................................................................................................................9

CONCLUSION ..................................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

*Hamza v. Saks Fifth Ave., Inc.*,
   No. 07 Civ. 5974, 2011 U.S. Dist. LEXIS 139132 (S.D.N.Y. Dec. 5, 2011) ............................ 6

*In re Fosamax Prods. Liab. Litig.*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009) ................................................................................... 9

*United States v. Taylor*,
   18 F.3d 55 (2d Cir. 1994) ................................................................................................ 1, 10

I.      **INTRODUCTION.**

The Special Master and the Court have found that Plaintiffs adequately plead a claim against PricewaterhouseCoopers LLP ("PwC") for aiding and abetting fraud.  PwC R & R at 18-24.  The so-called "Refco fraud" includes allegations that "Refco's financial condition was materially misstated to the public."  December 16, 2011 Report and Recommendation of the Special Master on Motions to Dismiss Brought by Grant Thornton and Mark Ramler ("Grant Thornton R&R"), MDL Docket No. 1343 at 6.  The Refco fraud also "[i]nvolves upstreaming assets in accounts from RCM to fund Refco and its wrongful acts; Round-Trip Loans; and a fraudulent LBO and IPO."  Mar. 1, 2010 Report and Recommendation of the Special Master on Omnibus Issue of Primary Violations ("Primary Violations R&R"), MDL Docket No. 579 at 21, *adopted*, May 3, 2011 Order, MDL Docket No. 1134; *see also* February 3, 2010 Report and Recommendation of the Special Master on the Omnibus Issue of Standing ("Standing R&R"), MDL Docket No. 550 at 3 (Refco fraud allegations of the Complaint emphasize "Round-Trip Loans, the Refco hidden receivables, the fraudulent LBO and IPO, and the funding of Refco interests by looting the accounts at RCM.").

PwC seeks to strike certain opinions offered by R. David Wallace, CPA and I. Michael Greenberger, expert witnesses who have submitted reports on behalf of Plaintiffs, on the grounds that those opinions address opinions or theories that are, according to PwC, "out of the case."  PwC's motion is overreaching and should be denied.

II.     **THE EVIDENCE ESTABLISHES THAT PWC SUBSTANTIALLY ASSISTED REFCO IN MISREPRESENTING THAT RCM WAS REGULATED AND SEGREGATED CUSTOMER CASH.**

Expert testimony is "relevant if it 'assist[s] the trier of fact to understand the evidence or to determine a fact in issue.'"  *United States v. Taylor*, 18 F.3d 55, 59 (2d Cir. 1994) (quoting Fed. R. Evid. 702).  As explained below, the contested testimony is relevant, and therefore

1

admissible, because it pertains to evidence and facts that pertain to Plaintiffs' live claims as well as defenses raised by PwC and other defendants in this case.

Defendant PwC began providing consulting and advisory services to Refco in April 2004. Expert Report of R. David Wallace, Jun 29, 2012 (corrected Jul 20, 2012) ("Wallace Rept.") at 111-12 (attached as Ex. 1 to the August 7, 2012 Declaration of James J. Capra, Jr. (the "Capra Decl.")). PwC was specifically retained by Refco to assist Refco with the upcoming LBO and the anticipated S-4 filing to follow the LBO.[1]

Refco's consolidated balance sheet in Refco's S-4 filing on October 12, 2004 included a line item for "Cash and Securities Segregated Under Federal and Other Regulations," totaling $1,430,900,000 as of February 29, 2004. *See* Ex. A to the August 28, 2012 Declaration of Mason C. Simpson in Support of Plaintiffs' Response to PricewaterhouseCoopers LLP's Motion to Strike Expert Opinions Relating to Dismissed Claims (the "Simpson Decl."), at p. F-3. Note A to Refco's consolidated financial statements indicated that:

> The Group's principal operating subsidiaries comprise Refco Securities, LLC, a registered broker-dealer, Refco LLC, a registered futures commission merchant, and Refco Capital Markets Ltd., an off-shore securities and foreign exchange broker.

*See* Ex. A to Simpson Decl. at p. F-7.

Note B to the consolidated financial statements stated that:

> **Cash and Securities Segregated Under Federal and Other Regulations**
>
> At February 29, 2004 and February 28, 2003, cash and securities of $1,430.9 million and $2,019.0 million respectively, was [*sic*] segregated under various regulatory requirements.

