```
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
:
In re REFCO INC. SECURITIES LITIGATION  :   Case No. 07-md-1902 (JSR)
:
-----------------------------------------------------------X

This Document Relates to:

-----------------------------------------------------------X
KENNETH M. KRYS, et al.,                :   Case No. 08-cv-3065 (JSR)
                                        :   Case No. 08-cv-3086 (JSR)
Plaintiffs,                             :
                                        :
        -against-                       :
                                        :
CHRISTOPHER SUGRUE, et al.,             :
                                        :
                Defendants.             :
-----------------------------------------------------------X
KENNETH M. KRYS, et al.,                :   Case No. 10-cv-3594 (JSR)
                                        :
Plaintiffs,       :
                                        :   REPORT AND
        -against-                       :   RECOMMENDATION
                                        :   OF THE SPECIAL MASTER
DEUTSCHE BANK SECURITIES, et al.,       :   ON CERTAIN DEFENDANTS'
                                        :   MOTION FOR SUMMARY
                Defendants.             :   JUDGMENT
-----------------------------------------------------------X


Daniel J. Capra, Special Master


      Defendants PricewaterhouseCoopers LLP ("PwC"); Credit Suisse Securities (USA) LLC ("Credit Suisse"); Merrill Lynch, Pierce, Fenner & Smith, Incorporated, as successor-by-merger to Banc of America Securities LLC ("BAS"); Deutsche Bank Securities, Inc. ("DBSI"); Mayer

1

Brown LLP ("Mayer Brown") and Joseph Collins, Paul Koury, Edward Best;[1] and Grant Thornton LLP ("Grant Thornton") and Mark Ramler, — (collectively the "Moving Defendants") — move for summary judgment on the remaining claim against each of them in these actiona.

**For reasons discussed below, the Motion for Summary Judgment should be denied with respect to the claims remaining on behalf of SMFF. But the Motion for Summary Judgment should be granted with respect to the claims remaining on behalf of PlusFunds.**

## I. Background

As stated in many prior R and R's, and as limited by Orders of Judge Rakoff, the Plaintiffs at this stage are bringing these actions to recover (i) $263 million plus interest in damages suffered by SPhinX Managed Future Funds ("SMFF"); and (ii) the lost business enterprise value and deepening insolvency damages suffered by SPhinX's investment manager, PlusFunds Group, Inc., ("PlusFunds").[2] These damages were allegedly caused when SMFF placed funds at Refco LLC, which were transferred to Refco Capital Markets ("RCM") and then lost when the Refco Fraud was discovered and Refco and its affiliates declared bankruptcy.[3]

Prior orders of Judge Rakoff have dismissed with prejudice all of the claims brought by the Plaintiffs against the Moving Defendants except for one — the claim against each Defendant for aiding and abetting the Refco Fraud. That remaining claim is Count XVII of the Amended Complaint against PwC, the Mayer Brown Defendants, Grant Thornton, and Mark Ramler; Count XXII of that Amended Complaint against Credit Suisse and BAS; and Count IV in the separate

---

[1] Mayer Brown and Collins, Koury and Best are referred to herein collectively as the "Mayer Brown Defendants."

[2] As recounted in a number of prior R and R's, the named Plaintiffs have been appointed by the Cayman Islands Court to bring claims on behalf of SPhinX and PlusFunds. The SPhinX family of funds, organized under Cayman Islands law, entered into voluntary liquidation after the collapse of Refco. Plaintiffs Kenneth M. Krys and Margot MacInnis are their Joint Official Liquidators. Plaintiff The Harbor Trust Co. Ltd. is the Trustee of the SPhinX Trust. The SPhinX Trust is the assignee of claims from the estate of PlusFunds. PlusFunds created SPhinX and served as its investment manager.

Prior rulings by Judge Rakoff have narrowed the claims for damages to those incurred by SMFF and PlusFunds. *See generally* the Standing R and R dated dated February 3, 2010 and affirmed by Judge Rakoff in Orders dated March 31, 2010 and May 3, 2011.

[3] The Special Master has written more than 20 R and R's evaluating claims pursued as a result of the Refco Fraud. Familiarity with those R and Rs — and with the factual background of the Refco Fraud — is presumed. Abbreviations from the prior R and Rs are used herein.

