UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re REFCO INC. SECURITIES LITIGATION          Case No. 07-MD-1902 (JSR)
-----------------------------------------------------------------X

This Document Relates to:
-----------------------------------------------------------------X

KENNETH M. KRYS, et al.,                         :          Case No. 08-CV-3065 (JSR)
                                                 :          Case No. 08-CV-3086 (JSR)
                           Plaintiffs, :
                                                 :
              -against-                          :
                                                 :
CHRISTOPHER SUGRUE, et al.,                      :
                                                 :
                          Defendants. :
                                                 :
-----------------------------------------------------------------X

KENNETH M. KRYS, et al.,                         :          Case No. 10-CV-3594 (JSR)
                           Plaintiffs, :
                                                 :
              -against-                          :
                                                 :
DEUTSCHE BANK SECURITIES INC., et al.,           :
                                                 :
                          Defendants. :
                                                 :
-----------------------------------------------------------------X

**DEFENDANTS' LIMITED OBJECTION TO THE
REPORT AND RECOMMENDATION OF THE SPECIAL MASTER
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ..............................................................................................................................4

I.     The Prior Orders Establish That The Moving Defendants Can Be Held Liable To SMFF Only For Damages Caused By Their Alleged Substantial Assistance. .............................4

II.    During The Post-LBO Period, SMFF Withdrew More Cash From Refco Than It Deposited. ...............................................................................................................6

III.   The Special Master's R&R Departs From The Framework Of The Prior Orders In Denying Summary Judgment As To The SMFF Claim....................................................8

IV.   The Doctrine Of "Law Of The Case" Does Not Preclude Summary Judgment For The Moving Defendants............................................................................................12

V.    The Special Master Also Erred In His "Trigger Date" Analysis With Respect To The Mayer Brown And Grant Thornton Defendants. ...........................................................13

CONCLUSION........................................................................................................................16

# TABLE OF AUTHORITIES

*Abrahamson v. Fleschner*,
568 F.2d 862, 878 (2d Cir. 1977) ........................................................................... 9, 11

*Anti-Monopoly, Inc. v. Hasbro, Inc.*,
958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ............................................................. 14

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
727 F. Supp. 2d 256, 289 (S.D.N.Y. 2010) ................................................................ 10

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*,
754 F.2d 57, 62 (2d Cir. 1985) ..................................................................................... 1

*Byrnes v. Faulkner, Dawkins & Sullivan*,
550 F.2d 1303, 1313-14 (2d Cir. 1977) ..................................................................... 10

*DeWeerth v. Baldinger*,
38 F.3d 1266, 1271 (2d Cir. 1994) ............................................................................. 13

*Ernst Hass Studio, Inc. v. Palm Press, Inc.*,
164 F.3d 110, 112 (2d Cir. 1999) ............................................................................... 14

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
479 F. Supp. 2d 349, 370-71 (S.D.N.Y. 2007) ............................................................. 1

*Goenaga v. March of Dimes Birth Defects Found.*,
51 F.3d 14, 18 (2d Cir. 1995) ............................................................................... 15, 16

*In re CMED Sec. Litig.*,
No. 11 Civ. 9297, 2012 WL 1118302, *3 (S.D.N.Y. Apr. 2, 2012) ........................... 10

*In re eSpeed, Inc. Sec. Ltig.*,
232 F.R.D. 95, 101 (S.D.N.Y. 2005) ............................................................................. 9

*Lawrence E. Jaffee Pension Plan v. Household Int'l, Inc.*,
756 F. Supp. 2d 928, 935 (N.D. Ill. 2010) ................................................................. 10

*Legal Aid Soc'y v. City of N.Y.*,
114 F. Supp. 2d 204, 225 (S.D.N.Y. 2000) ................................................................ 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 586 (1986) ............................................................................................ 14

*Rolf v. Blyth Eastman Dillon & Co.*,
637 F.2d 77, 85 (2d Cir. 1980) ................................................................................. 2, 9

*SEC v. Apuzzo*,
689 F.3d  204, 212 (2d Cir. 2012) ................................................................................. 1

*Travelers Cas. & Sur. Co. v. Dormitory Authority - State of New York*,
    734 F. Supp. 2d 368, 385 (S.D.N.Y. 2010).............................................................................. 13

*Walsh v. McGee*,
    918 F. Supp. 107, 111 (S.D.N.Y. 1996)................................................................................ 13

The defendants listed below (the "Moving Defendants") respectfully submit this memorandum in support of their limited objection ("Objection") to the October 17, 2012 Report and Recommendation of the Special Master on Certain Defendants' Motion for Summary Judgment (the "R&R").[1]  The Moving Defendants object to the R&R insofar as it recommends that summary judgment be denied with respect to the claims asserted on behalf of SPhinX Managed Futures Fund SPC ("SMFF").

