UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re REFCO INC. SECURITIES LITIGATION : | Case No. 07-MD-1902 (JSR) |
| This Document Relates to: | |
| KENNETH M. KRYS, et al., Plaintiffs, -against- CHRISTOPHER SUGRUE, et al., Defendants. | Case No. 08-CV-3065 (JSR)<br>Case No. 08-CV-3086 (JSR) |

**THE MAYER BROWN AND GRANT THORNTON DEFENDANTS' RESPONSE TO PLAINTIFFS' LIMITED OBJECTION TO THE REPORT AND RECOMMENDATION OF THE SPECIAL MASTER ON CERTAIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....... 1

ARGUMENT ....... 3

I. Based on Plaintiffs' own admissions, the Special Master correctly found that PlusFunds was not harmed by any alleged aiding and abetting after it chose to do business with Refco. ....... 3

II. There is no evidence that PlusFunds was harmed by alleged aiding and abetting before December 2002, when SMFF first deposited funds with Refco. ....... 7

A. There is no evidence that at any point in 2002 or earlier, PlusFunds relied on any false statement by Refco. ....... 9

B. For the Grant Thornton Defendants, the alleged wrongdoing begins with Grant Thornton's 2003 audit opinion and does not reach back to 2002. ....... 10

CONCLUSION ....... 11

## TABLE OF AUTHORITIES

### CASES

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir. 1985) ....................8

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349 (S.D.N.Y. 2007) ....................8

*SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012) (Rakoff, J.) ....................8

*Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co.*, 883 N.Y.S.2d 486 (1st Dep't, App. Div. 2009) ....................8

*Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304 (2d Cir. 1994) ....................7

### DOCKETED CASES

*Krys v. Sugrue,* Memorandum Order denying Reconsideration as to PricewaterhouseCoopers (Feb. 16, 2012) ....................3, 4

*Krys v. Sugrue,* Report and Recommendation on Certain Defendants' Motion for Summary Judgment (Oct. 17, 2012) .................... passim

*Krys v. Sugrue,* Report & Recommendation on Motions To Dismiss Brought by Bank Defendants' Motion To Dismiss (Dec. 8, 2011), *adopted* Feb. 16, 2012 ....................3

*Krys v. Sugrue,* Report & Recommendation on Deutsche Bank Defendants' Motion To Dismiss (Nov. 1, 2011), *adopted* Feb. 16, 2012 ....................3

*Krys v. Sugrue,* Report & Recommendation on Motions To Dismiss Brought by Grant Thornton LLP and Mark Ramler (Dec. 16, 2011), *adopted* Mar. 26, 2012 ....................3, 8, 10

*Krys v. Sugrue,* Report & Recommendation on Motion To Dismiss Brought by the Mayer Brown Defendants (Jan. 17, 2012), *adopted* Mar. 24, 2012 ....................3, 8

*Krys v. Sugrue,* Report & Recommendation on Motions To Dismiss Brought by Defendants PricewaterhouseCoopers and Mari Ferris (Aug. 10, 2011), *adopted* Oct. 24, 2011 ....................3

*Krys v. Sugrue,* Report & Recommendation on the Omnibus Issue of Primary Violations by Refco (Mar. 1, 2010), *adopted* May 3, 2011 ....................8

*Krys v. Sugrue,* Report & Recommendation on the Omnibus Issue of Standing (Feb. 3, 2010), *adopted* Mar. 31, 2010 ....................2, 4

## PRELIMINARY STATEMENT

The gist of Plaintiffs' objection seems to be that the Special Master's Report and Recommendation ("R&R") "sandbagged" them by recommending that this Court grant summary judgment on the claims of PlusFunds. Pls.' Obj. at 11 (Dkt. No. 819). This is specious; there was no unfair surprise. Plaintiffs always understood that the motion for summary judgment encompassed the claim by PlusFunds, so they cannot complain that they were deprived of the opportunity to present evidence on that issue. *See* Pls.' Mem. in Opp. to SJ at 14–16 (Dkt. No. 788) (addressing PlusFunds issues); Moving Defs.' Mem. in Supp. of SJ at 10–12 (Dkt. No. 773) (making arguments as to both SMFF and PlusFunds). Even now, Plaintiffs still have not identified a single piece of evidence to create a genuine issue of fact about whether any of the Moving Defendants' alleged aiding and abetting caused PlusFunds any harm. Such evidence simply does not exist.

