**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                                    :
In re REFCO INC. SECURITIES LITIGATION      :         Case No. 07-md-1902 (JSR)
                                                    :
------------------------------------------------------------X

                   This Document Relates to:


------------------------------------------------------------X
KENNETH M. KRYS, et al.,                     :         Case No. 08-cv-3065 (JSR)
                                                    :         Case No. 08-cv-3086 (JSR)
Plaintiffs,                                  :
                                                    :         REPORT AND RECOMMENDATION
              -against-                      :         OF THE SPECIAL MASTER ON
                                                    :         MOTIONS  TO STRIKE CERTAIN
                                                    :         OPINIONS OF
CHRISTOPHER SUGRUE, et al.,                  :         PROPOSED EXPERTS
                                                    :         R. DAVID WALLACE
Defendants.                                  :         AND I. MICHAEL GREENBERGER
                                                    :
------------------------------------------------------------X
Daniel J. Capra, Special Master


        Defendant PricewaterhouseCoopers ("PwC") and Defendants Grant Thornton LLP ("Grant Thornton") and Mark Ramler (collectively the "Grant Thornton Defendants") move to strike certain opinions of two experts proffered by the Plaintiffs. The challenged experts are R. David Wallace and I. Michael Greenberger.  The ground for this motion is narrow. The Defendants claim that certain opinions in the expert reports of these witnesses should be struck because they are opinions about the merits of claims that have already been dismissed with prejudice. The Defendants argue that to the extent the opinions address the merits of already-dismissed claims, they would not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.[1]

        ***For the reasons discussed below, the Defendants' motions to strike the expert opinions should be granted in part and denied in part.***[2]

_____

        [1] The Defendants have reserved their right to challenge these experts' opinions on other grounds, such as that they are speculative, conclusory, or otherwise unhelpful.

        [2] The Special Master has previously issued more than two dozen R and R's in the Refco matter. Some of these R and R's will be referred to herein. Abbreviations used in the prior R and

1

## I. Background

In order to determine whether expert opinions should be struck on the ground that they are targeted toward dismissed claims, it will help to describe which claims against these Defendants remain and which have been dismissed.

### A. Remaining Claims

At this point in this protracted litigation, there is only one remaining claim against each of these Defendants.

#### *As to PwC:*

In the PwC R and R, affirmed by Judge Rakoff, the Special Master found that the Plaintiffs had adequately alleged that PwC aided and abetted the Refco Fraud. The claim that survived the motion to dismiss is stated in the Plaintiffs' First Amended Complaint as follows: "PwC gave substantial assistance by concealing the Refco fraud, advising Refco on financial matters and preparing and approving Refco's financial statements and public filings in connection with the LBO and IPO offerings." FAC ¶ 1262.

On the question of scienter necessary to support a claim for aiding and abetting fraud, the Special Master found that "the Plaintiffs have adequately alleged that PwC, through its work advising Refco on the LBO and IPO, became aware of the Refco Fraud." PwC R and R at 18. On the question of substantial assistance, the Special Master found that "the Plaintiffs have adequately alleged that PwC actively assisted in concealing the RGHI receivable  in a number of public statements, including the consolidated financial statements and public filings for the LBO and the IPO." PwC R and R at 23. The Special Master concluded that "the Plaintiffs have adequately alleged a claim against PwC for aiding and abetting the Refco Fraud, with respect to those deposits made by SPhinX/PlusFunds in Refco after the date of PwC's alleged wrongful activity." Id.[3]

#### *As to the Grant Thornton Defendants:*

In the Grant Thornton R and R —  similarly to the PwC R and R —  the Special Master found that the Plaintiffs had adequately alleged that the Grant Thornton Defendants had aided and

R's will be used herein. Familiarity with all of the R and R's — and with Judge Rakoff's orders reviewing them — is presumed.

[3] The Court, adopting the Special Master's R and R, dismissed the aiding and abetting fraud claim to the extent it sought damages for cash placed at Refco before the date of PwC's misconduct. PwC R and R at 23.

abetted the Refco Fraud. The claim that survived the motion to dismiss is stated in the Plaintiffs' First Amended Complaint as follows: The Grant Thornton Defendants issued "unqualified, clean audit opinions on Refco's fraudulent financial statements with knowledge of the Refco fraud." FAC ¶ 211.

On the scienter necessary to support a claim of aiding and abetting, the Special Master found "that the Plaintiffs have adequately alleged that GT and Ramler had knowledge of the Refco Fraud — specifically that Refco's financial condition was materially misstated to the public." Grant Thornton R and R at 6. On the question of substantial assistance, the Special Master found that the Plaintiffs adequately alleged that the clean audit opinions of Refco issued by Grant Thornton, giving a public imprimatur to materially misleading financial statements, constituted a substantial contribution to the perpetration of the Refco Fraud "because it allowed Refco to continue to do business and deceive the public until the insiders could cash out. Moreover the Plaintiffs allege that GT and Ramler — like DBSI, Credit Suisse and BAS — helped to prepare and approve statements used to effectuate the LBO and IPO, and such conduct has itself been held to be substantial assistance of the Refco Fraud." Id. at 16.

————

In sum, the remaining claims against these Defendants involve their alleged aiding and abetting the presentation of the false financial picture that Refco projected. For PwC, the relevant events are its actions in advisory work for Refco attendant to the LBO and IPO. For the Grant Thornton defendants, the relevant events are the clean audit opinions of Refco as part of the public statements used to effectuate the LBO and IPO.

**B. Dismissed Claims**

The following claims against these Defendants have been dismissed with prejudice:

***PwC:***

1. All claims relating to PwC's audits of SMFF and PlusFunds — all of which are based on allegations regarding PwC's duties with respect to the unauthorized transfer of SMFF excess cash from Refco LLC to RCM.  PwC R and R at 4-16.[4] Specifically these audit-related claims were for:

- accountant malpractice — claim dismissed because the Plaintiffs failed to plausibly allege either 1) that PwC had a duty to determine whether the assets at RCM were unprotected, or 2) that PwC in fact knew that the assets at RCM were unprotected;

_____

[4] All claims against Mari Ferris, an auditor at PwC, were dismissed with prejudice; Ferris is no longer part of this action.

