**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |
|---|---|
| IN RE REFCO INC. SECURITIES LITIGATION : | 07-MD-1902 (JSR) |

This document relates to:

|   |   |
|---|---|
| KENNETH M. KRYS, *ET AL.,* : | |
| Plaintiffs, : | 08-CV-3086 (JSR) |
| -against- : | |
| CHRISTOPHER SUGRUE, *ET AL.,* : | |
| Defendants. : | |

**GRANT THORNTON LLP AND MARK RAMLER'S RESPONSE
TO PLAINTIFFS' LIMITED OBJECTION
TO THE REPORT AND RECOMMENDATION STRIKING CERTAIN OPINIONS
OF PROPOSED EXPERTS MICHAEL GREENBERGER AND DAVID WALLACE**

WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700

200 Park Avenue
New York, New York 10166
Ph: 212-294-6700
Fax: 212-294-4700

*Attorneys for Defendants*
*Grant Thornton LLP and Mark Ramler*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...........................................................................................................1

PROCEDURAL HISTORY AND OPINIONS ADDRESSED......................................................3

ARGUMENT ...................................................................................................................................9

    I.    Part VI.D of the Wallace report is explicitly directed toward dismissed claims, and the Special Master properly recommended striking it. ........................10

    II.    The Special Master also properly recommended striking Greenberger's opinions on the Grant Thornton Defendants' alleged wrongdoing in respect to segregation..........................................................................................................12

    III.    Plaintiffs cannot justify their improper expert reports by pointing to the defense reports that rebut them. ........................................................................14

CONCLUSION................................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cameron v. City of New York*,
  598 F.3d 50, 62 (2d Cir. 2010) ................................................................................................2

*Campbell, Jr. v. Consolidated Rail Corp.*,
  No. 05 Civ. 1501 (GTS/GJD), 2009 WL 36890, at *6 (N.D.N.Y. Jan 6, 2009) ........................9

*Capital Management Select Fund Ltd. v. Bennett*,
  670 F.3d 194 (2d Cir. 2012) ...................................................................................................10

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579, 591 (1993) .........................................................................................................9

*In re Rezulin Prods. Liability Litig.*,
  309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) ..............................................................................9

*Lichtenstein v. Triarc Companies, Inc.*,
  No. 02 Civ. 2626 (JCF), 2004 WL 1087263, at *13 (S.D.N.Y. May 14, 2004) .......................9

*Price v. Fox Entertainment Group, Inc.*,
  499 F. Supp. 2d 382, 388 (S.D.N.Y. 2007) ..............................................................................9

**OTHER AUTHORITIES**

17 C.F.R. § 1.16(d)(1) ......................................................................................................................5

Fed. R. Evid. 702 .............................................................................................................................9

**PRELIMINARY STATEMENT**

Plaintiffs' objection barely acknowledges the basis for the Special Master's recommendation and does little to engage its reasoning. The R&R—like the motions it resolved—is both straightforward and narrowly tailored. *See* Report and Recommendation on Mots. to Strike Certain Opinions of Proposed Experts R. David Wallace and I. Michael Greenberger (Nov. 29, 2012) ("R&R"). The Special Master examined Plaintiffs' expert reports in detail and found that certain opinions were explicitly directed toward claims that have been dismissed with prejudice. Indeed, he found that those opinions represented an entirely improper attempt to revisit long-settled legal rulings. On that basis, he recommended that those particular expert opinions be stricken. That recommendation is correct and should be adopted.

Long ago, this Court dismissed any claims against Grant Thornton LLP and Mark Ramler that were based on the transfer of excess cash belonging to the SPhinX Managed Futures Fund, Ltd. ("SMFF") out of segregated accounts at Refco LLC, as well as all claims based on Refco's (alleged) misuse and misappropriation of SMFF's excess cash. The only claim that remains is for "aiding and abetting the presentation of Refco's false financial picture." R&R at 18. The pleading-stage rulings represent the law of the case, and their merits are not before the Court.

