UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
In Re REFCO INC. SECURITIES LITIGATION : Case No. 07-MD-1902 (JSR)
------------------------------------- X
This Document Relates to:
------------------------------------- X
KENNETH M. KRYS, *et al.*,

              Plaintiffs,

      -against-

CHRISTOPHER SUGRUE, *et al.*,

             Defendants.
------------------------------------- X

Case No. 08-CV-3065 (JSR)
Case No. 08-CV-3086 (JSR)

ORAL ARGUMENT REQUESTED

# MEMORANDUM OF LAW OF JOSEPH P. COLLINS IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................................... 2

    The Second Superseding Indictment ....................................................................................... 2

    The Evidence at Trial ............................................................................................................... 4

    Charge Requests, Summations and Jury Instructions .............................................................. 6

ARGUMENT ................................................................................................................................ 8

I.    THE JURY DID NOT ACTUALLY OR NECESSARILY DECIDE
      WHETHER COLLINS KNOWINGLY PARTICIPATED IN
      REFCO'S ACCOUNTING FRAUD ................................................................................ 8

II.   PLAINTIFFS ADD-ON ARGUMENT FROM EVIDENCE
      DEVELOPED IN DISCOVERY IS MERITLESS ......................................................... 10

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*BBS Norwalk One, Inc. v. Raccolta, Inc.*,
  117 F.3d 674 (2d Cir. 1997)..............................................................................................8

*Weizmann Inst. of Sci. v. Neschis*,
  421 F. Supp. 2d 654 (S.D.N.Y. 2005)................................................................................8

*Wyly v. Weiss*,
  697 F.3d 131 (2d Cir. 2012)..........................................................................................2, 8

## INTRODUCTION

Joseph P. Collins respectfully submits this memorandum of law in opposition to plaintiffs' motion for partial summary judgment. Collins joins in Points II and III of the brief submitted on behalf of Mayer Brown and Paul Koury and incorporates those arguments herein.[1] We write separately to provide the Court with additional factual background concerning Collins's recent criminal trial, specifically as it relates to his alleged knowledge of Refco's hidden inter-company debt and the alleged Refco accounting fraud. Collins and the other Mayer Brown defendants should not be precluded from litigating those issues in this proceeding, because it is impossible to say that Collins's jury decided them, either actually or necessarily, in reaching its general verdict.

Although plaintiffs omit any reference to the fact in their brief, Collins was prosecuted on alternative theories of fraud. One charged Collins with knowledge of Refco's hidden related-party debt and with aiding Refco's alleged accounting fraud, the other with failing to disclose a 2002 Proceeds Participation Agreement (the "PPA") during TH Lee's leveraged buyout of Refco. The government presented evidence on both theories. The relationship between these two theories of liability was litigated at the charging conference before the district court. The defense sought a jury instruction that would have required the jury to find specifically that Collins knew of Refco's hidden related-party debt and the alleged accounting fraud in order to convict. The court declined to give such instructions and held that the jury could convict Collins solely for failing to disclose the PPA, whether or not it found that he had knowledge of the alleged hidden related-party debt and accounting fraud. Both the government's ultimate remarks to the jury and the court's charge reflected that ruling.

---

[1] As set forth in Collins's Response in Opposition to Plaintiffs' 56.1 Statement, Collins likewise joins in and incorporates the Response in Opposition to Plaintiffs' 56.1 Statement of codefendants Mayer Brown and Paul Koury.

1

The jury's general verdict cannot preclude Collins on the issue of his alleged knowledge and participation in Refco's alleged accounting fraud. It is impossible to say that the jury "actually decided" that Collins was a knowing participant in the accounting fraud, as opposed to convicting him based solely on his admitted failure to disclose the PPA. And even if the jury had actually decided that issue, the district court held that the issue was not "necessary" or essential to the jury's verdict, which could just as well have been based on an alternate and independent theory. On this record, and under well-settled precedents, issue preclusion is not applicable. *See, e.g., Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012).

