UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

In Re REFCO INC. SECURITIES LITIGATION     Case No. 07-MD-1902 (JSR)

------------------------------------- X

This Document Relates to:

------------------------------------- X

KENNETH M. KRYS, *et al.*,

                Plaintiffs,       Case No. 08-CV-3065 (JSR)
                                  Case No. 08-CV-3086 (JSR)

       -against-

CHRISTOPHER SUGRUE, *et al.*,        ORAL ARGUMENT REQUESTED

                Defendants.

------------------------------------- X

## RESPONSE OF JOSEPH P. COLLINS
## IN OPPOSITION TO PLAINTIFFS' RULE 56.1 STATEMENT

In accordance with Rule 56.1 of this Court's Local Civil Rules, defendant Joseph P. Collins submits this Response in Opposition to Plaintiffs' Rule 56.1 Statement, which Plaintiffs submitted in support of their Motion for Partial Summary Judgment Against the Mayer Brown Defendants ("Motion").  Facts admitted herein, and by the incorporation herein of the Response in Opposition to Plaintiffs' Rule 56.1 Statement submitted on of behalf of Mayer Brown and Paul Koury, are admitted only for purposes of Plaintiffs' Motion.  Collins accordingly reserves the right to dispute any such facts at trial or otherwise.

## RESPONSE TO PLAINTIFFS' RULE 56.1 STATEMENT

Collins joins in the Response in Opposition to Plaintiffs' Rule 56.1 Statement submitted on behalf of Mayer Brown and Paul Koury and incorporates that Response here, along with all objections stated therein, and all additional material facts set forth therein.

## COLLINS'S STATEMENT OF ADDITIONAL MATERIAL FACTS

1.  At Collins's criminal trial, the indictment charged Collins with fraud and conspiracy on two theories:  (1) knowingly participating in a scheme to falsify Refco's financial statements by concealing a large related-party debt, of up to $1.1 billion, owed to Refco by its corporate parent RGHI—referred to here as Refco's accounting fraud, Indictment ¶¶ 14-17, 28-30, 33-35, 38-49 (Ex. A to Declaration of Reed A. Smith ("Smith Decl."))—and (2) knowingly participating in a scheme to conceal a 2002 Proceeds Participation Agreement ("the PPA") during the TH Lee leveraged buyout of Refco.  *Id.* at ¶¶ 19-22, 26-27, 30.

2.  With respect to the accounting fraud, the government alleged, in particular, that Collins and colleagues at Mayer Brown prepared documents for "Round Trip Loan" transactions which temporarily reduced the related-party debt and deceived Refco's auditors as to its true amount.  *Id.* at ¶¶ 7, 14-17, 28-29, 35, 40-44.

3.      The indictment alleged that, pursuant to the PPA, Refco's minority owner, the Austrian bank BAWAG, through its affiliate DF Capital, had purchased rights to share in the proceeds of any future sale of Refco. *Id.* at ¶ 19-21; Proceeds Participation Agreement § 1.01 (Ex. B to Smith Decl.).

4.      As set forth in the Indictment, the PPA provided BAWAG with a substantial economic interest in Refco, rights to convert its participation interests into equity, to block a sale of Refco, and a security interest in the membership shares of the company. Indictment ¶¶ 19-21 (Ex. A to Smith Decl.); Proceeds Participation Agreement § 1.01 (Ex. B to Smith Decl.); July 12, 2002 Letter Agreement in connection with the Proceeds Participation Agreement, § 5.1 (Ex. C to Smith Decl.). The PPA transaction also contemplated that $350 mm of the money that BAWAG paid to Refco in acquiring these rights would be applied for the benefit of RGHI to retire RGHI borrowings from Refco. Indictment ¶ 19 (Ex. A to Smith Decl.); July 12, 2002 Letter Agreement in connection with the Proceeds Participation Agreement, § 11.1 (Ex. C to Smith Decl.).

5.      The indictment alleged that Collins participated in a scheme with Bennett, Trosten and others "to hide the true financial condition and economic structure of Refco – including the existence of a large debt owed to Refco by RGHI and the full extent of BAWAG's economic interest in Refco – from Refco's banks, counterparties, auditors, investors, and potential investors." Indictment ¶ 7 (Ex. A to Smith Decl.).

6.      At his criminal trial, Collins denied any knowledge of the alleged Refco accounting fraud and the fraudulent purpose of the "Round Trip Loan" documents. Defense Opening: 256:24-257:21, 268:8-11 (Ex. D to Smith Decl.); Defense Summation: 3097:4-6 (Ex. E to Smith Decl.).

7.      At his criminal trial, Collins admitted that he purposefully did not disclose the existence of the PPA, but contended that he did so in good faith.  Defense Opening: 274:12-275:3 (Ex. D to Smith Decl.).

8.      At the criminal trial the government elicited testimony from TH Lee principal Scott Schoen about why BAWAG's purchase of rights to share in the proceeds of a Refco sale would have "mattered to" him.  Schoen: 434:7-435:24 (Ex. F to Smith Decl.).  Schoen testified that the PPA, would have revealed "a very different set of circumstances in terms of ownership and the right to proceeds from the story that we had been told"; that BAWAG's undisclosed right to block the sale was inconsistent with the rights that TH Lee believed it was acquiring.  *Id.* at 434:14-435:5, 435:15-24.

9.      The government elicited testimony from TH Lee's attorney Jay Tabor that, in his communications with Collins and others, he had sought due diligence concerning any "material contracts," including "any right that somebody has to get an ownership interest in this company," because

> From a legal perspective, we needed to be able to confirm the ownership of this company, know who owned it, to be sure that our client was going to get the ownership percentage that it had bargained for.
>
> And to the extent there were any contracts under which somebody else had the right to get an interest, we would certainly want to understand those economics, or our client would.

