**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| IN RE REFCO INC. SECURITIES LITIGATION | : | 07-MD-1902 (JSR) |
| ----------------------------------------------- | : | |

This document relates to:

-----------------------------------------------

|  |  |  |
|---|---|---|
| KENNETH M. KRYS, *ET AL.,* | : | |
| | : | |
| Plaintiffs, | : | 08-CV-3086 (JSR) |
| -against- | : | |
| | : | |
| CHRISTOPHER SUGRUE, *ET AL.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ----------------------------------------------- | : | |

## THE GRANT THORNTON DEFENDANTS' OPPOSITION
## TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## ON THE ISSUE OF THE PRIMARY VIOLATION OF FRAUD BY REFCO

WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700

200 Park Avenue
New York, New York 10166
Ph: 212-294-6700
Fax: 212-294-4700

*Attorneys for Defendants*
*Grant Thornton LLP and Mark Ramler*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..............................................................................................................3

    I.    Plaintiffs have failed to establish that they are entitled to judgment as
a matter of law on all the elements of the primary violation. ...................5

    II.    Plaintiffs have also failed to present clear, convincing, and admissible
evidence proving their version of the facts beyond any genuine dispute. ..............8

        A.    Plaintiffs' bare assertion that "no one disputes" certain
facts is false, unsupported, and wholly insufficient as a basis for
summary judgment....................................................................................8

        B.    Plaintiffs' Rule 56.1 statement fails to cite admissible evidence
sufficient to prove the alleged facts that underlie their request
for summary judgment. ...........................................................................10

            1.    *Prior R&Rs* ................................................................11

            2.    *Refco Examiner's Report* ............................................12

            3.    *Report of purported expert witness Richard Breeden*....................13

            4.    *Refco officers' convictions* ..........................................14

            5.    *Refco officers' depositions* ...........................................15

CONCLUSION.............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*de Abreu v. Bank of Am. Corp.*,
   812 F. Supp. 2d 316, 322 (S.D.N.Y. 2011)..................................................................4, 10

*Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*,
   155 F.3d 612, 618 (2d Cir. 1998).....................................................................4, 7, 8, 10

*Bigio v. Coca-Cola Co.*,
   675 F.3d 163, 172 (2d Cir. 2012).............................................................................5

*Capital Mgmt. Select Fund Ltd. v. Bennett*,
   680 F.3d 214, 228-29 (2d Cir. 2012) .........................................................................9

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 323 (1986)....................................................................................3

*Feurtado v. City of New York*,
   337 F. Supp. 2d 593, 599 (S.D.N.Y. 2004)...................................................................4, 7

*Giannullo v. City of New York*,
   322 F.3d 139, 140-141 (2d Cir. 2003) .........................................................................10

*Highland Capital Mgmt. L.P. v. Schneider*,
   379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)....................................................................14

*In re Basis Yield Alpha Fund (Master)*,
   381 B.R. 37, 52 (Bankr. S.D.N.Y. 2008)......................................................................4

*In re FiberMark, Inc.*,
   339 B.R. 321, 326-27 (Bankr. D. Vt. 2002) ..............................................................12, 13

*In re Granite Broadcasting Corp.*,
   369 B.R. 120, 128 n.10 (Bankr. S.D.N.Y. 2007)...............................................................12

*In re Lehman Bros. Securities & ERISA Litig.*,
   -- F. Supp. 2d --, 2012 WL 4866504, at *22-23 (S.D.N.Y. Oct. 15, 2012)................................5

*In re Monus*,
   No. 92-41883, 1995 WL 469694, at *9 (Bankr. N.D. Ohio 1995)...........................................13

*In re New Jersey Mobile Dental Practice P.A.*,
   Nos. 05-17772, 08-10463, 2012 WL 3018052, at *6 (Bankr. D.N.J. July 24, 2012)..............12

*In re Refco Cap. Markets Ltd. Brokerage Customer Sec. Litig.*,
   586 F. Supp. 2d 172, 182-86 (S.D.N.Y. 2008) ...........................................................9

*In re Rezulin Prods. Liability Litig.,*
    309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004)............................................................14

*In re Rickel & Assocs., Inc.,*
    272 B.R. 74, 87-88 (Bankr. S.D.N.Y. 2002)..........................................................12

*Kirschner v. Bennett,*
    648 F. Supp. 2d 525, 534-44 (S.D.N.Y. 2009) ...................................................5, 6

*Marketxt Holdings Corp v. Engel & Reiman, P.C.,*
    693 F. Supp. 2d 387, 396-97 (S.D.N.Y. 2010) ........................................................5

*Meisels v. Schon Family Foundation,*
    28 Misc.3d 1205(A), 2010 WL 2674049, at *5-6 (N.Y. Sup. Jun. 28, 2010) ..........5

