UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                             :
In re REFCO INC. SECURITIES LITIGATION    :        Case No. 07-MD-1902 (JSR)
                                                             :
-------------------------------------------------------------x

This Document Relates To:

-------------------------------------------------------------x
KENNETH M. KRYS, *et al.*,                        :        Case No. 08-CV-3065 (JSR)
                                                             :        Case No. 08-CV-3086 (JSR)
                                    Plaintiffs,        :
                                                             :
                         -against-                    :
                                                             :
CHRISTOPHER SUGRUE, *et al.*,               :
                                                             :
                                    Defendants.      :
-------------------------------------------------------------x

## THE GRANT THORNTON DEFENDANTS' RESPONSE
## TO PLAINTIFFS' RULE 56.1 STATEMENT

        Pursuant to Rule 56.1 of this Court's Local and Civil Rules, Defendants Grant Thornton

LLP ("Grant Thornton") and Mark Ramler (collectively, the "Grant Thornton Defendants")

respectfully submit this response to Plaintiffs' Rule 56.1 Statement filed in support of their

Motion for Partial Summary Judgment on the Issue of the Primary Violation of Fraud by Refco.

        In light of the nature of Plaintiffs' motion, the Grant Thornton Defendants bear no

obligation to present evidence demonstrating a genuine dispute of fact for trial.  The non-moving

party is never required to rebut an insufficient showing.  Moreover, Plaintiffs' motion seeks

summary judgment on the primary violation of fraud—an issue on which Plaintiffs would bear

the burden of proof at trial, by clear and convincing evidence.  Thus, under the authorities cited

in the Grant Thornton Defendants' opposition brief (at pages 3-4), Plaintiffs' own submission

must present clear, convincing, and admissible evidence sufficient to resolve all the facts

underlying their motion beyond any reasonable dispute, and if they do not, their motion must be

denied even if the non-movant presents no evidence at all in response. Accordingly, no response

or lack of response by the Grant Thornton Defendants in connection with Plaintiffs' motion

constitutes an admission that any fact asserted by Plaintiffs is true, whether for purposes of the

current motion or otherwise.

Nevertheless—and without assuming any burdens that they would not otherwise bear

under the law—the Grant Thornton Defendants provide the following responses to Plaintiffs'

proposed statements of fact.

**Plaintiffs' Statement No. 1:**

On October 10, 2005, Refco[1] disclosed the existence of a $430 million related-party receivable. The receivable, which had been owed to Refco by Refco Group Holdings, Inc. ("RGHI") was at the center of a fraud that rendered Refco's published financial statements materially false and misleading. This announcement was followed by a series of events and subsequent disclosures that culminated in Refco filing for bankruptcy on October 17, 2005.

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the

material facts as to which the moving party contends there is no genuine issue to be tried." L.R.

56.1(a). Nor is this statement supported by any citation "to evidence which would be

admissible," as specifically required by Local Rule 56.1(d). Further responding, the Grant

Thornton Defendants admit only that on October 10, 2005, Refco issued a press release stating

that it had discovered an intercompany receivable owed to the company by RGHI, an entity

controlled by Phillip R. Bennett, Refco CEO and Chairman of the Board. The press release states

that the receivable was in the amount of approximately $430 million and that the receivable had

---

[1] As used herein, "Refco" refers to Refco, Inc., its direct and indirect subsidiaries, and their predecessors collectively. The definition of Refco herein excludes Refco Group Holdings, Inc.

been repaid in full, including accrued interest.  *See* Refco Oct. 10, 2005 Press Release (attached

as Ex. 1 to the Declaration of Linda T. Coberly in Response to Plaintiffs' Motion for Partial

Summary Judgment on the Issue of the Primary Violation of Fraud by Refco, dated January 22,

2012 ("Coberly Decl.")).

**Plaintiffs' Statement No. 2:**

Throughout this litigation, the parties and others have admitted the existence of the so-
called "Refco fraud," a scheme to conceal massive losses from Refco's books and to enrich
Refco insiders. The Refco fraud included the following elements: 1) Refco diverted assets from
unprotected accounts at Refco Capital Markets Ltd. ("RCM"); a Bermuda affiliate, to fund
Refco's fraudulent schemes and line the pockets of Refco insiders; 2) Refco conspired to hide
the losses on the books by transferring losses and expenses to RGHI and creating a receivable
owed from RGHI (the "RGHI receivable"); 3) Refco engaged in a series of round-trip loans
("RTLs"), which purported to be legitimate loan transactions but only served temporarily to
reduce the balance of the RGHI receivable at the end of each reporting period and replace it with
receivables from purportedly independent third parties; 4) Refco booked imaginary profits by
charging excessive (and often usurious) interest on the RGHI receivable; 5) having maintained
the illusion of solvency, Refco borrowed money to fund the August 2004 LBO, which enriched
Refco's insiders; and 6) the LBO was followed up by an IPO that further enriched Refco's
corrupt insiders. The existence of a fraud has been admitted by nearly every party involved in the
litigation, as shown below.

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the

material facts as to which the moving party contends there is no genuine issue to be tried."  L.R.

