**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                                    :
In re REFCO INC. SECURITIES LITIGATION    :         Case No. 07-md-1902 (JSR)
                                                    :
------------------------------------------------------------X


                    This Document Relates to:


------------------------------------------------------------X
                                                    :
KENNETH M. KRYS, et al.,                   :        Case No. 08-cv-3065 (JSR)
                                                    :        Case No. 08-cv-3086 (JSR)
Plaintiffs,                                 :
                                                    :        REPORT AND RECOMMENDATION
          -against-                         :        OF THE SPECIAL MASTER ON
                                                    :        THE PLAINTIFFS' MOTION FOR
                                                    :        PARTIAL SUMMARY JUDGMENT
CHRISTOPHER SUGRUE, et al.,                 :        ON THE ISSUE OF THE PRIMARY
                                                    :        VIOLATION OF FRAUD BY REFCO
Defendants.                                 :                                    :
------------------------------------------------------------X

Daniel J. Capra, Special Master


        The Plaintiffs[1] move for partial summary judgment "on the issue of the primary violation of
fraud by Refco." The remaining Defendants in this action oppose the motion. The remaining
defendants are Grant Thornton LLP ("Grant Thornton") and Mark Ramler (collectively the "Grant
Thornton Defendants"); and Mayer Brown LLP ("Mayer Brown") and two of its attorneys, Joseph

---

        [1] As recounted in a number of prior opinions, the named Plaintiffs have been appointed
by the Cayman Islands Court to bring claims on behalf of SPhinX and PlusFunds. Prior rulings
by Judge Rakoff have narrowed the claims for damages to those incurred by SMFF. *See
generally* the Standing R and R dated  dated February 3, 2010 and affirmed by Judge Rakoff in
Orders dated March 31, 2010 and May 3, 2011. *See also* Order of Judge Rakoff dated December
26, 2012 (dismissing claims for damages allegedly suffered by PlusFunds). Moreover, the
remaining claims are limited to acts that occurred before the LBO, because it was only before
that time that the SMMF cash at Refco was less than the amount allegedly lost at Refco in
October, 2005. See Order dated December 26, 2012.

P. Collins and Paul Koury (collectively "the Mayer Brown Defendants").[2]

***For the reasons discussed below, the Plaintiff's motion for partial summary judgment should be denied.***

## I. Background

At this point in this protracted litigation, the only claim  against each of these Defendants is for aiding and abetting the Refco Fraud.  Moreover, the only possible aiding and abetting that is actionable has been limited to actions taken by the Defendants before the LBO in 2004. See Judge Rakoff's Order dated December 26, 2012. In New York, for a claim of aiding and abetting fraud, the plaintiff must prove the following:   (i)  the  primary wrongdoer committed actionable fraud against the plaintiff; (ii) the defendant had knowledge of this primary violation; and (iii)  the aider and abettor substantially assisted in the primary wrong. *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983).

This motion deals only with the alleged primary violation, fraud by Refco. Judge Rakoff has stated the elements of a fraud claim in New York as follows:

> "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir.2001). In proving the elements of fraud, the proponent of the claim must put forth clear and convincing evidence, *Mix v. Neff*, 99 A.D.2d 180, 183, 473 N.Y.S.2d 31 (3d Dep't 1984), a standard which applies at the summary judgment stage as well as at trial, *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F.Supp.2d 206, 219 (S.D.N.Y.2007).

*Laugh Factory, Inc. v. Basciano*, 608 F.Supp.2d 549, 558 (S.D.N.Y.2009) (Rakoff, J.).

In their opening brief, and in their Rule 56.1 statement, the Plaintiffs made no serious attempt to establish the fraud elements of reasonable reliance and causation. The opening brief and the 56.1 statement focused exclusively on the acts by Refco alleged to be part of the Refco Fraud, e.g., the hidden RGHI receivable, the Round Trip Loans, etc. When the Defendants in their briefs noted that

---

[2] The Special Master has previously issued more than two dozen R and R's in the Refco matter. Some of these R and R's will be referred to herein. Abbreviations used in the prior R and R's will be used herein. Familiarity with all of the R and R's — and with Judge Rakoff's orders reviewing them — is presumed.

the Plaintiffs had not even made an attempt to show that summary judgment should be granted on issues such as reliance and causation, the Plaintiffs in their reply brief sought to raise those issues. Then at oral argument on this motion, Plaintiffs' counsel conceded that the motion was not intended to cover any issues of reliance or causation. While Plaintiffs' counsel later waffled on the question during the oral argument — and proceeded to argue issues beyond Refco's knowing misrepresentations and intent, including arguments on reliance, Mayer Brown's knowledge, and whatnot — here are the following concessions on the record:

**Page 9:**

Special Master: . . .if you want summary judgment on the grounds that SMFF relied, that causation as to SMFF's damages, in other words, anything SMFF-related might be a little bit more of a disputed issue, don't you think?

Mr. Beus: Yeah, we're not asking for that.

Special Master: So you're asking for what?

Mr. Beus: For that there was a massive Refco fraud consisting of this RGHI receivable that was omitted from the financial statements, that was a material misrepresentation every single year that the public had access to it.

Special Master: That's what you're asking for?

Mr. Beus: That's all I'm asking for.

Special Master: Well, I guess that's not what the papers say.

**Pages 10-11:**

[Exchange after counsel presents a chart purporting to show the actual amount of the RGHI receivable on a yearly basis, as compared to the amount actually reported.]

Special Master: So you're asking for a determination of two facts. One, that there was an RGHI receivable of a certain amount on particular days and that it was reported to be a significantly less amount, whatever that would be?

Mr. Beus: Yeah. . . .

Special Master: So you want summary judgment on this chart?

