UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

In re REFCO INC. SECURITIES LITIGATION  :

07-MDL-1902 (JSR)

------------------------------------------------X

This document relates to:

------------------------------------------------X  :

KENNETH M. KRYS, et al.,                 :

08 Civ. 7416 (JSR)

                    Plaintiffs,          :
                                         :
        -against-                        :
                                         :
ROBERT AARON, et al.,                    :
                                         :
                    Defendants.          :
                                         :
-------------------------------------- X

### AMENDED THIRD-PARTY COMPLAINT AGAINST PATRINA KHOO FARQUHARSON BY DEFENDANTS DERIVATIVE PORTFOLIO MANAGEMENT, LLC, DERIVATIVE PORTFOLIO MANAGEMENT, LTD, DPM-MELLON, LLC, AND DPM-MELLON, LTD

Defendants/Third-Party Plaintiffs Derivatives Portfolio Management, LLC, Derivatives

Portfolio Management, Ltd, DPM-Mellon, LLC, and DPM-Mellon, Ltd (collectively, "DPM"),

through their attorneys, DLA Piper, LLP (US), by way of Amended Third-Party Complaint

against Patrina Khoo Farquharson, say as follows:

### COUNT I

### (Amended Contribution Claim against Patrina Khoo Farquharson)

1.      Through their First Amended Complaint in this action, plaintiffs seek to recover

from Defendants damages in the amount of $263 million attributable to a settlement SMFF

entered into with the bankruptcy trustee of Refco, LLC to resolve a preference action the Refco

trustee brought against SPhinX Managed Futures Fund ("SMFF") (the "preference settlement").

2.      The preference action arose out of a series of transactions SMFF entered into with Refco and its Bermuda affiliate, Refco Capital Markets, Ltd ("RCM"). SMFF, through its investment manager, PlusFunds Group, Inc. ("PlusFunds"), entered into a prime broker and futures commission merchant relationship with Refco.

3.      Third-Party Defendant Christopher Sugrue was formerly employed by Refco, but served as a director of PlusFunds at the time it decided that SMFF would enter into this relationship with Refco. According to the First Amended Complaint, Sugrue and others at PlusFunds established, maintained, defended and safeguarded this relationship with Refco for corrupt reasons of their own.

4.      Pursuant to this relationship, SMFF maintained funds, including excess cash, at Refco. Refco routinely transferred the "swept" excess cash to RCM with the full knowledge and approval of SMFF, PlusFunds, Sugrue, Farquharson, and Third-Party Defendant Andrew Feighery.

5.      According to the First Amended Complaint, Refco engaged in a massive financial fraud that was discovered in the autumn of 2005. The Refco fraud involved, among other things, the concealment of losses through a series of transactions between Refco and the Austrian bank, Bank fur Arbeit und Wirtschaft ("BAWAG").

6.      Upon the public disclosure of the fraud, Sugrue led the efforts to persuade RCM and Refco to transfer $312 million of SMFF's swept excess cash from RCM back to Refco and, from there, into an account at Lehman Brothers controlled by SMFF.

7.      Those transfers provided the basis for the preference action subsequently brought by the Refco trustee against SMFF.

-2-

8.     Neither DPM, Aaron, nor Castranova was a party to the preference action or had any role in determining the amount, terms or desirability of the preference settlement.

9.     Farquharson and Feighery were the only directors of the SPhinX funds, including SMFF, at the time of the settlement.  They both voted to approve the preference settlement, in the amount of $263 million, on behalf of SMFF.

10.     The preference settlement expressly waived SMFF's right to file and pursue a Proof of Claim in the Refco bankruptcy.

11.     The preference settlement was characterized as "the dumbest settlement ever" in a statement attributed to counsel for plaintiffs.

12.     As a directors of SMFF, Farquharson and Feighery owed SMFF and its investors fiduciary duties.

13.     Farquharson had been appointed to the SMFF board on October 1, 2004 to replace Stuart Drake.

14.     Thereafter, Farquharson acted as a puppet for Sugrue, Jon Knight, and her SMFF co-director, Brian Owens.

15.     Jon Knight, who Farquharson referred to as her "mentor," recommended that Farquharson be made a director of SMFF.  Knight also had ties to Sugrue.

