**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                  :
In re REFCO INC. SECURITIES LITIGATION    :      Case No. 07-md-1902 (JSR)
                                  :
------------------------------------------------------------X

This Document Relates to:

------------------------------------------------------------X
KENNETH M. KRYS, et al.,             :      Case No. 08-cv-3065 (JSR)
                                  :      Case No. 08-cv-3086 (JSR)
Plaintiffs,                            :
                                  :      REPORT AND RECOMMENDATION
         -against-               :      OF THE SPECIAL MASTER ON
                                  :      THE PLAINTIFFS' MOTION FOR
                                  :      PARTIAL SUMMARY JUDGMENT
CHRISTOPHER SUGRUE, et al.,         :      AGAINST THE MAYER BROWN
                                  :      DEFENDANTS
Defendants.                         :
------------------------------------------------------------X

Daniel J. Capra, Special Master

      The Plaintiffs[1] move for partial summary judgment against Mayer Brown LLP ("Mayer Brown") and two of its attorneys, Joseph P. Collins and Paul Koury (collectively "the Mayer Brown Defendants"). The only claim remaining in this action against the Mayer Brown Defendants is for aiding and abetting the Refco Fraud. The ground for the motion for partial summary judgment as to Collins is that he was convicted of criminal charges relating to his representation of Refco and

---

[1] As recounted in a number of prior opinions, the named Plaintiffs have been appointed by the Cayman Islands Court to bring claims on behalf of SPhinX and PlusFunds. Prior rulings by Judge Rakoff have narrowed the claims for damages to those incurred by SMFF. *See generally* the Standing R and R dated dated February 3, 2010 and affirmed by Judge Rakoff in Orders dated March 31, 2010 and May 3, 2011. *See also* Order of Judge Rakoff dated December 26, 2012 (dismissing claims for damages allegedly suffered by PlusFunds). Moreover, the remaining claims are limited to acts that occurred before the LBO in 2004, because it was only before that time that the SMMF cash at Refco was less than the amount allegedly lost at Refco in October, 2005. See Order dated December 26, 2012.

so is precluded from contending that he did not aid and abet a fraud at Refco.[2] The ground for the motion as to Mayer Brown is that, because Collins was a partner, preclusion extends to the partnership even though Mayer Brown was not a party to the criminal case. The ground for the motion against Koury is non-existent, because the asserted ground for preclusion of nonparties is the partnership connection, and Koury was not a partner of Mayer Brown at any relevant period. Plaintiffs' counsel conceded at oral argument that the motion for summary judgment against Koury must be dismissed.[3]

> ***For the reasons discussed below, the Plaintiffs' motion for partial summary judgment as to Collins and Mayer Brown should be denied. The Plaintiffs' motion for partial summary judgment as to Koury must be denied.***

## I. Legal Standards for Evaluating a Summary Judgment Motion

### A. General

Summary judgment may be granted only if the submissions of the parties taken together show that "there is no genuine dispute as to any material fact and  the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Plaintiffs as moving parties here bear the burden of demonstrating the absence of a material question of fact, and they have "the initial

---

[2] The Special Master has previously issued more than two dozen R and R's in the Refco matter. Some of these R and R's will be referred to herein. Abbreviations used in the prior R and R's will be used herein. Familiarity with all of the R and R's — and with Judge Rakoff's orders reviewing them — is presumed.

[3] *See* Oral Argument at 445:

Special Master: You concede they can't apply [preclusion] to Koury, right?

Plaintiffs' counsel: Not on the partnership basis, that's it.

Special Master: Well, that's the only basis you have.

Plaintiffs' counsel: That's right. He was an associate.

Special Master: So there's a concession on the record that this summary judgment motion must be denied as to Mr. Koury?

Plaintiffs' counsel: I won't dispute that.

2

responsibility of . . .  identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which . . . demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on the summary judgment motion the court must view all facts in the light most favorable to the Defendants as nonmoving parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[A]ll reasonable inferences must be drawn against the [moving] party," and summary judgment may not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002).

If the Plaintiffs have presented facts showing that they are entitled to summary judgment, the Defendants must then set forth specific facts showing that there is a genuine issue for trial. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002). However, if the Plaintiffs have not presented a sufficient showing of entitlement to summary judgment, then the Defendants have no burden of going forward at all.  *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 617 (2d Cir. 1998) ("Where the movant has the burden, its own submissions in support of the motion must entitle it to judgment as a matter of law.").

In reviewing a motion for summary judgment, a court "may rely only on admissible evidence." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir.2004). In this district, Local Rule 56.1 requires a party moving for summary judgment to provide a statement with citations to admissible evidence in order establish its burden of showing the absence of triable facts. *Giannullo v. City of New York*,  322 F.3d 139, 140-41 (2d Cir. 2003).

### B. Partial Summary Judgment and Determination of Specific Issues of Fact

Pertinent to this motion for partial summary judgment, Fed. R. Civ. P. 56(a) provides that a party "may move for summary judgment identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." The purpose of a partial summary judgment motion is to promote efficiency and narrow the scope of a trial to the issues that are reasonably disputed. *See* Moore's Federal Practice 3d ¶56.40[2] (recognizing that partial summary judgment may be appropriate for matters not in controversy in order to promote "economical and expeditious" proceedings).

## II. Issue Preclusion Against Collins

### A. Background on Issue Preclusion

The Plaintiffs seek issue preclusion against Collins based on his federal conviction on

various counts arising from his representation of Refco.[4] The question of the preclusive effect of a federal criminal conviction is governed by federal common law. *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 41-42 (2d Cir. 1986) ("A state court must apply federal law to determine the preclusive effect of a prior federal question judgment. It follows as a matter of course that a federal court should apply federal law in such circumstances."). (Citations omitted).

Under federal law, issue preclusion can be found only if the party seeking it shows that 1) the issue involved in the prior proceeding is "identical" to that sought to be precluded; 2) the issue was "actually litigated and actually decided;" 3) the issue was "necessary" to the prior determination; and 4) there was a "full and fair opportunity" to litigate the issue in the prior proceeding.[5] *Wyly v. Weiss,* 697 F.3d 131, 141 (2d Cir. 2012). *See also Dowling v. United States,* 493 U.S. 342, 350 (1990) (party seeking preclusion has the burden of showing that the issue "was actually decided" in the first proceeding); *Jones v. City of Alton, Ill.,* 757 F.2d 878, 885 (7th Cir. 1985) (party seeking preclusion must show "with clarity and certainty what was determined by the prior judgment"). The party asserting preclusion "bears the burden of showing with clarity and certainty what was determined by the prior judgment, so that issue preclusion will apply only if it is quite clear that this requirement has been met." *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997).

"Because mutuality of estoppel is no longer an absolute requirement under federal law, *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971), a party other than the Government may assert collateral estoppel based on a criminal conviction." *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 43 (2d Cir. 1986). "In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569 (1951). Thus, if the Plaintiffs can show that facts were actually and necessarily decided — essential to the verdict — in Collins's criminal convictions, Collins would be precluded from disputing those facts in this case.

**B. Collins's Criminal Conviction**

Collins was charged with ten counts and convicted of seven. The counts were as follows:

Count One: Conspiracy to Commit Securities Fraud and Other Offenses (convicted)

Count Two: Securities Fraud in connection with the sale of senior subordinated notes in the LBO (convicted)

---

[4] Mayer Brown and Koury join in the arguments against preclusion of Collins, for the obvious reason that if Collins is not precluded, the other defendants cannot be precluded.

