UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re REFCO INC. SECURITIES LITIGATION   :
------------------------------------------------------------X

                This Document Relates to:
------------------------------------------------------------X
KENNETH M. KRYS, et al.,   :
                                  Plaintiffs,   :
                     -against-   :

CHRISTOPHER SUGRUE, et al.,   :
                                 Defendants.   :
------------------------------------------------------------X

Case No. 07-MD-1902 (JSR)

Case No. 08-CV-3065 (JSR)
Case No. 08-CV-3086 (JSR)

### DEFENDANTS' RESPONSE TO PLAINTIFFS' LIMITED OBJECTION TO THE REPORT & RECOMMENDATION ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF THE PRIMARY VIOLATION OF FRAUD BY REFCO

WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
Tel:  (312) 558-5600

200 Park Avenue
New York, New York  10166
Tel: (212) 294-6882

*Attorneys for Defendants Mark Ramler and Grant Thornton LLP*

(additional counsel on second page)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005
Tel: (202) 434-5000
*Attorneys for Defendant Mayer Brown LLP*


COOLEY LLP
1114 Avenue of the Americas
New York, New York  10036-7798
Tel: (212) 479-6000
*Attorneys for Defendant Joseph P. Collins*


CLAYMAN AND ROSENBERG
305 Madison Avenue, Suite 1301
New York, New York  10165
Tel: (212) 922-1080
*Attorneys for Defendant Paul Koury*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .............................................................................................................................3

DISCUSSION ..................................................................................................................................6

      I.      The Special Master did not rule one way or the other on the relevance of post-LBO evidence to any issues that may remain to be tried in this case. ..............6

      II.     The Special Master did not reach any conclusion about the Maggio and Trosten testimony that requires clarification. ...........................................................8

      III.    The Special Master did not hold that Plaintiffs would be required at trial to prove their case in "[e]xcruciating detail." .............................................................10

CONCLUSION ...............................................................................................................................12

i

**PRELIMINARY STATEMENT**

The Special Master squarely rejected Plaintiffs' request for partial summary judgment, and Plaintiffs have now waived any challenge to that decision. In their submission before this Court, Plaintiffs do not object to the recommendation that their motion be denied. *See* March 11, 2013 Report & Recomm. ("R&R") at 21. Nor do they object to any of the conclusions that underlie the Special Master's recommendation, including that

- to establish a primary violation of fraud, Plaintiffs must prove, by clear and convincing evidence, all the elements of the tort of fraud (R&R at 2, 4);

- Plaintiffs abandoned any attempt to seek summary judgment on the elements of reliance and causation (*id.* at 4);

- Plaintiffs failed to establish that Refco made a material misstatement with the intent to defraud (*id.* at 18);

- to the extent Plaintiffs also sought summary judgment on certain ***facts***, they did not present admissible evidence proving those facts beyond dispute (*id.* at 7-19);

- the Bankruptcy Examiner's report, cited extensively in Plaintiffs' summary judgment papers, is "inadmissible hearsay" (*id.* at 11 n.10, 16, 20);

- the testimony of purported expert witness Richard Breeden is not admissible to prove the facts and events constituting the Refco fraud (*id.* at 11-12, 13, 14);

- the convictions of Refco officers Robert Trosten and Santo Maggio do not show any fraud "about which SMFF could complain" (*id.* at 9-10);

- the Refco officers' guilty pleas ***do*** show that the officers conspired to deceive Refco's auditors, who are among the defendants in this case (*id.* at 9); and

- for the few, basic facts that the defendants did not dispute, summary judgment is not appropriate (*id.* at 19-20).

Plaintiffs' "Limited Objection" does not object to ***any*** of these conclusions. Instead, it seeks only to "clarify and correct some of the Special Master's findings regarding the evidence." Pls. Lim. Obj. at 1.

But the Special Master *did not make* any of the "findings" Plaintiffs say he did. Their submission points to three issues:

(i) whether Plaintiffs will be allowed to refer at trial "to evidence, documents or occurrences regarding the LBO or IPO" (*id*. at 8; *see id.* at II.C);

(ii) whether the deposition testimony of Robert Trosten and Santo Maggio is "relevant, admissible and probative" (*id*. at 9; *see id.* at II.D); and

(iii) whether Plaintiffs at trial will be required to prove "all of the details of the Refco fraud" in "[e]xcruciating detail" (*id*. at 12; *see id.* at II.E).