---

[1] The evidence indicates that PwC was retained by Refco at the suggestion of Grant Thornton because Refco lacked the capability internally to prepare public filings in compliance with SEC Rules and regulations.  *See* Wallace Rept. at 111.

2

*See* Ex. A to Simpson Decl. at p. F-8.

In response to the S-4 filing, the SEC sent Refco a comment letter dated November 10, 2004 (attached as Ex. B to Simpson Decl.), in which the SEC asked Refco to revise its footnote disclosure regarding "Cash and Securities Segregated Under Federal and Other Regulations":

> [T]o separately describe the various regulations or contractual obligations under which you are required to segregate or restrict cash or securities. Quantify the amounts segregated or restricted under each requirement.

*See* Ex. B to Simpson Decl. at PwC Refco Class 0189928.

PwC assumed responsibility for responding to certain of the SEC's comments and drafting amending language for an amended S-4. *See* Ex. C to Simpson Decl. at PwC Refco Class 0189934-55. Among the comments for which PwC assumed responsibility was Comment 77 regarding the segregation of cash and securities. *See id*. at PwC Refco Class 0189947-49.

PwC then amended the Note B disclosure regarding "Cash and Securities Segregated Under Federal and Other Regulations" as follows:

> **Rider A (Segregated cash policy)**
>
> Cash and cash equivalents have been segregated in special reserve bank accounts for the benefit of clients under various regulatory requirements. These requirements at year-end are set forth below:
>
> |  | **2004** | **2003** |
> |---|---|---|
> |  | (in thousands) | |
> | Rule 15c3-3 of the Securities Exchange Act of 1934 | 25,271 | 21,732 |
> | Section 1.20 of the Commodity Exchange Act | 924,613 | 1,708,781 |
> | Foreign subsidiaries regulated under various foreign regulations | 425,954 | 219,333 |
> |  | 1,375,838 | 1,949,846 |
>
> As of February 29, 2004 and February 28, 2003, securities purchased under agreements to resell of $55,061 and $69,161,

3

> respectively are held for the benefit of clients under Rule 15c3-3 of the Securities Exchange Act of 1934.

*See* Ex. D to Simpson Decl. at PwC Refco Class at 0200437, 0200492.[2]

As Mr. Wallace, a CPA with 46 six years of experience, explains:

> This is essentially the disclosure that appears in Amendment No. 1 to Refco's Form S-4, filed on December 10, 2004, in Note B on page F-8. (Ex. 6004, p. F-8). In light of the disclosure in Note A on page F-7 of the S-4 filing that "the group's principal operating subsidiaries comprise Refco Securities, LLC, a registered broker-dealer, Refco, LLC, a registered futures commission merchant, and Refco Capital Markets, Ltd., an offshore securities and foreign exchange broker," the disclosure regarding cash and securities segregated made by PwC clearly suggests that RCM is subject to foreign regulation and is in fact segregating customer assets.

See Wallace Rept. at 143.

In his report, Michael Greenberger, former Director of the Division of Trading and Markets of the CFTC and current professor of law at the University of Maryland teaching "Futures Options and Derivatives," agrees that this disclosure in Refco's S-4 strongly suggests that RCM was segregating customer assets:

> In the S-4 amendment it represented: "Cash and cash equivalents have been segregated in special reserve bank accounts for the benefit of clients under various regulatory requirements." *Id.* at F-8. A line item below is for: "Foreign subsidiaries regulated under various foreign regulations." *Id.* Because RCM is the only foreign operating subsidiary identified on p. F-7, the strong inference is that RCM was segregating customer assets. The S-4 discloses that these "foreign subsidiaries" have approximately $426 million in segregated customer assets as of February 29, 2004, which at the time would have covered the Refco funds at RCM. *Id.*

---

[2] PwC's Henri Steenkamp, who worked on PwC's Refco consulting engagement, recently testified that a handwritten note on a draft amended S-4 directing that the language in the original S-4 be replaced with the "Rider A" language "could be my handwriting." Dep. of Henri Steenkamp, 31 May 12, pp. 386-87. (attached as Ex. E to Simpson Decl.)