Complaint against DBSI.[4]  By these same prior Orders, the remaining claim against each of these Moving Defendants is limited to damages from the loss of *those deposits made after the date of each respective defendant's wrongdoing*. Deposits made before each defendant's wrongdoing were found noncompensable because:

> the argument that [the Defendants] caused SPhinX and PlusFunds to *keep* the cash at Refco is that the information that the Plaintiffs insist should have been disclosed . . . was in the context of public statements, to the public at large. . . . Assuming that, at the time of the LBO, RCM did disclose to its then-customers that it was hopelessly insolvent, there is nothing that those customers could have done at that point to get their money back.  The announcement of hopeless insolvency would have triggered a run on RCM, in which all the company's customers would have sought to recover their funds prior to the inevitable bankruptcy filing.  Because RCM, by the terms of the . . . complaint, had no ability to pay back the money that was upstreamed at the time of the LBO, the . . . customers would have been unable to recover their funds.  And those who were paid by RCM, if any, would have seen those funds recovered by the bankruptcy trustee as a voidable preference for the benefit of the estate.[5]

Consequently, any fraud could not have caused SMFF to *retain* assets after the date of any particular defendant's aiding and abetting.

The motion for summary judgment raises three separate questions:

1. Can SMFF recover damages when the amount of cash at Refco was greater *before* the Moving Defendants allegedly acted wrongfully than it was at the time of the Refco bankruptcy, when the cash was lost? Put another way, what is the proper formula for determining damages proximately caused by the Moving Defendants' alleged wrongdoing? Is it, as the Moving Defendants contend, to determine the difference between between the amount of cash at Refco at the time of the wrongdoing and the time of Refco's bankruptcy? Or is it, as the Plaintiffs contend, to determine the amount of cash deposited *after* the wrongdoing and not withdrawn before the Refco bankruptcy?

2. Assuming the Moving Defendants are correct in their damages theory — called herein the "net deposit" theory — is there a question of fact on the appropriate date for measuring deposits?

---

[4] See PwC R and R dated August 10, 2011, adopted by Order of Judge Rakoff dated October 24, 2011; Deutsche Bank R and R dated November 1, 2011, adopted by Judge Rakoff by Order dated February 17, 2012; Bank Defendants R and R dated December 8, 2011, adopted by Order of Judge Rakoff dated February 17, 2012; Grant Thornton R and R dated December 16, 2011, adopted by Order of Judge Rakoff dated March 28, 2012; Mayer Brown R and R dated January 17, 2012, adopted by Order of Judge Rakoff dated March 26, 2012.

[5] PwC R and R at 22.

In other words, what is the "trigger date" for each of the Defendants' aiding and abetting liability? Is it when public statements were issued for the LBO? Or is it an earlier point when, perhaps, the amount of SMFF cash on deposit at Refco was lower than the amount at the time of Refco's bankruptcy?

3. How are PlusFunds' damages to be assessed? PlusFunds did not deposit any assets at Refco, so what is the relevance, if any, of the amount of SMFF deposits at any point in time?

The Special Master will take each question in turn.

## II. Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment may be granted only if the submissions of the parties taken together show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Moving Defendants bear the burden of demonstrating the absence of a material question of fact, and they have "the initial responsibility of . . . identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which . . . demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on the summary judgment motion the court must view all facts in the light most favorable to the Plaintiffs as nonmoving parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2nd Cir.2002).

If the Moving Defendants have presented facts showing that they are entitled to summary judgment, the Plaintiffs must then set forth specific facts showing that there is a genuine issue for trial. They cannot rest on conclusory allegations or simply denials of the Moving Defendants' submissions. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2nd Cir.2002). In reviewing a motion for summary judgment, a court "may rely only on admissible evidence." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2nd Cir.2004). In sum, in considering whether to grant summary judgment, the court must (1) determine whether a genuine factual dispute exists based on the admissible evidence in the record; and (2) determine, based on the substantive law at issue, whether the fact in dispute is material.

## III. The Moving Defendants' Argument for Summary Judgment on the Claims of SMFF

The Moving Defendants' motion for summary judgment on the claims of SMFF rests on a

single ground.[6]  They note that  the Krys Expert Report  indicates that there was more SMFF cash in Refco accounts at the time of the August 2004 LBO and the August 2005 IPO than there was at the time of the Refco bankruptcy in October 2005. [7] The LBO and the IPO are the relevant points of reference, according to the Moving Defendants, because the Plaintiffs' claim is grounded in reliance on false statements made in public filings in connection with the LBO and IPO — the preparations of which were allegedly aided and abetted by the various Moving Defendants. So according to the Moving Defendants, disposition of this matter is "simple arithmetic"[8] — because the amount of cash was reduced after the various Moving Defendants' alleged acts of wrongdoing, the Plaintiffs have suffered no damage that was proximately caused by those acts.