## PRELIMINARY STATEMENT

Under basic principles of tort law, if a defendant's alleged wrongdoing caused no harm to the plaintiff, the plaintiff cannot recover against that defendant.  *See SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012) (Rakoff, J.) (law of "proximate cause" requires "a private plaintiff, seeking compensation, to show that his injury was proximately caused by defendants' actions").  That same requirement governs in a case of aiding and abetting.  *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 370–71 (S.D.N.Y. 2007).  Thus, as the Court has held repeatedly in this litigation, Plaintiffs here must show that each Moving Defendant's alleged substantial assistance in the primary violation proximately caused the damages they seek.[2]

This rule of law compels summary judgment in the Moving Defendants' favor.  The sole remaining claim against the Moving Defendants is for aiding and abetting fraud, based on

---

[1] The Moving Defendants are:  PricewaterhouseCoopers LLP ("PwC"); Credit Suisse Securities (USA) LLC ("Credit Suisse") and Merrill Lynch, Pierce, Fenner & Smith, Incorporated, as successor-by-merger to Banc of America Securities LLC ("BAS") (the "Bank Defendants"); Deutsche Bank Securities Inc. ("DBSI"); Mayer Brown LLP, Joseph P. Collins, Paul Koury, and Edward Best (the "Mayer Brown Defendants"); and Grant Thornton LLP and Mark Ramler (the "Grant Thornton Defendants").

[2] *See* PwC R&R at 23, dated August 10, 2011 and Order adopting the same, dated October 24, 2011; Bank Defendants R&R at 22-23, dated December 8, 2011 and Order adopting the same, dated February 16, 2012; DBSI R&R at 40-42, dated November 1, 2011 and Order adopting the same, dated February 16, 2012; Mayer Brown R&R at 10-11, dated January 17, 2012 and Order adopting the same, dated March 26, 2012; Grant Thornton R&R at 16-17, dated December 16, 2011 and Order adopting the same, dated March 26, 2012.

allegations that the Moving Defendants helped Refco mask its true financial condition in public filings following Refco's August 2004 leveraged buyout ("LBO") and relating to its August 2005 initial public offering ("IPO").  Plaintiffs allege that SMFF made deposits at Refco in reliance upon these public filings—thereby putting cash at risk—and then lost that cash (or most of it) when Refco's fraud was revealed and it went into bankruptcy.  But the discovery record has unequivocally defeated that allegation.  As Plaintiffs now concede, after the false statements on which SMFF supposedly relied to make deposits at Refco, ***SMFF actually withdrew more cash than it deposited***.  If the Moving Defendants had disclosed Refco's true financial condition in connection with the LBO or in Refco's subsequent public filings—as Plaintiffs contend they should have—SMFF therefore would have suffered a far greater loss than it ultimately did following Refco's bankruptcy in October 2005.  The Moving Defendants' alleged substantial assistance thus did not harm SMFF but rather allowed it to reduce its exposure to Refco by more than $250 million—from a high-water mark of $600 million on deposit in October 2004 down to $312 million just before Refco's bankruptcy filing in October 2005.  Under these circumstances, Plaintiffs cannot possibly recover.  To rule otherwise would put Plaintiffs in "a better position than [they] would have been in had [the defendants' alleged wrongful conduct] not occurred." *Rolf v. Blyth Eastman Dillon & Co.*, 637 F.2d 77, 85 (2d Cir. 1980).

In the R&R, the Special Master correctly applied this black-letter law of causation and substantial assistance, as well as the Court's prior rulings, in recommending that the Court grant summary judgment for Moving Defendants on Plaintiffs' claim on behalf of SMFF's investment advisor, PlusFunds Group, Inc. ("PlusFunds").  He found that "PlusFunds suffered no damage from *any* of the alleged wrongful conduct of the Moving Defendants, because that conduct served only to keep PlusFunds afloat," operating successfully and profitably through Refco's

2

LBO and IPO.  R&R at 14.  In other words, he concluded that PlusFunds "did not lose money because of the fraudulent statements on which the Moving Defendants [allegedly] assisted."  *Id.*

As applied to the claims of SMFF, however, he reached a different result—a result that cannot be justified on the undisputed record presented here.  Again, Plaintiffs' theory is that SMFF made deposits, following the LBO, in reliance on "fraudulent statements on which the Moving Defendants assisted."  *Id.*  But again, during that post-LBO period of alleged reliance, ***SMFF withdrew substantially more cash from Refco than it deposited with Refco.***  As a result of the alleged concealment of the fraud in Refco's public filings, SMFF's exposure to Refco's eventual bankruptcy was greatly reduced, because SMFF had hundreds of millions of dollars less at Refco when the fraud finally came to light than it had previously.  The Special Master acknowledged as much.  R&R at 3.  Based on Plaintiffs' own allegations and the discovery record, he did not dispute that SMFF would have been ***worse off*** if the Moving Defendants had disclosed the Refco fraud in connection with the LBO or subsequent public filings.  Nevertheless, he recommended that the Court ignore SMFF's withdrawal of hundreds of millions of dollars after the LBO, declaring that these withdrawals involved "completely different" money—cash SMFF put at risk at Refco before the LBO.  R&R at 5.  The Special Master reasoned that Plaintiffs can recover only for funds deposited by SMFF ***after*** it was affected by the Moving Defendants' alleged wrongdoing, and therefore SMFF's simultaneous withdrawal of "completely different" cash deposited earlier is simply irrelevant.