Plaintiffs' objection also ignores their own admissions, which gave the Special Master no choice but to rule against them. From the beginning, Plaintiffs have admitted that PlusFunds and SMFF were "intertwined." *See* Am. Compl. ¶ 138. SPhinX management fees constituted the overwhelming majority of PlusFunds' revenues. *Id.* ¶ 136. These fees "increased steadily" from late 2002 through 2005, along with SPhinX's Assets Under Management ("AUM"). *Id.* ¶¶ 4, 131. In October 2005, when the disclosure of the Refco fraud was followed by "[a] flood of redemptions by SPhinX's investors," the inevitable "sharp decline" in PlusFunds' fee revenue drove it out of business. *Id.* ¶¶ 12–13. But there is no evidence that the continuation of the Refco fraud through October 2005 left PlusFunds any worse off that it would have been otherwise. To the contrary, the longer the fraud continued and remained undisclosed, the more fees PlusFunds earned, and the more value it accumulated.

To be sure, the Special Master found that SMFF could proceed with a claim for lost deposits because of the particular relationship between its deposits and its withdrawals over time. But even if that result stands (and it should not, for the reasons stated in the Moving Defendants' Limited Objection), it cannot save the claim by PlusFunds. As this Court has recognized, "PlusFunds is not claiming the same damages as SPhinX. Rather, it claims lost business enterprise value, distinct from the loss of the funds in SMFF." Report & Recommendation on the Omnibus Issue of Standing ("Standing R&R") at 16 (Feb. 3, 2010), *adopted* Mar. 31, 2010. And by that measure, there is no evidence—***none***—that the continuation and nondisclosure of the fraud through October 2005 was a harm to PlusFunds, rather than a benefit.

Plaintiffs cannot avoid this result by arguing that PlusFunds' claim against the Mayer Brown and Grant Thornton Defendants is really about aiding and abetting in 2002 or earlier, "***before*** SMFF placed a single dollar at Refco and therefore ***before*** SMFF became exposed to Refco's insolvency." Pls.' Obj. at 3.[1] This argument fails for a simple reason: Plaintiffs have no claim against these defendants based on SMFF's initial deposits with Refco. Plaintiffs have not pointed to a shred of evidence showing that in 2002, before the first deposits, PlusFunds reviewed and relied on any fraudulent statements by Refco that were aided and abetted by these defendants. All of the supposed "reliance" evidence—such as it is—arises in 2003 or later. *See* Pls' Mem. in Opp. to SJ at 16–21 (cataloging "reliance" evidence); Pls.' Obj. at 4 (same). And without reliance on a fraudulent statement aided and abetted by the defendant, there can be no liability for aiding and abetting fraud. *See, e.g.*, R&R at 11.

[1] The "Mayer Brown and Grant Thornton Defendants" are Mayer Brown LLP, Joseph P. Collins, Paul Koury, and Edward S. Best (collectively, the "Mayer Brown Defendants") and Grant Thornton LLP and Mark Ramler (collectively, the "Grant Thornton Defendants").

Furthermore, even if Plaintiffs could overcome this problem, PlusFunds would still have no claim against Grant Thornton or Mark Ramler for anything that occurred in 2002, before Grant Thornton came on the scene. As this Court has held, "the first act properly alleged as GT's and Ramler's substantial assistance" is "GT's issuance of its first clean auditing opinion" in 2003. Report & Recommendation on Motions To Dismiss Brought by Grant Thornton LLP and Mark Ramler ("GT R&R") at 17 (Dec. 16, 2011), *adopted* Mar. 26, 2012. Thus, for Grant Thornton and Mark Ramler, Plaintiffs cannot possibly recover based on anything that happened in 2002.

For all these reasons, the Special Master's recommendation with respect to the PlusFunds claims should be adopted in full, with respect to ***all*** the Moving Defendants.

## ARGUMENT

### I. Based on Plaintiffs' own admissions, the Special Master correctly found that PlusFunds was not harmed by any alleged aiding and abetting after it chose to do business with Refco.