● aiding and abetting the breach of Refco's fiduciary duty to retain SMFF cash in segregated accounts — claim dismissed because the Plaintiffs failed to plausibly allege that PwC knew the transfers were unauthorized;

● fraud/misrepresentation regarding the fact that SMFF excess cash was being transferred without authorization to unprotected accounts at RCM — claim dismissed because the Plaintiffs failed to plausibly allege that PwC knew the transfers were unauthorized.

2. All claims regarding the upstreaming of SMFF cash at RCM to fund Refco operations. PwC R and R at 24-30. Specifically, these upstream-related claims were for:

● aiding and abetting Refco's breach of fiduciary duty in upstreaming the SMFF cash — claim dismissed because the Plaintiffs failed to plausibly allege that PwC knew that the upstreaming was unauthorized;

● aiding and abetting Refco's conversion of SMFF's cash — claim dismissed because the Plaintiffs failed to plausible allege that PwC knew that the upstreaming was unauthorized, "as the question of authorization is a murky one based on the Margin Annex, segregation requirements, and other factors well beyond the knowledge of PWC." Id. at 28.

3. Claims regarding PwC's audits of certain Refco portfolio funds administered by RAI, insofar as that audit work could be relevant to knowledge that SMFF cash was unprotected — claim dismissed because "this is a conclusory allegation, providing no indication of how working on a portfolio fund would provide any knowledge whatsoever about the specific fact that assets of SMFF were completely unprotected at RCM." PwC R and R at 10.

### *Grant Thornton Defendants*

1. All claims regarding aiding and abetting the upstreaming of SMFF cash from RCM to fund Refco operations. Grant Thornton R and R at 17-19. Specifically, the segregation claims were for:

● aiding and abetting breach of fiduciary duty by issuing clean audit opinions — claim dismissed because the Plaintiffs "have not and cannot allege that GT/Ramler knew that Refco had a relationship of trust and confidence with SPhinX/PlusFunds that was being breached by upstreaming the assets from RCM." Id. at 18.

● aiding and abetting conversion by issuing clean audit opinions — claim dismissed because the "Plaintiffs have not, and cannot, allege that GT/Ramler knew that the upstreaming of assets from RCM was conversion. Simply knowing that customer

assets were being upstreamed is not enough to establish knowledge that the upstreaming was a conversion, as the question of authorization is a murky one based on the Margin Annex, segregation requirements, and other factors well beyond the knowledge of GT/Ramler." Id. at 19.

2. In addition, any claim regarding Grant Thornton's relationship to or involvement with the transfers from Refco LLC to RCM was dismissed. Dismissal of any such claim must be found for two reasons. First, the Plaintiffs never alleged that Grant Thornton was involved in the SPhinX Fraud. See Grant Thornton R and R at 3 ("The complaint against [the Grant Thornton Defendants] is grounded solely in the Refco Fraud. The Plaintiffs do not claim that GT or Ramler had anything to do with the unauthorized transfers of SMFF cash from protected accounts at Refco LLC to RCM.") *See also* Standing R and R at 32 (the claim remaining against the Grant Thornton Defendants implicates "only the Refco Fraud").  Second, the only claim against the Grant Thornton Defendants that was *not* dismissed was for aiding and abetting the Refco Fraud, and in the Primary Wrongs R and R at 37, affirmed by Judge Rakoff, the Special Master emphasized that any cause of action dependent on the false picture of financial health at Refco was distinct from and unrelated to any cause of action related to the violation of segregation requirements. The Special Master stated as follows:

> [T]here is no causal relationship between the violation of the segregation right and the Plaintiffs' claim for damages under the Refco Fraud. With respect to the Refco Fraud, the Plaintiffs are arguing that if they had known about Refco's financial condition, SPhinX would not have placed and held its property in accounts at Refco. *See, e.g.,* SAC ¶ 1223. That is, segregation or not, they would simply not have done business with Refco if they had known the truth. These allegations show that the claim for a right of segregation is the gravamen of the *SPhinX* Fraud, not the Refco Fraud.

## II. The Challenged Experts

### R. David Wallace

R. David Wallace is a CPA with a certification in Certified Financial Forensics. In his expert report, he opines on a number of issues,  including whether the financial statements of Refco and RCM, audited by GT,  were materially misstated; whether and when Refco and RCM were insolvent; whether GT/Ramler had knowledge of the Refco Fraud; whether GT/Ramler substantially assisted the Refco Fraud; whether PwC knew that Refco was insolvent; and whether PwC substantially assisted the Refco Fraud.

The Defendants do not, on this motion, object to Wallace's opinions on the above topics. But they do object to opinions on matters that are only pertinent to dismissed claims. Those specific

objections will be discussed below.


### I. Michael Greenberger

Greenberger is a law professor[5] and a former Director of the Division of Trading and Markets at the Commodity Futures Trading Commission. He opines among other things that SMFF was entitled to have its cash segregated at Refco LLC or wherever Refco LLC deposited those funds; and that these rights of segregation were not waived by PlusFunds.

At first glance, it might be argued that any opinion about rights of segregation is irrelevant to the remaining claims, because, as stated above, there is no causal relationship between the right of segregation and damages from the Refco Fraud. But the Defendants do not move for exclusion of all of Greenberger's opinions relating to segregation. This is because the *Defendants* have proffered experts on segregation. In the words of GT's counsel: "The defendants are raising segregation issues because they may relate to issues of causation, intervening cause."[6] Also, the Defendants have retained experts to opine that CFTC segregation requirements were not violated by the transfers of SMFF cash to unregulated accounts at RCM. *See* Markham Report at 18-24; Stulz Report at 72-83. Given the fact that the Defendants are proffering experts on segregation, the Plaintiffs are correct in asserting that it would be patently unfair to strike all of Greenberger's opinions on the right of segregation and CFTC requirements.

The Defendants, however, do not move for a blanket exclusion. Rather they assert that Greenberger's opinions should be struck only to the extent that they opine about wrongdoing by the Defendants in regard to the loss of segregation rights for the SMFF excess cash. The Defendants point out, quite correctly, that all claims of wrongdoing by these Defendants regarding the unprotected status of the cash have been dismissed with prejudice.


## III. Discussion

### A. Opinions About the Merits of Dismissed Claims

To be admissible under Fed. R.Evid. 702, an expert's testimony must "fit" the facts of the

---

[5] Which does not in itself make you an expert on anything.