In their expert reports, Plaintiffs thumbed their noses at these rulings. Their proposed accounting expert David Wallace dedicates an entire section of his report to the conclusion that "GT and Ramler Aided And Abetted Refco's Misuse and Misappropriation of SPhinX/SMFF's Excess Cash." Wallace Report at 93 (heading of Part VI.D). Wallace opines that the Grant Thornton Defendants "knew" that SMFF's excess cash "was transferred without proper authorization from customer-segregated accounts at Refco LLC to non-segregated accounts at RCM [Refco Capital Markets, Ltd.]" and was then "loot[ed]" by Refco. *Id*. at 12. Of course,

what these defendants "knew" and whether they "aided and abetted" would never be proper subjects for an expert witness.[1]  For now, though, what matters is that these opinions are directed explicitly to claims that have been dismissed with prejudice.  The Grant Thornton Defendants moved to strike Part VI.D of the Wallace report on that basis, and the Special Master agreed.

The proposed opinions of law professor Michael Greenberger go even farther.  Although Greenberger acknowledges that the Court has dismissed these claims, **_he spends page after page openly criticizing the Court's analysis_**.  Greenberger's report was offered ostensibly to address whether the legal requirements under the Commodities and Exchange Act and CFTC regulations established a right to segregation for SMFF's excess cash.  (His opinions on those issues—while objectionable for other reasons—were not the subject of the current motion by the Grant Thornton Defendants.)  But sprinkled throughout his report are opinions about the supposed responsibility, wrongdoing, knowledge, and "liability" of the Grant Thornton Defendants in respect to SMFF's loss of segregation.  _See, e.g._, Greenberger Report at 2 (opining that the Grant Thornton Defendants "violated" CFTC regulations, "fail[ed] to perform" appropriate procedures in CFTC compliance work for Refco LLC, and were "aware of or should be aware of regulations ensuring the protection" of assets like SMFF's); _id_. ¶ 53 (discussing an auditor's "liability" for breaches of segregation).  These are some of the very same legal arguments that the Court considered—and rejected—at the pleading stage.

---

[1]  _See Cameron v. City of New York_, 598 F.3d 50, 62 (2d Cir. 2010).  The Wallace report is not alone.  Nearly all of Plaintiffs' expert reports are riddled with opinions that either encroach on the province of the jury or purport to instruct the Court on the law.  At the appropriate time, Grant Thornton will move to exclude all such opinions from trial on that basis as well.  _See, e.g._, Order in _Kirschner v. Bennett_, No. 07-cv-8165, Dkt. No. 356 (July 30, 2012) (on motions in limine in another Refco matter, granting motions to exclude proposed expert opinions with regard to whether specific legal standards were met, as well as opinions about the application and effect of federal regulations and about what those regulations would convey to an auditor).

2

The Special Master recommended excluding these opinions.  Even if it were otherwise proper for an expert to instruct the Court on issues of law (and it is not), it is ***never*** proper to ask an expert to opine that the trial court's previous rulings were in error.  As the Special Master observed, "[t]hat kind of expert testimony is so inappropriate that no expert should think of giving it."  R&R at 17 n.11.

Plaintiffs now object to this recommendation, arguing that the expert opinions were actually directed toward something else—the claim that Refco's consolidated financial statements portrayed a false image of financial stability.  ***But that is not what the opinions say.***  The Special Master examined the relevant opinions with that in mind, and he concluded that they were ***not*** helpful in drawing a connection between SMFF's alleged right to segregation (and the breach thereof) and "Refco's false financial picture."  *Id*. at 18.  Neither this argument nor anything else in Plaintiffs' objection provides any basis for setting aside the Special Master's careful analysis.  The R&R should be adopted in full.