## FACTUAL BACKGROUND

### The Second Superseding Indictment

The indictment, as interpreted by both the government and the district court, charged Collins with fraud on two alternative factual theories. First, it alleged that Collins knowingly participated in a scheme to falsify Refco's financial statements by concealing a large related-party debt of up to $1.1 billion owed to Refco by its corporate parent RGHI. SOF ¶ 1; Indictment ¶¶ 14-17, 28-30, 33-35, 38-49, Ex. A.[2] In particular, the government contended that Collins and colleagues at Mayer Brown prepared documents for "Round Trip Loan" transactions which temporarily reduced the related-party debt and deceived Refco's auditors as to its true amount. SOF ¶ 2; Indictment ¶¶ 14-17, 28-29, 35, 40-44, Ex. A. Second, the indictment alleged that Collins had knowingly concealed the PPA from investors in Refco, including Thomas H. Lee. SOF ¶ 1; Indictment ¶¶ 19-22, 26-27, 30, Ex. A.

Pursuant to the PPA, Refco's minority owner, the Austrian bank BAWAG, through its affiliate DF Capital, had purchased rights to share in the proceeds of any future sale of Refco.

---

[2] Unless otherwise indicated, all exhibit citations are to the exhibits to the Declaration of Reed A. Smith in Opposition to Plaintiffs' Motion for Partial Summary Judgment.

2

SOF ¶ 3; Indictment ¶ 19, Ex. A. The PPA provided BAWAG with both a substantial economic interest in Refco and with means to protect that interest. SOF ¶ 4; Indictment ¶¶ 19-20, Ex. A. For example, BAWAG obtained the right to convert its participation interests into equity, the right to block a sale of Refco, and a security interest in the membership shares of the company. *Id.* ¶¶ 19-21, Ex A; Proceeds Participation Agreement § 1.01, Ex. B; July 12, 2002 Letter Agreement § 5.1, Ex. C. The PPA also contemplated that $350 mm of the money that BAWAG paid to Refco in acquiring these rights would be applied for the benefit of RGHI, to retire RGHI borrowings from Refco. SOF ¶ 4; Indictment ¶ 19, Ex. A; July 12, 2002 Letter Agreement § 11.1, Ex. C.

The indictment alleged two theories of fraud. It alleged that Collins participated in a scheme "to hide the true financial condition *and economic structure* of Refco – including the existence of a large debt owed to Refco by RGHI *and the full extent of BAWAG's economic interest in Refco* – from Refco's banks, counterparties, auditors, investors, and potential investors." SOF ¶ 5; Indictment ¶ 7, Ex. A (emphasis added). The "true financial condition" referred to the accounting fraud allegations. The undisclosed aspect of Refco's "economic structure" and the undisclosed "extent of BAWAG's economic interest in Refco" refer to the proceeds participation rights purchased by BAWAG under the PPA.

The relationship between these two theories was litigated at the charging conference before the district court. The government argued, and the district court agreed, that the jury could convict Collins simply for concealing the PPA, whether or not he knew of the alleged accounting fraud, and it specifically declined to instruct the jury that it must find that Collins knew of the accounting fraud in order to convict. SOF ¶¶ 16-18, 23.

**The Evidence at Trial**

At trial, Collins denied any knowledge of the alleged Refco accounting fraud, and denied knowing the fraudulent purpose of the "Round Trip Loan" documents. SOF ¶ 6; Trial Tr. 250:24-251:10, 256:24-257:21, 268:8-11 (Defense Opening), Ex. D; Trial Tr. 3097:4-6 (Defense Summation), Ex. E. In contrast, he admitted that he knowingly did not disclose the existence of the PPA to TH Lee.[3] SOF ¶ 7; Trial Tr. 274:12-275:3 (Defense Opening), Ex. D. Unsurprisingly, the government's trial presentation emphasized Collins's admitted decision not to make disclosure, and emphasized his concealment of the PPA as fraud in itself.

The government specifically elicited testimony from representatives of TH Lee to show that under any circumstances – regardless of whether Collins knew of Refco's hidden inter-company debt – an agreement like the PPA would have been material to them. For instance, without reference to the alleged accounting fraud, the government questioned TH Lee principal Scott Schoen about why BAWAG's purchase of rights to share in the proceeds of a Refco sale would have "mattered" to him. SOF ¶ 8; Trial Tr. 434:7-24, Ex. F. Schoen explained that the PPA would have revealed "a very different set of circumstances in terms of ownership and the right to proceeds from the story that we had been told," and that BAWAG's undisclosed right to block the sale was inconsistent with the rights that TH Lee believed it was acquiring. *Id.* at 434:14-435:15, 435:15-24.