Tabor: 2371:10-2372:8, 2386:23-2387:14, 2394:9-2395:6, 2395:14-2396:1 (Ex. G to Smith Decl.).

10.      The government elicited testimony from TH Lee's attorney James Westra that it was important to TH Lee to understand whether any third-party had the right to block, or veto a proposed transaction.  Westra: 2271:4-20, 2273:11-19 (Ex. H to Smith Decl.).

11.    The government elicited testimony from John Sullivan, a lawyer who represented BAWAG during the TH Lee leveraged buyout, concerning a meeting with Collins and Refco's principal Phillip Bennett, at which he explained that he did not want to disclose the PPA to TH Lee because it "could complicate the transaction" and "could drive down the price." Sullivan: 1959:12-22 (Ex. I to Smith Decl.). The government elicited testimony from Sullivan solely about the PPA. *Id.* at 1953-1965, 1986-1990.

12.    The government elicited testimony from Jason Berger, Sullivan's partner, that he had argued to Collins that the terms of the TH Lee deal required that the PPA be disclosed. Berger: 2007:24-2010:10 (Ex. J to Smith Decl.). The government elicited testimony from Berger solely about the PPA. *Id.* at 1997-2083.

13.    The government elicited testimony concerning various ways in which TH Lee had called for disclosure of agreements like the PPA. Tabor: 2394-2396, 2405-2416 (Ex. G to Smith Decl.).

14.    The government introduced evidence and argued to the jury that Collins deliberately drafted documents to conceal the PPA from Lee, and also hid the PPA from partners at Mayer Brown who might have advocated for its disclosure. Tabor: 2419:1-2426:12 (Ex. G to Smith Decl.); Berger: 2058:21-2073:12 (Ex. J to Smith Decl.).

15.    The government introduced admissions from Collins's five-days of testimony at his first trial, and from his three-day deposition in the civil litigation. Of 22 exhibits introduced as admissions, 11 dealt exclusively with Collins's non-disclosure of the PPA—including a 35 page cross-examination on that single subject—or circumstances of his alleged misrepresentations concerning the PPA. Government Exhibits 2204, 2205, 2206, 2207, 2209, 2210, 2211-1, 2211-3, 2211-6, 2211-7, 2211-8 (Ex. K to Smith Decl.). Among the other

admissions introduced, several dealt with the PPA along with other matters.  Government Exhibits 2200, 2211-10 (Ex. K to Smith Decl.).

16.    The defense requested a jury instruction that would have required the jury to find that Collins knew of Refco's hidden inter-company debt and accounting fraud in order to convict.  Collins's Supplemental Requests to Charge, Request 1 (Ex. L to Smith Decl.).

17.    At the charging conference, the government argued that that the jury could convict Collins of fraud and conspiracy based solely on his alleged role in a scheme to hide the PPA, "[e]ven if the jury concludes somehow the defendant had no knowledge of the financial condition or, more significantly, the related-party receivable."  Charging Conference: 2908:8-11 (Ex M to Smith Decl.).

18.    The district court agreed with the government concluding that the jury could find that the PPA should have been disclosed to TH Lee, that disclosure was a "material omission in connection with the purchase or sale of securities" to TH Lee, and that it was securities fraud, as well as a basis to convict for conspiracy.  Charging Conference: 2911:3-10, 2913:3-6, 2919:9-15 (Ex. M to Smith Decl.).

19.    The court gave a theory of defense charge which, as the court expressly noted, addressed "the underlying fraud at Refco" and the non-disclosure of the PPA separately.  *Id.* at 2922:5-15.  The theory of defense charge read:

> The defense contends that at all times the defendant acted in good faith.  *With respect to the underlying fraud at Refco,* [Collins] contends that he did not scheme to hide the true financial condition of Refco and that he did not know that there was any hidden related-party debt between Refco and RGHI.  *With respect to the PPA, he admits that he did not disclose it, but he contends that he did so in good faith as a lawyer representing his client.*  More generally, Mr. Collins contends that he acted with the honest belief that the misstatements charged in the indictment were true and that no material misstatements were made.

Jury Charge: 3352:4-14 (emphasis added) (Ex. N to Smith Decl.).

20.     The court instructed the jury that, if it found Collins guilty on the conspiracy count, it could convict him of any of the substantive offenses charged in the indictment, based on the acts of his coconspirators, whether or not Collins actually knew of or participated in the commission of those offenses. *Id.* at 3388:6-3389:23.

21.     The defense argued in its summation both that Collins was unaware of the alleged accounting fraud and that the PPA, standing alone, was not material.  Defense Summation: 3097:2-3099:8, 3182:12-3184:1, 3206:24-3208:5, 3232:5-3234:11 (Ex. E to Smith Decl.).

22.     The government responded to the defense's PPA argument in its rebuttal, detailing for the jury reasons that it could find the non-disclosure of the PPA to have been material apart from the accounting fraud.  Government Rebuttal Summation: 3296:5-3307:10 (Ex. O to Smith Decl.).

23.     The jury charge allowed the jury to convict of conspiracy and fraud either on the accounting fraud theory, or on the stand-alone theory that Collins schemed to conceal the PPA from TH Lee.  Jury Charge (Ex. N to Smith Decl.).

Dated: New York, New York
         January 22, 2013

                                        Respectfully submitted,

                                        COOLEY LLP

                                        By:   */s/William J. Schwartz*
                                               William J. Schwartz (WJS-8462)
                                               Jonathan Bach (JPB-9710)
                                               Reed A. Smith (RAS-3652)

                                        1114 Avenue of the Americas
                                        New York, New York  10036
                                        Phone: (212) 479-6000
                                        Fax:    (212) 479-6275

                                        *Attorneys for Defendant Joseph P. Collins*