*Nat'l State Bank v. Fed. Res. Bank,*
    979 F.2d 1579, 1582 (3d Cir. 1992)........................................................................4

*Pension Committee of University of Montreal Pension Plan v. Bank of America*
    *Securities, LLC,* 446 F. Supp. 2d 163 (S.D.N.Y. 2006)......................................6, 7

*Presbyterian Church of Sudan v. Talisman Energy, Inc.,*
    582 F.3d 244, 264 (2d Cir. 2009)......................................................................3, 10

*Raskin v. Wyatt Co.,*
    125 F.3d 55, 66 (2d Cir. 1997)..........................................................................3, 10

*Saleh Holdings Group, Inc. v. Chernov,*
    30 Misc.3d 1220(A), 2011 WL 452999, at *5 (N.Y. Sup. Jan. 31, 2011)................5

*Scott v. Harris,*
    500 U.S. 372, 378 (2007).........................................................................................3

*Sofford v. Schindler Elevator Corp.,*
    954 F. Supp. 1459, 1463 (D. Colo. 1997)..............................................................13

*Zorn v. Mount Sinai Medical Ctr., Inc.,*
    No. 09 Civ. 3228, 2012 WL 4320575, at *2 (S.D.N.Y. Sept. 20, 2012)................13

## STATUTES

15 U.S.C. § 78m & 78ff....................................................................................................3, 15

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure ....................................................................................13

Local Rule 56.1 ...............................................................................................2, 3, 8, 10

Federal Rule of Evidence 702......................................................................................13, 14

Federal Rule of Evidence 803(8)....................................................................................12

## PRELIMINARY STATEMENT

Plaintiffs have asked the Court to make an astonishing leap.  They start with a reasonable premise:  that Phil Bennett and other Refco officers engaged in a collusive criminal scheme.  But then—based on that premise alone—Plaintiffs ask the Court to conclude as a matter of law that they have established a "primary violation of fraud."  Mem. of Law Supporting Pls. Mot. for Partial Summ. J. ("Mem.") 1 & n.3; *see also* Notice of Motion (seeking summary judgment "on the issue of the primary violation").  That would leave the jury to decide only whether these defendants knew about the primary violation and provided substantial assistance (and to quantify any damages).  Mem. 1 & n.3, 15.  This request has no support in logic, law, or fact.

Most importantly, Plaintiffs' motion skips an obvious and critical step:  ***proving the elements of the primary violation***.  To obtain judgment establishing a "primary violation of fraud," Plaintiffs must prove all the elements of the tort of fraud under New York law.  *See* R&R on the Omnibus Issue of Primary Violations by Refco ("Primary Violations R&R") at 21 (Mar. 1, 2010), *adopted* May 3, 2011.  That means Plaintiffs must prove—with clear and convincing evidence—that (1) one or more specific statements by Refco were materially false, (2) those misstatements were made with the intent to defraud entities like the SPhinX Managed Futures Fund ("SMFF"), (3) SMFF "reasonably relied" on those misstatements, and (4) this reliance proximately caused SMFF's injury.  *Id.*  Plaintiffs' motion utterly ignores these elements, and it fails to cite any evidence that could possibly establish them as a matter of law.  On that basis alone, the motion should be denied.

It is easy to see why Plaintiffs would prefer to ignore the elements of the primary violation.  On at least three of those elements, Plaintiffs do not have sufficient evidence even to take their case to a jury.  *See* Joint Mem. Addressing Common Issues in Defs.' Mots. for Summ.

J. (filed Dec. 17, 2012) (seeking summary judgment on that basis).  It is now clear that SMFF did *not* rely on any false statements about Refco's financial condition.  *Id.* at 4-16.  Nor is there any evidence that Refco intended that entities like SMFF rely on any such false statements.  *Id.* at 16-20.  And Refco's alleged misstatements about its financial condition did *not* cause SMFF to part with the $263 million it seeks in this case.  *Id.* at 36-42.  New York law places the burden of proof on these elements squarely on Plaintiffs, and it requires them to carry that burden with clear and convincing evidence.  On this record, Plaintiffs cannot possibly do so.

Even with respect to the few alleged "facts" that underlie their motion, Plaintiffs have failed to carry their burden of proof—which independently requires that their motion be denied. Plaintiffs' Rule 56.1 statement cites no admissible evidence establishing that the RGHI receivable was worthless (it was not; it was ultimately paid in full), that the interest on it was imaginary (it was not; every penny was collected), or that Refco engaged in a general practice of misappropriating customer funds (it did not; its use of funds was authorized by the customers' contracts).  *See* Mem. 4-6 (asserting that these alleged facts were all an essential part of the fraud).   Fact-intensive issues like these are hardly "proper candidate[s] for judicial notice" (*id.* at 1).  And Plaintiffs' repeated statement that "[n]o one disputes" these facts (*id.* at 4-6, 10) is unequivocally false.  The Grant Thornton Defendants *do* dispute these facts, and Plaintiffs have not shown otherwise.