56.1(a).  Nor is this statement supported by any citation at all, either to the record in this

litigation or "to evidence which would be admissible," as specifically required by Local Rule

56.1(d).  Given the facial insufficiency of this statement under Local Rule 56.1(d), no further

response is required.

**Plaintiffs' Statement No. 3:**

Robert Trosten, Executive Vice President and Chief Financial Officer of Refco Group
Ltd., LLC (a predecessor of Refco, Inc.) between 2000 and 2004, pled guilty to securities fraud,
bank fraud and wire fraud in connection with the Refco fraud. He first found out about the fraud
at Refco in 1998 and his salary significantly increased thereafter in part because he was prepared
to continue with the ongoing fraud at Refco and was to be compensated for it. In 2004, Mr.

Trosten received in excess of $50 million dollars through the LBO. *See* Deposition of Robert Trosten, dated Dec. 10, 2009, at 17:3-14, 28:20-22, 21:5-13 and 20:9-18 (attached as Ex. 1 to the Declaration of Mason C. Simpson in Support of Plaintiffs' Motion for Partial Summary Judgment on the Issue of the Primary Violation of Fraud by Refco, dated December 17, 2012 ("Simpson Decl.")).

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). The Grant Thornton Defendants dispute the first sentence of Statement No. 3 and clarify that Robert Trosten was Executive Vice President and Chief Financial Officer of Refco Group Limited beginning in the 2000-2001 timeframe until 2004 and testified that he pled guilty to, among other things, conspiracy to commit securities fraud, bank fraud, and wire fraud. *See* Dep. R. Trosten, Dec. 10, 2009, at 16:5-6, 14-18 (attached as Ex. 2 to Coberly Decl.); Simpson Decl. Ex. 1 at 17:6-14. Mr. Trosten also pled guilty to and was convicted of a conspiracy to make misstatements to Refco's auditors, explaining that he, "along with other Refco executives, agreed to conceal the true size and nature of the RGHI receivable from, amongst others, Refco's auditors . . . ." *See* Plea Allocution of R. Trosten in *United States v. Trosten*, Feb. 20, 2008, at p. 18 (attached as Ex. 3 to Coberly Decl.); *see also* Indictment of Phillip R. Bennett, Robert C. Trosten, and Tone N. Grant (attached as Ex. 4 to Coberly Decl.). The Grant Thornton Defendants note that in addition to Mr. Trosten, Chief Executive Officer Phil Bennett pled guilty to, among other things, "conceal[ing] the receivable from amongst others Refco's auditors . . . ." *See* Plea Allocution of P. Bennett in *United States v. Bennett*, Feb. 15, 2008, at p. 17 (attached as Ex. 5 to Coberly Decl.); *see also* Indictment of Phillip R. Bennett, Robert C. Trosten, and Tone N. Grant (attached as Ex. 4 to Coberly Decl.). For purposes of the present motion only, the Grant Thornton Defendants do not dispute the factual allegations in the second and third sentences of Statement No. 3, except to clarify that in calendar year 2004, Mr. Trosten received

in excess of $50 million in connection with work he did at Refco, including the LBO.  Simpson

Decl. Ex. 1 at 20:9-18.

**Plaintiffs' Statement No. 4:**

 Mr. Trosten admitted that, as an officer of Refco, he participated in a fraudulent scheme
to give the appearance that Refco was financially healthy. The fraud included the hiding of the
amount of the RGHI receivable that was due to Refco. Other components of the fraud included
the inflation of revenues through interest rate manipulations and the shifting of expenses from
the books of Refco to RGHI. *See* Trosten Dep., Dec. 10, 2009, at 23:2-7; 23:13-24:7; 24:8-25:14
and 26:4-13 (attached as Ex. 1 to Simpson Decl.).

**Response:**

 This statement is not and does not purport to be a "short and concise statement . . . of the

material facts as to which the moving party contends there is no genuine issue to be tried." L.R.

56.1(a).  The Grant Thornton Defendants dispute the first sentence of Statement No. 4 and clarify

that Mr. Trosten testified that he participated in a fraud at Refco relating, in part, to making

Refco look more profitable than it was, with the goal to sell the company.  Simpson Decl. Ex. 1

at 23:2-7, 24:21-25:4.  Reflecting his own subjective understanding, Mr. Trosten further testified

that the fraud included inflation of revenues through interest rate manipulations and the shifting

of expenses from the books of Refco to RGHI.  Simpson Decl. Ex. 1 at 23:21-24; 26:4-13.  That

testimony, however, is impermissibly vague and does not explain what is meant by "interest rate

manipulations," nor does it explain how or when such things "inflat[ed] revenues."  Moreover,

this statement's reference to "the RGHI receivable that was due to Refco" is vague, as it is not

tied to any particular amount or period of time.