Mr. Beus: I want summary judgment on this chart. Fair enough. That makes it a little simpler.

3

I hadn't thought of it that way.

**Pages 116-117**

Mr. Beus: I don't think we are seeking summary judgment on the issue of reliance in our favor. . . . We didn't ask for summary judgment on reliance piece of the fraud.

Special Master: So . . . you're not asking for summary judgment on [reliance and causation of damages], just to clarify. Is that correct?

Mr. Beus: That's right.

Ms. Coberly: Well, I'm glad that — I'm glad to hear we cleared that up. I don't think you need to blame yourself for the confusion here.

Special Master: I don't blame myself not even one little bit.

———————

Given the Plaintiffs' counsel's multiple concessions at oral argument — not to speak of the failure to raise the issues of causation and reliance in either the Rule 56.1 statement or the opening brief — the Special Master determines that the Plaintiffs' motion for partial summary judgment is limited to the questions of whether Refco 1) knowingly made false statements, 2) with the intent to defraud customers such as SMFF. The remainder of the R and R will consider whether the Plaintiffs have satisfied their burden of showing, by clear and convincing evidence, that there is no question of fact on one or both of these elements. See *Laugh Factory*, *supra*.

## II. Legal Standards for Evaluating a Summary Judgment Motion

### A. General

Summary judgment may be granted only if the submissions of the parties taken together show that "there is no genuine dispute as to any material fact and  the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Plaintiffs as moving parties here bear  the burden of demonstrating the absence of a material question of fact, and they have "the initial responsibility of . . .  identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which . . . demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on the summary judgment motion the court must view all facts in the light most favorable to the Defendants as nonmoving parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[A]ll reasonable inferences must be drawn against the [moving] party," and summary judgment

may not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir.2001). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc*., 277 F.3d 232, 236 (2d Cir.2002).

If the Plaintiffs have presented facts showing that they are entitled to summary judgment, the Defendants must then set forth specific facts showing that there is a genuine issue for trial. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir.2002). However, if the Plaintiffs' have not presented a sufficient showing of entitlement to summary judgment, then the Defendants have no burden of going forward at all.  *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 617 (2d Cir. 1998) ("Where the movant has the burden, its own submissions in support of the motion must entitle it to judgment as a matter of law.").

### B. Partial Summary Judgment and Determination of Specific Issues of Fact

Pertinent to this motion for partial summary judgment, Fed. R. Civ. P. 56(a) provides that a party "may move for summary judgment identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."[3] The purpose of a partial summary judgment motion is to promote efficiency and narrow the scope of a trial to the issues that are reasonably disputed. *See* Moore's Federal Practice 3d ¶56.40[2] (recognizing that partial summary judgment may be appropriate for matters not in controversy in order to promote "economical and expeditious" proceedings).

Also pertinent to this motion as discussed below, Rule 56(g) provides that "[i]f the court does not grant all the relief requested by the motion, it *may* enter an order stating any material fact * * * that is not genuinely in dispute and treating the fact as established in the case." (Emphasis added). But the Committee Note to the 2010 Amendment to Rule 56(g) cautions that concerns of fairness to the adversary must be taken into account before a court finds that a certain fact is beyond dispute when not all relief is granted. It also cautions that the court "may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial." The Special Master specifically applies the concerns in the Note — fairness to the adversary and whether determining particular facts is cost-effective — in evaluating whether an order should be entered to treat any fact as established in this action.

---

[3] The Committee Note to the 2010 amendment to Rule 56 states that the sentence quoted in text "is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense. The subdivision caption adopts the common phrase 'partial summary judgment' to describe disposition of less than the whole action, whether or not the order grants all the relief requested by the motion."

### C. Requirement of Admissible Evidence

In reviewing a motion for summary judgment, a court "may rely only on admissible evidence." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir.2004). Rule 56(c)(1) requires a party asserting that a fact is not genuinely disputed to support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(3) states that the court is only required to consider the materials cited pursuant to (c)(1), but it is permitted to go beyond the citations to consider other materials in the record. Finally, Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

### D. Local Rule 56.1

Judge Rakoff, writing for the Second Circuit in *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003), emphasizes that Local Rule 56.1 requires a party moving for summary judgment to provide a statement with citations to admissible evidence in order establish its burden of showing the absence of triable facts — and that in the absence of such a showing, the non-moving party has no burden of coming forward:

> Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. See Local Rule 56.1(a), (d). If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted. See Local Rule 56.1(c). However, as we held in *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir.2001), "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." * * * Where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented for the non-movant is not required to rebut an insufficient showing. [Some internal citations and quotations omitted].

———

In sum, in this case the Plaintiffs' Rule 56.1 statement must cite to admissible evidence proving by clear and convincing evidence that there is no reasonable dispute as to the existence of "the primary violation of fraud by Refco." Assertions without citation, and assertions that cite to inadmissible evidence, must be disregarded.

## III. The Scope of the Motion

It seems counterintuitive that there are factual disputes about the "Refco Fraud" writ large. After all, there is little doubt that something bad happened at Refco and that the Refco principals were dishonest. In that regard, the following facts are undisputed, and indisputable: 1) Refco and its subsidiaries went into bankruptcy; 2) several Refco insiders were convicted or pled guilty; and 3) Refco publicly stated in October 2005 that its previous financial statements could not be relied upon.[4] But the Plaintiffs do not of course limit their motion to these basic facts.[5]

The Plaintiffs' motion is to say the least not a model of clarity.[6] But, as indicated in Statement No. 2 in their Rule 56.1 statement, the Plaintiffs do appear to want summary judgment on most of the alleged factual *details* of the Refco Fraud, as well as certain conclusions about those facts — such as:

- That Refco conspired to hide customer losses by creating the RGHI receivable.
- The specific amount of the RGHI receivable at various points versus the amount publicly declared.
- That Refco wrongfully diverted assets from unprotected accounts at RCM "to fund Refco's fraudulent schemes and line the pockets of Refco insiders."
- That Refco engaged in a series of Round Trip Loans which purported to be legitimate transactions but only served to hide the amount of the RGHI receivable.
- That Refco booked imaginary profits by charging excessive interest on the RGHI receivable.[7]

---

[4] See, e.g., the Grant Thornton Defendants' Response to the Plaintiffs' Rule 56.1 statement at 2, 4, 6. The Mayer Brown Defendants' incorporate in all material respects the Grant Thornton concessions on the three facts set forth in text.