16.     Farquharson admitted that Knight asked her to lie regarding his and Sugrue's involvement in her appointment to the SMFF board.  Specifically, Knight instructed Farquharson to misrepresent that Drake, who Farquharson had never met, contacted her and asked her to serve as a director of SMFF.  She followed those instructions.

17.     Upon her appointment to the SMFF board, Farquharson was required by the rules of the Irish Stock Exchange to disclose all of her directorships.  Farquharson has since admitted that she failed to disclose to SMFF all of her directorships.  For example, Farquharson did not

-3-

disclose that she was a director of SIAM Capital Management, a company that: (i) managed

approximately $50 million for BAWAG; and (ii) had lent Sugrue millions of dollars.

18.     With regard to Sugrue, Farquharson raised issues, via email, with a cash

management plan that had been proposed by the CEO of PlusFunds, Gabriel Bousbib. The email

had been drafted word-for-word by Sugrue, and Farquharson even sent it at the exact time and

date as instructed by Sugrue.  Farquharson also admitted to sending emails at the direction of

Owens.  All of these efforts were designed to, and successful did, use Farquharson's position as a

board member to kill Bousbib's proposal, which would have pulled the excess cash out of RCM.

19.     Additionally, Farquharson admitted to sharing confidential SPhinX business

matters with Knight, an individual who was barred by the SEC from associating with any

investment manager.  Farquharson admitted that her "first loyalty" was always to Knight, and not

SPhinX.

20.     Moreover, Farquharson discussed with Knight how she knew that SPhinX assets

were being moved from segregated accounts upon request by PlusFunds, approval by each

manager and then execution by DPM.

21.     Farquharson also admitted that she took no steps to ensure that the SPhinX assets

were maintained in segregated accounts.

22.     After the preference action was commenced, Farquharson, Feighery, and Knight,

among others, began to formulate a plan to kick defendant Robert Aaron off the SPhinX board.

On March 3, 2006, Feighery and Farquharson passed a resolution to remove Aaron from the

SPhinX board.  With Aaron removed, Feighery and Farquharson, the remaining two SPhinX

directors, were free to deal with the preference action as they saw fit.

23.     While SMFF potentially could have recovered much more than $49 million of the $312 million held at RCM at the time of the Refco bankruptcy, Farquharson and Feighery chose to settle based on the threat of an equitable subordination claim.

24.     RCM's Creditor's Committee threatened an equitable subordination claim based on the alleged misconduct of Farquharson, who had ties to BAWAG, an entity accused of criminal wrongdoing in connection with the collapse of Refco.

25.     In fact, SMFF's bankruptcy attorney specifically testified that Farquharson's involvement with BAWAG, Refco, and a number of companies involved in illegal and/or improper activities served as the basis for the equitable subordination threat.

26.     Farquharson admitted that her relationship with BAWAG was a motivating reason for agreeing to the preference settlement.

27.     Farquharson's decision to accept the preference settlement to further her own self-interest was a breach of her fiduciary duty to SMFF and its investors.

28.     Farquharson's breach of her fiduciary duties caused, in whole or in part, the damages claimed in the First Amended Complaint against DPM.

29.     Farquharson is liable for the damages claimed in the First Amended Complaint against DPM.

WHEREFORE, DPM is entitled to contribution from Third-Party Defendant Patrina Farquharson, and judgment is demanded as follows:

> a.     Awarding to DPM judgment for all or part of the damages assessed against it in this action, in proportion to the relative responsibilities of the parties;
>
> b.     Awarding to DPM its reasonable costs and attorney's fees; and

-5-

      c.      Such other and further relief as this Court may find just and proper.

Dated: Florham Park, New Jersey.           Respectfully submitted,
       March 14, 2013

                                                   DLA PIPER LLP (US)
                                                 300 Campus Drive, Suite 100
                                                 Florham Park, NJ  07932-1039
                                                 973.520.2550

                                               By: _____

                                                 B. John Pendleton, Jr.
                                                 *Attorneys for Defendants*
                                                 *Derivative Portfolio Management, LLC;*
                                                 *Derivative Portfolio Management, Ltd.;*
                                                 *DPM-Mellon, LLC; DPM-Mellon, Ltd., Guy*
                                                 *Castranova, and Robert Aaron*

EAST\47707222.1