[5] The Defendants do not dispute the last element, i.e., they concede that Collins had a full and fair opportunity to defend the charges.

Count Three: Securities Fraud in connection with the sale of common stock of Refco in the LBO (convicted)

Count Four: Filing False Statements with the SEC in the S-4 statement filed in 2005 (convicted)

Count Five: Filing False Statements with the SEC in the S-1 statement filed in 2005 (convicted)

Count Six: Wire Fraud by an email to THLee on April 13, 2004 (acquitted)

Count Seven: Wire Fraud by an email to THLee on May 6, 2004 (convicted)

Count Eight: Wire Fraud by an email to THLee on May 6, 2004 (convicted)

Count Nine: Wire Fraud by an email to THLee on June 7, 2004 (acquitted)

Count Ten: Bank Fraud on HSBC Bank in 2004 (acquitted)

The Plaintiffs claim that in rendering the guilty verdicts against Collins, the jury had to make the following conclusions: 1) that there was a fraud at Refco, specifically, the concealing of the RGHI receivable; 2) that Collins knew about the fraud; and 3) that Collins substantially assisted Refco in accomplishing the fraud. The Plaintiffs' conclusion is only correct of course if those issues were actually and necessarily determined. The problem in resolving the Plaintiffs' motion is that all of the guilty verdicts were general verdicts, and "a general verdict of the jury without special findings does not indicate which of the factual contentions alleged in the indictment or contained in the trial record were determined by the jury . . . " *Berstein v. IDT Corp.,* 638 F.Supp. 916, 918 (S.D.N.Y. 1986) (Weinfeld, J.) (Internal citation and quotations omitted). Where there is a general verdict, "what was decided by the criminal judgment must be determined . . . upon an examination of the record, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts." *Emich Motors*, *supra,* 340 U.S. at 569.

## C. Collins's Trial and the Two Theories of Criminality

As stated above, the Second Superseding Indictment filed against Collins charged him with ten counts: two counts of securities fraud, two counts of SEC registration fraud, four counts of wire fraud, one count of bank fraud, and a general count of conspiracy to commit each of the charged acts of fraud. (Simpson Decl. Ex. 10). The conspiracy count contained extensive factual allegations that were incorporated into the other charges — thus all the fraud and false statement charges were essentially included in the conspiracy count as acts of the conspiracy, as well as being set forth in separate counts.

5

The factual allegations in the indictment alleged *two* theories of fraud. One theory was that which tracks the allegations in this case: that Collins assisted in hiding the RGHI receivable by documenting the Round Trip Loans.

The other theory of criminality pitched by the government at Collins's trial is not pertinent to the Plaintiffs' claims here at all. It was that during THLee's due diligence review for the 2004 LBO, Collins hid the existence and terms of a Proceeds Participation Agreement ("PPA") between BAWAG and Refco. The PPA granted BAWAG the right to receive payment from any sale or offering of Refco or to convert the right of payment to ownership of shares; it also granted BAWAG a right to veto any sale of Refco. Simpson Decl., Ex. 10 at ¶¶ 19, 20. The government's theory was that Collins's concealing the PPA was a fraud because THLee would have found it material that BAWAG had backstage control over and a substantial financial interest in the LBO. Defendants' Rule 56.1 Statement, ¶59 (citing 2006 Trial Tr. at 2908 (charging conference)).[6]

The government at the charging conference argued that even if the jury concluded that Collins did not know about or assist in concealing the RGHI receivable, his concealment of the PPA would be sufficient to convict Collins of fraud and conspiracy. *Id*. ¶63 (citing Nov. 6, 2006 Tr. at 2908). The trial court agreed with the government's argument, and the charges to the jury treated Collins's actions pertinent to the Refco Fraud and the PPA as distinct and independent grounds for conviction. *Id*. ¶ 41 (citing Nov. 9, 2012 Trial Tr. at 3352). The trial court specifically refused to instruct the jury that it must find that Collins knew of the fraud relating to Refco's financial condition in order to convict him. Charging Conference Tr. 2911, 2919. The trial court's charge on the theory of the defense set forth the PPA Fraud and the Refco Fraud as two separate grounds with two different defenses. Trial Tr. at 3352 (Jury Charge) ("With respect to the underlying fraud at Refco" the defense was lack of knowledge and no scheme to hide the receivable while "With respect to the PPA" the defense was that Collins was acting in good faith in representing his client). And the government argued in closing that the jury could find the concealing of the PPA to be material and fraudulent, independent of the Refco Fraud. Government Rebuttal Summation at 3296-3307.

The Defendants argue that none of the issues pertinent to the aiding and abetting claim here were *necessarily* determined in Collins's criminal trial, because the jury could have rendered its guilty verdicts by finding that Collins defrauded THLee in suppressing the PPA, even if he did *not* aid and abet the Refco Fraud. Indeed at least as to the wire fraud counts on which Collins was convicted — Counts Seven and Eight — the allegations related *only* to the PPA fraud.[7] The Plaintiffs acknowledge that the government argued and presented evidence about the PPA fraud at

---

[6] *See* Trial Testimony of Scott Schoen, THLee's former managing director, Oct. 11, 2012 at 434 (stating that PPA was a material document to THLee because THLee was operating under the premise that it wouldn't need consent from any party other than Refco).

[7] Count Seven alleged that Collins sent an email to THLee representatives regarding due diligence concerning indemnifications. Count Eight alleged the same as to a different email. Simpson Ex. 10 at 38.

Collins's trial. But they contend that at the very least the convictions on Counts Four and Five — for making false statements in two registration statements with the SEC — had to be directed toward Collins's role in the Refco Fraud, because the two registration statements had nothing to do with concealment of the PPA. As the Plaintiffs put it, "the jury could not have convicted Collins of Counts Four and Five without concluding that Collins knew that he was helping hide [the RGHI receivable] by documenting the RTL's." Plaintiffs' opening brief at 22-23.

Given that issue preclusion requires that issues were certainly and necessarily determined — and given the fact that all inferences on summary judgment must be drawn against the moving party — the Special Master determines that Collins should not be precluded from contesting the Plaintiffs' claims about: 1) the existence of the Refco Fraud; 2) his knowledge of that fraud; or 3) his substantial assistance of that fraud. There are two reasons for this determination: 1) the function of the conspiracy count at the Collins trial; and 2) the fact that the Plaintiffs' claims have now been limited to acts that occurred before the LBO and nothing in the Collins verdict certainly and necessarily determined anything about the pre-LBO time period.

### D. The Function of the Conspiracy Count

At first glance it would appear that the PPA fraud could not be made a part of the registration fraud counts. But the conspiracy count ended up connecting *any* showing of fraud to all the counts, upon a finding of conspiracy. According to the jury charge on the conspiracy count, the jury could find Collins guilty of conspiracy if it found that he conspired to defraud THLee by concealing the PPA. The court's instructions further provided that the jury could convict Collins of *all* the other counts — including securities fraud and registration fraud — based on the acts of his co-conspirators (such as Bennett)[8] even if Collins did not commit or know of those acts. *See* Nov. 9, 2012 Trial Tr. at 3388-3389 (trial court charges jury that "all of the co-conspirators must bear criminal responsibility for the commission of the substantive crimes"). Thus, because there is a way to explain the guilty verdicts other than through the jury's having to find that Collins knowingly took part in concealing the RGHI receivable, Collins cannot be precluded from contesting the Refco Fraud and his part in it in this action. While it is plausible to think that the jury, in finding Collins guilty, thought that things were not on the up-and-up at Refco and that Collins had a hand in it, that was not a *necessary* determination for the jury to have to make in order to get where it got. The fact remains that based on all the evidence presented and on the jury charge, the jury could have found Collins guilty on all the counts it did without making any determination about Collins's role in the Refco Fraud. Indeed it could have found a PPA fraud without having to find beyond a reasonable doubt that there was a hidden receivable at Refco.[9]

---

[8] At the trial a BAWAG lawyer testified that Bennett refused to have the PPA disclosed because it would "complicate the transaction" and "could drive down the price." Trial Tr. at 1959. *See* Indictment ¶5 (naming Bennett as a co-conspirator).