On the first issue, there is no "finding" to clarify. The issue before the Special Master was whether Plaintiffs are entitled to summary judgment on the "primary violation of fraud by Refco" or on any of the facts they identified as constituting the Refco fraud. R&R at 1, 20. The Special Master correctly explained that any award must be limited to a fraud by Refco "before the LBO," during the period when customer/claimant SPhinX Managed Futures Fund ("SMFF") was still making net deposits—a conclusion Plaintiffs do not contest. *See id*. at 7 n.7; *see* Pls. Lim. Obj. at 6. The Special Master *did not decide* whether evidence regarding the LBO or IPO would be admissible or inadmissible at trial for some other purpose.

Similarly, on the other two issues, Plaintiffs' "Limited Objection" strays far from the matters that were presented on this motion and addressed in the R&R. The Special Master found that certain deposition testimony by Trosten and Maggio was not sufficient to entitle Plaintiffs to summary judgment, but he *did not decide* whether that testimony will be "relevant, admissible and probative" for any purpose at trial. *See* Pls. Lim. Obj. at 9. And the Special Master *did not prescribe* a particular level of detail—"excruciating" or otherwise—that Plaintiffs must provide to prove their case at trial. He decided only that Plaintiffs had not proven their case on summary judgment—which, again, Plaintiffs do not dispute.

2

In short, Plaintiffs' request for "clarif[ication]" on these issues is premature and goes well beyond the current R&R. If the case proceeds to trial, it will be up to this Court to decide whether the evidence Plaintiffs have focused on is admissible and whether their proof is sufficiently detailed, based on the arguments and motion practice to be advanced by the parties. For now, however, there is only one motion properly before the Court—Plaintiffs' motion for partial summary judgment. The R&R on that motion stands unchallenged; even Plaintiffs themselves do not dispute the recommendation that their motion be denied. This Court should adopt the R&R without further consideration.

## BACKGROUND

The *Krys* cases are the last remnant in the sprawling Refco litigation. This particular case began with a sweeping complaint asserting more than two dozen claims and naming a vast array of defendants. Since then, nearly all of Plaintiffs' claims have been dismissed, and the remaining claims have been narrowed substantially. The matter now before the Court concerns the sole remaining claim against two sets of defendants: Refco's independent outside auditor Grant Thornton LLP (along with its audit partner Mark Ramler), and Refco's outside legal counsel Mayer Brown LLP (along with former associate Paul Koury and former partner Joseph Collins). The claim is asserted on behalf of SMFF, a former Refco customer. Under the prior rulings, the only remaining theory is that these defendants aided and abetted a fraud by Refco during the period before its 2004 leveraged buy-out ("LBO"), and that SMFF was injured because it (allegedly) reviewed and relied on some false statement by Refco in deciding to make deposits.

After years of discovery, both sides filed motions for summary judgment. Defendants sought to end this case before trial because Plaintiffs cannot possibly carry their burden of proving the elements of reliance, intent to induce reliance, and causation—and because SMFF's

3

claim is barred as a matter of law by the *Wagoner* rule and the doctrine of *in pari delicto*. Plaintiffs filed two motions for partial summary judgment, each of which sought an order declaring that some part of their claim had been established as a matter of law.

The motion now before the Court is Plaintiffs' motion for partial summary judgment against all defendants "on the issue of the primary violation of fraud by Refco." Mem. of Law Supporting Pls. Mot. For Partial Summ. J. ("Pls. Mem.") 1 & n.3; *see also* Notice of Motion (seeking summary judgment "on the issue of the primary violation"). Plaintiffs argued that the existence of a fraud by Refco was beyond serious dispute, and they sought an order "specifying that the existence of the Refco fraud may be deemed to be established without substantial controversy." Pls. Mem. at 2. According to Plaintiffs, this motion would have left the jury to decide only whether the defendants knew about the primary violation and provided substantial assistance (and to quantify any damages). *Id*. at 1 & n.3, 15.