*See* Expert Report of Michael Greenberger, Jul 20, 2012 ("Greenberger Rept.") at 44-45 (attached as Ex. 2 to the Capra Decl.).

In fact, PwC's workpapers indicate that PwC knew by no later than July 8, 2004, long before the original S-4 filing, that RCM was not among the "foreign subsidiaries regulated under various foreign regulations" included in the line item in Note B on page F-8 of the S-4 filing. *See* Ex. F to Simpson Decl. at 134378; Ex. G to Simpson Decl. at PwC Refco Class at 0205640. These PwC workpapers break out the components of the "foreign subsidiaries regulated" line item, which includes Refco London, Refco Securities SA, Refco Singapore, Refco Investments Services, and Refco Hong Kong – but not RCM. Wallace Rept. at 141-144; *see also* Greenberger Rept. at 44.

In addition, PwC had within its own workpapers a Refco document showing the upstreaming of approximately $1.8 billion of RCM customer assets from RCM to other affiliates of Refco. *See* Wallace Rept. at 140-41.

PwC now seeks to strike certain of the Wallace's opinions, arguing in part that "all claims or theories of liability based on PwC's alleged knowledge that the transfers of cash from RCM to other Refco entities was wrongful, namely a breach of fiduciary duty on conversion by Refco" are somehow "out of the case." PwC Memo. at 3.

It is not entirely clear what PwC means by this. But if PwC is suggesting that PwC's substantial assistance to Refco in misrepresenting that RCM was a regulated entity that segregated assets, thereby concealing the looting of RCM customers, is off limits, then PwC is simply wrong.[3] This evidence is directly relevant to Plaintiffs' claims against PwC for aiding and abetting the so-called "Refco fraud," *i.e.*, the misrepresentation of Refco's financial

---

[3] In its Memorandum, PwC does not specifically dispute that the evidence summarized above is relevant to Plaintiffs' claim against PwC for aiding and abetting fraud.

5

condition to the public. Grant Thornton R&R at 6. Indeed the Special Master and Judge Rakoff have already held that the Refco fraud included the upstreaming of RCM customer assets, including SMFF assets, to fund Refco's operations. Primary Violations R&R at 21, Standing R&R at 3.

PwC quotes the Special Master's comment on the allegations of scienter in Plaintiffs' Complaint in the context of PwC's Motion to Dismiss claims of aiding and abetting breach of fiduciary duty and aiding and abetting conversion. *See* PwC Mem. at 4-5. But Plaintiffs' claims against PwC for aiding and abetting fraud have certainly not been dismissed, and the evidence discussed above is directly relevant to that claim. PwC has cited no authority for the proposition that an expert witness must ignore *actual evidence* pertaining to a live claim just because it might also pertain to a claim that has been dismissed. *Cf. Hamza v. Saks Fifth Ave., Inc.*, No. 07 Civ. 5974, 2011 U.S. Dist. LEXIS 139132, at * 21-30 (S.D.N.Y. Dec. 5, 2011) (Stamp, J.) (granting motion *in limine* in part to the extent evidence pertaining to dismissed claims was "wholly irrelevant" to live claim, but denying motion in part to the extent evidence was probative of plaintiff's live claim or relevant to a defense to the claim).

Regardless of the adequacy of the *allegations* of scienter in the context of Plaintiffs' claims for aiding and abetting breach of fiduciary duty and aiding and abetting conversion, the actual evidence adduced in discovery with respect to the claims for aiding and abetting fraud demonstrates that PwC actually knew that Refco was misrepresenting RCM's status and that of its customers' assets and actually knew of the "upstreaming" of those assets to other Refco entities. None of Plaintiffs' experts were required to ignore this relevant evidence, but were rather entitled to comment and opine on it.

6

III. **PWC MISCHARACTERIZES WALLACE'S OPINION REGARDING PWC'S OMISSION OF THE PROTECTION AFFORDED SEGREGATED ASSETS.**

PwC is again overreaching in seeking to strike Mr. Wallace's opinion regarding PwC's knowing and deliberate omission from SMFF's financial statements a disclosure regarding the protections afforded segregated assets. PwC suggests that *anything* having to do with its audits of SMFF's financial statements is "out of the case" and off limits to Plaintiffs' experts. Def's Mem. at 3-5, 7. PwC is wrong. The opinion about which PwC complains is actually part of Mr. Wallace's discussion of PwC aiding and abetting the Refco fraud and pertains to PwC's knowledge of that fraud.