The Moving Defendants' argument is flawed, however, because it fails to take proper account of the prior R and R's and Orders in this case. Those Orders established — time and time again — that the amount of SMFF cash held at Refco before the date of any particular Defendant's wrongdoing *was not compensable.* Because the Plaintiffs could not recover those funds from any of the Defendants, it makes no sense to argue that those funds can be somehow used to offset the loss of completely different deposits that *remain compensable* under the rulings in this case.

The R and Rs and prior Orders establish that the only deposits that can be recovered are those that were placed at Refco *after* the wrongdoing. It therefore makes no difference —  in terms of proximate cause or damage recovery —  what the amount of deposits was before the wrongdoing. Whether the amount on deposit prior to the wrongdoing  was zero or a billion, the only point of reference for assessing damages in light of the prior rulings is the deposits that were made after the Defendants' respective wrongdoing. Thus the Plaintiffs are correct when they state that "[b]ecause pre-LBO funds are not recoverable in the first place, withdrawal of those funds from RCM (at whatever time) cannot affect" the damages suffered by SMFF. Brief in Opposition at 2.

The plain reading of the R and Rs is that the Plaintiffs have sufficiently pled that SMFF was harmed when SMFF cash was deposited at Refco in reliance on the Defendants' wrongdoing in the LBO and/or IPO. When those deposits were made in such reliance, and *that* money was not withdrawn before Refco's bankruptcy, the R and Rs provide that Plaintiffs have sufficiently pled a cause of action for those losses. In contrast,  deposits placed *before* the wrongdoing  are out of the case. The relevant figure for damages then is not the net difference between the "pre-wrong amount" and the amount in October 2005.  It is the "post-wrong amount" that was not withdrawn by the time

---

[6] By agreement of the parties and approval of the Special Master, the Moving Defendants "have reserved their right to move for summary judgment on other grounds at the appropriate time, if necessary." Moving Defendants Brief at 1, n. 1. Thus the Special Master in this section assumes that each Moving Defendant knew about the Refco Fraud, that SphinX/PlusFunds reasonably relied on the misconduct, etc.

[7] The Plaintiffs do not dispute the figures.  See Plaintiffs' Response in Opposition to the Moving Defendants' Rule 56.1 Statement at 1-5.

[8] Opening Brief at 1.

of Refco's collapse in October 2005. And it is notable that the Moving Defendants do not dispute that SMFF made new deposits of almost $400 million after the LBO, $168.2 million of which was deposited after the first public disclosure attendant to the IPO. [9] So if as the parties agree there was $542 million on deposit at the time of the LBO; $400 million deposited after that point; and $312 million on deposit in October 2005, it is self-evident that there are actionable deposits after the first dates of each of the Moving Defendants' wrongdoing that were not withdrawn.

The fallacy of the Moving Defendants' argument is illustrated by a related hypothetical. Assume that an investment company defrauds a plaintiff into making a bad investment of a million dollars, but the plaintiff has made a different investment of two million dollars with the same company in another venture that was fraud-free. The plaintiff cashes out for two million dollars on the fraud-free investment but loses everything on the fraud-induced investment. Certainly the defendant cannot argue lack of proximate cause as to the fraud-induced investment because the amount of damages must be netted against the cash-out. Certainly the defendant cannot argue that it saved the plaintiff damages by not defrauding him of the other two million. The fact is that the fraud-free investment is not part of the fraud case. It is essentially the same here, because the pre-wrongdoing deposits have been found noncompensable and are no longer part of the case.

Or take another hypothetical. If SMFF had withdrawn all its cash at Refco the day before the LBO, and then deposited new cash at Refco the day after, the Defendants would, under their theory, concede for purposes of this motion that SMFF could recover damages from the loss of those new deposits. Why does it make any difference if the pre-LBO deposits are cashed out before the LBO or a month or year after that? Why is SMFF better off for having withdrawn money before the LBO when it is legally irrelevant to the remaining cause of action? Similarly, assume that SMFF deposited $200 million in cash after the LBO, but $100 million was retained in segregated accounts at Refco LLC and the other $100 million was transferred to RCM and lost in the Refco Fraud. On what possible basis could the defendants argue that the Plaintiffs suffered no damage because, after all, while they lost $100 million they also kept $100 million? In this hypothetical, the $100 million in the segregated account is irrelevant to the cause of action — just like the pre-LBO deposits are irrelevant under the prior R and R's.