That conclusion is wrong as a matter of law.  Cash is fungible, and courts have repeatedly held that cash savings that a plaintiff experiences as a result of a defendant's alleged misconduct must be offset against any losses the plaintiff suffers.  To allow SMFF's claim to proceed based on its post-LBO cash deposits while ignoring its simultaneous (and considerably larger) cash

withdrawals would contravene this well-established law and make for a trial divorced from reality.  The Special Master's report also misapplies this Court's prior orders.  This Court barred claims based on pre-LBO deposits because the Moving Defendants did nothing to cause them. This ruling limited *the Moving Defendants' liability*—nothing more.  But that does not mean that SMFF's post-LBO withdrawals should be ignored in assessing whether *SMFF's claimed injury* was caused by Moving Defendants' alleged wrongful conduct.  When both the post-LBO withdrawals and the post-LBO deposits are taken into account, it is evident that SMFF suffered no injury caused by anything the Moving Defendants did or failed to do.  To the contrary, the fact that Refco's collapse did not occur until October 2005, rather than in August 2004 (or anytime between August 2004 and October 2005), *reduced* SMFF's injury.

This is a simple motion based on undisputed facts.  The Moving Defendants' alleged misconduct caused no harm to SMFF, just as it caused no harm to PlusFunds, and thus the Defendants' summary judgment motion should be granted in full.

## ARGUMENT

### I.    The Prior Orders Establish That The Moving Defendants Can Be Held Liable To SMFF Only For Damages Caused By Their Alleged Substantial Assistance.

The fraud at issue on this motion is the "fraudulent conduct by Refco insiders in presenting a false financial picture at Refco."  Report and Recommendation as to PwC, dated August 10, 2011 ("PwC R&R"), at 17; *see also* Report and Recommendation (Primary Wrongs), dated March 1, 2010, at 25.[3]  This fraud is alleged to have begun years before the LBO and continued through October 2005, when the fraud was exposed and Refco filed for bankruptcy. Plaintiffs claim that SMFF deposited cash at, and continued to do business with, Refco in

---

[3] The Special Master has made the same rulings as to each of the Moving Defendants on most of the issues relevant to this motion, and all such R&Rs have been adopted by the Court.  *See supra* note 2.  To avoid essentially redundant citations, this Objection cites only the PwC rulings except where otherwise necessary.

reliance upon Refco's financial condition as shown by the LBO and in Refco's subsequent public filings through the IPO.  Am. Compl. ¶¶ 190-91; DBSI Compl. ¶¶ 157-58.[4]  While SMFF was able to withdraw from Refco all $312 million of its cash that it still had on deposit there shortly before the bankruptcy filing, the Refco bankruptcy estate recovered $263 million of that amount in settlement of a preference claim against SMFF, which is the amount of damages claimed by SMFF in this case.

This Court has recognized that by the time of the LBO, SMFF had already deposited hundreds of millions of dollars of cash with Refco, at a time when (according to Plaintiffs) Refco was insolvent.  Order dated February 16, 2012 (denying reconsideration of the October 24, 2011 Order adopting the PwC R&R) ("PwC Order"), at 9-10; *see id.* at 10-11 ("By the time PwC substantially assisted the Refco fraud, assets that had previously been deposited at Refco were already unrecoverable, given the insolvency of both Refco and RCM.").  The Court and the Special Master have also recognized that the Moving Defendants cannot be liable for deposits SMFF made before it was affected by any of the alleged substantial assistance.  PwC R&R at 23 ("the Plaintiffs' claims against PwC for aiding and abetting the Refco fraud should be dismissed insofar as they encompass damages for SPhinX assets held at Refco before the date of the acts allegedly committed by PwC to substantially assist the Refco fraud").  And the Court and the Special Master have recognized that a disclosure of the fraud at the time of the LBO would only have accelerated the loss of SMFF's $500 million then on deposit.  By Plaintiffs' own account, then, SMFF was "harmed by [Refco's] insolvency, but not by [Refco's] cover-up of its insolvency."  PwC R&R at 22 (quoting Private Actions Trust Report and Recommendation, dated June 3, 2010 ("PAT R&R"), at 16).  Nevertheless, in his decisions at the pleading stage,

---

[4] "Am. Compl." refers to the Amended Complaint in *Krys v. Sugrue*, No. 08 Civ. 3086 [Dkt. No. 129-2].  "DBSI Compl." refers to the complaint in *Krys v. Deutsche Bank Securities, Inc.*, No. 10 Civ. 3594 [Dkt. No. 34].

the Special Master left open the possibility that SMFF might have incurred "damages sustained by placing SMFF funds with Refco after the date of [defendants'] concealment of the Refco fraud." PwC R&R at 24. The question was left for discovery.