It is by now well-established, through numerous orders of the Court and reports and recommendations of the Special Master, that defendants cannot be liable for losses that would have occurred regardless of their conduct. *See, e.g.*, Memorandum Order denying Reconsideration as to PricewaterhouseCoopers ("PwC Order") at 9 (Feb. 16, 2012).[2] Based on that principle, the Special Master has now correctly recommended dismissing PlusFunds' claims against all the Moving Defendants. As he explained, once PlusFunds chose to do business with Refco and once SMFF's excess cash was held at RCM, PlusFunds' collapse "would have

[2] *See also* Report & Recommendation on Motions To Dismiss Brought by Defendants PricewaterhouseCoopers and Mari Ferris at 22–23 (Aug. 10, 2011), *adopted* Oct. 24, 2011; Report & Recommendation on Motions To Dismiss Brought by Bank Defendants at 22–23, (Dec. 8, 2011), *adopted* Feb. 16, 2012; Report & Recommendation on Deutsche Bank Defendants' Motion To Dismiss at 40–42 (Nov. 1, 2011), *adopted* Feb. 16, 2012; Report & Recommendation on Motion To Dismiss Brought by the Mayer Brown Defendants ("Mayer Brown R&R") at 10–11 (Jan. 17, 2012), *adopted* Mar. 24, 2012; GT R&R at 17.

occurred ***whenever the Refco Fraud was disclosed***, as it was the disclosure—not the concealment—that led to PlusFunds' loss of enterprise value and insolvency damages." R&R at 14.

This conclusion follows inevitably from Plaintiffs' own allegations. SMFF excess cash was first transferred to RCM in December 2002. *See, e.g.*, Defs.' 56.1 Statement ¶ 1 (Dkt. No. 774); Krys Rep't App. 6 (Ex. 1 to Decl. of James Capra, Dkt. No. 775). By then, according to Plaintiffs, RCM had been insolvent for four months or more. Plaintiffs have always contended that "Refco and RCM were insolvent at least as of August 2002," Am. Compl. ¶ 578, and that "customers . . . would not have entrusted or continued to entrust their assets with Refco" if they had been aware of the fraud, *id.* ¶ 743. According to Plaintiffs, therefore, a "run" on RCM was "inevitable" as soon as the Refco fraud was publicly disclosed, and any customer deposits held at RCM would not be collectible. *See* PwC Order at 9.

If the run on RCM was inevitable, so too was PlusFunds' collapse. PlusFunds was the exclusive investment manager for the SPhinX Funds, and the two companies' business operations "were intertwined." Am. Compl. ¶¶ 133, 138. In fact, because SPhinX "had no employees or physical facilities," SPhinX investors "generally communicated with PlusFunds agents." *Id.* ¶¶ 137–38. And there is no dispute that PlusFunds was financially dependent on SPhinX. For its role as investment manager, PlusFunds received management fees equal to a percentage of the SPhinX Funds' AUM. *Id.* ¶ 136. Between 95 and 97% of PlusFunds revenue derived from that source. *Id.*; Expert Report of Joan Lipton at 6 & Ex. 5 (Ex. A to Decl. of Mason Simpson, Dkt. No. 791). For these reasons, the Special Master concluded in a previous report and recommendation that "the commercial viability of PlusFunds was heavily dependent on SPhinX—***as SPhinX went, so went PlusFunds***." Standing R&R at 16 (emphasis added).

If anything, PlusFunds was unusually vulnerable to the consequences of disclosure of the Refco fraud. As the exclusive investment manager of the SPhinX funds, PlusFunds' agents were directly responsible for placing SMFF excess cash at Refco and allowing it to be transferred to RCM. *See* Sept. 14, 2012 Oral Argument before Special Master Capra at 39:21–24 ("PlusFunds had put SMFF money in [RCM], their customers' money in there, which caused the customers to disappear.") (Ex. 1 to Decl. of John Williams (filed today)); Am. Compl. ¶¶ 21, 281, 361. Plaintiffs allege that those transfers to RCM were wrongful and that PlusFunds' insiders (including Christopher Sugrue, Mark Kavanagh, and Brian Owens) knew it. *Id.* ¶¶ 21, 358, 361, 1089, 1091.

The inevitable came to pass in October 2005, when—as a result of the run on the bank at RCM—PlusFunds soon followed Refco into bankruptcy. RCM's insolvency made it impossible for RCM's customers—including SMFF—to recover deposits, and there was "[a] flood of redemptions by SPhinX's investors," and a "resulting drop in [SPhinX's] AUM." *Id.* ¶¶ 12–13. That drop necessarily led to "a sharp decline in PlusFunds' revenues" and its bankruptcy. *Id.* ¶ 13. As counsel for Plaintiffs put it during the oral argument before the Special Master, "because we couldn't get our money back, PlusFunds couldn't keep going." Sept. 14 Oral Argument Hearing Tr. at 40:18–19 (Ex. 1 to Williams Decl.).