[6] Transcript of Oral Argument at 118. *See also* Id. at 121 ("Whether the plaintiffs understood or believed that the money would be segregated, whether they engaged in misconduct relating to keeping the money segregated, those are issues that the defendants may, and have not yet because it's not time yet, raise as potential defenses to the claims, for example, causation.").

case. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 591 (1993). "Fit" is an aspect of relevance, and it means that an expert's testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Id.  To the extent the experts here are opining about the *merits* of dismissed claims, they fail the *Daubert* "fit" requirement for the simple reason that those merits have already been determined and are no longer relevant to the proceedings. *See, e.g., Malletier v. Dooney & Bourke, Inc.,* 525 F.Supp.2d 558, 572 (S.D.N.Y. 2007) (adopting the determination of Special Masters Barton and Capra that expert testimony concerning unrecoverable damages did not fit the facts of the case and therefore should be excluded). *See also Leverette v. Louisville Ladder Co.,* 183 F.3d 339 (5th Cir. 1999) (expert opinion on product defect did not "fit" because it was inconsistent with and disregarded the applicable state legal standards governing liability for manufacturing defects); *United States v. Kokenis,* 662 F.3d 919, 927 (7th Cir.2011) (expert's theory properly excluded where it was not applicable to any transaction still in dispute in the case); *Lichtenstein v. Triarc Companies, Inc.*, 2004 WL 1087263, at *13 (S.D.N.Y. 2004) (In an employment action, an expert who would measure the disparity in compensation between the plaintiff and male employees, to determine whether it could be ascribed to factors other than discrimination, could not be permitted to testify: "because the positions compared are not substantially equivalent as a matter of law, and because this results in dismissal of the pay disparity claim, Mr. Dorf's analysis is no longer relevant to any claim remaining in the case."); *Campbell, Jr. v. Consolidated Rail Corp.,* 2009 WL 36890, at *6 (N.D.N.Y. 2009) (ergonomics expert testifying to injuries suffered by the plaintiff at the workplace could not testify that the work required "awkward postures of the knees, as well as lifting and carrying" because the plaintiff's claim regarding injuries to his lower extremities was no longer before the court); *Pakootas v. Teck Cominco Metals, Ltd.,* 2012 WL 1833397, at *1 (E.D.Wash. 2012) (expert opinions were "rendered irrelevant as they relate to Teck's divisibility/apportionment defense which the court has dismissed as a matter of law"); *In re Vartec Telecom, Inc.*, 2009 WL 7309773 (Bkrtcy.N.D.Tex. 2009) (motion to strike expert testimony regarding a transaction was granted, where the claim on that transaction had been dismissed).

"A district court is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Amarel v. Connell,* 102 F.3d 1494, 1515 (9th Cir.1996) (internal citations and quotations omitted). Limiting the expert testimony "to issues that have not been dismissed is conducive to the conduct of a fair and orderly trial." *Moses v. Danek Medical, Inc.*, 1998 WL 34024164, at *2 (D.Nev.1998) (expert testimony on fraud and conspiracy excluded where fraud and conspiracy claims were dismissed). *See also Price v. Fox Entertainment Group, Inc.*, 499 F.Supp.2d 382, 389 (S.D.N.Y. 2007) ("Plaintiffs' expert . . . opined on striking similarity in an expert report and expert rebuttal report. Because striking similarity is no longer an issue in the case, [the expert's]  testimony on striking similarity is unnecessary, as is defendants' experts' testimony on this issue.").

The expert opinions here, to the extent they evaluate the merits of dismissed claims, are simply seeking to relitigate adverse determinations rendered by the court in this case. Such opinions may or may not be appropriate in *appealing* from the adverse determinations. But to the extent that the opinions seek reconsideration of prior rulings in the very case in which the rulings are made, they are nothing more than argument. Experts must provide something more than a lawyer's

argument to be helpful. *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 161 (2d Cir. 2012) (expert properly excluded where "her testimony would not have provided assistance to the trier of fact beyond that afforded by the arguments of counsel": "The district court did not abuse its discretion in concluding that expert analysis was not required to help the jury [where] the plaintiffs' attorneys made the same points in argument that were made in Dr. Lundquist's report."). Here, the experts in certain parts of their reports are seeking to take a step that even the lawyers cannot take, i.e., to argue directly to the factfinder that the court erred in its prior rulings in the case. Expert testimony may not "usurp the role of the trial judge." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir.1999). Although an expert "may opine on an issue of fact," an expert "may not give testimony stating ultimate legal conclusions based on those facts." *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir.1991). *Accord Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir.1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion.").[7]

This is not to suggest that facts pertinent to dismissed claims are always irrelevant to claims remaining in dispute, or that opining about such facts is *per se* unhelpful in all cases.[8] For example, in *Chin, supra,* the court, in an employment discrimination action, observed that an employer's actions outside the limitations period might be admissible as "background" evidence in support of timely discrimination claims. 685 F.3d at 150. But in order to be relevant, the claims cannot have been dismissed on the ground that the Plaintiffs have failed to even allege facts sufficient to state a cause of action. To allow a dismissed claim to be revived — in the very action in which it was dismissed — makes a mockery of the law of the case doctrine and Rule 12(b)(6). It is notable that in *Chin* the background evidence went to claims that were untimely, not claims dismissed for failure

---

[7] Some of Greenberger's opinions are especially inappropriate because he is essentially seeking reconsideration of the court's determination that the Plaintiffs could not adequately allege that PwC knew about the unauthorized transfers ---- even though Judge Rakoff has *already reconsidered* this argument made by the Plaintiffs, and rejected it, twice. See Greenberger Report at ¶¶ 135-36. There are parts of the opinions of both experts, as discussed below, that are patently unhelpful because they do nothing more than seek to relitigate final determinations of Judge Rakoff. The Plaintiffs cannot dress up an expert to do what even their lawyers cannot do.