### PROCEDURAL HISTORY AND OPINIONS ADDRESSED

***Prior Rulings***.  Plaintiffs' case against Grant Thornton LLP and Mark Ramler (the "Grant Thornton Defendants") originally included three claims:  (i) aiding and abetting Refco's fraud in misrepresenting its financial condition to the public; (ii) aiding and abetting Refco's breach of a fiduciary duty owed to SMFF; and (iii) aiding and abetting Refco's conversion/misuse of SMFFs excess cash.  The latter two claims depended largely on the idea that Refco owed a duty specifically to SMFF to keep its excess cash segregated, both before and after it was swept from Refco LLC to the unregulated entity RCM.  Plaintiffs alleged that Refco breached that duty and converted the assets by "upstreaming SPhinX assets at RCM and using

3

them to fund Refco operations." Report & Recommendation on Mot. to Dismiss at 18 (Dec. 16, 2011) ("GT R&R"), *adopted* Mar. 28, 2012.

The Grant Thornton Defendants moved to dismiss, arguing that Plaintiffs' allegations were insufficient to state a claim for aiding and abetting any segregation-related misconduct, including the alleged misuse and upstreaming of SMFF's cash from RCM. In an extensive R&R, the Special Master recommended granting the motion. *Id*. at 18-20. This Court agreed and dismissed both of these claims with prejudice. *See* Order (Mar. 28, 2012).

Accordingly, only one claim remains against the Grant Thornton Defendants—the claim for aiding and abetting "the Refco Fraud—specifically that Refco's financial condition was materially misstated to the public." GT R&R at 6. This claim does not encompass any breach of a duty of segregation owed to SMFF. As the Special Master has observed,

> Even if Refco had a duty to keep the SMFF cash in a segregated account, no claim for breach of that duty can be brought in the context of the Refco fraud. That is because there is no causal relationship between the violation of the segregation right and the Plaintiffs' claims for damages under the Refco fraud. With respect to the Refco fraud, the Plaintiffs are arguing that if they had known about Refco's financial condition, SPhinX would not have placed and held its property in accounts at Refco. *See, e.g.*, SAC ¶ 1223. That is, segregation or not, they would simply not have done business with Refco if they had known the truth. These allegations show that the claim for a right of segregation is the gravamen of the ***SPhinX*** fraud, not the Refco fraud.

Report & Recommendation on the Omnibus Issue of Primary Violations at 37 (Mar. 2, 2010), *adopted* May 4, 2011 ("Primary Violations R&R") (emphasis in original). And as for the "SPhinX fraud"—the allegedly wrongful transfer of SMFF's cash from Refco LLC to RCM—the Court has repeatedly held that there is no basis for linking Grant Thornton to those events. *See, e.g.*, GT R&R at 3 ("Plaintiffs do not claim that GT or Ramler had anything to do with the unauthorized transfers of SMFF cash from protected accounts at Refco LLC to RCM."); R&R on the Omnibus Issue of Standing at 32 (Feb. 3, 2010), *adopted* March 31, 2010 (same effect).

4

In their objections to these recommendations, Plaintiffs repeatedly argued that the Grant Thornton Defendants *did* play a role in the alleged breach of segregation. Again and again, the Court rejected those arguments. For example, in 2010, Plaintiffs argued that they should be allowed to proceed with such claims based on Grant Thornton's work relating to Refco LLC's CFTC compliance. *See, e.g.*, Obj. to R&R on the Omnibus Issue of Standing at 28 (Feb. 16, 2010) (arguing that Grant Thornton was "[i]nvolved in the SPhinX Fraud" because it "certi[fied] that Refco LLC was in full compliance with CFTC segregation requirements" and "had read SPhinX offering memoranda"). Plaintiffs made this argument again a year ago, in their objection to the R&R recommending dismissal of the claims against Grant Thornton based on conversion and breach of fiduciary duty:

> Grant Thornton and Ramler knew that funds deposited at Refco LLC, a futures commission merchant regulated by the Commodity Futures Trading Commission ("CFTC"), must remain segregated from Refco's proprietary funds. Indeed, Refco hired Grant Thornton pursuant to 17 C.F.R. § 1.16(d)(1) specifically "to test and certify whether Refco's customer and proprietary funds were properly segregated and safeguarded" at Refco LLC.
>
> * * *
>
> It is thus beyond question that Grant Thornton and Ramler knew customers' cash at Refco LLC, and SMFF's cash in particular, must remain segregated. And an obligation to segregate funds gives rise to fiduciary duties. . . .
>
> Grant Thornton and Ramler knew Refco LLC violated its fiduciary duties because it reviewed account statements showing large amounts of SMFF's cash being moved from segregated accounts into accounts at RCM that Grant Thornton and Ramler knew were commingled and used to fund Refco's internal treasury.

Pl. Lim. Obj. to MTD R&R at 17-18 (Jan. 10, 2012); *id.* at 18-19 (same argument relating to conversion claim).

Each time, the Court rejected those arguments. *See* Order (Mar. 28, 2012) (adopting the Special Master's R&R on Grant Thornton's motion to dismiss "in full as if incorporated

5

herein"); *see also* Order (Mar. 31, 2010) (rejecting Plaintiffs' objection to the Standing R&R and treating the claims against Grant Thornton LLP as relating entirely to the Refco fraud).  Further, the Court made clear that any effort to amend the complaint must be directed to the Special Master in the first instance.  *See* Order (Mar. 28, 2012).  Since the pleading stage, Plaintiffs have never made any effort to amend the operative complaint.

***The Expert Reports.***  In discovery, Plaintiffs produced two expert reports that raise the same, already-rejected arguments yet again.

Proposed accounting expert David Wallace devotes an entire section of his report—Part VI.D—to the dismissed claims, under the following heading:

> D.	GT and Ramler knew that SPhinX/SMFF's Customer Deposits, Including "Excess Cash", Should Have Remained in Customer Segregated Accounts at Refco LLC, a Regulated Futures Commission Merchant.  GT and Ramler Knew That SPhinX/SMFF's "Excess Cash", Was Improperly Moved Without Authorization to RCM, Which Was Unregulated and Not Subject to Customer Segregation Requirements, and Transferred to Other Refco Entities to Fund Operations and Other Fraudulent Purposes.  ***Consequently, GT and Ramler Aided and Abetted Refco's Misuse and Misappropriation of SPhinX/SMFF's Excess Cash.***

Wallace Report at 93 (heading) (emphasis added); *see also id.* at 10-13 (summarizing opinions).

Similarly, interwoven throughout the report of Michael Greenberger is a series of opinions about the Grant Thornton Defendants' alleged "responsibility," "knowledge," and "liability" for the alleged breach of segregation and misuse of SMFF's excess cash.  *See, e.g.*, Greenberger Report at 2 (referring in summary of opinions to supposed wrongdoing and alleged regulatory "violat[ions]" by the Grant Thornton Defendants), ¶¶ 48, 51-55, 170 (opining about what responsibilities an auditor has and what "liability" it bears in respect to segregation), ¶ 145 (opining about Grant Thornton's "obligations" under CFTC regulations), ¶¶ 148-51, 179-80 (opining about what Grant Thornton could or should have done differently in respect to the segregation of SMFF excess cash). Greenberger acknowledges that all claims against the Grant

6

Thornton Defendants on this basis have been dismissed, and he openly criticizes that ruling, including by providing citations to legal provisions that he believes the Special Master and the Court neglected to consider in reaching that conclusion.  *Id*. ¶¶ 133-35, 137-38.  These opinions echo the legal arguments Plaintiffs made (and lost) back at the pleading stage.

*The Motions to Strike and the Current R&R*.  The Grant Thornton Defendants moved to strike portions of both reports, submitting a straightforward, 10-page brief that set out the basis for the motion and the nature of the opinions to be struck.  Defendant PricewaterhouseCoopers LLP ("PwC") filed its own motion at the same time, raising similar arguments against both reports.  After full briefing and an extensive oral argument, the Special Master issued a detailed report and recommendation resolving both motions.