TH Lee's attorneys Jay Tabor and James Westra offered similar explanations of the significance of BAWAG's undisclosed interests under the PPA. Tabor testified, for example, that, in his communications with Collins and others, he had sought due diligence concerning any

---

[3] While admitting that he did not disclose the PPA, Collins consistently maintained that the non-disclosure was in good faith, based on his legal judgment at the time. *See* SOF ¶ 7; Trial Tr. 274:12-275:3 (Defense Opening), Ex. D.

4

"material contracts," including "any right that somebody has to get an ownership interest in this company," because:

> from a legal perspective, we needed to be able to confirm the ownership of this company, know who owned it, to be sure that our client was going to get the ownership percentage that it had bargained for.
>
> And to the extent there were any contracts under which somebody else had the right to get an interest, we would certainly want to understand those economics, or our client would.

SOF ¶ 9; Trial Tr. 2371:10-2372:8, 2386:23-2387:14, 2394:9-2395:6, 2395:14-2396:1, Ex. G. Westra addressed the importance of understanding whether any third-party, such as BAWAG, had a right – as BAWAG did under the PPA – to block, or veto a sale of Refco. SOF ¶ 10; Trial Tr. 2271:4-20, 2273:16-19, Ex. H.

Government witnesses John Sullivan and Jason Berger, lawyers who represented BAWAG during the TH Lee leveraged buyout, testified *solely* concerning the non-disclosure of the PPA. SOF ¶¶ 11-12. Sullivan recounted the reasons stated by Refco's principal Phillip Bennett for not making the disclosure – that it "could complicate the transaction" with TH Lee and "could drive down the price" (admissions that went to the independent materiality of the PPA). SOF ¶ 11; Trial Tr. 1959:18-22, Ex. I. Berger testified that he had argued to Collins that the terms of the TH Lee deal required that the PPA be disclosed. SOF ¶ 12; Trial Tr. 2007:24-2010:10 (Berger), Ex. J.

Much of the government's proof, through Tabor in particular, concerned various ways in which TH Lee and others had called for disclosure of agreements like the PPA. SOF ¶ 13; Trial Tr. 2362-2396, 2394-96, 2405-2416 (Tabor), Ex. G. But the government's evidence of the PPA also went well beyond the allegations that the PPA was material and not disclosed, to suggest an aura of bad faith. For example, the government offered evidence – albeit vigorously disputed by

5

the defense – that Collins deliberately drafted documents to conceal the PPA from Lee, and also hid the PPA from partners at Mayer Brown who might have advocated for its disclosure. SOF ¶ 14; Trial Tr. 2419:1-2426:12 (Tabor), Ex. G; Trial Tr. 2058:21-2073:12 (Berger), Ex. J.

The central place of the PPA in the government's case was further underscored by the admissions that the government culled from Collins's five days of testimony at his first trial, and from his three-day deposition in the civil litigation. These emphasized the PPA above any other issue in the case. Of the 22 exhibits introduced as admissions, 11 dealt exclusively with Collins's non-disclosure of the PPA – including a 35 page cross-examination on that single subject – and with the circumstances of alleged misrepresentations concerning the PPA, while several others dealt with the PPA along with other matters. SOF ¶ 15; Ex. K.

**Charge Requests, Summations and Jury Instructions**

The defense requested a jury instruction that would have required the jury to find that Collins knew of Refco's alleged hidden inter-company debt and accounting fraud in order to convict, and would have prohibited any conviction based on the PPA as a stand-alone theory. SOF ¶ 16; Collins's Supplemental Requests to Charge, Request 1, Ex. L. The government insisted, to the contrary, that the jury could convict Collins of fraud and conspiracy based solely on his alleged role in a scheme to hide the PPA, "even if the jury concludes somehow the defendant had no knowledge of the financial condition or, more significantly, the related-party receivable." SOF ¶ 17; Trial Tr. 2908:7-19 (Charging Conference), Ex. M.