To be clear, Plaintiffs and the Grant Thornton Defendants agree about one thing: Refco's officers engaged in an elaborate criminal scheme.  That scheme was the basis of the officers' criminal convictions, of which Plaintiffs now seek judicial notice.  *See* Mem. 1 & 4 n.6. But the Grant Thornton Defendants strenuously disagree with Plaintiffs about what that scheme entailed.  For example, the officers' convictions do not show any "pending insolvency" (Mem.

5), illusory interest (*id.*), or wrongful "diver[sion]" of customer cash (*id.* at 6).  And the convictions certainly do not establish that these Plaintiffs have a cognizable claim for fraud under New York law.  In fact, the convictions have nothing to do with SMFF at all.

What the convictions do show is that the Refco officers engaged in a fraudulent scheme ***against Grant Thornton***.  Both the Government and the Refco officers have consistently described Grant Thornton and Mark Ramler as targets of the scheme—never as co-conspirators. At least three of the officers were convicted of crimes based on "material misstatements to auditors" in violation of 15 U.S.C. §§ 78m & 78ff, and they have admitted under oath that deceiving Grant Thornton was a central focus of their scheme.  *See* Grant Thornton Defs. Resp. to Pls. 56.1 St. ¶¶ 3, 5 (filed today) ("Resp. to Pls. 56.1 St.").  It is the height of irony that Plaintiffs are trying to establish a fraud ***aided by*** the Grant Thornton Defendants based on convictions that actually show a fraudulent scheme ***against*** those same defendants.

## ARGUMENT

As Plaintiffs acknowledge, "[t]he moving party bears the burden of identifying matters that it believes demonstrate the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and all reasonable inferences are drawn in favor of the nonmoving party, *see Scott v. Harris*, 500 U.S. 372, 378 (2007)."  Mem. 2 (other citations omitted).  The motion and Rule 56.1 statement must demonstrate that there is no genuine dispute of fact, citing evidence that would be admissible at trial.  *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (same).

These burdens are particularly heavy when the moving party is seeking summary judgment on an issue on which it would bear the burden of proof at trial. *See Feurtado v. City of New York*, 337 F. Supp. 2d 593, 599 (S.D.N.Y. 2004); *Nat'l State Bank v. Fed. Res. Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). In such a case, the moving party's "own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). "A court may properly deny a motion for summary judgment, even where no opposing evidentiary matters are presented, when the movant bears the burden of proof at trial and fails to establish the absence of genuine issues of fact." *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 52 (Bankr. S.D.N.Y. 2008) (citing *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992)); *see also Nat'l State Bank*, 979 F.2d at 1582 ("[W]here the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented."). Here, of course, the burden is even higher, as Plaintiffs bear the burden of proving all the elements of a claim for aiding and abetting fraud with "clear and convincing evidence," even at the summary judgment stage. *See de Abreu v. Bank of Am. Corp.*, 812 F. Supp. 2d 316, 322 (S.D.N.Y. 2011).

Plaintiffs' motion makes no serious attempt to meet these standards. First, it seeks summary judgment "on the issue of the primary violation" (Mem. 1) without either acknowledging or attempting to satisfy the elements of that primary violation. And second, even with respect to the few alleged facts it does present—relating to the scope and workings of the Refco officers' wrongdoing—Plaintiffs have failed to present admissible evidence sufficient to show that a reasonable jury would have no choice but to find those facts in their favor. Either one of these flaws is enough to require denying Plaintiffs' motion outright.

**I.     Plaintiffs have failed to establish that they are entitled to judgment as a matter of law on all the elements of the primary violation.**

To recover for aiding and abetting, a plaintiff must first prove a ***tort*** for the defendant to aid and abet. *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012) (claim for aiding and abetting requires "(1) the existence of a[n underlying tort]; (2) [the] defendant's knowledge of the [underlying tort]; and (3) that the defendant provided substantial assistance to advance the [underlying tort's] commission") (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (alterations by the Second Circuit in *Bigio*)).