**Plaintiffs' Statement No. 5:**

 Santo Maggio was a former Executive Vice President of Refco and the CEO of RCM.
Mr. Maggio pled guilty to two counts of security fraud, one count of wire fraud and one count of
conspiracy to commit fraud in connection with his participation in the Refco fraud. Mr. Maggio
testified that the fraud involved a "manipulation of Refco's financial statements" and included
"transactions that were designed to hide the existence of monies owed to Refco [by RGHI]."
Maggio Depo., Dec. 14, 2009, at 28:15-24. The fraud also involved the misuse and

misappropriation of customer funds and the manipulation of revenues, inflation of revenues, phony transactions to inflate revenues and reclassification of certain types of revenues to inflate Refco's apparent revenues. Refco wrongfully "tapped into" customer segregated funds for its own purposes. *See* Deposition of Santo Maggio, dated Dec. 14, 2009, at 28:3-11; 28:15-24; 29:16-23; 30:20-31:19; 41:11-20; 42:11-18 (attached as Ex. 2 to Simpson Decl.).

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the

material facts as to which the moving party contends there is no genuine issue to be tried." L.R.

56.1(a). The Grant Thornton Defendants dispute the first sentence of Statement No. 5 and clarify

that Santo Maggio was an Executive Vice President of Refco and the President of RCM. *See*

Dep. S. Maggio, Dec. 14, 2009, at 26:6-20 (attached as Ex. 6 to Coberly Decl.). As for the

second sentence, the Grant Thornton Defendants clarify that Mr. Maggio also pled guilty to a

conspiracy to make misstatements to Refco's auditors, admitting that he "participated with others

to hide the true financial health of [Refco] from banks, counter-parties, auditors and investors,"

including by making false statements and signifying false loan agreements. *See* Plea Allocution

of S. Maggio in *United States v. Maggio*, Dec. 19, 2007, at pp. 5, 17-18 (attached as Ex. 7 to

Coberly Decl.); *see also* Indictment of Santo Maggio (attached as Ex. 8 to Coberly Decl.).

As for the remainder of the paragraph, the Grant Thornton Defendants admit only that the

quoted passages come from the deposition testimony of Mr. Maggio. The cited deposition

testimony of Mr. Maggio is not sufficient to establish—and does not constitute competent,

sufficiently specific, and admissible evidence tending to prove—Plaintiffs' factual assertions

about the workings of the Refco fraud. Neither Plaintiffs nor the cited Maggio testimony

explains what is meant by Maggio's reference to "the misuse and misappropriation of customer

funds and the manipulation of revenues, inflation of revenues, phony transactions to inflate

revenues and reclassification of certain types of revenues to inflate Refco's apparent revenues."

Further, Mr. Maggio is not an accountant or otherwise an expert in accounting, and therefore he

is not qualified to opine on whether something constitutes a "manipulation of revenues" or an

"inflation of revenues." Plaintiffs also specifically misconstrue Mr. Maggio's testimony about

Refco "tapp[ing] into" customer funds, as Mr. Maggio makes clear in his testimony that he was

referring to occasions prior to 1997—before the relevant timeframe in this case. *See* Dep. S.

Maggio, Dec. 14, 2009 at 38:8-19 (attached as Ex. 6 to Coberly Decl.). Mr. Maggio explained

that from 1993 forward, Refco used non-segregated customer assets in Refco Capital Markets

Ltd. ("RCM"). *See* Dep. S. Maggio, Dec. 14, 2009 at 43:10-13, 60:9-16 (attached as Ex. 6 to

Coberly Decl.). Mr. Maggio further testified to his understanding that RCM had the legal right

to use these deposits freely, under the terms of the RCM customer agreements. *See* Dep. S.

Maggio, Dec. 15, 2009 at 690:10-691:16 (attached as Ex. 6 to Coberly Decl.).

**Plaintiffs' Statement No. 6:**

> Mr. Maggio admitted that, as an officer of Refco, he participated in Refco's numerous, fraudulent round-trip loan transactions, the "sole purpose" of which was to hide the RGHI receivable. Refco also provided false information in its public filings in connection with the LBO and IPO and created false accounts, listed fake collateral and transferred obligations from and among various entities within the Refco Group to hide the false accounts and fake collateral. Refco was a "lie," portraying itself as a valuable enterprise when it in fact was "worthless or close to worthless." Maggio Depo., Dec. 14, 2009, at 109:2-18:25; 114:4-15:5; 406:7-11; 418:9-19:22; and Dec. 15, 2009, 518:11-19:4; 539:11-40:12; 541:12-25; 596:2-13 (attached as Ex. 2 to Simpson Decl.).

**Response:**

> This statement is not and does not purport to be a "short and concise statement . . . of the

material facts as to which the moving party contends there is no genuine issue to be tried." L.R.

56.1(a). The Grant Thornton Defendants specifically decline to admit the first sentence of

Statement No. 6, as the terms "numerous" and "fraudulent" are vague and the term "RGHI

receivable" is undefined by either time or amount, but they admit that the quoted portion of the

sentence comes from the cited deposition testimony of Mr. Maggio. The Grant Thornton

Defendants admit that the quoted portions of the third sentence of Statement No. 6 come from

the cited deposition testimony of Mr. Maggio.  Nevertheless, the cited deposition testimony of

Mr. Maggio is not sufficient to establish—and does not constitute competent, sufficiently

specific, and admissible evidence tending to prove—Plaintiffs' factual assertions about the

workings of the Refco fraud or the real economic value of Refco at any particular point in time.