[5] Whether summary judgment should be granted on certain facts will be discussed below.

[6] At one point in the oral argument, when asked by the Special Master about the exact scope of the motion, Plaintiffs' counsel responded "I'll take as much as I can get about the Refco Fraud." Transcript of Oral Argument at 16.

[7] The Plaintiffs also seek partial summary judgment on facts/conclusions attendant to the LBO and the IPO. See Rule 56.1 Statements 2, 6, 12, 15, 18. But facts attendant to the LBO and IPO are no longer part of the aiding and abetting claims in this case. Under Judge Rakoff's Order dated December 26, 2012, the only parts of the fraud that are actionable must have occurred

In addition, at various points in their Rule 56.1 statement, the Plaintiffs appear to be asking for summary judgment on broad statements, but these are ill-suited for summary judgment — because even if there is no dispute about a certain fact there is certainly a dispute about how that fact should be characterized — such as:

- Refco was a "'lie,' portraying itself as a valuable enterprise when it fact is was worthless or close to worthless." (Plaintiffs' Statement No. 6, in part quoting Maggio's deposition testimony).
- The customer receivables at RGHI were "worthless." (Plaintiffs' Statement No. 8).
- One part of the fraud was to increase reported revenues "far beyond what they were in reality" by incurring interest charges on the receivable. (Plaintiffs' Statement No. 9).
- The Round Trip Loans "were simply a smoke screen to conceal the enormous and growing hole in Refco's balance sheet." (Plaintiffs' Statement No. 10).

The Plaintiffs, if they want summary judgment, must establish that there is no dispute of fact as to any of the above alleged facts or characterization of those facts, and must do so with admissible evidence cited in the Rule 56.1 statement. The Special Master concludes that the Plaintiffs have failed in their effort. That failure will be explained below, by going through each of the Plaintiffs' Rule 56.1 statements.

## III. Review of the Plaintiffs' Rule 56.1 Statements

### A. Statement No. 1

Statement No. 1 asserts that in October, 2005, Refco "disclosed the existence of a $430 million related party receivable" which was "at the center of a fraud that rendered Refco's published statements materially false and misleading" and which led to Refco filing for bankruptcy on October 17, 2005.

The Defendants dispute the heart of this statement, which is that the receivable was at the center of a fraud that rendered Refco's published statements materially false and misleading. The Plaintiffs provide no citation at all to any admissible evidence that would support their assertions. Accordingly, the Plaintiffs' assertions of fraud in Statement No. 1 cannot support the motion for

---

before the LBO because after that point, the amount of SMFF cash at Refco was greater than the amount on hand at Refco in October 2005. Accordingly, even if partial summary judgment were granted in this case, it should be limited to Refco's activity before the LBO. And even if facts related to the LBO and IPO *were* still matters for proof in this case, the Special Master finds that the Plaintiffs have failed on this motion to cite admissible evidence regarding those facts that would prove they are beyond reasonable dispute.

partial summary judgment. *Feurtado v. City of New York*, 337 F.Supp.2d 593, 596 (S.D.N.Y. 2004) ("Feurtado has submitted no evidence whatsoever and thus summary judgment must be entered on this claim in favor of the defendants.").[8]

### B. Statement No. 2

This is the Plaintiffs' general statement about the Refco Fraud, discussed above. The statement begins with an assertion that the parties have admitted the existence of a massive fraud. There is no citation to any part of the record in this statement. There is no reference to any admissible evidence. And the Defendants in their response deny the assertion. Accordingly, the assertions in Statement No. 2 do not at all support the Plaintiffs' motion for partial summary judgment on the primary violation.

### C. Statement Nos. 3 and 4

These statements reference the Trosten deposition. Plaintiffs assert here that Trosten pled guilty to securities fraud, bank fraud and wire fraud in connection with the Refco fraud; that he first found out about the Refco Fraud in 1998 and his salary "significantly increased thereafter in part because he was prepared to continue with the ongoing fraud at Refco and was to be compensated for it;" that Trosten received more than $50 million through the LBO; that there was fraud at Refco consisting of hiding the RGHI receivable, Round Trip Loans, interest rate manipulation and shifting of expenses.

Unlike the prior statements, this statement references potentially admissible evidence — Trosten's deposition. See Fed. R. Evid. 804(b)(1) (hearsay exception for prior testimony); Fed. R. Civ. P. 32 (a) (deposition testimony admissible at trial). But these statements do not by any stretch establish, by clear and convincing evidence, any of the details of the Refco Fraud. For example, there is no indication that Trosten pled guilty to a part of any fraud about which SMFF could complain. Under prior rulings in this case, SMFF's actionable claim has been narrowed to acts that occurred before the LBO. Certainly, pleading guilty to securities fraud — which can only be related to the LBO and the IPO — does not mandate summary judgment on the aspects of the Refco fraud that are pertinent to the Plaintiffs' claims. Moreover, Trosten's plea allocution indicates that he pled guilty to conspiracy to make misstatements to Refco's *auditors.* [9]

Trosten's assertions about his salary and his role at Refco are certainly relevant evidence, but are too general to establish that there is no question of fact as to the details on which the Plaintiffs are seeking summary judgment — such as the amount of the RGHI receivable, the amount

---

[8] As discussed above, the fact that there *was* a receivable at RGHI is not disputed.