[9] It is notable that testimony presented by the government on counts Four and Five included that of Mr. Stefanakis, a lawyer at Cravath who represented the underwriters in doing

The court's analysis in *Angstrohm Precision, Inc. v. Vishay Intertechnology, Inc.,* 567 F.Supp. 537, 540-41 (E.D.N.Y. 1982), is pertinent here. In that case, a plaintiff sought preclusion on the basis of a general verdict in a civil antitrust action in which separate methods of wrongdoing were alleged. In the prior action (Sfernice), the court instructed the jury as follows:

> In summary if you find that Vishay fraudulently or inequitably produced a patent or that Vishay misused its patent by making overly broad assertions of its rights thereunder or that Vishay initiated improper patent interference proceedings or that Vishay improperly initiated litigation or improperly threatened to initiate litigation on trade secrets or on any other basis, and that such conduct excluded competitors, including Sfernice, from the market, then you must find that Vishay has engaged in illegal conduct as proscribed by our antitrust laws.

The jury returned a general verdict that Vishay had committed an antitrust violation. The court held that *none* of the grounds for reaching that verdict were precluded in the subsequent civil case. The court explained as follows:

> The general verdict rendered in Sfernice does not give rise to collateral estoppel because it is silent as to which of the allegations of unlawful activity were actually found to be unlawful. Without such a specification of the basis for liability, it would be unfair to bar Vishay from litigating these issues. It has been held that a judgment which is silent with respect to which of many independently adequate grounds liability has been founded upon does not give rise to collateral estoppel. *Hertz v. Graham,* 168 F.Supp. 755 (S.D.N.Y.1958) (refusing to estop a party as to her negligence where a prior general verdict of damages was based on a charge which included claims for both negligence and strict liability); *Lagana v. A.H. Robins Co.,* No. 75 C 1413 (E.D.N.Y., motion denied, August 13, 1979) (refusing to estop defendant as to liability under a prior general verdict resulting from a charge consisting of two claims: that a device was ineffective in preventing pregnancy and caused a perforated uterus); 1B Moore, Federal Practice ¶ 0.443[4] at p. 3915 (2d ed. 1980).

> The fair application of collateral estoppel is attendant upon the actual and necessary determination of identical issues in the instant and underlying cases. Where several counts have been submitted to the jury and the jury's verdict leaves unclear the grounds upon which its determination is based, the precision as to identity of issues which collateral estoppel demands is absent. Accordingly, collateral estoppel has been denied in cases where uncertainty exists as to the basis for the general verdict. * * *

---

due diligence for THLee; and most of that testimony is related to why he would want to know the kinds of facts that are found in a PPA. *See* Trial Tr. 10/23/12 at 2147-55. That undermines the premise of the Plaintiffs' argument that Counts Four and Five had to be about the Refco Fraud.

The Sfernice jury's general verdict provides this court with no basis for determining which of the plaintiff's allegations were found by the jury in reaching its verdict—any one or all would have sufficed. The Sfernice jury was specifically instructed that liability could be predicated upon any one of the above asserted acts if it was found to have occurred and to have been unlawful within the meaning of the antitrust laws * * *.

* * *

The unfairness which would result if Vishay were estopped to prove the lawfulness of each of the acts alleged in Sfernice is highlighted by consideration of the license to prove damages which collateral estoppel would afford to plaintiffs. The specific determinations of the Sfernice jury with respect to the patents, lawsuits, industrial espionage, market allocation, etc. at issue cannot be deciphered by this court without speculation. Accordingly, to permit plaintiffs to attempt to prove damages flowing from acts with respect to which there has been no conclusive determination that such acts took place or the unlawfulness thereof would be manifestly unjust.

Just so here. Because the jury could have convicted Collins without finding anything about the Refco Fraud, or Collins's participation in it, the conviction should not preclude Collins from contesting either the existence of the Refco Fraud or his part in it in this case.

### E.  The Registration Fraud Claims Post-Date the Plaintiffs' Claims

Assuming arguendo that Collins's convictions on the registration fraud counts — counts Four and Five — could not have been reached through a finding of the PPA fraud, those convictions are still not preclusive in this case. The registration fraud claims were for actions allegedly taken by Collins on April 6, 2005 (with regard to the S-4 statement), and August 8, 2005 (with regard to the S-1). But the problem for the Plaintiffs is that their claims for damages are now limited to causative actions that occurred *before the LBO in 2004.  See* Judge Rakoff's Order dated December 26, 2012. Under Judge Rakoff's Order, the remaining claims in this case are limited to acts that occurred before the LBO because it was only before that time that the SMMF cash at Refco was less than the amount allegedly lost at Refco in October, 2005.

Even under the Plaintiffs' theory of preclusion — i.e., the registration-fraud counts could not have been determined through the PPA fraud — the finding necessary for conviction on those counts was that there was a fraud at Refco, aided and abetted by Collins, in *2005*. Again, preclusion cannot apply unless the jury actually and necessarily found the fact sought to be precluded. Under the terms of the indictment, the jury did not have to find *anything* about the Refco Fraud or Collins's part in it before the LBO in 2004 — and those are the facts that the Plaintiffs must prove here.[10]

_____

[10] The Plaintiffs also rely, though less vigorously, on Collins's convictions of securities fraud (Counts Two and Three). But those counts involve misstatements pertinent to the sale of

The Plaintiffs argue that if the jury convicted Collins of his part in the Refco Fraud — as we are assuming here for purposes of argument — then the jury had to find that the fraud was going on, and Collins aided and abetted it, during the pre-LBO times of which the Plaintiffs can complain. But it is not at all unreasonable to conclude that the jury could have found that Collins knew about the Refco Fraud at the time of the LBO and thereafter, but not before.  The government presented evidence that Collins was informed about the existence of the RGHI receivable by Melamed — in 2004.  That was the only direct evidence that the government presented about Collins's knowledge of the hidden receivable. The Round Trip Loans, which are at the heart of the Plaintiffs' allegations against Collins, were in no way part of the misstatements in the S-1 and S-4. The S-1 and S-4 statements might have hidden the receivable, but that concealment is not dependent on a finding that Collins papered the RTL transactions or knew about the receivable years before those registration statements were filed.

Accordingly,  it cannot be said that, in convicting Collins of registration fraud and securities fraud, the jury necessarily found that Refco committed fraud, or that Collins knowingly aided and abetted it, during the pre-LBO time period of which the Plaintiffs can complain.

### E. Issues Remaining Open Even if the Plaintiffs are Correct About Preclusion

Even if the Plaintiffs are correct that Collins's convictions necessarily mean that the jury found that there was a hidden receivable at Refco and that Collins knowingly aided and abetted its concealment — at a time about which the Plaintiffs complain — there remain live issues that Collins is entitled to contest.