But Plaintiffs' motion skipped a critical step: **proving the elements of the primary violation of fraud**. Long ago, this Court identified the elements that Plaintiffs would be required to prove with respect to the primary violation: that (i) one or more specific statements by Refco was materially false, (ii) those statements were made with the intent to defraud customers like SMFF, (iii) SMFF "reasonably relied" on those misstatements, and (4) that reliance proximately caused SMFF's injury. R&R on the Omnibus Issue of Primary Violations by Refco ("Primary Violations R&R") at 21 (Mar. 1, 2010), *adopted* May 3, 2011. Plaintiffs' opening brief utterly ignored the elements of fraud and did not attempt to satisfy them. Instead, Plaintiffs attempted to "prove" a fraudulent scheme largely by repeating the facts recited in the Bankruptcy Examiner's report and in the report of Plaintiffs' own proposed expert witness Richard Breeden, who had also relied in turn on the Bankruptcy Examiner. And as for the elements of reliance and

4

causation, Plaintiffs cited no evidence at all.  Although they attempted in their reply brief to argue that they *were* seeking summary judgment on those elements, they conceded at oral argument that this was not so.  *See* R&R at 2-4 (discussing this concession and quoting the transcript).

The Special Master recommended that Plaintiffs' motion be denied in its entirety.  His detailed R&R walks carefully through the requirements for summary judgment and then analyzes each individual paragraph in Plaintiffs' Rule 56.1 statement, evaluating whether the factual assertions had been proven by admissible evidence.  *Id*. at 4-18.  It concludes that Plaintiffs did not establish the elements of the tort of fraud, so the relief they sought—summary judgment on the primary violation of fraud—must be denied.  *Id*. at 18.

The Special Master also recommended denying summary judgment with respect to the "facts" that Plaintiffs contended should be resolved as a matter of law, as those facts had not been proven by clear, convincing, and admissible evidence.  *Id*. at 8-18.  He concluded that the factual accounts by the Examiner and Mr. Breeden are not admissible as evidence of the Refco fraud.  *Id*. at 11-14, 16, 20.  The only potentially admissible evidence Plaintiffs cited was deposition testimony by insiders Trosten and Maggio, but that testimony was not sufficient to prove Plaintiffs' version of the facts.  Although the Special Master determined that a handful of basic, background facts had not been the subject of any serious dispute between the parties—like the fact that Refco and certain subsidiaries went into bankruptcy, that there was a receivable at RGHI, and that "[t]here was wrongdoing of some kind at Refco"— he observed that awarding summary judgment even on those facts might prejudice the defendants, given the "unfocussed" nature of the motion and the lack of clarity in the relief Plaintiffs were seeking.  *Id*. at 19; *see also id.* at 7 & n.6 (quoting transcript passage where Plaintiffs' counsel, when asked about the

5

scope of the motion, responded, "I'll take as much as I can get about the Refco Fraud"). He also concluded that entering summary judgment on such facts would not advance the aims of Rule 56, because they are "tied to and provide background for other facts that must be proven in the case" and will themselves "require more proof to flesh them out." *Id*. at 19-20 (discussing Committee Note to Rule 56). Finally, he noted that this Court already has "a procedure in place to avoid wasting court time in proving facts that are not disputed"—namely, the pretrial consent order. *Id*. at 20.

As discussed above, Plaintiffs' "Limited Objection" does not object to any of these recommendations. *See supra* at 1. Instead, it seeks a ruling from this Court about three evidentiary issues relating to how the case will proceed at trial. *See* Pls. Lim. Obj. at II.C, II.D, II. E.[1] This is improper and premature. We discuss each of the three issues in turn below.

## DISCUSSION

**I.    The Special Master did not rule one way or the other on the relevance of post-LBO evidence to any issues that may remain to be tried in this case.**

Plaintiffs' first contention is that the R&R "repeated[ly] conclu[des] that all facts, documents, testimony and matters regarding the Refco LBO and IPO are no longer to be considered in any respect." Pls. Lim. Obj. at 5. ***But the R&R contains no such conclusion.*** Although the parties may well engage in motion practice on such evidentiary issues as trial approaches, those issues are not before the Court today, and the Special Master did not purport to prejudge them.