On March 18, 2004, in a comment on a draft of SMFF's fiscal year 2003 financial statement, PwC's Merryn Rosewall suggested additional disclosures regarding the segregation of SMFF's assets as folows:

> The purchase and sale of futures and options on futures contracts requires margin deposits with FCMs [Future Commissions Merchants]. Additional deposits may be necessary for any loss on contract value. The Commodity Exchange Act (CEA) requires an FCM to segregate all customer transactions and assets from the FCM's proprietary activities. A customer's cash and other property (for example, U.S. Treasury bills) deposited with an FCM are considered commingled with all other customer funds subject to the FCM's segregation requirements. In the event of an FCM's insolvency, recovery may be limited to a pro rate share of segregated funds available. It is possible that the recovered amount could be less than the total of cash and other property deposited.
>
> SPC FS 1st Draft, PwC PF 0010978-22305, 0011021

Wallace Rept. at 144-45.

In April 2004, PwC began its consulting work at Refco. Wallace Rept. at 111-112. Thereafter, in PwC's comments on all subsequent drafts of SMFF's financial statements through May 28, 2004, PwC made no further reference to any disclosures regarding the protections afforded by segregation. *See* Wallace Rept. at 144-45. This suggests that PwC knew SMFF's

7

assets were not segregated and that PwC was willing to serve the interests of Refco over and even at the expense of SPhinX. *See id*. at 145. This is relevant to the Refco fraud and demonstrates that it is plausible that PwC would throw in with Refco at the expense of Refco's customers. *See id*. at 146.

IV. **WALLACE'S AND GREENBERGER'S OPINIONS ADDRESS DEFENSES BEING RAISED AND PURSUED BY PWC.**

PwC's complaints that Mr. Wallace's and Professor Greenberger's reports touch on PwC's audits of SMFF, and specifically PwC's failure to implement appropriate audit procedures to confirm whether SMFF's assets were properly segregated, is similarly unfounded. As discussed in Plaintiffs' Response to Grant Thornton's and Mark Ramler's Motion to Strike, Defendants, including PwC, have spent considerable time in discovery attempting to elicit evidence that innocent decision-makers of SPhinX and PlusFunds knew or should have known that SMFF assets were at RCM and were not segregated. *See* Plaintiffs' Response to Grant Thornton LLP's and Mark Ramler's Motion to Strike Opinions of Proposed Experts Michael Greenberger and David Wallace at 4-9. These efforts were ongoing long before Plaintiffs' disclosures of their experts' opinions, including Greenberger and Wallace. *See, e.g.*, Obj. of the Bank Defs., Grant Thornton Defs., PwC Defs., THL Defs., Mayer Brown Defs., Loan Participant Defs., BAWAG, Dennis Klejna and Richard Butt to the Report and Recommendation of the Special Master on Primary Violations by Refco II, Mar. 12, 2010, MDL Docket No. 593 ("Plaintiffs cannot plausibly contend that they were misled about whether SMFF's cash that was moved to RCM would be segregated.").

More recently PwC, along with Grant Thornton and certain other Defendants, have submitted the reports of proposed expert witness Jerry W. Markham and René M. Stulz. These individuals opine that the Commodities Exchange Act ("CEA") and Commodity Futures Trading

8

Commission ("CFTC") Rules did not require segregation of SMFF assets once they were transferred to RCM, and that the CEA and CFTC Rules would have given SPhinX and PlusFunds no reasonable basis to believe SMFF's assets were segregated.  *See* Expert Report of Expert Report of René M. Stulz at 18-36 and Expert Report of Jerry W. Markham at 57-65, 72-83 (attached as Exs. A and B to Declaration of Mason Simpson in Support of Plaintiffs' Response to Grant Thornton LLP's and Mark Ramler's Motion to Strike Opinions of Proposed Experts Michael Greenberger and David Wallace).