It is important also to note that the very argument made by the Moving Defendants here has already been rejected by Judge Rakoff. PwC, and then the Bank Defendants, objected to the Special Master's recommendations that the motions to dismiss the aiding and abetting Refco Fraud claims should be denied. In PwC's objection papers, it stated that "Count 17 fails because the Complaint does not plead that SMFF's cash at RCM increased during PwC's tenure but, in fact, pleads just the opposite."[10] Similarly, the Bank Defendants argued that "[b]ecause Plaintiffs withdrew more money from RCM than they deposited during that time period, any conduct of the Bank Defendants cannot

---

[9] Oral Argument at 15, 49-50 (Moving Defendant's counsel does not disagree with Plaintiffs assertion of deposits made after the LBO, IPO, etc.).

[10] PwC's Limited Objection to the PwC R and R at 12-13.

6

be the cause of any harm Plaintiffs allegedly suffered."[11]  Yet Judge Rakoff of necessity rejected these arguments when he affirmed and adopted the Special Master's recommendations that the counts for aiding and abetting the Refco Fraud be allowed to go forward. Accepting those arguments — identical to those made here — would have resulted in dismissal of those claims.

At oral argument on this motion, Moving Defendants' counsel argued that their previously rejected "net deposit" theory can be revisited because the case is now at the summary judgment stage, and there is more information on the amounts of SMFF cash on deposit at various points in time.[12] But that argument is meritless. As the Moving Defendants themselves state, the Plaintiffs have *never* disputed the fact that the amount of SMFF cash at Refco at the time of the LBO was greater than the amount on deposit in October 2005. Indeed the Plaintiffs allege that fact in their Amended Complaint. *See* Amended Complaint at ¶11 (noting that the amount of SMFF cash at Refco in 2004 and 2005 was "as much as $560 million" —  and it was $312 million in October 2005).  The prior R and Rs, affirmed and adopted by Judge Rakoff, were written with full knowledge that the amount of cash on deposit in October 2005 was less than the amount on deposit at the time of the LBO. And yet those R and Rs found a question of fact on proximate cause for aiding and abetting the Refco Fraud, as to each of the Moving Defendants, for money deposited after their wrongdoing.  Thus, as to the Defendants' "net deposit" theory, *nothing* has changed since it was rejected by Judge Rakoff at the motion to dismiss stage.[13]

The prior R and Rs as adopted by Judge Rakoff are law of the case.  *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,* 759 F. Supp.2d 417, 424 (S.D.N.Y. 2010) (court's previous finding of a statutory violation in an earlier ruling was law of the case).[14]  ***Those rulings***

---

[11] Bank Defendants' Limited Objection to the Bank Defendants' R and R at 25.

[12] See Oral Argument at 81-82.

[13] A question discussed in the briefs concerns how to trace the funds that were deposited and withdrawn in the period between June 2004 and October 2005. The Plaintiffs propose a "FIFO" method of tracing. The Moving Defendants, to the extent they engage on the issue, argue that the case law concerning "FIFO" is inapplicable. For purposes of this motion, however, the method of tracing need not be addressed. The Moving Defendants' contention is that without regard to tracing, summary judgment must be granted simply because the amount of cash on deposit at the time of the LBO is higher than the amount on deposit in October 2005. That is the argument on which this motion is based, and it should be rejected for the reasons discussed in text. It will be up to the Plaintiffs, should this case be tried, to establish the amount of SMFF cash that was 1) deposited with Refco *after* the date of each respective Defendants' wrongdoing and 2) not withdrawn before October 2005.

[14] The Moving Defendants cite two cases for the proposition that a plaintiff who profits cannot claim fraud. But neither are on point. In *Halkedis v. Two East Avenue Apartment Corporation*, 161 A.D.2d 281, 555 N.Y.S.2d 54 (1st Dept 1990), the Plaintiffs claimed that the cooperative had defrauded them about the condition of an apartment. But the Plaintiffs sold the

7

*require that this motion for summary judgment on the claims brought on behalf of SMFF be denied.*

### IV. The Plaintiffs' Argument About Trigger Dates

In this Section we will assume (contrary to the recommendation above) that the Moving Defendants' "net deposit" argument is correct, i.e., that the Plaintiffs cannot recover if the amount of SMFF cash at Refco was higher on the date of a respective Defendant's first act of wrongdoing than it was when the cash was lost in October 2005. The Plaintiffs argue that even if the net deposit theory is valid, summary judgment should not be granted because: 1) the trigger dates (i.e., the date of the first act that aided and abetted the Refco Fraud) for Mayer Brown, Grant Thornton and PwC were much earlier than the date of the public statements issued in 2004 in connection with the LBO; and 2) the later aider and abetters among the Moving Defendants are responsible for all damages occurring after the trigger date for the earliest wrongdoing defendant. So according to the Plaintiffs, the Moving Defendants' net deposit theory even if valid should not result in summary judgment because the October 2005 amount of $312 million is greater than the amount on deposit at the earliest trigger date.[15]

If the Court were to agree with the Moving Defendants' net deposit theory, then it would have to address the Plaintiffs' argument that the trigger date for all the Moving Defendants begins on the date of the first act by any one of them that aided and abetted the Refco Fraud. The first step for such an enquiry on this motion is to determine if there is a fact question as to whether any of the Moving and Defendants aided and abetted the Refco Fraud to SMFF's detriment before the public statements about the LBO were issued. The Moving Defendants argue that the remaining claims in the case are all about — and only about — SPhinX/PlusFunds' reliance on the public statements made in the LBO and IPO. But that argument does not take full account of the Plaintiffs' allegations and the rulings in the R and Rs and Judge Rakoff's Orders, at least with respect to certain Defendants. The trigger dates for each of the Moving Defendants will now be considered.