## II.    During The Post-LBO Period, SMFF Withdrew More Cash From Refco Than It Deposited.

Discovery has now provided the answer. SMFF did ***not*** incur damages "by placing SMFF funds with Refco after the date of [defendants'] concealment of the Refco fraud" (*id.*), ***because it withdrew more money from Refco than it deposited during this time period***. SMFF had over $500 million on deposit at Refco at the time of the LBO. Under Plaintiffs' allegations, as the Special Master and the Court have concluded, there is "nothing that [SMFF] could have done at that point to get [its] money back." PwC R&R at 22 (quoting PAT R&R at 16). After the LBO, SMFF's balances at Refco ***declined*** significantly, so that it was exposed to $312 million in losses—rather than over $500 million—by the time of Refco's bankruptcy. The alleged concealment of the Refco fraud during the post-LBO period thus did not cause SMFF's already existing exposure to Refco to ***increase***, but rather allowed SMFF to ***reduce*** its losses by hundreds of millions of dollars.

Plaintiffs have conceded as much. They have acknowledged that SMFF had more money on deposit at Refco at all relevant times after the LBO and before mid-October 2005 (when Refco filed for bankruptcy) and, hence, would have suffered an even greater loss had the Moving Defendants disclosed the Refco fraud at the time of the LBO. That conclusion flows from a handful of undisputed facts that were revealed during discovery and that Plaintiffs have acknowledged in their own submissions in this case:

- SMFF maintained cash in accounts at Refco (more specifically, at a Refco subsidiary, Refco Capital Markets, Ltd. ("RCM")) starting in or about December 2002.

- During all relevant timeframes leading up to SMFF's withdrawal of $312 million from Refco in mid-October 2005, SMFF withdrew more money from Refco than it deposited, so that SMFF's cash balances at Refco declined over time, including:

  ○ Between the LBO (August 5, 2004) and October 12, 2005 (decline of more than $229 million);

  ○ Between Refco's initial S-4 filing (October 12, 2004) and October 12, 2005 (decline of more than $274 million);

  ○ Between Refco's initial S-1 filing in connection with the IPO (April 8, 2005) and October 12, 2005 (decline of more than $210 million); and

  ○ Between Refco's IPO (August 10, 2005) and October 12, 2005 (decline of more than $83 million).

These facts were admitted by Plaintiffs in their response to the Moving Defendants' Rule 56.1 Statement. *See* Pls.' Response in Opp. to Defs.' Rule 56.1 Statement at 1-5; *see also* R&R at 5 n.7. That is not surprising, as they were taken directly from a putative expert report submitted by named plaintiff Kenneth Krys.

This undisputed record now compels the entry of summary judgment for the Moving Defendants. Under Plaintiffs' own allegations, had Refco's true financial condition been publicly disclosed at any of the above earlier points in time, customers "would never have done business with Refco" (Am. Compl. ¶ 220), and the same "run on the bank" resulting in Refco's bankruptcy simply would have occurred earlier. Because SMFF would have suffered an even greater loss if the Moving Defendants had disclosed (rather than allegedly concealed) the fraud at or after the time of the LBO, the Moving Defendants' alleged misconduct did not cause any loss to SMFF.[5]

---

[5] Special Master Capra asks why "it make[s] any difference," in determining if the Moving Defendants' alleged misconduct harmed SMFF, whether SMFF withdrew its pre-LBO deposits "before the LBO or a month or a year after." R&R at 6. The answer—as the Special Master himself put it—is that SMFF would not have been able to withdraw its pre-LBO deposits "a month or a year after" the LBO if the Moving Defendants had instead "disclose[d] to [Refco's] then-customers" that the company was insolvent. Rather, under Plaintiffs' own theory of the case, the same "run on the bank" at Refco that eventually transpired would simply have occurred at an earlier time, when SMFF had more money on deposit. R&R at 3 (citing PwC R&R at 22).

**III.     The Special Master's R&R Departs From The Framework Of The Prior Orders In Denying Summary Judgment As To The SMFF Claim.**

Instead of simply viewing the steady decline of SMFF's assets at Refco as reducing SMFF's exposure to the Refco fraud, the Special Master adopted an intricate theory offered by Plaintiffs that focuses solely on post-LBO deposits and ignores post-LBO withdrawals.  In particular, the Special Master concluded that the SMFF cash balance at Refco at the time of the LBO reflected "completely different" cash from the cash deposited afterward.