Accordingly, once SMFF excess cash was already at RCM, any conduct by any of the Moving Defendants that allegedly aided and abetted Refco's fraud did nothing more than "delay[ ] the inevitable" for PlusFunds. R&R at 14. Indeed, if anything, that delay inured to the benefit of PlusFunds, *id.* at 13–14, as PlusFunds was able to reap millions of dollars in management fees from SPhinX during 2003, 2004, and 2005. *See* Am. Compl. ¶¶ 4, 136; Expert Report of Joan Lipton at 30 & Ex. 5 (Ex. A to Simpson Decl.).

Plaintiffs' principal response to this reasoning is to question the fairness of the Special Master's reaching this issue on the current record. *See* Pls.' Obj. at 11–13. But there was no unfairness; the Special Master's recommendation follows inexorably from Plaintiffs' own allegations and the law of the case. Plaintiffs had every opportunity to present whatever evidence they considered probative. Obviously, no such evidence exists. Even now, Plaintiffs do not point to any evidence that they presented, ***or could have presented***, that would call the Special Master's reasoning into question.[3]

Plaintiffs also argue hypothetically—because they offer no evidence to support it—that PlusFunds' collapse may not have been inevitable if there were time periods "when SMFF had relatively small deposits . . . at RCM." *Id.* at 8. But in fact, as Plaintiffs' own expert reports show, there was ***never*** a period when SMFF had only "small deposits" at RCM. The first transfer of excess cash to RCM was on December 9, 2002, and it totalled $59,810,000. *See* Krys Rep't App. 6 (Ex. 1 to Capra Decl.). The very next day, an additional $28,107,895 was transferred into the account, resulting in a total of just under $88 million. *Id.* In all, at the end of December 2002, SMFF had $88.8 million in excess cash at RCM. *Id.* At that time, the SPhinX Funds as a whole had only $377.4 million in AUM. *See* Expert Report of Joan Lipton at Ex. 3 (Ex. A to Decl. of Mason Simpson).[4] Thus, as of the end of that month, ***almost a quarter (23.5%) of SPhinX's entire AUM*** was exposed to RCM's (alleged) insolvency. That exposure is

---

[3] Plaintiffs note in a footnote that they ***now*** want an opportunity to submit evidence. *See* Pls.' Obj. at 4 n.3. It is obviously too late for that. And in any event, none of the expert reports Plaintiffs now point to call into question the inevitability of PlusFunds' collapse. Those reports devote the bulk of their analysis to the conduct of Refco's professional advisors—not to PlusFunds' own circumstances. While Mr. Breeden touches on the question of reliance, the opinion involves another group of defendants (the Bank Defendants and Deutsche Bank), and it relates only to alleged reliance in 2004 and 2005.

[4] This is the AUM as of January 1, 2003. *See id.*

a far larger percentage of SPhinX's AUM than was exposed to RCM at the time of Refco's collapse, when just 13.2% of SPhinX's AUM consisted of excess cash at RCM.[5] *Id.* And yet PlusFunds' inability to access that smaller portion of the SPhinX AUM in 2005 still led to a flood of redemptions and the collapse of PlusFunds. Had Refco collapsed at the end of December 2002, as Plaintiffs contend it would have, then almost a quarter of the SPhinX AUM would have been lost. It simply blinks reality to imagine that PlusFunds—then a much smaller company that had been soliciting investments for only six months—would have survived. *See id.* (SPhinX first received customer deposits in July 2002). And more to the point, Plaintiffs have not pointed to any facts that could possibly support such a conclusion.

## II. There is no evidence that PlusFunds was harmed by alleged aiding and abetting before December 2002, when SMFF first deposited funds with Refco.

Plaintiffs devote much of their Objection to arguing that PlusFunds might not have collapsed if the Refco fraud had been disclosed ***before December 2002***, when SMFF excess cash was first transferred to RCM. This argument fails as a matter of law. There is absolutely no evidence that in 2002 or earlier, PlusFunds ever relied on any false statement that these defendants aided and abetted.[6]

Reasonable reliance on the alleged misrepresentation is an "essential element[ ]" of a fraud claim under New York law. *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 310 (2d

---

[5] On October 1, 2005, SPhinX's AUM was 2.368 ***billion***. *See* Expert Report of Joan Lipton at Ex. 3 (Ex. A to Simpson Decl.). When Refco collapsed later that month, SMFF had $312 million in excess cash at RCM. Am. Compl. ¶¶ 11–12. The 13.2% calculation is based on these figures.