[8] The Plaintiffs cite, with a "cf." the case of *Hamza v. Saks Fifth Ave., Inc.*, 2011 WL 6187078 (S.D.N.Y. 2011), and describe the case as one in which a motion to preclude was denied "to the extent evidence was probative of plaintiff's live claim or relevant to a defense to the claim." The ruling in *Hamza* did not provide that an expert could opine about or rely upon the allegations underlying a dismissed claim. Rather the court held that 1) evidence which the defendant argued was irrelevant to an employment discrimination claim was in fact relevant; and 2) expert testimony on damages could not be presented to the jury because those damages were to be decided by the judge — but the experts could provide relevant testimony on damages to the judge. Thus, there was nothing like a holding or even a reference to the fact that an expert could rely upon or opine about "facts" that had already been held to be inadequately alleged.

to allege facts sufficient to support a claim. It is one thing for an expert to rely on facts pertinent to non-viable claims as background; it is quite another thing for an expert to rely on, and provide opinions on, "facts" that the court has already held to be inadequately alleged and without support. So for example to allow the Plaintiffs' expert to base an opinion on — much less to conclude — that Grant Thornton or PwC knew that the excess cash transfers were unauthorized, would fly in the face of the rulings in this case that the Plaintiffs cannot establish those facts as a matter of law. If nothing else, an expert who relies on facts or assertions that are completely unsupported is not relying on "sufficient facts or data" within the meaning of Rule 702. *See, e.g., Amorgianos v. AMTRAK,* 303 F.3d 256, 266 (2d Cir. 2002) ("when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony"); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir.1999) ("[A] district court must examine the expert's conclusions in order to determine whether they could reliably follow from the *facts* known to the expert and the methodology used.") (emphasis added).

———————————

With these legal principles in mind, the Special Master will proceed to the specific claims of first PwC and then the Grant Thornton Defendants

### B. PwC Motion to Strike

#### 1. Wallace Report

PwC moves to strike all of the material from the Wallace Report on three topics: 1) PwC's audits of the financial statements of either SMFF or PlusFunds; 2) PwC's audits of the financial statements of the Refco portfolio funds (i.e., those funds managed by RAI); and 3) PwC's knowledge that the transfers from RCM to other Refco entities were wrongful. PwC points to the specific provisions relating to those subject matters, and the Special Master will address each identified provision in turn.

**a. Paragraph 4, point 12:** Here Wallace states that he has been asked to opine on whether the PwC-audited financial statements of SMFF disclosed that excess cash was being held in non-segregated accounts. But as Judge Rakoff noted in his Order denying reconsideration at 4, "even assuming that PwC had been aware that Refco had transferred SPhinX's cash from Refco LLC to Refco Capital Markets, PwC would have had no way of confirming whether the cash was segregated at either Refco LLC or RCM without auditing *Refco*." (emphasis in original; internal citation omitted).

It has already been determined that the Plaintiffs have failed to plausibly allege that PwC knew or had a duty to state in its financial statements that the excess cash was in non-segregated accounts. Wallace's attempt to revive this dead issue is not for the purpose of providing

"background" on other matters that could help the factfinder to evaluate the remaining claim for aiding and abetting the Refco Fraud. Nothing about the audit work for SMFF can be relevant to the remaining issues regarding the Refco Fraud, because if PwC did not know and had no duty to determine whether the cash was in unsegregated accounts, the simple fact of non-segregation could have no bearing on PwC's *knowledge* of the Refco Fraud. Wallace is simply attempting to tell the factfinder that PwC breached a duty which the court has held PwC did not have. Therefore, any opinion by Wallace bearing on whether PwC knew and had a duty to disclose that the SMFF cash was in unsegregated accounts is unhelpful and should be struck.

>> ***PwC's motion to strike Paragraph 4, point 12 should be granted.***

 **b. Paragraph 14, Bullet Point 7:** In this paragraph, Wallace directs himself toward a topic that remains in dispute — whether PwC knew about the Refco Fraud. As part of the basis of his conclusion that PwC had knowledge, Wallace relies on the "fact" that PwC's consulting service with Refco created a conflict of interest because PwC was, at the same time, auditing the financial statements of funds managed by RAI and was also auditing the financial statements of SMFF and PlusFunds.

 It must be remembered that the only ground for striking here is that an opinion "relates to dismissed claims." This bullet point relates to the Refco Fraud, which has not been dismissed. Wallace refers to the audits of the Refco portfolio funds, PlusFunds and SMFF, but *not* in an attempt to revive any claims regarding those audits. PwC states in its brief that the Plaintiffs' assertions regarding lack of independence and conflict of interest were rejected by the Special Master. This is so only in the context of the SPhinX Fraud, and in the context of the malpractice claim. See PwC R and R at 8, 10 n.7, and 16 n.13 (reasoning that any conflict of interest had no relevance to these claims). But there is nothing in the PwC R and R that explicitly or implicitly *dismisses* any specific claim that PwC acted subject to a conflict of interest by advising Refco while simultaneously auditing the portfolio funds, SMFF and PlusFunds.

>> ***Accordingly, PwC's motion to strike Paragraph 14, Bullet Point 7 should be denied.***

 **c. Paragraph 14, Bullet Point 8:** This paragraph, as stated above, deals with PwC's knowledge of the Refco Fraud, but the bullet point indicates that in coming to his conclusion on knowledge, Wallace relied on the "fact" that PwC "knew" that RCM was upstreaming assets to fund Refco operations and create uncollectible related party receivables.

 But it has already been determined in this action that the Plaintiffs have failed to adequately allege that PwC "knew" that the upstreaming was unauthorized or improper. See PwC R and R at 28:

> The Plaintiffs have failed to adequately allege that PwC knew that the excess cash was converted by Refco because [while]  the Refco advisory work would plausibly have given it knowledge about the transfers out of RCM, . . . there is nothing to indicate that PwC would know that those transfers were unauthorized — as the question of authorization is a murky one based on the Margin Annex, segregation requirements, and other factors well beyond the knowledge of PwC . . .

Wallace's reliance on a bald assertion that PwC "knew" about improper upstreaming flies in the face of the previous ruling to the contrary in this case and therefore any reliance on it cannot be helpful to any determination about PwC's knowledge about the Refco Fraud. Put another way, because it has been held that the Plaintiffs have not and cannot allege that the "fact" of knowledge exists, it cannot be the kind of "facts or data" on which the Rule 702 requirement of sufficiency depends. *See, e.g., James v. Harris County,* 577 F.3d 612 (5th Cir. 2009) (testimony not grounded in facts properly excluded under Rule 702).

> ***PwC's motion to strike Paragraph 14, Bullet Point 8 should be granted.***

**d. Paragraph 14, Bullet Point 10:** This paragraph, as stated above, deals with PwC's knowledge of the Refco Fraud.  The bullet point indicates that Wallace's conclusion is based in part on the "fact" that PwC "knew" that customer-segregated funds disclosed in the financial statements included in the LBO and SEC filings did not include SMFF's excess cash held at RCM.