He began with a review of "which claims against these Defendants remain and which have been dismissed."  R&R at 2-5.  He then dedicated more than 10 single-spaced pages to a detailed review of the expert opinions at issue, evaluating specifically whether they related to the dismissed claims or, rather, to the one claim that remains.  *Id*. at 9-20.

For the most part, the Special Master recommended granting the motion.  With respect to Part VI.D of the Wallace report, for example, he analyzed the opinions in detail, beginning with that section's "long title containing many opinions by Wallace about the Grant Thornton Defendants' knowledge of, and substantial assistance in, the unauthorized transfers to RCM and the 'fraudulent' upstreaming of assets from RCM to fund Refco operations."  R&R at 17.  He explained precisely why these opinions relate to claims that had been dismissed, and he concluded that they "represent nothing more than an expert's attempt to reargue settled rulings."  *Id*. at 18.  As he observed, "That is not the proper role of an expert."  *Id*.

With respect to the Greenberger report, the Special Master observed that Grant Thornton's motion did not target specific sections but instead sought an order generally striking Greenberger's opinions "'to the extent they relate to Grant Thornton LLP and Mark Ramler.'" *Id*. at 19 (quoting Notice of Motion). As the Special Master explained, this was understandable, because the report itself "is disorganized, rambling, and over-long." *Id*. Substantively, the Special Master recommended striking Greenberger's opinions "that Grant Thornton/Ramler aided and abetted the wrongful transfer of SMFF's excess cash to RCM," as "they are nothing but reargument of adverse determinations made in this very case." *Id*. Similarly, the Special Master concluded that "to the extent that Greenberger opines that Grant Thornton knew about or substantially assisted in a wrongful upstreaming of funds from RCM, those assertions are not helpful coming from an expert in the very case in which the court has held that the Plaintiffs have not adequately pled the claim on which the expert purports to opine." *Id*. The Special Master concluded by pointing out, by way of example, some of the specific statements in the report that are "unhelpful because they seek only to revive dead claims." *Id*. at 20. The R&R ultimately recommends that the Court enter a simple order striking all portions of the Greenberger report that are directed to "[t]he Grant Thornton Defendants' . . . alleged wrongdoing regarding segregation or upstreaming." *Id*.

With respect to a few of the challenged opinions, the Special Master concluded that the subject matter did touch in some way on the remaining claim, so he recommended denying the motion to strike in that respect. *See, e.g.*, *id*. at 11, 14, 18-19. For example, the Special Master recommended denying a request to strike Wallace's opinion about the non-disclosure of the so-called "Suffolk loans" in Refco's financial statements. *Id*. at 18-19. The Grant Thornton Defendants have not objected to that recommendation.

8

# ARGUMENT

Rule 702 permits expert testimony only if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The helpfulness requirement of Rule 702 goes beyond "mere relevance . . . because it also requires expert testimony to have a valid connection to the pertinent inquiry." *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.03[1] (Joseph M. McLaughlin ed., 2d ed. 1997)). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (citation omitted).

For this reason, when a claim has been dismissed or is otherwise removed from consideration, courts do not hesitate to exclude expert testimony supporting that claim. *See Price v. Fox Entertainment Group, Inc.*, 499 F. Supp. 2d 382, 388 (S.D.N.Y. 2007) (holding that expert testimony on striking similarity was no longer necessary in case after granting summary judgment against the striking similarity claim); *Lichtenstein v. Triarc Companies, Inc.*, No. 02 Civ. 2626 (JCF), 2004 WL 1087263, at *13 (S.D.N.Y. May 14, 2004) (holding that expert analysis on pay disparity was no longer relevant because pay disparity claim was dismissed); *see also Campbell, Jr. v. Consolidated Rail Corp.*, No. 05 Civ. 1501 (GTS/GJD), 2009 WL 36890, at *6 (N.D.N.Y. Jan 6, 2009) (generally permissible expert testimony precluded in part to the extent that it concerned claims already withdrawn by plaintiff).