Judge Preska agreed with the government. She concluded that a jury could find that the PPA should have been disclosed to TH Lee, and that disclosure was "a material omission in connection with the purchase or sale of securities" to TH Lee, and so constituted securities fraud, as well as a basis to convict for conspiracy. SOF ¶ 18; Trial Tr. 2911:3-10, 2913:3-6 (Charging

6

Conference), Ex. M. Accordingly, she denied the defense request to charge that the jury must find that Collins knew of the alleged accounting fraud in order to convict. *Id.* at 2919:9-15.

Consistent with its view that the government's two theories were independent, and that knowledge of the alleged underlying accounting fraud was therefore not essential to conviction, the court gave a theory of defense charge which, as the court expressly noted, addressed "the underlying fraud at Refco" and the non-disclosure of the PPA separately. SOF ¶ 19; Trial Tr. 2922:5-15 (Charging Conference), Ex. M; Trial Tr. 3352:4-14 (Jury Charge), Ex. N. The theory of defense charge given to the jury read, in its entirety, as follows:

> The defense contends that at all times the defendant acted in good faith. *With respect to the underlying fraud at Refco*, [Collins] contends that he did not scheme to hide the true financial condition of Refco and that he did not know that there was any hidden related-party debt between Refco and RGHI. *With respect to the PPA, he admits that he did not disclose it, but he contends that he did so in good faith as a lawyer representing his client.* More generally, Mr. Collins contends that he acted with the honest belief that the misstatements charged in the indictment were true and that no material misstatements were made.

*Id.* (emphasis added).

The Court also charged the jury on the theory of so-called *Pinkerton* liability. SOF ¶ 20; Trial Tr. 3388:6-3389:23 (Jury Charge). Under this instruction, if the jury found Collins guilty of conspiracy – whether with respect to the alleged accounting fraud or with respect to the alleged non-disclosure of the PPA – it could also find him guilty of any substantive offense committed by any coconspirator, without finding that Collins actually knew of or participated in the commission of that substantive offense. *Id.*

In light of the court's ruling on the defense charge request, the defense argued in its summation both that Collins was unaware of the alleged accounting fraud and that the non-disclosure of the PPA, standing alone, was not material. SOF ¶ 21; Trial Tr. 3097:2-3099:8,

7

3182:12-3184:1, 3206:24-3208:5, 3232:5-3234:11 (Defense Summation), Ex. E. The government responded squarely to the PPA argument in its rebuttal, detailing for the jury the reasons it could find the non-disclosure of the PPA to have been material apart from the alleged accounting fraud. SOF ¶ 22; Trial Tr. 3296:5-3307:10 (Rebuttal Summation), Ex. O. And the jury charge left open the possibility of conviction on either theory. SOF ¶ 23; Jury Charge, Ex. N.

Presented with evidence that the PPA was, on its own terms, material to TH Lee, argument from each side addressed to the independence of the PPA from the accounting fraud, and a charge that not only did not link the theories, but presented the defenses with respect to each theory separately, the jury returned a general verdict of guilty on seven of the ten counts of conspiracy and fraud.

## ARGUMENT

### I. THE JURY DID NOT ACTUALLY OR NECESSARILY DECIDE WHETHER COLLINS KNOWINGLY PARTICIPATED IN REFCO'S ACCOUNTING FRAUD

A party seeking issue preclusion must establish that: (1) an "identical" issue was involved in a prior proceeding, (2) the issue was "actually litigated and actually decided" in the prior proceeding, (3) there was a "full and fair opportunity to litigate" the issue in the prior proceeding, and (4) the determination of that issue was "necessary" or essential, in order "to support a valid and final judgment on the merits" in the prior proceeding. *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012). As the party asserting preclusion, plaintiffs have "the burden of 'showing with clarity and certainty what was determined by the prior judgment,' and 'issue preclusion will apply only if it is quite clear that this requirement has been met.'" *Weizmann Inst. of Sci. v. Neschis*, 421 F. Supp. 2d 654, 676 (S.D.N.Y. 2005) (quoting *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997)).