That means proving all the elements of the primary cause of action under the common law—including, for example, the element of reliance. *In re Lehman Bros. Securities & ERISA Litig.*, -- F. Supp. 2d --, 2012 WL 4866504, at *22-23 (S.D.N.Y. Oct. 15, 2012) ("Absent a sufficient claim of a primary fraud," including the element of reliance, "a claim for aiding and abetting fraud must fail without regard to whether the remaining elements are satisfied."); *see, e.g.*, *Marketxt Holdings Corp v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 396-97 (S.D.N.Y. 2010) (no claim for aiding and abetting fraud where plaintiff did not plead the reliance element of the primary violation); *Meisels v. Schon Family Foundation*, 28 Misc.3d 1205(A), 2010 WL 2674049, at *5-6 (N.Y. Sup. Jun. 28, 2010) (no claim for aiding and abetting fraud where plaintiff did not "establish the elements of" the primary violation of fraud); *Saleh Holdings Group, Inc. v. Chernov*, 30 Misc.3d 1220(A), 2011 WL 452999, at *5 (N.Y. Sup. Jan. 31, 2011) (no claim for aiding and abetting fraud where plaintiff failed to show "a cognizable primary claim of fraud").

This unremarkable proposition has been well established in this litigation since the very beginning. *See Kirschner v. Bennett*, 648 F. Supp. 2d 525, 534-44 (S.D.N.Y. 2009) (dismissing claim for aiding and abetting because plaintiff failed to plead the elements of the underlying

torts, including fraud); R&R in *Kirschner v. Bennett* at 10 (June 3, 2010), *adopted* Dec. 13, 2010

("Of course if the Trustee has failed to plead sufficiently the underlying torts, there can be no

aiding and abetting claim . . . ."). In this case specifically, the Special Master devoted an entire

42-page R&R to a painstaking analysis of whether Plaintiffs had adequately alleged the elements

of their asserted primary violations. *See* Primary Violations R&R. For the fraud claim in

particular, the Special Master made clear that Plaintiffs would have to establish all the usual

elements of the tort of fraud, including that "(1) the defendant made a material false statement,

(2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied

upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Id.* at

21 (citing *Blank v. Baronowski*, 959 F. Supp. 172, 177 (S.D.N.Y. 1997)).

Incredibly, despite all these clear statements of the law, Plaintiffs' motion purports to

seek "Partial Summary Judgment on the Issue of the Primary Violation of Fraud" (Notice of

Motion; Mem. 1) without even ***mentioning*** the elements of that primary violation. The basis for

this request seems to be a single statement in a Southern District of New York decision—which

they have taken entirely out of context. In a footnote, they cite *Pension Committee of University*

*of Montreal Pension Plan v. Bank of America Securities, LLC*, 446 F. Supp. 2d 163 (S.D.N.Y.

2006), as holding that a claim for aiding and abetting fraud has four elements: "1) the existence

of a fraud; 2) defendants' knowledge of the fraud; 3) that the defendant provided substantial

assistance to advance the fraud's commission, and 4) damages." Mem. 1 n.3; *see also* Pls. Mem.

in Support of Mot. for Partial Summ. J. Against the Mayer Brown Defs. at 14 (filed Dec. 17,

2012) (invoking the same case for the same proposition). Referring to that list of elements,

Plaintiffs contend that they are entitled to summary judgment on the first one—"the existence of

a fraud"—because the Refco officers have been convicted of crimes and the parties all agree that those officers (and Refco) engaged in deceptive conduct.

But *Pension Committee* does not hold—nor does it even suggest—that a plaintiff can establish the "existence of a fraud *without satisfying the legal elements of a cause of action for fraud*. In that case, the elements of fraud were not at issue. The plaintiff-investors had "alleged[d] that their losses were caused by" an underlying fraudulent scheme that included specific misrepresentations made by the primary violators to the plaintiffs in particular. 446 F. Supp. 2d at 172. Against that backdrop, the defendants had moved to dismiss the aiding and abetting claims for failure to plead the *other* aspects of aiding and abetting—knowledge and substantial assistance—and the court granted dismissal on that basis. *Id.* at 201-04. So, the *Pension Committee* decision provides no support for Plaintiffs' position—and it certainly does not entitle them to ignore the clear precedents cited above.

On this basis alone, Plaintiffs' motion should be denied. Plaintiffs bear the burden of proof of the primary violation, so they "must furnish evidence" showing that they are entitled to judgment on that issue as a matter of law. *Feurtado*, 337 F. Supp. 2d at 599; *Albee Tomato,* 155 F.3d at 618. They have not done so, as they have failed to present *any* evidence establishing the elements they are required to meet. They do not quote any specific representation by Refco and explain how it was materially false. They completely ignore the elements of reliance, intent to induce, and causation. And they certainly have not presented evidence from which a reasonable jury would be compelled to resolve all these elements in their favor. In fact, on at least three of the four elements of fraud, Plaintiffs cannot produce enough evidence *even to take their claim to a jury*. *See* Joint Mem. of Law Addressing Common Issues in Defendants' Mots. for Summ. J. at 4-16 (no evidence of reliance); *id.* at 16-20 (no evidence of intent to induce reliance); *id.* at 36-

42 (no causation as a matter of law).  Given these gaps in their case, Plaintiffs cannot obtain summary judgment merely by insisting that the existence of a primary violation is a matter "without substantial controversy."  Mem. 2.