**Plaintiffs' Statement No. 7:**

      In his expert report in support of Plaintiff's claims, former SEC Chairman Richard C.
Breeden discusses the Refco fraud at length. Mr. Breeden first recounts the losses Refco incurred
as a result of the 1997 "Asian Crisis" wherein a group of customers to whom Refco had extended
credit incurred massive losses when a debt crisis in Asia resulted in a sudden and sharp decline
in prices for Asian bonds. As a result, many Refco customers were unable to meet their margin
calls and Refco was forced to satisfy its customers' obligations on their behalf. Refco booked
receivables from its customers for these losses, but the bulk of these receivables were not
collected. *See* Maggio Depo., Dec. 14, 2009, at pp. 85-87 (attached as Ex. 2 to Simpson Decl.);
Expert Report of Richard C. Breeden Report at p. 11 (attached as Ex. 3 to Simpson Decl.).

**Response:**

      This statement is not and does not purport to be a "short and concise statement . . . of the

material facts as to which the moving party contends there is no genuine issue to be tried." L.R.

56.1(a).  The Grant Thornton Defendants dispute the factual allegations in Statement No. 7 and

in Mr. Breeden's proffered report.  Plaintiffs' reliance on the Breeden report is misplaced, both

because the report is an unsworn out-of-court factual statement made by a person lacking in

percipient knowledge, and because the cited portions of the report merely recount factual

allegations that have not otherwise been proven, without citation to evidence.  *See* Opp. at II.B.3

(citing authorities).  Therefore, Mr. Breeden's factual narratives themselves do not constitute

evidence "which would be admissible," as required by Local Rule 56.1(d) and Federal Rule

56(c).  Responding further, Plaintiffs offer no definition for the "Asian Crisis" cited in Statement

No. 7, and Plaintiffs cite no admissible evidence to support the suggestion that Refco would have

been unable to collect the money owed by customers had it engaged in the necessary collection

efforts or pursued the money from some other source.  Ultimately, the entire outstanding amount

of the RGHI Receivable was paid in full, including accrued interest, as Refco's press release

explains.  *See* Refco Oct. 10, 2005 Press Release (attached as Ex. 1 to Coberly Decl.).

**Plaintiffs' Statement No. 8:**

Instead of recording its losses, Refco began a program of lying to cover up the customer losses and its pending insolvency. Thus, the first step in the Refco fraud was to hide (rather than publicly acknowledge) the worthless customer receivables. This was done by pushing them onto RGHI's books, and replacing them on Refco's books with a receivable at full face value from RGHI. Another element of the fraud was to transfer large amounts of operating costs and additional extraordinary losses into the RGHI Receivable to make Refco's profits appear significantly larger than they really were. *See* Maggio Depo., Dec. 14, 2009, at pp. 100-104 (attached as Ex. 2 to Simpson Decl.); Breeden Report at 13-14 (attached as Ex. 3 to Simpson Decl.).

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the

material facts as to which the moving party contends there is no genuine issue to be tried."  L.R.

56.1(a).  The Grant Thornton Defendants dispute the factual allegations in Statement No. 8,

including the undefined descriptors like "significantly" and "worthless," the allegations about a

"pending insolvency," and the reference to a "program" of lying—none of which are defined or

supported by citations to admissible evidence.  This paragraph also introduces the term "RGHI

Receivable" but fails to provide any definition, amount, or time limitation, leaving it

impermissible vague.  Further, the cited Maggio testimony does not support any of these points.

To the contrary, Refco's press release of October 10, 2005, explains that the intercompany

receivable owed to the company by RGHI on that date was in the amount of approximately $430

million and that, on that day, Phil Bennett repaid the receivable in full, including accrued

interest.  *See* Refco Oct. 10, 2005 Press Release (attached as Ex. 1 to Coberly Decl.).  The Grant

Thornton Defendants also dispute Plaintiffs' description in Statement No. 8 of the "first step in

the Refco fraud," noting that Plaintiffs cite no evidence supporting their suggestion that the fraud

at Refco occurred in defined "steps."  Further, Plaintiffs' reliance on the Breeden report is

misplaced, both because the report is an unsworn out-of-court factual statement made by a

person lacking in percipient knowledge, and because the cited portions of the report merely

recount factual allegations that have not otherwise been proven, without citation to evidence.

*See* Opp. at II.B.3 (citing authorities).  Therefore, Mr. Breeden's factual narratives themselves do

not constitute evidence "which would be admissible," as required by Local Rule 56.1(d) and

Federal Rule 56(c).

**Plaintiffs' Statement No. 9:**

     The next part of the fraud was to increase its reported revenues far beyond what they
were in reality, thereby inflating profits. This was done by accruing interest charges on the
receivable which inflated Refco's reported profits and net worth. *See* Peter James Depo., Dec.
14, 2009, at 62-67 (attached as Ex. 4 to Simpson Decl.); Breeden Report at 14 (attached as Ex. 3
to Simpson Decl.).

**Response:**

     This statement is not and does not purport to be a "short and concise statement . . . of the

material facts as to which the moving party contends there is no genuine issue to be tried."  L.R.