[9] See Trosten Plea Allocution at 18 (atttached as Ex. 3 to Coberly Declaration).

of interest rate charges and whether they were without value, etc.  There is no testimony or presentation of specific transactions, specific statements, or specific documents that even purport to establish what was going on at Refco. Nor is there anything in the cited portions of the deposition transcript to establish that Refco intended to defraud customers like SMFF — as opposed to potential investors like THLee. *See* Primary Violations R and R at 21. (claim for fraud requires the plaintiff prove that "the defendant intended to defraud the plaintiff" by the misstatements; citing *Blank v. Baronowski,* 959 F.Supp.172, 177 (S.D.N.Y.1997)).  At most the citations to the Trosten deposition present relevant evidence that there was wrongdoing at Refco. This is not sufficient for summary judgment.


### D. Statement Nos. 5 and 6

These statements reference Maggio's deposition. The statements assert that: Maggio pled guilty to securities fraud, wire fraud and conspiracy;  the fraud involved manipulation of financial statements and hiding the RGHI receivable; the fraud also involved the misappropriation of customer funds and manipulation of revenues; the Round Trip Loans were fraudulent, designed only to hide the RGHI receivable; Refco made false statements in connection with the LBO and IPO; and Refco was a "lie" because it portrayed itself as a valuable enterprise but in fact was "worthless or close to worthless."

Like the Trosten deposition, the Maggio deposition is potentially admissible as prior testimony. But like Trosten's testimony, Maggio's testimony is too general and conclusory to even come close to establishing the details or workings of the fraud at Refco, much less that the fraud was directed toward customers like SMFF. Essentially this testimony is relevant but it is no substitute for proof of the actual transactions and statements that are at the heart of any fraud. It is conclusory, vague, and opinionated.

Moreover, much of the Maggio testimony does not support the Plaintiffs' remaining claims in this case.  For example, his testimony that Refco wrongfully "tapped into" customer segregated funds was limited to instances prior to 1996 — well before SMFF was even in existence. See Maggio Deposition at 38. Also, Maggio testified that he thought RCM had the legal right to use the deposits freely, under the terms of the RCM customer agreements. Id. at 43, 60.

Finally, Maggio's guilty plea — which is, by the way, is not referenced by any admissible evidence in the record — at best indicates that there was some wrongdoing at Refco. As with Trosten, pleading guilty to securities fraud does not establish, by clear and convincing evidence, a fraud of which the Plaintiffs can complain about, because it is of necessity directed to the LBO and IPO. And none of the other pleas indicate a recognition of specific transactions of which the Plaintiffs can complain.

### E. Statement No. 7

This statement essentially relies on assertions in the report by the Plaintiffs' expert, Richard Breeden, which "discusses the Refco fraud at length." Mr. Breeden recounts in some detail the losses Refco incurred from the 1997 "Asian Crisis"; Refco's payment of the customer obligations; and Refco's booking the losses as receivables but not collecting on the bulk of them.

 The Defendants argue that the Breeden Report cannot be used in support of a motion for summary judgment because it is unsworn. But the rule that unsworn expert reports may not be considered on summary judgment is inapplicable where the expert ratifies the report in a deposition. *See Zorn v. Mount Sinai Medical Center, Inc*., 2012 WL 4320575 (S.D.N.Y. 2012),  at *2 ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed.R.Civ.P. 56(e), and cannot be used to defeat a summary judgment motion" but such reports "may be admissible . . . when the opinions expressed in such documents are reaffirmed by deposition testimony.") (citations omitted).  Breeden clearly ratified his report in his deposition testimony. *See, e.g.,*  Breeden Deposition at 193 ("My report is very specific, and I want to stand by it."). *See also Miller v. Astucci U.S. Ltd.,* 2007 WL 102092, at *14(S.D.N.Y.). (unsworn deposition may be considered on summary judgment where "his opinions were explored in detail at his sworn deposition" — as they were in this case).

But the fact that Breeden affirmed the report under oath does not mean the report is admissible evidence. It is true that Breeden provides a lengthy account, but there is nothing in that account that is based on his personal knowledge. For his factual account of the fraud, Breeden admits that he essentially relied on the report of the Bankruptcy Examiner. See Breeden Deposition at 132. Thus, the Breeden Report's factual account of the fraud is based on hearsay. While an expert can rely on inadmissible information if other experts in the field would do so, the underlying hearsay is not independently admissible, and the underlying facts still need to be proven. See Advisory Committee Note to 2000 Amendment to Federal Rule of Evidence 703 ("Rule 703 has been amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted.").[10] The Plaintiffs are using the Breeden report as a substitute for actual proof of the transactions that they say evidenced the Refco Fraud. Even if Breeden has a relevant opinion, that opinion is conditional on the facts actually existing. An expert opinion is no substitute for proof of an underlying fact. *See, e.g.,* Breeden Deposition at 142 ( "Q. Your opinion in this case that Refco, in fact, was hopelessly insolvent – A. Assuming the examiner's report of $310 million in losses is correct.").

Finally, even if  Breeden were relying on admissible evidence, his summarizing of the facts of the Refco Fraud is itself inadmissible because it does not assist the factfinder. Judge Kaplan rejected a similar effort of an expert to provide narrative on a motion for summary judgment in *In re Rezulin Products Liability Litigation*, 309 F.Supp.2d 531, 551 (S.D.N.Y.2004):

---

[10] As discussed below, the findings of the Bankruptcy Examiner are inadmissible hearsay.