First, the Plaintiffs argue that the jury necessarily found that "there was a fraud at Refco" with the implication that the jury found *all the elements of a civil claim for fraud.* But this is clearly not the case. "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). Even if one were to agree that the convictions were preclusive on a "fraud at Refco" it is quite obvious that the only elements of fraud that the jury would have found are the first two — misrepresentation of a material fact that Refco knew to be false. The jury at Collins's trial was not even made aware of the existence of SMFF; and there was no evidence presented about intent to defraud customers, as opposed to investors. The Plaintiffs' therefore have not shown that Collins's jury necessarily and actually determinee that Refco intended to defraud customers; nor that SMFF

_____

Senior Subordinate Notes in the LBO, and sale of the common stock of Refco. Those securities transactions, for reasons stated in text, post-date any of the actions of which the Plaintiffs can complain. Indeed those convictions are more tied to the PPA fraud than to anything about which the Plaintiff can complain. *See* Trial Tr. at 2911, 2913 (Charging Conference) (PPA concealment would be a material omission in connection with the purchase or sales of securities to THLee).

reasonably relied on the misrepresentation; nor that Refco's misrepresentations caused SMFF injury. So those issues — as well as, of course, any amount of damages suffered by SMFF, remain live issues for trial even if the Plaintiffs are right about issue preclusion.

The Defendants argue further that even if the jury found that Collins substantially assisted the Refco Fraud, that finding would not be preclusive because the standards for substantial assistance differ in criminal and civil cases — so the issues are not identical as required for issue preclusion. Under the jury charge in Collins's criminal case, the jury had to find "that the defendant wilfully and knowingly [sought], by some act, to help make the crime succeed." Nov. 9, 2012 Trial Tr. at 3385 (Jury Charge). In contrast, in a civil action, "a plaintiff must allege that the defendant's substantial assistance in the primary violation proximately caused the harm on which the primary liability is predicated. The Plaintiffs must allege more than but-for causation. They must allege also that their injury was a direct or reasonably foreseeable result of the conduct." *Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*, 479 F.Supp.2d 349, 370-71 (S.D.N.Y. 2007).[11] *See generally SEC v. Apuzzo,* 689 F.3d 204, 212-13 (2d Cir. 2012), in which the court found that the standards for substantial assistance in an SEC enforcement action were the same as for the crime of aiding and abetting — and different from the proximate cause standard applicable to civil cases for aiding and abetting. Judge Rakoff, writing for the court, explained as follows:

> While Apuzzo argues that substantial assistance should, instead, be defined as proximate cause, his argument ignores the difference between an SEC enforcement action and a private suit for damages. "Proximate cause" is the language of private tort actions; it derives from the need of a private plaintiff, seeking compensation, to show that his injury was proximately caused by the defendants' actions. But, in an enforcement action, civil or criminal, there is no requirement that the government prove injury, because the purpose of such actions is deterrence, not compensation.

The Plaintiffs respond with generalities — that a criminal conviction can give rise to collateral estoppel in a subsequent civil action, and that the government "proved that Collins knew about the Refco fraud and helped to carry it out, by documenting the fraudulent RTL's" which are the "very same facts that would be at issue in this trial." Plaintiffs' Reply to Mayer Brown Brief at 14.[12] But the point is that, even if the Plaintiffs are right in their assertion that the jury found that

---

[11] As Judge Kaplan recognized in *Fraternity Fund,* "there is some debate about whether proximate cause and substantial assistance ought to be equated in the aiding and abetting context." But most case law in the Second Circuit requires a showing of proximate cause for an aiding and abetting claim. *See, e.g., Pension Committee of University of Montreal Pension Plan v. Banc of America Securities*, *LLC*, 446 F.Supp.2d 163, 201 (S.D.N.Y. 2006).

[12] The case the Plaintiffs rely on to respond to Mayer Brown's argument, *Sorrentino v. Burr Labs, Inc.,* 397 F.3d 418, 421 (W.D.N.Y. 2005) is inapt. In that case, the plaintiff sued a drug manufacturer for marketing drugs that caused him to murder his wife. He had been convicted of that crime and at the trial had offered as an affirmative defense the extreme

Collins substantially assisted in the Refco Fraud under the charge they were given, they did not necessarily find that Collins acted in such a way as to *proximately cause SMFF damages*. All they had to find was that Collins committed a single act of assistance intended to help conceal the RGHI receivable. As the court recognized in *Apuzzo*, the jury in Collins's case was operating under a substantially relaxed standard.  The proximate cause standard is relaxed in criminal cases and SEC enforcement actions precisely because "many if not most aiders and abettors would escape all liability if such a proximate cause requirement were imposed, since, almost by definition, the activities of an aider and abettor are rarely the direct cause of the injury brought about by the fraud, however much they may contribute to the success of the scheme." *Apuzzo*, 689 F.3d at 213.

Accordingly, even if the Plaintiffs are correct that the Collins jury necessarily decided issues regarding the Refco Fraud and Collins's participation — and even if those findings necessarily decided the issues for a time period that remains relevant in this action — the only issues that could be found to be precluded are two: 1) that Refco knowingly made misrepresentations that concealed the RGHI receivable; and 2) that Collins knew that the statements were misrepresentations.

---

### *Conclusion on preclusion as to Collins*

None of the facts disputed by Collins here should be precluded on the basis of his criminal convictions, because: 1) the jury did not necessarily decide anything about the concealment of the RGHI receivable or Collins's part in it; and 2) even if it did, the jury did not necessarily decide anything about the concealment of the receivable or Collins's part in it during a time about which the Plaintiffs can complain. But even if the Court disagrees and finds that the Collins jury did make determinations that are preclusive in this case, preclusion should apply only to Refco's knowing misrepresentations, and Collins's knowledge of the same.

## III. Preclusion Against Mayer Brown

This section presumes that the Court finds that certain issues in the action against Collins are precluded on the basis of the jury's determinations in his criminal case. The Plaintiffs argue that to the extent Collins is precluded, Mayer Brown should be precluded as well. The asserted basis for preclusion is that "[a]s Mayer Brown's partner, Collins acted on the firm's behalf when representing Refco and documenting the RTL transactions." Opening Brief at 17. Because a partnership is responsible for the acts of its partners, the Plaintiffs conclude that Mayer Brown is also bound by

---

emotional disturbance that was caused by the drugs. When he was convicted, the jury had to find that he did not show by a preponderance that the drugs caused the murder. Therefore that issue of drug causation was precluded in the wrongful death action against the drug manufacturer, as it was precisely the same issue subject to the same standards in both proceedings.

the criminal conviction based on the acts of a partner. The Plaintiffs state that "Mayer Brown should be precluded by the Collins conviction because there was 'privity' between Mayer Brown and its partner Collins." Reply brief at 4.

The Plaintiffs are arguing that Mayer Brown is bound by a determination made in a case in which it was not a party. But as the Supreme Court stated in *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) applying issue preclusion against those who are not parties to the prior matter is a radical concept:

> A person who was not a party to a suit generally has not had a full and fair opportunity to litigate the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the deep-rooted historic tradition that everyone should have his own day in court.