---

[1] Sections II.A and II.B were apparently included as background, as they recount Plaintiffs' version of the facts and do not refer to the R&R. The significance of II.F is unclear, as it does not state that any finding by the Special Master was incorrect. For example, Plaintiffs refer to the Special Master's finding that Grant Thornton's prior motion papers "admit[] only that the fraud was designed to deceive the auditors." Pl. Lim. Obj. at 14 (citing R&R at 17). But while Plaintiffs might disagree with the description of the fraud contained in Grant Thornton's motion papers, they do not disagree with the Special Master about what those papers said.

6

At most, the Special Master observed (correctly) that the actionable wrongdoing in this case has been limited to the time period "before the LBO." *See* R&R at 1 n.1, 7-8 n.7. In a previous motion, the defendants had argued that Plaintiffs cannot recover based on any wrongdoing that occurred after SMFF's cash balance reached $312 million—the amount it had on deposit at the time of Refco's collapse. The cash balance reached this critical level on March 12, 2004, shortly before the LBO.[2] In the period between March 12, 2004 and the bankruptcy, SMFF took out more cash than it put in—and thus, on a "net" basis, it made no new deposits in reliance on the fraud. *See id.* This Court ultimately accepted that argument and dismissed all claims against defendants who had been sued solely based on alleged wrongdoing in mid-2004 and afterward. *See* Dec. 26, 2012 Order (adopting alternative recommendation that claims against the underwriter defendants and PricewaterhouseCoopers should be dismissed altogether); Report & Recomm. on Certain Defs. Mots for SJ ("Early SJ R&R") at 11-13 (under the "net deposits" approach, there could be no claims at all against the underwriters and PricewaterhouseCoopers, which did not come on the scene until May 2004 or later). Consistent with that ruling, the Special Master explained that "if partial summary judgment were granted" with respect to the Refco fraud (as Plaintiffs had requested), "it should be limited to Refco's activity before the LBO." R&R at 7-8 n.7.

Plaintiffs do not take issue with that conclusion—nor could they. Instead, they say "[e]ven if Plaintiffs are barred from claiming damages flowing from the LBO and IPO, evidence from this time period is still relevant . . . to issues such as knowledge, intent, motive, absence of

---

[2] On that date, SMFF's cash balance grew from $292.5 mm to $319.5 mm. *See* Kenneth Krys, Report on Cash Balances and Transfers at App. 6, dated June 29, 2012 (attached as Ex. 1 to Decl. of James J. Capra in Support of Defs' Early Mot. for Summ. J., Docket No. 1483-1 (Aug. 2, 2012)). For convenience, the parties and the Court have referred to this as the time of the LBO. But as Plaintiffs concede (and as the Special Master acknowledged, *see* Early SJ R&R at 11), the precise date was, in fact, a few months before the LBO was consummated.

7

mistake, pattern, conspiracy, and to rebut defenses such as an innocent-bystander defense." Pls. Lim. Obj. at 6 (citing cases).

The issue Plaintiffs are now raising is not presented by their motion or by the current R&R. The Special Master did not address whether Plaintiffs should or should not be permitted to use post-LBO evidence in the way they propose. Indeed, there was no reason for him to do so, as that evidentiary question was not necessary to the issue on which Plaintiffs sought summary judgment—the existence and scope of the primary fraud by Refco. In the passage Plaintiffs cite (R&R at 7 n.7, *cited in* Pls. Lim. Obj. at 6), the R&R explains simply that there can no summary judgment on facts relating to Refco's wrongdoing in the LBO and IPO because such wrongdoing is not actionable in this case. The Special Master further explained, "even if facts related to the LBO and IPO *were* still matters for proof in this case, . . . Plaintiffs have failed on this motion to cite admissible evidence regarding those facts that would prove they are beyond reasonable dispute." R&R at 7 n.7 (emphasis in original).