Competing testimony by Plaintiffs' experts is a "proper way[] to expose" the flaws in Defendants' theory. *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 209 (S.D.N.Y. 2009).  Professor Greenberger explains that the CEA and CFTC Rules required segregation even when assets were transferred out of the Futures Commission Merchant ("FCM").  *See* Greenberger Report at 19-20, 23-27.  Professor Greenberger further explains that given the strict segregation requirements of the CEA and CFTC Rules and the importance of segregation to the futures markets, innocent decision-makers at SPhinX and PlusFunds would have had no reason to believe that SMFF's assets were not in fact segregated.  *See id*. at 2-3.  And PwC's unqualified audit opinions provided additional comfort that SMFF's assets were protected.[4]

## V. THE WALLACE AFFIDAVIT REFUTES A DEFENSE RAISED BY PWC THAT THE RISK OF LOSS OF SMFF'S EXCESS CASH WAS ADEQUATELY DISCLOSED IN SMFF'S FINANCIAL STATEMENTS.

PwC similarly overreaches in complaining about Mr. Wallace's reference to his Affidavit dated September 6, 2011, in connection with Plaintiffs' objections to the PwC R&R.  In his Report, Mr. Wallace references his affidavit in his discussion of Footnote 9 in SMFF's fiscal

---

[4] There is certainly nothing to suggest that innocent decision-makers at SPhinX and PlusFunds would have had any reason to believe PwC's duties as an auditor did not extend to confirming segregation of assets as represented in SPhinX's Offering Memorandum and financial statements.

9

year 2004 financial statements. That footnote contained a disclosure, not contained in any of SMFF's previous financial statements, of some undescribed "risk" associated with "prime brokers."

Mr. Wallace had explained in his Affidavit that the footnote did not, contrary to Defendants' (including PwC's) repeated assertions, disclose the risk that assets were exposed to the risk of total loss due to the lack of segregation. "[T]he footnotes to SMFF's financial statements did not disclose that SMFF's hundreds of millions of dollars were exposed to the credit risk of RCM. *See* Affidavit of R. David Wallace at 28 (attached as Ex. 3 to Capra Decl.).

Defendants (including PwC), however have continually raised the contention that the risk of non-segregation was disclosed in Footnote 9. *See, e.g.,* Defs. PricewaterhouseCoopers LLP's and Mari Ferris' Mem. of Law in Support of Their Mot. to Dismiss at 12-13, Nov. 25, 2008. It also has been the subject of substantial questioning by Defendants at depositions. *See*, for example, the deposition of Diego Winegardner at pp. 189-197 (attached as Ex. H to the Simpson Decl.). Indeed, PwC's proposed expert, René M. Stulz, specifically opines that SPhinX and PlusFunds had "no reasonable basis" to believe cash at RCM would be segregated because "SMFF's annual financial statements for the year ending 2004 explicitly noted the existence of prime broker credit risk." Expert Report of Rene M. Stulz, at 79-80.

It is unremarkable – and certainly proper – for Plaintiffs' experts to comment and/or opine upon issues raised by Defendants. *See e.g., Taylor*, 18 F.3d at 59 (allowing persecution to present expert testimony addressing defendant's testimony "seek[ing] to discredit the government's version of events as improbable") (citation and internal quotation marks omitted). PwC's motion to strike should be denied.

10

## CONCLUSION

For all the foregoing reasons, PricewaterhouseCoopers LLP's Motion to Strike Opinions relating to dismiss claim should be denied in its entirety.

Dated:   New York, New York
         August 28, 2012

> **BROWN RUDNICK LLP**
>
> By:   /s David J. Molton
>       David J. Molton
>       Andrew Dash
>       Mason Simpson
>
> Seven Times Square
> New York, New York 10036
> Tel: (212) 209-4800
> Fax: (212) 209-4801
> dmolton@brownrudnick.com
> adash@brownrudnick.com
> msimpson@brownrudnick.com
>
> - and -
>
> Leo R. Beus (admitted *pro hac vice*)
> Dennis K. Blackhurst (admitted *pro hac vice*)
> BEUS GILBERT PLLC
> 4800 North Scottsdale Road, Suite 6000
> Scottsdale, Arizona 85251
> Telephone: (480) 429-3000
> Facsimile: (480) 429-3100
> lbeus@beusgilbert.com
> dblackhurst@beusgilbert.com
>
> *Attorneys for Plaintiffs*