---

apartment for well over what they paid for it; as they profited on their investment, they suffered no damages. Similarly, in *Jung Hing Leung v Lotus Ride*, 198 A.D.2d 155, 604 N.Y.S.2d 65 (1st Dept. 1993), radio car service franchisees claimed that the franchisor misrepresented the number of franchises that would be sold and the profits that would be obtained. But again, because the plaintiffs profited on their investments, they could not complain about fraud. In this case, however, the only investment that is actionable is the post-wrong cash deposits; and SMFF did not profit from that investment, rather it was lost.

[15] See Oral Argument at 33 (Plaintiffs' counsel: "Well the first trigger date the money was zero").

*Trigger Date for Mayer Brown Defendants*

In analyzing the trigger date for the remaining claim against the Mayer Brown Defendants, the Special Master stated as follows:

> The case for substantial assistance as to the Mayer Brown Defendants is stronger than that found sufficient as to PwC, DBSI, and Credit Suisse and BAS in previous R and R's. . . . With respect to Mayer Brown, the Plaintiffs have alleged with particularity that Mayer Brown substantially assisted in *multiple* parts of the Refco Fraud — not just the LBO and IPO, but also in hiding the RGHI Receivable, negotiating and drafting the Round Trip Loans, and retaining RCM's status as an unregulated entity.
>
> . . .
>
> In this case, it has already been determined that the Plaintiffs have standing to sue for the Refco Fraud writ large — i.e., all of Refco's actions undertaken to present a false picture of financial health, until the insiders could cash out. Accordingly, all of Mayer Brown's alleged extensive activity in assisting Refco in hiding its true financial picture and allowing the insiders to cash out may properly be considered. And that assistance, as specifically alleged, more than meets the standards of substantial assistance applied multiple times in this action.
>
> As to reasonable reliance: as discussed in previous R and R's, the Plaintiffs have adequately alleged that SPhinX/PlusFunds reasonably relied on public statements regarding Refco's financial condition. For example, the Plaintiffs allege that PlusFunds' risk committee kept a "shadow rating" for Refco, reviewed public statements, and calculated guidelines to limit exposure on transactions with Refco. FAC ¶ 189. *See also* Id. at ¶723 ("SPhinX and PlusFunds' innocent decision-makers received and relied on [Refco's] financial statements and Grant Thornton's unqualified audit opinions thereupon in determining whether to allow and continue to allow SPhinX assets to be deposited at Refco and, specifically, RCM.").
>
> . . .
>
> The remaining question is, what is the date of the alleged wrongdoing that distinguishes between retention claims and deposit claims? The other professional defendants are alleged to have committed relatively discrete acts to assist the Refco Fraud, e.g., the Grant Thornton financial statements, the public financial statements reviewed by PwC concerning the LBO and the IPO, etc. Mayer Brown is in a different situation, because the Plaintiffs essentially allege that throughout a lengthy and intensive relationship, Mayer Brown assisted Refco, in a variety of ways, in hiding Refco's true financial picture. But for purposes of the motion to dismiss, it is unnecessary and in fact inappropriate to pinpoint exactly the trigger date for when Mayer Brown's assistance proximately caused SPhinX/PlusFunds to place money with Refco. That is a question of fact — as is ordinarily the case for questions of [proximate] cause. *See, e.g., In re Sept. 11 Prop. Damage & Bus.*

*Loss Litig.* 468 F.Supp.2d. 508, 531 (S.D.N.Y. 2006 ) ("the issue of proximate cause is fact-laden and inappropriate for a motion to dismiss").