> [T]he only point of reference for assessing damages in light of the prior rulings is the deposits that were made after the Defendants' respective wrongdoing.  Thus the Plaintiffs are correct when they state that '[b]ecause pre-LBO funds are not recoverable in the first place, withdrawal of those funds from RCM (at whatever time) cannot affect' the damages suffered by SMFF.

R&R at 5.

Respectfully, the Special Master's recommendation is inconsistent with his prior reports and recommendations, the framework adopted by the Court, and—most importantly—the law of damages and proximate cause.  Under Plaintiffs' own allegations—as understood by this Court— "the [Refco] fraud was [already] accomplished" as to all pre-LBO deposits by the time the Moving Defendants' alleged substantial assistance had any effect on SMFF.  PwC Order at 10-11 ("By the time PwC substantially assisted the Refco fraud, assets that had previously been deposited at Refco were already unrecoverable, given the insolvency of both Refco and RCM.  Nothing PwC did or did not do would have prevented SPhinX and similarly situated customers from losing their assets.").  Accordingly, the Moving Defendants can be liable only for damages (if any) caused by their subsequent, alleged assistance in concealing the fraud in the LBO-related public filings.  But that does not mean that the assets exposed to Refco before the aiding and abetting period are "out of the case" for purposes of assessing whether the Moving Defendants

caused SMFF to incur any losses.  Rather, they represent a baseline.  The question is what damages can be attributed to the Defendants' actions *during the aiding and abetting period*? *See Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 637 F.2d 77, 81 (2d Cir. 1980) (instructing district court on remand "first, to determine as near as possible the time when [the defendant] began to aid and abet [the primary violator's ongoing] fraud and compute the market value of [plaintiff]'s portfolio on that date, and second, to subtract from this market value figure the value of the portfolio when [the defendant]'s participation ceased, thereby ascertaining [the customer]'s 'gross economic loss' *during the aiding and abetting period*" (emphasis added)).  The answer is that no damages can be attributable to the Moving Defendants because SMFF's balances at Refco decreased after the LBO and, accordingly, the Moving Defendants' alleged acts of aiding and abetting did not cause SMFF to suffer any injury.  In fact, the Moving Defendants' alleged failure to disclose the Refco fraud enabled SMFF to avoid substantial, additional losses by allowing SMFF to reduce its deposits at Refco by hundreds of millions of dollars.

The Special Master cites no precedent to support his decision to ignore SMFF's post-LBO withdrawals of funds from Refco, and his conclusion turns the law of proximate cause on its head.  Courts have long recognized that allegedly fraudulent acts can result in offsetting benefits that reduce or even eliminate altogether any injury.  *See, e.g.*, *Abrahamson v. Fleschner*, 568 F.2d 862, 878 (2d Cir. 1977) (a plaintiff may not "recover for losses, but ignore his profits, where both result from a single wrong"); *see also In re eSpeed, Inc. Sec. Ltig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (preferring "last in, first out" (LIFO) method of accounting to determine losses suffered by a lead securities class plaintiff because "it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price") (cited by Plaintiffs in their Memorandum of Law in Opposition to Motions for Summary Judgment,

dated August 23, 2012, at 11, n.7); *Lawrence E. Jaffee Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 935 (N.D. Ill. 2010) ("plaintiffs' losses must be netted against any of their profits attributable to the same fraud") (citing decisions in the Second, Fifth, Ninth, and Tenth Circuit); *In re CMED Sec. Litig.*, No. 11 Civ. 9297,  2012 WL 1118302, *3 (S.D.N.Y. Apr. 2, 2012) (observing that courts in the SDNY "have a very strong preference for the LIFO method in calculating loss.").  Indeed, the Second Circuit has for years applied this same principle in the context of an action for breach of contract, and courts in fraud cases often rely on decisions from contract cases in support of the principle of netting.  *See, e.g.*, *Byrnes v. Faulkner, Dawkins & Sullivan*, 550 F.2d 1303, 1313-14 (2d Cir. 1977) (affirming summary judgment where facts demonstrated that "far from suffering a proximate loss from the acts" of the counterparty, claimant "was benefitted overall by them"), *cited in Jaffe*, 756 F. Supp. 2d at 935; *see also Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 727 F. Supp. 2d 256, 289 (S.D.N.Y. 2010) ("if a victim derives a benefit from the breaching party's breach of contract, the breaching party only is responsible for the victim's net loss").