[6] The Mayer Brown and Grant Thornton Defendants disagree with Plaintiffs about whether there is any evidence of reliance at all, whether in 2003 or after Refco's LBO in 2004. But that issue is not presently before the Court. The Mayer Brown and Grant Thornton Defendants, along with the other Moving Defendants, intend to move for summary judgment on the issue of reliance in the common-issues motion identified in the Special Masters' Order dated November 14, 2012. For present purposes, it is enough that the alleged reliance does not go back to 2002, even if Plaintiffs' faulty view of the evidence were accepted.

Cir. 1994); *see also* Report & Recommendation on Omnibus Issue Primary Violations by Refco at 21 (Mar. 1, 2010), *adopted* May 3, 2011. In addition, an aiding and abetting claim requires proof of substantial assistance, which means proximate cause. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 370–71 (S.D.N.Y. 2007); *Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co.*, 883 N.Y.S.2d 486, 489 (1st Dep't, App. Div. 2009); Mayer Brown R&R at 10–11; GT R&R at 16–17; *see also SEC v. Apuzzo*, 689 F.3d 204, 212–13 (2d Cir. 2012) (Rakoff, J.) (distinguishing between SEC enforcement actions and "private tort actions" from which proximate cause element derives). It is for this reason that the Special Master also recommended in this R&R that, with respect to SMFF's claims, the defendants cannot be liable before "the date of [the defendants'] first act of aiding and abetting ***on which SPhinX/PlusFunds relied***." R&R at 11 (emphasis added); *see also id.* at 8 (observing that trigger-date analysis turns on when the Moving Defendants first "aided and abetted the Refco Fraud *to SMFF's detriment*" (emphasis added)).[7]

Accordingly, to save their PlusFunds claims against the Mayer Brown and Grant Thornton Defendants on this basis, Plaintiffs would have to show that in December 2002, PlusFunds was already relying on false statements by Refco, aided and abetted by these defendants. As discussed below, there is no evidence of such reliance.

[7] The Mayer Brown and Grant Thornton Defendants have objected to the R&R insofar as the Special Master also recommended that there was a factual dispute as to the trigger dates for these defendants based on Plaintiffs' claimed reliance in 2003. *See* Defs.' Limited Obj. to the R&R at 13–16 (Dkt. No. 821). As stated in their objection, the Special Master erred by failing to place that burden on the Plaintiffs who, having introduced into the summary judgment record the argument of PlusFunds' reliance in 2003, never identified any SMFF deposits made in reliance on a false Refco statement aided or abetted by these defendants until the LBO itself. *See id.* at 15.

**A. There is no evidence that at any point in 2002 or earlier, PlusFunds relied on any false statement by Refco.**

There is no evidence that PlusFunds agents reviewed and relied on any Refco false statements before SMFF's first deposits in 2002. To the contrary, whatever the strength of the Plaintiffs' reliance evidence more generally, *see supra* n.7, they claim only that PlusFunds and SMFF relied on allegedly false Refco information ***in 2003 or later***. *See* Pls.' Obj. at 4 (claiming reliance on Fitch rating in 2003 and on financial statements and disclosures "issued in connection with the LBO and IPO" after mid-2004). That is what Plaintiffs argued when opposing summary judgment, *see* Pls.' Mem. in Opp. to SJ at 17–19; and those are the "facts" they presented in their responsive Rule 56.1 statement, *see* Pls.' Resp. in Opp'n to the Moving Defs.' Rule 56.1 Statement ¶¶ 24–28 (Dkt. No. 643); *see also* Sept. 14 Oral Argument before Special Master Capra at 89:14–93:25 (Ex. 1 to Williams Decl.).[8] They have never pointed to one iota of proof with respect to reliance in 2002 and earlier.

Accordingly, for the claims against the Mayer Brown and Grant Thornton Defendants, it makes no difference whether PlusFunds would have been better off if it had never placed SMFF's assets at Refco. By the time PlusFunds allegedly relied on any Refco statements assisted by these defendants, SMFF was already deeply invested at RCM. SMFF's cash was thus already exposed to RCM's insolvency, and any alleged acts of aiding and abetting after that time would only have delayed PlusFunds' inevitable demise. R&R at 14.