It is true, as stated above, that any claim that PwC knew — as a result of its audit work — about transfers to unsegregated accounts has been dismissed and cannot be revived by an expert. But the assertion here is different. Wallace is relying on the "fact" that in its advisory work, PwC became aware that a public statement did not accurately describe the cash at RCM as being unprotected. According to the Plaintiffs, an amendment to *Refco's* consolidated balance sheet in Refco's S-4 filing, prepared by PwC in December 2004, provides a representation that RCM was segregating customer assets. The Plaintiffs further allege that PwC knew the statement was false because of its *Refco* advisory work, and that this allegation is supported by PwC workpapers produced in discovery. *See* Memoradum in Opposition at 3-6. Whether the information on which the Plaintiffs rely in fact supports Wallace's conclusion is not for this motion — the only question is whether Wallace is providing expert testimony relating to the merits of dismissed claims, thus rendering his testimony unhelpful. In this bullet point, Wallace is opining about the *Refco* Fraud, and drawing an opinion on the basis of information PwC learned in its Refco advisory work.

> ***Accordingly, PwC's motion to strike Paragraph 14, Bullet Point 10 should be denied.***

**e. Paragraph 17:** In this short paragraph, Wallace states his opinion that "SMFF's PwC's [sic] audited December 31, 2003 and 2004 financial statements did not disclose that SMFF's excess

cash was being held in non-segregated accounts at RCM." But Wallace's opinion does not fit the facts of the remaining dispute, because the PwC R and R, affirmed by Judge Rakoff after reconsideration, determined that the Plaintiffs had failed to plausibly allege either that 1) PwC had a duty to find out and disclose that information, or that 2) PwC knew that the transfers to RCM were unauthorized.

The Plaintiffs argue in their Brief in Opposition at 7 that the non-disclosure in SMFF's financial statements is relevant to the Refco Fraud because PwC became aware of a lack of protection for these assets in its work for Refco and after that time, "PwC made no further reference to any disclosures regarding the protections afforded by segregation" — suggesting that PwC knew SMFF's assets were not segregated and that PwC was willing to serve the interests of Refco over and even at the expense of SPhinX. But this assertion — that the Refco advisory work created some duty of disclosure on PwC's part regarding SMFF cash — was specifically rejected by the Special Master and then by Judge Rakoff. As the Special Master stated:

> [T]he Plaintiffs have not established that PwC actually *had* an obligation, arising out of its Refco work, to inform its team working on SPhinX/PlusFunds about anything regarding Refco. The Plaintiffs claim that PwC is responsible for the collective knowledge it obtained while working at Refco and SPhinX/Plus Funds. It relies on *In re Worldcom, Inc., Sec. Litig.,* 352 F.Supp.2d 472, 499-500 (S.D.N.Y. 2005), in which the court stated that a lead plaintiff was "entitled to show that Anderson as a firm was reckless with respect to its certification of WorldCom's financial statements through the sum of its employees' activities and knowledge."

> But *WorldCom* is eminently distinguishable, as Judge Holwell recently noted in *Stephenson v. PricewaterhouseCoopers, LLP*, 768 F.Supp.2d 562, 575 (S.D.N.Y. 2011). In rejecting the very "collective knowledge" argument that the Plaintiffs make in this case, Judge Holwell declared that there was no support for the proposition "that one member of a global firm can be charged with actual knowledge of all information in the global firm's database." He noted that *Worldcom* was not to the contrary, because that case involved a situation in which the auditor "had unlimited access to WorldCom's books and records and had, as WorldCom's independent auditor, an obligation to review and evaluate those records in order to form an opinion regarding WorldCom's financial statements." Id. at 576, n.4. Judge Holwell also noted that *Worldcom* involved a duty owed to, and information about, a single entity being audited, and so was readily distinguishable from a case in which the information concerned a corporation different from the one being audited. Thus, the Plaintiffs' attempt to make something out of PwC's advisory work for Refco — as applied to the fact that SMFF cash at RCM was unprotected — misses the mark.

PwC R and R at 8-9. See also id. at 11 ("Finally, the Plaintiffs' attempt to tie PwC's Refco advisory work to knowledge about the absence of protection for the SPhinX cash is, for the reasons discussed under Count VI, unavailing."); id. at 15 ("there is no authority for the proposition that an auditing firm working for two separate companies on two separate projects has a duty to pool its information or is subject to a collective knowledge requirement"). Thus, according to the Plaintiff's own brief,

Wallace's opinion regarding the SMFF's financial statement is relevant *only* if the Special Master, and Judge Rakoff, were *wrong* in their conclusion that PwC, working on the Refco side, had no duty to disclose information to the SMFF side. As stated above, an expert who does nothing more than argue that the court is wrong — in the very action in which the court's determination is made — must be excluded because that testimony is not helpful.

> *PwC's motion to strike Paragraph 17 should be granted.*

**f. Paragraph 123:** In this paragraph Wallace asserts that during the time of the Refco advisory work, PwC was also providing audit service for the RAI portfolio funds and for SMFF and PlusFunds. There is no dispute about the fact stated in this paragraph — but it is an irrelevant assertion unless there is something about this simultaneous representation that bears on the Refco Fraud. As discussed above, the fact that PwC was representing both Refco and SMFF/PlusFunds has been found legally irrelevant to any aspect of the remaining case. Wallace can testify to nothing relevant by relying on that simultaneous representation.

As to representing the portfolio funds, however, nothing in the PwC R and R indicates that a claim relating to a connection between the Refco Fraud and PwC's representation of the portfolio funds has been dismissed. The R and R *did* reject any connection between portfolio funds representation and knowledge that the SMFF cash was in unprotected accounts. See PwC R and R at 8 (finding that the Plaintiffs had given "no indication of how working on a portfolio fund would provide any knowledge whatsoever about the specific fact that assets of SMFF were completely unprotected at RCM."). But there was no specific rejection of any argument that work on the Refco portfolio funds had some bearing on scienter regarding the Refco Fraud. Wallace's reliance on simultaneous representation of Refco and the portfolio funds cannot be barred for purposes of this motion, as the only ground for the motion to strike is that opinions are related to the merits of dismissed claims.