The Special Master followed these principles and carefully examined the opinions at issue to determine whether they related solely to dismissed claims. His recommendation is precise: he identified specific opinions to be stricken and left the rest. Plaintiffs' objection provides no reason for upsetting this approach.

**I.      Part VI.D of the Wallace report is explicitly directed toward dismissed claims, and the Special Master properly recommended striking it.**

For the Wallace report, the offending opinions were easy to find: they were in a section that is explicitly dedicated to whether the Grant Thornton Defendants "Aided And Abetted Refco's Misuse and Misappropriation of SPhinX/SMFF's Excess Cash." Wallace Report at 93 (heading VI.D). The Special Master properly concluded that this section should be struck. *See* R&R at 17-18.

Plaintiffs' primary response to this is to try to distort the prior rulings. They suggest that claims of "[M]isuse and [M]isappropriation" are ***not*** entirely gone from the case, citing an early R&R for the proposition that the remaining "Refco fraud" claim also "'[i]nvolves upstreaming assets in accounts from RCM." Pl. Lim. Obj. at 1 (quoting Primary Violations R&R at 21); *see also id*. at 10-11, 22.

This is a stunning mischaracterization. In another R&R issued ***after*** the one Plaintiffs cite, the Court dismissed those very claims with prejudice. *See* R&R at 4 (citing GT R&R at 17-19) (explaining that at the pleading stage, the Court dismissed "[a]ll claims regarding aiding and abetting the upstreaming of SMFF cash from RCM to fund Refco operations").[2] The only claim left against these defendants is a claim for aiding and abetting the Refco fraud—"specifically that Refco's financial condition was materially misstated to the public." GT R&R at 6.

Although Plaintiffs also cite a pleading-stage ruling from the PAT case in this regard, that reference is mystifying. *See* Pl. Lim. Obj. at 13-14 (citing Report & Recommendation on Motions to Dismiss in *Kirschner v. Bennett* at 38-39 ("PAT R&R") (Jun. 3, 2010)). They say

---

[2]   In light of the express terms of RCM's contracts with its customers, the "upstreaming" of RCM customer assets in general was neither wrongful nor fraudulent. *See* GT R&R at 19 (discussing the "Margin Annex"); *see also Capital Management Select Fund Ltd. v. Bennett*, 670 F.3d 194 (2d Cir. 2012) (in light of the Margin Annex, rejecting claim of fraud and other illegality based on general practice of "upstreaming" customer assets from unsegregated accounts at RCM).

that this ruling held that the allegations in that case "were sufficiently pled" to support claims against Grant Thornton for aiding and abetting breach of fiduciary duty and conversion. *Id*. That is wrong:  the PAT ruling ***dismissed*** the claims against Grant Thornton for aiding and abetting breach of fiduciary duty and conversion. *Compare* Pl. Lim. Obj. at 13 *with* PAT R&R at 41-42 ("the Trustee has not adequately pled a claim for breach of fiduciary duty [or] . . . conversion").  Moreover, the PAT case involved the claims of foreign-exchange customers of RCM, who did not allege "upstreaming" of assets that were required to be held in segregated accounts—which is the focus of the expert opinions challenged here. *See* PAT R&R at 3-5.

Finally, Plaintiffs argue—incorrectly—that the Grant Thornton Defendants' supposed knowledge of the wrongful "upstreaming" of SMFF cash could also show knowledge relevant to the remaining claim of aiding and abetting fraud.  The Special Master rejected that argument—and properly so.  He examined Part VI.D carefully and concluded that "[n]othing in this section indicates that Wallace is drawing any conclusion from Grant Thornton's [supposed] knowledge of the unauthorized transfers as a basis for forming any opinion about aiding and abetting the presentation of Refco's false financial picture."  R&R at 18.