8

Plaintiffs cannot meet their burden. Plaintiffs contend that the jury's general verdict actually decided that Collins "schem[ed] to hide Refco's true financial condition" and knew that "there was hidden related-party debt between Refco and RGHI." Plaintiff's Br. at 21-22. But at trial the government presented evidence that the non-disclosure of the PPA was itself a material omission, independent of any accounting fraud. SOF ¶ 8; Trial Tr. 434:7-435:5, 435:15-24 (Schoen), Ex. F; SOF ¶ 9; Trial Tr. 2371:10-2372:8, 2386:23-2387:14, 2394:9-2395:6, 2395:14-2396:1 (Tabor), Ex. G; SOF ¶ 10; Trial Tr. 2271:4-20, 2273:16-19 (Westra), Ex. H; SOF ¶ 11; Trial Tr. 1959: 18-22 (Sullivan), Ex. I; SOF ¶ 12; Trial Tr. 2007:24-2010:10, 2058:21-2073:12 (Berger), Ex. J. And the district court held, over defense objection, that Collins's jury could convict on that theory, *without* finding that Collins knew of any underlying financial fraud and hidden related-party debt. SOF ¶ 18; Trial Tr. 2911:3-10, 2913:3-6, 2919:9-15 (Charging Conference), Ex. N. It declined a defense charge request that would have required the jury to decide whether Collins had knowledge of the Refco accounting fraud and hidden inter-company debt. SOF ¶¶ 16, 18; Collins's Supplemental Request to Charge, Request 1, Ex. L. Accordingly, a finding as to Collins's knowledge of the underlying fraud was not necessary to the jury's verdict, and the trial record does not establish with *any* degree of "clarity" or "certainty" that the jury ever decided that question.

Indeed, the court's jury instructions not only permitted a verdict based solely on non-disclosure of the PPA, but made explicit that two separate factual theories of fraud were at issue. Its instruction on the theory of defense dealt with Collins's defense to the alleged "underlying fraud at Refco" (lack of knowledge) and to the non-disclosure of the PPA (good faith legal basis for non-disclosure) as separate and independent points. SOF ¶ 19; Trial Tr. 3352:4-14 (Jury Charge), Ex. N. Plaintiffs quote the accounting fraud portion of this instruction in their brief, but

9

omit the instruction concerning the PPA. Plaintiffs' Br. at 21. It is one thing to seek issue preclusion, quite another to pretend that a separate issue, which could well have been the basis for the jury's verdict, simply does not exist.

Moreover, as explained in Mayer Brown's brief, if the jury convicted Collins merely for the alleged conspiracy to hide the PPA, without finding that he knew of any underlying accounting fraud, it could have gone on to convict him of the substantive offenses in the indictment. SOF ¶ 20; Trial Tr. 3388:6-3389:23 (Jury Charge), Ex. N. Under the *Pinkerton* charge given to the jury, if it found Collins guilty of conspiracy, the jury could find Collins guilty of offenses committed by his alleged coconspirators, whether or not it concluded that he actually knew of or participated in the commission of those offenses. *Id.*

For the reasons stated here, and in Point II of the brief submitted by Mayer Brown and Paul Koury, incorporated herein, the jury's verdict does not preclude Collins on the question of his knowledge of Refco's alleged accounting fraud and hidden inter-company debt.

## II. PLAINTIFFS ADD-ON ARGUMENT FROM EVIDENCE DEVELOPED IN DISCOVERY IS MERITLESS

In Point E of their brief plaintiffs purportedly seek summary judgment on the issue of Collins's participation in the Refco accounting fraud based not on issue preclusion, but on "the evidence developed in discovery in this case." Plaintiffs' Br. at 23. In response, Collins joins in the arguments of Mayer Brown and Paul Koury, as set forth in Point III of their brief. As that brief explains, the evidence developed in this proceeding – just like the evidence at Collins's criminal trial – creates a sharp factual dispute as to each of Plaintiffs' factual allegations.

## **CONCLUSION**

For the reasons stated here, and in Points II and III of the brief of codefendants Mayer Brown and Paul Koury, Plaintiffs' motion should be denied.

Dated: New York, New York
January 22, 2013

Respectfully submitted,

COOLEY LLP

By: /s/William J. Schwartz
   William J. Schwartz (WJS-8462)
   Jonathan Bach (JPB-9710)
   Reed A. Smith (RAS-3652)

1114 Avenue of the Americas
New York, New York  10036
Phone: (212) 479-6000
Fax:    (212) 479-6275

*Attorneys for Defendant Joseph P. Collins*