## II.   Plaintiffs have also failed to present clear, convincing, and admissible evidence proving their version of the facts beyond any genuine dispute.

Even with respect to the limited "facts" underlying their motion, Plaintiffs have failed to carry their burden of proof.  The motion is based on Plaintiffs' factual account of the "[w]orkings" of the Refco officers' misconduct.  *See* Mem. 4-6.  But rather than proving this account with clear and convincing (and admissible) evidence, Plaintiffs simply assert that "[n]o one disputes" them, so they may be "deemed to be admitted."  Mem. 4-6, 10, 15.  That is false, and Plaintiffs have not proven otherwise.  On this basis too, the motion should be denied.

### A.   Plaintiffs' bare assertion that "no one disputes" certain facts is false, unsupported, and wholly insufficient as a basis for summary judgment.

Lest there be any doubt, the Grant Thornton Defendants *do* dispute Plaintiffs' account of the facts.  Again, as the parties bearing the burden of proof on these issues at trial, Plaintiffs were required to present clear and convincing evidence that demonstrates the absence of any genuine dispute.  Their failure to do so within their own submission means that that their motion must be denied, even if the Grant Thornton Defendants declined to present any facts at all in response.  *See Albee Tomato*, 155 F.3d at 617-18 (reversing grant of summary judgment on that basis).

Nevertheless, although they had no obligation to do so, the Grant Thornton Defendants have laid out some of the grounds for their factual disputes in their response to Plaintiffs' Rule 56.1 Statement.  For example, the Grant Thornton Defendants dispute Plaintiffs' assertion that the RGHI receivable and its components were "worthless" and thus that the fraud masked a "pending insolvency" (Mem. 5; Pls. 56.1 St. ¶ 8).  Apart from whatever other assets might have been available to satisfy customer losses in the late 1990s (had Refco engaged in a serious

collection effort), RGHI had assets of its own, and Phil Bennett had access to (and ultimately obtained) the cash to repay the receivable in full. Resp. to Pls. 56.1 St. ¶ 8. The Grant Thornton Defendants also dispute that the interest charges on the RGHI receivable were "imaginary" and falsely "inflated Refco's reported profits and net worth" (Mem. 5; Pls. 56.1 St. ¶¶ 2, 9). By October 10, 2005, every penny of that interest had been realized, producing real value that was available to Refco and (ultimately) to its creditors. *See* Resp. to Pls. 56.1 St. ¶¶ 1, 9.

Moreover, as Plaintiffs well know, the Grant Thornton Defendants dispute that Refco had a general practice of "misappropriat[ing]," "misus[ing]," and wrongfully "diverting" customer cash (Mem. 6; Pls. 56.1 St. ¶¶ 5, 11). On this issue, both the district court and the Second Circuit have already expressed agreement with Grant Thornton's position, recognizing that Refco's use of customer cash at Refco Capital Markets Ltd. ("RCM") was consistent with the terms of RCM's customer agreements. *See Capital Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214, 228-29 (2d Cir. 2012) (recognizing that the Margin Annex authorized and warned of such use); *see also In re Refco Cap. Markets Ltd. Brokerage Customer Sec. Litig.*, 586 F. Supp. 2d 172, 182-86 (S.D.N.Y. 2008) (same), *aff'd sub nom. Capital Mgmt. Select Fund Ltd. v. Bennett*, *supra*; Primary Violations R&R at 40-41; R&R on Mots. to Dismiss by Grant Thornton and Mark Ramler at 19 (Dec. 16, 2011), *adopted* Mar. 20, 2012.

In the face of these disputes, it is disingenuous for Plaintiffs to say that "[n]o one disputes these facts" and that they can be "deemed to be admitted" (Mem. 4-6, 10, 15). The Grant Thornton Defendants have never "admitted" anything of the kind, and Plaintiffs do not identify a single brief, transcript, or expert report showing that they did. In fact, the section of Plaintiffs' 56.1 statement purporting to show what the defendants "have admitted" contains no record citations at all. *See* Pls. 56.1 St. ¶¶ 1-2.