56.1(a).  Nor is it supported by citations to admissible evidence, as Local Rule 56.1(d) and

governing precedents require.  The interest on the RGHI receivable did not falsely "inflate[]

Refco's reported profits and net worth," as Refco ultimately collected all of that interest in cash,

which was then available to Refco and (eventually) to its creditors.  *See, e.g.*, Refco Oct. 10,

2005 Press Release (attached as Ex. 1 to Coberly Decl.).  The cited portions of the James

deposition are not to the contrary, as he merely discusses the fact that interest was accrued.  The

Grant Thornton Defendants also dispute Plaintiffs' description of Statement No. 9 as the "next

part of the fraud," noting that Plaintiffs cite no evidence supporting their suggestion that the

fraud at Refco occurred in defined "steps."  Further, Plaintiffs' reliance on the expert report of

Richard Breeden is misplaced, both because it represents an unsworn out-of-court factual

statement made by a person lacking in percipient knowledge, and because Mr. Breeden merely

recounts factual allegations that have not otherwise been proven.  *See* Opp. at II.B.3 (citing

authorities).  Therefore, Mr. Breeden's factual narratives do not constitute evidence "which

would be admissible," as required by Local Rule 56.1(d) and Federal Rule 56(c).

**Plaintiffs' Statement No. 10:**

Refco then devised a scheme to hide the receivable owed to Refco by RGHI. This was
accomplished through a repeated course of "round-trip loans" which "lacked any economic
substance and were simply a smoke screen to conceal the enormous and growing hole in Refco's
balance sheet.  See Maggio Depo., Dec. 14, 2009, at pp. 109-111; Maggio Depo., Jan. 6, 2010, at
1403-11 (attached as Ex. 2 to Simpson Decl.); Breeden Report at pp. 17-18 (attached as Ex. 3 to
Simpson Decl.).

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the

material facts as to which the moving party contends there is no genuine issue to be tried."  L.R.

56.1(a).  Nor is this statement supported by citations to admissible evidence, as Local Rule

56.1(d) and governing precedents require.  Other than the term "round-trip loans," the quoted

material in this paragraph—which Grant Thornton disputes—is not taken from or supported by

the cited Maggio deposition testimony, as Plaintiffs' citations suggest.  Rather, this quotation is

taken from the unsworn report of Plaintiffs' purported expert Richard Breeden, where it appears

as a bare assertion, without citation to any evidence.  In general, Plaintiffs' reliance on the

Breeden report is misplaced, both because the report is an unsworn out-of-court factual statement

made by a person lacking in percipient knowledge, and because the cited portions of the report

merely recount factual allegations that have not otherwise been proven, without citation to

evidence.  *See* Opp. at II.B.3 (citing authorities).  Therefore, Mr. Breeden's factual narratives do

not constitute evidence "which would be admissible," as required by Local Rule 56.1(d) and

Federal Rule 56(c).  The reference to the "receivable" in this paragraph is undefined both in time

and in amount and thus is impermissibly vague.  The Grant Thornton Defendants also dispute

Plaintiffs' suggestion that Statement No. 10 describes the next step in the fraud, noting that

Plaintiffs cite no evidence supporting their suggestion that the fraud at Refco occurred in defined

"steps."

**Plaintiffs' Statement No. 11:**

Mr. Breeden also discusses Refco's practice of diverting customer cash out of segregated accounts and into Refco's treasury operations, where it was commingled and used by Refco to meet obligations. The siphoned cash was what literally enabled Refco to meet its daily obligations and thereby to keep the fraud running without discovery. Mr. Breeden cited to the testimony of Santo Maggio, a director and later CEO of RCM who testified that "[h]undreds and hundreds of millions of dollars were on deposit at RCM.... And yet Refco was using almost every dollar of it to fund its operations. If we had to take the assets and put it in safekeeping, take the cash the customers have and lock it up, we would cease to exist." *See* Maggio Depo., Dec. 14, 2009, at 55:2-13 (Ex. 2 to Simpson Decl.).

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the

material facts as to which the moving party contends there is no genuine issue to be tried." L.R.

56.1(a).  The suggestion that Refco had a "practice of diverting customer cash out of segregated

accounts" is not supported by any citation to admissible evidence as required by Local Rule

56.1(d).   Although this paragraph refers to the Breeden report, it does not contain any specific

citation to that report.   And in any event, Plaintiffs' reliance on the Breeden report is misplaced,

both because the report is an unsworn out-of-court factual statement made by a person lacking in

percipient knowledge, and because the relevant portions of the report merely recount factual

allegations that have not otherwise been proven.  *See* Opp. at II.B.3 (citing authorities).  The

Grant Thornton Defendants admit that the quoted portions of the third sentence of Statement No.

11 come from the cited deposition testimony of Mr. Maggio.  But Mr. Maggio's testimony did

not suggest that this cash was "siphoned" or "divert[ed]" from "segregated accounts."  To the

contrary, the cited deposition testimony makes clear that Mr. Maggio was referring to customer

assets at RCM, which was an unregulated offshore broker-dealer and did not hold any assets in

segregated accounts. Mr. Maggio further testified to his understanding that RCM had the legal right to use these deposits freely, under the terms of the RCM customer agreements. *See* Dep. S. Maggio, Dec. 15, 2009 at 690:10-691:16 (attached as Ex. 6 to Coberly Decl.). Finally, the Grant Thornton Defendants dispute the titles of Mr. Maggio in the third sentence of Statement No. 11, clarifying that Mr. Maggio was a director, then vice president, and then president of RCM. *See* Dep. S. Maggio, Dec. 14, 2009, at 26:13-16 (attached as Ex. 6 to Coberly Decl.).