Dr. Gale's "history of Rezulin" is merely a narrative of the case which a juror is equally capable of constructing. In Dr. Gale's own words, the purpose of this testimony is simply to "provid[e] an historical commentary of what happened" . . . . Such material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence. . . . [T]he glosses that Dr. Gale interpolates into his narrative are simple inferences drawn from uncomplicated facts that serve only to buttress plaintiffs' theory of the case. As plaintiffs' Rezulin "historian," therefore, Dr. Gale does no more than counsel for plaintiff will do in argument, i.e., propound a particular interpretation of defendant's conduct. (internal citations and quotations omitted).

*See also LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *2 (S.D.N.Y.) (while an expert report was based on an independent examination of documents, "testimony by fact witnesses familiar with those documents would be far more appropriate and renders the expert witness's secondhand knowledge unnecessary for the edification of the jury.") (internal citations and quotations omitted).

In sum, the Breeden report is inadmissible to prove any of the underlying facts and events that support the Plaintiffs' account of the Refco Fraud.

The Plaintiffs' Rule 56.1 Statement No. 7 does contain a citation to information from a person with personal knowledge — Santo Maggio. Maggio, in the deposition excerpt cited, does provide a particularized account of the Niederhoffer losses, the losses on loans made in Asia, and he does state that the loans were uncollectible. This is admissible evidence. But being able to provide admissible evidence is not the same as proving that there is no question of fact on the matters for which the evidence is offered. On summary judgment, as discussed above, all reasonable inferences must be drawn against the moving party. Thus, while the amount of the loss might be considered proven within the broad perameters testified to by Maggio ("Well over $200 million"), the *consequences* of taking on the losses are subject to different interpretations. Maggio's *interpretation* is that the losses were uncollectible, but this is not a necessary inference given the fact that the entire outstanding amount of the RGHI Receivable was paid in full. See Refco Oct. 10 Press Release; Kahler Dep. At 143-44.[11] Thus, the Maggio deposition is insufficient to establish anything in Statement No. 7 other than the basic fact that there Refco absorbed certain customer losses in 1997 in an inspecific but substantial amount.

### F. Statement No. 8

In this statement, the Plaintiffs assert that "Refco began lying to cover up the customer losses

---

[11] The Plaintiffs concede that Bennett paid off the RGHI receivable but argue that the only reason the receivable was paid in full was because of an improper loan from BAWAG. See Reply Brief at 9-10. But that response only creates another question of fact as to whether the losses were uncollectible — and what it even means for an asset to be "uncollectible."

and its pending insolvency." The "first step in the Refco Fraud was to hide (rather than publicly acknowledge) the worthless customer receivables." This was done by "pushing them onto RGHI's books, and replacing them with a receivable at full face value from RGHI." Other operating losses and expenses were transferred to the RGHI receivable "to make Refco's profits appear significantly larger than they were."

The citations for these assertions are to the Breeden Report and the Maggio deposition. For reasons expressed above, the Breeden Report is not admissible to prove any factual underpinnings of the Refco Fraud. As to the Maggio deposition, the most that can be said is that he testifies to the general point that customer losses and certain other operating losses were transferred to RGHI. He did not testify that expenses were transferred. (See Maggio deposition at 103-4). He did not testify that this was the first step in the Refco fraud. And any testimony he gave about the RGHI receivable may be relevant but does not establish that it was "worthless" given the fact that the receivable was paid in full.

### G. Statement No. 9

The Plaintiffs assert here that the "next part of the fraud was to increase its reported revenues far beyond what they were in reality. This was done by accruing interest charges on the receivable which inflated Refco's reported profits and net worth." The citations here are to the deposition of Peter James and to the Breeden Report. For reasons expressed above, the Breeden Report is not admissible to prove any underlying facts. As to the James deposition — drawing reasonable inferences in favor of the non-moving party — the most that can be said is that he discovered that large amounts of interest were being accrued. He did not testify that the interest entry inflated Refco's reported profits and net worth, or that the accrual of interest was part of a fraud. It should be noted that the Defendants do not dispute that interest was accrued on the receivable. Rather they contend that Refco ultimately collected that interest in cash. See Grant Thornton's Rule 56.1 Counterstatement at 10. Thus, the assertions of wrongful conduct in Statement No. 9 are not supported with admissible evidence that establishes those assertions without dispute. The only fact that is undisputed is that interest was accrued on the RGHI receivable.

### H. Statement No. 10

The Plaintiffs assert here that "Refco then devised a scheme to hide the receivable owed to Refco by RGHI." That scheme was round-trip loans, which "lacked any economic substance and were simply a smokescreen to conceal the enormous and growing hole in Refco's balance sheet." Once again the Plaintiffs cite the Breeden Report, but that is not admissible evidence. They also cite the Maggio deposition. But the excerpts cited in the Maggio deposition merely describe the loan transactions in general terms. There is no testimony, for example, that the loans were a "smokescreen to conceal the enormous and growing hole in Refco's balance sheet." So at most the Plaintiffs have established that RCM made an unspecified number of loans to customers; the customer would simultaneously make a loan to RGHI; RGHI would simultaneously pay down the

RGHI receivable; and the duration of the loan would be "anywhere from four or five days to two or three weeks" according to Maggio's testimony. The details and amounts of the transactions, and whether they are fraudulent, are not established by clear and convincing evidence on this motion. Indeed there is no admissible record of any purportedly fraudulent transaction cited anywhere in the Plaintiffs' Rule 56.1 Statement.