In *Taylor,* the Court unanimously rejected the doctrine of "virtual representation" under which courts had held nonparties bound whenever "the relationship between a party and a nonparty is 'close enough' to bring the second litigant within the judgment." *Id.* at 896. The Court reasoned that a flexible and flimsy test of "virtual representation" would erode the fundamental premise that a party is entitled to its day in court:

> First, our decisions emphasize the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party. Accordingly, we have endeavored to delineate discrete exceptions that apply in "limited circumstances." Respondents' amorphous balancing test is at odds with the constrained approach to nonparty preclusion our decisions advance.
>
> Our second reason for rejecting a broad doctrine of virtual representation rests on the limitations attending nonparty preclusion based on adequate representation. A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. * * *
>
> Third, a diffuse balancing approach to nonparty preclusion would likely create more headaches than it relieves. Most obviously, it could significantly complicate the task of district courts faced in the first instance with preclusion questions. An all-things-considered balancing approach might spark wide-ranging, time-consuming, and expensive discovery tracking factors potentially relevant under seven- or five-prong tests. And after the relevant facts are established, district judges would be called upon to evaluate them under a standard that provides no firm guidance. * * *

*Id.* at 899-901 (Internal citations and quotations omitted).

The Court's decision in *Taylor* certainly sets a difficult course for the Plaintiffs in arguing

that Mayer Brown is barred from defending itself because one of its partners defended against the same contentions. Collins could not be deemed an adequate representative under *Taylor* because Collins would not have understood himself to be acting in a representative capacity (only he was going to jail if convicted), and the court in Collins's case understandably took no care to protect the interests of Mayer Brown. And at a minimum, *Taylor* requires a new look at whether the pre-*Taylor* cases barring nonparties on the basis of virtual representation are correctly decided.

The Plaintiffs, however, are undaunted by *Taylor*.  In the Plaintiffs' view, *Taylor* simply tightened the analysis for evaluating nonparty preclusion, rejecting the formless multifactor tests used by some courts. The Plaintiffs argue that the result in *Taylor* actually supports their position because "the *Taylor* Court specifically *approved* the long-standing doctrine of privity as a basis for nonparty preclusion." Reply brief at 5 (emphasis in original).[13]

The section of *Taylor* from which the Plaintiffs seek support is in the Court's discussion of established exceptional situations in which nonparty preclusion is permitted. The result of *Taylor* is that nonparty preclusion must fit within one of these narrow these exceptions rather than under the formless and overbroad "virtual representation" doctrine. The Court in *Taylor* set forth six categories of exceptions, but the Plaintiffs rely — and can  possibly rely —  on only one of them: the exception for "substantive legal relationship."[14]

The *Taylor* Court described the exception permitting preclusion of nonparties due to a substantive legal relationship in the following passage:

> [N]onparty preclusion may be justified based on a variety of pre-existing "substantive legal relationship[s]" between the person to be bound and a party to the judgment. *Richards v. Jefferson County*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996). Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. See 2 Restatement [2d of Judgments] §§ 43–44,

---

[13] The strength of the Plaintiffs' reliance on — and argument about — *Taylor* is undermined by the fact that the Plaintiffs did not even cite *Taylor* (a recent unanimous Supreme Court case on a question of applicable federal law) in their opening brief.

[14] The *Taylor* Court also described an exception permitting preclusion where the nonparty "assumed control" over the prior litigation. The Plaintiffs do not assert preclusion under this category, as they acknowledge they cannot show on this motion that Mayer Brown controlled Collins's defense. *See* Reply Brief at 6, n. 3. For some reason, though, the Plaintiffs find it "significant that Mayer Brown does not specifically say — in its brief or its supporting statement of fact — whether or not it played a role behind the scenes at the Collins trials . . ." *Id.* Given the fact that Mayer Brown is the non-moving party and has no burden of coming forward on anything unless the Plaintiffs present admissible evidence, it does not seem "significant" that Mayer Brown has not come forward with evidence that it did not have a puppeteer's role in the Collins prosecution.

14

52, 55. These exceptions originated "as much from the needs of property law as from the values of preclusion by judgment." 18A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4448, p. 329 (2d ed.2002).

Id. at 893 (some citations omitted).[15]

The dispute between the parties here is essentially narrowed to whether the partnership-partner relationship is within the *Taylor* Court's description of the "substantive legal relationships" that justify an exception to the fundamental premise that each party is entitled to its day in court. Mayer Brown emphasizes the *Taylor* Court's language that substantive legal relationships — for purposes of nonparty preclusion — originated from property law. Mayer Brown also notes that the Court did not list partnerships as one of the examples of substantive legal relationships, and that the examples listed are each grounded in property relationships. Finally, Mayer Brown notes that the Restatement sections cited by the *Taylor* Court all concern property relationships.[16]

The Plaintiffs argue that another section of the Restatement, section 60, includes the partner-partnership relationship in the category of relationships that might justify preclusion. The Plaintiffs also note that the *Taylor* Court's list of qualifying substantive legal relationships is preceded by an "included, but not limited to."

As to the meaning of *Taylor* and its exception for substantive legal relationships, Mayer Brown definitely has the better of the argument. If *Taylor* stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties. The Court's definition of the substantive legal relationship exception, while somewhat open-ended, is pitched exclusively to property-based relationships; so the "included but not limited to" is fairly read as including *other* property based relationships beyond bailor-bailee, etc.  The case cited by the Court, *Richards v. Jefferson County,* stated in dictum only that a trustee-beneficiary relationship could justify nonparty preclusion (no reference was made to a partnership relationship);  and in that case the Court held that prior litigation brought by certain property owners to challenge a tax could not bind different

---

[15]    The court dropped a footnote to its description of the "substantive legal relationships" exception to comment on the use of the term "privity":

The substantive legal relationships justifying preclusion are sometimes collectively referred to as "privity." See, e.g., *Richards v. Jefferson County*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996); 2 Restatement § 62, Comment a. The term "privity," however, has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground. See 18A Wright & Miller § 4449, pp. 351–353, and n. 33 (collecting cases). To ward off confusion, we avoid using the term "privity" in this opinion.

[16] See Restatement 2d of Judgments §§ 43-44 (preceding and succeeding property owners); § 52 (bailee and bailor); §55 (assignee and assignor).

property owners — to do so would violate the due process rights of the nonparties. So the *Taylor* Court is hardly relying on expansive authorities for its description of the substantive legal relationships necessary to justify the exceptional use of nonparty preclusion.

Moreover, the Plaintiffs' reliance on Section 60 of the Restatement 2d is inapt. Not only did the *Taylor* Court not cite that section, but the terms of Section 60 specifically state that preclusion should *not* apply against partners based on the adverse determination of facts against another partner. Section 60 states that a judgment in favor of an injured person against a partner "renders the property of the partnership subject to execution to satisfy the judgment *but is not otherwise binding on a partner who was not a party to the action* unless he controlled or participated in controlling the defense of the action, or was given notice of an opportunity to defend the action." (Emphasis added). And the comment to Section 60 clearly states that a partner "who has not been served is not bound beyond his interest in the partnership property."[17] Thus there is nothing in Section 60, or in *Taylor*, that supports the proposition that a partnership loses its day in court in a civil case after a partner has been convicted.