For Plaintiffs to inject their broader evidentiary argument into the current proceedings is improper and premature. If this case proceeds to trial, both sides will presumably make motions in limine with respect to categories of evidence that they believe should or should not be admitted in evidence at trial. Any such arguments must be evaluated then, based on the particular pieces of evidence at issue and the arguments presented by counsel. With respect to the current motion, however, Plaintiffs have given this Court no reason to do anything other than adopt the R&R in full.

## II. The Special Master did not reach any conclusion about the Maggio and Trosten testimony that requires clarification.

Plaintiffs acknowledge that the Special Master treated the testimony of Trosten and Maggio as "relevant and admissible evidence." Pls. Lim. Obj. at 9. What concerns them,

apparently, is his interpretation of that testimony—and his apt observation that some aspects of the testimony are very general and others are "„conclusory, vague and opinionated.‟" *Id.* (quoting R&R at 10).

It is unclear why Plaintiffs have raised this issue now.  They do not contend that the Special Master made some error of interpretation that should change the outcome on summary judgment.  Rather, they take issue with the Special Master's characterizations "[e]ven if the testimony does not satisfy Plaintiffs' burden on summary judgment."  Pls. Lim. Obj. at 9.  But the only issue before the Court is whether Plaintiffs' burden on summary judgment has been met.  The Special Master concluded that it has ***not*** been met, and Plaintiffs do not disagree.  As a result, there is no reason for this Court to do anything but adopt the R&R.

For example, while Plaintiffs point to the Special Master's conclusion "that Maggio's testimony did not establish that the round trip loan transactions were fraudulent" (*id.* at 10), they do not contend that his testimony was enough by itself to entitle them to summary judgment on that issue.  And while they disagree with the Special Master that Maggio's testimony was "„too general and conclusory‟" to establish an intent to defraud customers like SMFF (*id.* at 11, quoting R&R at 10), they do not contend that they have, in fact, carried their burden of proof on that element.

Nor have Plaintiffs identified a single error in the R&R that requires correction.  For example, Plaintiffs claim the Special Master made a mistake when he said "that Maggio did not „testify that expenses were transferred' from to RGHI and included in the RGHI receivable." *Id.* at 9 (quoting R&R at 13).  The Special Master made this comment, however, in his analysis of Statement No. 8 of Plaintiffs' 56.1 Statement, which asserted that Refco "transfer[red] ***large amounts*** of operating costs and additional extraordinary losses into the RGHI Receivable ***to***

9

*make Refco's profits appear significantly larger than they really were*." Pls. 56.1 ¶ 8 (emphasis added). The only admissible evidence Plaintiffs cited was Maggio's testimony that he "believe[d]" some expenses had been transferred, that he did not recall the amount or magnitude, and that he "was not involved." *See* Maggio Dep. at 103-04 (attached as Ex. 2 to Decl. of Mason Simpson). Within that context, the Special Master was entirely correct in saying that Maggio's testimony did not support Plaintiffs' assertion. And while Plaintiffs now suggest that their assertion is also based on the testimony of Trosten (Pls. Lim. Obj. at 10), they did not cite his testimony in their Rule 56.1 statement as support for Statement No. 8.[3]

It is premature for Plaintiffs to argue about the probative value and relevance of testimony at trial, and such arguments should not be considered in the abstract, as Plaintiffs apparently are requesting. Again, if the case were to go to trial, the admissibility of any particular piece of testimony—including considerations of relevance, undue prejudice, and personal knowledge—will be decided by this Court, either on a motion in limine or in response to specific objections.

### III. The Special Master did not hold that Plaintiffs would be required at trial to prove their case in "[e]xcruciating detail."

Finally, Plaintiffs suggest that the Special Master directed them to prove at trial "all of the details of the Refco fraud" in "excruciating detail." Pls. Lim. Obj. at 12. The R&R does not purport to address that issue. Plaintiffs again do not object to the Special Master's ultimate

---

[3] Plaintiffs also point to the testimony of John Ellingsen, who has been proffered by Grant Thornton as an expert witness. Pls. Lim. Obj. at 10. But that testimony too was not cited in Statement No. 8 and does not support the assertions therein. Ellingsen testified only that some expenses were added to the RGHI receivable—not that those additions included "large amounts of operating costs and additional extraordinary losses . . . to make Refco's profits appear significantly larger than they really were," as Plaintiffs assert. Pls. 56.1 St. ¶ 8.

conclusion that summary judgment on the Refco fraud should be denied.  So again, Plaintiffs have given this Court no reason to do anything other than adopt the R&R.