Mayer Brown R and R at 9-10, 12. (Emphasis in original)

The Mayer Brown R and R thus establishes that there is a question of fact about a trigger date earlier than the LBO. There is nothing in the Moving Defendants' Rule 56.1 statement that even addresses — much less presents admissible evidence to address — the Plaintiffs' contention that the trigger date for Mayer Brown is earlier than the LBO. Moreover, Mayer Brown does not attempt to establish the amount of SMFF cash on deposit for any date before August 5, 2004, when the LBO transaction closed. Therefore, even if the Moving Defendants' net deposit theory of proximate cause is correct, a question of fact remains as to the Mayer Brown Defendants that precludes summary judgment in their favor at this point.

### *Trigger Date for Grant Thornton and Ramler*

With respect to the Grant Thornton/Ramler trigger date for aiding and abetting the Refco Fraud, the Plaintiffs contend that Refco sent customers — including PlusFunds — copies of Refco's audited financial statements before the date of the LBO.[16] That contention is supported — at least sufficiently to raise a question of fact — by the deposition testimony of Chris Rose and Tia Lowe, officials at PlusFunds.[17] The Plaintiffs further contend that Grant Thornton's audit reports on the financial statements of Refco and the unqualified audit opinions contained therein were "incorporated into Refco's financial statements and distributed to Refco's customers, including SPhinX and PlusFunds" FAC ¶ 830 — and there is nothing presented by Grant Thornton on this motion to refute that assertion. Finally the Plaintiffs present evidence that Refco LLC was required to, and did, publicly file Grant Thornton's accountant's opinions with the CFTC and the National Futures Association for the fiscal years 2003 and 2004. See Plaintiffs' Response to Rule 56.1 Statement, ¶16. None of these fact issues are tied to the dates of the LBO or the IPO.

For purposes of this narrow motion, Grant Thornton has not presented evidence to rebut the Plaintiffs' assertion and presentation that innocents at PlusFunds and SPhinX relied on audit reports attributable to Grant Thornton even before the LBO. Moreover, Grant Thornton provides no evidence of the amount of SMFF cash on deposit at any date earlier than the first public statement in connection with the LBO.

---

[16] Plaintiffs' Response in Opposition to the Moving Defendants' Rule 56.1 Statement, ¶¶ 27-28.

[17] See Rose deposition at 511-13, Ex. D to Simpson Declaration; Lowe Deposition, 239-40, 245-46, Ex. F. to Simpson Declaration.

10

Accordingly, even if the Moving Defendants are correct that the case must be dismissed if the amount of SMFF cash at Refco on the date of the earliest act of wrongdoing is greater than the $312 million on deposit in October 2005, there remain questions of fact as to 1) the date of Grant Thornton's first act of aiding and abetting on which SPhinX/PlusFunds relied, and 2) the amount of SMFF cash on deposit on that date.

*Trigger Date for PwC*

The PwC R and R establishes that it is PwC's advisory work for Refco that is the only actionable conduct for the remaining claim for aiding and abetting the Refco Fraud. See PwC R and R at 21-22. The Rule 56.1 Statement indicates that the advisory work engagement began on or about May 5, 2004. See Rule 56.1 Statement at ¶10. The Plaintiffs do not dispute this fact. Plaintiffs' Response to Rule 56.1 Statement at ¶10. Nor do the Plaintiffs dispute the fact that the balance in the accounts at Refco on that date was approximately $429 million.

The Plaintiffs read the PwC R and R to hold that there is a question of fact as to the *precise* trigger date for PwC's wrongdoing, and that the trigger date might have been before the LBO. Brief in Opposition at 5, note 5. That is true, but it is clear from the R and R that PwC's trigger date *cannot* be before its Refco advisory work began. That date has been shown to be May 5, 2004, a date on which the amount of SMFF cash on deposit exceeded the amount on deposit in October 2005.

*Trigger Dates for Credit Suisse, BAS, and DBSI*

The Plaintiffs in their Brief in Opposition concede that the trigger dates as to the remaining Moving Defendants for the claim of aiding and abetting the Refco Fraud do not pre-date the LBO.[18] The remaining claim against BAS, Credit Suisse and DBSI is that each assisted in preparing and effectuating the LBO and IPO. [19]

---

[18] *See* Plaintiffs' Brief in Opposition at 5-6.

[19] *See* Bank Defendants' R and R at 20-21:

> The Plaintiffs' factual assertions about Credit Suisse's and BAS's acts of substantial assistance — concealing Refco's financial condition, providing underwriting, financial consulting and advisory services and preparing and approving Refco's financial statements and public filings in connection with the LBO and IPO offerings — are quite similar to those alleged against DBSI.