By ruling that SMFF's post-LBO deposits with Refco increased its damages despite SMFF's much larger post-LBO withdrawals, the R&R disregards this settled rule of law.  All of the deposits and withdrawals at issue on this motion were made by a single Refco customer—SMFF—and the assets deposited and withdrawn, both pre- and post-LBO, were fungible, *i.e.*, cash.  There is therefore no basis to analyze causation as if the pre- and post-LBO deposits and withdrawals were made by different customers or were of different kinds of assets, such that it is necessary to trace each withdrawal to a corresponding deposit.  *See* R&R at 7 n.13 (the necessary consequence of accepting Plaintiffs' theory is that, at trial, Plaintiffs must "establish the amount of SMFF cash that was 1) deposited with Refco *after* the date of each respective Defendants'

wrongdoing and 2) not withdrawn before October 2005").  Issues of standing, injury and proximate cause are determined on a plaintiff-by-plaintiff basis, not on a pile-of-cash-by-pile-of-cash basis.

In the R&R, the Special Master posits a hypothetical that he says illustrates the supposed "fallacy" of Moving Defendants' argument.  R&R at 6.  He notes that a defendant who defrauds an investor into making an investment that suffers a loss, while at the same time induces the investor to make a different, fraud-free investment that earns a profit, is not entitled to offset the investor's damages from the fraud-induced investment by the profits earned in the fraud-free one.  *Id.*  But that is because, in the hypothetical, the losses and gains do not "result from a single wrong," *Abrahamson*, 568 F.2d at 878, but rather result from two separate acts—defrauding the investor into investing in company A and inducing investment in fraud-free company B.  Here, in contrast, the same alleged wrong that supposedly caused SMFF's losses—the Moving Defendants' alleged concealment of the Refco fraud—resulted in an offsetting gain (SMFF's ability to reduce its exposure to Refco).

The Special Master also refers to a hypothetical scenario in which half of SMFF's post-LBO deposits were not transferred to unsegregated accounts at RCM, but instead remained in segregated accounts at Refco LLC.  R&R at 6.  He suggests that the Moving Defendants would argue that the cash protected at Refco LLC should be offset against the cash lost at RCM, such that no damages exist.  But that argument would make no sense.  The money at Refco LLC would have been protected regardless of whether the Moving Defendants disclosed or concealed the Refco fraud, and therefore the Moving Defendants would not be entitled to offset the LLC funds against any losses at RCM.  The simple fact of the matter is that, under the actual facts conceded by Plaintiffs, for every $100 of "new money" (cash) that SMFF "placed" at Refco in

11

supposed reliance on the statements the Moving Defendants allegedly aided, *it withdrew $161*.

SMFF was thus not injured at all by the Moving Defendants' alleged misconduct.  The Moving

Defendants are, therefore, entitled to summary judgment because their alleged assistance did not

cause, let alone proximately cause, any injury to SMFF.

## IV.    The Doctrine Of "Law Of The Case" Does Not Preclude Summary Judgment For The Moving Defendants.

The Special Master cites the doctrine of "law of the case" as an additional basis to deny

summary judgment as to SMFF's claims, concluding that "Judge Rakoff of necessity rejected

these arguments when he affirmed and adopted the Special Master's recommendations that the

counts for aiding and abetting the Refco Fraud be allowed to go forward."  R&R at 7.  But

nothing in the record establishes that the Court rejected the causation arguments underlying the

current motion.  The Moving Defendants did not raise those arguments in their motions to

dismiss, and, as a consequence, the Special Master did not address them in the R&Rs on those

motions, or in any other R&Rs.  It therefore was not "necessary" for the Court to address the

causation arguments in its rulings on the motions to dismiss.

Although certain of the Moving Defendants raised the causation arguments in their

objections to the aiding-and-abetting R&Rs, the Court never expressly addressed the arguments

in its rulings on those R&Rs, simply stating that it adopted the R&Rs in full.  Indeed, in one such

opinion, the Court suggested that it would not consider an argument that had not been presented

to the Special Master in the first instance, and it rejected Plaintiffs' attempt to raise a new issue

in their brief in response to the R&R.  Order dated October 24, 2011, at 1-2 n.1 (noting that "the

entire purpose of the Court appointing not one, but two Special Masters in this case . . . would be

for naught if the parties could simply introduce new evidence and raise new arguments to this

Court that were not fairly presented first to the Special Masters").  The doctrine of law of the

case does not apply to arguments, like the ones at issue here, that were not decided "either expressly or by necessary implication."  *DeWeerth v. Baldinger*, 38 F.3d 1266, 1271 (2d Cir. 1994); *see also Legal Aid Soc'y v. City of N.Y.,* 114 F. Supp. 2d 204, 225 (S.D.N.Y. 2000) ("New York courts have repeatedly held that where an earlier appellate ruling is silent on an issue, and resolution of the issue was not necessary to reach the result of the ruling, the law of the case doctrine is inapplicable"); *Walsh v. McGee,* 918 F. Supp. 107, 111 (S.D.N.Y. 1996) ("It is important to note that . . .  questions that have not been decided do not become law of the case merely because they could have been decided.") (internal citations and quotation marks omitted).