[8] Even then, however, Plaintiffs failed to present any evidence in the summary judgment record to show that SMFF increased its cash balances at any time before the LBO in reliance on any false Refco statement that allegedly was aided and abetted by the Mayer Brown and Grant Thornton Defendants. *See* Defs.' Limited Obj. to R&R at 13–16.

### B. For the Grant Thornton Defendants, the alleged wrongdoing begins with Grant Thornton's 2003 audit opinion and does not reach back to 2002.[9]

With respect to Grant Thornton and Mark Ramler, Plaintiffs' PlusFunds argument also fails for a second reason: ***PlusFunds chose Refco for SMFF long before Grant Thornton issued its first Refco audit opinion***. Grant Thornton served as outside auditor of Refco's financial statements only "from 2003 through 2005." GT R&R at 3. It issued its first audit opinion on Refco's financial statements in spring 2003, with respect to the financial statements for the year ending February 28, 2003. *See* Am. Compl. ¶ 722. That unqualified 2003 audit opinion "is the first act properly alleged as [Grant Thornton's] and Ramler's substantial assistance." GT R&R at 17.[10]

This Court has already limited the claims in this case to those "regarding assets placed with RCM ***after*** the wrongdoing attributed to [Grant Thornton] and Ramler allegedly occurred." *Id*. (emphasis added). That necessarily means that the Grant Thornton Defendants cannot be held liable for anything that occurred in 2002. Thus, whatever its merits otherwise, Plaintiffs' argument based on a hypothetical disclosure "***before*** SMFF became exposed to Refco's insolvency" (Pls.' Obj. at 3) cannot save their claims against the Grant Thornton Defendants.

---

[9] This section of the brief is presented on behalf of the Grant Thornton Defendants only.

[10] In their fact section (though not in legal argument), Plaintiffs suggest that the Amended Complaint also refers to "unqualified audit opinions" issued before 2003 while Mark Ramler was a partner at Arthur Anderson. *See* Pls.' Obj. at 5 (citing Am. Compl. ¶¶ 725–840). This is a blatant mischaracterization. The Complaint does not contain a single reference to any audit opinion issued by Arthur Andersen. As this Court has already recognized, "GT's issuance of its first clean auditing opinion" is "the first act properly alleged as GT's and Ramler's substantial assistance." GT R&R at 17. Many months ago, while the pleadings and discovery were still open, Plaintiffs had the opportunity to make a motion before the Special Master for leave to amend their complaint in this respect, but they declined to do so. *See* March 26, 2012 Order (any argument in support of a request for leave to amend must be presented to the Special Master in the first instance).

## CONCLUSION

For all these reasons, this Court should adopt the Special Master's recommendation with respect to PlusFunds' claims and should enter summary judgment on those claims in favor of all the Moving Defendants.

**Dated: Washington, DC**
**November 27, 2012**

**WILLIAMS & CONNOLLY LLP**

By: /s/ Craig D. Singer
John K. Villa
George A. Borden
Craig D. Singer
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000

*Attorneys for Defendants Mayer Brown LLP and Edward S. Best*

**Dated: New York, New York**
**November 27, 2012**

**COOLEY LLP**

By: /s/ William J. Schwartz
William J. Schwartz
Jonathan P. Bach
Reed A. Smith
1114 Avenue of the Americas
New York, NY 10036-7798
Tel: (212) 479-6000

*Attorneys for Defendant Joseph P. Collins*

**CLAYMAN & ROSENBERG**

By: /s/ Charles E. Clayman
Charles E. Clayman
305 Madison Avenue, Suite 1301
New York, NY 10165
Tel: (212) 922-1080

*Attorneys for Defendant Paul Koury*

**WINSTON & STRAWN LLP**

By: /s/ Linda T. Coberly
Linda T. Coberly
Bruce R. Braun
Catherine W. Joyce
David J. Doyle
35 W. Wacker Drive
Chicago, Illinois 60601
Tel: (312) 558-5600
Fax: (312) 558-5700

Luke A. Connelly
200 Park Avenue
New York, New York 10166
Ph: (212) 294-6700
Fax: (212) 294-4700

*Attorneys for Defendants*
*Grant Thornton LLP and Mark Ramler*