> *Accordingly PwC's motion to strike Paragraph 123 should be granted, but only to the extent it mentions PwC's audit work for SPhinX/SMFF and PlusFunds.*

**g. Paragraphs 352-355:** These Paragraphs assert that "PwC was aware of the upstreaming of RCM customer's cash to other Refco entities." The assertions in these paragraphs are irrelevant to Wallace's opinions regarding the Refco Fraud in the absence of an assumption that PwC not only was "aware" of  the upstreaming but also that PwC knew that the upstreaming was *wrongful.* As stated in many previous R and R's — and as is obvious — a defendant cannot be liable for aiding and abetting wrongful activity in the absence of a showing that the defendant knew the primary conduct was wrong. Indeed the very reason for these paragraphs is not to address whether PwC simply knew about the upstreaming, but rather to draw an inference that PwC knew the upstreaming was wrongful.

As stated in the above discussion of Paragraph 14, Bullet Point 8, Judge Rakoff has already dismissed the Plaintiffs' claims that PwC knew the transfers from RCM were wrongful. PwC R and R at 28. Wallace's attempt to revive this issue, for the sole purpose of drawing a conclusion that has already been rejected by the court in this case, is simply not helpful and not the proper function of an expert.

***The motion to strike Paragraphs 352-355 should be granted.***

**h. Paragraphs 363-367:** Paragraphs 363-365 set forth opinions on PwC's audit work on SMFF's financial statements. These opinions are essentially that PwC knew that the excess cash at RCM was unprotected and that it deliberately chose not to disclose it. These opinions fly in the face of the ruling of Judge Rakoff that dismissed, with prejudice, the Plaintiffs' claims that PwC knew about, or had a duty to discover and disclose, the fact that the excess cash was unprotected. Wallace is not using these assertions for some purpose relevant to his conclusions on the Refco Fraud. Rather he is simply seeking to reargue the motion to dismiss that the parties who have retained him have already lost. Accordingly, the opinions in Paragraphs 363-365 are not helpful and should be struck.

Paragraph 366 stands on different ground. This is an assertion that PwC, in its *Refco* work, came "to understand Refco's structure and operations, as well as the purpose and importance of RCM to the operations of Refco." Nothing in this paragraph is directed to dismissed claims.

Paragraph 367, however, raises the same defect found in Paragraph 17, discussed above: it attempts to tie the Refco advisory work to the audits of SMFF. Because any such tie has been rejected as a matter of law by the Special Master and Judge Rakoff, Wallace's attempt to reargue this dead issue is not helpful.

***Accordingly, the motion to strike Paragraphs 363-365 and 367 should be granted. The motion to strike Paragraph 366 should be denied.***

**i. Paragraph 368:** Here Wallace opines, apparently as an afterthought, that PwC was required to disclose, in its audits of the financial statements of the Refco portfolio funds, that SMFF cash was unprotected. Wallace makes no attempt to explain or establish why PwC would have such a duty, and there is nothing in the Plaintiffs' Amended Complaint which asserts that PwC had a duty with regard to its audits of the financial statements of the Refco portfolio funds. In any case, the PwC R and R, affirmed by Judge Rakoff, states definitively that the Plaintiffs had not adequately alleged that PwC had a duty in its audit reports to disclose that the excess cash was in unprotected accounts. Thus, Wallace's bald assertion that PwC had a duty of disclosure in its representation of the portfolio funds is made for no purpose other than to revive a dismissed claim, and is not helpful.

*The motion to strike Paragraph 368 should be granted.*

**j. Paragraphs 429-435:** In Paragraphs 429-434, Wallace opines essentially that PwC had a duty under GAAS to disclose, in its audits of SMFF's financial statements, that the SMFF excess cash was in unprotected accounts. These assertions are yet another attempt to opine that PwC had duties of disclosure that the court has already held PwC did not have. The opinions in Paragraphs 429-434 have no bearing on the remaining claims for aiding and abetting the Refco Fraud. These opinions and assertions are merely a reargument of dismissed claims and so are not helpful.

Paragraph 435 is different. It states that "[c]ontrary to what I have been informed that PwC's lawyers have suggested in this litigation, the footnotes to SMFF's financial statements did not disclose that SMFF's excess cash was held in non-segregated accounts . . ." This assertion does not seek to revive the Plaintiffs' dismissed claims that PwC, in its SMFF audit work, had a duty to disclose that the excess cash was in unprotected accounts. It is rather a response to *PwC's* argument that the *risk* of non-segregation was disclosed in note 9 of SMFF's financial statements.   PwC concedes that the meaning of note 9 "may be an issue in this case" but argues that Wallace addresses that note in terms of "PwC's obligations under GAAS and PwC's supposed actual knowledge through its audit work that the note was false and misleading." Reply Brief at 4. PwC's contention is correct only as to the last sentence of Paragraph 435, which states: "In my opinion, RCM was simply holding— or more to the point, stealing — SMFF's excess cash for the benefit of Refco's fraud — and PwC had knowledge of it!"[9] That last sentence must be struck as unhelpful as it seeks to reargue dismissed claims. However, the remainder of Paragraph 435 addresses *PwC's* arguments about the meaning of note 9 — independent of PwC's knowledge or duty to disclose lack of segregation —  and therefore it cannot be struck on the ground that it relates to dismissed claims.

*Accordingly, the motion to strike Paragraphs 429-434 should be granted. The motion to strike Paragraph 435 should be denied with the exception that the last sentence of that Paragraph should be struck.*

**k. Previously submitted Wallace Affidavit incorporated by reference:** At the end of Paragraph 435, Wallace incorporates by reference his affidavit that the Plaintiffs submitted in their motion to reject the Special Master's recommendation that their claims against PwC related to SMFF audits should be dismissed. Judge Rakoff, in his Order adopting the Special Master's report dated October 24, 2011, refused to consider the affidavit because it had not been presented to the Special Master, and because it was not a proper submission for a motion to dismiss. Id. at note 1. That rejection,  in the context of a motion to dismiss,  would not necessarily preclude the use of an expert affidavit in the different procedural context of evaluating the admissibility of expert testimony before a factfinder. But the fact is that the Wallace Affidavit is solely about how the Special Master

---

[9] Exclamation point in the original.

was completely and utterly wrong in recommending dismissal of the audit-related claims. Because the Wallace Affidavit, as herein submitted, only seeks to reargue audit-related claims that have been dismissed, it is not helpful.