That conclusion is plainly correct.  Even now, Plaintiffs do not point to anything in Wallace's report that identifies any link between the alleged breach of SMFF's right to segregation and the truth or falsity of any financial statement or public filing on which Plaintiffs contend they relied.  At most, they cite Paragraph 275 of the Wallace report as saying that the non-disclosure of Refco LLC's alleged CFTC violations rendered "***Refco's*** GT-audited financial statements . . . materially false and misleading."  Pl. Lim. Obj. at 14 (emphasis in original).  But in fact, ***Paragraph 275 says nothing of the kind***.  It discusses a different issue entirely, relating to a footnote that appears only in the standalone, non-public financial statements of RCM.  *See*

Wallace Report ¶ 275.  Plaintiffs do not contend—and certainly have no evidence—that SMFF or PlusFunds ever laid eyes on that footnote.   In this respect too, Plaintiffs' arguments do not provide any basis for  upsetting the Special Master's recommendation.

## II. The Special Master also properly recommended striking Greenberger's opinions on the Grant Thornton Defendants' alleged wrongdoing in respect to segregation.

The Special Master was equally careful in his analysis of the Greenberger report, and his recommendation is equally correct.  Much of Greenberger's report is dedicated to his theory that SMFF's excess cash was entitled to segregation and remained so even after it was transferred to RCM.  For the most part, those opinions—while improper for other reasons—were not the subject of the Grant Thornton Defendants' motion, and the Special Master has not recommended striking them.  The offensive opinions are found in the places (sprinkled throughout) where Greenberger discusses **alleged wrongdoing by Grant Thornton** in connection with SMFF's loss of segregation.  *See supra* at 6-7.  It is those opinions—his opinions that Grant Thornton committed wrongdoing, breached CFTC regulations, should have behaved differently, and knew or should have known about a conversion of SMFF's assets and breach of a right to segregation—that relate to dismissed claims and have no place in this case.

Among other things, Greenberger's report includes several pages that criticize the Court's pleading-stage "refus[al] to find the requisite knowledge" on the part of both Grant Thornton and PwC "with regard to illegally transferring the SMFF segregated funds at Refco LLC to the unprotected accounts at RCM." R&R at 16.  As the Special Master observed, "these paragraphs give unhelpful expert opinions a bad name." *Id*.  Greenberger "is essentially telling the factfinder why the prior rulings in the case should be disregarded and why dismissed claims should be revived.  It is self-evident that attacking prior rulings in the case is not proper work for an expert." *Id*. (citing cases).  In fact, the points Greenberger offers here—focusing on Grant

12

Thornton's alleged obligations under CFTC regulations (*e.g.*, Greenberger Report ¶ 135)—mirror the arguments Plaintiffs presented (and lost) when they objected to the Special Master's recommendations at the pleading stage. *See supra* at 5-6.  For all these reasons, the Special Master properly concluded:

> To the extent that Greenberger opines that Grant Thornton/Ramler aided and abetted the wrongful transfer of SMFF's excess cash to RCM, those opinions must be struck because they are nothing but reargument of adverse determinations made in this very case.  Similarly, to the extent that Greenberger opines that Grant Thornton knew about or substantially assisted in a wrongful upstreaming of [SMFF's] funds from RCM, those assertions are not helpful coming from an expert in the very case in which the court has held that the Plaintiffs have not adequately pled the claim on which the expert purports to opine. [R&R at 19.]