Plaintiffs do cite the expert report and deposition testimony of John Ellingsen, whom the Grant Thornton Defendants have disclosed as an expert witness on accounting and auditing. *See id.* ¶¶ 12-13; Mem. 8.   But even Plaintiffs themselves do not contend that Mr. Ellingsen's opinions support their account of the Refco fraud. *See id.* (asserting only that "Mr. Ellingsen focuses on the RGHI receivable, the undisclosed guarantees and the round-trip loans").   As for the other defendants' experts—including the underwriters' experts Douglas K. Rudley and Robert M. Daines, who are the main focus of Plaintiffs' argument (*id.* at 6-8)—their cited opinions do not support Plaintiffs' account either. *See* Resp. to Pls. 56.1 St. ¶¶ 12-13 (explaining how Plaintiffs are misusing these opinions).   And the opinions of those experts could not constitute an admission by the Grant Thornton Defendants in any event.

### B.   Plaintiffs' Rule 56.1 statement fails to cite admissible evidence sufficient to prove the alleged facts that underlie their request for summary judgment.

Beyond their baseless assertions about what "[n]o one disputes," Plaintiffs offer little, if anything, to support the factual assertions that underlie their motion.   As the Second Circuit has held, "only *admissible* evidence need be considered by the trial court in ruling on a motion for summary judgment." *Presbyterian Church of Sudan*, 582 F.3d at 264 (emphasis added); *accord Raskin*, 125 F.3d at 66.   Plaintiffs' failure to present admissible evidence is fatal to their motion no matter what the Grant Thornton Defendants present in response, as "the non-movant is not required to rebut an insufficient showing." *Giannullo v. City of New York*, 322 F.3d 139, 140-141 (2d Cir. 2003); *see Albee Tomato, Inc.*, 155 F.3d at 618.   And Plaintiffs certainly have not presented admissible evidence that is so "clear and convincing" that it establishes their version of the facts as a matter of law. *See de Abreu*, 812 F. Supp. 2d at 322.

1. *Prior R&Rs*

Of all the citations in the 56.1 statement, perhaps the most troubling are Plaintiffs' citations to prior orders and R&Rs. *See* Pls. St. 56.1 ¶¶ 17, 18. Plaintiffs say these orders "recount[] the facts constituting the Refco fraud." *Id.* ¶ 18. And they quote from the Primary Violations R&R as describing what "the Refco fraud constituted." *Id.* ¶ 17; *see also id.* ¶ 18 (stating that the fraud was "'chronicled'" in prior R&Rs and orders); Mem. 4 (contending that the Primary Violations R&R "aptly characterized" the Refco fraud as having certain elements).

The Special Master has repeatedly admonished Plaintiffs not to use the pleading-stage R&Rs in this way. Just a few months ago, the Special Master instructed Plaintiffs' counsel in no uncertain terms not to "rely on the R and R as a statement of fact." *See* Tr. of 9/14/12 Hrg. before Special Master Capra at 152. The Special Master explained that he was "offended" that Plaintiffs' proposed expert witness was "using statements in the R and R as if they were facts, when actually all they were were restating what was alleged in [the] complaint." *Id.* at 150. The resulting R&R refers to this practice as "deceptive[]," making clear that the pleading-stage rulings do not contain "statements of fact" but rather "are doing no more than quoting from the Plaintiffs' amended complaint." R&R on Mots. to Strike Certain Opinions of Proposed Experts R. David Wallace and I. Michael Greenberger at 16 n.10 (Nov. 29, 2012). The fact that Plaintiffs have done it again—after all these warnings—is inexplicable.

It is no excuse for Plaintiffs to assert that "[a]ll of the parties have proceeded in this case accepting and acknowledging the truth of those facts" (Mem. 14). That is pure fiction. Naturally, the defendants and the Court accepted certain factual allegations as true at the pleading stage; the law required them to do so. In the proceedings since then, however, the defendants have never had the opportunity—much less the obligation—to say what they will or will not dispute at trial. And again, Plaintiffs have not cited a single brief, expert report, or transcript where the

Grant Thornton Defendants "acknowledg[ed]" that the RGHI receivable was worthless or masked some pending insolvency, that the interest on the receivable was illusory, or that Refco had a general practice of misappropriating customer cash.

Plaintiffs' reference to the summary judgment R&R in the TH Lee lawsuit is no better. *See* Pls. 56.1 St. ¶ 18 & Mem. 14 n.7 (citing R&R on Grant Thornton's Mot. for Summ. J. in *Thomas H. Lee Partners v. Grant Thornton LLP* at 2 (Mar. 28, 2011) ("THL R&R")). That R&R recites the alleged facts of the Refco fraud merely to provide "Factual Background" for its consideration of other issues. *See* THL R&R at 2. The Special Master explicitly drew those facts from the pleading-stage rulings. *See id.* (description "relies heavily on Judge Lynch's account" from the pleading stage). Obviously, then, that R&R's background discussion was not—and did not purport to be—a determination of fact.