**Plaintiffs' Statement No. 12:**

Several of Defendants' experts have also acknowledged the existence of the Refco fraud and discussed it at some length, mostly in arguing that the fraud was so sophisticated that the Defendants really had no chance of discovering it. *See* Rudley Report at 7, 109-10 (Ex. 5 to Simpson Decl.); Holder Report at 48 (Ex. 6 to Simpson Decl.); Ellingsen Depo., Sep. 28, 2012, at 138:5-11 (Ex. 7 to Simpson Decl.). By way of example, Mr. Rudley stated, "Refco Management actively deceived and concealed material facts from the 144(a) banks." Rudley Report at 7. He further acknowledged the "presence of accounting fraud at Refco...." *Id.* at 109-10.

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). The terms "existence of the Refco fraud" and "discussed it at some length" are vague and undefined. Further, the reference to "Defendants' experts" falsely suggests that the cited expert witnesses were all disclosed and proffered on behalf of all defendants collectively. They were not. The quoted portions of the second and third sentences of Statement No. 12 come from the cited portions of Mr. Rudley's unsworn expert report in this matter, which was offered solely on behalf of the bank defendants and not on behalf of the Grant Thornton Defendants—and thus it does not constitute an admission by the Grant Thornton Defendants. The only expert testimony cited here that was offered by a witness disclosed by the Grant Thornton Defendants is the testimony of John Ellingsen. Mr. Ellingsen testified in his deposition in this matter that there

was "an extensive, long-running fraud specifically designed to hide information from the auditors" and that "the officers of the company went to great lengths to conceal the fraud from the auditors. And they were convicted of lying to the auditors, and concealing it from the auditors." Simpson Decl. Ex. 7 at 138:5-11, 147:8-12.

**Plaintiffs' Statement No. 13:**

As described by Defendants' experts, the Refco fraud involved the disguised practice of Refco "selling" its uncollectible customer receivables to a related party, RGHI, and then hiding the majority of the receivable balance at the end of financial periods through the round-trip loans. The fraud began in the late 1990s and involved many members of Refco's senior management, several of whom pled guilty or were convicted for their roles in the fraud. Refco management enlisted third parties to help conceal the RGHI receivables through the round-trip loans and Refco insiders hid the fraud by lying about key components of Refco's business, including its corporate structure, financial condition and risk management procedures. *See* Daines Report at pp. 3-6 (Ex. 8 to Simpson Decl.); Holder Report at 5, 47-48 (Ex. 6 to Simpson Decl.); Ellingsen Depo., Sep. 28, 2012, at 82:5-83:4, 125-28:11, 137:24-38:11, 146:18-47:12 (Ex. 7 to Simpson Decl.); Ellingsen Report at 17-18 (Ex. 9 to Simpson Decl.). More specifically, Mr. Daines noted that the fraud

> [a]t Refco appears to have involved the disguised practice of Refco "selling" its uncollectible customer receivables to a related party, Refco Group Holdings, Inc. ("RGHI"), and then hiding the majority of this receivable balance at the end of financial periods through transactions referred to in this action as "round-trip loans." This fraud appears to have begun in the late 1990s.

Daines' Report at 3-4 (attached as Ex. 8 to Simpson Decl.). Mr. Daines also acknowledged that the fraud involved "many members of Refco's senior management, including Refco's former Chief Executive Officer ('CEO') Phillip Bennett, former Chief Financial Officer ('CFO') Robert Trosten, former Executive Vice President Santo Maggio, and former CEO Tone Grant. All four former executives either plead guilty or were convicted for their roles in the fraud." Daines' Report at 4. Mr. Ellingsen stated that the fraud was "specifically designed to hide information from the auditors...." Ellingsen Depo., Sep. 28, 2012, at 138:5-11 (Ex. 7 to Simpson Decl.).

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). Nor is the substance of this statement supported by citations to admissible evidence, as required by Local Rule 56.1(d). Plaintiffs' reference to "Defendants' experts" falsely suggests

that the cited expert witnesses were all disclosed and proffered on behalf of all defendants collectively. They were not. The quoted portions of the third and fourth sentences of Statement No. 13 come from the cited portions of Mr. Daines' unsworn expert report in this matter, which was offered on behalf of the bank defendants and not on behalf of the Grant Thornton Defendants—and thus it does not constitute an admission by the Grant Thornton Defendants. Further, neither Mr. Daines nor any of the other cited expert witnesses purported to analyze or opine on whether any receivables were "uncollectible"; in the quoted statement, Mr. Daines states only what the Refco fraud "appears" to have involved. The only expert testimony cited here that was offered by a witness disclosed by the Grant Thornton Defendants is the testimony of John Ellingsen. The Grant Thornton Defendants admit that the quoted portions of the fifth sentence of Statement No. 13 come from the cited deposition testimony of Mr. Ellingsen. Mr. Ellingsen does not purport to opine on the workings of the Refco fraud and merely states his understanding from the plea allocutions of Bennett, Maggio, and Trosten.