### I. Statement No. 11

This statement starts with referencing the Breeden Report as discussing "Refco's practice of diverting customer cash out of segregated accounts and into Refco's treasury operations, where it was commingled and used by Refco to meet obligations. The siphoned cash was what literally enabled Refco to meet its daily obligations and thereby to keep the fraud running without discovery." In this Statement the Plaintiffs implicitly recognize one of the reasons why the Breeden Report is inadmissible — the Plaintiffs state that Breeden reached his conclusions here by relying on the Maggio deposition. In other words, Breeden is simply summarizing information that should be proven at trial through admissible evidence. As to the Maggio deposition: Maggio states that Refco was using "almost every dollar" of the deposits at RCM to fund Refco operations. But Maggio does not state that the cash was "diverted" or "siphoned." That is an opinion on wrongdoing offered by Plaintiffs, not Maggio. And Maggio does not say that the money was taken from "segregated" accounts. Finally, Maggio at another point testified that he believed that RCM had the legal right to use deposits under the terms of the RCM customer agreements. See Maggio deposition at 690. Therefore the most that the Plaintiffs have established through the Maggio deposition is that some unspecified amount of assets on deposit at RCM was used by Refco to fund its operations. The Plaintiffs have not established on this motion that the amount of those transfers, and more importantly have not shown that the use of those assets was wrongful or part of a fraud. [12]

### J. Statement No. 12

---

[12] The Plaintiffs note that while it has been determined that FX accounts at RCM could be used by Refco under the terms of the Margin Annex, the Special Master distinguished the SMFF excess cash because it had been taken from a segregated account at Refco LLC. From that they argue that at least the use by Refco of the SMFF cash was wrongful.  See Primary Wrongs R and R at 11. But the Special Master's  ruling was on a motion to dismiss, and all that was held was that a question of fact was presented as to whether the terms of the Margin Annex gave Refco the right to use SMFF's excess cash. See Id.  ("The most that can be said is that the terms of the Margin Annex are ambiguous. And the meaning of an ambiguous contract is a question of fact. *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 528 (2d Cir.1990)."). That does not at all mean that the Plaintiffs have established beyond reasonable dispute, with admissible evidence, that the use of excess cash at RCM was wrongful.

The Plaintiffs here state that several of the Defendants' experts "have also acknowledged the existence of the Refco fraud and discussed it at some length, mostly in arguing that the fraud was so sophisticated that the Defendants really had no chance of discovering it." Presumably the Plaintiffs are arguing that the experts' assertions are admissible against the Defendants as statements by party-opponents under Rule 801(d)(2). Two possible subdivisions of that Rule might apply: Rule 801(d)(2)(B) (statement adopted by the party-opponent) and Rule 801(d)(2)(C) (statement of an agent authorized to speak on behalf of the proponent). The agency rationale is dubious because experts cannot comfortably be called agents of the party who retained them. *See Kirk v. Raymark Industries, Inc.,* 61 F.3d 147, 164 (3rd Cir. 1995) ("Because an expert witness is charged with the duty of giving his or her expert opinion regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party."). The stronger argument is that a party adopts the expert's opinion by propounding it and offering it into evidence. But that theory only works against the party that propounds the expert. Two of the three experts cited in Statement 12 were propounded by the Bank Defendants, who are no longer in the case. The third expert, Ellingsen, was propounded by Grant Thornton.

This means first that there is nothing in any cited expert report that can be used as a concession on the Refco Fraud by the Mayer Brown Defendants. And even as to Grant Thornton, the Plaintiffs' citation to the Ellingsen Deposition (page 137) speaks only of a hypothetical ("I think the idea that somebody who's conducting an extensive, long-running fraud specifically designed to hide information from the auditors would be forthcoming from a mere inquiry, I just don't agree that makes any sense."). Moreover, Ellingsen did not testify that Refco intended to defraud customers. At most he testified that Refco intended to defraud auditors. See Ellingsen deposition at 138, 147.

Thus, the citations in Statement 12 fail to establish that the Defendants are not contesting "the primary violation of fraud by Refco." And while there is a concession by the Grant Thornton Defendants that Refco intended to defraud auditors, there is no concession that Refco intended to defraud customers such as SMFF.

### K. Statement No. 13

This statement contends that there is no dispute as to the Refco Fraud, again relying on the reports and depositions of "Defendants' experts." All of the experts other than Ellingsen were retained by defendants who are no longer in the case, and therefore the citations to these experts are irrelevant. And as above, none of the cited experts were retained by the Mayer Brown Defendants and so they do nothing to establish that those defendants have conceded the primary wrongdoing. As to Ellingsen, in the passages cited he states his "understanding" from the plea agreements and the like that losses were put in the RGHI receivable; he responds to a hypothetical; and he states his understanding from the plea agreements and convictions that the wrongdoers hid information from the auditors. None of this amounts to any kind of concession of the workings of the Refco Fraud, and especially provides nothing to support the Plaintiffs' contention that Refco intended to defraud customers, as opposed to auditors.

15

**L. Statement No. 14**

This Statement relies solely on the Bankruptcy Examiner's report to attempt to establish the workings of the Refco Fraud. But a Bankruptcy Examiner's report is hearsay when offered, as here, to prove the truth of the facts and conclusions propounded in it. And courts routinely find that there is no hearsay exception that would permit a Bankruptcy Examiner's report to be admitted into evidence.[13] A Bankruptcy Examiner's report is not a business record under Rule 803(6) because it is not "kept in the course of a regularly conducted activity"; and it is not a public record under Rule 803(8) because it is not a "record of statement of a public office."  *See, e.g., In re Rickel & Assocs., Inc.,* 272 B.R. 74, 87-88 (Bankr. S.D.N.Y. 2002) ("The Examiner conducted an investigation, but he was not charged—nor could he be—with the duty to 'hear and determine' any claims in this case" and so the report was inadmissible hearsay; also noting that "A hearsay affidavit is a nullity on a motion for summary judgment"). While bankruptcy courts "routinely consider and rely on the testimony and reports of examiners .... an examiner's report is ... not intended to establish evidence." *In re Fibermark, Inc.*, 339 B.R. 321, 325 (Bankr.D.Vt.2006) (citation omitted); *In re Granite Broad. Corp.*, 369 B.R. 120, 129 (Bankr.S.D.N.Y.2007) ("The Court recognizes ... that the Examiner's conclusions are not based on a full factual record and are technically hearsay.").