The Plaintiffs' search for support in other case law fares no better. The Plaintiffs state that "many courts, including the Second Circuit, have recognized that partners are in 'privity' for preclusion purposes." Reply Brief at 7. But the citations for this premise are underwhelming. The Plaintiffs cite *Ferris v. Cuevas,* 118 F.3d 122 (2d Cir. 1997), but in that case the party against whom preclusion was sought in the second action clearly controlled the first, with the same lawyers involved in both actions. And the court's recitation of the New York law on privity for preclusion purposes does not include partnerships. *Id.* at 126 ("The New York Court of Appeals has stated that privity includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action. Privity has also been found where a person so controlled the conduct of the prior litigation in which they were interested such that the result is res judicata against them.") (internal citations and quotations omitted).[18]  Plaintiffs also cite *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052-53 (9th Cir. 2005).  That case involved successive actions by non-profit organizations to challenge an alleged failure to comply with environmental laws. The court *rejected* non-party preclusion because the lower court made no inquiry as to whether the non-parties' interest were adequately represented in the first action. The  court in the course of its discussion simply cited to the examples of privity relationships recognized by the Restatement — including section 60 which, as discussed above, provides that partners are *not* generally bound by factual determinations against other partners. So it is apparent that *Headwaters* provides no support for the Plaintiffs'

---

[17] Section 60(2) provides that if a partner brings an action *against* an individual and asserts partnership interests, then an adverse determination can bar an identical action by the partnership. But that subsection is obviously inapplicable to the facts of this case.

[18] The *Cuevas* court states in dictum in a footnote that "[b]usiness partners are generally held to be in privity for purposes of business activities" but cites only the case of  *A to Z Assocs. v. Cooper*, 161 Misc.2d 283, 613 N.Y.S.2d 512 (1993), discussed below. 118 F.3d 127, n. 6.

position here. The next citation is to *Beras v. Carvlin,* 313 Fed. App'x 353, 355 (2d Cir. 2008), which the Plaintiffs cite for the proposition that the Second Circuit held that an attorney was "'in privity with his former law firm' for preclusion purposes." Reply Brief at 9. That is an overbroad assessment. In *Beras* the plaintiff sued an attorney for malpractice and, when that claim was dismissed, he sued the law firm for essentially the same act of malpractice. The court held that the law firm could use the prior dismissal as a *bar* because when the plaintiff sued the lawyer the first time around, he was essentially suing the law firm. That fact situation can hardly be further from the situation in this case. *Beras* did not raise the basic problem in this case — that the Plaintiffs are seeking a justification to deprive Mayer Brown of its day in court. Whether "privity" can be found to *benefit* the firm from having to defend against a successive litigation is completely different from whether "privity" can be found to deprive a firm of its day in court. Indeed Restatement Section 60 differentiates the two situations. It states that if a plaintiff is unsuccessful against a partner he is precluded from suing the partnership on an identical claim; but if the plaintiff is successful, that is binding on the partnership only as to execution on its property, and not binding for any determination of fact.

Plaintiffs cite to *Hallock v. United States,* 2010 U.S. Dist. Lexis 109278 (N.D.N.Y), for its general statement that "business partners are generally held to be in privity for the purposes of business activities" — but that breezy reference is unavailing given the fact that the court found a husband's claims were *not* precluded by a prior case brought by his wife and their joint business, and declared that it was unnecessary to decide whether privity was established in the case. *Id.* at *21-22.

So the case law presented by the Plaintiffs and analyzed so far is decidedly weak in establishing the proposition that a partnership is deprived of its day in court after a partner has been convicted.  The stool on which the Plaintiffs are standing receives almost all of its support from a single case: *A to Z Assocs. v. Cooper,* 16 Misc.2d 283, 613 N.Y.S.2d 512 (Sup.Ct. N.Y.Co. 1993). In that case, an attorney and a doctor formed a business partnership in order to manage the affairs of designers, including Gloria Vanderbilt. Vanderbilt initiated a disciplinary action against the attorney, who was subsequently disbarred. The partnership sued Vanderbilt, claiming she had breached an agreement to pay them a percentage of her gross income in exchange for legal, business and advisory services, and Vanderbilt counterclaimed for fraud and breach of fiduciary duty. The court found that the partnership and the doctor were both precluded from challenging the facts that had been determined against the attorney in the disciplinary proceeding. As to depriving the doctor of his day in court, the court explained as follows:

> As partners, Andrews and Dr. Zois were clearly in privity with respect to all of the dealings with Vanderbilt which are the subject of this action, and none of the plaintiffs had conflicting interests in the disciplinary proceeding that should permit them to relitigate the same issues in this action.

> Furthermore, Dr. Zois was in fact a participant in the disciplinary hearings. He was called as a witness and testified on Andrews' behalf. Due to the serious allegations of misconduct committed by him as well as various provisions of New York's partnership law

Dr. Zois clearly had every incentive to assist Andrews in the disciplinary proceedings.

16 Misc.2d at 288-89. (Internal citations omitted).

As to depriving the partnership of its day in court, the *A to Z* court relegated its analysis to a footnote stating that New York Partnership Law "provides that every partner is an agent of the partnership for purposes of its business ...  renders the partnership liable for loss or injury caused by the wrongful acts of a partner ...  provides that a partnership is bound by a partner's breach of trust; and, [provides that] all partners are jointly and severally liable for everything chargeable to the partnership . . ." *Id.* at n.1.

There are a number of reasons why this opinion of a New York trial court in 1993 is insufficient to justify preclusion against Mayer Brown in this case. First, the fundamental flaw in *A to Z* is that it confuses issue preclusion with substantive liability. The fact that Mayer Brown is substantively responsible for the acts of its partners does not mean that a prior *determination* of the partner's actions can preclude Mayer Brown's right to contest those factual determinations.[19] Second, at least as to the doctor,  *A to Z* is distinguishable here because the doctor actually participated in the prior determination — Mayer Brown did not.[20]  Third and most important, the rather broad and permissive analysis of nonparty preclusion is at odds with the Supreme Court's significantly more rigorous and limiting approach in *Taylor v. Sturgell.* As stated above, *Taylor* provides no support for the Plaintiffs' contention that a conviction of a partner justifies preclusion of the partnership in a later litigation — that relationship is not within the carefully delineated exceptions that the Court lays out in *Taylor*. The court in *A to Z* does not even stop to recognize what *Taylor* brings front and center: that preclusion of nonparties is an *exceptional* situation, contrary to the basic presumption that every party is entitled to its day in court.

A case that is more on point and persuasive than *A to Z* is the Second Circuit's opinion in *Stichting v. Schreiber,* 327 F.3d 173 (2d Cir. 2003). In that case the CEO of a corporation was convicted of violating the FCPA. The corporation's assignee sued the lawyer for giving the advice that caused the CEO to violate the FCPA. The trial court concluded that the CEO's conviction precluded the plaintiff, as the corporation's assignee, from claiming that Schreiber caused the CEO to think that its acts would not violate the FCPA. But the Second Circuit held that the plaintiff could not be precluded by the CEO's conviction. The court held that while the corporation (and thus its assignee) was bound by the CEO's actions as a matter of substantive law,  the assignee could not

---

[19] This point is further elaborated below in the discussion of  *Stichting v. Schreiber,* 327 F.3d 173 (2d Cir. 2003).

[20] Indeed the government argued in Collins's trial that Collins had concealed his activity from Mayer Brown and had the incentive to conceal the PPA from other Mayer Brown lawyers who would have disclosed it. *See* Nov. 7, 2012 Trial Tr. at 3066, 3073, 380-81 (Government summation). So unlike *A to Z,* the interests of the partnership and the litigating partner were not in full accord.

be precluded from contesting the facts found by the jury in the CEO's criminal trial. On the general question of privity and preclusion, the court declared as follows:

> Because of . . . due process concerns, we have generally held that a determination in a prior judicial proceeding collaterally estops a claim by a nonparty only if that nonparty was represented by a party to the prior proceeding, or exercised some degree of actual control over the presentation on behalf of a party to that proceeding.