Substantively, Plaintiffs' criticism of the Special Master is entirely misplaced.  They complain that he required them to prove "all of the 'details and amounts of the transactions,'" when all they were seeking is a general finding "that the round trip loans were part of the Refco fraud."  Pls. Lim. Obj. at 10-11 (quoting R&R at 14).  This mischaracterizes both the Special Master's analysis and Plaintiffs' own position in the motion practice.

In their motion, Plaintiffs sought an order establishing (among other things) that there was an RGHI receivable in a "specific amount . . . at various points," that these amounts were in excess of "the amount publicly declared," that these specific amounts were worthless, and that they were concealed by so-called round trip loans that "'were simply a smoke screen to conceal the enormous and growing hole in Refco's balance sheet.'"  R&R at 7-8 (describing the "facts" on which Plaintiffs were apparently seeking summary judgment) (quoting Pls. 56.1 ¶ 10).  In support of this request, Plaintiffs presented a chart that purported to quantify the RGHI receivable and its impact on Refco's true financial condition at specific points in time and asserted that they "want summary judgment on this chart."  R&R at 3 (quoting argument transcript).  Yet Plaintiffs made no effort to present admissible evidence proving the numbers on that chart or their conclusion that it showed an "enormous and growing hole in Refco's balance sheet."  Pls. 56.1 ¶ 10.  It was in that context that the Special Master faulted Plaintiffs for failing to prove—by clear, convincing, and admissible evidence—"[t]he details and amounts of the transactions, and whether they are fraudulent."  R&R at 14.  This was clearly correct, given the absence of admissible evidence before him.

In short, the Special Master thoughtfully decided the motion before him, based on the arguments of the parties. He did not purport to dictate a particular level of detail that Plaintiffs must prove at trial or require unnecessarily "[e]xcruciating detail." It will be for this Court to decide whether the evidence presented at trial (if one is necessary) is sufficiently detailed to support a verdict in Plaintiffs' favor, in the context of the parties' trial-related motions. For now, the issue is premature.

## CONCLUSION

The Special Master's R&R correctly recommends denying Plaintiffs' motion for partial summary judgment, and Plaintiffs do not disagree with any of its conclusions. The R&R should be adopted in full. No clarification is necessary or appropriate.


Dated: Chicago, Illinois
   April 10, 2013     **WINSTON & STRAWN LLP**

             By:  /s/ Linda T. Coberly

               Linda T. Coberly
               Bruce R. Braun
               Catherine W. Joyce
               35 W. Wacker Drive
               Chicago, Illinois 60601
               Tel: (312) 558-5600
               Fax: (312) 558-5700

               Luke A. Connelly
               200 Park Avenue
               New York, New York 10166
               Ph: (212) 294-6700
               Fax: (212) 294-4700

               *Attorneys for Defendants*
               *Grant Thornton LLP and Mark Ramler*

Dated: Washington, D.C.
      April 10, 2003        **WILLIAMS & CONNOLLY LLP**

                            By:   /s/ Craig D. Singer

                            John K. Villa
                            Craig D. Singer
                            Daniel P. Shanahan
                            725 Twelfth Street, NW
                            Washington, DC 20005
                            Tel: (202) 434-5000

                            *Attorneys for Defendant Mayer Brown LLP*


Dated: New York, New York
      April 10, 2003        **COOLEY LLP**

                            By:   /s/ William J. Schwartz

                            William J. Schwartz
                            Jonathan P. Bach
                            Reed A. Smith
                            1114 Avenue of the Americas
                            New York, New York  10036-7798
                            Tel: (212) 479-6000

                            *Attorneys for Defendant Joseph P. Collins*



                            **CLAYMAN & ROSENBERG**

                            By:   /s/ Charles E. Clayman

                            Charles E. Clayman
                            305 Madison Avenue, Suite 1301
                            New York, New York  10165
                            Tel: (212) 922-1080

                            *Attorneys for Defendant Paul Koury*