>
> As stated in the DB R and R at 39, the Plaintiffs alleged "that DBSI affirmatively acted in assisting the Refco Fraud, specifically by providing substantial services in effectuating the LBO and participating as an underwriter in the IPO. The Complaint avers

*Retroactive Trigger Dates?*

The Plaintiffs argue that even though the alleged wrongdoing of PwC, BAS, Credit Suisse and DBSI occurred at or shortly before the LBO public statements, each Defendant is liable for all damages that were caused by any other wrongful act of any of the aiders and abetters — even if that act preceded the wrongdoing of a particular Defendant. Essentially the Plaintiffs argue that PwC, BAS, Credit Suisse, and DBSI are retroactively liable for all acts of other aiders and abetters — so that their later trigger dates don't matter, and summary judgment should therefore not be granted even if the Moving Defendants' "net deposit" theory is correct.

The Plaintiffs' dramatic theory of retroactive liability is flatly inconsistent with the law on aiding and abetting in New York and the basic premise of proximate causation — that a wrongdoer can be liable only for the injury that it had a part in causing. *See, e.g.*, *Fraternity Fund Ltd. v. Beacon Hill Mgmt., LLC,* 479 F.Supp.2d 349, 370-71 (S.D.N.Y. 2007) ("in the aiding and abetting context, a plaintiff must allege that *the defendant's* substantial assistance in the primary violation proximately caused the harm on which the primary liability is predicated.") (emphasis added); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 446 F.Supp.2d 163, 201 (S.D.N.Y. 2006) ("the plaintiff must allege that *the aiding and abetting defendant* proximately caused the harm on which the primary liability is predicated.") (emphasis added). The Plaintiffs cite *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig..,* 644 F.Supp.2d 310, 313 (S.D.N.Y. 2009), in which Judge Scheindlin stated that "each tortfeasor is responsible for the entire result, even though his act alone might not have caused it." But Judge Scheindlin noted that this rule of collective responsibility was applicable when "two or more tortfeasors act *concurrently* or in concert." Id. That statement is obviously not a basis to hold an aiding and abetting defendant responsible for damages that occurred *before* the defendant ever committed a wrongful act — "concurrent" and "retroactive" are of course two different concepts.

The Plaintiffs attempt to rely on a statement in the THL R and R, at 4, in which the Special Master rejected THL's argument that it could not be found liable for aiding and abetting the Refco Fraud because its alleged wrongdoing began at the time of the IPO — after others had already acted to aid and abet the fraud. The Special Master stated that THL could not be let off the hook simply because it was a latecomer to the fraud. But that is far from a holding that THL could be responsible for damages that occurred *before* it became involved. *See* PwC R and R at 24, n. 21 ( "It goes without saying that PwC cannot be held responsible for damages caused by the Refco Fraud before PwC was retained by Refco."). Judge Rakoff specifically rejected the Plaintiffs' interpretation of the THL R and R in his Order denying reconsideration of the PwC Order affirming the R and R. *See* Order dated February 16, 2012 at 13.

---

that DBSI participated in the preparation of, and signed off on, Refco's LBO and IPO offering materials." The Special Master concluded that the Plaintiffs had adequately alleged that DBSI's activities constituted substantial assistance of the Refco Fraud, and the acts alleged with regard to Credit Suisse and BAS meet that same standard.

Finally, the Plaintiffs have already raised the argument that an aider and abetter is jointly liable for all the wrong that occurred before it acted. *See* Memorandum of Law in Support of Motion for Reconsideration, dated November 8, 2011 (PwC). Judge Rakoff explicitly rejected the argument then, and the argument is no better now. See Memorandum Order, dated February 16, 2012, at 10-13.

Thus, there is no legal basis for holding PwC, BAS, Credit Suisse and DBSI to a trigger date on which the amount of SMFF deposits at Refco were or might have been substantially lower than they were at or just before the LBO. Accordingly, if the Court accepts the Moving Defendants' "net deposit" theory, contrary to the recommendation of the Special Master, then summary judgment should be granted in favor of PwC, BAS, Credit Suisse, and DBSI on the claims brought on behalf of SMFF.