In any event, the thin allegations of the complaints against which the prior arguments were made have been supplanted by a robust record detailing SMFF's exact balances at all relevant points, eliminating any possibility that SMFF's exposure to Refco increased during the aiding and abetting period.  "Summary judgment is warranted where—whatever the abstract sufficiency of the complaint under Rule 12(b)(6) standards—the party opposing summary judgment cannot demonstrate that 'a genuine issue for trial' exists even after all reasonable factual inferences and ambiguities are resolved in its favor."  *Travelers Cas. & Sur. Co. v. Dormitory Authority – State of N.Y.*, 734 F. Supp. 2d 368, 385 (S.D.N.Y. 2010).

## V.     The Special Master Also Erred In His "Trigger Date" Analysis With Respect To The Mayer Brown And Grant Thornton Defendants.

The Special Master also erred in distinguishing the Mayer Brown and Grant Thornton Defendants from the other Moving Defendants based on the dates of the defendants' alleged wrongdoing.  *See* R&R at 8-11.[6]  The summary judgment record clearly shows that the "trigger

---

[6] This Section of the Objection is made only by the Mayer Brown Defendants and Grant Thornton Defendants (collectively, the "Mayer Brown and Grant Thornton Defendants").  The remaining Moving Defendants do not object for present purposes to the R&R's analysis of the "trigger date" applicable to them, which, would require entry of summary judgment in their favor if the Court disagrees with the Special Master's recommendation on causation.  R&R at 13.

date" for the Mayer Brown and Grant Thornton Defendants is no earlier than the date of the
LBO, just as it is for the other Moving Defendants.

As the Court's prior rulings reflect, "trigger date" refers to the date when the defendants'
alleged assistance in Refco's fraud first "proximately caused [SMFF] to place money with
Refco." Mayer Brown R&R at 12 (Jan. 17, 2012), *adopted* March 26, 2012. Yet according to
Plaintiffs' summary judgment papers, SMFF "place[d] money with Refco" in reliance on
Refco's false financial statements (if at all) only ***after August 5, 2004***. *See* Pls.' Mem. at 19, 20.
And in that post-LBO period, of course, SMFF was making even larger withdrawals. Defs.'
Rule 56.1 Statement ¶¶ 16-23; *see supra* at §§ I-IV. Plaintiffs' summary judgment brief and
Rule 56.1 submission do nothing to show that SMFF increased its cash balances ***before*** the LBO
in reliance on any false, pre-LBO Refco statement that allegedly was aided by Mayer Brown and
Grant Thornton.

On this issue, the R&R effectively reverses the burdens imposed by Rule 56. At
summary judgment, it is the non-moving party's duty to cite "particular parts or materials in the
record" to show that "a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c); *see Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party may not rely on the
court "to scour the record, research any legal theory that comes to mind, and serve generally as
an advocate for [the party]." See *Ernst Hass Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112
(2d Cir. 1999); *see also Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11
(S.D.N.Y. 1997) ("[F]ailure to provide argument on a point at issue constitutes abandonment of
the issue."). Accordingly, once the Mayer Brown and Grant Thornton Defendants made their
position clear (*i.e.,* Defs.' Mem. at 12-13; Defs.' Rule 56.1 Statement ¶¶ 16-23), Plaintiffs had
the burden to respond, presenting facts sufficient to support a jury verdict in their favor.

They did not do so.  They presented no facts at all showing that SMFF increased its cash on deposit with Refco before the LBO in reliance on any pre-LBO financial statements.  At most, Plaintiffs' Rule 56.1 statement lists testimony suggesting that at undefined points in time—perhaps before the LBO, perhaps not—one or more PlusFunds employees saw financial information about Refco.  *See* Pls.' Add'l Facts  ¶¶ 25-28; Pls.' Mem. at 18-19.[7]  But critically, even after reciting those facts, Plaintiffs concluded only that SMFF made deposits "***after August 5, 2004***," the date of the LBO.  *Id.* at 19 (emphasis added); *see also id.* at 21; Pls.' Add'l Facts ¶ 34.[8]

The R&R's analysis improperly faults the Mayer Brown and Grant Thornton Defendants for the lack of pre-LBO evidence in the summary judgment record.  *See* R&R at 10 ("Mayer Brown does not attempt to establish the amount of SMFF cash on deposit for any date before August 5, 2004, when the LBO transaction closed."); *id.* ("Grant Thornton provides no evidence of the amount of SMFF cash on deposit at any date earlier than the first public statement in connection with the LBO."); *see also, e.g.*, *id.* (faulting Grant Thornton for failing to "refute" allegations in ¶ 830 of Plaintiffs' complaint, even though Plaintiffs made no attempt to prove up those complaint allegations in their summary judgment submissions).  That is not how Federal Rule 56 works.  To avoid summary judgment, the burden fell to Plaintiffs "to come forward with evidence that would be sufficient to support a jury verdict in [their] favor."  *Goenaga v. March*