    ***Accordingly, the motion to strike the Wallace Affidavit, incorporated by reference in the Wallace Report, should be granted.***

### 2. Greenberger Report

### a. Paragraphs 58 and 59

    These paragraphs, largely descriptive, set forth as background PwC's service as outside auditor for SMFF and PlusFunds and as advisor to Refco.[10] Greenberger then focuses on the financial statements of SMFF and, citing the Wallace Report, states in a very useful (to him) passive voice that it "has also been asserted that PwC knew that the funds at RCM had not been segregated." Because the assertion regarding PwC's knowledge refers to a claim already dismissed — and for no purpose other than to revive a dead claim — these paragraphs are unhelpful and should be struck.

    ***Accordingly, the motion to strike Paragraphs 58 and 59 of the Greenberger Report should be granted.***

    **b. Paragraphs 134-136 and 138:** These paragraphs give unhelpful expert opinions a bad name. In these paragraphs, Greenberger decides to review the analysis of the Special Master in the PwC R and R — as well as Judge Rakoff's reasoning in adopting that R and R — and finds the Special Master's and Judge Rakoff's decisions to be misguided and insufficiently thought out. Greenberger's venture here might be proper for a law review article — or for a brief on appeal — but it is most decidedly improper for an expert opinion that is supposed to be helpful to a factfinder. In these paragraphs, Greenberger is essentially telling the factfinder why the prior rulings in the case should be disregarded and why dismissed claims should be revived. It is self-evident that attacking prior rulings in the case is not proper work for an expert. *See, e.g., Nimely v. City of New York,* 414 F.3d 381, 397 (2d Cir. 2005) ("We have consistently held . . . that expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law . . . by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's.") (internal citations and quotations

---

    [10] It bears noting that Greenberger liberally — and deceptively — quotes statements in the PwC R and R as if they were statements of fact that an expert could rely upon, when in reality these statements from the R and R are doing no more than quoting from the Plaintiffs' amended complaint.

omitted).[11]

   ***The motion to strike Paragraphs 134-136 and 138 of the Greenberger Report should be granted.***

   **c. Paragraph 179:** This Paragraph deals mostly with Grant Thornton's alleged duties in conducting an audit and its asserted failure in protecting customer accounts. PwC objects only to the reference in footnote 23 back to Paragraph 59. Because the Special Master recommends that Paragraph 59 be struck, it follows that the reference to Paragraph 59 in footnote 23 should also be struck.

   ***The motion to strike the reference to Paragraph 59 in Paragraph 179 should be granted.***

   ### C. Grant Thornton Defendants' Motion to Strike

   The Grant Thornton Defendants move to strike expert testimony on the following topics: 1) that these Defendants committed any wrongdoing with respect to the SPhinX Fraud; 2) that they knew that funds at RCM were wrongly upstreamed; 3) that they committed any wrongdoing with regard to the Suffolk Loans; and 4) that they violated CEA and CFTC regulations.

   *1. Wallace Report*

   **a. Part VI D:** This section has a long title containing many opinions by Wallace about the Grant Thornton Defendants' knowledge of, and substantial assistance in, the unauthorized transfers to RCM and the "fraudulent" upstreaming of assets from RCM to fund Refco operations. It can perhaps usefully divided into two broad allegations: 1) that Grant Thornton knew that the transfers of SMFF cash from Refco LLC *to* RCM were improper and yet substantially assisted those transfers; and 2) that Grant Thornton knew that the upstreaming of assets *from* RCM was fraudulent and yet substantially assisted that upstreaming.

   As to the allegedly unauthorized transfers *to* RCM, that is part of the SPhinX Fraud. But as discussed above, nothing in the Amended Complaint alleged that the Grant Thornton Defendants had any responsibility for the transfers from Refco LLC to RCM. *See* GT R and R at 3. Moreover,

---

[11] The Special Master was unable to find a reported case in which an expert opined that the trial court erred in dismissing claims. It's no surprise that court review of such testimony is sparse or nonexistent. That kind of expert testimony is so inappropriate that no expert should think of giving it.

it has already been held that the asserted right to segregation of assets is not causally related to the Refco Fraud, which is the only claim remaining against the Grant Thornton Defendants in this case. *See* Primary Wrongs R and R at 37 (Refco Fraud claim is that if SPhinX /PlusFunds had known about Refco's true financial condition, it would never have done business with Refco in the first place). The SPhinX Fraud claims have all been dismissed as to all the remaining defendants in *Krys v. Sugrue* on essentially the same grounds — the Plaintiffs could not plausibly allege that these defendants would know that the transfers were unauthorized.  Therefore, to the extent that Wallace is opining that Grant Thornton aided and abetted unauthorized transfers to RCM, he is rearguing dismissed  claims and his opinions should be struck. Nothing in this section indicates that Wallace is drawing any conclusion from Grant Thornton's alleged knowledge of the unauthorized transfers as a basis for forming any opinion about aiding and abetting the presentation of Refco's false financial picture. Accordingly, Wallace's opinions about Grant Thornton's relationship to the transfers to RCM are unhelpful.

As to the upstreaming *from* RCM, the GT R and R — like the PwC R and R — concluded that the Plaintiffs could not plausibly allege that Grant Thornton knew that the upstreaming was improper. *See* GT R and R at 18-19 (noting that "the question of authorization is a murky one based on the Margin Annex, segregation requirements, and other factors well beyond the knowledge of GT"). Therefore, all assertions that the Grant Thornton Defendants knew that the upstreaming was improper represent nothing more than an expert's attempt to reargue settled rulings. That is not the proper role of an expert.

***Accordingly, the motion to strike Part VI D of the Wallace Report should be granted.***

**b. Part VI F:** This part is titled "GT and Ramler substantially assisted Refco and PwC in concealment of disclosing the 'Suffolk Loans' in Refco's First Quarter 2005 10-Q." The Grant Thornton Defendants argue that this section should be struck because the Suffolk Loans have been designated as part of the SPhinX Fraud, the claims of which have been dismissed as to all remaining Defendants in *Krys v. Sugrue. See* Standing R and R at 27-28. The Suffolk Loans are part of the SPhinX Fraud because "they were allegedly sham transactions designed to gain control of PlusFunds and hide the fact that the SMFF cash was unprotected." Primary Wrongs R and R at 6 n.10. So if Wallace is opining about Grant Thornton's role in the Suffolk Loans in order to establish  liability for aiding and abetting the unauthorized transfers to RCM, that attempt should be barred as an unhelpful attempt to revive dead claims.