Although Plaintiffs insist that these opinions also relate to the remaining fraud claim, they again do not explain why—nor does Greenberger himself.  Plaintiffs do not point to a single sentence in which Greenberger attempts to links the alleged breach of SMFF's right to segregation with any larger material misstatement by Refco in the documents on which Plaintiffs contend SMFF and PlusFunds relied.  To the contrary, Plaintiffs admit that Grant Thornton's alleged failures under CFTC regulations—on which Greenberger focuses at some length—are "*[s]eparate and apart* from the representations and omissions in Refco's financial statements." Pls. Lim Obj. at 22 n.18 (emphasis added).[3]  And although Plaintiffs now suggest that Refco's financial statements were false because they did not disclose unspecified *other* CFTC violations (apparently not involving "SMFF's right to segregation") (*id*. at 22)—even Greenberger himself did not say that.

---

[3] By the same token, the excerpt from the GT R&R quoted at pages 2-3 of Plaintiffs' objection discusses the alleged fraud relating to Refco's financial condition but makes no mention of SMFF's alleged right of segregation—or the breach thereof. So, this excerpt too provides no support of the suggestion that Grant Thornton's alleged wrongdoing in respect to segregation—the subject of Greenberger's opinions—is related to the sole remaining claim.

13

Plaintiffs' other objection to the recommendation on Greenberger is that it is too "generalized" to be useful.  Pl. Lim Obj. at 23-24.  On this point, however, Plaintiffs have no one but themselves to blame.  As the Special Master observed, the Greenberger report "is disorganized, rambling, and over-long.  While it would of course be better to move to strike specific sections and paragraphs, the Defendants cannot be prejudiced for lack of specificity that is caused by the expert himself."  R&R at 19.  Still, the Grant Thornton Defendants' motion did *not* move to strike the report in its entirety—though perhaps that would have been justified.  Instead, they asked for a simple order making clear that Greenberger may not testify about the Grant Thornton Defendants' own "alleged wrongdoing" in relation to SMFF's alleged right to (and loss of) segregation.  *Id*. at 20.  The Special Master has recommended entering such an order, and we are confident that its scope is sufficiently clear.

## III.     Plaintiffs cannot justify their improper expert reports by pointing to the defense reports that rebut them.

Plaintiffs repeatedly try to justify their experts' opinions by arguing that the defendants have offered expert reports and arguments of their own addressing whether SMFF had a right to segregation.  *E.g*., Pl. Lim. Obj. at 2, 5, 7-9, 20, 23.  This makes no sense.  The defendants' reports were ***rebuttal*** reports, offered ***to rebut*** Wallace and Greenberger and to respond to Plaintiffs' repeated and continuing insistence that SMFF had a right to segregation.  Plaintiffs cannot justify their own reports by pointing out that defendants made an effort to rebut them.

In any event, the Special Master did not strike ***all*** of these experts' segregation-related opinions, and neither PwC nor the Grant Thornton Defendants asked him to.  *See* R&R at 6.  The motions asked the Court to strike the experts' reports "only to the extent that they opine about ***wrongdoing by the Defendants*** in regard to the loss of segregation rights for the SMFF excess

cash." *Id*. at 6 (emphasis added).  Even if the alleged right to segregation is part of the trial, ***wrongdoing by the Grant Thornton Defendants*** relating to the loss of segregation will not be.

## CONCLUSION

The Special Master's recommendation is simple, careful, and correct.  The Grant Thornton Defendants ask that it be adopted in full.


Dated:  December 20, 2012
       Chicago, Illinois

*Of Counsel:*

Kenneth Cunningham
Tracy W. Berry
GRANT THORNTON LLP
175 West Jackson, 20th Floor
Chicago, Illinois 60604
Ph: 312-856-0001
Fax: 312-565-3473

Respectfully submitted,

WINSTON & STRAWN LLP

      /s/
By:  Linda T. Coberly

Bruce R. Braun (bbraun@winston.com)
Catherine W. Joyce (cjoyce@winston.com)
Linda T. Coberly (lcoberly@winston.com)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700

Luke A. Connelly (lconnelly@winston.com)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Ph: 212-294-6700
Fax: 212-294-4700


*Attorneys for Grant Thornton LLP
and Mark Ramler*