### 2. *Refco Examiner's Report*

Plaintiffs also rely on the Refco Examiner's Report (Mem. 11-12; Pls. 56.1 St. ¶ 14)—but that too does not constitute admissible evidence. Case after case has held that such reports are not admissible at trial. *See, e.g., In re New Jersey Mobile Dental Practice P.A.*, Nos. 05-17772, 08-10463, 2012 WL 3018052, at *6 (Bankr. D.N.J. July 24, 2012) (holding that examiner's report was not admissible under the hearsay exception in Rule 803(8) because it is not the report of someone in a "public office"); *In re Granite Broadcasting Corp.*, 369 B.R. 120, 128 n.10 (Bankr. S.D.N.Y. 2007) (recognizing that the examiner's report is hearsay and not admissible evidence); *In re FiberMark, Inc.*, 339 B.R. 321, 326-27 (Bankr. D. Vt. 2002) (holding that examiner's report was not admissible for the truth of the matter asserted); *In re Rickel & Assocs., Inc.*, 272 B.R. 74, 87-88 (Bankr. S.D.N.Y. 2002) (holding that examiner's report is hearsay, as examiner "was not charged—nor could he be—with the duty to 'hear and determine' any claims in this case"); *In re Monus*, No. 92-41883, 1995 WL 469694, at *9 (Bankr. N.D. Ohio 1995)

(excluding examiner's report, commenting that it was necessarily based on "sworn and unsworn testimony and statements by individuals, some of whose identities are not revealed, and on a variety of documents, the authenticity of which may be subject to challenge").

The Refco Examiner's Report acknowledges these limitations. By its terms, it instructs the reader that it "should not be taken as admissions or findings for or against any person or entity." Ex. 10 to Decl. of Mason C. Simpson at 13. The report of a bankruptcy examiner may put "the story on paper and provide[] a context for debate," but "[i]t is the duty of the parties to formulate a fuller version of the debate using the rules of evidence." *FiberMark*, 339 B.R. at 325; *Monus*, 1995 WL 469694, at *9 (finding examiner's report inadmissible in part because it was based on hearsay documents, "the authenticity of which may be subject to challenge"). Plaintiffs cannot avoid that duty by citing the Examiner's Report itself.

### 3.    *Report of purported expert witness Richard Breeden*

Throughout their factual account, Plaintiffs rely heavily on a report submitted by their own proposed expert witness, Richard Breeden. The cited portions of the report lay out Breeden's understanding of the background "facts" of the Refco fraud, largely without citation.

Obviously, this is not admissible evidence. Plaintiffs cite no authority for the proposition that a party can prove a fact at summary judgment by retaining an expert witness who is willing to recite that fact—without citation—in a written report. Indeed, even if a party's proposed expert report otherwise meets the requirements of Federal Rule 26 and Federal Rule of Evidence 702, it cannot be used in support of that party's own motion for summary judgment. An unsworn expert report is not competent evidence. *See Zorn v. Mount Sinai Medical Ctr., Inc.*, No. 09 Civ. 3228, 2012 WL 4320575, at *2 (S.D.N.Y. Sept. 20, 2012); *see also Sofford v. Schindler Elevator Corp.*, 954 F. Supp. 1459, 1463 (D. Colo. 1997) (collecting cases).

Moreover, the excerpts Plaintiffs have cited here would be inadmissible even if they **had** been offered under oath.[1]  Plaintiffs cite portions of Mr. Breeden's report as having "cull[ed] together facts of the Refco fraud."  Mem. 4.   But under Rule 702, an expert's testimony cannot be presented "solely for the purpose of constructing a factual narrative based upon record evidence."  *Highland Capital Mgmt. L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005); *see also In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (Rule 702 does not permit expert testimony that constitutes merely a "historical commentary of what happened'") (citation omitted).  For this reason too, Plaintiffs' citations to Mr. Breeden's report are improper and should not be considered.

### 4.   *Refco officers' convictions*

Remarkably, while Plaintiffs purport to seek "judicial notice" of the Refco officers' convictions (Mem. 4 n.6), their submissions do not contain any evidence supporting that request. They have not provided the Court with the indictments or the plea allocutions, much less the judgments of conviction.  For Phil Bennett and Santo Maggio, they cite nothing at all.  *See* Pls. 56.1 St. ¶ 5 (asserting without citation that Maggio pleaded guilty to certain crimes).  And for Robert Trosten, they cite only his deposition testimony in the civil case, where he says he pleaded guilty to "pieces of" a criminal indictment, including bank fraud and wire fraud.  *See* Ex. 1 to Decl. of Mason C. Simpson at 17:3-14, *cited in* Pl. 56.1 St. ¶ 3.