**Plaintiffs' Statement No. 14:**

Joshua R. Hochberg of McKenna Long & Aldridge, LLP, was appointed as Bankruptcy Examiner for the bankruptcy cases of Refco, Inc. and its affiliated debtors. Mr. Hochberg concluded that there was a "massive fraudulent scheme designed to manipulate the financial statements of various Refco companies that were publicly reported and supplied to lending institutions and to regulators." The "roots of the scheme that was used to conceal losses and money owed to Refco by RGHI began in at least 1997 or 1998" when "Refco suffered millions of dollars in losses and certain of its customers could not make good on their own trading losses." Refco "sold" or transferred the bad debts to its unconsolidated parent company, RGHI, which "sale" price was treated as a receivable due from RGHI on the books of Refco. Refco then utilized the "round-trip loans" to hide the RGHI receivable by manipulating its books through a series of transactions which made it appear that the RGHI receivable was due from unrelated third parties rather than from RGHI. The round-trip loans were "sham transactions with no economic substance which were entered into solely to dress up Refco's consolidated financial statements." *See* Bankruptcy Examiner Report, at 3-4; 22-59 (Ex. 10 to Simpson Decl.).

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). Nor does this statement include any citation to admissible evidence, as Local Rule 56.1 and governing precedents require. Courts have consistently held the report of a bankruptcy examiner to be inadmissible hearsay with conclusions that are inadmissible legal opinions. *See* Opp. at II.B.2 (citing authorities). Given the facial insufficiency of this paragraph, no further response is required.

**Plaintiffs' Statement No. 15:**

Defendants have previously argued that the "Refco fraud," including the round-trip loans, the RGHI receivable and the LBO and IPO, could not form the basis of any claims by Plaintiffs because such actions were by Refco insiders and harmed only Refco itself. In connection with that argument, Defendants articulated a "three part fraudulent scheme" devised by Refco insiders in which they would prop up "the value of Refco and eventually cash out their interest in Refco for more than they were really worth." Memorandum of Law in Support of Investment Banks' Motion to Dismiss Claims 15, 34, 35, 36, 43, and 44 of the *Kirschner* Complaint, MDL Docket No. 51, dated May 21, 2008, at 4-5. The first part of the alleged scheme involved hundreds of millions of dollars in Refco trading losses and operating expenses by booking them as receivables owed to Refco by RGHI. The second part of the scheme consisted of concealing the nature and magnitude of the receivables through the use of the round-trip loans. Third, in 2004, the Refco insiders arranged for a leveraged buyout and in 2005 an initial public offering in order to cash out their positions. *See id.*

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). Nor is this statement supported by citations to admissible evidence, as Local Rule 56.1 and governing precedents require. The only citation in this paragraph is to a pleading filed by the bank defendants, which does not and cannot constitute an admission by the Grant Thornton Defendants. Given the facial insufficiency of this paragraph, no further response is required.

**Plaintiffs' Statement No. 16:**

In connection with its Motion for Summary Judgment dated April 23, 2010, Defendant Grant Thornton stated that:

> [w]itness after witness has testified that the Refco insiders deliberately lied to Grant Thornton and went to extraordinary lengths to keep it in the dark. As the insiders have admitted, the very purpose of their elaborate financial machinations was to prevent Grant Thornton from discovering the truth. The central figures in the fraud have plead guilty to or have been convicted of criminal conduct, including crimes predicated on lies to Grant Thornton, and they now face years in prison as a result.

Memorandum of Law in Support of Grant Thornton's LLP's Motion for Summary dated April 23, 2010 (MDL Docket No. 683), at 1; *see also id.* at 2-6. Grant Thornton further explained that Refco's fraud began in the late 1990s, when it "lost hundreds of millions of dollars as a result of large trading losses in foreign currency transactions sustained by one of its customers" and that, rather than disclosing those losses, "Refco's most senior managers conspired to conceal them by transferring them off Refco's books and converting them into a receivable owed by Refco Group Holdings, Inc. ("RGHI")." *Id.* at 4.

**Response:**

The Grant Thornton Defendants do not dispute this statement, though they clarify that it does not support Plaintiffs' account of the workings of the fraud.  This statement does not establish, for example, that any receivable owed by RGHI or its components were worthless and uncollectible, that there was any insolvency at Refco at any point in time, that the interest on the RGHI receivable was imaginary, or that Refco misused or misappropriated customer funds.