Even without regard to the hearsay rule, the Examiner's Report itself indicates that is it not to be used as proof of a fact in any litigation. The Report states that it "should not be taken as admissions or findings for or against any person or entity." Ex. 10 to Simpson Decl. at 13.  As the court in *Fibremark, supra,* stated, a bankruptcy examiner's report puts "the story on paper and provides a context for debate" but it is for the parties "to formulate a fuller version of the debate using the rules of evidence." Consequently, none of the assertions in Statement No. 14 can be considered on this motion for partial summary judgment.

**M. Statement No. 15**

In this Statement the Plaintiffs contend that there is no dispute about the Refco Fraud because the Defendants have previously argued that the Refco Fraud was caused by insiders and so customers could not recover under the doctrine of *in pari delicto*. The Plaintiffs cite here a Memorandum of Law filed by the Banking Defendants. To the extent that memorandum would be admissible evidence, it would only be as a statement of a party opponent under Rule 801(d)(2). But the Bank Defendants are no longer in this case. None of the citations in Statement No. 15 are to any evidence that could be admissible against the Grant Thornton Defendants or the Mayer Brown Defendants.

---

[13] The Plaintiffs, in their Reply Brief, do not address the Defendants' argument and case law to the effect that a Bankruptcy Examiner's report is inadmissible hearsay.

### N. Statement No. 16

Again to show that the parties do not dispute the Refco Fraud, this Statement relies exclusively on Grant Thornton's Memorandum of Law in Support of its Motion for Summary Judgment in its action against THLee. Obviously this memorandum cannot be used as evidence against the Mayer Brown Defendants. As to Grant Thornton, the portions cited admit only that the fraud was designed to deceive the auditors; and that there were large losses transferred to RGHI.

It is fair to state that none of the Defendants contest the fact that there was a large RGHI Receivable, and that it stemmed from customer losses. But that is a far cry from a concession on the workings of the Refco Fraud. There is no concession to Plaintiffs' assertions on, for example, the amount and propriety of Round Trip Loans, the amount and propriety of use of customer assets, the amount of the RGHI receivable at any point in time, whether the receivable was uncollectible, and so forth. In other words, there is no concession of facts that will need to be proven with evidence of the actual transactions; and no such evidence has been presented by the Plaintiffs on this motion.

### O. Statement No. 17

This Statement relies — completely inappropriately — on statements made by the Special Master in the Primary Wrongs R and R, purportedly to establish that there is no question of fact on the primary wrong by Refco. The passage cited, which describes the Refco Fraud, was obviously taken from the Plaintiffs' assertions in their Amended Complaint, which are to be treated as true and proven for purposes of the motion to dismiss. It is just silly to think that the Special Master, in describing the background for the purpose of assessing the adequacy of the Plaintiffs' claims, was somehow making a finding of fact that can no longer be disputed. Consequently, nothing in Statement 17 can be used to support the Plaintiff's motion for summary judgment.

### P. Statement No. 18

This Statement commits the same offense as Statement 17, but expands it to include improper reliance on prior opinions by Judges Lynch and Rakoff. All of these opinions took the Plaintiffs' allegations as true, as they were required to do. None constitutes a finding of fact on any aspect of the Refco Fraud. The Plaintiffs cite a passage from the Special Master's R and R on Grant Thornton's motion for summary judgment in its action against THLee. But again, that passage is to provide background only, and assumes for purposes of argument that the workings of the Refco Fraud could be proven. The Special Master has never made a finding of fact about any part of the Refco Fraud. Accordingly, nothing in Statement 18 can be used to support the Plaintiff's motion for summary judgment.

### Q. Summing Up

When all is said and done, the only admissible evidence presented in the Rule 56.1 statement that supports the Plaintiffs' contentions is the deposition testimony of Maggio and Trosten. But that testimony is so general that it does not even come close to supporting summary judgment on any of the workings of the Refco Fraud. And it has no bearing at all on the second element of fraud — intent to defraud customers — on which the Plaintiffs seek summary judgment. Moreover, the Grant Thornton Defendants' concession that Refco intended to defraud auditors is 1) not a concession about any of the workings of the Refco Fraud about with the Plaintiffs are complaining; 2) not a concession that Refco intended to defraud customers such as SMFF; and 3) not a concession of anything by the Mayer Brown Defendants.


## IV. Should Summary Judgment Be Granted as to Certain Facts?

It is apparent that summary judgment cannot be granted on "the issue of the primary violation of fraud by Refco" — even if that concept does not cover issues of reliance and causation. The Plaintiffs have simply not shown through admissible evidence that their description of the Refco Fraud is either not in dispute or beyond reasonable dispute; and they have provided no admissible evidence at all to support their contention that Refco intended to defraud customers such as SMFF.

The question then is whether partial summary judgment should be granted as to certain *facts* that the Plaintiffs have shown or the Defendants have conceded are not subject to reasonable dispute. After a thorough review, it appears that the Plaintiffs have shown (or the Defendants have conceded) that the following facts are beyond reasonable dispute:

1) Refco and its subsidiaries went into bankruptcy.