* * *

> Before beginning our review of the facts, we note . . . *that we must be careful not to conflate the doctrines of collateral estoppel and respondeat superior*. They are similar in the sense that both require a factual inquiry into the closeness of the relationship between principal and agent. The distinct natures of the doctrines, however, require inquiries into the closeness of the relationship at different points. Because the doctrine of respondeat superior asks whether an agent's action, and his or her state of mind when he or she undertook the action, are imputable to the principal, a relevant inquiry is the closeness of the relationship at the time of the act in question. *In contrast, because the doctrine of collateral estoppel asks whether a party is bound by the result of a prior judicial proceeding, and thus implicates the due process rights to notice and an opportunity to be heard, the relevant inquiry is the closeness of the relationship at the time of the prior proceeding*. The parties do not dispute that Saybolt North America is responsible under the principle of respondeat superior for Mead's actions in violation of the FCPA. Thus, the inquiry in this case is limited to the closeness of Mead's relationship with Saybolt North America at the time of Mead's trial.

*Id.* at 185-86.

The above passage illustrates the fallacy of the *A to Z* court's — and the Plaintiffs' — equation of substantive principles of partnership liability and nonparty preclusion. The substantive principles are evaluated at the time of the partner's conduct; the preclusion principles are evaluated at the time of the original litigation and are not at all based on the fact that the partnership is liable for a past act of the partner. Thus, Mayer Brown is substantively responsible for Collins's activity in representing Refco; but Mayer Brown is not thereby automatically saddled with Collins's defense at his trial — in fact there is a strong presumption under *Taylor* that those issues can be litigated by the nonparty in a subsequent case.

Applying these standards to the facts, the *Stichting* court proceeded as follows:

> Mead was not vested with the authority to represent Saybolt North America because he was neither a fiduciary nor an agent of Saybolt North America during his trial. Saybolt International released Mead from his duties as an officer and active employee of the various Saybolt entities when he was arrested. . . . . We have found nothing in the record to support the conclusion that Saybolt International did not, prior to Mead's criminal trial, effectively

19

revoke Mead's power to represent it and its subsidiaries.

We also can find nothing in the record to suggest that Saybolt North America exercised any degree of actual control over Mead's conduct of his defense. As indicated, privity under such a theory depends on a finding that the person against whom collateral estoppel is applied actively participated in the previous litigation. Nothing in the record suggests that Saybolt North America's directors, shareholders, or officers controlled Mead's trial strategy. . . .

We conclude that the defendants have not established as a matter of law that Saybolt North America was in privity with Mead at the time of Mead's trial. Thus, the plaintiff is not collaterally estopped by Mead's conviction from pursuing its claims against Schreiber.

*Id.* at 186-87.

The result and analysis in *Stichting* is certainly consistent with the Supreme Court's later decision in *Taylor,* and with the fact that the Court in *Taylor* did not include partnerships in its list of substantive legal relationships that would justify nonparty preclusion.[21]  More broadly, *Stichting* establishes that  even though a partnership is substantively liable for a partner's acts, the partnership cannot be precluded from its day in court to contest whether those acts occurred.[22]

In sum, the Plaintiffs have simply not made the case that a partnership can be denied its day in court after a partner has been convicted. The Plaintiffs, who have the burden of proof on this motion — and who are  arguing against the fundamental principle that a party is entitled to a day

---

[21] The Plaintiffs argue that *Stichting* is off point because the court was construing *Taylor's* "adequate representation" exception rather than the exception pertinent here, for substantive legal relationships. *Stichting* preceded *Taylor* so wouldn't be expected to apply the six *Taylor* categories with precision. The important point about *Stichting* is not how it fits into categories but in its instruction that the question of substantive liability for actions must be separated from the question whether a nonparty is bound by prior litigation concerning those actions. That ruling is absolutely on point for the analysis here.

[22] The Second Circuit has read the exceptions set forth in *Taylor* narrowly. In *Briscoe v. City of New Haven*, 654 F.3d 200, 203 (2d Cir. 2011),  the Court refused to apply preclusion to a non-party where none of the six exceptions from *Taylor* applied.  The court in *Briscoe* specifically noted that no substantive legal relationship existed between the city and Briscoe that was akin to a "bailee and bailor" or "assignee and assignor."  That is, the court seems set on limiting the "substantive legal relationship" exception to instances that are very similar to those specifically enumerated by the Supreme Court in *Taylor*.  The common thread in the substantive legal relationships set forth in the *Taylor* exception is that they all have their basis in property law and involve relationships where one individual has taken legal responsibility for or ownership of another's property.

in court — have not cited a case in which a partnership was precluded by the conviction of its partner. Essentially they rely on snippets in cases that end up refusing to impose nonparty preclusion, and a New York trial court's opinion rendered before the Supreme Court imposed a more rigorous analysis on nonparty preclusion. This will not do.

> ***Accordingly, the Plaintiffs' motion for partial summary judgment against Mayer Brown, as based on nonparty preclusion, should be denied.***

Finally it bears emphasizing again that the Plaintiffs have conceded that preclusion cannot operate against Koury, as he was not a partner at the relevant times. See note 3, supra. So even if the Court founds that Mayer Brown can be precluded, Koury cannot and so the motion for partial summary judgment against Koury, on the basis of preclusion, must be denied.

## IV. Add-on Argument for Partial Summary Judgment, Not Related to Preclusion

The Plaintiffs devote two pages of their opening brief — and nothing in their reply brief — to a contention that partial summary judgment should be granted against all of the Mayer Brown Defendants, not because of preclusion but because admissible evidence demonstrates that there are no reasonable disputes of fact as to the Refco Fraud and Collins's aiding and abetting of it. Given the presentation on such an obviously complex question in the last two pages of the brief, and the failure to reply to the Defendants' response, it could fairly be found that the Plaintiffs have abandoned this argument. Further evidence of abandonment is that the Plaintiffs' counsel, at oral argument, conceded that because Koury could not be precluded, the motion as to him had to be dismissed. Oral Argument at 445. But assuming the Plaintiffs have not waived their argument on entitlement to summary judgment on non-preclusion-related grounds, that argument will be briefly addressed.

The Plaintiffs' argument that the evidence warrants summary judgment must fail. The Plaintiffs seek summary judgment on three issues: 1) the existence of the Refco Fraud; 2) Collins's (and therefore Mayer Brown's) knowledge of the Refco Fraud; and 3) Collins's (and therefore Mayer Brown's) substantial assistance of the Refco Fraud. As to the first issue, the Special Master has already reviewed the admissible evidence presented by the Plaintiffs and has determined that the Plaintiffs have not made the case for summary judgment on the primary violation of Refco — so that issue need not be revisited here. See Report and Recommendation dated March 11, 2013.[23]

As to the second issue — Collins's knowledge — the Plaintiffs rely on the following

---

[23] It should be noted that the Plaintiffs' Rule 56.1 statement, in its section on the Refco Fraud, relies on the same evidence (much of it inadmissible) and the same assertions as the Special Master previously reviewed in detail in the R and R on the Plaintiffs' motion for partial summary judgment on the issue of the primary fraud by Refco. *See* Plaintiffs' Rule 56.1 Statement ¶¶ 1-6.

contentions and citations to the record:

● In ¶10 of their Rule 56.1 Statement, Plaintiffs cite the Collins deposition for their assertion that Mayer Brown was involved in settling the Niederhoffer losses in 1997 and therefore was aware of the losses that Refco had sustained in the Asian debt crisis. Mayer Brown in its Counterstatement cites admissible evidence to indicate that Collins did not know about the Niederhoffer situation and did not document it. Drawing all inferences in favor of Mayer Brown as must be done on this motion, the Plaintiffs' assertions and citations in this paragraph do not support summary judgment on the question of Collins's knowledge of the Refco Fraud. There is especially no inference to be drawn of a known connection between the Niederhoffer losses and the RGHI receivable.