**V. Summary Judgment on Claims Brought on Behalf of PlusFunds**

How do the prior R and Rs and affirming Orders — and the Moving Defendants' "net deposit" theory — affect the claim for damages asserted on behalf of PlusFunds? The Plaintiffs argue that even if the Moving Defendants are correct about their net deposit theory of proximate cause, it has no effect on the damages suffered by PlusFunds, because those damages "do not depend on deposits and withdrawals at RCM." Brief in Opposition at 14. The Plaintiffs are certainly correct that PlusFunds and SMFF suffered different damages — SMFF lost money deposited at Refco, while PlusFunds lost business enterprise value and incurred insolvency damages because of SMFF's losses. See FAC ¶1 (noting that the claim of damages is for "the lost business enterprise value and deepening insolvency damages suffered by SPhinX's investment manager, PlusFunds Group, Inc"). The Moving Defendants point out that SPhinX and PlusFunds — as stated in the Amended Complaint[20] — were intertwined, and that PlusFunds' damages were completely dependent on SPhinX losses.[21] The Moving Defendants claim that because, under their net deposit theory, they did not cause injury to SPhinX, they could not have caused damages to PlusFunds. That argument is, however, dependent on the net deposit theory, which has been rejected above.

But the Moving Defendants have another argument on PlusFunds and causation that has merit. They argue that their alleged attempt to conceal the Refco Fraud did not cause damage to PlusFunds because the loss of PlusFunds' enterprise value and exposure to insolvency damages would have occurred whenever the truth about Refco was disclosed. So attempts to conceal the Refco Fraud served only to delay the inevitable with respect to PlusFunds. Indeed, the Moving Defendants argue that they did PlusFunds a favor. As they put it, "the alleged delay in the

---

[20] FAC ¶¶ 13, 136, 138.

[21] *See* Standing R and R at 16 ("as SPhinX went, so went PlusFunds").

uncovering of the Refco Fraud benefitted PlusFunds by allowing it to operate successfully through the Refco LBO and IPO and up until Refco's collapse." Reply Brief at 7. See also FAC ¶¶ 4, 136 (PlusFunds received a percentage of SPhinX assets under management, which rose in 2004 and 2005).

The Moving Defendants' causation argument is correct, under the rationale employed by the Special Master in all of the R and Rs covering motions to dismiss brought by these Defendants. The ruling on causation in the prior R and Rs — affirmed time and again by Judge Rakoff — is described by Judge Rakoff in the Order Denying Reconsideration of his prior Order affirming and adopting the Special Master's recommendations regarding PwC's motion to dismiss. Judge Rakoff stated as follows:

> [E]ven if PwC had never assisted the Refco Fraud and the fraud became public before the LBO, SPhinX would have not recovered its assets then-deposited at Refco, as any recovery in bankruptcy after the inevitable run on Refco and RCM would go to their bankruptcy trustee. Followers of the Refco litigation (to whom the Court extends its sympathy) will recognize this is not a new theory of causation in this case – indeed, Special Master Capra explicitly relied on the same theory in so limiting the potential recovery of the FX customers who had previously deposited assets at RCM.

Order Denying Reconsideration at 9 (citation omitted)

Applying the ruling on causation affirmed by Judge Rakoff leads to the following result: the damages suffered by PlusFunds from the Refco Fraud would have occurred *whenever the Refco Fraud was disclosed,* as it was the disclosure — not the concealment — that led to PlusFunds' loss of enterprise value and insolvency damages. If the Moving Defendants had disclosed Refco's true financial condition, as the Plaintiffs contend they should have, PlusFunds would have lost its enterprise value and incurred insolvency damages at the time of that disclosure. It follows that PlusFunds suffered no damage from *any* of the alleged wrongful conduct of the Moving Defendants, because that conduct served only to keep PlusFunds afloat until the inevitable run on the bank, which in fact occurred.

The Plaintiffs' argument that PlusFunds and SMFF suffered different damages is correct, but the Plaintiffs draw the wrong conclusion from the premise. Under the prior R and Rs, the Plaintiffs have adequately alleged that SMFF was damaged by depositing new money at Refco in reliance on fraudulent statements issued with the assistance of the Moving Defendants. That was money that would not have been lost if Refco's financial condition had been disclosed in advance of the deposits. But PlusFunds made no such deposits, so it did not lose money because of the fraudulent statements on which the Moving Defendants assisted. PlusFunds lost value because of the primary wrong committed by Refco. The Moving Defendants, by delaying the effects of disclosure of that primary wrong, only delayed the inevitable and therefore did not proximately cause damages to PlusFunds.

***Accordingly, the Moving Defendants' Motion for Summary Judgment should be granted***

*with respect to the damage claims brought on behalf of PlusFunds.*

## VI. Conclusion

The motion for summary judgment on claims brought on behalf of SMFF should be DENIED.

The motion for summary judgment on claims brought on behalf of PlusFunds should be GRANTED.

                                                          Daniel J. Capra
                                                          Special Master

Dated: October 17, 2012
New York, New York