---

[7]   Whether these facts are sufficient to show reliance is an issue for another day.  The current motion is a narrow one, addressed only to the issue of whether Plaintiffs can show losses proximately caused by the alleged aiding and abetting of the Moving Defendants, in view of the fact that SMFF withdrew more after the LBO than it deposited.  If necessary, the defendants will separately seek summary judgment on the ground that there is no sufficient evidence that SMFF (or PlusFunds) reasonably relied on Refco's audited financial statements or public filings.  But as the Special Master correctly noted, that issue has not been briefed and is not currently before the Court.  *See* R&R at 5 n.6.

[8]  Although the opposition brief noted in a footnote that these defendants were retained by Refco before the LBO (Pls.' Mem. at 5 n.5), Plaintiffs did not argue that this pre-LBO work aided and abetted any false, pre-LBO statements that induced SMFF to make pre-LBO deposits.  This footnote also has no evidentiary support in Plaintiffs' submission under Rule 56.1.

*of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  Rule 56 did not permit Plaintiffs to ignore this responsibility or to shift it on to the Special Master, and it certainly does not permit the Special Master to shift it again to the defendants.

Plaintiffs are not entitled to empanel a federal jury to adjudicate claims for which they have presented no evidence.  For the Mayer Brown and Grant Thornton defendants—just like all the others—Plaintiffs' claims should be rejected as a matter of law.

## CONCLUSION

For the reasons set forth herein, the Moving Defendants respectfully request that the Court grant summary judgment in their favor under Rule 56 of the Federal Rules of Civil Procedure on Plaintiffs' claim that SMFF was injured by the Moving Defendants' alleged substantial assistance in the Refco fraud:  Count XVII of the Complaint as to PwC, the Mayer Brown Defendants and the Grant Thornton Defendants; Count XXII as to Credit Suisse and BAS; and Count IV of the Deutsche Bank Securities Inc. Complaint as to DBSI.

Dated: New York, New York
November 9, 2012

**KING & SPALDING LLP**

By:   /s/ James J. Capra, Jr.
James J. Capra, Jr.
James P. Cusick
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2100

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP*

16

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**


By:    /s/ Philip D. Anker
        Philip D. Anker
        Peter J. Macdonald
        Jeremy S. Winer
        Ross E. Firsenbaum
        7 World Trade Center
        250 Greenwich Street
        New York, New York 10007
        Tel: (212) 230-8800

*Attorneys for Defendants Credit Suisse Securities (USA) LLC and Merrill Lynch, Pierce, Fenner & Smith, Incorporated, as successor-by-merger to Banc of America Securities LLC*


**LINKLATERS LLP**


By:    /s/ James R. Warnot, Jr.
        James R. Warnot, Jr.
        Ruth E. Harlow
        Robert H. Bell
        1345 Avenue of the Americas
        New York, New York 10105
        Tel: (212) 903-9000

*Attorneys for Defendant Deutsche Bank Securities Inc.*

17

**WILLIAMS & CONNOLLY LLP**


By:   /s/ Craig D. Singer
      John K. Villa
      George A. Borden
      Craig D. Singer
      725 Twelfth Street, NW
      Washington, DC 20005
      Tel: (202) 434-5000

      *Attorneys for Defendants Mayer Brown LLP*
      *and Edward S. Best*


**COOLEY LLP**


By:   /s/ William J. Schwartz
      William J. Schwartz
      Jonathan P. Bach
      Reed A. Smith
      1114 Avenue of the Americas
      New York, NY 10036-7798
      Tel: (212) 479-6000

      *Attorneys for Defendant Joseph P. Collins*


**CLAYMAN & ROSENBERG**


By:   /s/ Charles E. Clayman
      Charles E. Clayman
      305 Madison Avenue, Suite 1301
      New York, NY 10165
      Tel: (212) 922-1080

      *Attorneys for Defendant Paul Koury*

**WINSTON & STRAWN LLP**


By:  /s/ Linda T. Coberly
      Linda T. Coberly
      Bruce R. Braun
      Catherine W. Joyce
      David J. Doyle
      35 W. Wacker Drive
      Chicago, Illinois 60601
      Tel: (312) 558-5600
      Fax: (312) 558-5700

      Luke A. Connelly
      200 Park Avenue
      New York, New York 10166
      Ph: (212) 294-6700
      Fax: (212) 294-4700

      *Attorneys for Defendants*
      *Grant Thornton LLP and Mark Ramler*

19