The Plaintiffs argue, however, that the Suffolk Loans have some bearing on the Refco Fraud because disclosure of the loans should have been made in *Refco's* financial statements, and that the failure to do so helped to paint a false picture of Refco's financial condition. So, while the Plaintiffs may not relitigate dismissed claims regarding the SPhinX Fraud, nothing in Judge Rakoff's orders in this case can be read to be reject any reference to the Suffolk Loans as they may be related to the misrepresentation of Refco's financial condition in its public statements. And Part VI F of the Wallace Report is directed not toward Refco's attempt to control PlusFunds but rather to its failure to disclose the Suffolk Loans in Refco's financial statement. It is to be recalled again that the only

18

basis for the motion to strike is that certain opinions are about the merits of dismissed claims.

*Accordingly, the motion to strike Part VI F of the Wallace Report should be denied.*[12]

### 2. Greenberger Report

Unlike other aspects of these motions to strike, the Grant Thornton Defendants' motion to strike portions of the Greenberger Report is not targeted to specific paragraphs or parts of the Report. The Grant Thornton Defendants instead move generally to strike the opinions in the Report "to the extent they relate to Grant Thornton LLP and Mark Ramler." Notice of Motion at 1. Grant Thornton Defendants' counsel explained the lack of specificity:

> [T]he Greenberger report, the opinions to what Grant Thornton should have done, allegedly should have done, conduct relating to segregation, are so pervasive that it's very difficult to decipher — in fact there is no table of contents in the Greenberger report, so we weren't able to identify sections, and it's you know, a very long report.
>
> . . .
>
> With respect to the Wallace report, it's a little easier, because there was a very clear organization. . . . We've isolated certain opinions [in the Wallace report]. But the Greenberger report is too convoluted to do that.

Transcript of Oral Argument at 116-17.

The Special Master agrees with counsel's assessment of the Greenberger Report. It is disorganized, rambling, and over-long. While it would of course be better to move to strike specific sections and paragraphs,  the Defendants cannot be prejudiced for lack of specificity that is caused by the expert himself.

To the extent that Greenberger opines that Grant Thornton/Ramler aided and abetted the wrongful transfer of SMFF's excess cash to RCM, those opinions must be struck because they are nothing but reargument of adverse determinations made in this very case. Similarly, to the extent that Greenberger opines that Grant Thornton knew about or substantially assisted in a wrongful upstreaming of funds from RCM, those assertions are not helpful coming from an expert in the very case in which the court has held that the Plaintiffs have not adequately pled the claim on which the expert purports to opine.

---

[12] PwC did not move to strike the portion of the Wallace Report regarding PwC's role in concealing the Suffolk Loans. *See* Part VI. L of the Wallace Report. If it had, the motion to strike should be denied for the same reason Grant Thornton's motion should be denied.

In addition to these general statements, it may be useful to point out some of the statements in the Greenberger Report directed toward the Grant Thornton defendants that are unhelpful because they seek only to revive dead claims:

> ● Page 2: "The Grant Thornton defendants have . . . violated . . . DEA provisions and CFTC regulations relating to their auditing of . . . Refco LLC" regarding to "the transfer of plaintiffs' [sic] Refco LLC funds to [RCM]." This is an assertion that the Grant Thornton Defendants somehow aided and abetted the SPhinX Fraud by its audit work at Refco. But the SPhinX Fraud claims have been dismissed for failure of the Plaintiffs to adequately plead that the alleged aiders and abetters could have known that the transfers were *unauthorized* and because segregation is not causally related to the Refco Fraud. And as to the Grant Thornton Defendants, trying to put them on the hook for the SPhinX Fraud is especially inappropriate because the Amended Complaint, as discussed above, did not even allege that Grant Thornton was involved in the transfers to RCM.

> ● Paragraph 179: "In auditing Refco LLC for purposes of insuring the integrity of customer segregated funds, there were any number of conventional auditing tools available to Grant Thornton to determine that SMFF's money was not being held in segregation either at Refco LLC or RCM." This is an assertion that Grant Thornton was somehow responsible for aiding and abetting the loss of segregation — a claim that is inconsistent with prior rulings in this case, and which essentially seeks to reargue the dismissal of SPhinX Fraud claims.

*The Grant Thornton Defendants' motion to strike the portions of the Greenberger report that are directed to their alleged wrongdoing regarding segregation or upstreaming should be granted.*

## III. Conclusion

The Special Master makes the following recommendations:

## 1. As to the Wallace Report:

> *a. The motion to strike Paragraph 4, point 12 should be granted.*

> *b. The motion to strike Paragraph 14, Bullet Point 7 should be denied.*

20

*c. The motion to strike Paragraph 14, Bullet Point 8 should be granted.*

*d. The motion to strike Paragraph 14, Bullet Point 10 should be denied.*

*e. The motion to strike Paragraph 17 should be granted.*

*f. The motion to strike Paragraph 123 should be granted, but only to the extent it mentions PwC's audit work for SPhinX/SMFF and PlusFunds.*

*g. The motion to strike Paragraphs 352-355 should be granted.*

*h. The motion to strike Paragraphs 363-365 and 367 should be granted.*

*i.  The motion to strike Paragraph 366 should be denied.*

*j.  The motion to strike Paragraph 368 should be granted.*

*k. The motion to strike Paragraphs 429-434 should be granted.*

*l. The motion to strike Paragraph 435 should be denied with the exception that the last sentence of that Paragraph should be struck.*

*m. The motion to strike the Wallace Affidavit, incorporated by reference in the Wallace Report, should be granted.*

*n. The motion to strike Part VI D of the Wallace Report should be granted.*

*o.  The motion to strike Part VI F of the Wallace Report should be denied.*

**2.  As to the Greenberger Report**

*a. The motion to strike Paragraphs 58 and 59 should be granted.*

*b. The motion to strike Paragraphs 134-136 and 138 should be granted.*

*c. The Grant Thornton Defendants' motion to strike the portions of the Greenberger Report that are directed to their alleged wrongdoing regarding segregation or upstreaming*

21

*should be granted.*

Daniel J. Capra
Special Master

Dated: November 29, 2012
New York, New York