This is a critical omission.  Plaintiffs have given the Court no reason to believe that these convictions support the specific wrongdoing that they contend underlies this case.  There is no

---

[1] At the appropriate time, the Grant Thornton Defendants will present Judge Rakoff with a *motion in limine* to exclude Mr. Breeden's testimony from trial in its entirety, both on this basis and in light of other critical shortcomings.  For present purposes, however, the Special Master need only consider whether the specific portions of Mr. Breeden's report cited in Plaintiffs' motion constitute admissible evidence.  Given that those portions merely cull together the facts, they are not admissible and should be disregarded.

reason to believe, for example, that the convictions depend on any finding that the RGHI receivable was worthless, that the interest on it was imaginary, or that Refco engaged in a general practice of misappropriating customer funds. *See* Mem. 4-6 (asserting these "facts").

What the guilty pleas *do* show is a scheme to deceive Grant Thornton and Mark Ramler. The charges to which Bennett, Maggio, and Trosten pleaded guilty included a conspiracy to "mak[e] material misstatements to auditors," in violation of 15 U.S.C. § 78m & 78ff. *See* Resp. to Pls. 56.1 St. ¶¶ 3, 5 (attaching indictment). In pleading guilty, Bennett specifically admitted that he "concealed the receivable from, amongst others, Refco's auditors"—in other words, from Grant Thornton and Mark Ramler—and Trosten and Maggio admitted that they agreed to participate in that deception. *Id.* ¶¶ 3, 5. In short, the officers' guilty pleas show a fraudulent scheme *against* these defendants. For this reason too, to the extent that the convictions are part of the summary judgment record—and, given Plaintiffs' failure to substantiate them, they are not—those convictions cannot possibly establish any primary wrongdoing in which these defendants were complicit.

### 5.    *Refco officers' depositions*

The only actual *evidence* Plaintiffs cite with respect to their account of the "[w]orkings" of the fraud is a handful of excerpts from the Refco officers' depositions—and, chiefly, from the depositions of convicted felons Robert Trosten and Santo Maggio. Those excerpts contain testimony that is either vague, incompetent, otherwise objectionable, or taken out of context. *See* Resp. to Pls. 56.1 St. ¶¶ 3-11 (responding to Plaintiffs' various citations to testimony).

For example, Plaintiffs cite Maggio's testimony for the proposition that "[t]he fraud also involved the misuse and misappropriation of customer funds" held in segregated accounts. Pl. 56.1 St. ¶ 5; *see also id.* (citing Maggio as saying that "Refco wrongfully 'tapped into' customer segregated funds for its own purposes"); Mem. 9-10 (asserting that "Mr. Maggio . . . testified

that the fraud at Refco involved the misuse or misappropriation of customer funds"); *id.* at 6 (same effect). But Maggio made clear that when he referred to Refco's use of segregated funds, he was talking about something that took place ***in 1997***, well before the period relevant here. *See* Resp. to Pls. 56.1 St. ¶¶ 5, 11. Refco did use customer-deposited cash after 1997, but it drew those funds from unsegregated accounts at the offshore broker RCM. *Id.* Maggio explained that he believed RCM's use of these unsegregated funds was both legal and permitted under the RCM customer agreements. *See id.* And as explained above, both this Court and the Second Circuit have already recognized that those customer agreements did in fact permit RCM's unlimited use of the unsegregated funds. *See supra* at 9.

In the end, even Plaintiffs themselves do not contend that these deposition excerpts constitute "clear and convincing evidence" sufficient to establish the workings of the Refco fraud as a matter of law, beyond any genuine dispute. Instead, they ask for summary judgment based on their bare assertions that "[n]o one disputes these material facts." Mem. 9, 10. Again, that is not true, and Plaintiffs have no basis for saying so. Thus, even in respect to the few alleged facts it relies on, Plaintiffs' motion for summary judgment is sorely deficient.

## CONCLUSION

Plaintiff have made no effort to establish the elements of a primary violation of fraud. And even with respect to their account of the Refco officers' wrongdoing, Plaintiffs have failed to present admissible evidence sufficient to carry their high burden of proof. For both of these reasons, Plaintiffs' motion should be denied.

Dated:  January 22, 2013
       Chicago, Illinois

*Of Counsel:*

Kenneth Cunningham
Tracy W. Berry
GRANT THORNTON LLP
175 West Jackson, 20th Floor
Chicago, Illinois 60604
Ph: 312-856-0001
Fax: 312-565-3473

Respectfully submitted,

WINSTON & STRAWN LLP

       /s/
_____
By:  Linda T. Coberly

Bruce R. Braun (bbraun@winston.com)
Catherine W. Joyce (cjoyce@winston.com)
Linda T. Coberly (lcoberly@winston.com)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700

Luke A. Connelly (lconnelly@winston.com)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Ph: 212-294-6700
Fax: 212-294-4700

*Attorneys for Grant Thornton LLP
and Mark Ramler*