**Plaintiffs' Statement No. 17:**

The Court has previously ruled that Plaintiffs adequately alleged the existence of the Refco fraud. *See* Report and Recommendation of the Special Master on the Omnibus Issue of Primary Violations by Refco, MDL Docket No. 579, dated March 1, 2010, at 26. In that Report, Special Master Capra stated that the Refco fraud constituted

> a scheme to conceal massive losses from Refco's books and to enrich insiders. A central part of the Refco fraud was to divert assets from unprotected accounts at RCM to fund Refco's fraudulent schemes and line the pockets of the insiders.... Another part of the Refco fraud was to hide the losses on the books by engaging in a series of roundtrip loans ("RTLs"). The RTLs purported to be legitimate loan transactions, but only served

> temporarily to pay down the massive losses that were parked at
> RGHI .... A further part of the Refco fraud was to conduct a
> fraudulent LBO and IPO, allowing insiders to cash out, and
> thereby leaving Refco (and specifically RCM) insolvent.

*Id.* at 6.

**Response:**

This statement is not and does not purport to be a "short and concise statement . . . of the

material facts as to which the moving party contends there is no genuine issue to be tried." L.R.

56.1(a). Nor is it supported by any citations to admissible evidence, as Local Rule 56.1(d) and

governing precedents require. The Grant Thornton Defendants admit that on March 1, 2010,

Special Master Capra issued a Report and Recommendation on the Omnibus Issue of Primary

Violations by Refco and that the quoted material in the third sentence of Statement No. 17 comes

from the cited portion of Special Master Capra's report. But Plaintiffs' use of the pleading-stage

Report & Recommendation as substantive evidence is improper, as the Special Master has

repeatedly explained. *See* Tr. of 9/14/12 Hrg. before Special Master Daniel J. Capra at 150, 152

(attached as Ex. 9 to Coberly Decl.); *see also* Opp. at II.B.1.

**Plaintiffs' Statement No. 18:**

Special Master Capra and Judges Lynch and Rakoff have considered numerous motions
and related matters arising out of the Refco fraud and have recounted the facts constituting the
Refco fraud on several occasions. For example, in the R&R of the Special Master on Grant
Thornton's Motion for Summary Judgment in the *Thomas H. Lee vs. Grant Thornton* matter (07
CIV 8663 (JSR)), Special Master Capra stated that the "fraud surrounding Refco ha[d] already
been chronicled in a number of R&R's entered by the Special Master, including those in *Krys vs.
Sugrue and Kirschner v. Bennett.*" R&R dated March 28, 2011, at 2. In that R&R, Special
Master Capra discussed in particular the RGHI receivable:

> Beginning in the 1990s, Refco took on millions of dollars in uncollectable
> receivables that were parked at Refco Group Holdings, Inc. ("RGHI"), a company
> controlled by Bennett that was not consolidated with other Refco entities. Refco
> covered up these receivables – collectively the "RGHI receivable" – by engaging
> in roundtrip loan transactions (RTL's) with unrelated entities.... Through the
> RTL's, Refco executives were able to disguise Refco's true financial condition
> with the aim of eventually cashing out their interests in Refco....

*Id.* The Refco insiders effectuated the LBO in August 2004 and the IPO in August 2005, which allowed the Refco insiders to cash out their holdings in Refco. *See* Report of the Special Master dated March 1, 2010, at 6, 25-26; Report of the Special Master on Grant Thornton's Motion for Summary Judgment, filed in *Thomas H. Lee Equity Fund V., L.P. v. Grant Thornton LLP*, Case No. 07 Civ. 8663, MDL Docket No. 1105, dated March 28, 2011, at 2; Opinion and Order, filed in *In re Refco, Inc. Sec. Litig.*, 05 Civ. 8626, Docket No. 362, dated April 30, 2007 by Judge Lynch, at 3; Report of the Special Master, filed in *Kirschner v. Bennett*, MDL Docket No. 742, dated June 3, 2010, at 2-3.

**Response:**

      This statement is not and does not purport to be a "short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). Nor is it supported by any citations to admissible evidence, as Local Rule 56.1(d) and governing precedents require. Plaintiffs' citation of pleading-stage rulings as substantive evidence is improper, as the Special Master has repeatedly explained. *See* Tr. of 9/14/12 Hrg. before Special Master Daniel J. Capra at 150, 152 (attached as Ex. 9 to Coberly Decl.). As for the R&R on the summary judgment motion in the TH Lee lawsuit (which was never adopted by Judge Rakoff), the cited portion recites the alleged facts of the Refco fraud merely to provide "Factual Background" for its consideration of other issues. The Special Master explained that in recounting these facts, he "relies heavily on Judge Lynch's account" from the pleading stage. So, the cited language in the TH Lee R&R is not—and does not purport to be—a determination of fact. *See* Opp. at II.B.1.

Dated:  January 22, 2013
          Chicago, Illinois

*Of Counsel:*

Kenneth Cunningham
Tracy W. Berry
GRANT THORNTON LLP
175 West Jackson, 20th Floor
Chicago, Illinois 60604
Ph: 312-856-0001
Fax: 312-565-3473

Respectfully submitted,

WINSTON & STRAWN LLP

_____/s/_____
By:  Linda T. Coberly

Bruce R. Braun (bbraun@winston.com)
Catherine W. Joyce (cjoyce@winston.com)
Linda T. Coberly (lcoberly@winston.com)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700

Luke A. Connelly (lconnelly@winston.com)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Ph: 212-294-6700
Fax: 212-294-4700

*Attorneys for Grant Thornton LLP
and Mark Ramler*