2) Trosten and Maggio were convicted or pled guilty.

3) Refco placed certain customer losses — in an amount that remains in dispute —  into a receivable at RGHI.

4) Assets on deposit at RCM were used by Refco to fund its operations — but the amount of those assets and whether the use was wrongful are both in dispute.

5) Interest — disputed as to exact amount —  accrued on the RGHI receivable.

6) RCM made loans to customers, the number and amount of which remain in dispute; the customer would simultaneously make a loan to RGHI;  RGHI would simultaneously pay down the RGHI receivable; and the duration of the loan would be "anywhere from four or five days to two or three weeks."

7) Refco publicly stated in October 2005 that its previous financial statements could not be

relied upon and disclosed the RGHI receivable.

8) There was wrongdoing of some kind at Refco.

9) Grant Thornton concedes that Refco intended to and did deceive its auditors.

_____

The Committee Note to the 2010 amendments to Fed. R. Civ.P. 56 (subdivision (g)) states that after it has been determined that the moving party will not obtain all the relief that has been requested — as should be the case here ---- then the court "may" decide whether to dispose of a material fact that is not genuinely in dispute. In making that decision, the Committee Note cautions that the court should consider whether the non-moving party might be prejudiced, because that party may have been confident that it could defeat the broader motion by pointing out one or a few material facts that were in dispute, thinking it therefore an unnecessary cost to attack every one of the assertions by the moving party." The concern expressed by the Committee Note is at work here, where the Plaintiffs' unfocussed motion — summary judgment on "the primary violation of fraud by Refco" — was plainly deficient in raising facts pertinent to reliance, an indispensable element of fraud. Much of the Defendants' briefs are devoted to the defects in the Plaintiffs' case on summary judgment with respect to reliance.  It wasn't until the oral argument that the Defendants and the Special Master found that while  the motion sought summary judgment on "the primary violation of fraud" it did not in fact encompass reliance issues at all and was limited to the elements of material misrepresentation and intent. Under these circumstances, the Committee Note counsels caution in finding any fact to be beyond reasonable dispute.

The 2010 Committee Note also suggests that in deciding whether to find facts beyond dispute when not all relief can be granted, the court should conduct a cost-benefit analysis:

> Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.

Just so here. Most of the facts found above to be beyond reasonable dispute are tied to and provide background for other facts that must be proven in the case. The Plaintiffs cannot make a case against the Defendants for aiding and abetting fraud unless they provide background evidence about the fraud itself. It would be impossible for the jury to understand the aiding and abetting claims without knowing what the fraud was about.  Even more importantly, the Plaintiffs must prove a fraud and  facts found undisputed above don't even come close to proving all the workings of the Refco Fraud. Open issues abound. To take just a few: was the use of customer accounts wrongful?; did Refco intend to defraud customers?; were the Round Trip Loans without substance and would all participants and preparers know that on their face?; was the RGHI receivable worthless? It is apparent that the few facts that are beyond dispute will, in the words of the Committee Note, "be

better illuminated by the trial of related facts that must be tried in any event." This is especially true given that most of the "facts" set forth as undisputed above are general, and the details of many of them are in dispute — for example, there is an agreement that there was a large RGHI receivable, but disagreement as to the amount; there is agreement that Maggio and Trosten pled guilty but a dispute as to what exactly they pled guilty to, and so forth. So even the undisputed facts will require more proof to flesh them out.

The Plaintiffs argue that partial summary judgment will save time because it will avoid the time it takes to prove all the underlying transactions that make up the Refco Fraud. Oral Argument at 28. But there are a number of answers to this argument. First, if the Plaintiffs want to obtain summary judgment that will forego the inconvenience of proof of the transactions at trial, they must present admissible evidence of those transactions on this motion. This they have not done. The Rule 56.1 Statement does not cite to a record of a single transaction made by Refco. For example, the Plaintiffs specifically sought summary judgment on the amount of the RGHI receivable on a yearly basis (and the amount publicly declared by Refco) as they presented in a chart at oral argument. But they presented no admissible evidence in their summary judgment motion to establish any facts that were used in the chart. They prepared the chart in reliance on the Bankruptcy Examiner's report, which is inadmissible.

Second, the Rules of Evidence permit voluminous admissible records to be introduced by way of summary. See Fed. R. Evid. 1006. The very reason for the rule is to save time at trial. See Saltzburg, Martin and Capra, Federal Rule of Evidence Manual §1006.02[5] (noting that Rule 1006 is grounded in principles of trial convenience and efficiency).

Finally Judge Rakoff has a procedure in place to avoid wasting court time in proving facts that are not disputed. Under Rule 4(a) of Judge Rakoff's Individual Rules of Practice, the parties are required to submit a proposed pretrial consent order, including "[a] statement of the facts and other issues on which the parties agree"; a "particularized description of each party's remaining claims"; and in a jury case "each party's specific contentions as to the facts that are disputed." The pretrial consent order is obviously a better and more narrowly tailored device than this motion for working through what subsidiary facts are undisputed in this complex case.

### III. Conclusion and Recommendation

In the absence of admissible evidence to establish their burden on this motion, the Plaintiffs are left with their assertion that there is no dispute about the Refco Fraud. But the Defendants *do* dispute almost all the Plaintiffs' contentions about the workings of the Refco Fraud, and so the Plaintiffs have not come close to establishing their burden for obtaining summary judgment "on the primary violation of fraud by Refco." And a grant of summary judgment limited to the few facts that are beyond reasonable dispute will not advance the policies of convenience and efficiency that are embodied in Rule 56.

*The Plaintiffs' motion for partial summary judgment should be denied.*



Daniel J. Capra
Special Master

Dated: March 11, 2013
New York, New York