● In ¶ 11, the Plaintiffs cite a 1999 letter from Bennett to Collins regarding the net worth of RGHI, describing it as the value of RGHI's investment in RGL. The Plaintiffs assert that Collins jotted the comment "Minus loans to RGH[I]" which the Plaintiffs interpret as a demonstration that Collins knew about the hidden receivable. In their Counterstatement the Defendants note that there is no foundation for the Plaintiffs' conclusion that the jotted comment was made by Collins; that Collins in his deposition denied knowledge of a hidden receivable; and that the amount of the receivable at the time was attached to the letter, which is contrary to an inference that Collins knew anything about a hidden receivable. Again, because inferences must be drawn against the Plaintiffs here, the 1999 letter and its jotting are at best relevant evidence and do not come close to establishing Collins's knowledge of the improprieties regarding the RGHI receivable for purposes of this motion. *See D'Olimpio v. Crisafi,* 718 F.Supp.2d 357, 366 (S.D.N.Y. 2010) (Rakoff, J.) ("It is axiomatic that resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.") (internal citations and quotations omitted).

● In ¶ 12 the Plaintiffs cite a 2002 letter agreement in which Refco agreed that $350 million of a proposed transaction would be used for the retirement of intercompany debt of RGHI. The Plaintiffs assert that "Mayer Brown knew that Refco's audited financial statements at the time reflected a receivable of $179 million" so the letter agreement would indicate a hidden receivable. Mayer Brown's Counterstatement notes that the $350 million figure was being shared with a party investing millions of dollars in Refco. Collins testified that he received the number from counsel for the investor. Collins Dep. Tr. at 203:7–13 (Singer Decl.,Ex. 7). So Mayer Brown argues that there was no reason for Collins to think that it was secret or inconsistent with the audited financial statements. Once again, while the evidence the Plaintiffs cite may be relevant, it does not necessarily lead to an inference that Collins knew about the hidden receivable, and it certainly fails to establish that there is no triable issue of fact regarding Collins's knowledge.

● In ¶13 the Plaintiffs cite Trosten's testimony from Collins's first trial in 2009[24] in which

---

[24] Collins's 2009 conviction was vacated due to an error and he was retried and convicted in 2012. *United States v. Collins,* 665 F.3d 454 (2d Cir. 2012). But the trial testimony in the first trial is admissible evidence for purposes of this motion. *See* Fed. R. Evid. 804(b)(1).

he stated that he called Collins regarding inquiries by Refco's tax advisors about the RGHI receivable, and informed Collins that the receivable amounted to about $700 million. The simple answer to this assertion for purposes of this motion is that Collins denies that he ever had that conversation with Trosten. That is a classic question of credibility and therefore the Plaintiffs' reliance on the Trosten testimony cannot justify summary judgment as to Collins's knowledge. *D'Olimpio, supra.*

       ● In ¶ 14 the Plaintiffs cite the testimony of Melamed to the effect that he and Collins discussed the RGHI receivable in 2004, that it was about $1.1 billion, and it was "not really verifiable in any way." The Plaintiffs also cite Collins's notes as reflecting a July 2004 conversation with Melamed regarding a "debt of RGHI, $1 billion." Melamed's testimony, even with Collins's note as support, does not justify summary judgment for at least two reasons. First, Collins denies the conversation. Collins Dep. Tr. at 927, 943. Second, even if the conversation occurred, it would only show that Collins knew about the hidden RGHI receivable *in 2004*. It does not create a necessary inference that Collins knew about the receivable before that time. And the Plaintiffs' claims, at this point in the litigation, are limited to conduct that occurred before the LBO in 2004. Finally, different inferences can be drawn about the Collins note than are drawn by the Plaintiffs. Collins testified that the note had nothing to do with intercompany debt and that the figure referred to the rollover equity of Refco. Collins Dep. Tr. at 935-936. Perhaps the Plaintiffs' interpretation of the note is *more* plausible, but Collins's interpretation is reasonable, and on this motion all reasonable inferences are to be drawn in favor of the Defendants as non-moving parties.

       ● In ¶15 the Plaintiffs assert that Mayer Brown documented every RTL transaction beginning in 2000. Presumably this assertion is targeted toward the question of Mayer Brown's substantial assistance. But this assertion is based solely on the Breeden Report — a report of the Plaintiffs' own expert which is not based on personal knowledge and which essentially summarizes the findings of the Bankruptcy Examiner, which findings are themselves hearsay. For the reasons expressed in the R and R on the Plaintiffs' motion for summary judgment on the primary violation, the assertions in the Breeden Report  must be disregarded  ---- leaving *no* admissible evidence on the question of substantial assistance for this motion.

       ● In ¶16 the Plaintiffs rely on the deposition testimony of Santo Maggio, to the effect that the Round Trip Loan transactions were "fraudulent on their face." For the reasons expressed in the R and R on the Plaintiffs' motion for summary judgment on the primary violation, Maggio's testimony is admissible evidence and may be relevant, but it is too broad and vague to mandate summary judgment on any part of the Refco Fraud.

       ● In ¶17 the Plaintiffs rely on the Breeden Report for their expert's assertion that the Round Trip Loan documents were fraudulent on their face. Typically, Breeden is relying on another source for this conclusion, specifically the testimony of Maggio. As stated above, Breeden's report is inadmissible on this motion.

       Considering all the assertions discussed above — individually and collectively — it is clear that the Plaintiffs have failed to meet their burden of showing that there is no triable issue of fact

with regard to the Refco Fraud, Collins's knowledge of that fraud, or Collins's substantial assistance of that fraud.[25]  It should also be emphasized that *nothing* in the Plaintiffs' submission provides any admissible evidence regarding Koury's aiding and abetting; moreover, as discussed above, the Plaintiffs have conceded that the motion must be dismissed as to Koury. *See* Note 3, *supra*. Accordingly, the Plaintiffs' tack-on argument that partial summary judgment should be granted for reasons other than preclusion should be rejected.  And that argument *must* be rejected with regard to claims against Koury.

## V. Conclusion and Recommendation

*The Plaintiffs' motion for partial summary judgment as to Collins and Mayer Brown should be denied. The Plaintiffs' motion for partial summary judgment as to Koury must be denied.*

Daniel J. Capra
Special Master

Dated: March 25, 2013
New York, New York

---

[25] The remainder of the Plaintiffs' Rule 56.1 statement is directed toward preclusion. Paragraphs 18-29 cite and describe the Plaintiffs' complaint against the Mayer Brown Defendants. This is appropriate of course to establish that the issues in this case are the same as those in the Collins trial. But the Plaintiffs are not in these paragraphs trying to establish that admissible evidence requires summary judgment. The remaining paragraphs, 29-51, recount the Collins prosecution, including the indictment, charges, argument, and resolution. Again, these are directed toward preclusion, they are not raising admissible evidence. The Plaintiffs do include a final paragraph, No. 52, which states that Refco insiders were convicted. But for the reasons expressed in the R and R for summary judgment on the prior violation, summary judgment should not be granted on the basis of convictions of the Refco insiders.